No. 23-1140

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

RUTH SMITH,
on behalf of herself and all others similarly situated,

*Plaintiff-Appellant*,

v.

SUNPATH, LTD.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division

---

**OPENING BRIEF FOR
PLAINTIFF-APPELLANT RUTH SMITH**

---

Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
Taylor T. Smith
(tsmith@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Ste. 300
Denver, Colorado 80210
Telephone: (720) 907-7628

*Attorneys for Appellant Ruth Smith*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>23-1140</u>        Caption: <u>Ruth Smith v. SunPath, Ltd.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Ruth Smith</u>
(name of party/amicus)

_____

 who is _____<u>Plaintiff-Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Taylor T. Smith _____    Date: _____June 12, 2023_____

Counsel for: Appellant Ruth Smith _____

- 2 -

[Print to PDF for Filing]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF ISSUES ................................................................. 5

STATEMENT OF THE CASE .............................................................. 6

    A.    Factual Background ............................................................ 6

    B.    Procedural Background..................................................... 11

SUMMARY OF THE ARGUMENT ..................................................... 16

ARGUMENT..................................................................................... 18

I.      Standard Of Review. ................................................................. 18

II.    The District Court Erred By Entering Summary Judgment In Favor Of SunPath On The Grounds That American Protection, And Not SunPath, Was The Lone "Seller" Under The VTPPA. .......................................................... 20

    A.    The Virginia legislature amended the VTPPA in 2019 to hold companies like SunPath liable for unlawful calls placed by their third-party vendors. ...................................................................... 21

    B.    This Court should reverse the entry of summary judgment because SunPath is "the seller" under the VTPPA—as all of the calls solicited Smith to purchase SunPath's auto warranties—while American Protection was the "telephone solicitor". ............................................ 23

    C.    The district court further erred by concluding that, even if SunPath was the "seller", the presumption of joint and several liability had been rebutted. ...................................................................... 28

III.   The District Court Also Erred In Denying Partial Summary Judgment In Favor Of Smith With Respect To Count II. ................................................. 30

IV.   The District Court Abused Its Discretion By Granting SunPath's Pretrial Motions And Excluding Relevant Evidence. ............................................. 35

i

A. The district court abused its discretion by excluding the Five9 call records. ....................................................................... 35

    1. Given the truncated case schedule, Smith and her counsel pursued the Five9 data as quickly as possible in the face of foot-dragging by the Appellee. ................................................. 36

    2. The lower court also abused its discretion in excluding the Five9 records, which had been authenticated by Five9's custodian, on the basis that a witness from Five9 was needed to explain the records to a judge or jury. .................................... 39

B. The district court likewise abused its discretion by striking Appellant's declaration. ................................................... 41

C. The district court also committed reversable error by excluding all evidence of damages. ...................................................... 44

V. The District Court Abused Its Discretion By Prioritizing Its "Rocket Docket" Reputation To The Detriment Of The Record In This Case—The Result Of Which Led To Irrational And Arbitrary Determinations On An Insufficient Record. ................................................................ 48

CONCLUSION ................................................................. 52

REQUEST FOR ORAL ARGUMENT ................................................ 52

ADDENDUM OF STATUTES ...................................................... 53

# TABLE OF AUTHORITIES

## CASES

*ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018)..................................... 49

*Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493 (E.D. Va. Aug. 7, 2020) ...................................... 45

*Askew v. HRFC, LLC*, 810 F.3d 263 (4th Cir. 2016)............................................. 19

*Bailey v. Christian Broad. Network*, 483 F. App'x 808 (4th Cir. 2012) ........... 44, 46

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017)................................. 46

*Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407 (S.D. Ohio Sept. 30, 2019) ........................................................................................ 33

*Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021) ........... 44

*Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220 (4th Cir. 2019).......................... 45

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-CV-187, 2018 WL 4169282 (E.D. Va. Jan. 12, 2018) ........................................................................ 43

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2020 WL 3048190 (S.D. Ohio June 8, 2020)............................................................. 42, 43

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) ........... 40

*Jones v. Ford Motor Co.*, 204 F. App'x 280 (4th Cir. 2006) ................................ 19

*Jones v. Wal-Mart Stores, Inc.*, No. 2:15-CV-1454-LDG-GWF, 2016 WL 1248707 (D. Nev. Mar. 28, 2016)................................................................... 44

*Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641 (9th Cir. 2014) ........... 40

*Llewellyn v. White*, 297 Va. 588, 595, 831 S.E.2d 494 (2019)............................... 19

*Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021) ....................................................... 40

*Mandengue v. ADT Sec. Sys., Inc.*, No. CIV.A. ELH-09-3103, 2012 WL 892621 (D. Md. Mar. 14, 2012) ......................................................................... 41

*Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991 (E.D. Va. 2011) ...... 48

*Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933 (E.D. Cal. May 19, 2017) ................................................................................................ 39

*Riggins v. SSC Yanceyville Operating Co., LLC*,
    800 F. App'x 151 (4th Cir. 2020) ....................................................... 41

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) .............................. 40

*Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994) ......................................................... 18

*Snoeyenbos v. Curtis*, 60 F.4th 723 (4th Cir. 2023) ............................................. 20

*Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir. 1980) ........................... 48

*Taylor v. Illinois*, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)............. 46

*United States v. Badwan*, 624 F.2d 1228 (4th Cir. 1980)...................................... 50

*United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013) ..................................... 19

*United States v. Uhrich*, 228 F. App'x 248 (4th Cir. 2007) ................................... 51

*Wall v. Rasnick*, 42 F.4th 214 (4th Cir. 2022) ........................................................ 44

*Wilson v. Gaston Cnty., NC*, 685 F. App'x 193 (4th Cir. 2017)............................. 41

## STATUTES

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...................................... 4, 11

28 U.S.C. § 1291................................................................................................... 4

28 U.S.C. § 1331................................................................................................... 4

28 U.S.C. § 1332................................................................................................... 4

28 U.S.C. § 1367................................................................................................... 4

Va. Code Ann. § 59.1-510 ........................................................................... *passim*

Va. Code Ann. § 59.1-512 ............................................................................ 21, 27

Va. Code Ann. § 59.1-514 ................................................................. 27, 31, 32, 34

VA. CODE ANN. § 59.1-514.1 ............................................................... *passim*

**REGULATIONS**

47 C.F.R. § 64.1200 ........................................................................... 33

**RULES**

Fed. R. App. P. 3 ................................................................................ 5

Fed. R. App. P. 4 ................................................................................ 5

Fed. R. Civ. P. 23 .............................................................................. 48

Fed. R. Civ. P. 45 .............................................................................. 37

**OTHER SOURCES**

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (3d ed. 2010) ...................................................................... 49

Federal Judicial Center, *Manual for Complex Litigation, Fourth* ......................... 49

Virginia Senate Commerce and Labor Committee Hearing, January 21, 2019 ............................................................... 22

Virginia House of Delegates Commerce and Labor Hearing, January 31, 2019 ............................................................... 23

**INTRODUCTION**

This alleged class action challenges persistent and serial violations of the Virginia Telephone Privacy Prevention Act, VA. CODE ANN. § 59.1-510, *et seq.* ("VTPPA" or the "Act"), by a seller of automobile warranties and its telemarketing firm. Appellant Ruth Smith ("Smith" or "Appellant") appeals the January 27, 2023, Order of the district court granting summary judgment in favor of Appellee SunPath, Ltd. ("Appellee" or "SunPath") on all counts.

Prior to 2019, a wrinkle in the VTPPA allowed companies like SunPath to insulate themselves from liability by hiring third-party telemarketers to place otherwise unlawful calls on their behalf. To fix this, in 2019 the legislature enacted § 59.1-514.1 to provide that companies whose products or services are marketed on the calls, referred to as "sellers", are presumed to be jointly and severally liable as "responsible parties" for any violations caused by these third-parties, defined as "telephone solicitors"—without a need to prove any agency relationship or the degree of oversight or control the seller may have over the solicitor.

Applied here, Smith received an eye-popping 122 telephone solicitations from Chukran Management Group, LLC d/b/a American Protection Corp ("American Protection")—the "telephone solicitor" that SunPath, the "seller", hired to market its auto warranties/vehicle service contracts ("VSCs" or "auto warranties"). Every call was for SunPath's benefit and solicited Appellant Smith to purchase a SunPath VSC.

1

To be sure, Smith never provided any prior express invitation or permission to anyone to make such calls, and neither SunPath nor American Protection has produced any record of prior express invitation or permission to place such calls to Smith.

Rather than hold SunPath accountable for the calls as a "responsible party", however, the district court instead concluded that SunPath's solicitor, American Protection, was the "seller" because "…a product of American [Protection] is being sold in the sense that it's getting its fee for the brokerage" for selling SunPath's products. JA1832. Respectfully, that interpretation is flatly at odds with the plain language of the Act. Under the VTPPA, "'Seller' means any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated." § 59.1-510. The calls were indisputably on SunPath's behalf and for its benefit, and they offered or advertised only SunPath's VSCs—to the extent American Protection even has its own products or services to offer, such as its telemarketing services, they were *not* offered for sale on these calls.

The district court thus committed reversable error in finding that American Protection was the "seller" and that its contractors were the "telephone solicitors" under the Act. The only reasonable reading of the Act is that American Protection, Sun Path's third-party marketer, is the "telephone solicitor" and that Sun Path is the

"seller." The legislature in no way intended to hold individual employees/contractors of telemarketing firms liable as "solicitors", and the district court's judgment to the contrary should be reversed.

For similar reasons, the district court's denial of Appellant's motion for partial summary judgment was erroneous. Smith received 122 unsolicited calls attempting to get her to purchase a SunPath VSC. Such calls squarely violate the Act, and the lower court erred by shielding SunPath from liability as a "seller".

The district court also abused its discretion by granting every pre-trial motion filed by SunPath absent, in some cases, any explanation for its rulings. For example, the court excluded all of the call records produced by Five9, Inc. ("Five9"), the telephone provider used by American Protection to make the calls, despite Appellant counsel's disclosure of the records within hours of receipt by counsel (and prior to the close of discovery). The court also struck Smith's declaration by ruling that there were supposedly "significant inconsistencies" between the declaration and her deposition testimony—while never identifying a single inconsistency. The lower court similarly excluded all evidence relating to Smith's damages without providing a reason or basis for its decision. Such actions constitute an abuse of discretion and warrant reversal.

Finally, the district court also abused its discretion by failing to set a reasonable discovery schedule and by failing to grant a continuance of the schedule.

3

In setting the schedule, the lower court ignored both parties' proposed deadlines and instead allotted the parties only four months to complete all fact, class certification, and expert discovery. The lower court's schedule failed to provide the Appellant with sufficient time to develop an adequate record. And when faced with a justified request for a reasonable extension stemming from SunPath's and American Protection's gamesmanship, the court insisted on its initial deadlines despite prejudice to Smith and the proposed Class.

For all of these reasons, and as explained further below, Appellant requests that this Court reverse the judgment below.

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arose under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute. The district court likewise had pendent jurisdiction under 28 U.S.C. § 1367, *et seq.*, over Plaintiff-Appellant's Virginia state law claims. Additionally, the district court had diversity jurisdiction over the state law claims, under 28 U.S.C. § 1332, *et seq.*, because the parties are citizens of different states and the amount in controversy with respect to Plaintiff's individual claims exceeds $75,000.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the present appeal is from a final judgment disposing all of the parties' claims made by the

United States District Court for the Eastern District of Virginia and entered on January 27, 2023. JA1820. Appellant filed a notice of appeal on January 31, 2023. JA1821. The Notice of Appeal is timely under Fed. R. App. P. 3 and 4(a)(1)(A) as it was filed within thirty (30) days of the district court's entry of final judgment.

## STATEMENT OF ISSUES

1.      Whether the district court erred by concluding that SunPath does not meet the statutory definition of a "seller" under VA. CODE ANN. § 59.1-510, despite the fact all of the calls were on SunPath's behalf for the purpose of selling SunPath's VSCs/auto warranties.

2.      Whether the district court erred in concluding that the Act's presumption of liability under VA. CODE ANN. § 59.1-514.1(B)—which required SunPath to show by clear and convincing evidence both that SunPath did not retain American Protection to make telephone solicitation calls on its behalf or for its benefit <u>and</u> that the calls were made without SunPath's knowledge or consent—had been rebutted due to an absence of evidence showing that SunPath knew that the calls were being made illegally.

3.      Whether the district court further erred by denying Appellant's partial motion for summary judgment where the undisputed facts demonstrated that she received 122 calls attempting to sell her SunPath's VSCs without her prior express invitation or permission.

4.      Whether the district court abused its discretion by granting Appellee's first motion in limine—excluding all data produced by Five9, Inc. (the dialing service used to make the calls)—despite the fact Appellant promptly disclosed the records, which were later authenticated by Five9's record custodian, within the discovery period.

5.      Whether the district court abused its discretion by granting Appellee's second motion in limine—excluding all evidence relating to damages—absent any explanation.

6.      Whether the district court abused its discretion by striking Smith's declaration on the grounds the declaration was supposedly inconsistent with her deposition testimony without identifying any inconsistencies.

7.      Whether the district court abused its discretion by setting a four-month discovery schedule in a federal class action and refusing to extend the deadlines despite discovery delays caused by the Appellee.

## STATEMENT OF THE CASE

### A.    Factual Background

***SunPath hires third-party marketers to generate 100-percent of its revenue.***

SunPath develops and administers VSCs to consumers nationwide. *See* Call Center Marketing Agreement, JA711. That is, rather than conduct its sales "in-house," SunPath contracts with third-party marketers to telemarket on its behalf. *See*

6

JA726. One hundred percent of SunPath's revenue is derived from sales of its VSCs made by its third-party marketers. JA728.

On June 29, 2017, SunPath entered into a "Call Center Marketing Agreement" with American Protection. JA711. The Call Center Marketing Agreement requires American Protection to "actively market" SunPath's products within a specified geographic territory. JA711. The Call Center Marketing Agreement further requires American Protection to perform acts necessary to protect and safeguard the interests of SunPath and to maintain and service customers in accordance with SunPath's policies and procedures. JA711.

SunPath subsequently designated American Protection as a licensed representative or agent in Florida to sell its auto warranties. *See* JA755-757; JA759-760; JA722-725 (explaining SunPath's involvement in the Florida appointment and licensing process); *see also* JA739 (describing SunPath's appointment of American Protection as its "agent" in Florida).

### *American Protection initiates telemarketing calls on behalf of SunPath to solicit the sale of SunPath's VSCs*

Between 2017 and 2022, American Protection solicited sales on behalf of SunPath. JA731; JA732; JA736; JA746-747; *see also* JA410. SunPath conceded that during all times relevant to this complaint "American Protection was authorized to sell SunPath-related products". JA410.

Once a potential client is located, American Protection would submit the

potential client's information to SunPath for approval. JA735. If SunPath approved the sale, American Protection would be obligated under the Call Center Marketing Agreement to collect monthly payments from the client and hold SunPath's portion of the proceeds, referred to as the "net price", "in trust" for SunPath's benefit. JA744-745; JA712. American Protection is required to pay SunPath for a set amount, or the "cost", of the policy. JA744; *see also* JA712. Hence, American Protection was compensated for each sale by receiving the difference between the sale price and the "net price" set by SunPath for the sale of its VSCs. JA744; JA712; JA741-742.

During the course of their relationship, SunPath approved hundreds of contracts that were sold by American Protection. JA727. American Protection communicated with SunPath "weekly" regarding various matters, including "business matters, production information, product pricing . . ., [and] claim information." *See* JA733-734 (discussing American Protection's communications with SunPath's employees). SunPath would also inform American Protection of certain individuals who should be added to their DNC lists. JA740.

### *Smith received over 170 calls from American Protection pitching the sale of SunPath's VSCs*

Smith is a resident of Virginia and the primary user of the telephone number ending in 9650, which has a Virginia area code. *See* JA410; JA763-764. Smith registered her number on the National DNC Registry on November 8, 2019. JA411. Between May 26, 2020, and August 18, 2020, Smith received 172 calls initiated by

American Protection. *See* Summary of Five9 call records relating to Smith's phone number, JA767-774; JA777.[1]

Upon receiving a call placed by American Protection on May 28, 2020, at 12:51 p.m. ET, Smith feigned an interest in the products solely to ascertain the identity of the calling entity. *See* JA777; JA788; JA767. As a result, American Protection sent a follow up email to Smith on May 28, 2020, identifying American Protection as the caller and containing a link allowing her to purchase a SunPath VSC. *See* JA790-794; JA751-753 (explaining that the email was generated by American Protection's internal CRM system).

On June 11, 2020, at 8:49 a.m. ET, Smith sent an email to American Protection stating that she was not interested and directing American Protection, in no uncertain terms, "Do not call me anymore." *See* JA796-797. Despite this clear stop request, American Protection continued to call her, placing an additional 116 calls to Smith between June 11, 2020, and August 18, 2020. *See* JA767-774; JA777.

Throughout all of these calls, American Protection solicited Smith to purchase only one product—a SunPath VSC. Smith specifically testified that she recalled that the caller identified SunPath as the company whose products were being sold during the calls. *See* JA801 ("Q: Do you remember anything about the language that led

---

[1] The Five9 Call Records data file is available in native format for inspection by the Court upon request.

you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were – what they were – I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath."). Further, the May 28, 2020, follow-up email that American Protection sent to Smith contained a link soliciting her to purchase a SunPath VSC. JA790-794.

American Protection's internal CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020, email to Smith as being SunPath's VSC. *Compare* JA803, *with* JA790-794. The CRM system reveals no other VSC quotes. *See* JA803. Additionally, American Protection's designee testified that after it identified the plan for which a particular customer was most qualified, they would then pitch the customer to purchase only that company's plan. JA737. Hence, if the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. JA738. Smith never purchased a SunPath product. JA411.

American Protection conceded that it lacked any written evidence of prior express invitation or permission to place calls to Smith, and it was not aware of where it may have obtained her contact information. JA749-750; JA748. SunPath

10

likewise does not possess any record of prior express invitation or permission for it to place telemarketing calls to Smith. JA411.

## B.    Procedural Background

*After receiving the unlawful calls, Smith files suit against SunPath for its violations of the VTPPA, and the Court sets a short discovery schedule.*

On January 26, 2022, Appellant filed a class action complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and the VTPPA. JA11-25. After denying SunPath's motion to dismiss, the district court issued an initial scheduling order on August 5, 2022, instructing the parties to develop a discovery plan that would be completed by December 9, 2022. JA26. On August 24, 2022, the parties filed a joint discovery plan setting forth the parties' positions. JA37-43. In the proposal, Appellant requested a short extension to the proposed discovery cut off until December 30, 2022, citing the need to "identify all third parties involved, effectuate any subpoenas, and take depositions that may be necessary." JA37-43. On September 7, 2022, the district court issued its Scheduling Order, which denied both parties proposed discovery plans and instead reaffirmed the discovery closure date of December 9, 2022. JA44-48.

*Through no fault of her own, Appellant encountered difficulties gathering necessary evidence and sought judicial intervention to extend the discovery schedule.*

From the beginning, the case was plagued by discovery misconduct on the part of SunPath and its marketer, American Protection. Smith spent approximately

11

three weeks working to identify the legal name of American Protection to effectuate a subpoena.[2] JA1826-1827. After identifying the legal name, Smith promptly issued subpoenas to testify at a deposition and to produce documents directed to American Protection on August 24, 2022. JA54.

On September 16, 2022, Kobi Chukran, the president of American Protection, responded to the subpoenas by producing only a handful of documents, including communications with SunPath, and by claiming that American Protection possessed no records of any calls. JA54-55. In response, Smith requested Chukran's availability for a deposition and a call to discuss American Protection's responses to the subpoena. JA55. Chukran responded that he would only answer questions during a deposition—which he stated could not take place until November. JA55.

In response, Appellant took two actions: she promptly scheduled the deposition for November 1, 2022, and she filed a motion to modify the case schedule based on the unexpected difficulties gathering evidence from SunPath's marketer. JA730; JA49-65. The motion sought a modest sixty (60) day extension of the existing discovery schedule to provide sufficient time to gather the necessary class records. JA49-65. On October 14, 2022, the district court denied the requested

---

[2] Despite being in communication with American Protection prior to the commencement of discovery, SunPath did not identify American Protection in its initial disclosures, nor did it disclose the existence of its relationship until after the communications were received in response to the subpoena.

extension. JA80.

***Following the district court's denial of the requested extension, Smith obtains relevant documents and data with only days remaining in the discovery schedule***

On November 1, 2022, Smith's counsel deposed American Protection's representative, Mr. Chukran. JA444. Unfortunately, Chukran terminated the deposition roughly half-way through counsel's questioning indicating that he needed to attend to a personal matter. JA444-445. Smith's counsel promptly demanded that the deponent return to complete the deposition, and American Protection's designee was re-deposed on November 9, 2022. JA445. During the second deposition, American Protection revealed (for the first time) that it utilized a telephone system provided by Five9, Inc. ("Five9") to place calls during the relevant period. JA445.

Mere hours following this disclosure, Smith's counsel issued a subpoena to Five9 seeking, *inter alia*, call records and documents reflecting the functionality of the dialing system. JA445; JA1636. On November 30, 2022, Five9 produced the American Protection call records. JA1636-1637. Approximately two hours later, Smith's counsel produced the Five9 call records to SunPath. JA1637. On December 2, 2022—less than 2 full days after the production of the Five9 call records—Smith testified at a deposition taken by SunPath. JA1637. During her deposition, Smith testified repeatedly that the Five9 "call logs" were obtained via subpoena and that they revealed all of the calls placed by American Protection for SunPath's benefit. *See* JA1654-1663. Smith's counsel also discussed the Five9 call records with

SunPath's counsel shortly after their production, including discussing their applicability to class certification as well as the calls at issue. JA1637.

On December 8, 2022, eight days after the call records were procured and immediately produced to SunPath, Smith supplemented her discovery responses to again disclose that she intended to rely on the Five9 records. JA1680-1688. Smith amended her Rule 26(a)(1) initial disclosures on the following day to include Five9 as a potential witness. JA1573-1577.

***The parties file cross-motions for summary judgment, and the lower court—excluding the Five9 call records, Smith's declaration, and all evidence of damages—enters judgment in favor of SunPath.***

Following the close of discovery, SunPath filed a motion for summary judgment, JA467-668, and Smith filed a cross-motion for partial summary judgment. JA689-806. SunPath also filed a series of evidentiary motions, including a first motion in limine to exclude the Five9 records, a motion to strike Smith's declaration filed in support of summary judgment, and a second motion in limine to exclude all evidence of damages at trial. JA1339-1409; JA1410-1529; JA1530-1609.

On January 27, 2023, the district court held a 17-minute hearing on the pending motions. During the hearing, the lower court granted SunPath's motion for summary judgment and denied Smith's cross motion, finding that there can only be one seller under the Act and that, in the court's view, it is American Protection, not Sunpath. *See* JA1829-1830 ("SunPath would not be a seller. The seller in this case

14

is American Protection Corp. And the statute doesn't talk about multiple sellers; it says a seller. It doesn't say the sellers. Now, it may be a drafting error on the part of the legislature."). The district court expounded on this reasoning, stating that:

> But they don't say "sellers," they say "a seller" on whose behalf or for whose benefit a telephone solicitor makes or initiates a phone call. Well, the initial person upon whose behalf, Samantha and the others, are making these phone calls, is American, in my view, as I read the statute, and it's not SunPath. SunPath may ultimately be a beneficiary, that's true, but so is American. American – a product of American is being sold in the sense that it's getting its fee for the brokerage. So I am satisfied that under the Virginia statute, if read literally, SunPath would not be liable.

JA1832.[3] Moreover, the lower court rejected Appellant's argument that American Protection was actually the telephone solicitor, stating that:

> [I]f you look at the statute, just the statue itself and how it describes what is a phone solicitor, the solicitors in this case are Samantha and these other people who are named in your papers. They're the individuals who make the problematic phone call. They're not employees of SunPath; they are contractors or subcontractors of…American Protection.

JA1830.

The district court then concluded that even if SunPath were the "seller", the presumption of joint and several liability applicable to sellers and telephone solicitors had been rebutted because there is "no evidence in this record that SunPath

---

[3] The lower court explained that "Samantha is also selling an American product, because what—as a result of Samantha's phone call, American is going to make money because of their relationship with SunPath." JA1831.

would be on notice that any solicitors were operating outside the law." JA1832. This is despite the fact that the VTPPA requires no such notice or knowledge at all. The lower court also expressed uncertainty regarding the purpose of VA. CODE ANN. § 59.1-514.1(B), remarking that "the Virginia legislature might, 'might,' want to be reaching even companies like SunPath or, you know, Liberty Mutual or any other company that uses marketers, they might or might not want to be." JA1834.

The district court also granted each of SunPath's pretrial motions with limited explanation. It excluded the Five9 records by finding that Smith and her counsel were somehow "not sufficiently diligent in pursuing" the records, JA1826, and, applying the evidentiary burden of a trial, because a witness was needed from Five9 to supposedly explain the records. JA1829 ("Anyway, this is not how evidence comes into court."). The lower court also granted SunPath's motion to strike Smith's declaration by claiming that there were "significant inconsistencies" between the declaration and her deposition testimony and discovery responses. JA1836. The district court did not identify any such inconsistencies, however. Finally, the district court excluded all evidence of damages without any explanation. JA1819. As explained below, these rulings prejudiced Smith and the alleged class.

### SUMMARY OF THE ARGUMENT

I.      The district court erred in granting SunPath's motion for summary judgment. First, the lower court's ruling is predicated on its conclusion that SunPath

was not the "seller" under the VTPPA and that American Protection, which earned a brokerage fee for selling SunPath's VSCs, was the real "seller". The lower court's reading of the statute is contradicted by the Act's plain language. The VTPPA was specifically amended in 2019 to clarify that companies like SunPath—which retain third party marketers like American Protection to solicit the sale of their products and services (known as "telephone solicitors")—are *presumed* to be jointly and severally liable for calls that violate the Act. The lower court's interpretation ignores this and treats American Protection as the "seller" and American Protection's individual employees or contractors who made the calls as the "telephone solicitors".

The lower court further erred by finding that any presumption of liability had been rebutted because SunPath supposedly lacked knowledge that the calls being made on its behalf were illegal. That ruling misconstrues VA. CODE ANN. § 59.1-514.1(B), which required SunPath to show by "clear and convincing" evidence both that it did not retain American Protection to make solicitation calls for its benefit *and* that the calls were made without its knowledge or consent—specific knowledge that the calls were unlawful, apparently dispositive in the eyes of the lower court, is actually irrelevant to the inquiry.

II.    The district court also committed reversible error by failing to grant Appellant's motion for partial summary judgment. It is undisputed that Smith received 122 calls from American Protection, each one soliciting Smith to purchase

17

a SunPath auto warranty. Smith never consented, and neither American Protection nor SunPath has any record of prior express invitation or permission to place the calls. There was no reason for the lower court to shield SunPath from liability.

III.    The district court abused its discretion when it granted all of SunPath's pretrial evidentiary motions. First, the lower court erroneously excluded all evidence produced by Five9 despite the fact Appellant promptly disclosed such records, which were later authenticated by Five9's record custodian, upon receipt and prior to the close of discovery. Second, the lower court erroneously struck Appellant's declaration filed in support of her motion for partial summary judgment on the grounds that it was inconsistent with her deposition testimony without identifying a single inconsistency. And third, the court abused its discretion by excluding all evidence relating to Appellant's damages without any explanation for its ruling.

IV.    The district court also abused its discretion by failing to set a reasonable discovery schedule and by denying extensions necessitated by Appellee's foot-dragging in discovery. The court's initial schedule did not permit sufficient time to complete discovery, and its denial of an extension prejudiced Appellant.

## ARGUMENT

## I.    Standard Of Review

This Court's "standard of appellate review for the granting or denial of a summary judgment motion is de novo." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.

1994). Likewise, this Circuit reviews an issue of statutory interpretation de novo, and where the question involves a state law issue, its "role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016) (citation omitted). Under Virginia law, courts seek "to effectuate the intent of the legislature as expressed by the plain meaning of the words used in the statute." *Llewellyn v. White*, 297 Va. 588, 595, 831 S.E.2d 494, 497 (2019) (citation omitted). Courts should apply "the plain language unless the words are ambiguous or such application would render the law internally inconsistent or incapable of operation." *Id.*

A district court's evidentiary rulings are accorded "substantial deference and may not [be] reverse[d] absent an abuse of discretion." *Jones v. Ford Motor Co.*, 204 F. App'x 280, 282 (4th Cir. 2006) (citing *United States v. Moore*, 27 F.3d 969, 974 (4th Cir.1994)). Issues relating to the scheduling order, such as a denial of a continuance, are reviewed under an "abuse of discretion standard" as well. *United States v. Copeland*, 707 F.3d 522, 531 (4th Cir. 2013) (citation omitted). "A district court abuses its discretion if it acts arbitrarily or irrationally, *see id.*, or if its conclusions are guided by 'erroneous legal principles' or rest upon 'clearly erroneous factual finding[s].'" *Jones*, 204 F. App'x at 282 (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999)). Further, "any abuse of discretion is reviewed for harmless error. An error is harmless when this Court can

19

say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors." *Snoeyenbos v. Curtis*, 60 F.4th 723, 733 (4th Cir. 2023) (internal citations and quotation marks omitted).

## II.    The District Court Erred By Entering Summary Judgment In Favor Of SunPath On The Grounds That American Protection, And Not SunPath, Was The Lone "Seller" Under The VTPPA.

This Court should overturn the district court's grant of summary judgment in SunPath's favor for two related reasons. First, the lower court's reading of the statute turns the plain language of the VTPPA on its head. SunPath, and not American Protection, is the "seller", and American Protection, the company SunPath hired to solicit customers to purchase SunPath's auto warranties, is the "telephone solicitor." Second, the court erred by finding that even if SunPath could be considered the "seller", the statute's presumption of joint and several liability had been rebutted due to a supposed absence of evidence showing "that SunPath would be on notice that any solicitors were operating outside of the law." JA1832. The Act does not place the burden on Smith to show that SunPath knew its solicitor was violating the law; rather, the VTPPA requires that SunPath demonstrate, by "clear and convincing" evidence, both that it did not retain American Protection to make solicitation calls for its benefit *and* that the calls were made without its knowledge or consent. The court's ruling ignores the actual requirements under the Act.

For these reasons and as explained further below, the lower court's entry summary judgment in favor of SunPath was made in error and should be reversed.

**A.    The Virginia legislature amended the VTPPA in 2019 to hold companies like SunPath liable for unlawful calls placed by their third-party vendors.**

In 2019, the Virginia legislature amended the VTPPA to address an ongoing issue: though the Act prohibited unsolicited calls, the wording had enabled a company to avoid liability simply by hiring a third-party vendor to place them on the company's behalf. VA. CODE ANN. § 59.1-514.1 was added to close this loophole by clarifying that "sellers" and "solicitors" should be held jointly and severally liable:

> A seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of § 59.1-511, 59.1-512, 59.1-513, or 59.1-514 and the telephone solicitor making or initiating the telephone call shall be jointly and severally liable for such violation.

VA. CODE ANN. § 59.1-514.1(A) (West). The Act further applies a presumption of liability where a seller's property, goods, or services are offered during a call:

> A telephone solicitation call offering or advertising a seller's property, goods, or services ***shall be presumed*** to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call.

VA. CODE ANN. § 59.1-514.1 (West) (emphasis added). To rebut this presumption,

the seller must show by "clear and convincing evidence" that: (1) it did not "retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit", and (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B).

The legislative history surrounding the passage of the 2019 amendment supports this plain reading of the Act. At the Senate hearing approving the amendment, the bill's patron, Senator Black, described the amendment as follows:

> What has happened is people started to offshore these things. So what this bill does is it says that if people start receiving these solicitations, commercial solicitations, by telephone that they can take action in general court and **there will be a presumption that it was made at the behest of the particular company that it is advertising**, however, there is, it is a rebuttable presumption . . .

Virginia Senate Commerce and Labor Committee Hearing, January 21, 2019[4] (emphasis added and edited for clarity). The Virginia House of Delegates echoed this understanding, with the bill's patron, Delegate Bell, explaining that:

> What it really seeks to do is also correct the problem that we have now current law the seller who hire[s] a third-party solicitor would actually can avoid charges, the solicitor would get charges, so the seller can just go hire another solicitor and keep on doing this kind of harassment to folks. So this seeks to put some correction on that, put some penalties in place, and hopefully stop some of these bad calls.

---

[4] Available at https://virginia-senate.granicus.com/ViewPublisher.php?view_id=3 (last visited June 1, 2023)

Virginia House of Delegates Commerce and Labor Hearing, January 31, 2019.[5] The legislative history thus supports Smith's reading that § 59.1-514.1(B) was intended to hold companies that hire third parties to solicit their products jointly and severally liable for any violations of the Act unless the presumption is rebutted.

As explained below, the district court erred in two related ways. First, the lower court misinterpreted the VTTPA when concluding that SunPath was not the "seller". Second, the district court erred in finding that—even if SunPath were the "seller"— the presumption of joint and several liability had been rebutted.

**B.    This Court should reverse the entry of summary judgment because SunPath is "the seller" under the VTPPA—as all of the calls solicited Smith to purchase SunPath's auto warranties—while American Protection was the "telephone solicitor".**

The district court first erred in concluding that SunPath was not the "seller" under the Act. The Act defines a "seller" as "any *person* on whose behalf or for whose benefit a telephone solicitation call offering or advertising *the person's* property, goods, or services is made or initiated." VA. CODE ANN. § 59.1-510 (West) (Emphasis added). The district court, however, found that the VTPPA allowed for only a single "seller" and that American Protection met the definition (while its independent contractors were the "telephone solicitors"). JA1829-1830. In reaching

---

[5] Available at https://virginiageneralassembly.gov/house/committees/commstream.html (last visited June 1, 2023).

its conclusion, the district court stated that:

> But they don't say "sellers," they say "a seller" on whose behalf or for whose benefit a telephone solicitor makes or initiates a phone call. Well, the initial person upon whose behalf, Samantha and the others, are making these phone calls, is American, in my view, as I read the statute, and it's not SunPath. SunPath may ultimately be a beneficiary, that's true, but so is American. American – a product of American is being sold in the sense that it's getting its fee for the brokerage. So I am satisfied that under the Virginia statute, if read literally, SunPath would not be liable.

JA1832. This conclusion seriously misunderstands the VTPPA.

First, The lower court's statement that, "Well, the initial person upon who behalf, Samantha and the others, are making these phone calls, is American, in my view, as I read the statute, and it's not SunPath," misconstrues the language in the definition of "seller" limiting the "person on whose behalf or for whose benefit" the call is made to "the person" whose "property, goods, or services are offered or advertised on the call." Applied here, it is undisputed that the calls were on SunPath's behalf and solely offered or advertised SunPath's VSCs. SunPath hired American Protection to make calls soliciting SunPath's VSCs through their Call Center Marketing Agreement. JA711. The callers identified SunPath as the company whose products were being pitched during the calls with Smith. JA801. Smith also received a follow-up email on May 28, 2020, containing a link soliciting purchase of a SunPath VSC. JA790-794. American Protection's own representative testified that, after identifying the best VSC for a given consumer, it would exclusively solicit

the sale of that plan, and it would not later attempt to solicit the consumer to purchase a VSC from a competing company if the first company was rejected. JA737-738. And American Protection's CRM system data shows that the only quote it created for Smith was for a "Diamond 48/75,000" VSC—the same plan identified by email as SunPath's VSC. *Compare* JA803, *with* JA790-794. In short, the record shows that every call solicited Smith to purchase one product: SunPath's VSCs.

At the same time, the record is wholly devoid of any evidence showing that American Protection was offering its *own* services on the calls. This is because <u>none</u> of the calls solicited Smith or any other alleged class member to purchase American Protection's telemarketing services or any other American Protection products or services. American Protection does not offer its own VSCs. Indeed, the district court did not even attempt to identify a standalone American Protection product supposedly being sold on the calls, stating instead that "a product of American [Protection] is being sold in the sense that it's getting its fee for the brokerage." JA1832. It is axiomatic that American Protection's brokerage fee for selling SunPath's auto warranties was not a product or service being offered on the calls— SunPath's auto warranties unquestionably were. Indeed, the lower court's reasoning confuses the fact that while American Protection may have benefitted from the sale of SunPath's VSCs, that does not lead to the conclusion that American Protection's products or services were being offered or advertised on the call as opposed to

SunPath's warranties so as to render American Protection "the person" referred to in the Act's definition of "seller."

The lower court similarly misinterpreted the term "telephone solicitor", which is defined as "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." VA. CODE ANN. § 59.1-510 (West). American Protection plainly meets this definition. Pursuant to the Call Center Marketing Agreement, American Protection made or initiated, or caused other persons, like Samantha, to make or initiate calls for SunPath's benefit, soliciting SunPath's auto warranties. Despite this, the district court stated that:

> [I]f you look at the statute, just the statue itself and how it describes what is a phone solicitor, the solicitors in this case are Samantha and these other people who are named in your papers. They're the individuals who make the problematic phone call. They're not employees of SunPath; they are contractors or subcontractors of…American Protection.

JA1830. This again misreads the Act. American Protection, as the solicitor, "caused another person", namely Samantha and the other "contractors or subcontractors of American Protection", to make or initiate telephone solicitations. There is <u>no</u> evidence showing that American Protection's subcontractors, somehow acting as the true telephone solicitors, could have caused others to make the calls.

Further, and as set forth above, the calls are on behalf of for the benefit of SunPath as the seller—the lower court's misinterpretation of "seller" should not be

permitted to spill over into its misreading of solicitor.

Additional sections of the Act support Appellant's understanding of the statute. Again, for example, section 59.1-514.1(A) assigns a presumption of joint and several liability to "seller[s] on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call" in violation of the statute. Likewise, a call offering or advertising a seller's products "shall be presumed to have been made or initiated *on behalf of or for the benefit of a seller*." *Id.* § 59.1-514(B) (emphasis added). Accordingly, the central inquiry asks whether the call offered or advertise the person's property, goods, or services. Here, a reasonable reading of the Act, offered by Smith, is that the product was SunPath's auto warranties; an unreasonable reading, adopted by the lower court, is that the calls offered an American Protection product in the sense that it collected a brokerage fee.

That the callers identified themselves as being with American Protection does not, as suggested by the lower court, change the result. JA1830 ("They identify themselves as representing American.") This does not change the SunPath auto warranty into an American Protection warranty. Also, the callers were required to identify American Protection as the solicitor. *See, e.g.*, VA. CODE ANN. § 59.1-512.

As a final point here, the lower court's misreading of the Act should be rejected on policy grounds. If upheld, the district court's interpretation would effectively immunize the very companies the 2019 Amendment was intended to

reach—those who *hire* marketers to sell their products—because every solicitor is compensated in some form and can claim they're the real "seller". Fortunately for consumers, the lower court's conclusion that a "brokerage fee" was a product being offered on the calls stretches the plain language of the Act passed its breaking point: the only product pitched in this case was SunPath's car warranties, even if American Protection benefitted from the sale. Furthermore, individual call center agents, many of whom are likely judgment proof, were not who the legislature sought to hold liable through the definition of telephone solicitor. Indeed, it would make little sense to interpret the Act as allowing claims against call centers and their employees or contractors but not against the company whose products are being sold on the calls—particularly when the Act was amended to ensure the opposite result.

In short, the lower court misinterpreted the VTPPA. SunPath is the seller, and this Court should reverse the entry of summary judgment in SunPath's favor.

### C.    The district court further erred by concluding that, even if SunPath was the "seller", the presumption of joint and several liability had been rebutted.

To be sure, the district court held that even if SunPath could be considered the "seller", the Act's presumption of joint and several liability between sellers and solicitors had been rebutted, explaining that:

> The other thing is, even if SunPath were to be considered a seller, I think under the facts of this case under Section – Subsection B of 59.1-514.1, the rebuttable presumption would be met here, because there is absolutely no evidence in this record that SunPath would be on notice

28

that any solicitors were operating outside of the law.

JA1832. The lower court's understanding of the VTPPA is again inaccurate. The Act's presumption of joint and several liability may be rebutted if:

> …it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit <u>and</u> that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent.

VA. CODE ANN. § 59.1-514.1(B) (West) (emphasis added). There are therefore two requirements: (1) the seller must not have retained or requested the solicitor to make the calls, and (2) the calls were made without the seller's knowledge or consent. Both must be shown, by the seller, by clear and convincing evidence.

This Court should reverse. First, the lower court's reading improperly places the burden on Smith as the called party to show that SunPath not only lacked knowledge that the calls were being made but that SunPath had specific knowledge that the calls were being made unlawfully. Such a requirement simply does not exist in § 59.1-514.1(B), and the lower court is without authority to rewrite the Act to add one. In other words, whether SunPath knew the calls were being made unlawfully is wholly beside the point.

Second, and related, SunPath cannot rebut the presumption in any case. SunPath undeniably retained American Protection to place the calls at issue. SunPath executed a "Call Center Marketing Agreement" with American Protection and

designated American Protection as a licensed representative in the State of Florida to sell its VSCs. JA711-719. SunPath conceded that during all times relevant "American Protection was authorized to sell SunPath-related products". JA410. Put simply, there is no basis to concluded that SunPath did not "retain or request" American Protection "to make telephone solicitation calls" at issue. The record demonstrates the exact opposite.

Even if the Court could somehow ignore SunPath's hiring of American Protection, the presumption stands unrebutted because SunPath knew about and consented to the calls. VA. CODE ANN. § 59.1-514.1(B). As such, the Court should reverse the district court's entry of summary judgment to the extent it was based on its conclusion that the presumption of joint and several liability had been rebutted at all, let alone by clear and convincing evidence.

## III.  The District Court Also Erred In Denying Partial Summary Judgment In Favor Of Smith With Respect To Count II.

In addition to erring by granting summary judgment in favor of SunPath, the lower court similarly erred by denying summary judgment in favor of Appellant Smith.[6] As explained below, no reasonable finder of fact could conclude that

---

[6] The District Court paid little attention to the class allegations, choosing instead to dispose of the case on summary judgment. To be sure, however, any grant of summary judgment in Smith's favor should be entered without prejudice to Smith's ability to seek class certification, notwithstanding any generally recognized prohibition against one-way intervention. *See, e.g.*, *Gessele v. Jack in the Box, Inc.*, No. C10–0960, 2012 WL 3686274, at *3 (D. Or. Aug. 24, 2012) (explaining that the

American Protection, as opposed to SunPath, was the "seller" under the VTPPA or that any statutory exception bars Smith's recovery.

The VTPPA prohibits "telephone solicitors" from initiating "telephone solicitation calls" to numbers registered on the National DNC Registry. VA. CODE ANN. § 59.1-514(B) (West) ("No telephone solicitor shall initiate or cause to be initiated a telephone solicitation call to a telephone number on the National Do Not Call Registry…."). The Act defines a "telephone solicitation call" as:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

VA. CODE ANN. § 59.1-510.[7] The term "telephone solicitation call" does not include, however, a telephone call made to any person:

---

one-way intervention rule bars granting class certification after the merits have already been decided in a plaintiff's favor); *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (denying plaintiff's motion for summary judgment as premature under one-way rule).

[7] The VTPPA differs materially from the federal TCPA in certain respects. Unlike the TCPA, the VTPPA does not require proof that the caller used an automatic telephone dialing system or a pre-recorded voice. Similarly, following the 2019 Amendment the VTPPA does not require that the caller have an agency relationship

(i) with that person's prior express invitation or permission as evidenced by a signed, written agreement stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone number to which the call may be placed, (ii) with whom the person on whose behalf the telephone call is made has an established business relationship, or (iii) with whom the telephone solicitor making the telephone call has a personal relationship.

VA. CODE ANN. § 59.1-514(D) (West) (emphasis added). The calls meet the definition here.

The undisputed facts demonstrate that Smith registered her number on the National DNC Registry in 2019. *See* JA411. Despite this, Smith received 172 calls from American Protection between May 26, 2020, and August 18, 2020. JA767-774; JA777. All of the calls were placed for the purpose of soliciting Smith to purchase a SunPath VSC. JA801; JA790-794; JA803. Smith never gave express invitation or permission, in writing or otherwise, to receive the calls, and American Protection conceded both that it lacked any written proof of invitation or permission and that it was unaware of how it obtained Smith's contact information. JA728-750. SunPath similarly failed to show any record of prior express invitation, permission, or consent. JA411. Further, neither SunPath nor American Protection has asserted any "personal relationship" with Smith.

Of the three exceptions to the definition of a "telephone solicitation", only the EBR defense arguably has any application here. The VTPPA defines an EBR as:

---

with the party on whose behalf the calls were made.

> [A] relationship between the called person and the person on whose behalf the telephone solicitation call is being made or initiated based on (i) the called person's purchase from, or transaction with, the person on whose behalf the telephone solicitation call is being made or initiated within the 18 months immediately preceding the date of the call or (ii) the called person's inquiry or application regarding any property, good, or service offered by the person on whose behalf the telephone solicitation call is being made or initiated within the three months immediately preceding the date of the call.

VA. CODE ANN. § 59.1-510 (West) (emphasis added). Given the Parties' agreement that Smith never purchased a SunPath product, JA411, the central question for the purpose of establishing an EBR asks whether Smith ever made inquiry regarding SunPath's products. Courts have found that inquiries "must … be such to create an expectation on the part of the consumer that a particular company will call them." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019) (citing 68 Fed. Reg. 44,144) (applying the TCPA's EBR definition).[8]

Relevant here, on May 28, 2020, Smith received a call from American Protection and feigned interest in the products being offered to ascertain the identity of the caller. JA777; JA788; JA767. At that point, Smith concedes that she established a business relationship with American Protection sufficient to permit it to continue to call her. *See Charvat*, 2019 WL 13128407, at *4-5 (finding a feigned inquiry sufficient to establish an EBR). On June 11, 2020, following the receipt of

---

[8] The VTPPA's EBR definition is substantially similar to the TCPA's definition. *See* 47 C.F.R. § 64.1200(f)(5).

additional calls, Smith sent an email to American Protection expressing that she was no longer interested in purchasing any VSC and stating, "Do not call me anymore." JA796-797. At this point, Smith terminated her EBR with American Protection and all subsequent calls were unlawful. *See* VA. CODE ANN. § 59.1-514(D) (West) ("The exemption for an established business relationship or a personal relationship shall not apply when the person called previously has stated that he does not wish to receive telephone solicitation calls as provided in subsection A"). In sum, Smith concedes that she had an EBR between May 28, 2020, and June 11, 2020, and that the calls placed during this timeframe are not actionable.

Despite terminating the EBR, American Protection continued to bombard Smith's phone—placing another 116 calls to Smith between June 11, 2020, and August 18, 2020—over 1.7 calls per day. *See* JA776-786; JA767-774. While SunPath sought to read a 30-day grace period into the Act to minimize the damages, JA485, the VTPPA contains no such provision.[9] Instead, the VTPPA states that an EBR no longer applies where the person revoked prior consent. *See* VA. CODE ANN. § 59.1-514(D).

---

[9] Unlike the VTPPA, federal regulations implementing the TCPA contain a 30-day grace period following the receipt of a stop calling request. To be sure, even if the 30-day grace period were to apply to the termination of an EBR under the VTPPA, American Protection still placed 50 solicitation calls more than 30-days after Smith's stop request.

Consequently, the district court erred by denying Appellant's motion for partial summary judgment with respect to 122 calls—including 6 calls prior to the May 28, 2020, inquiry and 116 calls placed to her after June 11, 2020, termination of the EBR). All such calls were unlawful "telephone solicitations" as defined by the VTPPA. As such, this Court should reverse the denial of summary judgment in Appellant's favor.

## IV.     The District Court Abused Its Discretion By Granting SunPath's Pretrial Motions And Excluding Relevant Evidence.

In addition to erring with respect to summary judgment, the district court abused its discretion by granting all of SunPath's pre-hearing evidentiary motions—including SunPath's motion to exclude the Five9 call data, motion to strike Smith's declaration, and motion to exclude evidence of damages—with little explanation for its decisions. Such rulings were incorrect on both the law and the facts, and, particularly when viewed in the context of the Court's truncated 4-month case schedule, they acted to prejudice Smith's ability to prosecute her claims. As a result, the decisions were guided by "erroneous legal principles" or rest on "clearly erroneous factual findings," and should be reversed.

### A.     The district court abused its discretion by excluding the Five9 call records.

The district court abused its discretion by granting SunPath's first motion in limine to exclude all evidence produced by Five9, including the data showing all of

the calls that were made. The lower court's decision was premised on two incorrect conclusions: first, that Smith and her counsel "were not sufficiently diligent in pursuing" the records, JA1826, and second, that a witness from Five9 was needed to explain the records. JA1829. Neither of these findings was accurate or warranted excluding the records. As such, and as explained below, the decision to bar the Five9 data should be reversed.

> **1.      Given the truncated case schedule, Smith and her counsel pursued the Five9 data as quickly as possible in the face of foot-dragging by the Appellee.**

First, Smith and her counsel were certainly diligent in their pursuit of the Five9 records. Indeed, and as set forth in Section V, *infra*, Smith's counsel prosecuted this case at a feverish speed given the lower court's adherence to an unreasonably short "rocket docket." Nevertheless, at the hearing on summary judgment, the lower court faulted Smith for not issuing the American Protection subpoena more quickly after its August 5, 2022 Order permitting discovery. JA1826. But Smith issued subpoenas directed to American Protection just 19 days later on August 24, 2022—which was six days after the parties Rule 26(f) conference and the same day that the parties filed their discovery plan. JA445; JA1636; JA37-43.

The district court's insistence that the subpoena should have been issued earlier because Smith "knew about American Protection Corporation . . . before discovery started" is not true. Prior to discovery, Smith only knew that the calls were

placed by "American Protection Corporation"—she and her counsel did *not* know that it was a fictitious name of Chukran Management Group, LLC. Any short delay, if it can even be fairly characterized as such, was spent identifying the correct legal entity. Smith was also unaware that SunPath had been in contact with American Protection prior to the commencement of discovery but chose to withhold the true name of the legal entity until after communications were disclosed in response to the subpoenas. As such, any delay in issuing the initial subpoenas was the result of discovery gamesmanship on the part of SunPath—for which the lower court inexplicably penalized Appellant Smith.[10]

It is worth noting that the court also erroneously faulted Smith for not "taking advantage" of seeking court intervention if she was having a problem with a deadline.[11] JA1826. The record squarely contradicts this claim. That is, after American Protection's representative informed counsel that he could not appear for a deposition until November, Smith promptly took two actions: she filed a motion to modify the existing case schedule and, as backup, she scheduled the deposition

---

[10] SunPath also failed to disclose American Protection in its initial disclosures despite being aware that it had hired American Protection to solicit the calls and of its own anticipated use of information in American Protection's possession.

[11] The lower court's additional insistence that Smith should have raised any disputes with American Protection (a Florida based company) with the lower court ignores the fact that any motion to compel would have to filed in the Southern District of Florida. *See* Fed. R. Civ. P. 45(d).

on November 1, 2022. JA730; JA49-65. The district court denied the motion and instructed Smith to "find a date [for the deposition] as soon as possible." JA238. Hence, Smith sought court intervention, that relief was denied, and then the Court faulted Smith for not seeking court intervention in the first place.

In any case, the Five9 records—showing all the calls that were made on SunPath's behalf per the contract SunPath had entered into with American Protection—were disclosed to SunPath as quickly as possible upon receipt. Smith's counsel then attempted to depose American Protection on November 1, 2022. JA444. American Protection's designee, however, terminated the deposition roughly half-way through counsel's questioning due to a supposed family issue. JA444-445. Smith's counsel was eventually able to complete the deposition on November 9, 2022. JA445. During the second examination, American Protection revealed for the first time that it utilized a telephone system provided by Five9 to place calls during the relevant time. JA445. Within hours, Smith issued a subpoena directed to Five9 for the calls. JA445; JA1636. On November 30, 2022, Five9 produced the American Protection call records, and Smith's counsel disclosed them to SunPath's legal team a mere two hours later. JA1636-1637.

Smith conformed her testimony and discovery responses based on the newly discovered records. Just two days following the production of the Five9 records, Smith sat for her deposition and testified as to her understanding regarding how the

Five9 "call logs" were obtained and that they showed all of the calls placed by American Protection to sell SunPath's auto warranties. JA1654-1663. On December 8, 2022, Smith supplemented her discovery responses to include the Five9 records, and the next day she updated her initial disclosures—all prior to the close of discovery. JA1680-1688; JA1573-1577.

In short, the lower court's faulting of Smith for a supposed lack of diligence relies on erroneous factual findings and should be reversed.

> **2.** **The lower court also abused its discretion in excluding the Five9 records, which had been authenticated by Five9's custodian, on the basis that a witness from Five9 was needed to explain the records to a judge or jury.**

The court's alternative basis for excluding the records—that a witness from Five9 was needed who could explain the records to a judge or a jury, JA1829—is also erroneous. During the hearing, Smith argued, and the lower court agreed, that the call records did not require an expert witness to authenticate. JA1828-1829. Smith also argued that the records could be considered on summary judgment because they would be admissible were the case to proceed to trial. JA1625-1628. Relevant here, Five9 had provided a declaration of its records custodian, which authenticated the documents for the purposes of summary judgment. JA1632-1634. To be sure, there is no harm is considering a custodial declaration, even if it was executed after the close of discovery, where the underlying data has been disclosed. *See Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933, at *6 (E.D.

Cal. May 19, 2017) (no harm and refusing to strike a custodian declaration produced after the close of discovery "where defendants gave plaintiffs the data underlying both declarations during discovery."); *Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014) ("Four of the five declarants merely authenticated documents already in the record. The City's non-disclosure of these witnesses was harmless."). And even if the custodian's declaration was excluded, Five9 could still appear and authenticate the records at trial. In other words, the records were (or could be) authenticated.

Unfortunately, the exclusion of the records was not harmless. The records contain the only reliable evidence of all of the calls at issue in this case. By excluding them based on evidentiary principles, the court stripped Smith of the materials she needed to certify the class [12] and demonstrate her damages—as damages are calculated on a per call basis, records showing the total number of calls and other data are the best evidence of Smith's and the other alleged class members' damages. The Court's decision was premised on clearly erroneous factual and legal findings and should be reversed.

---

[12] Had the lower court correctly considered class certification ahead of summary judgment, it would have indisputably been able to consider the Five9 records. The Sixth, Eighth, and Ninth Circuits have all held that evidence need not be admissible for consideration at the certification phase. *Lyngaas v. Ag*, 992 F.3d 412, 429 (6th Cir. 2021); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011).

**B.     The district court abused its discretion by striking Appellant's declaration.**

The lower court also abused its discretion when striking Smith's declaration on the basis that purported "significant inconsistencies" were present between the declaration and her deposition testimony. JA1836. The court did not identify, and the record does not include, any such inconsistencies, let alone significant ones.

To the extent the district court was relying on the "sham affidavit" rule, which prohibits an attempt avoid summary judgment by providing an affidavit that "contradicts prior deposition testimony" *see, e.g.*, *Wilson v. Gaston Cnty., NC*, 685 F. App'x 193, 205 (4th Cir. 2017), it has little applicability here. The rule is typically invoked where a party against whom summary judgment is sought attempts to "create a jury issue" on his or her own account. *Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 159 (4th Cir. 2020) (citation omitted). The application of the rule is strictly limited only to "flat contradictions" of material fact. *Mandengue v. ADT Sec. Sys., Inc.*, No. CIV.A. ELH-09-3103, 2012 WL 892621, at *18 (D. Md. Mar. 14, 2012).

The rule does not apply where a declaration "'merely detail[s] and lend[s] context' to the prior testimony…or offers information 'patently outside the scope of the [deposition] questioning.'" *Riggins*, 800 F. App'x at 160 (citations omitted). Indeed, "[i]f the affidavit merely supplements previous deposition testimony and 'reveal[s] information that was not fully explored during the testimony,' there is no

41

reason why the court should not consider it." *In re Davol, Inc./C.R. Bard, Inc.,*
*Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2020 WL
3048190, at *4 (S.D. Ohio June 8, 2020).

Smith's declaration offers information outside the scope of her deposition
testimony. During her deposition, Smith's repeatedly stated that she understood that
the Five9 "call logs", which were produced just two-days prior, displayed a complete
picture of the calls based on investigation conducted by counsel.[13] Despite this,
SunPath's counsel chose to not to show Smith the call logs as an exhibit at her the
deposition, *see* JA1652-1653, and never asked her questions about them. Instead,
SunPath spent the entire deposition questioning Smith regarding her prior discovery
responses, which she testified were based on her recollection at the time and were
not as accurate as the call records.

As a result, Smith's declaration cannot possibly contradict her deposition

---

[13] *See* JA1654 (clarifying that the "call logs" reveal "a lot more phone calls" than
what were reflected in her discovery responses); JA1655 (clarifying that the Five9
"call logs" revealed information regarding the calls); JA1656 (clarifying that her
discovery responses were based on her knowledge "at the time" and her
understanding that the "call logs" were just received); JA1658-1659 (clarifying that
her prior discovery responses were accurate to her recollection at the time, but stating
that "call logs" were "correct" based on investigation performed by her counsel);
JA1660-1661 (confirming that she was aware that the Five9 call logs were obtained
and produced to SunPath); JA1662-1663 (confirming that the information detailed in
the complaint and her discovery responses was accurate at the time she *reviewed*
them, and clarifying that the Five9 call records would be accurate as of the date of
her deposition).

testimony. SunPath had an opportunity to question Smith regarding the Five9 call records by presenting them to her and questioning her about them, but it chose not to do so. SunPath's self-serving claim that Smith's review of those records in the declaration somehow "contradicts" her desposition testimony should have been rejected. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 2020 WL 3048190, at *8 (denying a motion to strike a declaration where the declarant "has reviewed documents that he did not have an opportunity to review before his deposition and that were not made available to him during his deposition."). SunPath chose not to question Smith on the Five9 records—it cannot claim prejudice by Smith's use of those records to support her case. The lower court erred in excluding them.

Following her deposition, Smith reviewed the Five9 call records herself. JA843-853. Based on that review, she supplemented her discovery responses, JA1680-1688, and supplied a declaration based on her personal knowledge of the calls that she received. *See Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-CV-187, 2018 WL 4169282, at *6 (E.D. Va. Jan. 12, 2018) ("the need to rely on a document to verify a date or fact therein, as Van Epps requested in his personal deposition . . . does not mean that Van Epps lacks personal knowledge of a fact or a date."). Should this case proceed to trial, Smith will testify consistent with her declaration.

By striking Smith's declaration absent any factual finding of any inconsistencies, the district court abused its discretion, and the ruling should be reversed.

### C. The district court also committed reversable error by excluding all evidence of damages.

The district court also abused its discretion by granting SunPath's second motion in limine excluding all evidence relating to damages without explanation. Indeed, the failure to explain the basis for granting the motion constitutes an abuse of discretion on its own. *See Bailey v. Christian Broad. Network*, 483 F. App'x 808, 811 (4th Cir. 2012); *Wall v. Rasnick*, 42 F.4th 214, 221 (4th Cir. 2022).

Perhaps no basis was offered because SunPath's motion to exclude was without merit. SunPath claimed that Smith failed to adequately disclose her damages calculation because she failed to go call-by-call and explain each call's application to the damage's calculation JA1537. Such assertions seriously misunderstand Smith's burden. Indeed, Rule 26 requires that a party disclose "a computation of each category of [its] damages" and "make available ... the documents or other evidentiary material ... on which each computation is based[.]" *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 117 (4th Cir. 2021). Typically, courts require parties to disclose "the basic method or formula" or a "calculation" for the damages figure, as opposed to a "lump sum". *See Jones v. Wal-Mart Stores, Inc.*, No. 2:15-CV-1454-LDG-GWF, 2016 WL 1248707, at *3 (D. Nev. Mar. 28, 2016);

44

*Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *4 (E.D. Va. Aug. 7, 2020).

Smith met her disclosure obligations. She disclosed the categories of damages for which she sought recovery, the computation used to arrive at her final damages' calculation, and the total sum of damages at the time. JA1705. Calculating statutory damages is a relatively straightforward exercise, and nothing in the rules requires Smith to supply additional evidence.[14]

That said, it is also true that even if Smith had not properly disclosed her damages, Rule 26 also does not require supplemental initial disclosures unless the information "has not otherwise been made known to the other parties during the discovery process or in writing." *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 230 (4th Cir. 2019). As explained above, Smith provided the Five9 records to SunPath within hours and later supplemented her discovery responses to disclose that she sought "damages and recovery for all calls placed to her cellular telephone number ending in 9650, which are reflected in the call records produced by Five9, Inc." JA1685-1686. Hence, Smith made known during discovery the categories of damages sought, the computation of damages, and the documents on which the

---

[14] Taking SunPath's argument to its logical conclusion, if the case were certified as a class action, Smith would be required to go call-by-call (through millions of calls) and explain each call's application to the damages calculation. Nothing in the rules or case law supports SunPath's position.

computation is based.

The district court further abused its discretion by failing to consider whether any insufficient disclosures were justified or harmless. *Bailey*, 483 F. App'x at 811. The exclusion of evidence is inappropriate when the lack of disclosure is "substantially justified or is harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). To evaluate whether an untimely or inadequate disclosure was substantially justified or harmless, courts consider the following five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* These factors are considered against a general backdrop that "[t]he exclusion of evidence is a drastic measure". *Taylor v. Illinois*, 484 U.S. 400, 417 n.23, 108 S. Ct. 646, 657, 98 L. Ed. 2d 798 (1988).

The first and second factors, which analyze any surprise to SunPath, weighs against excluding evidence of damages. Smith provided her computation to SunPath seeking damages for every call in the Five9 records.[15] Despite repeatedly testifying

---

[15] Any claim of surprise by SunPath regarding the total number of calls in contention is undercut by its reliance on its own summary of the Five9 calls as a trial exhibit, JA401-402, and its reliance on the records in support of its motion for summary judgment, JA636.

that she intended to rely on the Five9 records, SunPath chose not to question her regarding the records or their applicability to her damages calculation. Hence, even if SunPath could credibly claim surprise (it cannot), it had an opportunity to cure any lack of clarity and voluntarily elected not to do so.

The third and fourth factors, which assess the extent to which allowing evidence would disrupt the trial and the importance of the evidence, also argue against granting the motion. SunPath never identified any specific "evidence" that it believes should be excluded. Instead, it sought the exclusion of all of the evidence this case. But SunPath had been in possession of every document that Smith indicated she as relying on to support her damages prior to her deposition.

The fifth and final factor—the nondisclosing party's explanation for its failure to disclose the evidence—also militates against granting the motion. Smith timely provided all of the evidence that she intended to rely on to support her claim for damages. Further, counsel for Smith conferred with SunPath on several occasions (in the Rule 408 context) to discuss the applicability of the call records to the damages in this case. In the end, Smith articulated the damages she sought, and any supposed failure to supplement her disclosures was harmless.

By granting SunPath's motion and excluding all evidence of damages at trial absent any explanation, the district court abused its discretion.

47

V.   **The District Court Abused Its Discretion By Prioritizing Its "Rocket Docket" Reputation To The Detriment Of The Record In This Case— The Result Of Which Led To Irrational And Arbitrary Determinations On An Insufficient Record.**

The Eastern District of Virginia has a well-known reputation as a "rocket docket" where "civil actions quickly move to trial." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 996 (E.D. Va. 2011). While an expeditious resolution is appropriate in many cases, the adherence to a reputation for speed untethered to a consideration of the facts and circumstances in a particular case can amount to an abuse of discretion.

To start, the district court abused its discretion by issuing an arbitrary discovery schedule—which allotted only four months—to complete all discovery in this alleged class action. This Court has previously cautioned courts that hastily deciding class certification on an insufficient record can rule afoul of Rule 23's requirement that the any decision be made at "an early *practicable* time after a person sues or is sued as a class representative", Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). *See Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 275 (4th Cir. 1980) ("trial courts have been cautioned not to act too precipitately, on insufficient records, in making the determination.").

Adequate discovery is necessary to develop a record to satisfy Rule 23's requirements. For this reason, where local rules stand in contrast to the federal rules, courts should be free to disregard them. *See* Barbara J. Rothstein & Thomas E.

Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 9 (3d ed. 2010) ("Considering [Rule 23(c)(1)], you should feel free to ignore local rules calling for specific time limits; such local rules appear to be inconsistent with the federal rules and, as such, obsolete."); *see also* Federal Judicial Center, *Manual for Complex Litigation, Fourth* § 21.133 ("Some local rules specify a short period within which the plaintiff must file a motion to certify a class action. Such rules, however, may be inconsistent with Rule 23(c)(1)(A)'s emphasis on the parties' obligation to present the court with sufficient information to support an informed decision on certification. Parties need sufficient time to develop an adequate record.").

Courts have abused their discretion by deciding certification prior to the development of an adequate record. Notably, the Ninth Circuit recently reversed a denial of class certification by finding that the district court's local rule, which established a 90-day deadline to file a motion for class certification, stood "in direct contrast to the flexibility of the [Rule 23]". *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018).

The same is true here. In issuing its initial scheduling orders, the district court abused its discretion by ignoring both parties' proposed schedules, in which Smith included a requested 21-day extension to the court's initial December 9, 2022 discovery deadline citing the need to identify third parties and effectuate subpoenas.

*Compare* JA37-43, *with* JA44-48. Relevant here, almost all of the relevant documents and data were in the possession of third-parties located in Florida (American Protection) and California (Five9). In response, the court issued shorter deadlines than either party proposed—which (at the time) left just the parties with only 93-days to complete all discovery, only 33-days for Smith to disclose any expert, and also failed to articulate any deadline to file amotion for class certification. *Compare* JA37-43, *with* JA44-48. The arbitrary schedule was untethered to the facts of this case or the parties' relative access to information and left the parties without "sufficient time to develop an adequate record."[16]

The district court would again abuse its discretion by failing to grant a continuance of the schedule. That is, as discussed in Section IV.A.1, *supra*, Smith sought to modify the case schedule based on the difficulties procuring evidence from third parties and also requested a briefing schedule for class certification. JA49-65. As a general principle, "an attorney having a substantial claim for a continuance should move for the continuance as early as possible." *United States v. Badwan*, 624 F.2d 1228, 1231 (4th Cir. 1980).

In response, the court denied the motion based on its insistence that the parties stick to the arbitrarily imposed December 9th deadline. JA239-240. Instead, the

---

[16] For context, the district court allotted less time to conduct all discovery in the case (126 days) than it provided to SunPath to brief and rule on its motion to dismiss (151 days elapsed between the service of the complaint and the ruling).

court instructed Smith to "find a date [for the American Protection deposition] as soon as possible." JA238. By refusing to grant a modest extension based on discovery misconduct by SunPath and its third-party marketer, the district court abused its discretion. *See United States v. Uhrich*, 228 F. App'x 248, 254 (4th Cir. 2007).

In the end, the court's actions were not harmless. All of the discovery issues addressed in Section IV, *supra*, were precipitated by an insufficient discovery schedule and the denial of a continuance. Further, the lack of clarity in the schedule also led to confusion, which was fatal to Smith's ability to prosecute the case as a class action. That is, despite filing her motion for class certification two weeks after the procurement of the class records—i.e. as early as practicable—the court struck the motion because it was not filed by November 14, 2022—a date proposed in the discovery plan but not memorialized in any order—and held that the scheduling orders were "pretty clear." JA1614. The record was not clear. Neither scheduling order set any deadlines for Smith to move for class certification, JA26; JA44-48; the court denied a request to *set* (not extend) a class certification briefing schedule; and, during a discovery dispute hearing on November 18, 2022 (i.e. after the supposed deadline) the magistrate judge eluded to Smith filing a motion for class certification at a later date. JA292.

Appellant respectfully requests that the Court find that the district court's

failure to set a reasonable discovery schedule and its failure to extend the schedule constitutes an abuse of discretion.

## CONCLUSION

Appellant Ruth Smith respectfully requests that this Honorable Court reverse the district court's order granting SunPath's motion for summary judgment as well as its first and second motions in limine and motion to strike. Appellant respectfully requests that this Court remand the case with instructions to enter partial summary judgment in favor of Appellant and to set a reasonable discovery schedule.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests the opportunity to present oral argument. In light of the complexity of the factual record and the issues raised, Appellant believes that oral argument would assist the Court in resolving the appeal.


Dated: June 20, 2023                  Respectfully submitted,

                                      By: */s/ Taylor T. Smith*
                                      *Attorney for Appellant Ruth Smith*

# ADDENDUM OF STATUTES

**VA Code Ann. § 59.1-510. Definitions; rule of construction**

As used in this chapter:

"Established business relationship" means a relationship between the called person and the person on whose behalf the telephone solicitation call is being made or initiated based on (i) the called person's purchase from, or transaction with, the person on whose behalf the telephone solicitation call is being made or initiated within the 18 months immediately preceding the date of the call or (ii) the called person's inquiry or application regarding any property, good, or service offered by the person on whose behalf the telephone solicitation call is being made or initiated within the three months immediately preceding the date of the call.

"Personal relationship" means the relationship between a telephone solicitor making or initiating a telephone solicitation call and any family member, friend, or acquaintance of that telephone solicitor.

"Responsible person" means either or both of (i) a telephone solicitor or (ii) a seller if the telephone solicitation call offering or advertising the seller's property, goods, or services is presumed to have been made or initiated on behalf of or for the benefit of the seller and the presumption is not rebutted as provided in subsection B of § 59.1-514.1.

"Seller" means any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated.

"Telephone solicitation call" means (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

"Telephone solicitor" means any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller.

## VA Code Ann. § 59.1-512. Identification of telephone solicitor required

A telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person.

## VA Code Ann. § 59.1-514. Unwanted telephone solicitation calls prohibited

A. No telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number when a person at such telephone number previously has stated that he does not wish to receive a telephone solicitation call made by or on behalf of the person on whose behalf the telephone solicitation call is being made. Such statement may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation call is being made if that person is different from the telephone solicitor. Any such request not to receive telephone solicitation calls shall be honored for at least 10 years from the time the request is made.

B. No telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. § 64.1200.

C. It shall be an affirmative defense in any action brought under § 59.1-515 or 59.1-517 for a violation of this section that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitation calls in violation of this section, including using in accordance with applicable federal regulations a version of the National Do Not Call Registry obtained from the administrator of the registry no more than 31 days prior to the date any telephone solicitation call is made.

D. For purposes of this section, "telephone solicitation call" shall not include a telephone call made to any person: (i) with that person's prior express invitation or permission as evidenced by a signed, written agreement stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone

number to which the call may be placed, (ii) with whom the person on whose behalf the telephone call is made has an established business relationship, or (iii) with whom the telephone solicitor making the telephone call has a personal relationship. The exemption for an established business relationship or a personal relationship shall not apply when the person called previously has stated that he does not wish to receive telephone solicitation calls as provided in subsection A.

## VA Code Ann. § 59.1-514.1. Joint liability of seller and telephone solicitor for prohibited acts; rebuttable presumption

A. A seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of § 59.1-511, 59.1-512, 59.1-513, or 59.1-514 and the telephone solicitor making or initiating the telephone call shall be jointly and severally liable for such violation.

B. A telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call. The presumption may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent.


## VA Code Ann. § 59.1-515. Individual action for damages

A. Any natural person who is aggrieved by a violation of this chapter shall be entitled to initiate an action against any responsible person to enjoin such violation and to recover from any responsible person damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation.

B. If the court finds a willful violation, the court may, in its discretion, increase the amount of any damages awarded for a first or second violation under subsection A to an amount not exceeding $5,000.

C. Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person may be awarded under subsection A or B reasonable attorney fees and court costs.

D. An action for damages, attorney fees, and costs brought under this section may be filed in an appropriate general district court or small claims court against any responsible person so long as the amount claimed does not exceed the jurisdictional limits set forth in § 16.1-77 or 16.1-122.2, as applicable. Any action brought under this section that includes a request for an injunction shall be filed in an appropriate circuit court.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,831 words, excluding the parts of the document exempted by Fed. R. App. R. 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: June 20, 2023                    By: */s/ Taylor T. Smith*

                                        Taylor T. Smith
                                        Woodrow & Peluso, LLC

                                        *Attorney for Appellant Ruth Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case are all registered CM/ECF users.

Dated: June 20, 2023        By: _/s/ Taylor T. Smith_

                      Taylor T. Smith
                      Woodrow & Peluso, LLC

                      *Attorney for Appellant Ruth Smith*