No. 23-1140

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

RUTH SMITH,

*Plaintiff-Appellant*,

v.

SUNPATH, LTD.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia

---

## JOINT APPENDIX
## Volume 1 of 3 (Pages JA1 to JA688)

---

Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
Taylor T. Smith
(tsmith@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Ste. 300
Denver, Colorado 80210
Telephone: (720) 907-7628

*Attorneys for Appellant Ruth Smith*

Joseph P. Bowser
Carl Taylor Smith
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
mroth@rothjackson.com

*Attorneys for Appellee SunPath, Ltd.*

# TABLE OF CONTENTS

District Court Docket Sheet [1:22-cv-00081-LMB-WEF] ........................................ 1

Complaint [ECF 1] ...................................................................... 11

August 5, 2022 Scheduling Order [ECF 25] .......................................... 26

Answer [ECF 26] ....................................................................... 27

Joint Discovery Plan [ECF 27] ........................................................ 37

September 7, 2022 Scheduling Order [ECF 31] ...................................... 44

Plaintiff's Motion for Leave to Modify Case Schedule [ECF 32] ......................... 49

    Exhibit A [ECF 32-1] ............................................................ 52
    Memorandum in support of Motion [ECF 34] .................................... 57

Defendant's Response in Opposition to Plaintiff's Motion to Modify Case
    Schedule [ECF 35] ........................................................... 66

    Exhibit to Defendant's Response in Opposition to Plaintiff's Motion to
        Modify Case Schedule [ECF 35-1] .................................... 71

Order Denying Plaintiff's Motion for Leave to Modify Case Schedule
    [ECF 37] ..................................................................... 80

Defendant's Motion to Compel [ECF 40] ............................................ 81

    Memorandum in Support of Motion [ECF 41] .................................... 84
        Exhibit 1 [ECF 41-1] ...................................................... 99
        Exhibit 2 [ECF 41-2] ...................................................... 134
        Exhibit 3 [ECF 41-3] ...................................................... 151
        Exhibit 4 [ECF 41-4] ...................................................... 161
        Exhibit 5 [ECF 41-5] ...................................................... 168
        Exhibit 6 [ECF 41-6] ...................................................... 171

Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel
    [ECF 43] ..................................................................... 177

Exhibit A [ECF 43-1] ................................................................ 189
Exhibit B [ECF 43-2] ................................................................ 203
Exhibit C [ECF 43-3] ................................................................ 207

Defendant's Reply in Support of its Motion to Compel [ECF 44] ...................... 214

Exhibit 1 [ECF 44-1] ................................................................ 229

Order Granting in Part and Deny in Part Defendant's Motion to Compel [ECF 46] ................................................................ 230

Transcript of October 14, 2022 Hearing regarding Plaintiff's Motion for Leave to Modify Case Schedule [ECF 47] ................................................. 231

Transcript of November 18, 2022 Hearing regarding Defendant's Motion to Compel [ECF 48] ................................................................ 242

Plaintiff's Motion for Class Certification [ECF 49] ............................ 304

Memorandum in Support of Motion [ECF 50] ........................... 307
Exhibit A [ECF 50-1] ................................................................ 329
Exhibit B [ECF 50-2] ................................................................ 337
Exhibit C [ECF 50-3] ................................................................ 347
Exhibit D [ECF 50-4] ................................................................ 371
Exhibit E [ECF 50-5] ................................................................ 375
Exhibit F [ECF 50-6] ................................................................ 379
Exhibit G [ECF 50-7] ................................................................ 385

Plaintiff's Witness List [ECF 52] ............................................... 394

Defendant's Pretrial Disclosures [ECF 53] ................................... 397

Plaintiff's Trial Exhibit List [ECF 54] ........................................ 404

Statement of Undisputed Facts [ECF 56] ...................................... 410

Defendant's Motion to Strike Plaintiff's Motion for Class Certification [ECF 57] ................................................................ 414

Memorandum in Support of Motion [ECF 58] ........................... 417

Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike
[ECF 61] ............................................................................... 433

Exhibit A [ECF 61-1] ........................................................... 443

Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's
Motion to Strike Plaintiff's Motion for Class Certification [ECF 62] ....... 446

Exhibit A [ECF 62-1] ........................................................... 457

Order Striking Plaintiff's Motion for Class Certification [ECF 64].................... 466

Defendant's Motion for Summary Judgment [ECF 65] ....................................... 467

Memorandum in Support of Motion [ECF 66]................................ 470
Exhibit 1 [ECF 66-1]............................................................. 500
Exhibit 2 [ECF 66-2]............................................................. 516
Exhibit 3 [ECF 66-3]............................................................. 525
Exhibit 4 [ECF 66-4]............................................................. 555
Exhibit 5 [ECF 66-5]............................................................. 582
Exhibit 6 [ECF 66-6]............................................................. 618
Exhibit 7 [ECF 66-7]............................................................. 632
Exhibit 8 [ECF 66-8]............................................................. 636
Exhibit 9 [ECF 66-9]............................................................. 637
Exhibit 10 [ECF 66-10]......................................................... 643
Exhibit 11 [ECF 66-11]......................................................... 647
Exhibit 12 [ECF 66-12]......................................................... 652
Exhibit 13 [ECF 66-13]......................................................... 654
Exhibit 14 [ECF 66-14]......................................................... 660

Defendant's Objections to Plaintiff's Witness List [ECF 70] ............................. 669

Defendant's Objections to Plaintiff's Trial Exhibit List [ECF 71]....................... 675

Plaintiff's Motion for Partial Summary Judgment [ECF 73] ............................. 689

Memorandum in Support of Motion [ECF 74]................................ 692
Exhibit A [ECF 74-1].............................................................. 710
Exhibit B [ECF 74-2].............................................................. 720
Exhibit C [ECF 74-3].............................................................. 729
Exhibit D [ECF 74-4].............................................................. 754

Exhibit E [ECF 74-5] ...................................................................... 758
Exhibit F [ECF 74-6] ...................................................................... 761
Exhibit G [ECF 74-7] ..................................................................... 766
Exhibit H [ECF 74-8] ..................................................................... 775
Exhibit I [ECF 74-9] ....................................................................... 787
Exhibit J [ECF 74-10] ..................................................................... 789
Exhibit K [ECF 74-11] .................................................................... 795
Exhibit L [ECF 74-12] ..................................................................... 798
Exhibit M [ECF 74-13] .................................................................... 802

Plaintiff's Opposition to Defendant's Motion for Summary Judgment
    [ECF 76] ................................................................................... 807

Exhibit A [ECF 76-1] ...................................................................... 833
Exhibit B [ECF 76-2] ...................................................................... 842
Exhibit C [ECF 76-3] ...................................................................... 854
Exhibit D [ECF 76-4] ...................................................................... 858
Exhibit E [ECF 76-5] ...................................................................... 864
Exhibit F [ECF 76-6] ...................................................................... 883
Exhibit G [ECF 76-7] ..................................................................... 888
Exhibit H [ECF 76-8] ..................................................................... 892
Exhibit I [ECF 76-9] ....................................................................... 902
Exhibit J [ECF 76-10] ..................................................................... 905
Exhibit K [ECF 76-11] .................................................................... 907

Defendant's Reply in Support of Motion for Summary Judgment [ECF 80]....... 910

Exhibit 1 [ECF 80-1] ...................................................................... 933
Exhibit 2 [ECF 80-2] ...................................................................... 948
Exhibit 3 [ECF 80-3] ...................................................................... 963
Exhibit 4 [ECF 80-4] ...................................................................... 970
Exhibit 5 [ECF 80-5] ...................................................................... 993

Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment
    [ECF 81] ................................................................................. 1001

Exhibit 1 [ECF 81-1] .................................................................... 1032
Exhibit 2 [ECF 81-2] .................................................................... 1063
Exhibit 3 [ECF 81-3] .................................................................... 1070
Exhibit 4 [ECF 81-4] .................................................................... 1093
Exhibit 5 [ECF 81-5] .................................................................... 1103

Exhibit 6 [ECF 81-6] ............................................................................ 1111
Exhibit 7 [ECF 81-7] ............................................................................ 1121
Exhibit 8 [ECF 81-8] ............................................................................ 1164
Exhibit 9 [ECF 81-9] ............................................................................ 1264
Exhibit 10 [ECF 81-10] ......................................................................... 1278
Exhibit 11 [ECF 81-11] ......................................................................... 1283
Exhibit 12 [ECF 81-12] ......................................................................... 1289
Exhibit 13 [ECF 81-13] ......................................................................... 1296
Exhibit 14 [ECF 81-14] ......................................................................... 1301
Exhibit 15 [ECF 81-15] ......................................................................... 1304
Exhibit 16 [ECF 81-16] ......................................................................... 1332

**Defendant's Motion to Strike Plaintiff's Declaration [ECF 82]** ...................... 1339

Memorandum in Support of Motion [ECF 83] .................................... 1342
Exhibit 1 [ECF 83-1] ............................................................... 1349
Exhibit 2 [ECF 83-2] ............................................................... 1356
Exhibit 3 [ECF 83-3] ............................................................... 1363
Exhibit 4 [ECF 83-4] ............................................................... 1386
Exhibit 5 [ECF 83-5] ............................................................... 1396

**Defendant's First Motion in Limine [ECF 84]** ...................................... 1410

Memorandum in Support of Motion [ECF 85] .................................... 1413
Exhibit 1 [ECF 85-1] ............................................................... 1426
Exhibit 2 [ECF 85-2] ............................................................... 1436
Exhibit 3 [ECF 85-3] ............................................................... 1444
Exhibit 4 [ECF 85-4] ............................................................... 1451
Exhibit 5 [ECF 85-5] ............................................................... 1487
Exhibit 6 [ECF 85-6] ............................................................... 1501
Exhibit 7 [ECF 85-7] ............................................................... 1516
Exhibit 8 [ECF 85-8] ............................................................... 1523

**Defendant's Second Motion in Limine [ECF 88]** .................................... 1530

Memorandum in Support of Motion [ECF 89] .................................... 1533
Exhibit 1 [ECF 89-1] ............................................................... 1544
Exhibit 2 [ECF 89-2] ............................................................... 1551
Exhibit 3 [ECF 89-3] ............................................................... 1558
Exhibit 4 [ECF 89-4] ............................................................... 1572
Exhibit 5 [ECF 89-5] ............................................................... 1579

Exhibit 6 [ECF 89-6] ..................................................................... 1596
Exhibit 7 [ECF 89-7] ..................................................................... 1606

Transcript of December 22, 2022 Hearing [ECF 91] ........................ 1610

Plaintiff's Opposition to Defendant's First Motion in Limine [ECF 92] .......... 1616

Exhibit A [ECF 92-1] ..................................................................... 1631
Exhibit B [ECF 92-2] ..................................................................... 1635
Exhibit C [ECF 92-3] ..................................................................... 1638
Exhibit D [ECF 92-4] ..................................................................... 1647

Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Declaration
[ECF 93] ...................................................................................... 1664

Exhibit A [ECF 93-1] ..................................................................... 1673
Exhibit B [ECF 93-2] ..................................................................... 1676
Exhibit C [ECF 93-3] ..................................................................... 1679

Plaintiff's Opposition to Defendant's Second Motion in Limine [ECF 94] ....... 1689

Exhibit A [ECF 94-1] ..................................................................... 1701
Exhibit B [ECF 96] ........................................................................ 1708
Exhibit C [ECF 94-3] ..................................................................... 1725
Exhibit D [ECF 94-4] ..................................................................... 1728
Exhibit E [ECF 94-5] ..................................................................... 1745

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
[ECF 95] ...................................................................................... 1762

Defendant's Reply in Support of First Motion in Limine [ECF 100] ............... 1782

Exhibit 1 [ECF 100-1] ................................................................... 1790

Defendant's Reply in Support of Second Motion in Limine [ECF 101] ............ 1794

Defendant's Reply in Support of Motion to Strike Plaintiff's Declaration
[ECF 102] .................................................................................... 1801

Exhibit 1 [ECF 102-1] ................................................................... 1808

Order Granting Defendant's Motion for Summary Judgment and Pretrial
    Evidentiary Motions and Denying Plaintiff's Motion for Partial Summary
    Judgment [ECF 104] ................................................................. 1819

Clerk's Judgment [ECF 105] ............................................................. 1820

Notice of Appeal [ECF 106] .............................................................. 1821

Transcript of January 27, 2023 Hearing [ECF 110] .......................................... 1823

# U.S. District Court
## Eastern District of Virginia – (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:22–cv–00081–LMB–WEF

Smith v. SunPath, Ltd.
Assigned to: District Judge Leonie M. Brinkema
Referred to: Magistrate Judge William E. Fitzpatrick
Case in other court:  Fourth Circuit, 23–01140
Cause: 47:0227 FCC–Unsolicited Telephone Sales

Date Filed: 01/26/2022
Date Terminated: 01/27/2023
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Ruth Smith**                          represented by    **Patrick Harry Peluso**
Woodrow & Peluso, LLC
3900 E Mexico Ave.
Suite 300
Denver, CO 80210
720–213–0676
Email: ppeluso@woodrowpeluso.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor True Smith**
Woodrow & Peluso LLC (CO–NA)
3900 E. Mexico Ave
Suite 300
Denver, CO 80210
**NA**
720–907–7628
Fax: 303–927–0809
Email: tsmith@woodrowpeluso.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Francis John Driscoll , Jr.**
Law Office of Frank J. Driscoll Jr. PLLC
4669 South Boulevard
Suite 107
Virginia Beach, VA 23452
757–321–0054
Fax: 757–321–4020
Email: frank@driscolllawoffice.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**SunPath, Ltd.**                       represented by    **Gregory Caffas**
Roth Jackson Gibbons Condlin PLC
8200 Greensboro Drive
Suite 820
McLean, VA 22102
703–485–3533
Email: gregory.caffas@bbklaw.com
*TERMINATED: 01/03/2023*
*LEAD ATTORNEY*

**Joseph Paul Bowser**
Roth Jackson Gibbons Condlin PLC
11 S. 12th Street
Suite 500
Richmond, VA 23219
804–441–8701
Fax: 804–441–8438

**JA1**

Email: jbowser@rothjackson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl Taylor Smith**
Roth Jackson Gibbons Condlin, PLC
1519 Summit Ave.
Suite 102
Richmond, VA 23230
804–729–4440
Fax: 804–441–8438
Email: tsmith@rothjackson.com
*ATTORNEY TO BE NOTICED*

**Mitchell Roth**
Roth Jackson
8200 Greensboro Drive
Suite 820
McLean, VA 22102
703–485–3536
Fax: 703–485–3525
Email: mroth@rothjackson.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/26/2022 | 1 | Complaint ( Filing fee $ 402, receipt number AVAEDC–8213623.), filed by Ruth Smith. (Attachments: # 1 Civil Cover Sheet)(Driscoll, Francis) (Attachment 1 replaced on 1/27/2022) (jlan, ). (Entered: 01/26/2022) |
| 01/26/2022 | 2 | Proposed Summons re 1 Complaint by Ruth Smith. (Driscoll, Francis) (Main Document 2 replaced on 2/28/2022) (shea, ). (Entered: 01/26/2022) |
| 01/27/2022 | | Case Assigned to District Judge Leonie M. Brinkema and Magistrate Judge Theresa Carroll Buchanan. (jlan) (Entered: 01/27/2022) |
| 01/27/2022 | 3 | Summons Issued as to SunPath, Ltd., NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the Electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (jlan) (Entered: 01/27/2022) |
| 02/23/2022 | 4 | Motion to appear Pro Hac Vice by Patrick Harry Peluso and Certification of Local Counsel Francis John Driscoll, Jr. Filing fee $ 75, receipt number AVAEDC–8257934. by Ruth Smith. (Driscoll, Francis) (Main Document 4 replaced on 2/28/2022) (shea, ). (Entered: 02/23/2022) |
| 02/23/2022 | 5 | Proposed Summons re 1 Complaint by Ruth Smith. (Driscoll, Francis) (Main Document 5 replaced on 2/28/2022) (shea, ). (Entered: 02/23/2022) |
| 02/28/2022 | 6 | ORDER granting 4 Motion for Pro hac vice Appointed Patrick Harry Peluso for Ruth Smith. Signed by District Judge Leonie M. Brinkema on 2/28/2022. (clar, ) (Entered: 02/28/2022) |
| 04/27/2022 | 7 | ORDERED that within fourteen (14) days the plaintiff show cause, if any, why this civil action should not be dismissed pursuant to Fed. R. Civ. P. 4(m). Signed by District Judge Leonie M. Brinkema on 4/27/2022. (kgall) (Entered: 04/27/2022) |
| 04/28/2022 | 8 | WAIVER OF SERVICE Returned Executed by Ruth Smith. SunPath, Ltd. waiver sent on 3/7/2022, answer due 5/6/2022. (Driscoll, Francis) (Entered: 04/28/2022) |
| 04/28/2022 | 9 | Response to 7 Order filed by Ruth Smith. (Driscoll, Francis) (Entered: 04/28/2022) |

| 05/06/2022 | 10 | MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim* by SunPath, Ltd.. (Caffas, Gregory) (Entered: 05/06/2022) |
|---|---|---|
| 05/06/2022 | 11 | Memorandum in Support of MOTION to Dismiss *for Lack of Personal Jurisdiction and Failure to State a Claim* by SunPath, Ltd.. (Attachments: # 1 Affidavit of Andrew Garcia)(Caffas, Gregory) (Entered: 05/06/2022) |
| 05/06/2022 | 12 | Notice of Hearing Date *for June 3, 2022* re 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim* (Caffas, Gregory) (Entered: 05/06/2022) |
| 05/06/2022 | 13 | Financial Interest Disclosure Statement (Local Rule 7.1) by SunPath, Ltd.. (Caffas, Gregory) (Entered: 05/06/2022) |
| 05/06/2022 | | Set Deadlines as to 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim*. Motion Hearing set for 6/3/22 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (clar, ) (Entered: 05/09/2022) |
| 05/20/2022 | 14 | Memorandum in Opposition re 11 MOTION to Dismiss *for Lack of Personal Jurisdiction and Failure to State a Claim (Memorandum in Support)*, 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim* filed by Ruth Smith. (Driscoll, Francis) (Entered: 05/20/2022) |
| 05/26/2022 | 15 | REPLY to Response to Motion re 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim* filed by SunPath, Ltd.. (Caffas, Gregory) (Entered: 05/26/2022) |
| 06/03/2022 | 16 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 6/3/2022. Appearances of counsel. Court advised of case status. Deft's 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim is argued an HELD IN ABEYANCE Deft directed to produce and submit copies of contracts to the Court and pltf's counsel within 14 days. Pltfs request to submit supplemental briefs is Granted; submit within 14 days. (Court Reporter S. Austin.)(yguy)* (Entered: 06/03/2022) |
| 06/03/2022 | 17 | ORDER: For the reasons stated in open court, Defendant SunPath, Ltd. 's Motion to Dismiss Plaintiffs Complaint [Dkt. No. 10] is HELD IN ABEYANCE, and it is hereby ORDERED that within fourteen (14) days of the date of this Order, defendant file any contracts it had with telemarketers in the year 2020, and plaintiff file a supplemental brief responding to footnote five (5) in defendant's Motion to Dismiss Plaintiffs Complaint. Signed by District Judge Leonie M. Brinkema on 6/3/22. (yguy) (Entered: 06/03/2022) |
| 06/17/2022 | 18 | Memorandum in Opposition re 11 MOTION to Dismiss *for Lack of Personal Jurisdiction and Failure to State a Claim (Memorandum in Support)*, 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim* filed by Ruth Smith. (Driscoll, Francis) (Entered: 06/17/2022) |
| 06/17/2022 | 19 | NOTICE by SunPath, Ltd. re 17 Order,, *Notice of Filing* (Attachments: # 1 Exhibit 1 – 2020 Agreement)(Caffas, Gregory) (Entered: 06/17/2022) |
| 07/19/2022 | 20 | ORDER re 10 MOTION to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim. ORDERED that a hearing on the Motion be and is SCHEDULED for 10:00 AM on Friday, August 5, 2022. Signed by District Judge Leonie M. Brinkema on 7/19/2022. (nneb) (Entered: 07/19/2022) |
| 07/19/2022 | | Reset Deadlines as to 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim*. Motion Hearing set for 8/5/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (nneb) (Entered: 07/19/2022) |
| 07/29/2022 | 21 | NOTICE of Appearance by Joseph Paul Bowser on behalf of SunPath, Ltd. (Bowser, Joseph) (Entered: 07/29/2022) |
| 07/29/2022 | 22 | NOTICE of Appearance by Mitchell Roth on behalf of SunPath, Ltd. (Roth, Mitchell) (Entered: 07/29/2022) |

| | | |
|---|---|---|
| 08/05/2022 | 23 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 8/5/2022. Appearances of counsel. Court advised of case status. Deft 10 MOTION to Dismiss *Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim is argued and DENIED. Scheduling order will be issued. Answer shall be filed within 14 days. (order to follow) (Court Reporter S. Austin.)(yguy) (Entered: 08/05/2022)* |
| 08/05/2022 | 24 | ORDER: For the reasons stated in open court, it is hereby ORDERED that Defendant SunPath, Ltd.'s Motion to Dismiss Plaintiffs Complaint [Dkt. No. 10] be and is DENIED without prejudice; and it is further ORDERED that defendant file an answer within fourteen (14) days of the date of this Order. Signed by District Judge Leonie M. Brinkema on 8/5/22. (yguy) (Entered: 08/05/2022) |
| 08/05/2022 | 25 | SCHEDULING ORDER: Initial Pretrial Conference set for 8/31/2022 at 11:00 AM in Alexandria Courtroom 500 before Magistrate Judge Theresa Carroll Buchanan. Discovery due by 12/9/2022. Final Pretrial Conference set for 12/15/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Signed by District Judge Leonie M. Brinkema on 8/5/22. (Attachments: # 1 Mag.Consent, # 2 Pretrial Notice)(yguy) (Entered: 08/05/2022) |
| 08/10/2022 | | Case Reassigned to Magistrate Judge William E. Fitzpatrick. Magistrate Judge Theresa Carroll Buchanan no longer assigned to the case. (jlan) (Entered: 08/10/2022) |
| 08/19/2022 | 26 | *Affirmative Defenses and* ANSWER to Complaint *(Class Action)* by SunPath, Ltd..(Caffas, Gregory) (Entered: 08/19/2022) |
| 08/24/2022 | 27 | Discovery Plan by Ruth Smith.(Driscoll, Francis) (Entered: 08/24/2022) |
| 08/24/2022 | 28 | MOTION Request to Appear Telephonically at Scheduling Conference by Ruth Smith. (Attachments: # 1 Proposed Order)(Driscoll, Francis) (Entered: 08/24/2022) |
| 08/30/2022 | 29 | ORDER granting 28 Motion Request to Appear Telephonically at Scheduling Conference. Orders that counsel for both Parties, may appear telephonically for the initial pretrial conference scheduled for August 31, 2022, at 11:00 a.m. Signed by Magistrate Judge William E. Fitzpatrick on 8/30/2022. (show) (Entered: 08/31/2022) |
| 08/31/2022 | 30 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick:Initial Pretrial Conference held on 8/31/2022. Appearances of counsel. <br><br>Initial Pretrial Conference continued to 9/7/2022 at 11:00 AM in Alexandria Telephonically before Magistrate Judge William E. Fitzpatrick. (tfitz, ) (Entered: 08/31/2022) |
| 09/07/2022 | | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Initial Pretrial Conference held on 9/7/2022 via telephone. Parties did not appear for telephonic conference. Discovery plan adopted as amended. Order to issue (Tape #FTR.)(lcre, ) (Entered: 09/07/2022) |
| 09/07/2022 | 31 | Rule 16(b) Scheduling Order – Upon consideration of the representations made by the parties in their Proposed Joint Discovery Plan pursuant to Fed. R. Civ. P. 26(t) ("Joint Discovery Plan") (Dkt. 27 ) and at the initial pretrial conference held on August 31, 2022 and taking note of the Scheduling Orderentered in this case (Dkt. 25 ), the court makes the following rulings:<br>1. All discovery shall be concluded by December 9, 2022. (See Order for Details) Signed by Magistrate Judge William E. Fitzpatrick on 9/7/2022. (lcre, ) (Entered: 09/07/2022) |
| 10/07/2022 | 32 | MOTION for Extension of Time to Complete Discovery by Ruth Smith. (Attachments: # 1 Affidavit Patrick H. Peluso)(Driscoll, Francis) (Entered: 10/07/2022) |
| 10/07/2022 | 33 | Notice of Hearing Date set for October 14, 2022 @ 10:00am re 32 MOTION for Extension of Time to Complete Discovery (Driscoll, Francis) (Entered: 10/07/2022) |
| 10/07/2022 | 34 | Memorandum in Support re 32 MOTION for Extension of Time to Complete Discovery filed by Ruth Smith. (Driscoll, Francis) (Entered: 10/07/2022) |
| 10/07/2022 | | Set Deadlines as to 32 MOTION for Extension of Time to Complete Discovery . Motion Hearing set for 10/14/2022 at 10:00 AM in Alexandria Courtroom 401 before Magistrate Judge William E. Fitzpatrick. (clar) (Entered: 10/11/2022) |

| Date | No. | Description |
|---|---|---|
| 10/07/2022 | | MOTIONS REFERRED to Magistrate Judge: Fitzpatrick. 32 MOTION for Extension of Time to Complete Discovery (clar) (Entered: 10/11/2022) |
| 10/12/2022 | 35 | RESPONSE in Opposition re 32 MOTION for Extension of Time to Complete Discovery filed by SunPath, Ltd.. (Attachments: # 1 Exhibit)(Caffas, Gregory) (Entered: 10/12/2022) |
| 10/14/2022 | 36 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick:Motion Hearing held on 10/14/2022 re 32 MOTION for Extension of Time to Complete Discovery filed by Ruth Smith. Appearances of counsel. Motion argued and DENIED. Order to follow. (Tape #FTR.)(tfitz, ) (Entered: 10/17/2022) |
| 10/14/2022 | 37 | This matter is before the Court on Plaintiff's Motion for Extension of Time to Complete Discovery 32 . Both parties briefed the matter, and the Court heard argument of counsel on October 14, 2022. For reasons stated from the bench, and in accord with specific rulings and instructions thereto, it is hereby ORDERED that Plaintiff's Motion 32 is DENIED WITHOUT PREJUDICE.. Signed by Magistrate Judge William E. Fitzpatrick on 10/14/22. (tfitz, ) (Entered: 10/17/2022) |
| 10/25/2022 | 38 | Motion to appear Pro Hac Vice by Taylor True Smith and Certification of Local Counsel Francis John Driscoll, Jr. Filing fee $ 75, receipt number AVAEDC–8628359. by Ruth Smith. (Driscoll, Francis) (Entered: 10/25/2022) |
| 10/26/2022 | 39 | ORDER granting 38 Motion for Pro hac vice Appointed Taylor True Smith for Ruth Smith. Signed by District Judge Leonie M. Brinkema on 10/26/2022. (nneb) (Entered: 10/26/2022) |
| 11/10/2022 | 40 | MOTION to Compel by SunPath, Ltd.. (Caffas, Gregory) (Entered: 11/10/2022) |
| 11/10/2022 | 41 | Memorandum in Support re 40 MOTION to Compel filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Caffas, Gregory) (Entered: 11/10/2022) |
| 11/10/2022 | 42 | Notice of Hearing Date *on November 18, 2022* re 40 MOTION to Compel (Caffas, Gregory) (Entered: 11/10/2022) |
| 11/14/2022 | | Set Deadline as to 40 MOTION to Compel. Motion Hearing set for 11/18/2022 at 10:00 AM in Alexandria Courtroom 500 before Magistrate Judge William E. Fitzpatrick. (jlan) (Entered: 11/14/2022) |
| 11/16/2022 | 43 | Memorandum in Opposition re 40 MOTION to Compel filed by Ruth Smith. (Attachments: # 1 Exhibit Smith Supp Objections & Responses to Def 1st Discovery req, # 2 Exhibit Declaration of Taylor T. Smith, # 3 Exhibit Plaintiff's First Supplemental Initial Disclosures)(Driscoll, Francis) (Entered: 11/16/2022) |
| 11/17/2022 | 44 | REPLY to Response to Motion re 40 MOTION to Compel *Plaintiff's Discovery Responses* filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1)(Caffas, Gregory) (Entered: 11/17/2022) |
| 11/18/2022 | 45 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick:Motion Hearing held on 11/18/2022 re 40 MOTION to Compel filed by SunPath, Ltd. Appearances of counsel. Motion argued and GRANTED IN PART AND DENIED IN PART. Order to follow. (Tape #FTR.)(tfitz, ) (Entered: 11/22/2022) |
| 11/18/2022 | 46 | This matter is before the Court on Defendants Motion to Compel Plaintiffs discovery responses 40 . The Motion was fully briefed, and the Court heard argument of counsel on November 18, 2022. For reasons stated from the bench, and in accord with specific rulings and instructions thereto, it is hereby ORDERED that Defendants Motion to Compel is GRANTED IN PART and DENIED IN PART. Signed by Magistrate Judge William E. Fitzpatrick on 11/18/22. (tfitz, ) (Entered: 11/22/2022) |
| 12/09/2022 | 47 | TRANSCRIPT of proceedings held on 10/14/22, before Judge William E. Fitzpatrick, Court Reporter Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for** |

| | | |
|---|---|---|
| | | Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/9/2023. Redacted Transcript Deadline set for 2/8/2023. Release of Transcript Restriction set for 3/9/2023.(Austin, Stephanie) (Entered: 12/09/2022) |
| 12/09/2022 | 48 | TRANSCRIPT of proceedings held on 11/18/22, before Judge William E. Fitzpatrick, Court Reporter Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/9/2023. Redacted Transcript Deadline set for 2/8/2023. Release of Transcript Restriction set for 3/9/2023.(Austin, Stephanie) (Entered: 12/09/2022)** |
| 12/14/2022 | 49 | MOTION to Certify Class by Ruth Smith. (Driscoll, Francis) (Entered: 12/14/2022) |
| 12/14/2022 | 50 | Memorandum in Support re 49 MOTION to Certify Class filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Driscoll, Francis) (Entered: 12/14/2022) |
| 12/14/2022 | 51 | Notice of Hearing Date re 49 MOTION to Certify Class , 50 Memorandum in Support, (Driscoll, Francis) (Entered: 12/14/2022) |
| 12/14/2022 | 52 | Witness List by Ruth Smith. (Driscoll, Francis) (Entered: 12/14/2022) |
| 12/14/2022 | 53 | Rule 26 Disclosure by SunPath, Ltd.. (Caffas, Gregory) (Entered: 12/14/2022) |
| 12/14/2022 | 54 | Exhibit List by Ruth Smith.. (Driscoll, Francis) (Entered: 12/14/2022) |
| 12/14/2022 | 55 | Discovery Designation by Ruth Smith.(Driscoll, Francis) (Entered: 12/14/2022) |
| 12/15/2022 | 56 | Statement of Undisputed Facts by Ruth Smith. (Driscoll, Francis) (Entered: 12/15/2022) |
| 12/15/2022 | 57 | MOTION to Strike *Plaintiff's Motion for Class Certification* by SunPath, Ltd.. (Caffas, Gregory) (Entered: 12/15/2022) |
| 12/15/2022 | 58 | Memorandum in Support re 57 MOTION to Strike *Plaintiff's Motion for Class Certification* filed by SunPath, Ltd.. (Caffas, Gregory) (Entered: 12/15/2022) |
| 12/15/2022 | 59 | Notice of Hearing Date set for December 22, 2022 re 57 MOTION to Strike *Plaintiff's Motion for Class Certification* (Caffas, Gregory) (Entered: 12/15/2022) |
| 12/15/2022 | 60 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Final Pretrial Conference held on 12/15/2022. Appearances of counsel. Court advised of case status. parties have filed/exchanged witness/exhibits lists. Trial estimate 2 days. Jury Trial set for 2/15/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Counsel oral request for extension to file objections to witnesses & exhibits is granted. Pltf oral request to appear by telephone is Granted. Local counsel must be present in court. (Court Reporter S. Austin.)(yguy) (Entered: 12/16/2022) |
| 12/19/2022 | | Set/Reset Deadlines as to 57 MOTION to Strike *Plaintiff's Motion for Class Certification*. Motion Hearing set for 12/22/2022 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy) (Entered: 12/19/2022) |
| 12/19/2022 | | Set Deadline as to 49 MOTION to Certify Class. Motion Hearing set for 1/20/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (jlan) (Entered: 12/19/2022) |
| 12/20/2022 | 61 | Memorandum in Opposition re 57 MOTION to Strike *Plaintiff's Motion for Class Certification* filed by Ruth Smith. (Attachments: # 1 Affidavit)(Driscoll, Francis) (Entered: 12/20/2022) |

| | | |
|---|---|---|
| 12/21/2022 | 62 | REPLY to Response to Motion re 57 MOTION to Strike *Plaintiff's Motion for Class Certification* filed by SunPath, Ltd.. (Attachments: # 1 Exhibit)(Caffas, Gregory) (Entered: 12/21/2022) |
| 12/22/2022 | 63 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing held on 12/22/2022. Appearance of Pltf's counsel by telephone. Pltf's local counsel appeared in court.Deft's counsel appeared in court. Pltf's 57 MOTION to Strike *Plaintiff's Motion for Class Certification is argued and GRANTED without prejudice. (order to follow) (Court Reporter S. Austin.)(yguy) (Entered: 12/22/2022)* |
| 12/22/2022 | 64 | ORDER: For the reasons stated in open court, defendant's Motion to Strike Plaintiff's Motion for Class Certification [Dkt. No. 57] is GRANTED, and it is hereby ORDERED that plaintiff's Motion for Class Certification [Dkt. No. 49] be and is STRICKEN. This order is without prejudice, and does not convey an opinion on the merits of any future attempts by plaintiff to certify a similar class in another civil action. Signed by District Judge Leonie M. Brinkema on 12/22/22. (yguy) (Entered: 12/22/2022) |
| 12/23/2022 | 65 | MOTION for Summary Judgment by SunPath, Ltd.. (Caffas, Gregory) (Entered: 12/23/2022) |
| 12/23/2022 | 66 | Memorandum in Support re 65 MOTION for Summary Judgment filed by SunPath, Ltd.. (Attachments: # 1 Ex. 1, # 2 Ex. 2, # 3 Ex. 3, # 4 Ex. 4, # 5 Ex. 5, # 6 Ex. 6, # 7 Ex. 7, # 8 Ex. 8, # 9 Ex. 9, # 10 Ex. 10, # 11 Ex. 11, # 12 Ex. 12, # 13 Ex. 13, # 14 Ex. 14)(Caffas, Gregory) (Entered: 12/23/2022) |
| 12/23/2022 | 67 | Notice of Hearing Date re 65 MOTION for Summary Judgment (Caffas, Gregory) (Entered: 12/23/2022) |
| 12/27/2022 | | Set Deadline as to 65 MOTION for Summary Judgment. Motion Hearing set for 1/20/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (jlan) (Entered: 12/27/2022) |
| 12/29/2022 | 68 | NOTICE by SunPath, Ltd. *Notice of Withdrawal of Gregory Caffas* (Caffas, Gregory) (Entered: 12/29/2022) |
| 12/30/2022 | 69 | NOTICE of Appearance by Carl Taylor Smith on behalf of SunPath, Ltd. (Smith, Carl) (Entered: 12/30/2022) |
| 12/30/2022 | 70 | Objection to 52 Witness List filed by SunPath, Ltd.. (Roth, Mitchell) (Entered: 12/30/2022) |
| 12/30/2022 | 71 | Objection to 54 Exhibit List filed by SunPath, Ltd.. (Roth, Mitchell) (Entered: 12/30/2022) |
| 01/03/2023 | 72 | So Ordered re 68 NOTICE by SunPath, Ltd. Notice of Withdrawal of Gregory Caffas. ORDERED that the appearance of Attorney Gregory M. Caffas, on behalf of Defendant SunPath Ltd., is deemed withdrawn. Signed by District Judge Leonie M. Brinkema on 1/3/2023. (show) (Entered: 01/04/2023) |
| 01/06/2023 | 73 | MOTION for Partial Summary Judgment by Ruth Smith. (Driscoll, Francis) (Entered: 01/06/2023) |
| 01/06/2023 | 74 | Memorandum in Support re 73 MOTION for Partial Summary Judgment filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Driscoll, Francis) (Entered: 01/06/2023) |
| 01/06/2023 | 75 | Notice of Hearing Date re 73 MOTION for Partial Summary Judgment , 74 Memorandum in Support, (Driscoll, Francis) (Entered: 01/06/2023) |
| 01/06/2023 | 76 | RESPONSE in Opposition re 65 MOTION for Summary Judgment filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Driscoll, Francis) (Entered: 01/06/2023) |
| 01/09/2023 | | Set Deadline as to 73 MOTION for Partial Summary Judgment. Motion Hearing set for 1/27/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar) (Entered: 01/09/2023) |

| 01/10/2023 | 77 | MOTION for Resetting of Hearing *(Unopposed)* by SunPath, Ltd.. (Attachments: # 1 Proposed Order)(Smith, Carl) (Entered: 01/10/2023) |
|---|---|---|
| 01/10/2023 | 78 | Memorandum in Support re 77 MOTION for Resetting of Hearing *(Unopposed)* filed by SunPath, Ltd.. (Smith, Carl) (Entered: 01/10/2023) |
| 01/10/2023 | 79 | ORDER: Regarding Defendant SunPath, Ltd. 's ("SunPath") Unopposed Motion for Resetting the Hearing on SunPath's Motion for Summary Judgment, it is herebyORDERED that the Motion is GRANTED and the Court approves the following: The hearing on SunPath's Motion for Summary Judgment is reset for January 27, 2023 at 10:00 a.m.; The deadline for SunPath's Reply in support of its Motion for Summary Judgment is reset to January 18, 2023; The deadline for SunPath's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment is reset to January 18, 2023; The deadline for Plaintiffs Reply in support of her Motion for Partial Summary Judgment is reset to January.25, 2023. Signed by District Judge Leonie M. Brinkema on 1/10/23. (yguy) (Entered: 01/10/2023) |
| 01/10/2023 | | Set/Reset Deadlines as to 65 MOTION for Summary Judgment ., Motion Hearing RESET for 1/27/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy) (Entered: 01/10/2023) |
| 01/18/2023 | 80 | REPLY to Response to Motion re 65 MOTION for Summary Judgment filed by SunPath, Ltd.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 81 | RESPONSE in Opposition re 73 MOTION for Partial Summary Judgment filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16)(Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 82 | MOTION to Strike *Plaintiff's Declaration* by SunPath, Ltd.. (Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 83 | Memorandum in Support re 82 MOTION to Strike *Plaintiff's Declaration* filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 84 | First MOTION in Limine by SunPath, Ltd.. (Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 85 | Memorandum in Support re 84 First MOTION in Limine filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 86 | Notice of Hearing Date set for 01/27/2023 re 82 MOTION to Strike *Plaintiff's Declaration* (Bowser, Joseph) (Entered: 01/18/2023) |
| 01/18/2023 | 87 | Notice of Hearing Date set for 01/27/2023 re 84 First MOTION in Limine (Bowser, Joseph) (Entered: 01/18/2023) |
| 01/19/2023 | | Set Deadlines as to 82 MOTION to Strike Plaintiff's Declaration, 84 First MOTION in Limine. Motion Hearing set for 1/27/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar) (Entered: 01/19/2023) |
| 01/20/2023 | 88 | Second MOTION in Limine by SunPath, Ltd.. (Bowser, Joseph) (Entered: 01/20/2023) |
| 01/20/2023 | 89 | Memorandum in Support re 88 Second MOTION in Limine filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Bowser, Joseph) (Entered: 01/20/2023) |
| 01/20/2023 | 90 | Notice of Hearing Date set for 01/27/2023 re 88 Second MOTION in Limine (Bowser, Joseph) (Entered: 01/20/2023) |
| 01/23/2023 | | Set Deadline as to 88 Second MOTION in Limine. Motion Hearing set for 1/27/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (wgar, ) (Entered: 01/23/2023) |
| 01/24/2023 | 91 | TRANSCRIPT of proceedings held on 12/22/22, before Judge Leonie M. Brinkema, Court Reporter/Transcriber Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30)** |

| | | |
|---|---|---|
| | | calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/23/2023. Redacted Transcript Deadline set for 3/27/2023. Release of Transcript Restriction set for 4/24/2023.(Austin, Stephanie) (Entered: 01/24/2023) |
| 01/25/2023 | 92 | RESPONSE in Opposition re 84 First MOTION in Limine filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Driscoll, Francis) (Entered: 01/25/2023) |
| 01/25/2023 | 93 | RESPONSE in Opposition re 82 MOTION to Strike *Plaintiff's Declaration* filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Driscoll, Francis) (Entered: 01/25/2023) |
| 01/25/2023 | 94 | RESPONSE in Opposition re 88 Second MOTION in Limine filed by Ruth Smith. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Driscoll, Francis) (Entered: 01/25/2023) |
| 01/25/2023 | 95 | RESPONSE in Support re 73 MOTION for Partial Summary Judgment filed by Ruth Smith. (Driscoll, Francis) (Entered: 01/25/2023) |
| 01/25/2023 | 96 | EXHIBIT *Corrected Exhibit B to document 93* by Ruth Smith.. (Driscoll, Francis) (Entered: 01/25/2023) |
| 01/25/2023 | 97 | Joint MOTION for Leave to File *Notice of Supplemental Authority* by SunPath, Ltd.. (Bowser, Joseph) (Entered: 01/25/2023) |
| 01/25/2023 | 98 | Memorandum in Support re 97 Joint MOTION for Leave to File *Notice of Supplemental Authority* filed by SunPath, Ltd.. (Attachments: # 1 Exhibit 1)(Bowser, Joseph) (Entered: 01/25/2023) |
| 01/26/2023 | 99 | ORDER granting 97 Joint MOTION for Leave to File Notice of Supplemental Authority. Signed by District Judge Leonie M. Brinkema on 1/26/2023. (show) (Entered: 01/26/2023) |
| 01/26/2023 | 100 | REPLY to Response to Motion re 84 First MOTION in Limine filed by SunPath, Ltd.. (Attachments: # 1 Exhibit)(Bowser, Joseph) (Entered: 01/26/2023) |
| 01/26/2023 | 101 | REPLY to Response to Motion re 88 Second MOTION in Limine filed by SunPath, Ltd.. (Bowser, Joseph) (Entered: 01/26/2023) |
| 01/26/2023 | 102 | REPLY to Response to Motion re 82 MOTION to Strike *Plaintiff's Declaration* filed by SunPath, Ltd.. (Attachments: # 1 Exhibit)(Bowser, Joseph) (Entered: 01/26/2023) |
| 01/27/2023 | 103 | Minute Entry Appearances of counsel. for proceedings held before District Judge Leonie M. Brinkema: Motion Hearing held on 1/27/2023. Court advised of case status. Motions argued. Deft's re 65 MOTION for Summary Judgment filed by SunPath, Ltd., 84 First MOTION in Limine filed by SunPath, Ltd., 82 MOTION to Strike *Plaintiff's Declaration* filed by SunPath, Ltd., 88 Second MOTION in Limine filed by SunPath, Ltd.are GRANTED. Pltf's 73 MOTION for Partial Summary Judgment filed by Ruth Smith, is DENIED. (order to follow) (Court Reporter S. Austin.)(yguy, ) (Entered: 01/27/2023) |
| 01/27/2023 | 104 | ORDER: For the reasons stated in open court, defendant's Motion to Strike Plaintiffs Declaration [Dkt. No. 82], First Motion in Limine [Dkt. No. 84], Second Motion in Limine [Dkt. No. 88], and Motion for Summary Judgment [Dkt. No. 65] are GRANTED. Plaintiff's Motion for Partial Summary Judgment with Respect to Count II of Her Complaint [Dkt. No. 73] is DENIED; and it is hereby ORDERED that judgment be and is entered in favor of the defendant, SunPath, Ltd.. Signed by District Judge Leonie M. Brinkema on 1/27/23. (yguy) (Entered: 01/27/2023) |
| 01/27/2023 | 105 | CLERK'S JUDGMENT: judgment be and is entered in favor of the defendant, SunPath, Ltd. (yguy) (Entered: 01/27/2023) |

| 01/31/2023 | <u>106</u> | NOTICE OF APPEAL as to <u>105</u> Clerk's Judgment, <u>104</u> Order on Motion for Summary Judgment,, by Ruth Smith. Filing fee $ 505, receipt number AVAEDC−8780247. (Driscoll, Francis) (Entered: 01/31/2023) |
|---|---|---|
| 02/07/2023 | <u>107</u> | Transmission of Notice of Appeal to US Court of Appeals re <u>106</u> Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (dvanm) (Entered: 02/07/2023) |
| 02/07/2023 | <u>108</u> | USCA Case Number 23−1140 Fourth Circuit, Case Manager Kirsten Hancock for <u>106</u> Notice of Appeal filed by Ruth Smith. (show) (Entered: 02/07/2023) |
| 02/22/2023 | <u>109</u> | Transcript Order Acknowledgment from USCA re <u>106</u> Notice of Appeal Court Reporter/Transcriber Stephanie Austin. (show) (Entered: 02/22/2023) |
| 05/01/2023 | <u>110</u> | TRANSCRIPT of proceedings for dates of 1/27/23, before Judge Leonie M. Brinkema, re <u>107</u> Transmission of Notice of Appeal to 4CCA, <u>109</u> Transcript Order Acknowledgment from USCA, <u>108</u> USCA Case Number, <u>106</u> Notice of Appeal Court Reporter Stephanie Austin, Telephone number 571−298−1649. **<span style="color:red">NOTICE RE REDACTION OF TRANCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at <u>www.vaed.uscourts.gov</u></span> <span style="color:blue">*Does this satisfy all appellate orders for this reporter? y*</span> Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/31/2023. Redacted Transcript Deadline set for 7/3/2023. Release of Transcript Restriction set for 7/31/2023.(Austin, Stephanie) (Entered: 05/01/2023)** |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RUTH SMITH, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>v.<br><br>SunPath, Ltd., a Massachusetts corporation,<br><br>     *Defendant.* | CASE NO.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ruth Smith ("Plaintiff" or "Smith") brings this Class Action Complaint against Defendant SunPath Ltd. ("Defendant" or "SunPath") to stop Defendant's practice of placing calls to consumers which violate the federal Telephone Consumer Protection Act (TCPA) and the Virginia Telephone Privacy Protection Act (VTPPA), and to obtain redress for all persons similarly injured by Defendant's conduct. Plaintiff also seeks an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Smith is a natural person over the age of eighteen (18) and is a citizen of the Commonwealth of Virginia. Smith resides in Fairfax County, Virginia.

1

2.     Defendant SunPath Ltd. is a corporation organized in and existing under the laws of the State of Massachusetts, with its principal place of business located in Braintree, Massachusetts.

## JURISDICTION & VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court has ancillary and pendent jurisdiction over the state-law UCL claims under 28 U.S.C. § 1367 *et seq*. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4.     This Court has personal jurisdiction over SunPath because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in and received the calls at issue within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

6.     Defendant SunPath is a company that markets and administers vehicle service contracts to consumers across the country. SunPath describes its Vehicle Service Contract ("VSC") offerings as a contract between consumers and SunPath that provides repair coverage for vehicles after the manufacturer's warranty expires.

2

7.      Unfortunately for consumers, SunPath casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited autodialed and prerecorded phone calls to consumers' telephones, including cellular telephones, without prior express consent to make these calls. Indeed, SunPath (or its telemarketers) places these calls to telephones using an ATDS without consumers' prior written express consent in violation of the TCPA.

8.      In an effort to obtain leads for its services, SunPath made (or directed to be made on its behalf) repeated autodialed calls to Plaintiff and other members of the Class without first obtaining express consent to do so—in violation of the TCPA.

9.      The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—calls placed to numbers without prior express written consent.

10.     By making the unauthorized calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such calls. Furthermore, the calls interfered with and interrupted Plaintiff's and the other Class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiff and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

11.     At no time did Defendant obtain prior express consent from Plaintiff and the Class members to receive calls from Defendant.

3

**JA13**

12.     Defendant knowingly made, and continues to make, (either directly or via a third-party acting on its behalf) autodialed telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

13.     Defendant was, and is, aware that the autodialed calls described herein were made to consumers like Plaintiff who have not consented to receive them.

14.     To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval. Defendant ratified the making of any such calls.

15.     To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited calls to telephones registered on the Do Not Call list.

16.     On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities to persons without first securing prior express consent and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

17.     Defendant also repeatedly violated the VTPPA. That is, the VTPPA forbids the placement of telephone solicitation calls to Virginia residents whose wireless number is on the Do Not Call Registry. Defendant or its third-party telemarketers calling on its behalf placed unlawful calls to Virginia residents and those with Virginia area codes, such as Plaintiff, whose numbers appear on the Do Not Call Registry.

18.     The VTPPA also requires that telephone solicitors identify themselves by their first and last names when a consumer answers the phone.  Defendant violated this provision

4

**JA14**

because it (or its third party telemarketers calling on its behalf) did not identify themselves by their first and last name when Plaintiff and other members of the Class answered the phone.

19.     Importantly, under the VTPPA, it is presumed that a telephone solicitation call advertising a seller's property, goods, or services was made for the benefit of the seller and that the seller bears joint and several liability for VTPPA violations arising out of the call. The seller is presumed to be liable whether or not the solicitor was an agent of the seller, and whether or not the solicitor acted under the supervision or at the direction of the seller. Va. Stat. Ann. § 59.1-514.1

## FACTS SPECIFIC TO PLAINTIFF

20.     Plaintiff Smith is the customary user of the personal cellular telephone number ending in 9650.

21.     Plaintiff Smith registered her phone number on the National Do Not Call Registry on or around November 8, 2019.

22.     Plaintiff Smith's number ending in 9650 is a personal cellphone number and is not used for business purposes.

23.     Beginning in May 2020, Smith began receiving a near-daily barrage of autodialed telemarketing calls soliciting Smith to purchase a SunPath policy.

24.     Smith received the following autodialed calls:

- May 26, 2020 – 2 calls from caller ID 410-844-6327

- May 26, 2020 – 2 calls from caller ID 281-709-0786

- May 28, 2020 – 7 calls from caller ID 281-709-0786

- May 29, 2020 – 1 call from caller ID 281-709-0786

- May 29, 2020 – 4 calls from caller ID 352-209-2321

5

- May 30, 2020 – 3 calls from caller ID 407-479-7228

- June 1, 2020 – 6 calls from caller ID 407-479-7228

- June 1, 2020 – 1 call from caller ID 281-709-0849

- June 2, 2020 – 3 calls from caller ID 281-709-0786

- June 3, 2020 – 3 calls from caller ID 407-479-7228

- June 4, 2020 – 2 calls from caller ID 407-479-7228

- June 5, 2020 – 5 calls from caller ID 407-479-7228

- June 6, 2020 – 2 calls from caller ID 407-479-7228

- June 8, 2020 – 9 calls from caller ID 407-479-7228

- June 9, 2020 – 4 calls from caller ID 407-479-7228

25.     Thus, Smith received at least fifty (50) autodialed calls within the span of a couple of weeks, all made to solicit Smith to purchase a policy that would be provided by SunPath.

26.     Smith does not have a relationship with Defendant of any kind. She has never provided her telephone number directly to Defendant and has never requested that Defendant place any calls to her. Plaintiff Smith has never provided any form of prior express written or oral consent to receive calls from or on behalf of Defendant despite listing her number on the National Do Not Call Registry. She has no business or other relationship with the Defendant.

27.     On none of the calls did the caller identify himself or herself by her first and last name.

28.     When Smith answered the calls, she heard a pause and a click before an operator came on the line. This is indicative of the use of an ATDS.

6

29.     All of the calls were placed via an ATDS at the direction and oversight of Defendant. Defendant knew about, directed, ratified, and benefitted from the calls.

30.     Defendant was, and still is, aware that the above-described autodialed calls were sent to consumers like Plaintiff who have not consented to receive them.

31.     On information and belief, the equipment used to place the calls at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for calling at a later date.

32.     The equipment at issue also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff Smith brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's products and services; (5) using the same equipment that was used to call the Plaintiff; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff.

> **Virginia Do Not Call Registry Class**: All persons who either reside in Virginia or who have cellular telephones with a Virginia area code, who, in the period from two years prior to commencement of this litigation until this class is certified, had a registered number on the Do Not Call Registry for at least thirty days; and (2) received more than one call soliciting the purchase of a policy that would be offered or underwritten by SunPath.

7

**Virginia Unidentified Caller Class**: All persons who either reside in Virginia or who have cellular telephones with a Virginia area code, who, in the period from two years prior to commencement of this litigation until this class is certified, (1) received one or more telemarketing phone calls made to solicit the purchase of a policy that would be offered or underwritten by SunPath; (2) where the caller did not identify themselves by first and last name during the call.

34.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

35.     **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed telemarketing calls to thousands of consumers who fall into the defined Class. Members of the Class can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

36.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

37.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and she has retained counsel competent and experienced in

8

**JA18**

complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

38.   **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)   Whether Defendant's conduct violated the TCPA;

(b)   Whether Defendant systematically made unsolicited telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(c)   Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

(d)   Whether the Plaintiffs and the other members of the Class are entitled to statutory damages;

(e)   Whether Defendant acted willfully so as to require an award of treble damages;

(f)   Whether Defendant violated the VTPPA; and

(g)   Whether Defendant's operators identify themselves via their first and last name on the calls.

39.   **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and

9

expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the No Consent Class)

40.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

41.     Defendant made unsolicited autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to generate business for Defendant's products and services.

42.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or

10

**JA20**

agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

43.     Further, Defendant made the calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

44.     By making the unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b).

45.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

46.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND CAUSE OF ACTION**
**Violation of the Virginia Telephone Privacy Protection Act**
**(On behalf of Plaintiff and the Virginia Do Not Call Registry Class)**

47.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.     The VTPPA states, "No telephone solicitor shall initiate, or cause to be initiated, a telephone call to a telephone number on the National Do Not Call Registry …." Va. Stat. Ann. § 59.1-514(B).

11

49.     The VTPPA defines "telephone solicitor" to mean "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." Va. Stat. Ann. § 59.1-510.

50.     The VTPPA defines "telephone solicitation call" to include "any text message, sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, [etc.]" Va. Stat. Ann. § 59.1-510. 4

51.     Under the VTPPA, it is presumed that a telephone solicitation call advertising a seller's property, goods, or services was made for the benefit of the seller and that the seller bears joint and several liability for VTPPA violations arising out of the call. The seller is presumed to be liable whether or not the solicitor was an agent of the seller, and whether or not the solicitor acted under the supervision or at the direction of the seller. Va. Stat. Ann. § 59.1-514.1.

52.     SunPath or third-party solicitors acting on its behalf and for its benefit initiated calls to Plaintiff and other Class members despite their numbers being on the Do Not Call Registry for the purpose of advertising SunPath's products and services.

53.     SunPath bears joint and several liability for the calls without regard for whether the solicitor was an agent of SunPath or for whether the sender acted at the supervision or direction of SunPath.

54.     A natural person aggrieved by violations of the VTPPA may bring action against the violator for $500 in statutory damages for the first violation, $1,000 in statutory damages for

12

**JA22**

the second violation, and $5,000 for each subsequent violation, plus reasonable attorney fees and costs. If violations of the VTPPA are willful, the damages for first and second violations may be increased to $5,000. Vt. Stat. Ann. § 59.1-515.

### THIRD CAUSE OF ACTION
**Violation of the Virginia Telephone Privacy Protection Act
(On behalf of Plaintiff and the Virginia Unidentified Caller Class)**

55.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56.     The VTPPA states, "A telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person." Va. Stat. Ann. § 59.1-512.

57.     SunPath or telephone solicitors acting for its benefit made calls to Plaintiff and the Class to offer SunPath's products and services for sale.

58.     When SunPath or telephone solicitors acting for its benefit placed the calls, the caller failed to identify himself or herself by first and last name.

59.     SunPath, as a telephone solicitor itself or jointly and severally through telephone solicitors acting for its benefit, is liable for telephone solicitation calls that violate the VTPPA.

60.     At no point during any of the calls at issue did the solicitor identify himself by first and last name, in violation of the VTPPA.

61.     A natural person aggrieved by violations of the VTPPA may bring action against the violator for $500 in statutory damages for the first violation, $1,000 in statutory damages for the second violation, and $5,000 for each subsequent violation, plus reasonable attorney's fees

13

**JA23**

and costs. If violations of the VTPPA are willful, the damages for first and second violations may be increased to $5,000. Vt. Stat. Ann. § 59.1-515.

62.     Plaintiff and the Class demand judgment against SunPath for statutory damages, special damages, attorney fees and costs, and any other relief provided by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Smith, on behalf of herself and the Class, pray for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff Smith as the representative of the Classes and appointing her counsel as Class Counsel;

B.     An award of actual monetary loss from such violations or the sum statutory damages for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.     An order declaring that Defendant's actions, as set out above, violate the TCPA and the VTPPA;

D.     An award of pre- and post-judgment interest;

E.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

F.     Such other and further relief that the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 26, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By:     __/s/ Francis J. Driscoll, Jr.__
          One of Plaintiff's Attorneys

14

**JA24**

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
Law Office of Frank J. Driscoll Jr. PLLC
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice* Admission to Be Sought

15

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RUTH SMITH,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )         1:22cv81 (LMB/TCB)
                                     )
SUNPATH, LTD.,                       )
                                     )
            Defendant.               )
                                     )

**ORDER**

     A Fed. R. Civ. P. 16(b) PRETRIAL CONFERENCE will be held on Wednesday, <u>August 31, 2022, at 11:00 a.m.</u> before a magistrate judge.[1]  The parties shall confer before this conference to consider the claims, defenses, possibilities of a prompt settlement or resolution of the case, trial before a magistrate judge, to arrange for the disclosures required by Rule 26(a)(1), and to develop a discovery plan which will complete discovery by Friday, <u>December 9, 2022</u>.  A party may not exceed five (5) non-party, non-expert witness depositions and may not serve on any other party more than thirty (30) interrogatories, including parts and subparts, without leave of court.  Proposed discovery plans must be filed by the <u>Wednesday one week before the Rule 16(b) pretrial conference.</u>

     Any party required to file an answer must do so within fourteen (14) days.

     The FINAL PRETRIAL CONFERENCE will be held on Thursday, <u>December 15, 2022 at 10:00 a.m.</u>

     The parties must *electronically file on or before* the final pretrial conference the Rule 26(a)(3) disclosures and a list of the exhibits to be used at trial, a list of the witnesses to be called at trial and a written stipulation of uncontested facts.  The exhibits themselves or a copy should be exchanged with opposing counsel before the conference.  Objections to exhibits must be filed within 10 days after the conference; otherwise the exhibits shall stand admitted in evidence.  The original exhibits shall be delivered to the clerk as provided by Local Rule 79(A).  <u>Exhibits not so disclosed and listed will not be permitted at trial except for impeachment or rebuttal, and no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.</u>  The trial of this case will be set for a day certain, within 4-8 weeks of the final pretrial conference.

     Discovery may begin as of receipt of this Order.

     PERSONAL IDENTIFIERS MUST BE REDACTED FROM ALL PUBLICLY FILED PLEADINGS AND EXHIBITS IN ACCORDANCE WITH LOCAL RULE 7(C).

     Entered this 5 day of August, 2022.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[1] This conference need not be in person and can be conducted by telephone conference.

**JA26**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.,**<br><br>        Defendant. | **Case No. 1:22-cv-81-LMB-TCB** |

## DEFENDANT SUNPATH LTD.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant SunPath, Ltd. ("SunPath"), pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, by counsel, hereby answers, paragraph by paragraph, Plaintiff Ruth Smith's ("Plaintiff") Class Action Complaint (ECF No. 1) ("Complaint") as follows:

### PARTIES

1.  SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 1, and therefore denies them.

2.  Denied in part; SunPath is a Delaware corporation with its principal place of business in Massachusetts.

### JURISDICTION AND VENUE

3.  The allegations in Paragraph 3 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

4.  The allegations in Paragraph 4 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied, and SunPath expressly preserves its objection to the Court's exercise of personal jurisdiction over it.

1

**JA27**

5.      The allegations in Paragraph 5 call for legal conclusions to which no response is necessary. To the extent a response is required, those allegations are denied.

## COMMON ALLEGATIONS OF FACT

6.      SunPath admits only that it is serves as administrator of certain vehicle service contracts.  The remainder of the allegations in this paragraph are denied.

7.      SunPath denies that it engages in any form of telemarketing.  The remaining allegations in Paragraph 7 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

8.      Denied.

9.      The language of the TCPA speaks for itself and anything to the contrary is denied. The remaining allegations call for legal conclusions to which no response is necessary.  To the extent any further response is required, those allegations are denied.

10.     Denied.

11.     The allegations in Paragraph 11 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

12.     Denied.

13.     Denied.

14.     The allegations in Paragraph 14 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

**JA28**

15.     This paragraph does not appear to contain any factual allegations requiring a response from SunPath, but if any response is deemed required, SunPath denies that Plaintiff or any purported class is entitled to the relief sought from SunPath.

16.     This paragraph does not appear to contain any factual allegations requiring a response from SunPath, but if any response is deemed required, SunPath denies that Plaintiff or any purported class is entitled to the relief sought from SunPath.

17.     The allegations in Paragraph 17 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

18.     The VTPPA speaks for itself and anything to the contrary is denied.   The remainder of the allegations in Paragraph 18 calls for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

19.     The VTPPA speaks for itself and anything to the contrary is denied.

## FACTS SPECIFIC TO PLAINTIFF

20.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies them.

21.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies them.

22.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 22, and therefore denies them.

23.     The allegations in Paragraph 23 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

24.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 24, and therefore denies them.

**JA29**

25.     The allegations in Paragraph 25 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

26.     SunPath admits only that its first interaction with Plaintiff was when she demanded compensation for calls SunPath did not make or have any knowledge of or control over.  The remaining allegations in Paragraph 26 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

27.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 27, and therefore denies them.

28.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 28, and therefore denies them.

29.     Denied.

30.     Denied.

31.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 31, and therefore denies them.

32.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies them.

## CLASS ACTION ALLEGATIONS

33.     SunPath admits that Plaintiff purports to bring class action claims, but denies that Plaintiff or any alleged putative class are entitled to the relief sought from SunPath.  Any allegations regarding Plaintiff representing a potential class also call for legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

34.     The allegations in Paragraph 34 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

35.     The allegations in Paragraph 35 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

36.     The allegations in Paragraph 36 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

37.     The allegations in Paragraph 37 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

38.     The allegations in Paragraph 38 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

39.     The allegations in Paragraph 39 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

**FIRST CAUSE OF ACTION**
**Alleged Violation of the TCPA, 47 U.S.C 227, *et seq.***
**(On behalf of Plaintiff and the No Consent Class)**

40.     SunPath incorporates its responses to paragraphs 1-39 above as if fully set forth herein.

41.     The allegations in Paragraph 41 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

42.     The allegations in Paragraph 42 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

43.     The allegations in Paragraph 43 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

44.     The allegations in Paragraph 44 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

45.     The allegations in Paragraph 45 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

46.     The cited provision of the TCPA speaks for itself, and anything to the contrary is denied.

## SECOND CAUSE OF ACTION
**Alleged Violation of the Virginia Telephone Privacy Protection Act**
**(On behalf of Plaintiff and the Virginia Do Not Call Registry Class)**

47.     SunPath incorporates its responses to paragraphs 1-46 above as if fully set forth herein.

48.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

49.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

50.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

51.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

52.     The allegations in Paragraph 52 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

53.     The allegations in Paragraph 53 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

54.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

**THIRD CAUSE OF ACTION**
**Alleged Violation of the Virginia Telephone Privacy Protection Act**
**(On behalf of Plaintiff and the Virginia Unidentified Caller Class)**

55.     SunPath incorporates its responses to paragraphs 1-54 above as if fully set forth herein.

56.     The cited provision of the VTPPA speaks for itself, and anything to the contrary is denied.

57.     The allegations in Paragraph 57 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

58.     The allegations in Paragraph 58 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

59.     The allegations in Paragraph 59 call for legal conclusions to which no response is necessary.  To the extent a response is required, those allegations are denied.

60.     SunPath is without sufficient information to form a belief as to the truth of the allegations in Paragraph 60, and therefore denies them.

61.     The cited subsection of the VTPPA speaks for itself, and anything to the contrary is denied.

62.     SunPath denies that Plaintiff or the alleged putative class are entitled to the relief sought from SunPath.

**PRAYER FOR RELIEF**

This section does not contain any factual allegations requiring a response from SunPath, but if a response is deemed required, SunPath denies that Plaintiff or any putative class member is entitled to any relief from SunPath.

**JA33**

**GENERAL DENIAL**

All allegations set forth in the Complaint not specifically admitted above are denied.

**SEPARATE AND AFFIRMATIVE DEFENSES**

Based upon its current information and belief, SunPath asserts the following affirmative defenses to Plaintiff's Class Action Complaint, and reserves the right to assert additional affirmative defenses in the event its investigation or discovery indicate that they would be appropriate. By asserting these defenses here, SunPath does not concede that they have the burden of proof or production for any of the following:

1.      Plaintiff lacks Article III standing because she has incurred no injury or actual harm or damages. *See, e.g., Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019).

2.      Plaintiff fails to state a claim against SunPath upon which relief can be granted, as explained in its Motion to Dismiss.

3.      Although SunPath specifically denies it has any liability with respect to Plaintiff's claims and allegations, SunPath asserts that it has not willfully violated any statute and any violation(s) that may have occurred were unintentional.

4.      Any alleged damages suffered by Plaintiff resulted from the acts or omissions of third parties who were not agents of SunPath, over whom SunPath exercised no control or authority and for whose conduct SunPath is not responsible.

5.      The claims against SunPath are misjoined and therefore SunPath should be dismissed and/or the claims against SunPath severed.

6.      Plaintiff's claims are barred insofar as an applicable established business relationship authorized the calls at issue pursuant to 47 C.F.R. § 64.1200(f)(5). *See, e.g., Leyse*

*v. Bank of Am., Nat'l Ass'n*, Civil Action No. 11-7128 (SDW) (SCM), 2020 U.S. Dist. LEXIS
44234, at *13 (D.N.J. Mar. 13, 2020).

## **RESERVATION OF RIGHTS**

SunPath reserves the right to amend this Answer and/or to assert additional defenses
and/or supplement, alter, or change any of the responses set forth in this Answer in any manner
upon further investigation and/or discovery.

## **CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, SunPath prays that the Complaint be dismissed with prejudice, with
SunPath being awarded all costs of suit, including attorney's fees, as they may be payable
pursuant to applicable law.

Dated: August 19, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

9

**JA35**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the above and foregoing SunPath's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on August 19, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

10

**JA36**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **SUNPATH, LTD.**, a Massachusetts corporation, <br><br> Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**JOINT DISCOVERY PLAN**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26(A), and the Order entered by this Court on August 5, 2022 (dkt. 25), counsel of record for the parties respectfully submit this Joint Discovery Plan in advance of the initial pretrial conference to beheld on August 31, 2022, at 11:00 a.m.

Pursuant to Rule 26(f), the parties conferred on August 18, 2022, to formulate this discovery plan.

1. <u>Nature of the Case.</u>

<u>Plaintiff's Position:</u> The facts are straightforward. Plaintiff received calls on her cellular telephones from or on behalf of SunPath. Plaintiff has never provided prior express consent to receive such calls. Plaintiff received at least fifty, autodialed telemarketing calls regarding SunPath's products or services. Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings this action to put an end to Defendant's serial violations of the TCPA.

**JA37**

Similarly, Plaintiff also challenges Defendant's actions under the Virginia Telephone Privacy Protection Act. Indeed, SunPath, or a third party acting on behalf of SunPath, placed repeated telemarketing calls to her telephone number, which was registered on the national Do Not Call Registry. Further, SunPath failed to properly identify itself during the calls at issue. As such, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings this action to put an end to Defendant's serial violations of the Virginia Telephone Privacy Protection Act.

Defendant's Position:

Plaintiff has alleged she received "more than 50" telemarketing calls to her cellular telephone in violation of the Telephone Consumer Protection Act ("TCPA") and its Virginia analogue, the Virginia Telephone Privacy Protection Act ("VTPPA").   She alleges SunPath or a third-party acting on its behalf (it is unclear which) made the subject phone calls, but SunPath has never called her, and does not control any of the third parties that sell SunPath-administered vehicle service contracts.  Plaintiff's claims pursuant to the TCPA and VTPPA lack merit because SunPath does not make outbound sales calls to consumers, and specifically did not initiate any of the alleged calls to Plaintiff's cellular telephone or control or direct any third-party to make such calls.

2. Initial Disclosures. The parties will exchange initial disclosures on or before September 1, 2022.

3. Discovery Schedule.

Plaintiff's Position: Plaintiff requests that the Court vacate the current pretrial deadlines, which would require the final pretrial conference to be held on December 15, 2022. In this putative class action, Plaintiff alleges that Defendant violated the TCPA and similar state laws by placing repeated autodialed calls to consumers without consent. Accordingly, Plaintiff intends to pursue evidence relevant to class certification that is likely in the possession of SunPath and third

parties. Absent an extension of the existing trial date, the parties will be left with three months to complete all discovery in this action, fully brief Plaintiff's anticipated motion for class certification, await a ruling on class certification, effectuate a notice plan (which itself may take 60-days), and file any dispositive motions. Plaintiff is concerned that it is not possible to complete these tasks within three months.

As such, an extension will permit the parties sufficient time to identify all third parties involved, effectuate any subpoenas, and take depositions that may be necessary. By permitting additional time to engage in pre-certification discovery, the parties will be able to provide a fulsome record upon which this Court can adjudicate class certification.

As such, Plaintiff proposes that discovery should proceed with respect to both class certification, merits, and expert issues for a period of four (4) months. Plaintiff proposes filing her motion for class certification within 75-days. Following a ruling on class certification the Court would hold a subsequent case management conference and establish a schedule for the remainder of the case, including a period for any remaining merits-based discovery, and dates for summary judgment briefing, pre-trial conferences, and the trial.

Plaintiff proposes the following discovery schedule:

| Event | Proposed Deadlines |
|---|---|
| Motion to Amend Pleadings and/or Add Parties | October 31, 2022 |
| Plaintiff's Expert Disclosures Due | November 25, 2022 |
| Defendant's Expert Disclosures Due | December 9, 2022 |
| Rebuttal Expert Disclosures Due | December 23, 2022 |
| Discovery Cut Off | December 30, 2022 |
| Engage in Good Faith Settlement Discussions | December 30, 2022 |

| | |
|---|---|
| Plaintiff to File Motion for Class Certification | November 14, 2022 |
| Defendant to File Opposition to Class Certification | December 5, 2022 |
| Plaintiff to File Reply ISO Motion for Class Certification | December 19, 2022 |
| Subsequent Case Management Conference | To be set after a ruling on class certification |
| File Dispositive Motions | TBD |

Defendant's Position: Defendant anticipates moving for summary judgment at the close of fact discovery on the grounds that Defendant is not directly or vicariously liable for any of the alleged violations of the TCPA or VTPPA.  In accordance with the requirements set forth in the Court's Order dated August 5, 2022, ECF No. 25, and Local Rule 26, Defendant proposes the following schedule:

| **Event** | **Proposed Deadlines** |
|---|---|
| Motion to Amend Pleadings and/or Add Parties | September 30, 2022 |
| Plaintiff's Expert Disclosures Due | October 16, 2022 |
| Defendant's Expert Disclosures Due | November 15, 2022 |
| Rebuttal Expert Disclosures Due | November 30, 2022 |
| Discovery Cut Off | December 9, 2022 |
| Engage in Good Faith Settlement | December 30, 2022 |

**JA40**

| Discussions | |
|---|---|
| Plaintiff to File Motion for Class Certification | November 14, 2022 |
| Defendant to File Opposition to Class Certification | December 5, 2022 |
| Plaintiff to File Reply ISO Motion for Class Certification | December 19, 2022 |
| Subsequent Case Management Conference | 7 days after ruling on dispositive motion |
| File Dispositive Motions | December 19, 2022 |

4.   Discovery of Electronically Stored Information. Electronically stored information and documents may be produced in either electronic or printed form, unless electronic form is specifically requested in relation to particular requests. Documents produced in electronic form shall be produced in the format that they are typically stored, unless the parties agree otherwise by counsel before production.

5.   Privileged or Protected Material. The parties agree that to the extent any party intends to assert a claim of privilege or protection as trial preparation material, any such claim must be made in a timely manner and in accordance with Fed. R. Civ. P. 26(b)(5). The parties agree that communications between the parties and their counsel of record in this case do not need to be stated on any privilege log. The parties agree that inadvertent production of privileged materials shall not constitute a waiver of privileges or protections so long as the producing party notifies the receiving party promptly upon discovery of the inadvertent production. Disputes concerning

JA41

privileges and protections shall be addressed in accordance with the Federal Rules of Civil

Procedure.

6. <u>Protective Orders.</u> Counsel for the parties agree to discuss the entry of a stipulated

protective order and shall agree to work together to agree on a form for a protective order

consistent with the requirements of the Local Rules.

7. <u>Amendment of Pleadings/Addition of Parties.</u>

<u>Plaintiff's Position:</u> Plaintiff proposes that the deadline to amend pleadings and to add

parties shall be October 31, 2022.

<u>Defendant's Position:</u> Plaintiff proposes that the deadline to amend pleadings and to add

parties shall be September 30, 2022.

8. <u>Trial by Magistrate.</u> All parties do not consent to trial by Magistrate.

9. <u>Trial.</u> The parties estimate that the trial of this matter shall last for three (3) days.

10. <u>Scheduling Conference.</u> The parties jointly request that the Rule 16 scheduling

conference in this case be conducting telephonically.

11. <u>Settlement Prospects:</u>

<u>          Plaintiff's Position:</u>

<u>Defendant's Position: Based on settlement discussions between the parties to date, Defendant</u>

<u>does not foresee a settlement conference leading to an early resolution of this case.</u>

Respectfully submitted,

Dated: August 24, 2022          **Jointly submitted:**

By: <u>  /s/ Francis J. Driscoll, Jr.                  </u>
          One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107

6

**JA42**

Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class

and

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

7

**JA43**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RUTH SMITH,                          )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        Civil Action No. 1:22cv81 (LMB/WEF)
                                     )
SUNPATH, LTD.,                       )
                                     )
                Defendant.           )
_____)

## RULE 16(B) SCHEDULING ORDER

Upon consideration of the representations made by the parties in their Proposed Joint

Discovery Plan pursuant to Fed. R. Civ. P. 26(f) ("Joint Discovery Plan") (Dkt. 27) and at the

initial pretrial conference held on August 31, 2022 and taking note of the Scheduling Order

entered in this case (Dkt. 25), the court makes the following rulings:

1.      All discovery shall be concluded by December 9, 2022.

2.      The Joint Discovery Plan filed by the parties is approved and shall control

discovery to the extent of its application unless further modified by the court.

3.      All Fed. R. Civ. P. 26(a)(1) disclosures shall be completed by September 1, 2022.

4.      Parties' requested expert disclosure schedule is denied.  Expert disclosures shall

be governed by Local Civil Rule 26(D).  Specifically, expert disclosures shall be due from

plaintiff by October 10, 2022, and from defendants by November 9, 2022.  Rebuttal reports from

plaintiff, if any, shall be due by November 28, 2022.  To the extent the parties wish to modify

these deadlines, they must seek leave of court.

5.      If the parties believe that a settlement conference with the court would be of

1

**JA44**

assistance in resolving this dispute, they may arrange a settlement conference by contacting the undersigned magistrate judge's chambers.

6. To the extent any party intends to assert a claim of privilege or protection as to trial preparation material, any such claim must be made in a timely manner and in accordance with Fed. R. Civ. P. 26(b)(5).

7. To the extent it becomes necessary, the parties may submit an agreed protective order concerning the disclosure of information between the parties in discovery. Any provision in the proposed protective order concerning filing documents under seal must comply with Local Civil Rule 5.

8. The parties are reminded of their obligations regarding the preservation of discoverable information.

9. The following provisions shall apply to the filing and noticing of all motions:

(a) All motions must contain a statement that a good-faith effort to narrow the area of disagreement has been made in accordance with Local Civil Rule 7(E) and Local Civil Rule 37(E) for discovery motions. All motions must adhere to the page limits and font requirements set in Local Civil Rule 7(F)(3). An appropriate number of paper copies of any motion and all pleadings relating to that motion shall be delivered directly to the attention of the judge hearing the motion at the Clerk's Office within one day of the electronic filing. *See* "Alexandria Chambers Copies/Division-Specific Information" on the Alexandria page of the Court's website located at www.vaed.uscourts.gov.

(b) Except for consent motions, all motions shall be accompanied either by a waiver of hearing or a notice of hearing for the earliest possible hearing date consistent with the briefing schedules discussed below. A consent motion should be filed in accordance with the procedures

2

**JA45**

provided on the Alexandria page of the Court's website referenced above.  All discovery-related motions must be filed before the final pretrial conference.

(c)    Any motion to amend the pleadings or to join a party must be made as soon as possible after counsel or the party becomes aware of the grounds for the motion.

(d)    Dispositive motions shall be filed and briefed in accordance with the schedule set forth in Local Civil Rule 7(F)(1) and (K).  Local Civil Rule 7(F)(1) provides that a response brief is due 14 days after service of the motion and a reply brief may be filed 6 days after the service of the response.  The periods for filing a response brief and a reply shall apply without regard to the mode of service used for those briefs.  Any dispositive motion against a *pro se* party must contain the notice set forth in Local Civil Rule 7(K) and provide the *pro se* party with at least 21 days to file a response opposing the motion.

(e)    In order to provide for the prompt resolution of non-dispositive matters to be heard by the assigned magistrate judge, a non-dispositive motion may be filed by no later than 5:00 p.m. on a Friday and noticed for a hearing at 10:00 a.m. on the following Friday.  Under this expedited schedule, a response brief must be filed no later than 5:00 p.m. on the following Wednesday and any reply brief should be filed as early as possible on Thursday to give the court time to review all pleadings before the hearing.  This expedited schedule shall apply for non-dispositive motions noticed for a hearing with less than two weeks' notice.  If a non-dispositive motion is noticed for a hearing between two and three weeks from the filing date, any response brief must be filed 7 days after service and any reply brief may be filed 3 days after service of the response.  At the moving party's discretion, a non-dispositive motion may also be filed and noticed for a hearing with three weeks' notice and the briefing schedule provided in Local Civil Rule 7(F)(1) providing for 14 days for a response brief and 6 days for a reply would apply.  If a

non-dispositive motion is filed and oral argument is waived, any response brief must be filed within 7 days after service and any reply brief within 3 days after service of the response.

(f)    All summary judgment issues shall be presented in the same pleading unless leave of court is first obtained.  As required by Local Civil Rule 56, each brief in support of a motion for summary judgment must include a separately captioned section within the brief listing, in numbered-paragraph form, each material fact that the movant contends is undisputed with appropriate citations to the record.  A brief in opposition to a motion for summary judgment must include a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record. The Court may assume that any fact identified by the movant as undisputed in the movant's brief that is not specifically controverted in the non-movant's brief in the manner set forth above is admitted for the purpose of deciding the motion for summary judgment.

(g)    Any motion to file a document under seal must comply with Local Civil Rule 5. Pursuant to Local Civil Rule 5, a notice specifically identifying the motion as a sealing motion must be filed on the public record.  There is no need to file a notice of hearing or waiver of hearing for a motion to seal.  A memorandum must be filed stating sufficient facts to support the action sought, and a proposed order must include specific findings.  Where a party moves to file material under seal because the opposing party has designated that material as confidential, the opposing party must file a response to the motion and a proposed order that meet the requirements of Local Civil Rule 5.  Only the particular material found to meet the required standard may be sealed, with the remainder filed in the public record.  An unsealed, redacted version of the filing in issue shall be filed with the motion to seal.  Filings under seal are

disfavored and discouraged.  *See Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575–76 (4th Cir. 2004).

10.     Disclosures under Fed. R. Civ. P. 26(a)(1) and (2), notices of depositions, interrogatories, requests for documents and admissions, and answers thereto shall not be filed except on order of the court, or for use in a motion or at trial.

11.     In the event this case is tried before a jury, each party shall file their proposed jury instructions and *voir dire* seven (7) days prior to trial in accordance with Local Civil Rule 51. Violation of this Rule will constitute a waiver of objections to any instructions given.  In the event the case is tried without a jury, counsel shall file written proposed findings of fact and conclusions of law prior to the beginning of trial.

Entered this 7th day of September, 2022.

William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia

5

JA48

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## PLAINTIFF'S MOTION FOR LEAVE TO MODIFY CASE SCHEDULE

Plaintiff Ruth Smith ("Plaintiff"), by and through her counsel, respectfully moves this

Court for an Order modifying the case schedule. Plaintiff requests that the Court modify the

schedule and grant a brief sixty (60) day extension of the existing discovery schedule.

Additionally, Plaintiff requests that the Court vacate the final pretrial conference, which is

currently scheduled for December 15, 2022, and set a briefing schedule regarding class

certification. Plaintiff proposes the following modified deadlines:

- Discovery Cut-Off: February 10, 2022;
- Plaintiff's Expert Disclosure: December 9, 2022;
- Defendant's Expert Disclosure: January 6, 2023;
- Rebuttal Expert Disclosures: January 27, 2023;
- Plaintiff to file Motion for Class Certification: January 13, 2023;
- Defendant to file Opposition to Class Certification: February 3, 2023;
- Plaintiff to file Reply ISO Class Certification: February 17, 2023; and
- Final Pretrial Conference: To be set after a ruling on class certification.

The grounds for this motion are set forth in the accompanying Memorandum in Support

pursuant to Local Rule 7(F)(1)

In accordance with Local Rule 7(E), Plaintiff certifies that she conferred with SunPath

regarding the requested relief. SunPath does not consent to the requested relief.

1

**JA49**

Dated: October 7, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Francis J. Driscoll, Jr._
     One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

2

**JA50**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on October 7, 2022.

/s/ Francis J. Driscoll, Jr.

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**<u>DECLARATION OF PATRICK H. PELUSO</u>**

I, Patrick H. Peluso, declare as follows:

1.      I am an attorney with the law firm Woodrow & Peluso, LLC and counsel of record for Plaintiff Ruth Smith ("Plaintiff" or "Smith").

2.      On January 26, 2022, Plaintiff filed the instant action alleging wide-scale violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act") and the Virginia Telephone Privacy Protection Act ("VTPPA").

3.      On August 5, 2022, the Court issued its initial scheduling order, which required all discovery to be completed on or before December 9, 2022, and set a final pretrial conference for December 15, 2022, at 10:00 a.m. (Dkt. 25.) The scheduling order also required the parties to submit a joint proposed discovery plan on or before August 24, 2022. (*Id.*)

4.      On August 24, 2022, the parties filed a joint discovery plan, which set forth their respective positions regarding the case schedule. (Dkt. 27.)

5.      On September 31, 2022, the Court issued a Rule 16(b) scheduling order, which set the following deadlines in this case.

**JA53**

1

- Discovery Cut-Off: December 9, 2022;
- Plaintiff's Expert Disclosure: October 10, 2022;
- Defendant's Expert Disclosure: November 9, 2022;
- Rebuttal Expert Disclosures: November 28, 2022; and
- Final Pretrial Conference: December 15, 2022, at 10:00 a.m.

(Dkt. 31.)

6.      Since the commencement of discovery, Plaintiff has diligently worked to gather all necessary discovery.

7.      On August 24, 2022, Plaintiff issued her first set of discovery requests on SunPath, including interrogatories and requests for production. SunPath requested an extension of its deadline to respond to the requests until October 7, 2022.

8.      On August 29, 2022, SunPath issued its first set of discovery requests directed to Plaintiff, including interrogatories, requests for admission, and requests for production. Plaintiff served her objections to the requests on September 13, 2022, and her responses on September 28, 2022.

9.      On August 24, 2022, Plaintiff also issued subpoenas to Testify at a Deposition in a Civil Action and a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). American Protection was identified as an agent of SunPath that likely placed, at least some, of the calls at issue to Plaintiff. The subpoena seeking documents specified a response date of September 16, 2022.

10.     On September 16, 2022, Kobi Chukran, the president of American Protection, responded to the subpoena and produced documents reflecting a relationship with SunPath as well as documents evidencing written communications with Plaintiff. However, Mr. Chukran indicated that it possessed no records of any calls placed on behalf of SunPath. Instead, Mr.

2

**JA54**

Chukran claimed that the calls may have been placed by another company, American Vehicle Protection Corp. ("AVPC").

11.    In response, Plaintiff requested Mr. Chukran's availability for a deposition and a call to discuss American Protection's responses to the subpoena.

12.    On September 23, 2022, Mr. Chukran responded and stated that he would only answer questions during a deposition.

13.    On September 26, 2022, Plaintiff served a letter on American Protection outlining deficiencies in its responses to the subpoena. The letter also requested American Protection's availability to discuss the deficiencies.

14.    On September 30, 2022, Mr. Chukran responded, via email, and altered his prior response by illuding to the existence of some class records (but still refused to produce any documents). He also reiterated that he would discuss its responses to the subpoena at a deposition—which he stated could likely not take place until November.

15.    On September 21, 2022, Plaintiff issued subpoenas to Testify at a Deposition in a Civil Action and a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on AVPC.

16.    Also on September 21, 2022, Plaintiff issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Verizon Communications, Inc. The subpoena seeks to identify the subscriber(s) or user(s) of the telephone numbers that placed the calls to Plaintiff.

17.    There also remains considerable discovery to be completed. Indeed, Plaintiff is working to schedule American Protection's deposition. While Plaintiff is attempting to complete the deposition in October, Mr. Chukran has become unresponsive to requests for availability.

3

**JA55**

18.     Plaintiff also anticipates filing an enforcement action against American Protection in the Southern District of Florida to compel a complete response the subject subpoena. Because the deposition is necessary to establish a basis for her belief that it has withheld documents, Plaintiff cannot file the enforcement action until after the deposition has been completed.

19.     On October 4, 2022, Plaintiff conferred with counsel for SunPath regarding the requested extension.

20.     SunPath does not agree with Plaintiff's proposed schedule. Instead, SunPath proposed the following modification to the schedule:

- Discovery Cut-Off: November 15, 2022;
- Plaintiff's Expert Disclosure: November 30, 2022;
- Defendant's Expert Disclosure: December 21, 2022;
- Rebuttal Expert Disclosures: January 20, 2023;
- Plaintiff to file Motion for Class Certification: February 10, 2023;
- Defendant to file Opposition to Class Certification: March 3, 2023;
- Plaintiff to file Reply ISO Class Certification: March 17, 2023; and
- Final Pretrial Conference: To be determined.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 7, 2022, in Denver, Colorado.


By:  */s/ Patrick H. Peluso*

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

4

**JA56**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:22-cv-00081-LMB-WEF |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO MODIFY CASE SCHEDULE

Plaintiff Ruth Smith ("Plaintiff" or "Smith") respectfully moves this Court for an Order modifying the current case schedule. The proposed modification will provide a brief extension that will allow the parties to complete discovery. The proposed modification will also vacate the existing final pretrial conference and, in its place, set a briefing schedule for Plaintiff's motion for class certification, with a new pretrial conference date to be set after a ruling on class certification. The requested modification is necessary in this case. As explained below, the modification will enable Plaintiff to procure the necessary class-related discovery, which is currently in the possession of third parties.

## I.   PROCEDURAL HISTORY

On January 26, 2022, Plaintiff filed the instant action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Virginia Telephone Privacy Protection Act ("VTPPA"). (Dkt. 1.) On August 5, 2022, the Court issued its initial scheduling order, which required all discovery to be completed on or before December 9, 2022, and set a final pretrial conference for December 15, 2022, at 10:00 a.m. (Dkt. 25.) The

1

scheduling order also required the parties to submit a joint proposed discovery plan on or before August 24, 2022. (*Id.*)

On August 24, 2022, the parties filed a joint discovery plan, which set forth their respective positions regarding the case schedule. (Dkt. 27.) On September 31, 2022, the Court issued a Rule 16(b) scheduling order, which set the following deadlines in this case.

- Discovery Cut-Off: December 9, 2022;
- Plaintiff's Expert Disclosure: October 10, 2022;
- Defendant's Expert Disclosure: November 9, 2022;
- Rebuttal Expert Disclosures: November 28, 2022; and
- Final Pretrial Conference: December 15, 2022, at 10:00 a.m.

(Dkt. 31.)

To date, Plaintiff has diligently worked to gather all necessary discovery. On August 24, 2022, Plaintiff issued her first set of discovery requests on SunPath, including interrogatories and requests for production. (*See* Declaration of Patrick H. Peluso ("Peluso Decl.") ¶ 7, attached hereto as Exhibit A.) SunPath requested an extension of its deadline to respond to the requests until October 7, 2022. (*Id.*) On August 29, 2022, SunPath issued its first set of discovery requests directed to Plaintiff, including interrogatories, requests for admission, and requests for production. (*Id.* ¶ 8.) Plaintiff served her objections to the requests on September 13, 2022, and her responses on September 28, 2022. (*Id.*)

On August 24, 2022, Plaintiff also issued subpoenas to Testify at a Deposition in a Civil Action and a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (*Id.* ¶ 9.) American Protection was identified as an agent of SunPath that likely placed, at least some, of the calls at issue to Plaintiff. (*Id.*) The subpoena seeking documents specified a response date of September 16, 2022. (*Id.*)

On September 16, 2022, Kobi Chukran, the president of American Protection, responded to the subpoena and produced documents reflecting a relationship with SunPath as well as documents evidencing written communications with Plaintiff. (*Id.* ¶ 10.) However, Mr. Chukran indicated that it possessed no records of any calls placed on behalf of SunPath. (*Id.*) Instead, Mr. Chukran claimed that the calls may have been placed by another company, American Vehicle Protection Corp. ("AVPC"). (*Id.*) In response, Plaintiff requested Mr. Chukran's availability for a deposition and a call to discuss American Protection's responses to the subpoena. (*Id.* ¶ 11.)

On September 23, 2022, Mr. Chukran responded and stated that he would only answer questions during a deposition. (*Id.* ¶ 12.) On September 26, 2022, Plaintiff served a letter on American Protection outlining deficiencies in its responses to the subpoena. (*Id.* ¶ 13.) On September 30, 2022, Mr. Chukran responded, via email, and altered his prior response by illuding to the existence of some class records (but still refused to produce any documents). (*Id.* ¶ 14.) He also reiterated that he would discuss its responses to the subpoena at a deposition— which he stated could likely not take place until November. (*Id.*)

Based on American Protection's disclosure, Plaintiff issued additional subpoenas on September 21, 2022. (*Id.* ¶¶ 15-16.) First, Plaintiff issued subpoenas to Testify at a Deposition in a Civil Action and a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on AVPC. (*Id.*) Second, Plaintiff issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Verizon Communications, Inc., which will reveal the identity of the subscriber or user of the telephone numbers that placed the calls to Plaintiff. (*Id.*)

There remains considerable discovery to be completed. Most notably, Plaintiff is working to schedule American Protection's deposition. (*Id.* ¶ 17.) While Plaintiff is attempting to

3

complete the deposition in October, Mr. Chukran has become unresponsive to requests for availability. (*Id.*) Plaintiff also anticipates filing an enforcement action against American Protection in the Southern District of Florida to compel a complete response the subject subpoena. (*Id.* ¶ 18.) Because the deposition is necessary to establish a basis for her belief that it has withheld documents, Plaintiff cannot file the enforcement action until after the deposition has been completed. (*Id.*) And again, Plaintiff has served two additional third-party subpoenas in this case, in addition to discovery requests to the Defendant. Plaintiff is working diligently, but there is much more to be done.

On October 4, 2022, Plaintiff conferred with counsel for SunPath regarding her proposed modification. (*Id.* ¶ 19.) SunPath does not agree with the proposed schedule outlined below. (*Id.* ¶ 20.) Instead, SunPath proposed the following modification to the schedule:

- Discovery Cut-Off: November 15, 2022;
- Plaintiff's Expert Disclosure: November 30, 2022;
- Defendant's Expert Disclosure: December 21, 2022;
- Rebuttal Expert Disclosures: January 20, 2023;
- Plaintiff to file Motion for Class Certification: February 10, 2023;
- Defendant to file Opposition to Class Certification: March 3, 2023;
- Plaintiff to file Reply ISO Class Certification: March 17, 2023; and
- Final Pretrial Conference: To be determined.

(*Id.*) Plaintiff cannot agree to SunPath's proposed schedule. As explained further below, the modification is necessary to enable Plaintiff sufficient time to gather all necessary class related documents and data. SunPath's proposal will not accomplish this goal. Rather, its proposal actually **shortens** the fact discovery period and then seeks a more leisurely briefing schedule regarding class certification. This is unnecessary.

Accordingly, Plaintiff requests that the Court grant the instant motion and modify the existing deadlines as set forth below:

- Discovery Cut-Off: February 10, 2023;

4

**JA60**

- Plaintiff's Expert Disclosure: December 9, 2022;
- Defendant's Expert Disclosure: January 6, 2023;
- Rebuttal Expert Disclosures: January 27, 2023;
- Plaintiff to file Motion for Class Certification: January 13, 2023;
- Defendant to file Opposition to Class Certification: February 3, 2023;
- Plaintiff to file Reply ISO Class Certification: February 17, 2023; and
- Final Pretrial Conference: To be set after a ruling on class certification.

## II. ARGUMENT

The Court may modify a discovery schedule if the moving party establishes "good cause" for the modification. *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 509 (E.D. Va. 2013) "Good cause" requires "the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence". *Id.* But "the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *Id.*

Here, the record establishes good cause to grant the requested modification. As detailed above, Plaintiff has diligently worked to meet the instant deadlines. She issued discovery requests and subpoenas without delay and responded to discovery in a timely fashion. The complicating issue in this case is that nearly all of the documents and data relating to the complaint's class allegations are in the possession of SunPath's third-party telemarketer American Protection, who unfortunately has worked to complicate the discovery process.

Initially, American Protection indicated that it possessed no responsive documents to reflect the call records. Instead, American Protection suggested that a company, American Vehicle Protection Corp. ("AVPC"), may have placed the calls at issue. Based on this disclosure, Plaintiff issued subpoenas to AVPC and Verizon Communications, Inc.[1] Later, American

---

[1] The Verizon subpoena will reveal the identity of the subscriber or user of the telephone numbers that placed the calls to Plaintiff.

5

**JA61**

Protection changed course and illuded to the existence of the call records (but still refused to produce any documents). American Protection's president, Kobi Chukran, also indicated that he would only discuss its responses to the subpoena at a deposition—which he stated could not take place until November. As such, Plaintiff is working with American Protection and SunPath to schedule the deposition. Following the deposition, Plaintiff anticipates filing an enforcement action to obtain the relevant documents and data concerning the calls to Plaintiff and the Classes. These documents are necessary for Plaintiff (and the Court) to evaluate the prerequisites of class certification.

Ironically, while Defendant opposes this motion, the only parties in this case that have been unable to timely meet their discovery obligations are SunPath and its third-party telemarketer, American Protection. For its part, SunPath sought an extension of its deadline to respond to Plaintiff's first set of discovery requests. Based on its objections to the discovery requests, Plaintiff anticipates that she will likely be required to file a motion to compel further responses to the requests. And as detailed above, American Protection has created hurdles in the discovery process by refusing to turn over documents and data relating to the class allegations in addition to its refusal to make itself available for a deposition until November.

Put simply, Plaintiff is diligently working to gather all necessary information and the inability to meet the current deadlines is not the result of Plaintiff's lack of diligence. As such, a modest extension is warranted here.

Additionally, the request to vacate the final pretrial conference is likewise supported by good cause. Indeed, with two months remaining to complete discovery, Plaintiff will need to depose American Protection and potentially other third parties, move to compel compliance with

6

the subpoena (which must be filed in the S.D. of Florida)[2], depose Sunpath's Rule 30(b)(6) witness, pursue any discovery disputes that may arise with Sunpath, fully brief Plaintiff's motion for class certification, await a ruling on class certification, and effectuate a notice plan (which itself may take 60-days). This is simply untenable. Moreover, the "one-way intervention" rule, which bars granting class certification after the merits have already been decided in a plaintiff's favor, would preclude Plaintiff, but not Defendant, from moving for summary judgment prior to class certification. *See Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 276 n.13 (4th Cir. 1980). For this reason, under the current schedule Plaintiff will likely be required to forego any opportunity to seek summary judgment in her favor.

Conversely, Plaintiff's proposal strikes a balance that will ultimately foster judicial economy. Indeed, the proposal sets a briefing schedule for Plaintiff's anticipated motion for class certification. Then, after a decision is rendered regarding class certification, the Court should hold a subsequent case management conference to set the remaining deadlines for the case. Should the Court grant certification, a notice plan to inform class members of their rights will need to be proposed (and approved by the Court) and a deadline for dispositive motions and the final pretrial conference can be set. On the other hand, should the Court deny the motion for class certification, the schedule will proceed on an expedited basis to dispositive motions and trial. As in most class actions, the decision regarding certification will drive the remainder of the case in starkly different directions.

---

[2] Plaintiff cannot file the subpoena enforcement action prior to taking the deposition. Indeed, "mere suspicion" that a response is incomplete is insufficient to compel a further response. *Allah v. Gramiak*, No. 5:13-CV-186-MTT-MSH, 2015 WL 9267214, at *4 (M.D. Ga. Nov. 5, 2015), *report and recommendation adopted sub nom. Allah v. Tyndal*, No. 5:13-CV-186 (MTT), 2015 WL 9274929 (M.D. Ga. Dec. 18, 2015). Rather, Plaintiff must provide a firm basis for her belief as to which documents are being withheld. *Id.* Hence, the deposition is necessary to establish that basis.

For all these reasons, Plaintiff respectfully requests that the Court modify the schedule and grant a brief sixty (60) day extension of the existing discovery schedule. Additionally, Plaintiff requests that the Court vacate the final pretrial conference, which is currently scheduled for December 15, 2022, and set a briefing schedule regarding class certification. Plaintiff proposes the following modified deadlines:

- Discovery Cut-Off: February 10, 2023;
- Plaintiff's Expert Disclosure: December 9, 2022;
- Defendant's Expert Disclosure: January 6, 2023;
- Rebuttal Expert Disclosures: January 27, 2023;
- Plaintiff to file Motion for Class Certification: January 13, 2023;
- Defendant to file Opposition to Class Certification: February 3, 2023;
- Plaintiff to file Reply ISO Class Certification: February 17, 2023; and
- Final Pretrial Conference: To be set after a ruling on class certification.

As a final point, the modification is not being sought for any improper purpose and will not unfairly prejudice any party. Accordingly, Plaintiff requests that the Court grant this motion and modify the deadlines as set forth above.

## III.  CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court grant the instant motion, modify the existing deadlines as set forth above, and order any additional relief that the Court deems necessary and just.

Dated: October 7, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Francis J. Driscoll, Jr._
     One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

8

**JA64**

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document

was served upon counsel of record by filing such papers via the Court's ECF system on October

7, 2022.

*/s/ Francis J. Driscoll, Jr.*

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

**SUNPATH, LTD.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO
MODIFY CASE SCHEDULE**

Defendant SunPath, Ltd. ("SunPath"), by counsel, submits the following Response in Opposition to Plaintiff's Motion to Modify Case Schedule ("Motion"), ECF No. 32, and the Memorandum filed in Support thereof, ECF No. 34.

1.  Plaintiff's Motion seeks a blanket 60-day extension to all pre-trial deadlines presently set in this matter. *See* Mot. to Modify at 1.  SunPath attempted to fully confer with Plaintiff to create an amended scheduling plan that addresses outstanding discovery issues, which Plaintiff's proposed extension fails to do, but Plaintiff filed her Motion before this issue could be resolved and before apprising SunPath of much of the details reported for the first time in her Motion.

2.  Local Civil Rule 7(E) requires that "[b]efore endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement."  Local Civil Rule 37(E) requires in the context of discovery motions (to the extent it is applicable to the present Motion) that "[c]ounsel shall

**JA66**

confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy."

3.      In Plaintiff's supporting memorandum, she cites a declaration of counsel setting forth what Plaintiff frames as efforts undertaken to conduct discovery that constitute good cause to grant Plaintiff's Motion. *See* Memo. at 2-4 (citing Declaration of Patrick H. Peluso, ECF No. 32-1).

4.      SunPath was largely unaware of the grounds cited in Plaintiff's counsel's declaration prior to Plaintiff's filing of her Motion and accompanying Memorandum, as this was not discussed during the parties' meet-and-confer communications.   Attached as **Exhibit 1** are emails between the parties' counsel, which represent the entirety of the parties' meet-and-confer process that took place before Plaintiff filed her Motion.

5.      As these emails reflect, SunPath was unaware of any issues that needed to be resolved prior to the close of fact discovery beyond Plaintiff's scheduling of the deposition of non-party American Protection, who reportedly asked for more than a month's extension of its deposition for no apparent reason. *See* Ex. 1 (Email from Patrick Peluso dated October 5, 2022, stating the delay in taking the deposition of this third party satisfies "good cause" to extend the discovery schedule).

6.      But given Plaintiff's representations, SunPath proposed the following altered pre-trial schedule that was meant to allow for that deposition to occur within the fact-discovery cutoff without needlessly prolonging the schedule otherwise:

- Fact Discovery Cut-Off: November 15, 2022;
- Plaintiff's Expert Disclosure: November 30, 2022;
- Defendant's Expert Disclosure: December 21, 2022
- (Defendant Expert Deposition to occur between January 5 and January 23, 2023);
- Plaintiff's Rebuttal Expert Disclosure: January 20, 2023
- (Plaintiff Expert Deposition to occur between January 26 and February 3, 2023);
- Plaintiff's Motion for Class Certification: February 10, 2023
- Defendant's Opposition to Motion for Class Certification: March 3, 2023
- Plaintiff's Reply in Support of Motion for Class Certification: March 17, 2023
- Final Pretrial Conference: To be determined.

*See* Ex. 1 (Email from Gregory Caffas dated October 6, 2022).

7.      Plaintiff never responded to SunPath's proposed schedule.  Plaintiff then filed her Motion without any further attempt to meet and confer, informing SunPath for the first time that "Plaintiff cannot agree to SunPath's proposed schedule."  Memo. at 4.  SunPath's proposed schedule alteration was not intended to prejudice Plaintiff's ability to conduct what she describes as necessary discovery, as SunPath was unaware of the majority of the outstanding discovery issues Plaintiff now lists as the basis for her Motion.

8.      While SunPath understands Plaintiff's need for expediency given the present discovery schedule, her Motion misrepresents SunPath's position—apparently due to prematurely cutting short the meet-and-confer process—and Plaintiff's own proposed extension does not adequately address the issues raised in her Motion.

9.      Indeed, Plaintiff "anticipates filing an enforcement action to obtain the relevant documents and data concerning the calls to Plaintiff and the Classes" from American Protection. *See* Memo. at 6.  Plaintiff believes this information she seeks would be necessary for both her expert disclosures and class certification briefing, deadlines that occur well in advance of the close of fact discovery under Plaintiff's current proposed schedule.   This would necessitate the taking of a deposition that has not even been scheduled, moving for enforcement of a subpoena in a separate jurisdiction, allowing time for the subsequent production (assuming Plaintiff's

enforcement action is successful) before those proposed deadlines, and then presumably re-opening that non-party's deposition.

10.     Even assuming Plaintiff is correct regarding the relevance of the information she seeks, and her assumption that she needs to first take an allegedly incomplete deposition before she can get relief in another court, her proposed alternate deadlines are simply not tenable given her own description of the current discovery issues.

11.     While SunPath's proposed scheduling modifications may not address all discovery matters it was not aware of at the time they were proposed, the structure of its proposed modifications provides a more tenable schedule that is less likely to require further intervention from the Court than the one Plaintiff currently proposes.

WHEREFORE, Defendant SunPath, Ltd. respectfully requests that the Court deny Plaintiff's Motion to Modify Case Schedule and grant such other relief as it deems appropriate.

Dated: October 12, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the above and foregoing Response in Opposition to Plaintiff's Motion to Modify Case Schedule to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on October 12, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

## Greg Caffas

| | |
|---|---|
| **From:** | Greg Caffas |
| **Sent:** | Thursday, October 6, 2022 4:49 PM |
| **To:** | Patrick Peluso |
| **Cc:** | Taylor Smith; Joe Bowser; Mitchell Roth; Sofia Medina |
| **Subject:** | RE: Smith v. SunPath - Chukran Management Deposition |
| | |
| **Follow Up Flag:** | Copied to Worldox (Client Files\2834\017\01466657.MSG) |

Pat,

In light of this Court's stance on discovery, and considering potential snags we saw with your proposed schedule (and the existing one) presented by concurrent expert discovery and class cert briefing, we propose the amended schedule listed below. The new fact discovery cutoff should still give the necessary time to take the third-party deposition, while moving things forward to address any concern the Court may have as to undue delays. And splitting out the expert discovery should allow for realistic opportunities to address expert reports as needed prior to class certification briefing, while providing leeway for holiday schedules.

11/15/22 – Fact Discovery Cutoff
11/30 – Plaintiff's Expert Disclosure
12/21 – Defendant's Expert Disclosure
[Defendant expert deposition 1/5-1/23]
1/20/23 – Plaintiff's Rebuttal Expert Disclosure
[Plaintiff's expert deposition 1/26-2/3/23]
2/10 – Plaintiff's Motion for Class Certification
3/3 – Defendant's Opposition to Motion for Class Certification
3/17 – Plaintiff's Reply in Support of Motion for Class Certification
Final pretrial - TBD

Happy to discuss further if necessary.

Thanks,
Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com
8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Sent:** Wednesday, October 5, 2022 5:19 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** Taylor Smith <tsmith@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth
<mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Chukran Management Deposition

Greg,

We're not sure what's causing the delay, either, other than the deponent's representations about his availability. But this third party is an important source of information in this case and we believe this clearly satisfies "good cause". If you disagree, that's ok and we can note that your client doesn't consent to the motion to extend the deadlines a modest 60 days.

Best,
Pat

On Wed, Oct 5, 2022 at 3:11 PM Greg Caffas <gcaffas@rothjackson.com> wrote:

Taylor,


We'll run this by our client to confirm, but we do not believe that a single non-party deposition warrants the blanket 60 day extension of deadlines as I mentioned yesterday.  Additionally, your extension doesn't address the deadline to file dispositive motions.  Can we assume that that would also be moved from 12/19 to 2/17 as well?  If you're in a rush to file in the meantime, you can represent that the parties have conferred and defendant does not consent to the proposed change in the discovery schedule.


As I also mentioned yesterday, I'm hesitant to sign on to any request for an extension in this Court absent good cause, especially considering it's unclear what may be causing any delay in arranging the deposition.


Thanks,
Greg


Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

---

**From:** Taylor Smith <tsmith@woodrowpeluso.com>
**Sent:** Wednesday, October 5, 2022 2:51 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth <mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Chukran Management Deposition


Greg,

The proposal would include extending the existing deadlines by 60-days and asking the Court to set a briefing schedule for class certification. Below are the proposed deadlines.

- Discovery Cut-Off: February 10, 2022;
- Plaintiff's Expert Disclosure: December 9, 2022;
- Defendant's Expert Disclosure: January 6, 2023;
- Rebuttal Expert Disclosures: January 27, 2023;
- Plaintiff to file Motion for Class Certification: January 13, 2023;
- Defendant to file Opposition to Class Certification: February 3, 2023;
- Plaintiff to file Reply ISO Class Certification: February 17, 2023; and
- Final Pretrial Conference: To be set after a ruling on class certification.

Best,
Taylor

On Tue, Oct 4, 2022 at 1:53 PM Patrick Peluso <ppeluso@woodrowpeluso.com> wrote:

Understood, Greg. Yes, we'd be proposing just kicking everything back 2 months, not just that particular deadline. Taylor can send over a list of new proposed dates with that broad extension in mind.

On Tue, Oct 4, 2022 at 1:52 PM Greg Caffas <gcaffas@rothjackson.com> wrote:

Pat,

Before we can give any kind of useful answer, would you be able to send an example of the new proposed deadlines compared with the ones we included in the joint discovery plan?

A two month extension would put the close of discovery well after expert and class cert. deadlines, so we have a difficult time agreeing to that shift given just one non-party deposition as the hold up.  And if you're referring to more of a blanket extension of pre-trial deadlines, including class cert. and expert deadlines, we'd like to get a better idea of the new proposed deadlines first.

Apologies for complicating the meet and confer process—we would just like to exercise an abundance of caution before agreeing to any motion for an extension given this Court's policies on the issue.

Thanks,

Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

---

**From:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Sent:** Tuesday, October 4, 2022 12:40 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** (WOODROW) Taylor Smith <tsmith@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth <mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Chukran Management Deposition

We were thinking a 2 month extension, so February 9th or thereabouts.

On Tue, Oct 4, 2022, 9:47 AM Greg Caffas <gcaffas@rothjackson.com> wrote:

Pat,

What would be the new proposed discovery deadline?

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

---

**From:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Sent:** Tuesday, October 4, 2022 11:05 AM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** (WOODROW) Taylor Smith <tsmith@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth <mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Chukran Management Deposition

Hi Greg,

He told us he's not available until November, which is hard to believe but what he said. We're going to move for more time in discovery based on that representation. Do you oppose?

On Tue, Oct 4, 2022, 7:51 AM Greg Caffas <gcaffas@rothjackson.com> wrote:

Pat,

Turns out I have a conflict the morning of 10/7.  Any updates on the schedule for the Chukran deposition?

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

---

**From:** Greg Caffas
**Sent:** Tuesday, September 27, 2022 4:14 PM
**To:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Cc:** (WOODROW) Taylor Smith <tsmith@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth <mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** RE: Smith v. SunPath - Chukran Management Deposition

Thanks for the update, we'll set those dates aside and stand by for confirmation.

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

---

**From:** Patrick Peluso <ppeluso@woodrowpeluso.com>
**Sent:** Tuesday, September 27, 2022 1:45 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** (WOODROW) Taylor Smith <tsmith@woodrowpeluso.com>; Joe Bowser <jbowser@rothjackson.com>; Mitchell Roth <mroth@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Chukran Management Deposition

We'll keep you posted, that was a placeholder. Trying to schedule 10/6 or 10/7 with him. I'll do it via zoom

On Tue, Sep 27, 2022, 11:44 AM Greg Caffas <gcaffas@rothjackson.com> wrote:

Pat,

We've had no confirmation that Chukran Management's deposition noticed for tomorrow is set to proceed, and with a hurricane about to touch down in Florida, I imagine it certainly won't be happening now.  Do you have any update on where and when that deposition will be taking place?

Thanks,
Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

NOTICE: Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

--

Patrick H. Peluso I  Woodrow & Peluso LLC

3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
720.213.0676 (direct) I 303.927.0809 (fax)

ppeluso@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

--

Taylor T. Smith I  Woodrow & Peluso LLC

3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
(720) 907-7628 (direct)

tsmith@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

--

Patrick H. Peluso I  Woodrow & Peluso LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
720.213.0676 (direct) I 303.927.0809 (fax)
ppeluso@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the

individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RUTH SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22cv81 (LMB/WEF) |
| | ) |
| SUNPATH, LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

This matter is before the Court on Plaintiff's Motion for Extension of Time to Complete

Discovery (Dkt. 32). Both parties briefed the matter, and the Court heard argument of counsel on

October 14, 2022.

For reasons stated from the bench, and in accord with specific rulings and instructions

thereto, it is hereby

**ORDERED** that Plaintiff's Motion (Dkt. 32) is **DENIED WITHOUT PREJUDICE**.

**ENTERED** this 14th day of October, 2022.

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia

**JA80**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** | |
| *Defendant.* | |

## DEFENDANT SUNPATH, LTD.'S MOTION TO COMPEL

Defendant SunPath, Ltd. ("SunPath"), pursuant to Federal Rules of Civil Procedure 36 and 37 and Local Civil Rule 37, moves to compel Plaintiff Ruth Smith's full and complete responses to SunPath's First Set of Discovery Requests.  The grounds for this Motion are more fully articulated in the Memorandum in Support, filed contemporaneously herewith.

## LOCAL CIVIL RULES 7(E) and 37(E) STATEMENT

Discovery in this case closes on December 9, 2022.  Following numerous written exchanges, on November 3, 2022, at 4 p.m. EST, counsel for SunPath and counsel for Plaintiff engaged in a meet-and-confer conference via telephone, regarding Plaintiff's deficient discovery responses and document production relating to SunPath's First Set of Discovery Requests.  The conference lasted approximately one and a half hours.  Counsel for SunPath had previously requested that Plaintiff supplement her discovery responses, which were initially served on September 28, 2022, be supplemented by October 26, 2022.  Plaintiff's counsel represented that they may try to provide certain supplemental responses by November 11, 2022, but would largely be standing on Plaintiff's existing responses and objections.  At present, SunPath has

1

**JA81**

received no further supplemental written discovery responses and only a small number of documents Plaintiff received in response to third-party subpoenas, which do not cure Plaintiff's discovery deficiencies.  Therefore, SunPath has filed this Motion to Compel.


Dated: November 10, 2022                    Respectfully submitted,

                                            SUNPATH, LTD.

                                            By Counsel


                                            /s/ *Gregory M. Caffas*
                                            Gregory M. Caffas (VSB No. 92142)
                                            Mitchell N. Roth (VSB No. 35863)
                                            ROTH JACKSON
                                            8200 Greensboro Drive, Suite 820
                                            McLean, VA 22314
                                            (703) 485-3535
                                            (703) 485-3525 (fax)
                                            gcaffas@rothjackson.com
                                            mroth@rothjackson.com

                                            Joseph P. Bowser (VSB No. 88399)
                                            ROTH JACKSON
                                            1519 Summit Ave., Ste. 102
                                            Richmond, VA 23230
                                            804-441-8701
                                            804-441-8438 (fax)
                                            jbowser@rothjackson.com

                                            *Counsel for SunPath, Ltd.*

2

**JA82**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Motion to Compel  to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on November 10, 2022.

<u>/s/ *Gregory M. Caffas*　　　　　</u>
Gregory M. Caffas

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>*v.*<br><br>**SUNPATH, LTD.,** a Massachusetts corporation,<br><br>        *Defendant.* | Case No. 1:22-cv-00081-LMB-TCB |

## DEFENDANT SUNPATH, LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES

Defendant SunPath, Ltd., by counsel, hereby submits its Memorandum in Support of its Motion to Compel Plaintiff Ruth Smith to produce full and complete responses to SunPath's discrete discovery requests identified below.

## I.   INTRODUCTION AND BACKGROUND

In this putative class action case, Plaintiff claims that she received telephone calls in violation of the Telephone Consumer Protection Act ("TCPA") and Virginia Telephone Privacy Protection Act ("VTPPA"). Plaintiff alleges that SunPath, despite not making any of the calls itself, is somehow liable for the actions of third parties that allegedly made these calls. *See* Complaint ¶¶ 8-17, ECF No. 1; Declaration of Andrew Garcia ¶ 7, ECF No. 11-1. But throughout the course of discovery, which closes on December 9, 2022, Plaintiff has refused to provide information identifying the specific calls she is suing SunPath for, what her alleged damages claims are, or the facts that she claims support her claim that SunPath is vicariously liable for this unidentified set of calls. While it appears clear that Plaintiff's strategy was to sue first and figure it out later, SunPath is entitled to the discovery at issue in this motion.

Plaintiff's refusal to provide complete discovery responses is unjustified; she relies almost exclusively on boilerplate objections that fail to carry her burden to show why complete responses are being withheld.  Indeed, in addition to leaving SunPath in the dark regarding the very calls that form the basis of her claims, Plaintiff has largely evaded providing complete responses to the majority of SunPath's discovery responses by objecting that the subject requests are "premature," without any further elaboration, and completely withholding any response.  It should go without saying that SunPath's requests were timely—the parties were permitted to issue discovery upon the issuance of the Court's scheduling Order dated August 5, 2022, ECF No. 25.  Plaintiff cannot now, especially at this late stage of discovery, withhold relevant discovery on the basis of this meritless objection.

In addition to failing to identify the calls that form the basis of her claims, Plaintiff has also refused to provide an adequate calculation of her alleged damages, as required in her initial disclosures pursuant to Fed. R. Civ. P. 26, and as requested by SunPath in a separate discovery request.  She has also refused to provide settlement information that is relevant to SunPath's potential defenses to Plaintiff's claims, as well as Plaintiff's own credibility and fitness as a class representative.  Finally, several of Plaintiff's responses to SunPath's requests for admission avoid giving any answer at all, and should therefore be deemed admitted.

SunPath served its First Set of Discovery Requests on Plaintiff on August 29, 2022, to which Plaintiff served her objections on September 13, 2022 and responses on September 28, 2022.[1]  On October 21, 2022, once it was clear that no supplemental discovery responses were forthcoming, SunPath sent Plaintiff a letter detailing the issues that SunPath wished to meet and

---

[1]	Plaintiff's Objections and Responses to SunPath's First Set of Discovery are attached as **Exhibit 1**.

confer about regarding the deficiencies with Plaintiff's discovery responses, and asked that Plaintiff cure these deficiencies by October 26, 2022.[2]

The parties' counsel met and conferred via email and telephone between October 21, 2022 and November 3, 2022 regarding the issues that are the subject of this motion.[3]  With the exception of providing a handful of documents received in response to subpoenas, Plaintiff has failed to supplement her discovery responses or address the deficiencies SunPath raised. Accordingly, SunPath must now request that the Court compel Plaintiff to produce the information sought in the relevant discovery requests discussed herein.

## II.    LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure affords a party seeking discovery the ability to move for an order compelling production if a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents under Rule 34. Importantly, "[f]or purposes of [Rule 37], an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  In addition:

> A party who has made a disclosure . . . or who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

> Fed R. Civ. P. 26(e)(1)(A).

Rule 33 governs interrogatories and provides, in relevant part, as follows: "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Further, "the grounds for objecting . . . must be stated *with specificity*."  Fed. R.

---

[2]    SunPath's October 21, 2022 meet-and-confer correspondence is attached as **Exhibit 2**.
[3]    Email between counsel reflecting meet-and-confer communications are attached as **Exhibit 3.**

Civ. P. 33(b)(4) (emphasis added).    Rule 34, governing requests for production, specifies that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

> While discoverable documents must undergo an analysis of proportionality, [a party] cannot invoke that analysis while leaving the record bereft of facts describing why any particular request exceeds its discovery obligations. Not only do the Federal Rules require a partial response when proper, but a record must be clear as to each party's positions so that the meet-and-confer and the Court's rulings can operate with efficiency.

*Brown v. Experian Info. Sols., Inc.*, Civil Action No. 3:16cv670, 2017 U.S. Dist. LEXIS 234931, at *5 (E.D. Va. Apr. 17, 2017) (citing *Buskirk v. Wiles*, No. 15cv3503, 2016 U.S. Dist. LEXIS 168081, at *2 (S.D.W. Va. Dec. 6, 2016) (noting that objections must be stated with specificity, with the underlying basis for the objection, with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable")).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Mey v. All Access Telecom, Inc.*, CIVIL ACTION NO.: 5:19CV237, 2022 U.S. Dist. LEXIS 108993, at *4 (N.D.W. Va. May 4, 2022) (internal citation omitted).   "Boilerplate objections to discovery requests are highly disfavored in this district and throughout the Fourth Circuit, and the failure to state objections with specificity may be regarded as a waiver of those objections." *Id.* at 4-5 (internal citations omitted).   "General objections to discovery, without more, do not satisfy the burden of the responding party . . . because they cannot be applied with sufficient specificity to enable courts to evaluate their merits." *Id.* at 5.   "[M]erely stating that a discovery request is . . . 'unduly burdensome' will not suffice to state a proper objection." *Spendlove v. RapidCourt, LLC*, Civil Action No. 3:18-cv-856, 2019 U.S. Dist. LEXIS 220392, at *12 (E.D. Va. Dec. 20,

2019) (quoting *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08cv288, 2008 U.S. Dist. LEXIS 103902, at *3 (E.D. Va. Dec. 24, 2008)). "[A] party objecting to a discovery request as overly burdensome must submit affidavits or other evidence demonstrating the nature and extent of the asserted burden." *Id*. at *13 (internal citation omitted); *see also Kirk v. SSC Foldsboro Operating Co. LLC*, No. 5:19-CV00285-BO, 2020 U.S. Dist. LEXIS 156943, at *14 (E.D.N.C. Aug. 28, 2020) (requiring "defendants to make a good faith effort to locate" and produce the requested documents).

### III.   PLAINTIFF'S BOILERPLATE OBJECTIONS STATING SUNPATH'S REQUESTS ARE "PREMATURE" SHOULD BE OVERRULED AND HER RESPONSES SHOULD BE SUPPLEMENTED.

Plaintiff objects to most of SunPath's requests on the grounds that its requests are "premature" or "grossly premature," without any explanation.[4]   SunPath's requests are *not* "premature."  They were issued after this Court entered its scheduling Order.  *See* ECF No. 25 (permitting the parties to commence discovery on August 5, 2022).  They were therefore timely. *See also* Fed. R. Civ. P. 26(d)(1) (prohibiting parties from seeking discovery only before they confer under Rule 26(f) or before the Federal Rules or a Court Order authorizes discovery). Plaintiff apparently just wants to delay answering them until the last possible moment.  But neither the Federal Rules nor this Court's Rules countenance such procrastination, which serves only to delay discovery.  Worse, it prejudices SunPath's ability to test Plaintiff's claims and evidence, whatever they may be, until the very last moments of discovery.

These objections impermissibly seek to dictate the timeframe of discovery.  *See Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 246-47 (M.D.N.C. 2010) (citing *Aerodyne Sys.*

---

[4]      *See, e.g.*, Interrogatories 1-9, 12, 15, 18-19, 22, 23 (objecting on the grounds that the request is "premature or "grossly premature"); Document Requests 15-20, 22, 23, 25-30, 32-33 (same).

**JA88**

*Eng'g, Ltd. v. Heritage Int'l Bank*, 115 F.R.D. 281, 289-90 (D. Md. 1987)) (affirming that a party responding to discovery requests cannot unilaterally dictate when it is required to respond adequately to the opposing party's discovery requests).  Giving vague assurances that answers will later be provided or documents will ultimately be produced "frequently derails the discovery process." *Kinetic Concepts*, 268 F.R.D. at 246 (quoting *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655 (D. Md. 1997)).

An examination of the specific requests Plaintiff lodges these objections to further demonstrates the inappropriateness of these objections.  For example, Interrogatory 1 simply requests that Plaintiff identify the telephone calls that form the basis of her claims, to which Plaintiff has provided no response.  This is Plaintiff's own TCPA case; surely Plaintiff should be expected to identify the phone calls she is suing SunPath for. Plaintiff is required to disclose what information she has available—she cannot refuse to provide any response at all until she feels she can provide a complete response.  Plaintiff has a duty to provide timely discovery responses, and to supplement discovery as she discovers further relevant information under Rule 26(f).  At this late stage of discovery, SunPath is at risk of being prejudiced by eleventh-hour disclosures that it may not be able to issue additional discovery to investigate, and its deposition of Plaintiff would surely be weaker without these responses.  At the very least, if any request is considered premature because Plaintiff believes a final answer is dependent on documents or information Plaintiff expects to find during the remaining few weeks of discovery, her responses should specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records to support the basis for any claim that a request remains premature.  Accordingly, SunPath request that the Court compel Plaintiff's response to each and

every request on the grounds that such request is "premature," namely Interrogatories 1, 2, 3, 4, 8, 9, 18, 22, and 23, as well as Document Requests 15, 16, 17, 19, 20, 22, 23, 28, 29, 32, and 33.

## IV. PLAINTIFF SHOULD BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO INTERROGATORIES 1, 2, AND 3.

Interrogatory 1 simply requests that Plaintiff identify the calls for which she is seeking damages from SunPath in this lawsuit, and Interrogatories 2 and 3 request the factual bases for Plaintiff's contention that SunPath is either directly or vicariously liable for any of the calls at issue. *See* Ex. 1 at 1-2. Plaintiff's answers to these requests seeking information vital to SunPath's defenses in this case are entirely unresponsive, and none of the boilerplate objections she raises provide any basis for shirking her burden to provide complete answers. *See id.* Plaintiff should be compelled to fully respond to Interrogatory 1 by identifying the phone calls for which Plaintiff seeks damages from SunPath in this lawsuit. SunPath is simply asking Plaintiff to articulate and substantiate her damages claim.

Plaintiff is *required* to articulate this, by rule and without request, in her Rule 26 initial disclosures (which also remain deficient and must be supplemented, as discussed further below). The current response fails to include any reference at all to any phone call Plaintiff purports to seek damages for, or *any calculation of damages whatsoever*, which should have been known because of her pre-suit investigation. This is a strange omission in a TCPA case, where the call count is material to both liability and damages, and in all events, she must already know about the call(s) that led her to file suit.[5]

---

[5] And anticipated deposition testimony or subpoena responses do not excuse Plaintiff withholding any factual response at all to Interrogatories 1-3. Plaintiff has received records from Verizon purporting to identify the parties associated with the phone numbers listed in the Complaint, and she has taken the deposition of American Protection Corp. d/b/a Chukran Management, LLC, the party Plaintiff alleges is responsible for making the calls at issue. Both of those discovery items indicate that even the calls listed in Plaintiff's Complaint do not support

7

**JA90**

Rather than provide any factual response, Plaintiff's response to Interrogatory 1 contains only a further unsupported contention that "[t]he calls at issue were placed for the purpose of selling SunPath's products and services." Ex. 1 at 2. This begs the question, and makes SunPath's point—*what* calls at issue?  Plaintiff cannot make this statement, under oath, without knowing which "calls at issue" she is referring to.  She does not know the date(s) or calling party number(s) of the call(s), but she knows *the purpose* of the call(s)?  This response defies logic.  As the Defendant in this matter, SunPath is entitled to Plaintiff's knowledge and information concerning the call(s) at issue *from her own experience*—she is the Plaintiff, and this goes to her standing to bring these claims both individually and as a class representative.

Plaintiff's responses to Interrogatories 2 and 3 similarly provide only additional unsupported contentions rather than the facts that support Plaintiff's contentions that SunPath may be directly or vicariously liable for any of the calls Plaintiff has yet to identify.  Plaintiff's response to Interrogatory 2 provides only that "SunPath is directly liable under Va. Code Ann. § 59.1-514.1" without a single fact to support it.  Plaintiff's answer should specify which calls it refers to, which would include calls referred to in a complete response to Interrogatory 1, once properly supplemented, and what *facts* support that contention.

Plaintiff's response to Interrogatory 3 provides that "Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products or services.  Moreover, Plaintiff

---

her claims against SunPath.  *See* Verizon Subpoena Response attached as **Exhibit 4** (listing the caller associated with several of the numbers listed in Plaintiff's Complaint as "FIRST CITIZENS BANCSHARES, INC.," which has no known connection to this case whatsoever); *see also* Excerpt of Deposition of American Protection Corp., attached as **Exhibit 5** ("Q: Do you know if there's any affiliate [of American Protection Corp.] associated with solicitations to plaintiff.  A: There was [no solicitation to plaintiff] . . . . It was strictly that she received a postcard from [American Protection Corp.], and she called in to request information.").  It is clear that Plaintiff has information needed to provide a complete response to these interrogatories, which she is required to provide, even if it is damaging to her claims.

directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1." However, this response does not specify what "other third parties" Plaintiff refers to, nor does it specify which calls it refers to. Discovery should not be hide-and-seek. It should just be discovery. Plaintiff's response to this interrogatory remains deficient because it contains only bald contentions without the requisite factual support for such contentions.

Because Plaintiff contends that SunPath is both directly and vicariously liable for certain phone calls she has not yet identified, per her response to Interrogatories 2 and 3, Plaintiff's answer should specify which calls she claims SunPath is vicariously liable for rather than directly liable, and provide facts that support such contentions. Accordingly, the Court should compel Plaintiff to provide complete responses to Interrogatories 1, 2, and 3.

## V. PLAINTIFF MUST PROVIDE A COMPLETE RESPONSE TO INTERROGATORY 18 AND ADEQUATELY SUPPLEMENT HER INITIAL DISCLOSURES.

Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), a party is required to provide "a computation of each category of damages" she claims as part of her initial disclosures. *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, Case No.: 2:18-cv-320, 2020 U.S. Dist. LEXIS 219825, at *11 (E.D. Va. Oct. 28, 2020) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)); *see also Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 3:19-CV-00515-KDB-DSC, 2022 U.S. Dist. LEXIS 53433, at *24 (W.D.N.C. Mar. 24, 2022) ("[Counter-plaintiff]'s failure to quantify those damages claims during discovery dooms its argument that supplementation of its initial disclosures was unnecessary."); *Advanced Training Grp. Worldwide, Inc. v. ProActive Techs. Inc.*, Civil Action No. 19-cv-505, 2020 U.S. Dist. LEXIS 141855, at *11-13 (E.D. Va. Aug. 7,

9

**JA92**

2020) ("For a party to satisfy its obligations under Rule 26, a party must provide a computation of its damages.").  That duty promotes "broad disclosure during discovery so that each party can evaluate the strength of its evidence and chances of success[,]" avoids the trial being "a game of blind man's bluff[,]" and allows parties to "prepare their cases for trial and to avoid unfair surprise." *Jaguar*, 2020 U.S. Dist. LEXIS 219825, at *12 (first quoting *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006); and then quoting *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017)). Rule 26(a)(1)(A)(iii) requires "***a specific computation of each category*** [of damages], and . . . documents to support the computations." *Id.* at *14 (quoting *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 U.S. Dist. LEXIS 63707, at *1 (E.D.N.C. May 7, 2012)).

But here, Plaintiff has produced nothing of the type. *See* Plaintiff's Initial Disclosures, attached hereto as **Exhibit 6**.  Plaintiff's response to Interrogatory 18, which seeks information relating to Plaintiff's damage claims from the calls at issue, is non-responsive.  Like Plaintiff's initial disclosures, this response merely cites statutory damage provisions without referencing how these provisions might apply to even a single phone call for which she seeks to recover.  We understand how the Act is structured *in the abstract*; her duty is to apply that structure *to her claims*.  Plaintiff's response should at the very least state which telephone calls Plaintiff seeks to recover for, the amount per call and the basis therefor, a determination that should have been available as part of Plaintiff's pre-suit investigation.  Additionally, Plaintiff's response fails to include the amounts of the non-statutory damages referred to in this response.  As provided above, Plaintiff is *required* to disclose the computation for each category of damages Plaintiff sought.  Plaintiff's response to Interrogatory 18 and her initial disclosures remain deficient in this regard and must be supplemented.

**VI.    PLAINTIFF   SHOULD   BE   COMPELLED   TO   PROVIDE   COMPLETE RESPONSES TO INTERROGATORY 21 AND DOCUMENT REQUESTS 11 AND 14 SEEKING RELEVANT SETTLEMENT INFORMATION.**

First, Plaintiff's objections to Interrogatory 21 and Document Requests 11 and 14 are largely unadorned boilerplate objections that the request is "overbroad, unduly burdensome, and beyond the scope of discoverable information."     These boilerplate objections are facially deficient. *Buskirk*, 2016 U.S. Dist. LEXIS 168081, at *3-4 (noting that objections must be stated with specificity, with the underlying basis for the objection, with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable") (citation omitted).  This is especially so with respect to Document Request 11, which is specifically tailored to seek documents "relating to this action or the calls or text messages at issue in it."  Any claim that these requests seek information "beyond the scope of discoverable information per FRCP 26(b)(1)" is meritless.

Information relating to Plaintiff's resolution of any other formal or informal disputes relating to alleged telemarketing violations are relevant and discoverable.  *See Rowan v. Pierce*, No. 20-1648 (RAM), 2022 U.S. Dist. LEXIS 197075, at *5 (D.P.R. Oct. 26, 2022) (citing *Moser v. Health Ins. Innovations, Inc.*, 17cv1127-WQH(KSC), 2018 U.S. Dist. LEXIS 215901, at *15 (S.D. Cal. 2018)) (compelling responses to discovery requests seeking information relating to plaintiff's TCPA settlements over the previous five years because such requests "are not overbroad or irrelevant."); *All Access*, 2022 U.S. Dist. LEXIS 108993 (compelling a TCPA plaintiff's production of documents evidencing her TCPA claim, litigation, and settlement history). Each of these discovery requests request seeks information that is vital to SunPath's defenses   to   Plaintiff's   claims,   including   whether   there   were   any   established   business

relationships[6] in existence at the time of the calls at issue, or any releases or covenants not to sue that might apply to SunPath via an agreement entered with any third-party. *See, e.g.*, *Rowan v. US Dealer Servs., Inc.*, Civ. No. 21-09945 (KM)(LDW), 2022 U.S. Dist. LEXIS 127153, at *13-14 (D.N.J. July 18, 2022) (granting summary judgment in favor of TCPA defendant because the calls at issue were made pursuant to an established business relationship with a related business that was not a party to the case). This is especially true in light of Plaintiff's failure to specify what "other third parties" Plaintiff refers to in her response to Interrogatory 3; given her obscure reference to third-parties' calls she is seeking to hold SunPath liable for, SunPath is entitled to test whether she has already asserted and resolved TCPA claims against such parties, for example.

The requested settlement information is also relevant to issues such as Plaintiff's motive, state of mind, credibility, and fitness as a class representative. *See Pierce*, 2022 U.S. Dist. LEXIS 197075, at *5. And with respect to Document Request 11, responsive documents could indicate that Plaintiff has already recovered damages for some or all of the calls that form the basis of her claims in this matter and issued a release that may apply to her claims against SunPath. Plaintiff's objection that "this request seeks information regarding agreements that are confidential" appears to indicate that such agreement(s) exist and are being withheld on the basis of Plaintiff's confidentiality objections. Lastly, if there is a concern regarding protection of confidential documents, Plaintiff should specify whether she seeks to enter a protective order so that responsive documents can be produced, which SunPath has agreed to enter consistent with the Court's standard form of protective order.

---

[6]     *See* 47 C.F.R. § 64.1200(f)(5) (defining an "established business relationship," which survives for 18 months after the end of a given transaction or commercial relationship).

VII.   **PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION 7, 8, AND 16 SHOULD BE DEEMED ADMISSIONS.**

Plaintiff's responses to Requests for Admission 7, 8, and 16 state the same improper response: "At this time Plaintiff lacks sufficient knowledge or information to either admit or deny this request." *See* Ex. 1 at 30-31, 32.  The insufficiency of these responses is clear, as these three requests seek information that was in Plaintiff's possession at the time the discovery requests were served, and which Plaintiff can and should be required to answer. *See id.* Plaintiff's continued failure to provide any substantive response is all the more glaring now that the close of discovery is less than a month away.  Per Rule 36(a)(3) of the Federal Rules of Civil Procedure, these responses should be deemed admitted for failure to provide a timely response. Alternatively, Plaintiff should at the very least be compelled to provide sufficient answers to these requests pursuant to Rule 36(a)(6).

VIII.   **CONCLUSION**

WHEREFORE, Defendant SunPath requests that this Court enter an order compelling Plaintiff Ruth Smith to fully answer Interrogatories 1, 2, 3, 4, 8, 9, 18, 21, 22, and 23, produce all non-privileged documents responsive to Document Requests 11, 14, 15, 16, 17, 19, 20, 22, 23, 28, 29, 32, and 33, and specify what, if any, documents plaintiff expects to produce in response to each request through the remaining course of discovery, and either deem admitted Plaintiff's responses to Requests for Admission 7, 8, and 16, or compel Plaintiff to provide complete responses to the same, in short order, before the close of discovery, order payment of SunPath's attorneys' fees incurred due to Plaintiff's failure to provide complete discovery responses under Fed. R Civ. P. 37, and grant such other relief as it deems necessary.

Dated: November 10, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel


/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

**JA97**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Memorandum in Support of its Motion to Compel Plaintiff's Discovery Responses to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on November 10, 2022.

<u>/s/ *Gregory M. Caffas*          </u>
Gregory M. Caffas

15

**JA98**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

**INTERROGATORIES**

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

**JA99**

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose

of selling SunPath's products and services. Plaintiff will supplement this response following the

receipt of relevant calling data from third parties.

2.      If you contend that SunPath is directly liable for any of the telephone calls

identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts

in support of such contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The

interrogatory also seeks information that is more readily in the possession, custody, or control of

Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is

directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

3.      If you contend that SunPath is vicariously liable for any of the telephone calls

identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts

in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The

interrogatory also seeks information that is more readily in the possession, custody, or control of

Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at

issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff

directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC

and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that

SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues,

and Plaintiff will supplement this response following the receipt of relevant documents and data.

4.      If you contend that SunPath or any third-party you allege is SunPath's agent

utilized an automatic system for the selection or dialing of telephone numbers regulated by the

**JA100**

2

TCPA and/or the VTPPA to make any calls to Your Cellular Telephone Number or to any members of the proposed classes, then state the factual and legal basis for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff heard a pause and click when answering the calls at issue, which is indicative of the use of an ATDS. Further, Plaintiff received more than fifty telemarketing calls on behalf of SunPath within a span of a couple of weeks. Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents identifying the dialing system.

5.      If you contend that SunPath or any third-party you allege is SunPath's agent called Your Cellular Telephone Number or to any members of the proposed classes, without implementing internal procedures for maintaining a list of persons who request not to be called by SunPath or any third-party you alleged is SunPath's agent and/or without implementing procedures meeting requirements from 47 C.F.R. § 64.1200(d), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal

conclusion. Without waiving said objections, Plaintiff received numerous unsolicited calls despite being registered on the national DNC Registry. Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents.

6.      If you contend SunPath or any third-party you allege is SunPath's agent made calls to Your Cellular Telephone Number, or to any members of the proposed classes, that utilized an artificial or prerecorded voice, then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER: Objection, this contention interrogatory is grossly premature. This interrogatory is also overbroad and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff does not assert that the calls at issue featured a prerecorded voice.

7.      If you contend that you registered Your Cellular Telephone Number or any members of the proposed classes registered their telephone number on the National Do Not Call Registry, and then SunPath or any third-party you allege is SunPath's agent made telephone calls to you or them without proper consent from you or the member or an established business relationship with you or them (as defined by 47 C.F.R. § 64.1200(f)(5)), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER: Objection, this contention interrogatory is grossly premature. The

4

**JA102**

interrogatory also seeks information that is more readily in the possession, custody, or control of

Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls

for information protected by the work product doctrine. This interrogatory also calls for a legal

conclusion. Without waiving said objections, Plaintiff will produce documents reflecting the

registration of her cellular telephone number on the DNC Registry. At no time did Plaintiff

consent to the calls at issue or establish a business relationship. Otherwise, investigation

continues, and Plaintiff will supplement this response following the receipt of the relevant class

data.

8.      If you contend SunPath or any third-party you allege is SunPath's agent called

Your Cellular Telephone Number, or to any members of the proposed classes, willfully or

knowingly in violation of the TCPA and/or VTPPA, then identify such members and state the

factual and legal bases for that contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The

interrogatory also seeks information that is more readily in the possession, custody, or control of

Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls

for information protected by the work product doctrine. This interrogatory also calls for a legal

conclusion. Without waiving said objections, Plaintiff received numerous telemarketing calls

despite being registered on the national DNC Registry. Further, neither SunPath nor its agents

have been able to produce any consent to place the calls at issue. Moreover, Plaintiff requested

that the calls stop to no avail. Otherwise, Plaintiff reserves the right to supplement this response.

9.      If you contend that the party that made any of the telephone calls identified in

your answer to Interrogatory No. 1 failed to identify his or herself by his or her first and last

name and by the name of the person on whose behalf the call was being made promptly upon

making contact with you, state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, when Plaintiff answered the calls at issue, the callers never identified their first and last name as required by the VTPPA.

10.     Identify and describe Your Cellular Telephone Number (703-728-9650, along with any other cellular telephone number used by you during the relevant time period), including, the date on which you were first assigned that telephone number, and from November 8, 2019 to present, state whether the number is associated with a cellular, mobile, or wireless telephone provider service in connection with that telephone number or any other service for which you incurred a charge for incoming calls or text messages; the name of each such provider; the type of device or telephone associated with that telephone number; the name of each person that controlled, owned, operated, or used that number, and when each person controlled, owned operated, or used that number; and whether or not it was used for personal or business purposes, or both.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, the interrogatory seeks information regarding telephone numbers that have no relationship to the claims or defenses in this case. This interrogatory is also compound and actually consists of six separate interrogatories.  Without waiving said objections, Plaintiff's obtained the telephone number ending in 9650 in or around 2006. Plaintiff's wireless provider is AT&T and the device

is an Apple iPhone 12 Pro. Plaintiff is the primary and customary user of this telephone number

and it is used for personal purposes.

11.     Identify all communications between you and all other persons, other than your

attorneys, relating to SunPath, or your claims or allegations in this Lawsuit, including the date,

method, and substance of the communication and the identities of all persons with whom you

had contact.

ANSWER: Objection, this interrogatory is also overbroad and beyond the scope of

discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way

related to the claims and allegations at issue. Plaintiff further objects to the extent this

interrogatory seeks information protected by the attorney client privilege and the work product

doctrine. This interrogatory also constitutes an impermissible fishing expedition. Without

waiving said objections, Plaintiff does not recall any communications responsive to this

interrogatory.

12.     If you assert that you or any member of the proposed classes ever informed

SunPath that you or they did not want to be contacted by or on behalf of SunPath, describe the

date and substance of that event or communication, the means of such communication, and state

whether SunPath communicated with you or any member of the proposed classes after such

communication and identify each such communication.

ANSWER: Objection, this interrogatory is also overbroad and beyond the scope of

discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way

related to the claims and allegations at issue. Plaintiff further objects to the extent this

interrogatory seeks information protected by the attorney work product doctrine. This

interrogatory also constitutes an impermissible fishing expedition. This interrogatory also seeks

7

information more readily in the possession of Defendant and/or third parties. This interrogatory

is also premature. Without waiving said objections, Plaintiff recalls asking the callers to stop

placing telemarketing calls, however, she does not recall the exact date and time of the requests.

Plaintiff will supplement this response following the receipt of relevant documents and data.

13.     State whether you have ever been named as a defendant or respondent in any

criminal, civil, administrative, or regulatory action under any federal, state, or local law, rule or

regulation and provide the following information regarding any such action: the forum for the

action, the case number assigned to the action, the legal cause(s) of action asserted in the matter,

the status of the action, and the outcome of the action.

ANSWER: Objection, this interrogatory is also overbroad and beyond the scope of

discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way

related to the claims and allegations at issue. This interrogatory also seeks information that is

publicly available and of no greater burden for defendant to obtain than it is for Plaintiff.

Plaintiff further objects to the extent this interrogatory seeks confidential information. This

interrogatory is also intended to harass. Without waiving said objections, Plaintiff was involved

in a divorce proceeding in the District of Columbia.

14.     Identify all vehicle service contracts or related or similar products you have

purchased, using your own name or any alias, between January 26, 2017 and present, including,

without limitation, for each such policy, plan or related or similar product, who you purchased it

from, the administrator of the policy or plan, and the date of purchase and date of cancellation, if

applicable.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and

beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks

information that is in no way related to the claims and allegations at issue. Here, the

interrogatory seeks information regarding products and contracts that have no relevance to the

claims and defenses in this lawsuit. As such, this interrogatory constitutes an impermissible

fishing expedition. This interrogatory is also vague and unclear as to what is meant by "vehicle

service contracts or related or similar products". Without waiving said objections, Plaintiff has

not purchased any vehicle service contracts or related or similar products.

      15.    Identify all persons, other than a person intended to be called as an expert witness

at trial, who are likely to have knowledge of any of the facts and/or allegations set forth in the

Complaint and/or the denials and/or affirmative defenses set forth in any other pleading in this

Lawsuit, and for each such person, describe in detail the facts and/or allegations of which they

are likely to have knowledge, identify the documents about which they have knowledge, and

indicate whether you intend to call them as a witness at trial.

      ANSWER: Objection, this interrogatory is premature as discovery has just commenced.

This interrogatory also seeks information more readily in the possession, custody, or control of

Defendant and/or third parties. Plaintiff further objects to the extent this interrogatory seeks

information protected by the attorney work product doctrine. Without waiving said objections,

please see Plaintiff's Rule 26(a)(1) initial disclosures. Otherwise, Plaintiff will supplement her

disclosures should additional witnesses become known.

      16.    Disclose all websites you have visited since January 1, 2019 relating to vehicle

service contracts, automobile insurance, extended warranty plans, or similar or related products

and on or through which you provided any of Your Telephone Numbers. Include in your answer

the address of the website and the dates visited. Your answer should also include whether you

provided consent to be called to any third party about vehicle service contracts or similar or

related products when visiting such websites.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, this interrogatory seeks information regarding products and services that have no relevance to the claims and defenses in this lawsuit. The interrogatory is also vague and unclear as to what is meant by "vehicle service contracts, automobile insurance, extended warranty plans, or similar or related products". This interrogatory also constitutes an impermissible fishing expedition and is intended to harass. Without waiving said objections, Plaintiff does not recall visiting any websites relating to vehicle service contracts or extended warranty plans.

17.     If your response to any of the Requests for Admissions below is a denial, state in full the basis for each such denial.

ANSWER: Objection, this interrogatory is compound and comprised of up to twenty (20) separate interrogatories. Plaintiff will consider responding to a revised and proper interrogatory.

18.     If you contend that you suffered any compensable harm(s) as a result of the calls or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of such contention and identify the amount of damages you are seeking in this action for such harm(s) and from which Defendant.

ANSWER: Objection, this interrogatory is premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

10

per call for the second call received in violation of the VTPPA, and $5000 per call for each subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and complete computation of damages at this time. Discovery is ongoing and Plaintiff will supplement this response following receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made. Plaintiff further states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

19.     Identify the names, addresses, and telephone numbers of any person you claim may be a member of the purported classes alleged in the Complaint (excluding yourself), the class or classes they are a member of, and identify the specific knowledge that each such person may have vis-à-vis their putative claims against SunPath.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. This interrogatory is also premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving these objections, Plaintiff will supplement this response following the receipt of relevant class data from Defendant and/or third parties.

20.     Describe, in specific detail, how it came about that you were selected to be a class representative on behalf of the classes alleged in the Complaint , including how you came to hire your current counsel to represent you and the classes in this matter, whether you contacted your

counsel or whether they contacted you, whether you were referred to your counsel by someone else (if so, by whom), and whether you considered hiring any other law firms.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Indeed, the circumstances of how Plaintiff located her counsel is of zero relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and the work product doctrine. This interrogatory is also designed to harass.

21.    Identify any and all settlement agreements you have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the TCPA or VTPPA, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration you received under the terms of such agreements.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, this interrogatory seeks information regarding settlement and lawsuits that has no relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and/or confidentiality agreements. This interrogatory is also designed to harass.

22.    If you contend that your claims against SunPath are typical as related to those of the proposed classes, identify and describe in detail all factual and legal bases for that contention.

ANSWER:  Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that SunPath utilizes third parties to place calls on its behalf for the purpose of soliciting the sale of its vehicle service protection plans. Plaintiff, like all class members, was the recipient of numerous unsolicited telemarketing calls placed on behalf of SunPath. Further, Plaintiff is a resident of Virginia who is registered on the nation DNC Registry. Despite her registration, Plaintiff received numerous unsolicited calls on behalf of SunPath. When she received the calls at issue, the callers did not identify themselves by name. As such, Plaintiff's claims are typical of the Classes' claims. Otherwise, Plaintiff will supplement this response to provide further facts and information as they are produced by SunPath and third parties.

23.     If you contend that your claims against SunPath contain questions of law and fact that are common to the clams of the proposed classes, and those questions predominate over any questions that may affect individual members of the proposed classes, identify and describe in detail all factual and legal bases for those contentions.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that SunPath utilizes third parties to place calls on its behalf for the purpose of soliciting the sale of its vehicle service protection

plans. Defendant failed to obtain consumers prior express written consent prior to the calls being placed. Further, the third parties fail to identify themselves during the solicitation calls at issue. SunPath and third parties acted in a uniform manner with respect to all class members. Otherwise, Plaintiff will supplement this response to provide further facts and information as they are produced by SunPath and third parties.

14

## DOCUMENT REQUESTS

1.      All documents and communications that you identified, relied upon, reviewed, considered or consulted in answering any of the foregoing Interrogatories or in your Initial Disclosures.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

2.      All documents and communications relating to the information contained in response to each of the Interrogatories.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

3.      All documents and communications you have received from, or sent to, SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks

15

documents or information in the possession, custody, or control of Defendant and/or third parties. This request also represents an impermissible fishing expedition. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

4.    All non-privileged documents and communications related to SunPath, any third party for whose actions you allege SunPath is liable, the calls for which you seek recovery in this action, or any of the allegations contained in your Complaint.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. This request is also vague and unclear as to what is meant by "documents and communications related to SunPath, any third party". This request also represents an impermissible fishing expedition. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

5.    All non-privileged documents or electronically stored information on your computers, tablets, smartphones or other electronic devices related to SunPath, or any of the allegations contained in your Complaint.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. This request is also vague and unclear as to what is meant by "non-privileged documents or electronically stored information on your computers, tablets, smartphones or other electronic

devices related to SunPath". This request also represents an impermissible fishing expedition.

6.      All documents memorializing, reflecting or commenting upon the content of any communication that you had with SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

7.      All audio recordings, transcripts and notes in your possession relating to communications to or from you and SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

8.      All calendars, diaries, logs, notes, journals, or any other written or recorded summary of events maintained by you in any way relating to this Lawsuit.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

9.      All documents and communications relating to the information contained in response to each of the Interrogatories and Requests for Admission.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. This request is also compound and consists of up to forty-three (43) separate requests. Plaintiff will consider responding to a revised request for production.

10.     Documents or communications showing all websites you have visited between November 8, 2019 and present relating to vehicle service contracts, auto insurance, extended warranty plans, or similar or related products including providing consent to be called to any third party about such product when visiting such websites.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Here, this request seeks

**JA116**

information regarding products and services that have no relevance to the claims and defenses in

this lawsuit. This request also seeks documents or information in the possession, custody, or

control of third parties. This request is also vague and unclear as to what is meant by "vehicle

service contracts, auto insurance, extended warranty plans, or similar or related products" and is

designed to harass. Finally, this request represents an impermissible fishing expedition. Without

waiving said objections, Plaintiff does not possess any responsive documents.

11.     All documents and communications evidencing any settlement agreements you

have entered into or compensation you have received from any person or party, relating to this

action or the calls or text messages at issue in it.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the

scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is

irrelevant and disproportionate to the claims and allegations in this case. Here, this request seeks

information regarding settlement agreements that are confidential and are unrelated to the claims

and defenses in this lawsuit. This request is also designed to harass and represents an

impermissible fishing expedition.

12.     Any and all written reports and curriculum vitae of any expert witness you intend

to call as a witness at any trial or hearing in this action, a copy of each and every document,

electronically stored information, physical model, or tangible thing that was generated, prepared

or reviewed by or on behalf of an expert in anticipation of trial or that was used in any

consultation that forms any basis of the expert' s anticipated testimony, and documents reflecting

the compensation to be paid to each expert.

RESPONSE: Objection, this request is premature as discovery is ongoing. Plaintiff

further objects to the extent this request seeks documents and information protected by the

attorney work product doctrine. Further, this request prematurely seeks the disclosure of expert

testimony before the deadline set by Fed. R. Civ. P. 26(a)(2), *et seq.* Plaintiff also objects to the

extent this request seeks information protected from disclosure under Fed. R. Civ. P. 26(b)(4), *et*

*seq.*

13.    All documents you received or that were made available to you, electronically or

otherwise, from your telecommunications service provider(s) for each cellular telephone service

you used (including that associated with Your Cellular Telephone Number) at any time from

November 1, 2019 to present (or, to the extent you seek recovery for calls outside that period,

then include any such time period here), including statements or invoices showing the amount

billed, subscriber agreements, terms and/or conditions of service, the duration of each call made

and received, the telephone number for each call made or received, and the charges imposed for

each call made or received.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the

scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is

irrelevant and disproportionate to the claims and allegations in this case. This request also seeks

documents or information in the possession, custody, or control of third parties. Plaintiff does not

possess any responsive documents for the time period in which the calls were placed.

14.    All pleadings, correspondence, discovery, settlement agreements, payments

received, judgments, documents evidencing monies paid, and other non-privileged documents

relating to any demand, claim, allegation, litigation, administrative, or regulatory investigation or

proceeding, other than this Lawsuit, to which you have ever been a party at any time in the past

five years, in which you have sought damages or any other form of relief under the TCPA,

VTPPA, or any other state law relating to telemarketing or other allegedly unlawful

communications.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents protected by confidentiality agreements. This request is also designed to harass and represents an impermissible fishing expedition.

15.     All documents you receive in response to any document request, subpoena or other substantially similar demand for the production of documents or things that you have served or serve in the future on any party or non-party in connection with this Lawsuit.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also premature. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

16.     All documents and communications evidencing any member of the purported classes' receipt of a call from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. This request also seeks documents and information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

17.     All documents and communications evidencing the identity of any person, other than you, whom you claim is a member of any of the purported classes as alleged in the

Complaint.

RESPONSE: Objection, this request is premature. This request also seeks documents and information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

18.     Recordings of all telephone calls received by purported class members from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. This request also seeks documents and information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

19.     You and your attorneys' communications with any member of the purported classes (excluding yourself), including any documents reflecting notes of such communications. This includes any communications to any member of the purported classes, even if the class member did not respond.

RESPONSE Objection, this request is premature. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine.

20.     All documents reflecting notes of communications between any potential member of the purported classes and SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise, including any documents reflecting notes of such communications.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. This request is also premature.

21.    All documents reflecting notes of communications between you and any potential member of the purported classes, including any documents reflecting notes of such communications.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. Without waiving said objections, Plaintiff does not possess responsive documents.

22.    All documents and communications reflecting all telephone numbers at which any member of the purported classes received calls from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

23.    All documents evidencing any damages and/or harm caused to any potential members of the purported classes as a result of their receipt of calls from SunPath or any third

party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents. Further, Plaintiff will supplement this response to produce responsive documents as they are produced by SunPath and any third parties.

24.     All documents and communications exchanged between you and any member of the purported classes relating to the facts and/or allegations contained in the Complaint.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. Without waiving said objections, Plaintiff does not possess responsive documents.

25.     All documents and communications relating to your and any member of the purported classes' consent to receive calls or text messages from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. Without waiving said objections, Plaintiff does not possess responsive documents.

26.     All documents and communications relating to your and any member of the

24

**JA122**

purported classes' established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege. Without waiving said objections, Plaintiff does not possess responsive documents.

27. All documents and communications relating to you registering Your Cellular Telephone Number and any of the members of the proposed classes registering their telephone number on the National Do Not Call Registry, and then SunPath or any third-party for whose actions you allege SunPath is liable, vicariously or otherwise, making telephone calls to you or them without proper consent or an established business relationship (as defined by 47 C.F.R. § 64.1200(f)(5)).

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents.

28. All documents and communications that identify any potential members of the purported classes (other than yourself).

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or

information protected by the attorney work product doctrine. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

29.     All documents and communications that represent or evidence the number of persons that may be members that fall within the purported classes.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney work product doctrine. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

30.     All documents and communications that support your contention that SunPath is vicariously liable for calls received by you or any member of the purported classes.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. Without waiving said objections, Plaintiff will produce responsive documents. Further, Plaintiff will supplement this response with additional documents and information as it is produced by third parties.

31.     All documents and communications regarding your attorneys' prior putative class action lawsuits and class representations evidencing their ability to adequately represent the purported classes.

RESPONSE: Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege, the work product doctrine, or confidentiality agreement. Plaintiff also objects to the extent this request seeks information in the possession of third parties or that is publicly available.

32.    All documents and communications you intend to rely upon to support your request for class certification.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. This request is also unduly burdensome. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents. Plaintiff will supplement this response following the receipt of further responsive documents.

33.    Documents that support your contention that the proposed classes are capable of being certified, including but not limited to, documents supporting that the classes are numerous enough for certification, have common issues that will predominate over individual issues, have typical issues, and have adequate representation.

RESPONSE: Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or

information protected by the attorney client privilege and/or work product doctrine. This request is also unduly burdensome. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents. Plaintiff will supplement this response following the receipt of further responsive documents.

## REQUESTS FOR ADMISSION

1.      During the period November 8, 2019 to present, the only cellular telephone number registered in your name was 703-728-9650.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Without waiving said objections, the number ending in 9650 is the only telephone number utilized by Plaintiff. While she is the primary and customary user of the 9650 number, the number is registered under her father's name, Bruce Smith.

2.      During the period November 8, 2019 to present, a cellular telephone number registered in your name was 703-728-9650.

RESPONSE: Deny. The 9650 number is registered under her father's name, Bruce Smith. Plaintiff, however, is the primary and customary user.

3.      During the period January 1, 2019 to present, you visited a website and provided your phone number to be contacted regarding vehicle service contracts, or related or similar products.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also vague and unclear as to what is meant by "vehicle service contracts, or related or similar products." This request also constitutes an impermissible fishing expedition. Without waiving said objections, deny.

4.      During the period January 1, 2019 to present, you have asked another person to visit a website and provide your phone number to be contacted regarding vehicle service

contracts, or related or similar products.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also vague and unclear as to what is meant by "vehicle service contracts, or related or similar products." This request also constitutes an impermissible fishing expedition. Without waiving said objections, deny.

5.      Prior to May 26, 2020, you did not receive any calls to Your Cellular Telephone Numbers from or allegedly on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

6.      After June 9, 2020, you did not receive any calls to Your Cellular Telephone Numbers from or allegedly on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

7.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either

admit or deny this request.

9.      You were not assessed any per-call or data rate charges in connection with any telephone calls that you allege you received from or on behalf of SunPath.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also vague and unclear as to what is meant by "per-call or data rate charges". Without waiving said objections, Plaintiff admits that she is not charged a per-call rate for each telephone call received. Plaintiff does, however, incur call and data rate charges.

10.     None of the calls that you received in May or June 2020 that are described in Paragraphs 23-24 of your Complaint were made with a prerecorded or artificial voice message.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also premature. Without waiving said objections, admit.

11.     You provided your consent to receive the telephone calls identified in your Complaint.

RESPONSE: Objection, this request calls for a legal conclusion. Without waiving said objections, deny.

12.     You had an established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise, at the time you received the calls at issue.

RESPONSE: Objection, this request calls for a legal conclusion. Without waiving said

objections, deny.

13.     The telephone calls you allegedly received, as described in Paragraphs 23-24 of your Complaint, were not from or on behalf of SunPath.

RESPONSE: Deny.

14.     During each of the calls described in Paragraphs 23-24 of your Complaint, the caller promptly identified the name of the person on whose behalf the telephone call was being made.

RESPONSE: Deny.

15.     During each of the calls described in Paragraphs 23-24 of your Complaint, the caller promptly identified his or herself by his or her first and last name.

RESPONSE: Deny.

16.     During each of the calls described in Paragraphs 23-24 of your Complaint, the caller did not state that he or she was calling from or on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

17.     At no point on or before June 9, 2020 did you ever advise SunPath not to call you.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Without waiving said objections, deny.

18.     You were located in Virginia when you received the calls listed in your Complaint.

RESPONSE: Admit.

19.     You personally registered Your Cellular Telephone Number on the National Do Not Call Registry on November 8, 2019.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Without waiving said objections, admit.

20.     Another person, other than yourself, registered Your Cellular Telephone Number on the National Do Not Call Registry.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Without waiving said objections, deny.


Dated: September 28, 2022                    **RUTH SMITH**, individually and on behalf of all
                                             others similarly situated,

                                             By:  _/s/ Patrick H. Peluso_____
                                                       One of Plaintiff's Attorneys

                                             Francis J. Driscoll, Jr.
                                             (frank@driscolllawoffice.com)
                                             4669 South Blvd., Suite 107
                                             Virginia Beach, VA 23452
                                             Telephone: 757-321-0054
                                             Facsimile: 757-321-4020

                                             Patrick H. Peluso
                                             ppeluso@woodrowpeluso.com
                                             Woodrow & Peluso, LLC
                                             3900 East Mexico Ave., Suite 300
                                             Denver, Colorado 80210
                                             Telephone: (720) 213-0675
                                             Facsimile: (303) 927-0809

                                             Attorneys for Plaintiff and the Classes

33

**JA131**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on September 28, 2022.

*/s/ Patrick H. Peluso*

34

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF RUTH SMITH'S VERIFICATION**

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2022.

_____
Ruth Smith

1



October 21, 2022

VIA EMAIL:  ppeluso@woodrowpeluso.com

Patrick H. Peluso
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210

Gregory M. Caffas
Tyson's Corner Office
(703) 485-3533 (direct)
gcaffas@rothjackson.com

> **RE:**   **Meet and Confer Regarding Deficiencies with Ruth Smith's Responses to SunPath, Ltd.'s First Discovery Requests**

Dear Pat:

This letter outlines Defendant SunPath, Ltd.'s ("SunPath" or "Defendant") questions and concerns regarding Plaintiff's Responses to SunPath's First Set of Discovery Requests. For the reasons set forth below, please supplement the following answers and responses. **Please provide Plaintiff's full and complete supplemental responses and production by Wednesday, October 26, 2022.**  Please also let us know when you are available for a call to resolve any open issues that remain.

Plaintiff objects to the majority of SunPath's discovery requests on the grounds that they are premature or "grossly premature," whatever that may mean, without further explanation.  It should go without saying that SunPath's requests were timely—see Rule 26(d) (authorizing discovery to begin once the parties conduct their Rule 26(f) conference).  The requests are not premature; she just wants to wait until she collects additional evidence before having to provide *any* substantive content, but that is not how discovery works.  She has a right—and a duty under Rule 26(f)—to supplement if she discovers additional information, but discovery is soon closing in early December, and we're entitled to what she knows when her responses are due, by rule.

## <u>INTERROGATORIES</u>

<u>**Interrogatory 1**</u>: Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

**ANSWER:** Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA134

WWW.ROTHJACKSON.COM

Patrick Peluso
October 21, 2022
Page 2

**DEFICIENCY:** Please supplement this response by identifying the phone calls for which Plaintiff seeks damages from SunPath in this lawsuit. We are simply asking Plaintiff to articulate and substantiate her damages claim. Plaintiff is *required* to articulate this, by rule and without request, in her Initial Disclosures, which also remain deficient and must be supplemented. *See Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, Case No. 2:18-cv-320, 2020 U.S. Dist. LEXIS 219825, at *11-12 (E.D. Va. Oct. 28, 2020) (Fed. R. Civ. P. 26(a)(1)(A)(iii) requires " a specific computation of each category [of damages], and . . . documents to support the computations." (quoting *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 U.S. Dist. LEXIS 63707, at *3 (E.D.N.C. May 7, 2012))). Furthermore, disclosing "a lump sum or merely refer[ing] to documents from which the opposing party can presume damages" does not satisfy a party's duty under Rule 26(a). *Advanced Training Grp. Worldwide, Inc. v. ProActive Techs. Inc.*, Civil Action No. 19-cv-505, 2020 U.S. Dist. LEXIS 141855, at *11 (E.D. Va. Aug. 7, 2020). The current response fails to include any reference at all to any phone call Plaintiff purports to seek damages for or *any calculation of damages whatsoever*, which should have been known because of her pre-suit investigation. This is a strange omission in a TCPA case, where the call count is material to both liability and damages.

If this request is considered premature because Plaintiff believes a final answer is dependent on documents or information Plaintiff expects to find in the course of discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature. In all events, she must already know about the call(s) that led her to file suit.

Plaintiff issued a subpoena to Verizon Wireless requiring production of call records by October 6, 2022. Please produce any documents you received in response to this subpoena, or any other third-party subpoena, which would be responsive to this discovery request as well as document requests 13 and 15.

Additionally, Plaintiff's response contains a further unsupported contention that "The calls at issue were placed for the purpose of selling SunPath's products and services." This begs the question, and makes SunPath's point—*what* calls at issue? She cannot say that, under oath, without knowing which "calls at issue" she is referring to. She does not know the date(s) or calling party number(s) of the call(s), but she knows *the purpose* of the call(s)? This makes no sense, of course. We are entitled to know Plaintiff's knowledge and information concerning the call(s) at issue *from her own experience*—she is the Plaintiff, and this goes to her standing to bring these claims both individually and as a class representative.

Nothing in this response provides factual support for Plaintiff's conclusion or any indication as to what additional information Plaintiff intends to rely on to support this conclusion. Plaintiff claimed she would supplement this response with "relevant calling data from third parties," but has not done so. And it is unclear how call records would purport to reveal the purpose of any specific calls that are the subject of Plaintiff's claims, which Plaintiff has failed to identify in response to this interrogatory in the first place. Whatever lenity Plaintiff is entitled to when drafting her cookie-cutter Complaint, the point of discovery is to engage in reality-testing and put sunlight and clarity on exactly what she is claiming and demanding from SunPath. This request needs a full and complete response.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA135

Patrick Peluso
October 21, 2022
Page 3

**Interrogatory 2**: If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer, as it were. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what party's records Plaintiff's response is dependent upon and what steps are being taken to discover such records to support the basis for your statement that this request is premature. You have SunPath's discovery responses, of course.

Additionally, this response contains only a contention that "SunPath is directly liable under Va. Code Ann. § 59.1-514.1" without a single fact to support it. Your answer should specify which calls it refers to, which would include calls referred to in your response to Interrogatory 1, once properly supplemented, and what *facts* support your contention.

**Interrogatory 3**: If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find in the course of discovery, please specify what party's records Plaintiff's response is dependent upon and what steps are being taken to discover such records order to support the basis for your statement that this request is premature.

Additionally, this response contains only a contention that "Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products or services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1." However, this response does not specify what "other third parties" Plaintiff refers



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA136

Patrick Peluso
October 21, 2022
Page 4

to, or specify which calls it refers to.  Plaintiff's response to this interrogatory remains deficient because it contains only contentions without the requisite factual support for such contentions.

Because Plaintiff contends that SunPath is both directly and vicariously liable for certain phone calls, per your response to Interrogatory 2, your answer should specify which calls you claim SunPath is vicariously liable for rather than directly liable, and provide facts that support your contention.  Again, Plaintiff has SunPath's discovery responses.

**Interrogatory 4**:  If you contend that SunPath or any third-party you allege is SunPath's agent utilized an automatic system for the selection or dialing of telephone numbers regulated by the TCPA and/or the VTPPA to make any calls to Your Cellular Telephone Number or to any members of the proposed classes, then state the factual and legal basis for that contention and identify the members of the putative classes that allegedly received such calls.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff heard a pause and click when answering the calls at issue, which is indicative of the use of an ATDS. Further, Plaintiff received more than fifty telemarketing calls on behalf of SunPath within a span of a couple of weeks. Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents identifying the dialing system.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer.  Plaintiff represented that she will supplement this response following the receipt of relevant documents identifying the dialing system purportedly used to make calls to Plaintiff. Third party American Protection was required to respond to Plaintiff's subpoena by September 16, 2022, but SunPath has not received any documents produced by American Protection in response to Plaintiff's subpoena. Please provide all such documents Plaintiff received, which are responsive to this request as well as Document Request 15.  If this response is considered premature because it is dependent on other documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature.

Additionally, Plaintiff's response fails to identify any members of the putative classes that she alleges received calls.

**Interrogatory 8**:   If you contend SunPath or any third-party you allege is SunPath's agent called Your Cellular Telephone Number, or to any members of the proposed classes, willfully or knowingly in violation of the TCPA and/or VTPPA, then identify such members and state the factual and legal bases for that contention.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

**JA137**

Patrick Peluso
October 21, 2022
Page 5

product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff received numerous telemarketing calls despite being registered on the national DNC Registry. Further, neither SunPath nor its agents have been able to produce any consent to place the calls at issue. Moreover, Plaintiff requested that the calls stop to no avail. Otherwise, Plaintiff reserves the right to supplement this response.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature.

Additionally, Plaintiff's answer is non-responsive, as it fails to identify any members of the putative classes she alleges received calls in violation of the TCPA and or VTPPA.

**Interrogatory 9**:   If you contend that the party that made any of the telephone calls identified in your answer to Interrogatory No. 1 failed to identify his or herself by his or her first and last name and by the name of the person on whose behalf the call was being made promptly upon making contact with you, state all facts in support of such contention with respect to each such call.

**ANSWER:** Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, when Plaintiff answered the calls at issue, the callers never identified their first and last name as required by the VTPPA.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature.

Additionally, Plaintiff's answer is non-responsive, as it fails to identify which calls Plaintiff refers to in her answer, as she has failed to specify even a single call in her response to Interrogatory 1.

**Interrogatory 12**: If you assert that you or any member of the proposed classes ever informed SunPath that you or they did not want to be contacted by or on behalf of SunPath, describe the date and substance of that event or communication, the means of such communication, and state whether SunPath communicated with you or any member of the proposed classes after such communication and identify each such communication.

**ANSWER:** Objection, this interrogatory is also overbroad and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney work product doctrine. This interrogatory also constitutes an impermissible fishing expedition. This interrogatory also seeks information more readily in the possession of Defendant and/or



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440    F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535    F: 703-485-3525

Patrick Peluso
October 21, 2022
Page 6

third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff recalls asking the callers to stop placing telemarketing calls, however, she does not recall the exact date and time of the requests. Plaintiff will supplement this response following the receipt of relevant documents and data.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature. Furthermore, Plaintiff does not require documents from any other party to identify instances in which she claims she informed SunPath or any other third-party that she did not want to be contacted by or on behalf of SunPath, and Plaintiff's response to Request for Admission 17 confirms that she claims to have made such requests. Please supplement your response to this interrogatory accordingly.

**Interrogatory 18**: If you contend that you suffered any compensable harm(s) as a result of the calls or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of such contention and identify the amount of damages you are seeking in this action for such harm(s) and from which Defendant.

**ANSWER:** Objection, this interrogatory is premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5000 per call for each subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and complete computation of damages at this time. Discovery is ongoing and Plaintiff will supplement this response following receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made. Plaintiff further states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature.

Plaintiff's response is non-responsive as it merely cites statutory damage provisions without referencing how these provisions might apply to even a single phone call for which she seeks to recover. Plaintiff's response should at the very least state which telephone calls Plaintiff seeks to recover for and the amount per call, a determination that should have been available as part of Plaintiff's pre-suit investigation. We further incorporate discussion relating to the deficiencies with Plaintiff's response to



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

Patrick Peluso
October 21, 2022
Page 7

Interrogatory 1, noting Plaintiff is *required* to disclose the computation for each category of damages Plaintiff sought. Plaintiff's response to these interrogatories and her initial disclosures remain deficient in this regard and must be supplemented. Additionally, Plaintiff's response fails to include the amounts of the non-statutory damages referred to in this response.

**Interrogatory 20**: Describe, in specific detail, how it came about that you were selected to be a class representative on behalf of the classes alleged in the Complaint , including how you came to hire your current counsel to represent you and the classes in this matter, whether you contacted your counsel or whether they contacted you, whether you were referred to your counsel by someone else (if so, by whom), and whether you considered hiring any other law firms.

**ANSWER:** Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Indeed, the circumstances of how Plaintiff located her counsel is of zero relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and the work product doctrine. This interrogatory is also designed to harass.

**DEFICIENCY:** Please produce a privilege log identifying any privileged information being withheld. Additionally, Plaintiff's objections to this request on the grounds that it seeks information not relevant to the claims at issue are not well taken. Plaintiff purports to be a putative class representative; the basis for her selection as a class representative is undoubtedly relevant to this class action case, and this response must be supplemented accordingly.

**Interrogatory 21**: Identify any and all settlement agreements you have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the TCPA or VTPPA, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration you received under the terms of such agreements.

**ANSWER:** Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, this interrogatory seeks information regarding settlement and lawsuits that has no relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and/or confidentiality agreements. This interrogatory is also designed to harass.

**DEFICIENCY:** This request seeks information that is vital to SunPath's defenses to Plaintiff's claims, including whether or not there were any established business relationships pursuant to 47 C.F.R. § 64.1200(f) in existence at the time of the calls at issue or any releases that might apply to SunPath via an agreement entered with any third-party. This is especially true in light of Plaintiff's failure to specify what "other third parties" Plaintiff refers to in her response to Interrogatory 3 that she might allege third parties made calls for which she claims SunPath is vicariously liable for in this case. Information relating to Plaintiff's resolution of any other formal or informal disputes relating to alleged telemarketing violations are relevant and discoverable. *See Mey v. All Access Telecom, Inc.*, CIVIL



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

Patrick Peluso
October 21, 2022
Page 8

ACTION NO. 5:19CV237, 2022 U.S. Dist. LEXIS 108993 (N.D.W. Va. May 4, 2022) (compelling a TCPA plaintiff's production of documents evidencing her litigation and settlement history).  If there is a concern regarding protection of confidential documents, Plaintiff should specify whether she seeks to enter a protective order so that responsive documents can be produced.  Accordingly, Plaintiff must supplement with a complete response, which must identify all parties she has entered into settlements with regarding alleged violations of the TCPA and/or VTPPA for the relevant time period.

**Interrogatory 22**:  If you contend that your claims against SunPath are typical as related to those of the proposed classes, identify and describe in detail all factual and legal bases for that contention.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that SunPath utilizes third parties to place calls on its behalf for the purpose of soliciting the sale of its vehicle service protection plans. Plaintiff, like all class members, was the recipient of numerous unsolicited telemarketing calls placed on behalf of SunPath. Further, Plaintiff is a resident of Virginia who is registered on the nation DNC Registry. Despite her registration, Plaintiff received numerous unsolicited calls on behalf of SunPath. When she received the calls at issue, the callers did not identify themselves by name. As such, Plaintiff's claims are typical of the Classes' claims. Otherwise, Plaintiff will supplement this response to provide further facts and information as they are produced by SunPath and third parties.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer.  If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature.

Plaintiff's answer is non-responsive as it addresses only Plaintiff's individual claims and does not identify any factual or legal bases supporting her claims are typical of the purported classes or identify even a single other class member.

**Interrogatory 23**:  If you contend that your claims against SunPath contain questions of law and fact that are common to the clams of the proposed classes, and those questions predominate over any questions that may affect individual members of the proposed classes, identify and describe in detail all factual and legal bases for those contentions.

**ANSWER:** Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Plaintiff further objects to this interrogatory to the extent it calls for information protected by the work product doctrine. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that SunPath utilizes third parties to place calls on its behalf for the purpose of soliciting the sale of its vehicle service protection plans. Defendant failed to obtain consumers prior express written consent prior to the calls being placed. Further, the third parties fail to identify themselves during



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA141

Patrick Peluso
October 21, 2022
Page 9

the solicitation calls at issue. SunPath and third parties acted in a uniform manner with respect to all class members. Otherwise, Plaintiff will supplement this response to provide further facts and information as they are produced by SunPath and third parties.

**DEFICIENCY:** If this response is considered premature because it is dependent on documents or information Plaintiff expects to find during discovery, please specify what records Plaintiff's response is dependent upon and what steps are being taken to discover such records in order to support the basis for your statement that this request is premature. Plaintiff fails to identify

Plaintiff's answer is non-responsive as it addresses only Plaintiff's individual claims and does not identify any factual or legal bases supporting her contention that her claims are common to those of the purported classes, or identify even a single other class member.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Document Request 1**:  All documents and communications that you identified, relied upon, reviewed, considered or consulted in answering any of the foregoing Interrogatories or in your Initial Disclosures.

**RESPONSE:** Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

**DEFICIENCY:** Please supplement as necessary based on deficiencies noted with the foregoing interrogatory responses.

**Document Request 2:** All documents and communications relating to the information contained in response to each of the Interrogatories.

RESPONSE: Objection, this request is overbroad and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or the work product doctrine. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

**DEFICIENCY:** Please supplement as necessary based on deficiencies noted with the foregoing interrogatory responses.

**Document Request 3**: All documents and communications you have received from, or sent to, SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

Patrick Peluso
October 21, 2022
Page 10

information in the possession, custody, or control of Defendant and/or third parties. This request also represents an impermissible fishing expedition. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

**DEFICIENCY:** We incorporate our discussion above concerning the discovery problems repeated in this answer. This request clearly seeks information relevant to the claims at issue, as Plaintiff alleges SunPath may be liable for the calls at issue as a result of actions of third parties. Plaintiff is claiming that she had no prior relationship with these companies, so it is inconceivable to understand what undue burden would be involved in responding to this. Documents in Plaintiff's possession related to such third parties are therefore obviously relevant to the claims and defenses at issue in this case. Please supplement with any and all responsive documents not already produced.

**Document Request 4:** All non-privileged documents and communications related to SunPath, any third party for whose actions you allege SunPath is liable, the calls for which you seek recovery in this action, or any of the allegations contained in your Complaint.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. This request is also vague and unclear as to what is meant by "documents and communications related to SunPath, any third party". This request also represents an impermissible fishing expedition. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

**DEFICIENCY:** Plaintiff's objections that this request seeks information beyond the scope of Fed. R. Civ. P. 26 are meritless, as the request exclusively seeks non-privileged documents related to the subject of this lawsuit—SunPath's potential liability because of the allegations in Plaintiff's Complaint. Again, Plaintiff claims she has no prior relationship with the parties she sued, so what is the basis for her undue burden objection? If we are in fact strangers, this objection makes no sense and calls into serious question which of Plaintiff's other objections have no basis in fact. Please supplement as necessary with any non-privileged documents sought by this request.

**Document Request 5:** All non-privileged documents or electronically stored information on your computers, tablets, smartphones or other electronic devices related to SunPath, or any of the allegations contained in your Complaint.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents or information in the possession, custody, or control of Defendant and/or third parties. This request is also vague and unclear as to what is meant by "non-privileged documents or electronically stored information on your computers, tablets, smartphones or other electronic devices related to SunPath". This request also represents an impermissible fishing expedition.



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

**JA143**

Patrick Peluso
October 21, 2022
Page 11

**DEFICIENCY:** Plaintiff's objections that this request seeks information beyond the scope of Fed. R. Civ. P. 26 are meritless, as the request exclusively seeks non-privileged documents related to SunPath or any of the allegations in your Complaint.  It is also unclear how a request for documents stored on Plaintiff's electronic devices seeks documents in the control of Defendant or other third parties.  Please supplement as necessary with any non-privileged documents sought by this request.

**Document Request 11**:  All documents and communications evidencing any settlement agreements you have entered into or compensation you have received from any person or party, relating to this action or the calls or text messages at issue in it.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Here, this request seeks information regarding settlement agreements that are confidential and are unrelated to the claims and defenses in this lawsuit. This request is also designed to harass and represents an impermissible fishing expedition.

**DEFICIENCY:** Plaintiff's objections that this request seeks information beyond the scope of Fed. R. Civ. P. 26 are meritless, as the request exclusively seeks non-privileged documents related to this action or the calls or text message at issue in it.  If nothing else, they go to show whether Plaintiff has either released any of the claims at issue here or already received compensation for them, which would be used as a set-off.  Please supplement as necessary with any non-privileged documents sought by this request.

**Document Request 14**:  All pleadings, correspondence, discovery, settlement agreements, payments received, judgments, documents evidencing monies paid, and other non-privileged documents relating to any demand, claim, allegation, litigation, administrative, or regulatory investigation or proceeding, other than this Lawsuit, to which you have ever been a party at any time in the past five years, in which you have sought damages or any other form of relief under the TCPA, VTPPA, or any other state law relating to telemarketing or other allegedly unlawful communications.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request also seeks documents protected by confidentiality agreements. This request is also designed to harass and represents an impermissible fishing expedition.

**DEFICIENCY:** This response seeks documents relevant to this case for the same reasons specified with regard to Interrogatory 21, which are clearly within the scope of Fed. R. Civ. P. 26.  *See Mey v. All Access Telecom, Inc.*, CIVIL ACTION NO. 5:19CV237, 2022 U.S. Dist. LEXIS 108993 (N.D.W. Va. May 4, 2022) (compelling a TCPA plaintiff's production of documents evidencing her litigation and settlement history).  Please supplement as necessary with any non-privileged documents sought by this request.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA144

Patrick Peluso
October 21, 2022
Page 12

**Document Request 15**:  All documents you receive in response to any document request, subpoena or other substantially similar demand for the production of documents or things that you have served or serve in the future on any party or non-party in connection with this Lawsuit.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. This request is also premature. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents.

**DEFICIENCY:** Please supplement with all documents received in response to the third-party subpoenas Plaintiff has issued in this matter or advise if you have received no other documents than what we have already been given.

**Document Request 16**:  All documents and communications evidencing any member of the purported classes' receipt of a call from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

**RESPONSE:** Objection, this request is premature. This request also seeks documents and information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.  Plaintiff has failed to provide any documents evidencing any member of the purported classes' receipt of a call from SunPath or any third party for whose actions you allege SunPath is liable.  Please supplement with all responsive documents or clarify that Plaintiff does not possess any responsive documents.

**Document Request 17**:  All documents and communications evidencing the identity of any person, other than you, whom you claim is a member of any of the purported classes as alleged in the Complaint.

**RESPONSE:** Objection, this request is premature. This request also seeks documents and information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.  Plaintiff has not produced any document responsive to this request relating to purported class members.  Please supplement with all responsive documents.

**Document Request 19**:  You and your attorneys' communications with any member of the purported classes (excluding yourself), including any documents reflecting notes of such communications. This includes any communications to any member of the purported classes, even if the class member did not respond.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA145

Patrick Peluso
October 21, 2022
Page 13

**RESPONSE:** Objection, this request is premature. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.  If there is any privileged information being withheld, produce a privilege log.  Otherwise, please produce all communications with purported class members responsive to this request.

**Document Request 20**:  All documents reflecting notes of communications between any potential member of the purported classes and SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise, including any documents reflecting notes of such communications.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. This request is also premature.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.  This request also seeks information specifically related to class claims in this matter, as it seeks information related to communications—such as allegedly unlawful phone calls that form the entire basis of Plaintiff's claims—to a class Plaintiff purports to represent. If there is any privileged information being withheld, produce a privilege log.  Otherwise, please produce all responsive documents related to purported class members.

**Document Request 22**:  All documents and communications reflecting all telephone numbers at which any member of the purported classes received calls from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.  Plaintiff has failed to provide any documents evidencing any member of the purported classes' receipt of a call from SunPath or any third party for whose actions you allege SunPath is liable.  Please supplement with all responsive documents or clarify that Plaintiff does not possess any responsive documents.

**Document Request 23**:  All documents evidencing any damages and/or harm caused to any potential members of the purported classes as a result of their receipt of calls from SunPath or any third party for whose actions you allege SunPath is liable, vicariously or otherwise.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA146

Patrick Peluso
October 21, 2022
Page 14

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff will produce responsive documents. Further, Plaintiff will supplement this response to produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away.   Plaintiff has failed to provide any documents evidencing any member of the purported classes' receipt of a call from SunPath or any third party for whose actions you allege SunPath is liable.  Please supplement with all responsive documents or clarify that Plaintiff does not possess any responsive documents.

**Document Request 28**:  All documents and communications that identify any potential members of the purported classes (other than yourself).

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney work product doctrine. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** Plaintiff has failed to provide any documents identifying any member of the purported class other than Plaintiff. If this response is considered premature because it is dependent on documents or information Plaintiff expects to find in the course of discovery, please specify what party's records Plaintiff's response is dependent upon and what steps are being taken to discover such records order to support the basis for your statement that this request is premature. Please supplement with all responsive documents or clarify that Plaintiff does not possess any responsive documents.

**Document Request 29**:  All documents and communications that represent or evidence the number of persons that may be members that fall within the purported classes.

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney work product doctrine. Without waiving said objections, Plaintiff will produce responsive documents as they are produced by SunPath and any third parties.

**DEFICIENCY:** Plaintiff has failed to provide any documents identifying any member of the purported class other than Plaintiff.  If this response is considered premature because it is dependent on documents or information Plaintiff expects to find in the course of discovery, please specify what party's records Plaintiff's response is dependent upon and what steps are being taken to discover such records order to support the basis for your statement that this request is premature. Please supplement with all responsive documents or clarify that Plaintiff does not possess any responsive documents.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA147

Patrick Peluso
October 21, 2022
Page 15

**Document Request 31**: All documents and communications regarding your attorneys' prior putative class action lawsuits and class representations evidencing their ability to adequately represent the purported classes.

**RESPONSE:** Objection, this request is overbroad, unduly burdensome, and beyond the scope of discoverable information per FRCP 26(b)(1), as this request seeks information that is irrelevant and disproportionate to the claims and allegations in this case. Plaintiff further objects to the extent this request seeks documents or information protected by the attorney client privilege, the work product doctrine, or confidentiality agreement. Plaintiff also objects to the extent this request seeks information in the possession of third parties or that is publicly available.

**DEFICIENCY:** Plaintiff's counsel's ability to adequately represent the purported class is relevant to this class action claim in which counsel seeks to serve as class counsel. If there is any privileged information being withheld, produce a privilege log. Further, regardless of whether such information is "publicly available," such undisclosed documents are not equally available to Defendant. Please supplement with all responsive documents.

**Document Request 32**: All documents and communications you intend to rely upon to support your request for class certification.

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. This request is also unduly burdensome. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents. Plaintiff will supplement this response following the receipt of further responsive documents.

**DEFICIENCY:** This request is not premature, as the deadline for Plaintiff's Motion for Class Certification is less than one month away, and Plaintiff has failed to provide any documents identifying any member of the purported class other than Plaintiff. Please supplement with all responsive documents.

**Document Request 33**: Documents that support your contention that the proposed classes are capable of being certified, including but not limited to, documents supporting that the classes are numerous enough for certification, have common issues that will predominate over individual issues, have typical issues, and have adequate representation.

**RESPONSE:** Objection, this request is premature. Plaintiff further objects because this request seeks documents or information in the possession, custody, or control of Defendant and/or third parties. Plaintiff also objects to the extent this request seeks documents or information protected by the attorney client privilege and/or work product doctrine. This request is also unduly burdensome. Without waiving said objections, Plaintiff will produce nonprivileged, responsive documents. Plaintiff will supplement this response following the receipt of further responsive documents.



**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

**JA148**

Patrick Peluso
October 21, 2022
Page 16

**DEFICIENCY:** This request is not premature.   Plaintiff has failed to produce any documents responsive to this request and the deadline for Plaintiff's Motion for Class Certification is less than one month away.  Please supplement with all responsive documents.

## REQUESTS FOR ADMISSION

**Request for Admission 7**:  You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

**RESPONSE:**  At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

**DEFICIENCY:** This answer is non-responsive.   The request seeks an admission regarding what evidence *Plaintiff presently possesses*.  Who else would know besides Plaintiff?  Plaintiff undoubtedly has information sufficient to admit or deny what information she has in her possession.   Please supplement your response accordingly.

**Request for Admission 8**:  You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

**RESPONSE:** At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

**DEFICIENCY:** This answer is non-responsive. The request seeks an admission regarding what evidence *Plaintiff presently possesses*.  Who else would know besides Plaintiff?  The request seeks an admission regarding what evidence Plaintiff presently possesses.  Plaintiff undoubtedly has information sufficient to admit or deny what information she has in her possession.   Please supplement your response accordingly.

**Request for Admission 16**:  During each of the calls described in Paragraphs 23-24 of your Complaint, the caller did not state that he or she was calling from or on behalf of SunPath.

**RESPONSE:** At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

**DEFICIENCY:** This answer is non-responsive.  Plaintiff claims to have answered the phone calls that are the subject of this request and therefore undoubtedly has information, and is presumably the only party with such information, sufficient to admit or deny this request.  Please supplement your response accordingly.

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

**JA149**

Patrick Peluso
October 21, 2022
Page 17

We are generally available for a telephonic conference call to discuss these issues.  If you do not believe that useful, of course we are fine with a written response to the issues identified above.  **Please provide Plaintiff's full and complete supplemental responses and production by Wednesday, October 26, 2022.**

Sincerely,

Gregory M. Caffas

**RICHMOND**
1519 Summit Avenue, Suite 102, Richmond, VA 23230
P: 804-441-8440   F: 804-441-8438

**TYSONS CORNER**
8200 Greensboro Drive, Suite 820, McLean, VA 22102
P: 703-485-3535   F: 703-485-3525

JA150

# Greg Caffas

| | |
|---|---|
| **From:** | Greg Caffas |
| **Sent:** | Thursday, November 3, 2022 6:17 PM |
| **To:** | 'Taylor Smith' |
| **Cc:** | 'Patrick Peluso'; 'hokies1116'; Mitchell Roth; Joe Bowser; Sofia Medina |
| **Subject:** | RE: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer |
| | |
| **Follow Up Flag:** | Copied to Worldox (Client Files\2834\017\01478753.MSG) |

Taylor,

Thanks again taking the time to jump on a call with me to discuss the deficiencies we noted with Plaintiff's discovery responses in our 10/21 letter.

I'm confirming my understanding of your position based on our conversation today is that you'll try to supplement Plaintiff's answers to interrogatories 1-3 and RFAs 7, 8, and 16 by 11/11, but that based on what information you have at present you don't believe you have any basis for supplementing any of the remaining interrogatory responses we discussed. And with the exception of documents you just received from one of the carrier subpoenas and are preparing to produce, you are not withholding any documents you believe are responsive, and you will not be providing any privilege log. Let me know if I'm missing anything that you do plan to provide as supplemental responses.

My position remains that all of the responses noted in our letter remain deficient and should be supplemented accordingly. We had asked for supplemental responses by 10/26 (it's been over a month since the initial responses were served on 9/28), and so far have received only a handful of documents received in response to Plaintiff's third-party subpoenas and no supplemental interrogatory responses. And based on your positions during this afternoon's call, I anticipate the responses you do intend to maybe supplement a week from now will be not be complete. Given that it seems we are at an impasse with this meet and confer process, we may move to compel plaintiff's discovery responses promptly to try and get this resolved before the close of discovery on 12/9.

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com
8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Greg Caffas
**Sent:** Thursday, November 3, 2022 3:58 PM
**To:** Taylor Smith <tsmith@woodrowpeluso.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** RE: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

Apologies for not following up sooner—here's the bridge for our call. Talk to you in a couple minutes.

Call in No: 781-448-4529
Pin: 84233

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Greg Caffas
**Sent:** Thursday, November 3, 2022 11:00 AM
**To:** Taylor Smith <tsmith@woodrowpeluso.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** RE: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

Taylor,

I am free at 4pm today for a call on the meet and confer.  I'll send a bridge around.

I can be available all day 11/7 to continue the deposition.

Thanks,
Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com
8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Taylor Smith <tsmith@woodrowpeluso.com>
**Sent:** Wednesday, November 2, 2022 5:08 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

How does 2 pm MT / 4 pm ET work for you?

Can you also provide your availability on Monday (Nov. 7) to finish the American Protection deposition?

On Wed, Nov 2, 2022 at 2:20 PM Greg Caffas <gcaffas@rothjackson.com> wrote:

Taylor,

What is your availability tomorrow for a call to meet and confer regarding Plaintiff's discovery deficiencies noted in my 10/21 letter?  Anytime after noon EST works for me.

Thanks,
Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Greg Caffas
**Sent:** Friday, October 28, 2022 6:02 PM
**To:** Taylor Smith <tsmith@woodrowpeluso.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** RE: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

Taylor,

First, I see that there appears to only be a single page document (in addition to the business records certification page dated from two weeks ago) produced from Verizon. Can you confirm that's not a mistake and it is the entire response Plaintiff received?

I don't want to re-tread the points that were laid out in our 10/21 letter, but I'm not sure why you believe Plaintiff is entitled to continue to withhold *any* kind of supplemental responses simply because you suspect that you may uncover some information from American Protection. As should already be apparent from the documents you received from American Protection and forwarded yesterday, six weeks after you received them, your characterization of American Protection as "SunPath's third-party telemarketer" are misplaced. Plaintiff's tactic of offering only conclusory statements without any facts in support may have gotten this case past the pleadings stage, but now that we have proceeded to discovery, SunPath is entitled to know the *facts* that support Plaintiff's thus-far unsubstantiated contentions. And in any case, the items you believe you may discover from American Protection aren't the only things Plaintiff is required to disclose. Particularly glaring are Plaintiff's still un-supplemented responses to Interrogatories 1-3, which seek simply to discover *the calls she is seeking to recover for* in this case where the calls are the sole basis of her claims, as well as why she contends SunPath is liable for any single call. How far into this case do we need to get before you can say what you were required to know when you filed the complaint? In that vein, Plaintiff's still-unsupplemented request for admission responses that she "lacks sufficient knowledge" to questions only Plaintiff would know, further strain the credibility of any of your responses.

Also glaring are your responses to several of the document requests seeking documents you intend to rely on to support your class certification claims. Your boilerplate objections that Plaintiff believes such documents are in the possession of Defendant and/or third-parties are not a valid basis for continuing to stonewall these requests for discoverable information. We are less than six weeks from the close of discovery, and just over two weeks from your class certification deadline—Plaintiff has had more than enough time to discover and produce this information. You represent that you are not withholding any other responsive documents, but have not produced any documents responsive to Document Requests 28, 29, 31, 32, and 33, relating to potential class members (in addition to the other

items noted in our letter), which directly contradicts your current responses.  If you do not possess responsive documents, supplement your responses to confirm that is the case.

As I mentioned, I was available for a call at 3pm today, but did not hear from you.  I was hoping we could discuss over the phone—I left you a voicemail before sending this.  Please give me a call back to discuss as soon as possible.  I very much want to avoid any formal discovery motions, but given the current discovery timeline, we may have to move to compel if I do not hear from you. Your continued refusal to provide any supplement to your written discovery responses, or any documents besides the small number of documents received in response to subpoenas that took weeks to produce, is getting to the point that I'm concerned SunPath will be prejudiced by 11th hour disclosures it will not have an opportunity to address when Plaintiff finally feels she is ready to comply with her discovery obligations.

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Taylor Smith <tsmith@woodrowpeluso.com>
**Sent:** Friday, October 28, 2022 4:29 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

Greg,

Attached is Verizon's response to the subpoena. I do not believe that we are withholding any responsive documents, however, I will check with my client and get back to you. I also expect that we will supplement some of Plaintiff's responses prior to her deposition.

Additionally, we take issue with your statement that plaintiff's responses are not dependent on the outcome of next week's deposition. As previously explained in our motion to extend the discovery schedule, a large portion of the documents/information that SunPath seeks is in the possession of its third-party telemarketer, American Protection.

Thanks,
Taylor

4

On Thu, Oct 27, 2022 at 4:48 PM Greg Caffas <gcaffas@rothjackson.com> wrote:

Taylor,

Thank you for forwarding.  Can I take your response to mean that Plaintiff will not be producing any documents or written responses to supplement her current responses in the meantime?  That position isn't tenable given the existing discovery schedule and the numerous deficiencies with Plaintiff's current responses that certainly are not dependent upon the outcome of next week's deposition.

As just one example of the many we pointed to in our letter sent on Friday, besides the American Vehicle Protection subpoena and the third-party subpoenas issued yesterday, Plaintiff has issued at least two other subpoenas to which the responses have long since come due.  The documents you have received in response to any subpoena must be produced.

We are less than six weeks from the close of fact discovery in your class action case and still have not received information relating to the identity of a single member of any of the alleged classes—I'm very concerned that putting off even scheduling a time to meet and confer will not permit us anywhere near enough time to resolve any of the many discovery disputes we've noted.

I can be available for a call at 3pm EST tomorrow afternoon if that works for you.

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)

**From:** Taylor Smith <tsmith@woodrowpeluso.com>
**Sent:** Thursday, October 27, 2022 5:56 PM
**To:** Greg Caffas <gcaffas@rothjackson.com>
**Cc:** Patrick Peluso <ppeluso@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>; Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Re: Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer

Greg,

Attached are the documents produced by American Vehicle Protection. I can schedule a time to confer regarding Plaintiff's discovery responses after the deposition next week.


Best,

Taylor


On Thu, Oct 27, 2022 at 11:53 AM Greg Caffas <gcaffas@rothjackson.com> wrote:

Pat,


We have not received any response to the letter I sent last week requesting that Plaintiff supplement her discovery responses as necessary by 10/26. In addition to general concerns about resolving discovery disputes in advance of the close of discovery, the information sought from Plaintiff is necessary to prepare for both Ms. Smith's deposition and the deposition of Chukran Management currently set for 11/1. In particular, Plaintiff has failed to provide any documents received in response to subpoenas, including to Chukran Management, which is certainly needed to prepare for the deposition occurring less than a week from now.


Please advise on the status of Plaintiff's discovery responses.


Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)


**From:** Greg Caffas
**Sent:** Friday, October 21, 2022 3:29 PM
**To:** Patrick Peluso <ppeluso@woodrowpeluso.com>; (WOODROW) Taylor Smith <tsmith@woodrowpeluso.com>; hokies1116 <frank@driscolllawoffice.com>
**Cc:** Mitchell Roth <mroth@rothjackson.com>; Joe Bowser <jbowser@rothjackson.com>; Sofia Medina <smedina@rothjackson.com>
**Subject:** Smith v. SunPath - Notice of Deposition and Discovery Meet and Confer


Pat,

Attached is a Notice of Plaintiff's deposition for November 15th, as previously agreed upon.

Additionally, please see the attached letter seeking to meet and confer regarding the deficiencies with Plaintiff's responses to SunPath's First Set of Discovery Responses. As stated in the letter, we request that you cure the noted deficiencies by October 26th to allow us to adequately prepare for Ms. Smith's deposition, and to allow time to resolve any discovery disputes in advance of the December 9th close of discovery.

We're available for a phone call to discuss any of the issues noted in our meet and confer letter.

Thanks,
Greg

Gregory M. Caffas | Associate | (703) 485-3533 (direct) | gcaffas@rothjackson.com

8200 Greensboro Drive | Suite 820 | McLean, Virginia 22102 | (703) 485-3535 (main) | (703) 485-3525 (fax)



NOTICE: Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

--

Taylor T. Smith I  Woodrow & Peluso LLC

3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
(720) 907-7628 (direct)

tsmith@woodrowpeluso.com I www.woodrowpeluso.com

**CONFIDENTIALITY AND LIABILITY FOR MISUSE.** The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

--

Taylor T. Smith I  Woodrow & Peluso LLC

3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
(720) 907-7628 (direct)

tsmith@woodrowpeluso.com I www.woodrowpeluso.com

**CONFIDENTIALITY AND LIABILITY FOR MISUSE.** The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

--

Taylor T. Smith I  Woodrow & Peluso LLC
3900 East Mexico Avenue, Suite 300

Denver, Colorado 80210
(720) 907-7628 (direct)
tsmith@woodrowpeluso.com | www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC. It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it. If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# verizon✓

| | Page: | 1 | of | 1 |
|---|---|---|---|---|
| | Invoice #: | | 2022283643 | |

VERIZON SECURITY SUBPOENA COMPLIANCE
600 HIDDEN RIDGE ROOM E01A186
IRVING, TX, 75038

| Date | Invoice # |
|---|---|
| 10/14/2022 | 2022283643 |

### Case Invoice

TAX ID: 23-2259884 / Cage # 3L7L6

PHN: 888-483-2600
FAX: 325-949-6916

Account #          NJ181672
Payment Due Date:   11/13/2022

ARONS & ARONS LLC
76 S ORANGE AVE
STE 100
SOUTH ORANGE, NJ, 07079

## Case Details

| Date Rec'd | VZCase # | Receiving Att/Agent | Agency Approval Code | Invoice Ref | Ref Value |
|---|---|---|---|---|---|
| 09/21/2022 | 22433439 0 | PATRICK H. PELUSO | | | |
| | | | File/Docket #: | 1:22-cv-00081-LMB-WEF | |

## Charge Details

| Description | Charge Terms/Code | Service Range | Qty | Unit Cost | Amount |
|---|---|---|---|---|---|
| Hourly Charges - Civil | | 09/21/2022 - 09/21/2022 | 1 | $75.00 | $75.00 |
| (Preferred Return Method) - Overnight | | 09/21/2022 - 09/21/2022 | 1 | $8.00 | $8.00 |

| Total | $83.00 |
|---|---|
| Payments/Credits | 0.00 |
| Balance Due | $83.00 |

Please return a copy of this summary with your payment. Please reference invoice number on your remittance check.
----------------------------------------------------------------------------------------------------

| Invoice # | Account # | Total Amount Due | Payment Due Date | Amount Enclosed |
|---|---|---|---|---|
| 2022283643 | NJ181672 | 83.00 | 11/13/2022 | |

ARONS & ARONS LLC
76 S ORANGE AVE
STE 100
SOUTH ORANGE, NJ, 07079
**Billing Contact**
  PATRICK H. PELUSO

**No credit card payments.**

Make check payable to:
VERIZON SECURITY SUBPOENA COMPLIANCE

600 HIDDEN RIDGE ROOM E01A186
IRVING, TX, 75038

## JA161

**VERIZON CONFIDENTIAL**

October 14, 2022

ARONS & ARONS LLC
76 S ORANGE AVE STE 100
SOUTH ORANGE NJ 07079

Verizon Case #: 22433439
Docket / File #: 1:22-cv-00081-LMB-WEF
Requested Target: 281-667-9986,281-709-0786,281-709-0849,281-709-0884,352-209-2321,407-479-7228,410-844-6327

Dear Patrick H. Peluso

Verizon Subpoena Compliance is in receipt of the attached request. Please note the following:

( x ) Verizon Wireless does not provide service for the requested numbers. The service is likely provided by:

 4074797228 - Level 3 Communications
3522092321 -  Cingular Wireless
4108446327 - Peerless

Respectfully,

Patti P
VERIZON SECURITY SUBPOENA COMPLIANCE

VERIZON SECURITY SUBPOENA COMPLIANCE
180 WASHINGTON VALLEY ROAD
BEDMINSTER NJ 07921
Phone: 800-451-5242 Fax:888-667-0028

October 14, 2022


ARONS & ARONS LLC
76 S ORANGE AVE STE 100
SOUTH ORANGE NJ 07079


**Verizon Case #: 22433439**
**Docket / File #: 1:22-cv-00081-LMB-WEF**

State of Texas

ss:

County of Tom Green


I, PATTI POEHLS, being duly sworn, depose and say:

I am the custodian of records for Verizon, and in that capacity, I certify that the attached records are true and accurate copies of the records created from the information maintained by Verizon in the actual course of business.  It is Verizon's ordinary practice to maintain such records, and that said records were made contemporaneously with the transaction and events stated therein, or within a reasonable time thereafter.


/s/ PATTI POEHLS


Certification following USCS Federal Rules of Evidence Rule 902 & 803.

From:                                                    09/21/2022 16:12    #117 P.002/006

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

| Ruth Smith, et al., | )  |
| --- | --- |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:22-cv-00081-LMB-WEF |
| SunPath, Ltd., | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              Verizon Communications, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Addendum A.

| Place: Arons & Arons, LLC, 76 South Orange Ave.,South Orange, NJ 07079, or ppeluso@woodrowpeluso.com | Date and Time: 10/06/2022 5:00 pm |
| --- | --- |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  09/21/2022

    *CLERK OF COURT*
                        OR

_____         /s/ Patrick H. Peluso
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Ruth Smith
_____ , who issues or requests this subpoena, are:
Patrick H. Peluso, ppeluso@woodrowpeluso.com, Woodrow & Peluso, LLC, 3900 E. Mexico Ave., Suite 300, Denver, CO 80210; Tel: 720-213-0676

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## ADDENDUM A TO SUBPOENA TO PRODUCE DOCUMENTS TO VERIZON

Please produce the following documents for inspection and copying on or before October 6, 2022. To the extent that VERIZON objects to any of the below requests on the basis of privilege, VERIZON must provide a privilege log and produce any and all non-privileged documents. Defined terms need not be capitalized to retain their defined meanings.

1.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 281-709-0786 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

2.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 281-709-0884 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

3.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 281-709-0849 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

4.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 281-667-9986 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

5.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 410-844-6327 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

6.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 352-209-2321 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

7.    All DOCUMENTS sufficient to IDENTIFY the client, user, subscriber, or PERSON associated with the telephone number 407-479-7228 during the RELEVANT TIME PERIOD together with the date(s) that each client, user, subscriber, or PERSON was associated with the subject number.

### DEFINITIONS

1.    "DOCUMENTS" means and refers to writings, contracts, manuals, papers, drawings, graphs, diagrams, maps, audits and audit results, records, reports, investigations, charts,

studies, photographs, sound recordings, images, computer programs, letters, ESI, emails, text messages, contracts, spreadsheets, agreements, data, databases, and any and all other data or data compilations, including without limitation all ESI, Excel files, screen shots, proof of backups, data or other reporting data—stored in any medium from which information can be obtained.

2.  "IDENTIFY" shall mean the following:

   A.  When referring to a person, it means to give the person's full name, present address or last known address, additional phone number, and email address, and the name of the registered business associated, owned, or operated, in any capacity by any such person.

   B.  When referring to an entity, it means to give the entity's full name, contact telephone number, and email address, and any name that the entity purports to do business as (d/b/a name), and the type of entity that the business is registered as, including but not limited to business, corporation, limited liability company, professional association, and limited liability partnership.

   C.  When referring to documents, means to provide documents showing the (i) type of document; (ii) general subject matter; (iii) date of the document and period of use; and (iv) author(s), addressee(s) and recipient(s).

   D.  When referring to a communication, means to give documents showing the type of communication (i.e., telephone discussion, email, face-to-face, etc.), the name and present address of each person present during the communication or who otherwise viewed or heard the communication, and to state the subject matter of the communication and the date when it occurred.

3.  "PERSON" means any natural person or any business, legal, quasi-governmental or governmental entity or association.

4.  "RELEVANT TIME PERIOD" means and refers to the time from January 26, 2018 to the present.

5.  "YOU," "YOUR," or "VERIZON" means and refers to Verizon Communications, Inc., a Delaware corporation, whose principal place of business is located at 1095 Avenue of the Americas, New York, New York 10036, including all of its divisions, subsidiaries, related companies, predecessors and successors, and all of its owners, directors, managers, agents, attorneys, affiliates, subsidiaries, employees, contractors, partners, and joint ventures.

.

**SUBSCRIBER REPORT**

| Search Value | MTN | Business Name | Addr Line1 | City | State | Zip Code |
|---|---|---|---|---|---|---|
| | 2817090786 | 2817090786 FIRST CITIZENS BANCSHARES, INC | 4300 SIX FORKS RD | RALEIGH | NC | 27609 |
| | 2817090849 | 2817090849 FIRST CITIZENS BANCSHARES, INC | 4300 SIX FORKS RD | RALEIGH | NC | 27609 |
| | 2817090884 | 2817090884 FIRST CITIZENS BANCSHARES, INC | 4300 SIX FORKS RD | RALEIGH | NC | 27609 |
| | 2816679986 | 2816679986 FIRST CITIZENS BANCSHARES, INC | 4300 SIX FORKS RD | RALEIGH | NC | 27609 |

**CONTACTS:**
Craig Grimm
Syliva Cromartie
Pete Shelfo
Laura Martin

JA167

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          ALEXANDRIA DIVISION
 3
        RUTH SMITH, individually and on
 4      behalf of all others similarly
        situated,
 5
                           Plaintiff,        Case No.
 6                                           1:22-cv-00081-LMB-
        vs.                                  WEF
 7
        SUNPATH, LTD., a Massachusetts
 8      corporation,
 9                         Defendant.
        _____/
10
11                          DEPOSITION OF
        RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12      d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                            KOBI CHUKRAN
13
                     (Conducted Via Videoconference)
14
15
        DATE:            November 1, 2022
16
17      TIME:            11:03 a.m. to 2:06 p.m.
18
        PURSUANT TO:     Notice by counsel for Plaintiff
19                       for purposes of discovery, use at
                         trial or such other purposes as
20                       are permitted under the Federal
                         Rules of Civil Procedure
21
22      REPORTED BY:     Aaron T. Perkins, RMR, CRR, CRC
                         Notary Public, State of
23                       Florida at Large
24
                         Pages 1 to 128
25
                                                      Page 1
```

```
 1        maybe $10, $15.  It depends on the particular
 2        time.
 3             Q.   Okay.  But they would receive the $200
 4        if the sale was made.  Do I understand that
 5        correctly?
 6             A.   No.  This is in this particular example.
 7        Now, please, I would like to entered into the
 8        record that we've never done any business with
 9        Capital Buddies, LLC.  Okay?  This is a sales
10        party that expressed interest in the affiliate
11        program.  I provided it as a sample as per the
12        subpoena's request.  But there was no relationship
13        between us.  And this is a sample agreement.
14             Q.   So the amount could change?
15             A.   Absolutely.
16             Q.   Okay.
17             A.   Absolutely.
18             Q.   Does American Protection keep track of
19        which affiliates are associated with which sales?
20             A.   We do our best to, yes.
21             Q.   Do you know if there's any affiliate
22        associated with the solicitations to plaintiff?
23             A.   There was none.
24             Q.   None?
25             A.   There was none.  It was strictly that
```

Page 115

```
 1        she received a postcard from us, and she called in
 2        to request information.
 3             Q.   Okay.  Previously we discussed
 4        agreements with the subcontractors.
 5                  Do you recall that?
 6             A.   Yes.
 7             Q.   I was under the impression this related
 8        to subcontractors, but you informed me it does
 9        not.
10                  Does American Protection have agreements
11        with the subcontractors that it utilized during
12        the relevant time period?
13             A.   We have agreements with subcontractors.
14             Q.   Are they written?
15             A.   Yes.
16             Q.   Could they be produced?
17             A.   For this particular time frame, I would
18        have to search and determine that.
19             Q.   Okay.
20             A.   Again, we do our best efforts to
21        maintain those records.  I'm a small, one man type
22        of company.  I do my best.  But, unfortunately,
23        sometimes we have hard drives that have crashed on
24        me, and some records were lost in the process,
25        yes.
```

Page 116

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>     Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## PLAINTIFF'S INITIAL DISCLOSURES

Plaintiff Ruth Smith ("Smith" or "Plaintiff") submits the following Initial Rule 26(a)(1) Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

### I. Prefatory Statement

Plaintiff's investigation in this action continues, and these supplemental disclosures reflect only the current status of her knowledge. Plaintiff reserves the right to supplement and/or amend these disclosures as additional information becomes known.

Rule 26(a)(1) does not require the production of any information or documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege or applicable doctrine with respect to all such information and documents. The inadvertent disclosure of any information or documents shall not constitute a waiver of any such privilege.

This Prefatory Statement is incorporated in its entirety into each of the following disclosures. It shall be deemed continuing as to each such disclosure, and it is not waived, or in any way limited, by the following disclosures.

1

## *II. Disclosures*

(A)     *The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.*

1.     <u>Ruth Smith</u>: Ms. Smith has knowledge of certain matters alleged in the Complaint, including the circumstances under which Ms. Smith received the telemarketing calls, her lack of providing any prior express written consent to Defendant, and related matters. Ms. Smith may only be contacted through counsel, Woodrow & Peluso, LLC.

2.     <u>Defendant SunPath, Ltd. ("SunPath"), including agents, former agents, employees, former employees, and records custodians of SunPath</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including SunPath's telemarketing practices, the telemarketing calls placed to Plaintiff and the Class, SunPath's failure to obtain prior express written consent, SunPath's hiring of third-party telemarketers, lead generators, or other third parties, and related matters. As such individuals are all former or current employees or agents of the SunPath, SunPath is in a better position to ascertain their phone numbers and other contact information. The names, addresses, and telephone numbers of other agents, employees, and records custodians of SunPath are not known to Plaintiff at this time.

3.     <u>Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), including agents, former agents, employees, former employees, and records custodians of American Protection</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including Defendant's failure to obtain prior express written consent, Defendant's procurement of Plaintiff's lead information, calls

placed on behalf of or for the benefit of Defendant, and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of American Protection are not known to Plaintiff at this time. American Protection's mailing address is 10627 Cocobolo Way, Boynton Beach, Florida 33437.

4.     <u>Third party contractors and service providers of Defendant</u>: Such contractors, including without limitation telemarketers, telephone number lead generators, and telephone service providers, may have knowledge of certain matters alleged in the Complaint, including but not limited to the facts surrounding the calls placed by Defendant, or were placed on Defendant's behalf or for its benefit, to Plaintiff and the other class members, including without limitation the manner by which the calls were placed and Plaintiff's lead information was obtained. Defendant is in a better position to ascertain the phone numbers and other contact information of such contractors.

5.     <u>Any expert witnesses on whose opinions Plaintiff will rely on to support her claims</u>. To date, Plaintiff has not yet retained an expert witness, but will supplement these disclosures as necessary.

(B)     *A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;*

Plaintiff has access to applicable records related to the calls placed by Defendant or by a third party acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant.

Plaintiff anticipates that a significant portion of discovery in this case will be obtained

from Defendant, and in particular via Defendant's records, servers, databases, and other electronic storage platforms. Plaintiff also anticipates that a significant portion of discovery will be obtained from third parties acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant. Plaintiff is not presently aware of the location of such databases, and the third parties have not been identified. Investigation continues.

(C)     *A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and*

The total amount of damages incurred by Plaintiff and the putative class members is unknown at this time. Plaintiff seeks statutory damages under the TCPA of $500 per unsolicited telemarketing call for herself and for each class member. In the event willfulness is demonstrated, Plaintiff seeks $1,500 per unsolicited call. Plaintiff also seeks statutory damages under the VTPPA of $500 per call for first violations, $1,000 for second violations, and $5,000 for each subsequent violation, plus reasonable attorneys' fees and costs. In the event willfulness is demonstrated, damages for the first and second violations may be increased to $5,000. It is unclear at this time the number of unlawful calls placed by Defendant to Plaintiff and the putative class members. Investigation continues.

(D)     *For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.*

Plaintiff does not have any policy of insurance related to this action.

Dated: September 1, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Patrick H. Peluso_
One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on September 1, 2022.

_/s/ Patrick H. Peluso_

6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") motion to compel Plaintiff Ruth
Smith ("Plaintiff" or "Smith") to provide further responses to discovery fails to identify any
responses that are incomplete or any documents that were improperly withheld. Instead,
SunPath's motion takes issue with the status of discovery, which largely remains in progress but
incomplete. For these reasons and as explained below, the motion should be denied.

To begin, most of the "issues" raised in SunPath's motion were resolved (as SunPath was
aware they would be when it filed its motion) via Plaintiff's supplemental discovery responses,
which were served on November 11, 2022. (*See* Plaintiff's Supplemental Discovery Responses,
attached hereto as Exhibit A.) Indeed, Plaintiff detailed fifty-four calls placed for the purpose of
selling SunPath's vehicle service contracts. Additionally, Plaintiff provided further facts
regarding SunPath's liability, her computation of damages, and clarified her responses to
SunPath's requests for admission. Following service of the supplemental responses, SunPath has
indicated that it will likely request further responses (apparently no amount of detail will ever be
sufficient for SunPath).

1

As for the remaining issues, the Court should decline to order further responses. First, SunPath asks the Court to overrule Plaintiff's objections regarding prematurity even though (as SunPath is aware) no information or documents are being withheld on the basis of those objections. Rather, the objections were lodged to provide SunPath with ample notice that significant discovery remains to be completed in this case. While SunPath repeatedly states that discovery is a few weeks from completion (after opposing Plaintiff's previous motion to extend the discovery schedule to provide ample time to complete discovery), it fails to take into account that neither Plaintiff nor SunPath has been deposed and significant class-related discovery remains to be completed.

Finally, SunPath seeks an order compelling the production of every confidential settlement agreement that Plaintiff has entered into relating to telemarketing. But contrary to SunPath's assertions, prior settlement agreements cannot possibly form the basis an EBR and do not contain a release for the claims at issue. More to the point, confidential settlement agreements are completely irrelevant to the claims and defenses in **this** case. Hence, the information is not discoverable under Rule 26(b)(1).

For these reasons and as explained further below, the Court should deny SunPath's motion to compel further responses to discovery.

## I.    PROCEDURAL HISTORY

On January 26, 2022, Plaintiff filed the instant action alleging widespread violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Virginia Telephone Privacy Protection Act ("VTPPA"). (Dkt. 1.) Through discovery, it was revealed that SunPath engages numerous entities to conduct telemarketing to sell its vehicle service contracts and fails to maintain records of any of the calls that are placed on its behalf.

2

On August 29, 2022, SunPath served its first set of discovery requests directed to Plaintiff, including interrogatories, requests for production, and requests for admission. (Declaration of Taylor T. Smith ("Smith Decl."), ¶ 3, attached hereto as Exhibit B.) On September 13, 2022, Plaintiff served her objections to SunPath's discovery requests, and on September 28, 2022, Plaintiff served her responses to SunPath's discovery requests, which included her document production and recordings of calls placed on behalf of SunPath in violation of the TCPA and VTPPA. (*Id.*) Despite making no prior inquiry regarding the completeness of Plaintiff's discovery responses, SunPath served a discovery dispute letter on October 21, 2022, which included its perceived deficiencies with respect to thirty-three (33) of Plaintiff's discovery responses and demanded that Plaintiff provide supplemental responses three (3) business days later, on October 26, 2022. (Dkt. 41-2.)

After receiving the letter, Plaintiff and her counsel conducted a search for additional responsive documents, which were produced on October 27, 2022. (Smith Decl. ¶ 5.) Plaintiff's counsel also repeatedly informed SunPath's counsel that he would supplement her discovery responses. (*Id.* ¶¶ 6, 8.) On November 1, 2022, all parties were in attendance for the deposition of SunPath's third party telemarketer, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (*Id.* ¶ 7.) After American Protection's representative ended the deposition early, Plaintiff's counsel informed SunPath's counsel that he would be available to confer regarding Plaintiff's discovery responses that afternoon. (*Id.*) At this time, SunPath's counsel suggested that the parties confer on a later date. (*Id.*) On November 3, 2022, the parties conferred regarding Plaintiff's discovery responses. (*Id.* ¶ 8.) During the conferral, Plaintiff agreed to supplement her discovery responses and informed SunPath's counsel that the

3

responses would be provided prior to Plaintiff's deposition.[1] (*Id.*) Following the conferral, SunPath filed its motion to compel. (Dkt. 40.) On November 11, 2022, Plaintiff served her supplemental discovery responses. (*See* Ex. A.) The responses largely resolve the issues raised in SunPath's motion.

Based on these facts and as set forth below, Defendant's motion should be denied in its entirety.

## II.     ARGUMENT

### A.     Plaintiff's premature objections are not improper where, as here, no responsive documents or information are being withheld.

SunPath begins by asking the Court to overrule Plaintiff's objections relating to the prematurity of the discovery requests and order that the responses be supplemented. (Mot. at 5-7.) The problem with this argument is two-fold: First, several of the requests represent contention interrogatories, to which Plaintiff lacks sufficient information to provide a complete response. And second, as SunPath is well aware, not a single document or piece of information is being withheld on the basis of these objections.[2] Rather, the premature objections serve to provide notice to SunPath that the parties are in the midst of discovery and the complete and full extent of calls at issue have not yet been revealed.

"Contention interrogatories have been defined as interrogatories that request a litigant 'to state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases a contention; to take a position, and explain or defend that position ... or to state

---

[1] SunPath's motion falsely claims that Plaintiff's counsel "may try to provide certain supplemental responses by November 11, 2022" (dkt. 40, pg. 1.) This is untrue. Plaintiff agreed to supplement her discovery responses and informed SunPath's counsel that the responses would be provided prior to her deposition. At that time, counsel estimated that the responses would be served by November 11, 2022.

[2] During the parties' conferrals, Plaintiff's counsel informed SunPath repeatedly that no documents or information were being withheld on the basis of the premature objections.

the legal or theoretical basis for a contention.'" *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *1 (S.D.W. Va. July 17, 2019) (citation omitted). While permissible, "most courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period.'" *Id.*; *Monsanto Co. v. E.I. Du Pont De Nemours & Co.*, No. 4:09CV00686 ERW, 2012 WL 27936, at *2 (E.D. Mo. Jan. 5, 2012) ("Contention interrogatories need not be fully answered until discovery is near completion.").

The vast majority of the interrogatories at issue are premature contention interrogatories, which request that Plaintiff state her contention and all facts that support her contention with respect to various claims in the case. (*See* Dkt. 41-1, Interrogatories Nos. 1-9. 12, 19, 22, and 23.) For example, SunPath requests that Plaintiff identify all of the calls that she seeks to recover damages for in this lawsuit (*See id.*, Interrogatory No. 1.) While Plaintiff has detailed the currently known calls (*see* Ex. A, pgs. 1-6), she also lodged premature objections based on the fact that the call records in this case have yet to be produced. Plaintiff has also issued a subpoena directed to Five9, Inc., which she believes will reveal a complete picture of all calls placed to Plaintiff and the Classes. (Smith Decl. ¶ 9.)

Additionally, SunPath requests that Plaintiff state all facts in support of her contention that SunPath can be held directly or vicariously liable in this case. (*See id.*, Interrogatories Nos. 2-3.) Once again, Plaintiff has answered these interrogatories based on the current information produced in the case. (*See* Ex. A, pgs. 6-8.) But she also lodged premature objections given that both parties' depositions remain to be completed, and there is a litany of third-party discovery outstanding. Plaintiff has provided available dates for her deposition to SunPath (which was originally scheduled for November 15, 2022, but SunPath decided to reschedule it) and has

5

requested available dates for SunPath's representative(s). Most of the information that Plaintiff will rely on to demonstrate whether SunPath can be held directly or vicariously liable for the calls at issue will be contained within the depositions of American Protection[3], SunPath, and potentially other third-parties. Requiring Plaintiff to carry her entire burden to demonstrate liability prior to the completion of the depositions is simply unreasonable.

Likewise, the discovery requests seeking information relating to the dialing system used to place the calls at issue and class related issues (*See* dkt. 41-1, Interrogatories Nos. 4-5, 7-9, 19, 22-23; Requests to Produce Nos. 16-20, 22-23, 25-30, 32-33), also seek information that has yet to be discovered. In this case, discovery has proven to be challenging, and Plaintiff has been required to unravel a web of individuals and entities involved in the transmission of the calls at issue. Certainly, Plaintiff cannot be required to identify class members prior to her receipt of the documents and data, which identify the class members and the calls placed to the Classes. As previously stated, Plaintiff issued a subpoena directed to Five9, which she anticipates will reveal the call records at issue and the dialing system used to place the calls. Nevertheless, at this time, Plaintiff does not possess any further information that can be produced in response to the subject requests.

Finally, even if the Court disagrees and overrules the objections, it makes no difference. This is so because Plaintiff has provided complete responses to the requests based on ***currently available*** information. And noticeably absent from SunPath's motion is any explanation regarding what documents or information that it believes Plaintiff is withholding. *See Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, No. 5:13-CV-80, 2014 WL 12596397, at *4 (N.D.W.

---

[3] SunPath also filed its motion **one day** after the deposition of American Protection was completed and prior to either counsels' receipt of the transcript.

**JA182**

Va. Jan. 9, 2014) ("'the moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld,' and the Court 'cannot compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the producing party is withholding them.'") (citation omitted). Instead, SunPath states that Plaintiff should be required to state what records the responses are dependent upon and what steps are being taken to discovery such records. (Mot. at 6.) Plaintiff is unaware of any case (and SunPath cites to no case in support of this proposition), which requires counsel to provide or create litigation strategies and work product in response to a discovery request. In short, Plaintiff has provided complete responses based on the current information available to her. Should additional information become known, she will amend her responses as required by Rule 26(e).

Accordingly, the Court should decline to overrule Plaintiff's premature objections.

## B. Plaintiff has provided complete responses to Interrogatory Nos. 1-3.

Next, SunPath requests that the Court compel Plaintiff to provide complete responses to Interrogatory Nos. 1, 2, and 3. (Mot. at 7-8.) On November 11, 2022, Plaintiff supplemented her responses to each of these interrogatories. (*See* Ex. A.) Indeed, Plaintiff provided a breakdown of all fifty-four calls that are at issue (*id.*, pgs. 1-6), and she provided her contention and the facts that she is currently in possession of with respect to SunPath's liability (*id.*, pgs. 6-8). Had SunPath waited until November 11th (the date that Plaintiff anticipated serving supplemental responses), briefing regarding this issue could have been avoided. While SunPath may seek additional responses, it should be noted that no documents or information are being withheld and Defendant's request for further responses is moot. *See Acosta v. Med. Staffing of Am., LLC*, No. 2:18CV226, 2019 WL 6122016, at *5 (E.D. Va. Mar. 15, 2019) (finding that a motion to compel

7

**JA183**

is rendered moot where no documents or information is being withheld on the basis of an objection).

## C. Plaintiff has supplemented her response to Interrogatory No. 18 and her initial disclosures to include a computation of the damages sought.

SunPath also requests that Plaintiff be ordered to supplement her response to

Interrogatory No. 18 and her initial disclosures to provide a computation of damages sought.

(Mot. at 10.) Once again, Plaintiff already supplemented her responses and initial disclosures to

clarify the total damages that are currently being sought. (Ex. A, pgs. 8-9, and Supplemental

Initial Disclosures, attached hereto as Ex. C.) This request is likewise rendered moot.

## D. Plaintiff's prior settlement agreements are unrelated to the claims and defenses in this lawsuit.

Next, SunPath requests that the Court order Plaintiff to provide information and

documents relating to every settlement agreement that she has ever entered into relating to

telemarketing. (Mot. at 11-12.) To hear SunPath tell it, the settlement agreements may reveal an

"established business relationship" with SunPath; "releases or covenants not to sue" that may

apply to SunPath; and Plaintiff's "motive, state of mind, credibility, and fitness as a class

representative." (*Id.*) The requests are overbroad and irrelevant to the claims and defenses in this

case, and SunPath's argument should be rejected for the following reasons.

To start, SunPath misunderstands an established business relationship ("EBR") under the

VTPPA. Indeed, an EBR is not a term that is open to various interpretations. Rather, the VTPPA

defines an EBR as follows:

"Established business relationship" means a relationship between the called person
and the person on whose behalf the telephone solicitation call is being made or
initiated based on (i) the called person's purchase from, or transaction with, the
person on whose behalf the telephone solicitation call is being made or initiated
within the 18 months immediately preceding the date of the call or (ii) the called
person's inquiry or application regarding any property, good, or service offered by

8

the person on whose behalf the telephone solicitation call is being made or initiated
within the three months immediately preceding the date of the call.

Va. Code Ann. § 59.1-510 (West). Given that Plaintiff did not purchase a product or service from

SunPath within the 18 months immediately preceding the calls (or at any other time) the only

possible scenario that could form an EBR is a subscriber inquiry. To establish an EBR based on a

subscriber inquiry, a consumer must make an inquiry "about [a defendant's] products or

services." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio

Sept. 30, 2019).[4]

SunPath makes no attempt to explain how a settlement agreement could possibly form

the basis of an EBR (it can't). Rather, settlements are entered for the purposes of resolving

claims (not inquiring about a product or service). Likewise, the Court should not require Plaintiff

to disclose confidential settlement agreements so that SunPath can review them to determine, on

the off chance, whether one of the releases might cover SunPath.[5] As SunPath is aware, Plaintiff

has **never** purchased a vehicle service contract. As such, it is unclear what settlement could

possibly relate to SunPath's business. Additionally, SunPath has not asserted an affirmative

defense asserting that the claims were released. (*See* Dkt. 26, pg. 8.) Put simply, SunPath's

request to review every settlement agreement in the hopes of revealing an EBR or a release

represents an impermissible fishing expedition and should be denied. *See E.I. DuPont de*

*Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012) ("discovery should

not devolve into a fishing expedition for irrelevant or cumulative information which does not

advance that purpose").

---

[4] The *Charvat* case analyzes a substantially similar EBR definition in the content of the TCPA.
[5] SunPath takes issue with Plaintiff's reference to "other third parties" in response to discovery.
(Mot. at 12.) Yet, because SunPath has refused to identify the third parties that it contracts with
to conduct telemarketing, Plaintiff currently lacks information to identify the third parties.

Lastly, SunPath also fails to articulate how Plaintiff's prior confidential settlement agreements are relevant to the claims or defenses in this case. Instead, SunPath generally asserts that the agreements are relevant to motive, state of mind, credibility, or fitness as a class representative. But whether a plaintiff receives financial compensation from a prior suit (the result of virtually every settlement in any case), does not logically relate to an individual's motive, state of mind, credibility, or fitness as a class representative. And SunPath has not (and cannot) draw any connection between Plaintiff's receipt of financial compensation for past unrelated claims and the claims or defenses at issue in this case. Indeed, to be discoverable, information must be "relevant to any party's claim or defense" in this case. *See* Fed. R. Civ. P. 26(b)(1).

For these reasons, the Court should find that confidential settlement agreements are irrelevant to either parties' claims or defenses. Such a decision would be in line with the majority of courts that have considered this issue. *See Charvat v. Southard Corp.,* No. 2:18-CV-190, 2019 WL 13196991, at *2 (S.D. Ohio Feb. 13, 2019) ("the Court finds Plaintiff's personal finances, including income generated through TCPA settlements or awards, to be irrelevant to Southard's defenses. Southard has identified no case law or other authority suggesting that its defenses turn on Plaintiff's personal finances"); *Charvat v. Travel Servs.*, 110 F. Supp. 3d 894, 899 (N.D. Ill. 2015) (refusing to order the production of a TCPA litigant's past tax returns because they were not relevant to "his motivation for filing this action"); *Johnson v. Cap. One Servs., LLC*, No. 18-CV-62058, 2019 WL 5190788, at *2 (S.D. Fla. Oct. 15, 2019) (excluding defendant's prior TCPA litigation and settlements from evidence); *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-CV-433-OC-30PRL, 2020 WL 264696, at *4 (M.D. Fla. Jan. 17, 2020) (denying a request for prior TCPA settlements).

10

**E.      Plaintiff has provided complete responses to Requests for Admission Nos. 7, 8, and 16.**

Finally, SunPath closes by asking the Court to declare Requests for Admission Nos. 7, 8, and 16 admitted. (Mot. at 13.) On November 11, 2022, Plaintiff served supplemental responses to requests as issue, which further clarify why the requests cannot be fully answered at this time. (*See* Ex. A, pgs. 9-11.) Relevant here, discovery is ongoing, and subpoenas have been issued to locate the relevant calling records. Plaintiff has access to her AT&T account and past telephone bills that would reflect calls placed to her, including unknown calls. Given that Plaintiff has identified more than fifty unsolicited calls placed on behalf of SunPath, there is no reason to believe that additional unlawful calls were not placed. Moreover, American Protection's document production reveals that Plaintiff was not placed on its DNC list until April 19, 2022— nearly two years after the last known call at issue in this case. This further underscores the likelihood that additional unknown calls were placed that may be reflected in her AT&T records. As such, Plaintiff's responses represent her current knowledge: she may be in possession of evidence reflecting additional calls, but she doesn't know at this time. Accordingly, the Court should decline to deem the requests admitted.

**III.    CONCLUSION**

For the forgoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to compel further responses to discovery and order any additional relief that the Court deems necessary and just.

Dated: November 16, 2022                    **RUTH SMITH**, individually and on behalf of all
                                             others similarly situated,

                                             By:  */s/  Francis J. Driscoll, Jr.*
                                                     One of Plaintiff's Attorneys

11

**JA187**

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document

was served upon counsel of record by filing such papers via the Court's ECF system on

November 16, 2022.

*/s/ Francis J. Driscoll, Jr.*

12

**JA188**

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

<u>**PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**</u>
<u>**DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**</u>

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her supplemental responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

<u>**INTERROGATORIES**</u>

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

**JA190**

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. Plaintiff also states as follows:

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themself by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's vehicle service contracts.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at 10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls,

Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m., which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's vehicle service contracts.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's

3

vehicle service contracts.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themself by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's vehicle service contracts.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

4

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

5

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themself by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's vehicle service contracts.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

2.      If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, the calls

6

at issue were place for the purpose of soliciting Plaintiff to purchase SunPath's vehicle service contracts. (*See* SMITH000022-26.) As such, SunPath is a "seller" within the meaning of Va. Code Ann. § 59.1-514.1 (West). Accordingly, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

3. If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services, specifically its vehicle service contracts. Indeed, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") testified that it placed calls for the purpose of soliciting sales of SunPath's vehicle service contracts. Further, American Protection asserts that SunPath provided training to assist in selling its products and services. Further, Plaintiff directs SunPath's attention

7

to its contractual agreements with American Protection, which governs the relationship with

SunPath and reveals substantial control that SunPath asserts of American Protection's operations

and telemarketing. Additionally, Plaintiff also directed SunPath's attention to documents

produced, which reflect SunPath's appointment of American Protection as its agent in the State

of Florida for the purposes of selling automobile warranties. Plaintiff also asserts that SunPath is

liable for American Protection's actions by ratifying its acts and omissions, including accepting

the benefits of the telemarketing calls at issue.  Additionally, in the context of the VTPPA

claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West) as set

forth in response to Interrogatory No. 2 above. Otherwise, investigation continues, and Plaintiff

will supplement this response following the receipt of relevant documents and data.

     18.     If you contend that you suffered any compensable harm(s) as a result of the calls

or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of

such contention and identify the amount of damages you are seeking in this action for such

harm(s) and from which Defendant.

     ANSWER: Objection, this interrogatory is premature as discovery has just commenced.

This interrogatory also seeks information more readily in the possession, custody, or control of

Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without

waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in

violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

per call for the second call received in violation of the VTPPA, and $5000 per call for each

subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and

complete computation of damages at this time. Discovery is ongoing and Plaintiff will

supplement this response following receipt of relevant data from Defendant and any other

8

**JA197**

relevant sources regarding the number of calls made. Plaintiff further states that the legal harms

she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of

Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier,

interruption and loss of use and enjoyment of her telephone (including the related data, software,

and hardware components), and wear and tear on her cellphones.

SUPPLEMENTAL ANSWER: Objection, this interrogatory is premature as discovery

has just commenced. This interrogatory also seeks information more readily in the possession,

custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal

conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500

per call received in violation of the TCPA, $500 per call for the first call received in violation of

the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5,000

per call for each subsequent call received in violation of the VTPPA. Consequently, based on the

information currently available to Plaintiff, she seeks $81,000 in damages for violations of the

TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to

provide a full and complete computation of all class members' damages at this time. Discovery is

ongoing and Plaintiff will supplement this response following receipt of relevant data from

Defendant and any other relevant sources regarding the number of calls made. Plaintiff further

states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that

result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it

paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including

the related data, software, and hardware components), and wear and tear on her cellphones.

## **REQUESTS FOR ADMISSION**

7.      You are in possession of no written or audio evidence that SunPath or any party

allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020 because she has access to her cellular telephone bills, which may reflect such calls reflecting the full scope of all calls at issue in this case. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is

10

not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020 because she has access to her cellular telephone bills, which may reflect such calls once third parties identify the full scope of the calls. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

16.     During each of the calls described in Paragraphs 23-24 of your Complaint, the caller did not state that he or she was calling from or on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Deny. For every call that was answered or that left a voicemail message, the caller did not identify themself by first and last name. A complete breakdown of the calls at issue can be found in Plaintiff's supplemental response to Interrogatory No. 1.

Dated: November 11, 2022                    **RUTH SMITH**, individually and on behalf of all
                                            others similarly situated,

                                            By:  _/s/ Taylor T. Smith_
                                                    One of Plaintiff's Attorneys

                                            Francis J. Driscoll, Jr.
                                            (frank@driscolllawoffice.com)
                                            4669 South Blvd., Suite 107
                                            Virginia Beach, VA 23452
                                            Telephone: 757-321-0054
                                            Facsimile: 757-321-4020

                                            Patrick H. Peluso
                                            ppeluso@woodrowpeluso.com

11

**JA200**

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 11, 2022.

*/s/ Taylor T. Smith*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S RUTH SMITH'S VERIFICATION**

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing supplemental responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on  <u>11 / 11 / 2022</u> .

<u>                    </u>
Ruth Smith

**JA202**

1

Doc ID: d13333d7adf36dcaae1099a3e4ba595da0a17668

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

<u>**DECLARATION OF TAYLOR T. SMITH**</u>

I, Taylor T. Smith, declare as follows:

1.      I am an attorney with the law firm Woodrow & Peluso, LLC and counsel of record for Plaintiff Ruth Smith ("Plaintiff" or "Smith").

2.      On January 26, 2022, Plaintiff filed the instant action alleging wide-scale violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act") and the Virginia Telephone Privacy Protection Act ("VTPPA").

3.      On August 29, 2022, SunPath issued its first set of discovery requests directed to Plaintiff, including interrogatories, requests for admission, and requests for production. Plaintiff served her objections to the requests on September 13, 2022, and her responses on September 28, 2022, which included her responsive document production and recordings of calls placed on behalf of SunPath.

4.      On October 21, 2022, our office received a discovery dispute letter from SunPath's counsel, which included its perceived deficiencies with respect to thirty-three (33) of

1

Plaintiff's discovery responses and demanded that Plaintiff provide supplemental responses three (3) business days later, on October 26, 2022. (Dkt. 41-2.)

5.      After receiving the letter, Plaintiff and her counsel conducted a search for additional responsive documents, which were produced on October 27, 2022.

6.      Plaintiff's counsel also repeatedly informed SunPath's counsel that he would supplement her discovery responses. For one example, see dkt. 41-3, pg. 4.)

7.      On November 1, 2022, all parties were in attendance for the deposition of SunPath's third party telemarketer, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). After American Protection's representative ended the deposition early, Plaintiff's counsel informed SunPath's counsel that he would be available to confer regarding Plaintiff's discovery responses that afternoon. At this time, SunPath's counsel suggested that the parties confer on a later date.

8.      On November 3, 2022, the parties conferred regarding Plaintiff's discovery responses.  During the conferral, Plaintiff agreed to supplement her discovery responses and informed SunPath's counsel that the responses would be provided prior to Plaintiff's deposition. At that time, counsel estimated that the responses would be provided by November 11, 2022.

9.      On November 9, 2022, Plaintiff issued a subpoena directed to Five9, Inc., which was identified as one of the telephone service providers that was utilized by American Protection to place the calls at issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 16, 2022, in Denver, Colorado.

By:  _/s/ Taylor T. Smith_____

2

**JA205**

Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

3

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S FIRST SUPPLEMENTAL INITIAL DISCLOSURES**

Plaintiff Ruth Smith ("Smith" or "Plaintiff") submits the following supplemental Initial Rule 26(a)(1) Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

*I. Prefatory Statement*

Plaintiff's investigation in this action continues, and these supplemental disclosures reflect only the current status of her knowledge. Plaintiff reserves the right to supplement and/or amend these disclosures as additional information becomes known.

Rule 26(a)(1) does not require the production of any information or documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege or applicable doctrine with respect to all such information and documents. The inadvertent disclosure of any information or documents shall not constitute a waiver of any such privilege.

This Prefatory Statement is incorporated in its entirety into each of the following disclosures. It shall be deemed continuing as to each such disclosure, and it is not waived, or in any way limited, by the following disclosures.

1

**JA208**

## *II. Disclosures*

(A)     *The name and, if known, the address and telephone number of each individual likely to*
        *have discoverable information that the disclosing party may use to support its claims or*
        *defenses, unless solely for impeachment, identifying the subjects of the information.*

1.      <u>Ruth Smith</u>: Ms. Smith has knowledge of certain matters alleged in the
Complaint, including the circumstances under which Ms. Smith received the telemarketing calls,
her lack of providing any prior express written consent to Defendant, and related matters. Ms.
Smith may only be contacted through counsel, Woodrow & Peluso, LLC.

2.      <u>Defendant SunPath, Ltd. ("SunPath"), including agents, former agents,
employees, former employees, and records custodians of SunPath</u>: Such agents, employees, and
records custodians may have knowledge of certain matters alleged in the Complaint, including
SunPath's telemarketing practices, the telemarketing calls placed to Plaintiff and the Class,
SunPath's failure to obtain prior express written consent, SunPath's hiring of third-party
telemarketers, lead generators, or other third parties, and related matters. As such individuals are
all former or current employees or agents of the SunPath, SunPath is in a better position to
ascertain their phone numbers and other contact information. The names, addresses, and
telephone numbers of other agents, employees, and records custodians of SunPath are not known
to Plaintiff at this time.

3.      <u>Chukran Management Group, LLC d/b/a American Protection Corp. ("American
Protection"), including agents, former agents, employees, former employees, and records
custodians of American Protection</u>: Such agents, employees, and records custodians may have
knowledge of certain matters alleged in the Complaint, including Defendant's failure to obtain
prior express written consent, Defendant's procurement of Plaintiff's lead information, calls

placed on behalf of or for the benefit of Defendant, and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of American Protection are not known to Plaintiff at this time. American Protection's mailing address is 10627 Cocobolo Way, Boynton Beach, Florida 33437.

4.     <u>Third party contractors and service providers of Defendant</u>: Such contractors, including without limitation telemarketers, telephone number lead generators, and telephone service providers, may have knowledge of certain matters alleged in the Complaint, including but not limited to the facts surrounding the calls placed by Defendant, or were placed on Defendant's behalf or for its benefit, to Plaintiff and the other class members, including without limitation the manner by which the calls were placed and Plaintiff's lead information was obtained. Defendant is in a better position to ascertain the phone numbers and other contact information of such contractors.

5.     <u>Any expert witnesses on whose opinions Plaintiff will rely on to support her claims</u>. To date, Plaintiff has not yet retained an expert witness, but will supplement these disclosures as necessary.

(B)     *A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;*

Plaintiff has access to applicable records related to the calls placed by Defendant or by a third party acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant.

Plaintiff anticipates that a significant portion of discovery in this case will be obtained

from Defendant, and in particular via Defendant's records, servers, databases, and other electronic storage platforms. Plaintiff also anticipates that a significant portion of discovery will be obtained from third parties acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant. Plaintiff is not presently aware of the location of such databases, and the third parties have not been identified. Investigation continues.

(C)     *A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and*

The total amount of damages incurred by Plaintiff and the putative class members is unknown at this time. Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5,000 per call for each subsequent call received in violation of the VTPPA. Consequently, based on the information currently available to Plaintiff, she seeks $81,000 in damages for violations of the TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to provide a full and complete computation of all class members' damages at this time. Discovery is ongoing and Plaintiff will supplement her disclosures following the receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made.

(D)     *For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.*

4

**JA211**

Plaintiff does not have any policy of insurance related to this action.

Dated: November 11, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Taylor T. Smith_
        One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

5

**JA212**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 11, 2022.

*/s/ Taylor T. Smith*

6

**JA213**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

**DEFENDANT SUNPATH, LTD.'S REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES**

Defendant SunPath, Ltd., by counsel, hereby submits its Reply in Support of its Motion to Compel Plaintiff Ruth Smith to produce full and complete responses to SunPath's discrete discovery requests identified below.

**I.     PLAINTIFF'S PARTIAL SUPPLEMENTAL RESPONSES DO NOT RESOLVE THIS DISCOVERY DISPUTE.**

SunPath has been seeking basic facts about Plaintiff's own claims for months.  It is undisputed that SunPath never called her, so we must ascertain why she claims that she received dozens of calls whose "purpose," she claims, was to sell a SunPath product.  For most of the discovery period, Plaintiff essentially refused to provide any clarity beyond what was already in her Complaint.  SunPath was forced to file its motion to compel because Plaintiff's scheduled deposition would have been an exercise in futility, as SunPath was, and still is, without the material facts and evidence it is entitled to from Plaintiff to test her claims.  Meet-and-confer communications were lengthy but unproductive.  It was not until SunPath filed its Motion to

**JA214**

Compel that Plaintiff finally supplemented her responses, but those supplements raise far more questions than answers. [1]

As a threshold matter, Plaintiff's claims that "SunPath's motion to compel . . . fails to identify any discovery responses that are incomplete" and that "most of the 'issues' raised in SunPath's motion were resolved" are incorrect.  Pl.'s Resp. in Opp'n to SunPath's Mot. Compel ("Opp.") at 1, ECF No. 43.   For the reasons set forth in its motion, SunPath specifically requested Plaintiff be required to fully respond to Interrogatories 1, 2, 3, 4, 8, 9, 18, 21, 22, and 23, Document Requests 11, 14, 15, 16, 17, 19, 20. 22, 23, 28, 29, 32, and 33, and (if the Court does not deem them admitted) Requests for Admission 7, 8, and 16.   *See* Mem. Supp. Mot. Compel at 13, ECF No. 41.   In response, Plaintiff provided supplemental responses to only Interrogatories 1-3 and Requests for Admission 7, 8, and 16, none of which cure even the deficiencies noted with those discovery responses.   *See* Pl.'s Suppl. Disc. Resps. ("Supplemental Responses"), ECF No. 43-1.

For example, in her supplemental response to Interrogatory 1, Plaintiff now details 54 calls—with slight discrepancies from those listed in her Complaint—for which she claims to know the "purpose", even the various calls she did not answer, from a variety of phone numbers of unknown association, as well as the dates and times of the calls, and on some occasions even the names of who she talked to.   *See* Supplemental Responses at 3-6; Complaint ¶ 24, ECF No. 1 (listing different numbers of calls received on June 1, 2020 and June 4, 2020 stated in the

---

[1]      Indeed, Plaintiff did not meaningfully attempt to resolve these issues or respond in any way to SunPath's extensive attempts to elicit complete responses, beyond making unspecific assurances that she would endeavor to supplement her discovery responses at some point. *See*, *e.g.*, Email from Gregory Caffas Dated November 3, 2022, ECF No. 41-3 (memorializing counsel's meet-and-confer call in which Plaintiff's counsel represented he estimated he could provide some response to six of the 33 discovery responses that SunPath noted deficiencies with).

Supplemental Responses).  All of these calls were from 2020.  So how does she know all of *that*? And why did it take until November 11, 2022 to respond about calls from 2020?

As Plaintiff herself admits, it is certainly not from the third-party discovery she has taken in this case.  *See* Opp. at 5.  She has subpoenaed various phone companies, including Verizon, Lumen, and AT&T.  None of them have produced evidence corroborating her positions; to the contrary, some of the phone numbers appear to be assigned to a bank or an individual during the times at issue, none of which have any apparent connection to this case.  *See* Verizon Subpoena Resp., ECF No. 41-4 (identifying "FIRST CITIZENS BANCSHARES, INC." as the party associated with several phone numbers from which plaintiff alleges she received telemarketing calls at issue here); *see also* AT&T Subpoena Resp., attached hereto as **Exhibit 1** (attributing an individual named "Leslie Hall" as the party associated with one of the other calling phone numbers).  Nor did she learn about this litany of calls from her deposition of the non-party American Protection Corp., who confirmed its own subcontractors left Plaintiff two voicemails—but only to return *her call to them* to inquire about purchasing its products, creating an establish business relationship that potentially negates some or all of Plaintiff's claims.[2]

So we are still at a loss as to how she came to articulate these question-begging positions on November 11, 2022, but it is certainly not the third-party discovery she has taken thus far.  At most, the third-party deposition of American Protection Corp. may have delayed her ability to fully answer discovery requests surrounding those two identified calls, which she already had record of well before this deposition occurred in any case.  But she has fifty-two more calls for

---

[2]    *See* Excerpt from Deposition of American Protection Corp., ECF No. 41-5.  Plaintiff produced voicemail recordings of two calls made by apparent employees or agents of non-party American Protection Corp. following up after Plaintiff's initial inquiry, which were produced with her initial discovery responses on September 28, 2022, but still has not identified the dates, times, and caller ID information associated with those voicemails.

3

**JA216**

which she claims to know the "purpose" of the calls, but refuses to tell SunPath the basis for these claims.  She claims to have "access to her AT&T account and past telephone bills," Opp. at 11, but has never produced those documents, which presumably still would not account for these theories she is verifying in her supplemental discovery responses, because she did not answer many of the calls, and apparently still does not know why, for example, a number tied to a random bank or citizen of Florida, each of whom are strangers to SunPath, would be calling to pitch Plaintiff a SunPath product.

Indeed, Plaintiff's supplemental responses further discredit her repeated insistence that "no further documents or information are being withheld on the basis of [her] objections."  *See* Opp. at 2.  Unless she has a photographic memory, she must have contemporaneous notes of these calls from over two years ago for her to know the names of various people she spoke with. Where are her notes?[3]  Plaintiff also makes multiple references to voicemails related to the calls detailed in her supplemental response to Interrogatory 1 that allow her to discern the "purpose" of such calls, but has not provided the voicemails she appears to have, or any kind of transcription that would allow SunPath to examine the veracity of Plaintiff's contentions.  *See*, *e.g.*, Supplemental Responses at 4-5 (describing voicemails left by callers on June 1, 2020 and June 8, 2020).

Plaintiff's "Supplemental" Responses and Opposition therefore establish the following: SunPath's requests were not premature, and Plaintiff's claims that she was not withholding any responsive information are simply not true; her answers were just delayed, and are still insufficient.  Plaintiff also must have further evidence she is withholding—or if she has no

---

[3]    Such notes were also explicitly requested, and have not been produced.  *See* ECF No. 41-1 at 17-18 (Document Requests 7 and 8 seeking Plaintiff's diaries, logs, notes, journals, or written or recorded information related to the calls that form the basis of this lawsuit).

factual basis for divining the "purpose" of unanswered calls from unknown numbers, she should have to explain the epistemological basis for these seemingly blind-but-verified positions.  In short, Plaintiff's untimely supplements served the day after SunPath filed its motion have not cured any of the problems.

## II.      PLAINTIFF CANNOT STAND ON HER BOILERPLATE OBJECTIONS THAT THE MAJORITY OF SUNPATH'S REQUESTS REMAIN PREMATURE AT THIS LATE STAGE OF DISCOVERY.

Plaintiff's continued effort to delay her discovery obligations should be rejected. SunPath is not seeking some impermissible peek behind the curtain into Plaintiff's counsel's legal strategies.  It is simply trying to root out the improper excuses Plaintiff has offered to avoid her discovery obligations, and her claim that essentially all of SunPath's discovery requests are "premature" is one such improper, boilerplate excuse.  *See Brown v. Experian Info. Sols., Inc.*, Civil Action No. 3:16cv670, 2017 U.S. Dist. LEXIS 234931, at *5 (E.D. Va. Apr. 17, 2017) (citing *Buskirk v. Wiles*, No. 15cv3503, 2016 U.S. Dist. LEXIS 168081, at *2 (S.D.W. Va. Dec. 6, 2016) (noting that objections must be stated with specificity, with the underlying basis for the objection, with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable")); *see also Mey v. All Access Telecom, Inc.*, CIVIL ACTION NO.: 5:19CV237, 2022 U.S. Dist. LEXIS 108993, at *4-5 (N.D.W. Va. May 4, 2022) ("Boilerplate objections to discovery requests are highly disfavored in this district and throughout the Fourth Circuit, and the failure to state objections with specificity may be regarded as a waiver of those objections.") (internal citations omitted).

Beyond the facial insufficiency of Plaintiff's boilerplate "premature" objections, her claim that she is not withholding responsive information on this basis is also clearly false.

Plaintiff's supplemental responses address only a fraction of the requests SunPath noted deficiencies with.  *See generally* SunPath's October 21, 2022 meet-and-confer correspondence, ECF No. 41-2.  For example, Plaintiff has not provided any supplement at all to cure the deficiencies with her response to Interrogatories 4, 8, or 9, which turn in part on information Plaintiff clearly possesses regarding the calls she describes in her supplemental response to Interrogatory 1.  *See id.* at 4-5.  And as noted above, even her scant supplemental interrogatory responses raise more questions than answers.

And Plaintiff's argument that she is not required to provide any information at all in response to contention interrogatories fails, especially at this late stage of discovery.  Indeed, the very authority that Plaintiff relies on disproves her point.  In *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-cv-01508, 2019 U.S. Dist. LEXIS 118738 (S.D.W. Va. July 17, 2019), which Plaintiff cites at page 5 of her opposition, the Court plainly ruled:

> [T]o the extent CNE can presently respond to Plaintiffs' contention interrogatories, CNE should do so.  Because CNE has an ongoing to [sic] duty to timely supplement and correct discovery answers as additional information becomes available, CNE should not wait . . . before providing a response to the contention interrogatories, if information is currently available[.]

*Id.* at *4.  Likewise, Plaintiff's reliance on *Monsanto* to claim that "[c]ontention interrogatories need not be fully answered until discovery is near completion" shows the two-fold deficiencies with her responses.  *See* Opp. at 5 (citing *Monsanto Co v. E.I. Du Pont De Nemours & Co.*, Case No.4:09CV00686 ERW, 2012 U.S. Dist. LEXIS 1277, at *2 (E.D. Mo. Jan. 5, 2012)).

First, although contention interrogatories may not be fully answered until information becomes available, Plaintiff must respond with what information she has when her responses are due.  And at this late stage of discovery, which ends on December 9, 2022, Plaintiff cannot rely

**JA219**

on claims that such interrogatories are premature without a far more specific basis.  *See*, *e.g.*, *United States v. Vision Quest Indus., Inc.*, No. 2:21-cv-05197-FLA-PDx, 2022 U.S. Dist. LEXIS 20105, at \*14-15 (C.D. Cal. Feb. 3, 2022) (overruling party's objections to contention interrogatories on the grounds that they were premature in February when discovery closed in August); *CSX Transp., Inc. v. Peirce*, Civil Action No. 5:05-cv-202, 2012 U.S. Dist. LEXIS 201420, at \*16 (N.D.W. Va. May 23, 2012) (finding contention interrogatories were not premature after five of eleven months of the discovery period had expired).

Finally, Plaintiff's attempt to shift the burden to SunPath to effectively argue that SunPath must tell Plaintiff what information it believes she is withholding before she is required to provide complete answers is simply not how *discovery* works.  *See* Opp. at 6-7.  If we already knew it, it would not be called "discovery."  It is incumbent on Plaintiff to comply with her obligations to provide complete discovery responses, and *she* has the burden of showing why she has not complied with those obligations.  *All Access,* 2022 U.S. Dist. LEXIS 108993, at \*4 ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." (internal citation omitted)).[4]

Plaintiff's continued reliance on these boilerplate objections, including in her supplemental responses, indicates that she still intends to provide additional responses even at this late stage of discovery.  Yet SunPath is still left guessing as to what that might be, or when it can expect Plaintiff to provide it.  As requested in SunPath's initial motion, Plaintiff should at the very least specify what records Plaintiff's responses are dependent upon, and what steps are being taken to discover such records, to support the basis for any claim that a request remains

---

[4]     And in any case, SunPath conferred at length with Plaintiff regarding the deficiencies with Plaintiff's answers, to no avail.  *See* Meet-and-confer correspondences, ECF Nos. 41-2 and 41-3.

premature.  But, again, it is difficult to conceive how Plaintiff could have provided her original or supplemental answers without evidence that she is withholding—whether it be her own notes, call records, recordings, or otherwise.  Accordingly, SunPath requests that the Court strike Plaintiff's objections that SunPath's requests are "premature," namely to Interrogatories 1, 2, 3, 4, 8, 9, 18, 22, and 23, as well as Document Requests 15, 16, 17, 19, 20, 22, 23, 28, 29, 32, and 33, and order her to provide full and complete responses to the fullest extent she can.

## III.   PLAINTIFF'S RESPONSES TO INTERROGATORIES 1, 2, AND 3 REMAIN DEFICIENT.

Contrary to Plaintiff's representations, her insufficient supplemental discovery responses do not cure the deficiencies with her responses to Interrogatories 1-3.  *See* Opp. at 7.  As discussed at length above, her supplemental response to Interrogatory 1 raises many more questions than answers. With respect to Interrogatories 2 and 3, Plaintiff's supplemental answers remain deficient in that they fail to specify whether she purports to allege SunPath is either directly or vicariously liable for any specific call, and her evidence to support either.  *See* Supplemental Responses at 6-8.  If anything, these responses further muddle the factual record— Plaintiff cites her response to Interrogatory 2 blindly alleging that SunPath is directly liable for the calls at issue (she does not specify which calls) as part of the basis for her supplemental response to Interrogatory 3 that SunPath is *also* vicariously liable for purportedly the same unspecified calls.   These parallel contentions regarding liability, without any supporting evidence, defy logic.  How could SunPath be both principal and agent, or simultaneously be directly and vicariously liable?  These incoherent positions cannot satisfy Plaintiff's discovery duties.

And the remainder of her supplemental responses to these interrogatories, which still do not provide a response as to *which calls* Plaintiff is alleging SunPath is either directly or

**JA221**

vicariously liable for, continue to raise contentions without providing factual support. Plaintiff states in her supplemental response to Interrogatory 3 that "Plaintiff also asserts that SunPath is liable for American Protection's actions by ratifying its acts and omissions, including accepting the benefits of the telemarketing calls at issue." Supplemental Responses at 8. This begs the questions: which calls? What benefits? What evidence is Plaintiff relying on for these assertions? SunPath first met Ms. Smith when her lawyer demanded money; it had no idea she existed before receiving her TCPA demand. Respectfully, not what one would call a "benefit." The purpose of discovery is for parties to provide the factual basis for their contentions, not to raise additional unsupported conclusions.

Plaintiff's answers must specify which calls she claims SunPath is vicariously liable for rather than directly liable, and provide facts that support her contentions.

## IV. PLAINTIFF HAS NOT PROVIDED AN ADEQUATE RESPONSE TO INTERROGATORY 18 OR SUPPLEMENT TO HER INITIAL DISCLOSURES REGARDING DAMAGES.

Plaintiff's response to Interrogatory 18 and her supplemental initial disclosures remain inadequate. It is insufficient to simply list lump-sum amounts. A sufficient response must include the calculation showing how Plaintiff arrived at those sums—i.e., a showing of how Plaintiff applies the separate damage provisions to each call. Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), a party is required to provide "a *computation* of each category of damages" she claims as part of her initial disclosures. *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, Case No.: 2:18-cv-320, 2020 U.S. Dist. LEXIS 219825, at *11 (E.D. Va. Oct. 28, 2020) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)) (emphasis added); *see also Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 3:19-CV-00515-KDB-DSC, 2022 U.S. Dist. LEXIS 53433, at *24 (W.D.N.C. Mar. 24, 2022) ("[Counter-plaintiff]'s failure to quantify those damages claims

during discovery dooms its argument that supplementation of its initial disclosures was unnecessary."); *Advanced Training Grp. Worldwide, Inc. v. ProActive Techs. Inc.*, Civil Action No. 19-cv-505, 2020 U.S. Dist. LEXIS 141855, at *11-13 (E.D. Va. Aug. 7, 2020) ("For a party to satisfy its obligations under Rule 26, a party must provide a computation of its damages.").  Just like in math class, Plaintiffs have to "show their work."

Plaintiff provides no such calculation; instead, she only cites the statutory damage provisions of the relevant statute and lists a lump sum.  Plaintiff cannot simply be rubber-stamping all the damage provisions she cites for each and every one of the still speculatively numbered calls now listed in the supplemental response to Interrogatory 1 (if that is indeed what Plaintiff's response does, as the lack of any calculation as required by Rule 26 still leaves SunPath to guess).  As an example of why this is not a sufficient response, it appears that many of the calls Plaintiff identifies in her supplemental response to Interrogatory 1 went unanswered, which at least begs the question of how Plaintiff could include those calls in a calculation of damages for her VTPPA claims that the callers failed to properly identify themselves (or why she would have any idea what technology under Section 227(b) of the TCPA would have been used to place an unanswered call).  In fact, Plaintiff's supplemental response to RFA 16 indicates that calls that went unanswered should not be included for any claims alleging the caller failed to properly identify him or herself.  *See* Supplemental Responses at 12.

Yet Plaintiff's current discovery responses make it unclear whether these calls are included in such damage calculations.  Plaintiff's supplemental disclosures are insufficient because the basis for her damage calculations remains a mystery.  *See Valencell, Inc. v. Apple Inc.*, No. 5:16-CV-1-D, 2017 U.S. Dist. LEXIS 58034, at *4 (E.D.N.C. Apr. 17, 2017) (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)) ("It is

inconceivable that Valencell does not now have more responsive information regarding its damages claim than it has provided in its prior responses to Interrogatory No. 6, which gave very little, if any, insight into its damages claim."). Plaintiff's response to Interrogatory 18 and her initial disclosures remain deficient in this regard and must be supplemented.

## V.   PLAINTIFF'S BOILERPLATE OBJECTIONS TO INTERROGATORY 21 AND DOCUMENT REQUESTS 11 AND 14 ARE IMPROPER.

Plaintiff's claim that "confidential settlement agreements are irrelevant" is incorrect and certainly not supported by "the majority of courts," or even any authority Plaintiff can cite to in the Fourth Circuit. *See* Opp. at 10. To the contrary, regarding settlement agreements, "the Fourth Circuit has not imposed a settlement privilege with respect to discovery. . . [rather,] courts in this circuit have found that relevance[,] not admissibility, is the appropriate inquiry with regard to whether or not the information sought . . . is discoverable." *CX Reinsurance Co. Ltd. v. B&R Mgmt., Inc.*, Civil Case No. ELH-15-3364, 2017 U.S. Dist. LEXIS 155011, at *11 (D. Md. Sept. 20, 2017) (internal citations and quotations omitted); *see also Selective Way Ins. Co. v. Schulle*, Civil Action No. 3:13CV00040, 2014 U.S. Dist. LEXIS 16801, at *5-6 (W.D. Va. Feb. 5, 2014) (allowing the discovery of relevant settlement information); *Elkins v. Monumental Life Ins. Co.*, Case No. 2:08-cv-01403, 2009 U.S. Dist. LEXIS 149408, at *10 (S.D. W. Va. Aug. 13, 2009) (information regarding related claims, including "settlement practices," is discoverable within the scope of Rule 26); *Kaplan Cos., Inc. v. Peoplesoft USA, Inc.*, 1:03CV1014, 2006 U.S. Dist. LEXIS 117263, at *2 (M.D.N.C. Mar. 15, 2006) ("the public policy favoring settlements is not the same as saying that such agreements are immune from disclosure").[5]

---

[5] *See also* Memo. in Sup. of Mot. to Compel at 11-12; *Physicians Healthsource, Inc. v. Masimo Corp.*, 8:14-00001 DOC (ADSx), 2019 U.S. Dist. LEXIS 230973, at *3 (C.D. Cal. July 30, 2019) (compelling interrogatory responses relating to settlement agreements); *Parker Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018) ("Courts may even allow the

SunPath reiterates that the objections Plaintiff lodged to Interrogatory 21 and Document Requests 11 and 14 remain unadorned boilerplate objections that each request is "overbroad, unduly burdensome, and beyond the scope of discoverable information," which remain facially deficient. *Buskirk*, 2016 U.S. Dist. LEXIS 168081, at *3-4 (noting that objections must be stated with specificity, with the underlying basis for the objection, and with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable") (citation omitted). Plaintiff's arguments therefore fail at the outset, because there is no dispute that she is indeed withholding responsive information, and has not met her burden to show why withholding this information is appropriate.

The remainder of Plaintiff's novel arguments that are notably absent from her objections contain a series of misstatements, her arguments relating to the potential existence of an established business relationship chief among them. An established business relationship under either the TCPA or VTPPA can be created via any transaction *or* inquiry with a party, including a party allegedly acting "on behalf of" the party whose products are being offered. *See* Va. Code § 59.1-510; 47 C.F.R. § 64.1200(f)(5). Considering that Plaintiff's theory of SunPath's liability at least in part alleges that SunPath is vicariously liable for the calling practices of third parties, Plaintiff's interactions with third parties that make telemarketing calls, including entering into settlement agreements with them, are undoubtedly relevant. Additionally, the execution of a

discovery of information contained in and related to confidential settlement agreements."); *Quilez-Velar v. Ox Bodies, Inc.*, CIV. NO. 12-1780(SCC), 2014 U.S. Dist. LEXIS 124617, at *5-6 (D.P.R. Sept. 4, 2014) (collecting cases supporting that settlement-related information is discoverable pursuant to Rule 26); *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 96 Civ. 2978 (RWS), 2000 U.S. Dist. LEXIS 3633, at *7 (S.D.N.Y. Feb. 8, 2000) ("Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Rule 26(b)(1)], and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement.") (collecting cases).

settlement agreement is certainly a transaction that could create an established business relationship.  Moreover, Plaintiff's unsupported assertion that "SunPath is aware [that] Plaintiff has **never** purchased a vehicle service contract," Opp. at 9, is both incorrect and unpersuasive. Even if Plaintiff has not purchased such a contract, any relevant inquiries regarding vehicle service contracts—like her pre-suit settlement inquiry to SunPath in this case, and subsequently filing suit against SunPath here—and settlement agreements that may have resulted from such interactions would undoubtedly be relevant to this matter.[6]

To further clarify, any third-party company authorized to sell SunPath's products does so non-exclusively, such that it is offering SunPath's competitors' products alongside SunPath's. *See* Declaration of Andrew Garcia ¶¶ 9-12, ECF No. 11-1.  Therefore, there is a distinct possibility that one or more of the settlement agreements Ms. Smith is withholding may be with a party that also sells or sold SunPath products, even if the dispute that led to such an agreement did not arise from calls associated with the sale SunPath product.  Settlement agreements in this space routinely identify and release the seller's "administrators," such as SunPath.  And as it pertains to Ms. Smith's fitness as a potential class representative, a settlement agreement releasing a company whose actions she may claim SunPath is vicariously liable for could preclude her from acting as a class representative altogether.  For these reasons and as set forth in SunPath's initial motion, Plaintiff should be compelled to fully respond to Interrogatory 21 and Document Requests 11 and 14.

---

[6]     And even the authority Plaintiff relies on supports, at minimum, she should be required to identify the number of settlements she has entered into.  See Opp. at 10 (citing *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 244871, at *6 (S.D. Ohio Feb. 13, 2019)).  The *Southard* court found that the plaintiff in that case was required to identify the number of relevant settlements, and the only basis for not compelling more complete disclosures of that plaintiff's settlement history was his sufficient objections regarding undue burden, which Plaintiff has not lodged here.

## VI.     PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION 7, 8, AND 16 SHOULD BE DEEMED ADMISSIONS.

Plaintiff's supplemental responses to Requests for Admission 7, 8, and 16 remain unresponsive. The continued reliance on the non-answer indicating that Ms. Smith can neither admit or deny what evidence she possesses to answer was insufficient when these responses were initially served, and is even less acceptable now that we are three weeks away from the close of discovery.  Per Rule 36(a)(3) of the Federal Rules of Civil Procedure, these responses should be deemed admitted for failure to provide a timely response.  Alternatively, Plaintiff should at the very least be compelled to provide sufficient answers to these requests pursuant to Rule 36(a)(6).

## VII.    CONCLUSION

WHEREFORE, Defendant SunPath requests that this Court grant the relief sought in SunPath's Motion to Compel Plaintiff's Discovery Responses.


Dated: November 17, 2022                    Respectfully submitted,

                                            SUNPATH, LTD.

                                            By Counsel


                                            /s/ *Gregory M. Caffas*
                                            Gregory M. Caffas (VSB No. 92142)
                                            Mitchell N. Roth (VSB No. 35863)
                                            ROTH JACKSON
                                            8200 Greensboro Drive, Suite 820
                                            McLean, VA 22314
                                            (703) 485-3535
                                            (703) 485-3525 (fax)
                                            gcaffas@rothjackson.com
                                            mroth@rothjackson.com

**JA227**

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*


## CERTIFICATE OF SERVICE

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Reply in Support of its Motion to Compel Plaintiff's Discovery Responses to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on November 17, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

3552771
10/28/2022

 AT&T

## WIRELESS
## SUBSCRIBER INFORMATION

523029075717

### Financial Liable Party

| | |
|---|---|
| **Name:** | LESLIE HALL |
| **Credit Address:** | 20 NEEDLES DR, OCALA, FL 34482 |

| | | | |
|---|---|---|---|
| **Customer Since:** | 02/02/2005 | | |
| **Photo ID Type:** | | **Photo ID State:** | |
| **Photo ID Number:** | | | |
| **DOB:** | | **SSN/TaxID/FEIN:** | |

| | | | |
|---|---|---|---|
| **Contact Name:** | | | |
| **Contact Home Phone:** | | **Contact Work Phone:** | |
| **Contact Home Email:** | BLCTIE@AOL.COM | **Contact Work Email:** | |

### Billing Party

| | | | |
|---|---|---|---|
| **Account Number:** | 523029075717 | | |
| **Name:** | LESLIE HALL | | |
| **Billing Address:** | 20 NEEDLES DR, OCALA, FL 34482 | | |
| **Account Status:** | Active | **Billing Cycle:** | |

### User Information

| | | | |
|---|---|---|---|
| **MSISDN:** | (352) 209-2321 | **IMSI:** | |
| **MSISDN Active:** | 02/02/2005 - Current | | |
| **Name:** | LESLIE HALL | | |
| **User Address:** | 20 NEEDLES DR, OCALA, FL 34482 | | |
| **Service Start Date:** | 02/02/2005 | **Dealer Info:** | |
| **Payment Type:** | | | |
| **Contact Name:** | | | |
| **Contact Home Phone:** | | **Contact Work Phone:** | |
| **Contact Home Email:** | JFHLPH@AOL.COM | **Contact Work Email:** | |

### Status Change History

| Status Change Reason | Status Change Date |
|---|---|
| | |

### AT&T PROPRIETARY

The information contained here is for use by authorized person only and
is not for general distribution.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| RUTH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22cv81 (LMB/WEF) |
| | ) | |
| SUNPATH, LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### ORDER

This matter is before the Court on Defendant's Motion to Compel Plaintiff's discovery responses.  (Dkt. 40.)  The Motion was fully briefed, and the Court heard argument of counsel on November 18, 2022.

For reasons stated from the bench, and in accord with specific rulings and instructions thereto, it is hereby

**ORDERED** that Defendant's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**.

**ENTERED** this 18th day of November, 2022.


_William E. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia

**JA230**

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                     ALEXANDRIA DIVISION


 3    --------------------------x
      RUTH SMITH,                  :      Civil Action No.:
 4                                 :      1:22-cv-81
                  Plaintiff,       :
 5        versus                   :
                                   :      Friday, October 14, 2022
 6    SUNPATH, LTD.,               :
                                   :
 7                  Defendant.     :
      --------------------------x
 8
           The above-entitled motion to amend was heard before
 9    the Honorable William F. Fitzpatrick, United States
      Magistrate Judge.  This proceeding commenced at 10:11 a.m.
10
                    A P P E A R A N C E S:
11
      FOR THE PLAINTIFF:      PATRICK PELUSO, ESQUIRE
12                            WOODROW & PELUSO, LLC
                              3900 E. Mexico Avenue
13                            Suite 300
                              Denver, Colorado  80210
14                            (720) 213-0676

15    FOR THE DEFENDANT:      GREGORY CAFFAS, ESQUIRE
                              ROTH JACKSON GIBBONS CONDLIN, PLC
16                            8200 Greensboro Drive
                              Suite 820
17                            McLean, Virginia  22102
                              (703) 485-3533
18
      COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
19                            Official Court Reporter
                              United States District Court
20                            401 Courthouse Square
                              Alexandria, Virginia  22314
21                            (571) 298-1649
                              S.AustinReporting@gmail.com
22
          (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
23        TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)

24

25
                                                            1
```

```
 1                   P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Smith v. SunPath, Ltd., Case
 3   1:22-cv-81.
 4            Counsel, please note your appearances for the
 5   record.
 6            THE COURT:  First for the plaintiff.
 7            MR. PELUSO:  Good morning, Your Honor.
 8   Patrick Peluso appearing on behalf of the plaintiff in the
 9   alleged class.
10            THE COURT:  All right.  Mr. Peluso, how are you?
11            MR. PELUSO:  I am all right, Your Honor.  How are
12   you?
13            THE COURT:  All right.
14            And for defendant.
15            MR. CAFFAS:  Good morning, Your Honor.
16   Gregory Caffas on behalf of defendant, SunPath, Limited.
17            THE COURT:  All right.  Mr. Caffas, how are you?
18            The only thing I would ask you all is --
19   everything is being recorded.  It's easier if you step to
20   the podium as you speak just so the recording device makes
21   sure we pick everything up.
22            All right.  So this is -- this is on plaintiff's
23   motion to amend the pretrial order with respect to
24   deadlines.  I've read your motion, I've read the opposition.
25            Is there anything that you would like to add to
```

2

```
 1  this, Mr. Peluso?

 2         MR. PELUSO:  Your Honor, the only thing I would

 3  say is -- I conferred with Mr. Caffas this morning.  I,

 4  frankly, do see his point regarding the quick turnaround

 5  between the rebuttal expert disclosure and the defendant's

 6  opposition to class certification.  Under our schedule, it

 7  will only afford him roughly five days or seven days,

 8  something like that.  So I do agree that that's too quick of

 9  a turnaround, so would slightly amend our proposed schedule

10  to afford him some more time.

11         But the gist of it, Your Honor, is, you know, this

12  is a case that has a fairly decent amount of third-party

13  discovery to be taken, and we just need more time to chase

14  that information down.  I have no opposition to the

15  defendant, you know, having more than a five-day turnaround

16  between rebuttal experts and their opposition to class

17  certification.  But the fact of discovery cutoff of roughly

18  a month from now just doesn't give us enough time.

19         THE COURT:  So it's a bit more than that.  What is

20  it, December 9th?

21         MR. PELUSO:  Yeah, December 9th.  But I believe

22  the defendant's proposed schedule actually cuts that to

23  November 15th.

24         THE COURT:  All right.  Well, tell me, what -- one

25  of the things that I can almost assure you would be
```

                                                        3

```
 1    important in Judge Brinkema -- and in situations like this,

 2    you know, all the judges sort of lean on a little bit is

 3    what's been done up until now.  Right.  The initial

 4    scheduling order was entered on August 5th.  At that point,

 5    the parties can begin their discovery efforts in earnest.

 6              You know, I have a little bit of a flavor from

 7    your submission what you've been doing, but one of the

 8    issues the Courts look at is how diligently have the parties

 9    really been trying.  You know, are there insurmountable

10    obstacles?  If so, what are they?  What have they been doing

11    to try to resolve those issues?

12              So can you give me a little bit of a sense of your

13    discovery efforts up until now and what additional discovery

14    efforts you foresee in the future.

15              MR. PELUSO:  Yes, Your Honor.  So I believe within

16    three weeks of that initial scheduling order being entered,

17    we served interrogatories, requests for production on the

18    defendant.  We also served a subpoena on this key third

19    party.  And, frankly, we were hoping to take the deposition

20    a couple of weeks ago.  It was only that third party's

21    statement that, you know, they were unavailable that date

22    and they're only available sometime in November, which is

23    causing this delay.

24              So I feel like we've been diligent in serving our

25    request and, you know, serving the subpoena and trying to
```

<span style="float:right">4</span>

1    get this all scheduled.  It's just sort of a scheduling

2    issue with this third party that's causing the delay.

3            THE COURT:  What additional discovery are you

4    looking at over the next stretch?

5            MR. PELUSO:  So, based on the initial responses

6    that we've received from this key third party, we've served

7    two additional subpoenas.  Frankly, I'm not sure how

8    plausible the initial statements are.  Essentially this

9    third party is trying to say, at least in emails to us, that

10   they had no involvement in this and sort of passed the buck

11   on to another third party that has a similar-sounding name.

12           So we served a subpoena on that third party and

13   then also on Verizon, who's the telephone service provider,

14   for any additional information they may have.  But it's

15   unclear until we actually take this deposition who else we

16   may need to go speak to.

17           THE COURT:  All right.  Okay.  Is there anything

18   else?

19           MR. PELUSO:  No.  That's it, Your Honor.

20           THE COURT:  All right.

21           MR. PELUSO:  Thank you.

22           THE COURT:  Mr. Caffas, is there anything else you

23   want to add?

24           MR. CAFFAS:  Briefly, Your Honor.

25           Your Honor, I'd first just like to agree with what

                                                            5

1    Mr. Peluso was saying about the timeline of some of the

2    expert rebuttal reporting and the class certification

3    briefing.  As it stands, it is a bit more than five days.  I

4    think it's a turnaround of about eight days.  It would be

5    between -- January 27th is the deadline for rebuttal expert

6    disclosures, and the defendant's opposition to class

7    certification briefing, which would likely -- very much

8    likely be dependent on some of the content of that expert

9    disclosure due February 3rd.

10           So I think, at the very least, defendant would be

11   proposing that the opposition to class certification brief

12   be set back two weeks, maybe.  And then, obviously, in turn,

13   the plaintiff would be afforded another few weeks for their

14   reply brief in support of class certification.

15           With respect to Mr. Peluso's statements about the

16   additional efforts needed to uncover information about these

17   third parties, it's unclear to SunPath what plaintiff

18   expects to find, or that that will even be relevant or then

19   will, in turn, just have us back here and requesting another

20   extension indefinitely.

21           THE COURT:  That's not going to happen.

22           MR. CAFFAS:  Right.

23           THE COURT:  Not here.

24           MR. CAFFAS:  That was our concern.

25           THE COURT:  Not in this court.

6

1          MR. CAFFAS:  That was our concern as well.

2          So, to the extent that we had suggested, in fact,

3    a slightly more expedited cutoff to the fact -- excuse me,

4    the fact discovery deadline, as was in our opposition brief,

5    we were not fully aware of the issues that plaintiff had

6    foreseen, but that was in keeping with what we foresaw,

7    which, at the time, and to the extent that we're aware,

8    still just concerns a single third-party deposition, which

9    should be taken in November.  In our minds, a November 15th

10   briefing schedule was enough to -- sorry, fact discovery

11   cutoff was enough to allow for that single third-party

12   deposition.

13         THE COURT:  All right.  Thank you.

14         The plaintiff's motion is denied.  It's denied

15   without prejudice.  What we're going to do is this, I'm not

16   convinced that we can't continue to push forward on the

17   deadlines that we have.

18         The -- one of the things that we do and that's in

19   the 16(b) order is the Court makes itself available to the

20   parties on a week turnaround.  Right.  If there is -- if

21   there is a hurdle, if there is a problem that you all can't

22   meet and confer about or that you have a recalcitrant

23   witness who doesn't want to sit for a deposition, from

24   Friday to Friday, it will be resolved within seven days.

25   Right.  That's the relationship that we have with the bar.

7

1    Right.

2           And in exchange for keeping cases moving and

3    keeping cases moving efficiently, the Court makes itself

4    available on a seven-day turnaround to make sure that there

5    are no obstacles so that attorneys can, efficiently and

6    effectively, prosecute their case or properly defend their

7    case.

8           So, if you have a -- if you can't meet and confer

9    with this party down in -- was it in Florida who you're

10   seeking the deposition?

11          MR. PELUSO:  That's right, Your Honor.

12          THE COURT:  Then, you know, do your best to find a

13   date, find a date as soon as possible.  If they're being

14   obstructionist, file a motion and serve them, and we will

15   get it resolved.  Because the -- you know, it's not fair to

16   kind of hold you to these deadlines but not give you a

17   mechanism to gather the discovery that you need in order to

18   figure out what's best for you and your clients moving

19   forward.  But, at this point, I'm not convinced that we have

20   to alter the discovery deadlines.

21          If, however, you get to -- you know, discovery

22   cutoff is December 9th.  I would assume -- and this is just

23   how things work in this court, not me personally, but in the

24   Eastern District of Virginia in the Alexandria Division, the

25   judges are very set on enforcing an efficient discovery

                                                            8

```
1    process and holding to these deadlines.

2           I would assume, going forward, that that

3    December 9th deadline is a hard date.  But, if you continue

4    to push forward and you continue to prosecute this, this

5    cause of action as efficiently as you can and you get

6    towards the end of November and there are obstacles that are

7    going to prevent you from getting all the discovery that

8    you're entitled to, at that point, you can file a motion,

9    and we'll come back, and we'll sit down, and we'll go

10   through exactly where you are and what you need to do.

11          But one of the first things that -- whether it's

12   me or whether it's Judge Brinkema, one of the first things

13   that any of the judges are going to ask are, Number 1, what

14   have you been doing up until this point?  I can tell you,

15   there's oftentimes one position that's taken by the Court if

16   attorneys have been diligently working towards pushing the

17   case forward; and there's a different position oftentimes is

18   taken where they haven't done much and they're coming up on

19   the deadline and they need an extension from there.  That's

20   just -- that's the culture and the general practice of the

21   judges here.

22          So -- but, at this point, I don't know of any

23   reason why we can't stick to the deadlines currently

24   imposed.  Again, if you have -- if there are issues that you

25   can't resolve and you're worried because I have this
```

9

```
 1   December 9 deadline, you know, file a motion.  We'll get you

 2   heard by me or by another judge, if necessary, by that --

 3   you know, within a week.  And so we'll do our best to kind

 4   of put you on a path where you can meet these deadlines.

 5           I think the idea being, you know, by that point in

 6   time, you should be able to have enough discovery to the

 7   point where you're in a position where you can make an

 8   informed decision about whether it is appropriate to seek

 9   class certification, or whether it's not appropriate to seek

10   class certification.  And, at that point, I think we can

11   have a larger -- I mean, discovery will be closed, you'll

12   have the information you need, and, at that point, we'll be

13   in a position to figure out, based on argument of counsel,

14   representation of counsel, what the path forward is there.

15   How much time you would need to file, how much response time

16   you would need.  But, at this point, I think it's a little

17   bit putting the cart before the horse.

18           So, I am going to deny the motion today.  I'm

19   going to deny it without prejudice, giving you the

20   opportunity again if, you know, depending on where the

21   parties are certainly by the end of November.  If things

22   really change, maybe the middle of November.  And you can

23   file another motion at that point, again, with a week's

24   turnaround.  And if there's a case to be made, you can make

25   it at that point.
                                                            10
```

```
1              Does that make sense?

2              MR. PELUSO:  It does, Your Honor.

3              MR. CAFFAS:  Yes, Your Honor.

4              THE COURT:  Okay.  Are there -- do you see any

5    insurmountable hurdles with that approach or with that --

6    you know, that path forward?

7              MR. PELUSO:  No, Your Honor.

8              THE COURT:  Okay.  All right.  Great.  All right.

9              Thank you guys very much.  And good luck to both

10   of you.

11             MR. PELUSO:  I appreciate it.

12             MR. CAFFAS:  Thank you, Your Honor.

13                (Proceedings adjourned at 10:24 a.m.)

14             ---------------------------------

15   I certify that the foregoing is a true and accurate

16   transcription of my stenographic notes.
                                    Stephanie Austin
17             _____

18                      Stephanie M. Austin, RPR, CRR

19

20

21

22

23

24

25
                                                              11
```

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION


 3      --------------------------x
        RUTH SMITH,               :      Civil Action No.:
 4                                :      1:22-cv-81
                    Plaintiff,    :
 5           versus              :
                                  :      Friday, November 18, 2022
 6      SUNPATH, LTD.,            :
                                  :
 7                  Defendant.    :
        --------------------------x
 8

 9            The above-entitled motion to compel was heard before
        the Honorable William F. Fitzpatrick, United States
        Magistrate Judge.  This proceeding commenced at 10:05 a.m.
10

                       A P P E A R A N C E S:
11

        FOR THE PLAINTIFF:    PATRICK PELUSO, ESQUIRE
12                            WOODROW & PELUSO, LLC
                              3900 E. Mexico Avenue
13                            Suite 300
                              Denver, Colorado  80210
14                            (720) 213-0676

15      FOR THE DEFENDANT:    GREGORY CAFFAS, ESQUIRE
                              ROTH JACKSON GIBBONS CONDLIN, PLC
16                            8200 Greensboro Drive
                              Suite 820
17                            McLean, Virginia  22102
                              (703) 485-3533
18

        COURT REPORTER:       STEPHANIE M. AUSTIN, RPR, CRR
19                            Official Court Reporter
                              United States District Court
20                            401 Courthouse Square
                              Alexandria, Virginia  22314
21                            (571) 298-1649
                              S.AustinReporting@gmail.com
22

            (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
23          TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)

24

25
                                                                1
```

1                     P R O C E E D I N G S

2          THE DEPUTY CLERK:  Smith v. SunPath, Ltd.,

3     Case 1:22-cv-81.

4          Counsel, please note your appearances for the

5     record.

6          THE COURT:  We'll start with the plaintiff.

7          MR. PELUSO:  Good morning, Your Honor.

8     Patrick Peluso appearing on behalf of the plaintiff.

9          THE COURT:  Good morning, Mr. Peluso.  How are

10    you?

11         MR. PELUSO:  I'm all right.  How are you?

12         THE COURT:  Good.  Thank you.

13         MR. CAFFAS:  Good morning, Your Honor.  Gregory

14    Caffas here on behalf of the defendant, SunPath, Limited.

15         THE COURT:  And good afternoon, Mr. Caffas.  How

16    are you?

17         MR. CAFFAS:  Good morning, Your Honor.

18         THE COURT:  All right.  So I understand -- so

19    let's just sort of plow through this one issue at a time.

20    But I understand that there was a supplemental discovery

21    production that occurred after the original motion was

22    filed.

23         So I just want to -- the first thing I want to do

24    is make sure that I understand exactly what currently is in

25    dispute, what the parties' positions are, to make sure I

                                                           2

```
 1    haven't missed anything along the way, and then we'll rule,

 2    and we'll at least give you guys some clarity as to what the

 3    lay of the land is going forward.

 4           It may make sense -- and this is the defendant's

 5    motion to compel.  So if you would like to do it in a

 6    different way, that's fine.  It may make sense to start

 7    with, I think what you've referred to as the contention

 8    discovery requests, and let's resolve those first.

 9           Does that make sense?

10           MR. CAFFAS:  Yes, Your Honor.

11           THE COURT:  Okay.  So, first let's -- I want to

12    make sure we're clear, exactly which requests are you

13    referring to within that bucket?

14           MR. CAFFAS:  To clarify, Your Honor, since we're

15    discussing this in the context of the

16    supplemental interrogatories -- or, sorry, the supplemental

17    responses that plaintiff has submitted, are you asking me

18    about what the -- what effect those have had on the

19    discovery requests?

20           THE COURT:  Yes.  What's currently in dispute.

21    I'm assuming that the supplemental responses either change

22    something, change everything or change nothing; so ...

23           MR. CAFFAS:  The latter, Your Honor.  I would

24    argue that they change nothing.  They don't cure anything

25    noted in our initial motion.  And, if anything, especially
```

3

```
1    with regards to responses to -- the supplemental responses

2    to Interrogatory 1, 2 and 3, I would argue that they raise

3    additional questions that appear to need to be supplemented.

4    It looks like plaintiff had rushed to put something together

5    in order to try and resolve this motion --

6              THE COURT:  All right.  Listen to this --

7              MR. CAFFAS:  -- and hasn't done that.

8              THE COURT:  -- it's your motion.  Why don't you

9    start with whatever individual or group of discovery

10   requests that you want to.  I'll hear -- just make sure I

11   understand which specific request you're referring to.  You

12   don't have to repeat what's in your brief, but just

13   summarize your position for the record.  I'll hear from

14   plaintiff, and then, you know, we'll tackle them one at a

15   time; okay?

16             MR. CAFFAS:  Yes, Your Honor.

17             I think the first thing to address is the

18   boilerplate objection that plaintiff has raised as to a --

19   that's comes into play in this motion.  It's

20   Interrogatories 1, 2, 3, 4, 8, 9, 18, 22, 23.  And then

21   Document Requests 15, 16, 17, 19, 20, 22, 23, 28, 29, 32 and

22   33, which are all listed, it's on page 7 of our initial

23   motion to compel.

24             And the issue that we take with this objection,

25   Your Honor, is that it's the definition of a boilerplate
```

4

1   objection in that it just states that these requests are

2   premature without stating any basis as to why that affects

3   their ability to give any kind of answer or what that, in

4   turn, is causing plaintiff to need more time to submit

5   responses, either when they were initially propounded back

6   in September or currently as it stands three weeks from the

7   end of discovery.

8           THE COURT:  So let's start there.  That's a fine

9   place to start.

10          So, Counsel, with respect to the objection that,

11  at this point, responses are premature.  Right.  My general

12  view is, you're a couple weeks out from your discovery

13  cutoff.  Right.  It's hard to have things be too premature

14  at this point.  You have a hard discovery cutoff sometime in

15  early or mid-December.

16          I understand that there could be, and there may

17  well be, supplemental productions there are necessary after

18  depositions are taken or after additional information is

19  acquired, but we don't really have a lot of time here.  And

20  so to the extent that you're -- that, you know, that's what

21  you're resting on, solely the issue that a response now is

22  premature, I'm not inclined to grant that.  I am inclined to

23  have the plaintiff respond to the discovery request based on

24  the information you have today.  If those responses are

25  going to change as a result of a deposition or new

5

 1   information that is properly discoverable, then I'm going to

 2   ask you to supplement your response as needed.  But we do

 3   need to get moving, and we do need to kind of push this

 4   matter forward from a discovery perspective.

 5          If you have other objections that are not

 6   boilerplate ones, that are specifically tailored to the

 7   request, to the nature of the discovery, to the relevance,

 8   proportionality, whatever, I'm happy to hear those

 9   objections, and I'm happy to hear any argument you have as

10   to why that's not a proper, you know, game plan going

11   forward.

12          But my initial impression is -- unless you can

13   convince me otherwise -- if you're not objecting to the

14   substance of the discovery request, you're only objecting

15   that they're -- that really, it's not -- it's premature to

16   respond, I'm not inclined to grant your -- or stay your

17   objection on those grounds, but I'm happy to hear you on

18   that point.

19          MR. PELUSO:  Understood, Your Honor.

20          You know, it's -- regardless of the merits of the

21   objection that is premature, I understand Your Honor is not

22   inclined to find that objection meritorious.  We're not

23   withholding documents or information based on that

24   objection.  So all the information --

25          THE COURT:  Then why did you make it?

                                                              6

1           MR. PELUSO:  Understood, Your Honor.  It's mostly

2    just to note that there's information that we're still

3    trying to track down through the discovery process and that

4    we will then turn around and supplement, to the extent that

5    we acquire additional information.

6           THE COURT:  It sounds like everybody's on the same

7    page there.

8           MR. PELUSO:  This is what I was --

9           MR. CAFFAS:  If I could object, Your Honor.

10          THE COURT:  No.  Let him finish.

11          MR. PELUSO:  It's sort of what I was explaining

12   before today's hearing.  That even if Your Honor granted his

13   motion, I don't have additional information to give him.

14          THE COURT:  Okay.

15          MR. PELUSO:  So it's sort of an academic exercise

16   about whether the -- it's a premature objection.

17          THE COURT:  So the purpose of today is to resolve

18   disputes.  Right.  And, you know, in the discovery process,

19   there are often good-faith, honest disputes, or issues over

20   which reasonable minds can differ.  Right.  But what I need

21   to do today is find out what those really kind of -- focus

22   in on what those disputes are, and what the respective

23   arguments of the parties are, and I'm going to give you, by

24   the time we leave today, total clarity on what everybody --

25   what's expected of those parties.

                                                              7

1          So if -- with respect to the interrogatories that
2  defense counsel just enumerated, based on the premature
3  objection, it sounds like we're all on the same page that
4  you're going to provide the discovery requested, with the
5  understanding that you'll supplement those discovery
6  responses as necessary in a reasonably timely fashion as you
7  get new information.
8          MR. PELUSO:  That's correct, Your Honor.
9          THE COURT:  And if there is a specific -- or let
10  me ask defense counsel.
11          Is there a specific document, or is there a
12  specific issue that you think that you're entitled to that's
13  responsive to the discovery that they have that they have
14  not provided?
15          MR. CAFFAS:  First of all, yes.  There is --
16  specifically with respect to some of the information that
17  was raised in their supplemental response to --
18          THE COURT:  Okay.  You're going to have to be
19  specific.
20          MR. CAFFAS:  Right.
21          THE COURT:  Right.  We need -- I can't make
22  general rulings.  Right.  I need specific issues to decide.
23          So what specifically, right now, do you think they
24  have that's responsive to a discovery request that they have
25  not provided that you're seeking an order to compel them to

                                                              8

```
 1   do so?

 2              MR. CAFFAS:  Your Honor, that would go to the

 3   basis of the contentions contained in Interrogatories 1, 2

 4   and 3 at the very least.

 5              As it applies to Interrogatory 1, which is listing

 6   the cause for which Ms. Smith is seeking damages for in this

 7   case, these were provided for the first time on

 8   November 11th for a case that's been ongoing since this

 9   summer.

10              THE COURT:  Okay.  We're not worried about that.

11              MR. CAFFAS:  Right.

12              THE COURT:  I want to know if, from what I

13   understand -- let's take Interrogatory 1 as an example.

14              MR. CAFFAS:  Uh-huh.

15              THE COURT:  "Identify all calls to your cellular

16   telephone numbers for which you seek recovery in this

17   lawsuit that you allege were made by or on behalf of

18   SunPath, and state all factual bases for your contention

19   that each call was made by or on behalf of SunPath."

20              MR. CAFFAS:  Uh-huh.

21              THE COURT:  Right?

22              MR. CAFFAS:  Yes.

23              THE COURT:  Plaintiff, you're not -- or plaintiff,

24   as I understand it, is not objecting to the substance of

25   that interrogatory.  They are telling you that they have
```

9

1    complied to the best they can, that they have provided all

2    information in their possession with respect to that

3    interrogatory.

4         MR. CAFFAS:  And, Your Honor, our position is that

5    based on the content of this supplemental response, that is

6    not true as of -- as it stands.

7         Specifically, there's calls listed for June 1st

8    and June 8th where they are listing, for the first time,

9    that apparently there were voice mails that are associated

10   with those calls that they have been able to identify and

11   haven't gotten that information from any third party in this

12   case, that we're aware of, that they haven't provided.  That

13   would be a fact that supports their contention.

14        THE COURT:  They are stuck with their answer.

15   Right.  It sounds to me what you're doing is you're kind

16   of -- you know, you're kind of creeping this into a

17   potential summary judgment motion.  Right.

18        If that's their answer; that's their answer.  If

19   their answer is insufficient, if their answer doesn't, you

20   know -- if their answer essentially, as I understand what

21   you're saying, as limited as it may be, maybe that helps

22   your summary judgment argument.

23        MR. CAFFAS:  Uh-huh.

24        THE COURT:  Right.  But they're not going to be

25   able, in a summary judgment motion or at trial or anything

                                                        10

```
 1   else, to now supplement the discovery.

 2           If what they've alerted to you is, here is a full

 3   representation, this is a full representation of all the

 4   facts and information in our possession responsive to

 5   Interrogatory Number 1, and you think it's insufficient,

 6   well, they're stuck with it; right?  I mean, it sounds like

 7   you want them to do further investigation.  And if it's that

 8   insufficient, then plaintiff isn't going to be able to carry

 9   their burden.

10           MR. CAFFAS:  Well, Your Honor, it leads -- that

11   leads me to my second point with, again, going towards the

12   consent of the supplemental response to Interrogatory 1, is

13   that there's other contentions that aren't supported by any

14   of the facts in any of their responses.

15           THE COURT:  But let's be specific.  Let's stick

16   with Number 1.

17           MR. CAFFAS:  Uh-huh.

18           THE COURT:  What do you contend they have in

19   response to your interrogatory that they have not turned --

20   that's in their possession that they have not turned over to

21   you?

22           MR. CAFFAS:  Well, at the very least, Your Honor,

23   there would be call notes and call records that seem to be

24   able to allow Ms. Smith to --

25           THE COURT:  All right.  Stop right there.
```

11

1           Do you have any call notes or call records that's

2    responsive to Interrogatory Number 1?

3           MR. PELUSO:  Your Honor, the only call notes are,

4    truthfully, work product.  It would be our own

5    internal-created Excel spreadsheet of what the client told

6    us over the phone about the calls.  So that is

7    attorney-created attorney work product.

8           Our -- my understanding is that my client is able

9    to access call records from AT&T for a price of $5 per

10   month, which we have instructed her, within the last week,

11   to go and do, and when we have that information, we will

12   turn it over.  We are not trying to withhold any information

13   whatsoever from SunPath.  We understand our discovery

14   obligations.

15          Just as a matter of how I practice, I, frankly,

16   hate getting into discovery disputes.

17          THE COURT:  Well, we're here.

18          MR. PELUSO:  I understand -- I understand that

19   they have defenses and they are entitled to information --

20          THE COURT:  Hold on.  Don't shake your head.

21   Everybody's a lawyer.  Everybody's doing the best they can.

22   Right.  There are absolutely -- and I say this because if

23   that happens on the fifth, sixth, seventh -- or we're on the

24   fifth.  But if that happens on the sixth through tenth

25   floor, the person in this seat will explode.

                                                              12

1          MR. CAFFAS:  Understood, Your Honor.

2          THE COURT:  Okay.  Please remain stoic, make your

3     argument as best you can, advocate for your client as best

4     you can.  I promise you both, we're going to figure this

5     out.  Right.

6          MR. CAFFAS:  Understood.

7          THE COURT:  When it comes to the discovery

8     process, everybody is ultimately going to get what they're

9     entitled to.  Right.  It just -- sometimes it happens

10    sooner; sometimes it happens later, but everybody's going to

11    get what they're entitled to.  I promise.

12         MR. CAFFAS:  Understood.

13         THE COURT:  Okay.  So let's just work through

14    this.

15         MR. PELUSO:  So --

16         THE COURT:  Take it one step at a time.

17         MR. PELUSO:  So, really, the only thing that -- I

18    can see three sort of categories of documents that we would

19    even have that -- or have access to that have not been

20    turned over.  One is simply an Excel spreadsheet that we, as

21    the attorneys, created to log what our client told us.

22         THE COURT:  All right.  So let's stop right there.

23         Do you have any argument as to why that

24    spreadsheet would be otherwise discoverable and why it

25    wouldn't be work-product privilege?

                                                            13

1              MR. CAFFAS:  The spreadsheet, Your Honor, no;

2    however, what I would say is Mr. Peluso has referred to

3    information that Ms. Smith was providing over the phone.

4    That would indicate that she's not -- these were calls that

5    occurred in 2020.

6              THE COURT:  Have you deposed Ms. Smith yet?

7              MR. CAFFAS:  No, Your Honor.  We're in -- we've

8    filed this motion so that we won't have to depose her

9    multiple times so that her deposition will be productive and

10   we won't have to --

11             THE COURT:  Well, I've got to tell you, my sense

12   as to what Ms. Smith tells her counsel is privileged.  And

13   counsel is not required, in any way, shape or form, to

14   disclose what Ms. Smith tells to counsel.  That's why you

15   get to depose the plaintiff.  Right.  If counsel takes

16   notes, prepares internal documents, spreadsheets, whatever,

17   based on information provided by their client, that clearly

18   is going to be work product.

19             So, with respect to that first bucket that

20   counsel's referred to, I don't see that that's properly

21   discoverable here.  If you need to, you know -- you know, to

22   the extent that they -- that they have that information,

23   that she has records or documents, that's fine.  Right.  And

24   that's properly discoverable.

25             But if you have to depose her multiple times, then

                                                              14

 1    we'll deal with it multiple times.  But I don't think that

 2    you get her statements to her lawyer in order to prep for

 3    your deposition of her.

 4             MR. CAFFAS:  Understood, Your Honor.  We're not

 5    asking for her statements to her attorney; we're -- we've

 6    asked for, for example, her notes, calendars, internal --

 7    her records that allowed her to track this in order to go to

 8    her attorney to file a claim.  Those have been requested.

 9             THE COURT:  That's fine.  And are there such

10    records or documents, and, if not -- if so, have they been

11    provided?

12             MR. PELUSO:  I'm not aware of any such document.

13             THE COURT:  And understand that when they make

14    that representation -- you know, it is a requirement that

15    when lawyers respond to a discovery request, that they make

16    a certification, right, that they've taken all reasonable

17    steps to investigate or to look wherever this information

18    could possibly be, and if that's what happens, that's what

19    happens.  So, if there are no records or documents, they're

20    stuck with that.  And if there's an 11th hour dump, right,

21    then there's going to have to be further inquiry.

22             But, at this point -- and, again, this isn't a new

23    case.  Right.  This case is -- you know, you're three weeks

24    away from shutting down discovery as far as -- maybe less

25    than that, right, sometime early to mid-December.  You know,

                                                            15

1   you're really -- you know, you may not be at the 11th hour,

2   but you're pretty close to it.

3           So if there are -- you know, if there are those

4   records or documents and they seem properly discoverable, if

5   you're representing today on the record, in court, as an

6   officer of the Court that they don't exist, that you've made

7   reasonable efforts to obtain them and they don't exist, then

8   we're going to take that representation and move on, and

9   they're stuck with it.  You know, they're not going to be

10  able to come back, you know, whether for summary judgment,

11  whether for a trial or whatever and say, well, look, we have

12  these other 54 exhibits that corroborate what plaintiff is

13  testifying to.  That's not going to happen.

14          MR. PELUSO:  Understood, Your Honor.  And the only

15  documents that I can even --

16          THE COURT:  So, I'm sorry.  I don't remember what

17  you said before.  You said there were three buckets of

18  documents you were talking about.

19          You've dealt with the first bucket.  What are the

20  other two?

21          MR. PELUSO:  So the second bucket would be her

22  cell phone call records.  Right.  And we all have cell

23  phones.  Our cell phone company sends you a monthly

24  statement evidencing the calls that you've received or that

25  you made.  She doesn't have those statements anymore.

16

1          What we have learned is that her company will

2    provide her past statements from a couple years ago during

3    the relevant time period of these calls for $5 a month.  We

4    have instructed her to pay that and get those statements,

5    and when we receive them for the relevant time period, we

6    will turn them over.

7          THE COURT:  Are you aware of what her phone

8    company is, what phone company she uses?

9          MR. CAFFAS:  I believe it's AT&T.

10          MR. PELUSO:  Right.

11          THE COURT:  Okay.  You could also subpoena AT&T

12    yourself.  I mean --

13          MR. CAFFAS:  Your Honor, the reason that that has

14    not been done is because the representation has been that

15    Ms. Smith has access to those, and we're learning that now,

16    as of five days ago, she's now endeavoring to provide them.

17    But that is one of the factual -- that's one of the buckets

18    of factual evidence that we need to support the contentions

19    that are listed in Interrogatory 1.

20          MR. PELUSO:  The point is, Your Honor, I do not

21    dispute that those cell phone statements would be --

22          THE COURT:  Wait.  They only have -- look, they

23    have to turn over what they have.  Right.  They -- you know,

24    if they don't have -- you know, I don't actually know that

25    they're legally required to go out and affirmatively seek

                                                              17

1    additional information that's not currently in the custody,

2    control or possession.  Right.  And that's why it's

3    perfectly appropriate for either party to subpoena third

4    parties to get information.  Right.  I think what will be

5    required of them is to disclose who the service provider was

6    during the relevant time period, and that way you can go out

7    and issue a subpoena.  Right.

8            If they made a representation that they have it or

9    that they will get it, I appreciate that.  I think that's

10   a -- that's a sign that they're -- that, clearly, it's

11   relevant, clearly it's material to the issues in dispute,

12   and, just as a matter of professionalism, they're trying to

13   go out and get this done in the most efficient way possible.

14           If it turns out, at the end of the day, you know,

15   what I will -- well, on that point, I guess what I would ask

16   the parties to do is, you know, for plaintiff to continue to

17   push that as quickly as they can, as efficiently as they

18   can.

19           If they cannot do so, I would say -- I understand

20   next week is Thanksgiving, but I'll give you guys until the

21   following Wednesday, the Wednesday after Thanksgiving, to

22   sort of provide what we need to provide and, you know,

23   comply with the Court's order today.  Then if you're not

24   satisfied with that information, then -- they're either

25   unable or unwilling to do it, then you'll have time to issue

18

```
1    a subpoena to AT&T yourself.  And I understand the backdrop

2    to that, and we'll be a little forgiving in terms of timing

3    if AT&T is not -- you know, doesn't respond within the time

4    period set by the Court; okay?

5                MR. PELUSO:  Understood.

6                THE COURT:  So, by the end of the day, if the

7    record still exists, the defendant will get them.  Right.

8    There's no doubt about that.  And -- you know, and I

9    appreciate plaintiff's efforts to -- you know, to

10   affirmatively go out and get them and provide them.  It's

11   the right thing to do.  It keeps this case moving forward.

12   But, if you can't, then you'll be able to get them directly

13   from the third party service provider; okay?

14               MR. PELUSO:  And then the third, I guess, category

15   of documents that Ms. Smith does have and that we do not

16   think are discoverable are the settlement agreements from

17   completely unrelated cases that she may have had with other

18   defendants under the Telephone Consumer Protection Act.

19               THE COURT:  That's -- I think that's an

20   interesting question.  Let's talk about that.

21               Before we move on to that, is there anything else

22   you want to say about the phone records?

23               MR. CAFFAS:  The Contention Interrogatories 1, 2

24   and 3 in general, yes.  I don't think we're -- we've

25   completed the discussion as to those, Your Honor.
```

19

1          Specifically, in the supplemental response to

2    Interrogatory 1, there's also contentions for each and every

3    one of the calls that plaintiff has identified that, upon

4    information and belief, the call was made using what's

5    called -- a company called Five9 Dialing System, and there's

6    no factual support listed for that contention.

7          To the contrary, Your Honor, we've attached the

8    response that we've received from plaintiff for their

9    subpoenas to Verizon and AT&T which indicate to the

10   contrary.  The majority of the caller ID numbers that

11   they've listed are not associated with Five9.  Several --

12          THE COURT:  I'm sorry.  Where did that information

13   come up?  From your subpoena or provided by the plaintiff?

14          MR. CAFFAS:  Plaintiff had provided those in

15   response to their subpoenas after we had requested them as

16   part of the meet-and-confer process.

17          So four of the numbers that plaintiff lists as

18   the -- as calls that she received in her supplemental

19   response to Interrogatory 1 appear to be associated with, I

20   believe it's called First National Bank or First Capital

21   Bank, I can't recall, rather than Five9, which was

22   identified in response to another subpoena.  And another of

23   the numbers was associated with an individual in Florida.

24          THE COURT:  I'm not sure I'm totally following the

25   mechanics of this.  But I think the larger picture is this,

                                                          20

1    I think all of what you've identified as these contention

2    interrogatories are appropriate.  And I think that

3    plaintiff -- unless you can give me a reason, not sort of a

4    boilerplate objection, but a specific reason as to why I

5    shouldn't grant the defendant's motion to compel with

6    respect to each of those interrogatories, I'm happy to hear.

7            But, what I'm understanding is, plaintiff is

8    telling the Court and telling you that they have complied

9    with all of those interrogatories, that they have -- that

10   they've provided you what statements, what records they

11   currently have in their possession based on their efforts to

12   search their client's files, gather information that's in

13   their custody, control, possession, all of that.  And what

14   I'm hearing from you, Counsel, and I may be wrong, is you

15   just either think there's more, or you want more specific

16   responses.  You're not happy with their responses.

17           If you think that there is specific documents that

18   they have that they're not turning over, then I need you to

19   be specific as to what documents you think they have that

20   they're withholding from the discovery process, and why.

21           If you just think their answers are not specific

22   enough, you know, there's a part of me that just says

23   they're stuck with their -- they're the plaintiff, they have

24   the burden.  If they -- you know, if they give you these

25   generalized, non-specific answers, right, they're not going

21

1   to able to carry their burden.  They're not going to able

2   to -- you know, they're not going to be able to survive a

3   summary judgment motion.  Right.  And so --

4           MR. CAFFAS:  My question -- I apologize if I

5   hadn't made that -- explained that properly in the first

6   place, Your Honor.

7           But if, for each and every one of plaintiff's --

8   the calls that she identifies and contends are associated

9   with this defendant are -- and the basis for that

10  contention, if they say, for example, for each and every one

11  of the calls, they make the statement "the purpose of this

12  call was to solicit a SunPath product," or something along

13  the lines of those.  I would posit to the Court that that is

14  a contention that they need to list the facts that support

15  that contention.

16          THE COURT:  I agree.  I totally agree.  And if

17  they failed to do it, then they're not going to be able to

18  present evidence at trial about why they contend that this

19  call was intended to elicit a SunPath product.

20          MR. CAFFAS:  Uh-huh.

21          THE COURT:  It's that easy.

22          You know, I'm not saying your interrogatories are

23  out of bounds.  I don't think they are.  And I'm not saying

24  that their responses are sufficient.  But, you know, I

25  can't -- I can't force them to provide information that

22

```
 1    is -- you know, that, at the end of the day, it's just going

 2    to mean this case is -- you know, the plaintiff loses.

 3            If they don't provide you specific facts as to why

 4    they think these calls are related -- and, please, tell me

 5    if you think I'm seeing this wrong.  But my view is that if

 6    you've asked that in that interrogatory, I've ruled that

 7    it's an appropriate interrogatory and that they have to

 8    respond, and lead counsel is saying, we're not objecting to

 9    the interrogatory on any substantive basis, and they fail in

10    that answer specifically, and they fail to explain why they

11    think that call X, Y, Z were intended to elicit a SunPath

12    product, then they're not going to be able to present any

13    evidence of that at trial.  They're not going to be able to

14    present any evidence in support of their position on summary

15    judgment.

16            So, I mean, I'm -- you know, if counsel is

17    saying -- you know, essentially what they're saying is we

18    don't have anything.  If they don't have anything, they

19    don't have anything.  If there is a reason why they think

20    that -- that these calls were intended to elicit a SunPath

21    product and they failed to disclose that, if I was the

22    defense, sometimes I would just keep my powder dry and just

23    say okay.

24            I mean, plaintiff's counsel, am I missing

25    something?
```

**JA264**

```
1              MR. PELUSO:  I don't think so, Your Honor.  I
2    mean, ultimately that's correct.  It's our burden to show
3    the various elements of our claim.
4              THE COURT:  And you came out -- and you came out
5    with your discovery responses.
6              MR. PELUSO:  Correct.
7              THE COURT:  And if you don't have anything to
8    corroborate it, to support it, then I suppose the plaintiff
9    will get up there and say, well, the person on the other end
10   of the phone said they were selling me a SunPath
11   fill-in-the-blank.  And you depose the plaintiff and the
12   plaintiff says that, then you know at trial, you know, they
13   especially are limited to carrying their burden before the
14   jury, before the Court, by a preponderance, based solely on
15   plaintiff's uncorroborated statement.  If that's all that
16   they've given you in discovery, that's all they're going to
17   have at trial.
18             MR. PELUSO:  And the only other thing I would add,
19   Your Honor, is that, you know, we're still tracking down
20   information.  There's outstanding subpoenas.  When those
21   subpoenas are responded to and we receive additional
22   documents or information, we will turn them over.
23             Any questions that SunPath may have for Ms. Smith,
24   they can ask her at her deposition.  There's just not
25   information or documents currently in our possession other
```

24

 1    than those sort of three buckets that I've mentioned that

 2    have not been turned over.  So --

 3            THE COURT:  So what documents do you think they

 4    have that they're not turning over?  I understand you're

 5    unhappy with the specificity of their response.  But, you

 6    know, what documents, what's responsive to the interrogatory

 7    that you think they have that they're not turning over --

 8            MR. CAFFAS:  Your Honor, it's --

 9            THE COURT:  -- or disclosing?

10            MR. CAFFAS:  I will just reiterate that it's clear

11    that the information that's been provided about the calls

12    that are detailed from 2020 that were specified for the

13    first time last week, that that information did not come

14    from Ms. Smith's memory.  And there are clearly documents

15    and information that are in her possession, even if she

16    clearly has not accessed her specific phone records yet that

17    allowed her to list minute-by-minute --

18            THE COURT:  I just --

19            MR. CAFFAS:  -- call details.

20            THE COURT:  -- think you need to depose her,

21    Counsel.  Right.  I mean, you're asking me to speculate

22    about what she has or doesn't have.  Right.  You're asking

23    counsel to disclose, you know, what are essentially

24    privileged communications with her lawyer.

25            The way to get through this is to depose the

                                                              25

1    plaintiff.  And if it turns out that, you know, that you

2    need to depose plaintiff multiple times because information

3    keeps coming back in, then, you know, we'll look at that

4    when it comes.  But I'm just not sure, at this point, what

5    you're asking the Court to do.

6            MR. CAFFAS:  With regards to the information being

7    withheld regarding the call records, that's our position.

8    We were trying to avoid having to go back to the well again

9    and again potentially if things were resolved at the

10   deposition and have that upfront to be able to question her

11   about at deposition.

12           THE COURT:  Let me ask you this, Counsel.  Do you

13   disagree that any call records that would be -- that are

14   relevant to this time period that -- or that are within this

15   time period that are in your client's possession are not

16   properly discoverable?

17           MR. PELUSO:  No.  I agree that they are entitled

18   to those documents.  The only thing I would add, as I said

19   earlier, is she no longer has those statements.  Right.  Not

20   everyone saves cell phone bills from two years ago.  But she

21   has access, in the sense that AT&T can reprint them for her,

22   which we've instructed her to do, and then we'll turn them

23   over.

24           THE COURT:  So what I'll do is, we will -- if this

25   issue isn't resolved by -- either your client doesn't get

                                                          26

1    these bills from AT&T or has some explanation as to why she

2    won't now or can't now, if this issue isn't resolved by -- I

3    mean, I hate to put any pressure on folks the week of

4    Thanksgiving.  But if this issue isn't resolved by, say,

5    Wednesday, the 30th, so the Wednesday after Thanksgiving,

6    then I would ask the parties to contact my chambers, and we

7    will set this for a hearing on Friday, December 2nd.

8            MR. CAFFAS:  And just to clarify, Your Honor, I

9    just want to make sure that we're not just talking about the

10   AT&T records that she was supposed to be trying to get her

11   hands on as of now.  I'm referring to -- there would clearly

12   be -- to take a step back, if I were the plaintiff in this

13   case, when Ms. Smith came --

14           THE COURT:  Well, I'll tell you what we're going

15   to do, though.  So if these issues are -- I think -- it

16   sounds like these issues really probably are not totally

17   ripe for me to rule on right now.  What you have is, you

18   have plaintiff saying we're trying to get our hands on this

19   information, we're working on this information, you haven't

20   even deposed the plaintiff yet to determine -- and you

21   have -- do you have that scheduled?

22           MR. CAFFAS:  Well, our plan was to set it for the

23   2nd based on the outcome of this hearing and what will be

24   provided by that time.

25           THE COURT:  Well -- all right.  Well, I'm going to

27

```
1   order that everything that I order disclosed today be

2   provided by -- I was planning on doing it the Wednesday

3   after Thanksgiving so people weren't feeling like they had

4   to hustle around the holidays.

5           And -- and is the 2nd a date that you all have

6   agreed to for a deposition of the plaintiff?

7           MR. CAFFAS:  It had been proposed by plaintiff.

8   We were --

9           THE COURT:  Okay.

10          MR. CAFFAS:  -- waiting for the outcome of this

11  hearing.

12          THE COURT:  Well, let's do this.  To the extent

13  that there are any open issues, right -- anyway, typically

14  in a discovery dispute, right, there's a discovery about

15  what needs to be provided.  There doesn't seem to be a big

16  dispute here.  Right.  There's no dispute that if these call

17  records exist, they're entitled to them.  The question

18  really is, how do you get them.  When do you get them.  Who

19  do you get them from.

20          If plaintiff is saying that they're making a

21  good-faith effort to get this information to you, right,

22  which, honestly, I'm not sure that they're required to do

23  legally, right, you could have subpoenaed this information

24  from AT&T at any point, but if you represent you didn't

25  because they told you they had this information or were
```

1    going to provide this information, I get it, right, we'll

2    get there.

3            What we'll do is, we'll have a status conference

4    on -- everything will be -- have to be disclosed that you

5    have.  And I'm asking you to make every effort to get this

6    information -- and I know it's a short turnaround -- by

7    Tuesday.  That will be the Tuesday after Thanksgiving,

8    November 29.

9            MR. CAFFAS:  The 29th maybe.

10           THE COURT:  Yeah.  If we need to, we'll have a

11   hearing on Thursday, the 30th.  And that will give you at

12   least -- so everything should be turned over by Tuesday.  It

13   will give you a few days to prepare before your deposition

14   on Friday.  If we need to have a hearing, everybody can come

15   in, and we'll have a hearing on Thursday to resolve as much

16   as we can.  If you need to have multiple depositions of the

17   plaintiff, then, you know -- because information keeps

18   coming in at this stage, you know, maybe you can have

19   multiple shots at the plaintiff.

20           But, guys, you're at the 11th hour.  When's your

21   final pretrial?

22           MR. CAFFAS:  I don't know offhand, Your Honor.  I

23   know that discovery closes on the 9th, but that's the only

24   thing I --

25           THE COURT:  All right.  So your final pretrial

                                                              29

```
 1    would then be sometime later that week or the following

 2    week.

 3              So when discovery closes on the 9th, discovery

 4    closes on the 9th.  Right.  I mean, that's -- that's pretty

 5    much going to be a hard deadline.  So -- all right.  But,

 6    you know, right now if you're asking me -- the question

 7    isn't, are these records discoverable.  Right.  The question

 8    is, where do you get them from and when.

 9              MR. CAFFAS:  And has plaintiff provided all the

10    factual evidence that supported her contentions.

11              THE COURT:  You know, by answering their own

12    interrogatory, that's what they're representing.  You know,

13    again, I don't know how we can keep going around in a

14    circle.  Right.  If -- you know, if they give you an answer,

15    they are stuck with their answer.  You know, it sounds like

16    you want more from them, and I'm not sure, if I were

17    defending this case, why I would want too much more from

18    them.  If they're giving you a little bit, that means they

19    only have a little bit to support their case.  They're not

20    going to be able to ambush you, if that's what you're

21    worried about.  They are not going to be able to ambush you.

22    They're not going to be able to say -- you know, discovery

23    ends on the 9th.  They're not going to be able to make a

24    discovery production -- you know, if you're -- your trial

25    will probably be set in March.  They're not going to be able
```

1    to give you a discovery production in January or February

2    and say, oh, well, now we are -- you know, we're

3    supplementing what we should have given you two months ago.

4    No way that's happening.

5                MR. CAFFAS:  Understood.

6                THE COURT:  I mean, I don't want to speak for the

7    district judge, but I can tell you, that's just generally

8    not how the Court rules.

9                So, you know, it's up to the plaintiff to either

10   object and say we don't want to turn this information over

11   because we're not required to, or under the rules we

12   shouldn't, or here's why we don't want to turn it over.

13   Right.  In which case we wrestle with those issues.  But if

14   they answer, they're stuck with it.

15               You're frustrated because you don't think their

16   answer is specific enough.  If it's not that specific, then

17   their case in chief is not going to be very specific.  If

18   they're relying on the testimony of their -- of the

19   plaintiff, then they're relying on the testimony of the

20   plaintiff.  If they're providing you no other bases, then

21   they have no other bases to argue at trial or in their

22   summary judgment motions.  I don't know what else to tell

23   you.

24               But you want me to order them to be more specific.

25   I can't do that.  I can order them to comply with the

                                                          31

```
 1   interrogatory, or I can order them to answer the

 2   interrogatory, I can order them to fully answer the

 3   interrogatory, I can order them to represent that the answer

 4   is based on a professional, reasonable, careful review of

 5   all the records and data in the custody or control of their

 6   client.  But I can't write the answer for them.  And that's

 7   why I'm just not sure, beyond that, what you want me to do.

 8           MR. CAFFAS:  Beyond what we've already discussed

 9   as it relates to the response to Interrogatory Number 1, I

10   think I'm satisfied, at this point, with Your Honor's

11   analysis.

12           THE COURT:  You know, to the extent that there is

13   a dispute -- and, you know, the order today is going to

14   read:  "For the reasons stated on the record, defendant's

15   motion to compel is granted."  Because the only real

16   objection before the Court, which it seems like it was

17   almost -- was essentially withdrawn, was the objection that

18   it was premature.  Right.

19           So, you have -- you will have an order of the

20   Court that your interrogatories are proper and that

21   plaintiff has to comply with the interrogatories.

22           MR. CAFFAS:  Your Honor, in that vein, might I ask

23   that it would be appropriate that the objections that these

24   requests are premature either be withdrawn or stricken on

25   that basis then?
```

32

```
1              THE COURT:  Well, it's going to be denied.  It
2    doesn't matter; right?  I mean the order is going to say
3    that your motion to compel is granted.
4              MR. CAFFAS:  Uh-huh.
5              THE COURT:  That's how we do it.
6              MR. CAFFAS:  Understood.
7              THE COURT:  For reasons stated on the record.
8              MR. CAFFAS:  Understood, Your Honor.
9              And then to move on to the next two contention
10   interrogatories.  The issue that SunPath takes with
11   plaintiff's current supplemental responses to
12   Interrogatories 1 and 2 are that these are asking for
13   plaintiff to provide the basis for her contention that calls
14   are either -- sorry, SunPath is either directly or
15   vicariously liable for any of the calls at issue, which
16   would ideally provide SunPath to address whether each call
17   they're alleging a theory that SunPath is directly liable,
18   it made these always itself; or a third party, supposedly at
19   SunPath's behest, made those calls.
20             As it stands right now, there are no
21   differentiation between which calls plaintiff alleges were
22   directly or vicariously made by SunPath or any other party.
23   There's not a single call specified in the answer to the
24   supplemental response to Interrogatory 2 or 3.  In fact,
25   part of the supplemental response to Interrogatory 3 simply
```

33

 1    references the response to supplemental Interrogatory 2.

 2              THE COURT:  So it's an appropriate interrogatory,

 3    it's an appropriate request, right, for you to identify

 4    which calls you think SunPath is directly responsible for

 5    versus which calls your client received that you think

 6    SunPath is vicariously responsible for.  If you're able to

 7    distinguish them -- if you're not able to distinguish them,

 8    that's a proof issue, right, and you're going to have to --

 9    you know, you're -- it sounds like if you're not able to do

10    that in the discovery process, you're going to have proof

11    challenges at trial, if you get to trial.

12              So, you know, it's an appropriate interrogatory.

13    If you have that information, unless you can tell me a

14    reason why you shouldn't provide it, you need to identify

15    it, you need to provide it, you need to state it with

16    specificity, and you're stuck with your answer.

17              MR. PELUSO:  Understood, Your Honor.  There is no

18    dispute that SunPath did not make any of the calls directly.

19    So that's been true since the beginning of the case.  I

20    don't think we've ever alleged that your client directly

21    made the calls, only that third parties did on its behalf.

22              So, to the extent Your Honor would like us to, I

23    don't know, supplement the interrogatory to specifically

24    state that, we can.  But there's no argument, from our end,

25    that SunPath affirmatively made the calls itself.

                                                              34

1          MR. CAFFAS:  Did not.

2          MR. PELUSO:  Did not, correct.  Yeah.  We're not

3    contending that.

4          THE COURT:  Do you have any evidence or anything

5    in your files that suggest that there is a third party who

6    was acting at SunPath's direction that made the calls?  That

7    also seems to be within the boundaries of the interrogatory.

8          MR. PELUSO:  Correct.

9          THE COURT:  And if you have it, provide it.  If

10   you don't, don't.  I mean, that's -- you know, again, I

11   think we're still circling the same wagons here.  Right.

12   And plaintiff is not objecting to the scope, the

13   appropriateness of your interrogatories.  They're just

14   telling you, as I understand it, this is all we've got.

15         MR. PELUSO:  That's correct, Your Honor.  And,

16   again, the only -- there's those three sort of buckets of

17   information that we have that -- or have access to that have

18   not been turned over for various reasons.  You know, we

19   discussed the first two, which were that -- our own internal

20   Excel spreadsheet, which is work product; the statements

21   from AT&T, which we're having our client work to get, and

22   we'll turn them over when we receive them; and then the

23   settlement agreements from completely unrelated matters.

24   Other than those three buckets --

25         THE COURT:  We'll get to that in a second.

                                                            35

1          MR. PELUSO:  Other than those three buckets, I

2    don't have any additional information to provide the

3    defendant.  And I feel like we're just kind of stuck in the

4    mud here sort of having the same discussion and argument

5    when I don't have anything else to turn over.

6          THE COURT:  I got you.  And we also don't have a

7    lot of specifics from the defendant as to what they -- you

8    think they have that they're not turning over.  But that --

9    aside from that -- right.  I still think we're back to the

10   same spot that I can tell by your look, you and I just

11   really aren't connecting on, which is, you know, you can't

12   make them give you information they don't have.  You can't

13   make them be specific if they don't want to be specific.

14   They are stuck with their answers.

15          Now, maybe that's good enough.  Maybe they can

16   convince a jury based solely on the testimony of their

17   plaintiff.  That's a proof issue.  Right.  But, you know, if

18   you think that there is something -- and it doesn't sound

19   like there's anything in there -- well, let me back up.

20          You know, if they're representing this is all

21   we've got, and you don't have any reason to suggest that

22   that's not all they have -- and I can't order them to

23   provide things that they don't have.  I can order them to

24   be -- to respond to your interrogatories, to respond fully

25   to your interrogatories.  They're appropriate.  But you're

                                                            36

1    stuck with the answer.  They're stuck with the answer.

2         MR. CAFFAS:  Yes.  I believe I understand that,

3    Your Honor.  I just -- specifically with regards to the

4    testimony that we've just -- sorry, not the testimony, but

5    the arguments that we've just raised with respect to these

6    two contention interrogatories, Number 2 and Number 3, there

7    seems to be a concession that plaintiff's not withholding

8    anything, isn't waiting on anything, knows the answer to

9    specifically supplemental response Number 2, which the

10   supplemental answer starts by stating:  "The contention

11   interrogatory is grossly premature," and that they're

12   supposedly --

13        THE COURT:  We've gotten past that.  The answer is

14   on the record, and I would ask counsel to supplement it in

15   writing, you know, to the defense that the plaintiff does

16   not take a position that SunPath was the -- was the -- you

17   know, was the entity making these calls, or rather there was

18   a third party doing it on behalf of SunPath, and, therefore,

19   SunPath is vicariously liable for the actions of others

20   acting on their behalf.

21        Is that the position of the plaintiff?

22        MR. PELUSO:  Correct, Your Honor.  There's --

23        THE COURT:  It's on the record.  We are being

24   recorded.  But I would ask -- I would ask plaintiff to

25   supplement the interrogatory response to clarify that, and

37

```
 1    then that's what there is.  And to the extent that you've
 2    asked, identify other third parties that you know about,
 3    identify other third parties who were acting vicariously on
 4    behalf of SunPath or any information you have or anything
 5    along those lines.  If the answer is we don't know, then the
 6    answer is they don't know.
 7              MR. CAFFAS:  Understood, Your Honor.  And I
 8    apologize if I am beating a dead horse here, but we would
 9    expect there --
10              THE COURT:  I think we crossed that bridge a while
11    ago, but that's okay.
12              MR. CAFFAS:  We would expect their response to
13    list the calls associated with their theories of liability.
14              THE COURT:  And I think that's fine.  I think
15    that's fair.  And I didn't think that's in dispute.
16              You have to list the specific calls, and I thought
17    that's what was already agreed to.  I think that was in --
18    you know, if you've alleged your -- if the plaintiff has
19    alleged that they received 50 calls between X date and Y
20    date from a third party acting on behalf of SunPath, then
21    they need to identify for SunPath which 50 calls they're
22    alleging.  That seems entirely reasonable.  I didn't think
23    that was necessarily in dispute.
24              MR. PELUSO:  I don't think it is, Your Honor.  I
25    think we did that.  To the extent you think that we didn't,
```

JA279

```
 1    let me know, and we'll try to correct that problem.
 2           MR. CAFFAS:  Understood.  All right.  I think
 3    we've discussed it, but the discrepancy was what wasn't
 4    specified in the responses to 2 and 3.
 5           THE COURT:  I got you.  I got you.  Sometimes this
 6    process just helps clarify things for everybody.
 7           MR. CAFFAS:  All right.  Your Honor, the next --
 8           THE COURT:  I do have a conference call at 11 that
 9    what I would ask -- and, of course, our clock has said 10:25
10    for about the last six months.  So, if you guys don't
11    mind -- it's five of.  If you don't mind -- this won't take
12    very long -- can I just take a brief recess.  Let me handle
13    this conference call, and let us reconvene at about 11:15,
14    if that works.
15           MR. CAFFAS:  It works for us, Your Honor.
16           MR. PELUSO:  Works for me.
17           THE COURT:  Okay.  Thank you, all.
18      (A brief recess was taken from 10:57 a.m. to 11:21 a.m.)
19           THE COURT:  All right.  So does that leave us with
20    the settlement issue, or are there other issues as well?
21           MR. CAFFAS:  There's also the issue of -- there's
22    also the issues as to the response to Interrogatory 18 and
23    the supplemental initial disclosures in the calculation of
24    damages.
25           THE COURT:  Okay.  Pick -- which one of those
```

**JA280**

1   issues do you want to go through first?

2          MR. CAFFAS:  So they're corresponding issues.  The

3   initial disclosures, as Your Honor is aware, the plaintiff

4   is required to provide a calculation of the damages for

5   their claims.  The -- Interrogatory Number 18 essentially

6   requests similar details.  So the issue is, what are the

7   calculation of the damages for their claims.  And plaintiff,

8   even in supplemental responses, has just pointed to the

9   statutory damage provision and provided lump sums, which is

10  deficient under the definition -- under -- which is required

11  under Rule 26 regarding the damage claim calculations.

12          THE COURT:  Okay.

13          MR. PELUSO:  Your Honor, I'm not sure what else we

14  could supplement to add other than what we already have.

15          THE COURT:  Well, what would --

16          MR. PELUSO:  The statute provided --

17          THE COURT:  I'm sorry.  Go ahead.

18          MR. PELUSO:  Sorry, Your Honor.

19          These statutes provides statutory damages in the

20  amount of $500 under the TCPA, or under the Virginia state

21  court claim, it's $500, which reaches up to 5,000 after a

22  certain number of calls.  I think it's two or three calls,

23  it all of a sudden jumps to 5,000.

24          So we've kind of done the math based on the calls

25  that we allege are violative.  I think it's 54, give or

                                                            40

1   take.  So if you just kind of do the math, the number of

2   calls times the statutory damages available, that's what

3   we've provided.  I'm not really sure what else the defendant

4   would like us to do.

5         THE COURT:  If that's all they're seeking, why is

6   it -- you know, I'm not saying -- I'm in the ruling on

7   whether or not, you know, they're entitled to it or not

8   entitled to it, but if the statute says it's 500 -- if they

9   said we're alleging 54 violative calls in our claim, and the

10   statute provides damages for $500 per call up until X and

11   $5,000 per -- whatever the statute specifically requires, do

12   you want them to just basically lay that out and do the math

13   and say here are the 54 calls, here are the first three

14   calls that we think we're entitled to $500 in damages for,

15   here are the rest of the damages where we think we're

16   entitled to $5,000 per call for?

17         MR. CAFFAS:  Yes, Your Honor.  It's not what we're

18   asking for; it's what the rule requires.

19         THE COURT:  That's fine.  I would have them do

20   that.  You know, lay out which -- just specifically say

21   which -- you know, again, sort of ties all together.  But I

22   do think, for the claim to move forward, you do have to

23   identify specific calls.  And if there are damages

24   associated with each call, I think -- I think -- I

25   understand what you're saying, which is, hey, it's pretty

41

1    clear -- I probably could just read the statute, but I think

2    it is appropriate to just specifically lay it out.

3                MR. PELUSO:  Just so I understand, Your Honor, so

4    instead of just saying, you know, 54 calls, these are the

5    statutory damages, therefore the total damages sought are X,

6    Your Honor would like us to go through -- list each call and

7    say 500, 500, 5,000, or give just kind of a lump sum?  I

8    just want to make sure I understand what Your Honor is

9    ordering me to do so I can make sure I comply.

10               THE COURT:  Why is -- why couldn't they just say

11   we have 54 calls, here are the 54 calls under the statute,

12   you know, we're alleging damages for this amount?  Why is

13   that not sufficient?

14               MR. CAFFAS:  Well, we addressed this partially in

15   our -- that's just one example included in our reply brief,

16   Your Honor.  They might be saying that there's 54 calls, but

17   there's separate types of violations in each of the damage

18   provisions for the three separate counts they're suing

19   under.

20               For example, one of the counts is under the

21   Virginia Telephone Privacy Protection Act, which only

22   applies to calls --

23               THE COURT:  Good point.

24               MR. CAFFAS:  -- that were answered and the party

25   answered and the party didn't identify themselves by first

                                                              42

 1   and last name.  But there's a large number of calls that

 2   plaintiff describes as unanswered.  So the calculation -- I

 3   mean, to kind of sum up the issue, they said -- they're

 4   asking if they need to show their work.  They said they've

 5   done the work; they need to show it.

 6           THE COURT:  Fair point.  I think that's a fair

 7   point, yes.

 8           For each call that you've alleged is violative to

 9   the statute, all the material information that's relevant to

10   the damage calculation, whether -- you know, that has to

11   be -- that has to be set out with specificity.  Yes.  I

12   think that's correct.

13           MR. PELUSO:  Okay.  Understood.

14           MR. CAFFAS:  And I believe that's the only -- that

15   encompasses the issues under both Interrogatory 18,

16   supplemental response, and the initial disclosure.

17           THE COURT:  Okay.  Okay.

18           MR. CAFFAS:  So then the remaining issue, Your

19   Honor, would be regarding the settlement agreements that

20   Ms. Smith has -- is withholding.

21           THE COURT:  So you're seeking settlement

22   agreements between Ms. Smith and previous defendants who she

23   has either sued or anticipated suing in which there was a

24   settlement agreement between Plaintiff Smith and those

25   other -- and those other entities; correct?

                                                          43

1          MR. CAFFAS:  If you'll give me a minute, Your

2     Honor, I believe there's three separate discovery requests

3     that are a little bit more broad than just settlement

4     agreements.  It would be communications involving formal and

5     informal disputes in which she was the plaintiff.  But that

6     is a broad summary of the issue that's presented with these

7     three supplemental responses we're seeking, yes.

8          Yeah.  Specifically we're referring to

9     Interrogatory 21 and Document Request 11 and 14.

10          THE COURT:  How's that relevant to this cause of

11     action?

12          MR. CAFFAS:  Your Honor, as a threshold manner, I

13     would like to first point to the basis of the objections

14     that are raised in response to these.

15          There's no question that there is information

16     that's being withheld, and the basis of withholding them is

17     they're supposedly -- the requests are unduly burdensome and

18     unduly broad without any kind of specificity as to why that

19     is the case.  And there is no dispute that there are

20     settlement agreements that are being withheld.

21          So I would say there's a threshold matter, that I

22     would request that that objection be stricken, and if

23     there's any determination, it would just be the relevance,

24     which is just if there is probative value to --

25          THE COURT:  Yeah.  I don't think it's overly

                                                              44

```
 1    broad.  I don't think it's unduly burdensome, but why --

 2              MR. PELUSO:  I agree.  That objection is the

 3    boilerplate that we shouldn't have made, but definitely stay

 4    on the relevance.

 5              THE COURT:  I understand.

 6              But where are we on the 26(b)(1) issues?  Right.

 7    Where are we on -- why is that relevant to this cause of

 8    action?

 9              MR. CAFFAS:  So there's several reasons that we've

10    submitted in both of our briefs.  But the main issue is that

11    we're -- based on the uncertainty as to the parties that are

12    involved here.  For example, the parties that are alleged to

13    have made the call or calls at issue here are third parties

14    that aren't captive to SunPath.  They could be marketing the

15    product of SunPath competitors, they could be marketing

16    products of people that sell insurance products or home

17    security systems or nutritional products.  They're not

18    required to be --

19              THE COURT:  I got you.

20              MR. CAFFAS:  Yeah.

21              -- captives of that party.  So based on the lack

22    of specificity as to who those parties might be --

23              THE COURT:  I have you there.

24              MR. CAFFAS:  Yeah.

25              THE COURT:  There's no question they need to tell
```

45

1    you specifically which parties they have -- they have

2    engaged with.  Let me -- I'll hear from Counsel, but I

3    think -- what else do you need from the settlement

4    agreements?

5           MR. CAFFAS:  There would be the possibility that

6    Ms. Smith has signed a release with this party releasing

7    that party and any of their affiliates, parent companies,

8    subsidiaries that could apply to SunPath or potentially

9    another party that made the calls in this issue, even if she

10   didn't sue for a specific call that she's suing SunPath for

11   here.  That would certainly be relevant to our claims and

12   defenses in this case.

13          THE COURT:  I agree.

14          MR. CAFFAS:  Yeah.

15          THE COURT:  What else do you need from the

16   settlement agreements?

17          MR. CAFFAS:  Well, in addition to the settlement

18   agreements, it would be anything memorializing the formal or

19   informal demands.

20          THE COURT:  Why?

21          MR. CAFFAS:  For example -- because -- similar

22   reasons, Your Honor.  If Ms. Smith says she received a call

23   from somebody and reaches out and makes a demand to that

24   person, that would be memorializing what could have created

25   an established business, if, on that call, she made an

46

1    inquiry about that product and then created an established

2    business relationship with that caller, that then -- and

3    then that caller potentially is responsible for some of the

4    calls at issue here, that would be relevant information that

5    goes to --

6              THE COURT:  You mean that individual person or

7    that there would be -- or the entity?

8              MR. CAFFAS:  The entity that they are calling --

9              THE COURT:  Wouldn't that be covered by the -- so

10   if I enter an order, hypothetically, that just says:

11   "Plaintiff is required to disclose to defendant all

12   settlement agreements, formal or informal, in which -- and

13   identify the parties who she has settled with and identify

14   the specific terms of any releases that she has engaged in

15   or that she has executed," right, why is that not enough?

16             MR. CAFFAS:  I think it would also include -- need

17   to include, Your Honor, the dates of the settlements that --

18             THE COURT:  The dates.  The dates of the

19   settlement agreement and the dates the agreements cover.

20             MR. CAFFAS:  Correct.  And I think this would fall

21   under what you're stating, but it would also need to include

22   the claims -- the basis for the claims that those settlement

23   agreements arose from, if that makes sense.  So if it's for

24   calls that occurred during the relevant time period or not,

25   that would be something that would obviously be relevant to

                                                              47

```
 1    what we're seeking here.

 2              THE COURT:  Well, that would be covered by the

 3    dates; correct?

 4              MR. CAFFAS:  Yeah.  I didn't want to confuse, for

 5    example, if a settlement agreement was executed on

 6    April 21st, 2022, versus it was for calls that occurred on

 7    April 20th of 2020.

 8              THE COURT:  Well, I think they have to disclose

 9    both.

10              MR. CAFFAS:  Right.

11              THE COURT:  Both the time period in which the

12    settlement agreements covers, the date that the settlement

13    agreements was entered, who the parties to the agreement

14    were, and the scope of the release.  It seems like from -- I

15    think -- I take your point, I think, but I am trying to just

16    kind of narrowly tailor this, because I'm not sure that it

17    should be a complete free-for-all.

18              For example, one of the things you asked for is

19    the specific monetary compensation.

20              MR. CAFFAS:  Well, Your Honor, that --

21              THE COURT:  Why's --

22              MR. CAFFAS:  Sorry.

23              THE COURT:  No.  Go ahead.

24              MR. CAFFAS:  That would go to her potential

25    fitness as a class representative.  In one of the cases we
```

48

1    cited -- I believe it was *Roman v. Pierce* that was just

2    decided in the last couple of weeks -- that plaintiff's

3    fitness and motivations as a class representative and the

4    monetary amounts they would have received in separate

5    settlement is relevant to, at the very least, their

6    credibility before a jury.

7            THE COURT:  Okay.  Anything else along those lines

8    from you, Mr. Caffas?  Anything else?

9            MR. CAFFAS:  No, I don't believe that we have

10   anything else to add, pending anything Mr. Peluso has to say

11   that we would need to respond to.

12           THE COURT:  All right.  Mr. Peluso.

13           MR. PELUSO:  Yes, Your Honor.  I don't really have

14   a lot of objections to most of what Your Honor was just

15   talking with Mr. Caffas about.  You know, as far as

16   providing them with a list of defendants who Ms. Smith has

17   settled with before, the dates of those settlement

18   agreements, the -- I guess the call range that was the

19   subject of those settlements, that all seems reasonable.

20           THE COURT:  And the scope of the releases, who

21   exactly is being released.

22           MR. CAFFAS:  Right.  And the scope of the release.

23   That's all fine.

24           I think the financial part, though, is a bridge

25   too far, and I just -- I really struggle to see what that

                                                          49

1   has to do with her fitness as a class representative.  It's

2   obviously highly confidential information, and I don't

3   really -- I guess I don't see what that has to do with her

4   willingness in this case to put her name on the complaint,

5   participate in discovery, sit for a deposition, testify at

6   the trial, you know, kind of stand up and be a class

7   representative.

8         What she was paid to settle a prior case, I'm just

9   not really sure what that has to do with her fitness to

10  serve as a class rep here.

11        THE COURT:  It also implicates the interest of the

12  entities with whom Ms. Smith had settled with; right?  I

13  mean, it's --

14        MR. CAFFAS:  If I could respond, Your Honor.

15        I would just generally say that confidentiality is

16  not a basis to be withholding anything.  We cited this in

17  our reply brief.  And if there's a concern about

18  confidentiality, we can enter a protective order, and that

19  won't be shared with anything besides --

20        THE COURT:  So walk me through the relevance of

21  the -- of how you think the specific terms of the settlement

22  agreement impact your suitability as a class representative.

23        MR. CAFFAS:  As I've already stated, Your Honor,

24  at the very least, there is a question of her credibility

25  before a jury based on her motivation for participating in

                                                        50

1    this lawsuit as a threshold issue.  We've cited authority in

2    our briefs that states that courts have found this relevant

3    before, and it is a relevant determination based on the

4    balancing test per Rule 26.

5            THE COURT:  Well, I'll tell you what I'm going to

6    do.  I'm going to deny that at this point.  If they seek to

7    certify this as a class, I will -- I'll revisit that

8    requirement.

9            But, at this point, there's no motion to certify a

10   class based on what we currently have before the Court.

11   This case is pushing ahead.  It doesn't seem like that is

12   going to be a heavy lift.  If there is an effort to certify

13   a class, we can revisit that issue.

14           But I think, based on the current posture of the

15   case, I will order the plaintiff to provide a list of all

16   parties with whom she has settled, the date of the

17   settlement agreement, the timeline -- or the time period for

18   which the settlement covers, as well as the scope of all

19   releases executed.  And if they make an effort to -- and

20   that is done without prejudice to the defense motion or

21   ability to revisit this issue, if there is an effort to

22   certify a class.

23           MR. CAFFAS:  Understood, Your Honor.

24           MR. PELUSO:  Just one quick request for

25   clarification.  Are we just talking about settlement

51

1    agreements related to telemarketing TCPA or any, you know,

2    related state -- statutes, you know, related to

3    telemarketing calls; or are we talking about just any

4    general settlement agreement from, I don't know, she got bit

5    by a dog, right, something -- unrelated subject matter?

6             THE COURT:  Well, I -- look, I think that if --

7    the purpose is to try to identify if there's any overlap.

8    Right.  Essentially.  If there's any overlap between any

9    prior settlement agreement and any entity that is either

10   SunPath or associated with SunPath.  And we're talking about

11   a relatively short time frame.  Right.  My understanding is

12   it's just from 2017 until now.  Is that all you've asked

13   for?

14            MR. CAFFAS:  I believe so.  I can double check

15   the --

16            THE COURT:  I think that's what it says in 21.

17            MR. CAFFAS:  21.

18            THE COURT:  So if we're just talking about the

19   last five years, I think to err on the side of caution, I

20   would ask plaintiff to -- or direct plaintiff to provide all

21   settlement agreements that she's entered into.

22            If there is something that is clearly beyond the

23   scope, right, you know, for example, like a medical

24   malpractice issue or something like that, that is -- raises

25   privacy interests and is clearly outside the bounds of this

                                                              52

1    cause of action, then you can submit something ex parte in

2    camera to exclude that.  But since we're only talking about

3    the last five years --

4              MR. PELUSO:  It's probably not going to be that.

5              THE COURT:  It's probably not going to be too

6    much.  But, if there is something, I'd be happy to look at

7    it.

8              MR. PELUSO:  Understood, Your Honor.

9              MR. CAFFAS:  Understood, Your Honor.

10              THE COURT:  All right.

11              MR. CAFFAS:  And, I apologize.  There was one

12    other issue that we had raised that was the -- whether the

13    request for admissions to -- request for admissions 7, 8 and

14    16 should be deemed admitted.  And we believe that, based on

15    the evasiveness and the non-answers provided in both the

16    initial answers and supplemental answers, they should be.

17              MR. PELUSO:  This was 7, 8 and 16?

18              MR. CAFFAS:  7, 8 and 16.

19              And, Your Honor, the issue that we have is that

20    the questions were all posed in the present sense.  We're

21    asking for what knowledge or information Ms. Smith has in

22    her possession, custody or control.  And the non-answer that

23    was received was basically something along the lines that

24    she wasn't able to answer based on what she has.  And, at

25    present, months later, we're still getting an answer that

53

1   she doesn't know what she has.  This was timely and

2   appropriate when it was served, and there's no reason why

3   she just can't give a simple admit or deny.

4           THE COURT:  All right.  So let's go through them

5   real quick.  Let's just go through them.

6           So what is request for admission 7?  Can you just

7   read that into the record?  What's 7?

8           MR. CAFFAS:  Your Honor, request for admission 7

9   states that:  "You are in possession of no written or audio

10  evidence that SunPath, or any party allegedly acting on

11  SunPath's behalf, contacted you via your cell phone -- your

12  cell phone -- excuse me -- your cellular telephone number

13  before May 26, 2020."

14          And the initial response was:  "At this time,

15  plaintiff lacks sufficient knowledge and information to

16  either admit or deny this request."

17          And the supplemental response, it's very lengthy.

18  I can read that into the record, Your Honor, as well if

19  you'd like.

20          THE COURT:  I'm reading it.  All right.

21          All right.  Mr. Peluso, anything you want to say

22  on that?

23          MR. PELUSO:  Your Honor, I think our supplemental

24  response, you know, lays it out.  We admit that she's not

25  currently in possession of any audio evidence.  We admit

                                                          54

```
 1    that she's not presently aware of any written evidence.  But
 2    it sort of clarifies that we're working on accessing the
 3    cell phone bills, and that may provide some additional
 4    information responsive to this request.  And we're not --
 5    we're not trying to hide the ball.  We're, you know, going
 6    through, I don't know, three or four sentences here, trying
 7    to explain exactly what we admit and what we don't know.
 8              I guess the point is, Your Honor, we don't want to
 9    just simply say -- we don't want to deny and then turn
10    around two weeks later and get information from AT&T which
11    we've kind of pivoted to an admit.  So we're trying to
12    explain the sort of chain of logic here as opposed to just
13    denying the request.  We're trying to actually give the
14    defendant some insight into where we are.
15              MR. CAFFAS:  Your Honor, if I might respond.
16              THE COURT:  Sure.
17              MR. CAFFAS:  I think Mr. Peluso has just revealed
18    that the answer has and still remains that this is admitted.
19    If there's some reason that he might need to supplement it,
20    he can do so when that is necessary.  But, based on the
21    bounds of Rule 36, if an answer is evasive when submitted in
22    a timely fashion -- and these were submitted back in
23    September -- it should have been admitted then.  We're here
24    in mid-November, and we're still receiving non-responses.
25    So -- especially considering that the representation seems
```

55

1   to be that, at present, it is admitted.

2          MR. PELUSO:  Well, and that's what it says, Your

3   Honor.  I mean, we're not trying to be evasive.  The

4   supplemental response says:  "Plaintiff admits she's not

5   currently in possession of audio evidence."  "Plaintiff

6   admits she is not presently aware of any written evidence."

7   So we're not trying to be evasive; we're --

8          THE COURT:  It does seem like they've admitted the

9   key issues there.  And if -- and if what changes that is,

10  you know, they get more records from AT&T, if that's all

11  that changes, well, the defendant's on notice of that.

12         But what I read that to be is -- and if you think

13  it's not clear, we can clarify it now, is, as Counsel said,

14  they're admitting that they're not in possession of any

15  written or recorded evidence in that regard.

16         So I'm just not sure what the dispute is.  It

17  sounds like -- it sounds like it is admitted, based on the

18  current -- based on where things stand now, it is admitted.

19  If there is a little bit of an exception, defendant is aware

20  of it.  And, quite frankly, you know -- and, again, this is

21  a little bit off topic here, but -- and I'm not sort of in

22  the habit of suggesting how a party should move forward.

23  But, given the fact that, with respect to the AT&T

24  information, you know, you thought it was in their

25  possession, it's not in their possession, they're trying to

56

 1   get it from AT&T, it seems to me it would be pursuant for

 2   the defendant to issue their own subpoena.  If you wind up

 3   getting the same information twice from the defendant, from

 4   AT&T, that's fine.  And I appreciate the plaintiff, again,

 5   you know, making those efforts.  But, you don't have that

 6   much time.  And it is sort of your responsibility to make

 7   sure that your client gets the information if you now know

 8   that it's in the possession of a third party.

 9        But, you know, I've looked at the response, and

10   it's a little bit of a long-winded response, but,

11   essentially, I -- I read request for admission 7 to be

12   admitted.  And, again, if there's a little bit of a caveat

13   there, you know, it's not something that you're going to be

14   ambushed with.  You know, it's going to deal with that AT&T

15   information.

16        Is that correct?

17        MR. PELUSO:  Yes, Your Honor.

18        THE COURT:  So I think I would -- if I were you,

19   sir, I would declare victory and move on to the next one.

20   It seems like it's admitted.

21        MR. CAFFAS:  Understood.

22        And 8 is essentially requesting the same

23   information for a different time period.  So can I assume

24   that the analysis there would be the same?

25        MR. PELUSO:  I think our response, Your Honor, is

                                                            57

```
 1    almost identical.

 2              MR. CAFFAS:  Yeah.  It's a --

 3              THE COURT:  Yeah.  So 7 and 8 are admitted.

 4              MR. CAFFAS:  And, with respect to Number 16, Your

 5    Honor, which reads that:  "During each of the calls

 6    described in paragraphs 23 and 24 of your complaint, the

 7    caller did not state that he or she was calling from or on

 8    behalf of SunPath."

 9              THE COURT:  And what was the supplemental response

10    to 16?

11              MR. CAFFAS:  The -- so I'll read the -- they're

12    relatively short, so I'll read both.

13              The response is:  "At this time, plaintiff lacks

14    sufficient knowledge and information to either admit or deny

15    this request."  And the supplemental response is deny.  "For

16    every call that was answered or that left a voice mail

17    message, the caller did not identify themselves by first and

18    last name.  The complete breakdown of the calls at issue can

19    be found in plaintiff's supplemental response to

20    Interrogatory Number 1."

21              Now, I will just note that this doesn't respond to

22    the request.

23              THE COURT:  It doesn't answer the specific

24    question.  Right.

25              MR. CAFFAS:  And I would, again, ask that, at this
```

1    stage, it was not responsive whenever the initial response

2    was submitted.  And, paired with Rule 36, it should just be

3    deemed admitted.

4           THE COURT:  What I'm going to do is, I'm going to

5    give them a little bit of a -- I'm going to order plaintiff

6    to respond with specificity to specifically admit or deny by

7    Wednesday.

8           MR. CAFFAS:  And we have nothing further, Your

9    Honor.

10          THE COURT:  And Wednesday is the 23rd.  Okay.

11          Anything else that you -- that we can wrestle with

12   today that would keep you guys in a position to keep moving

13   this forward?

14          MR. CAFFAS:  I don't believe so, Your Honor.

15          THE COURT:  All right.  Is there any use to even

16   talking about any sort of settlement at this point, or are

17   the parties just -- the class issue or other issues are just

18   going to make that not productive at this point?

19          MR. CAFFAS:  Yes.  At this point, I think the best

20   way to summarize the position is that, based on plaintiff's

21   assessment of damages in this case, even the individual

22   settlement discussions that have been had have not been

23   productive.

24          THE COURT:  Well, I specialize in not productive

25   settlement discussions, and it's my job to make not

                                                              59

1    productive settlement discussions productive.  So -- and I

2    will tell you -- and this is Judge Brinkema?

3              MR. CAFFAS:  Yes, Your Honor.

4              THE COURT:  I can almost assure you that, at some

5    point, Judge Brinkema will order you to undergo a settlement

6    conference.  So, at some point, the three of us will be in a

7    settlement conference together with your clients.  You know,

8    she won't do it until you get to the -- you know, the final

9    pretrial era, you know, either right before or right after

10   the pretrial.  But it's going to happen at some point.  So,

11   you know, sometimes it's better to have them sooner rather

12   than later.

13             I'm not going to say it's going to be fruitful.

14   Whether to settle is obviously exclusively in the control of

15   the parties.  But we will probably all, at some point, be in

16   a room together talking about whether we can't find common

17   ground or not.  If there's going to be an effort to certify

18   this as a class, it probably doesn't make sense to do it

19   until that effort has run its course.  But, you know,

20   maybe -- you know, that's up to you guys to talk to your

21   clients and figure out a little bit of -- a little bit of

22   timing.  But I do suspect that she's going to want to --

23   before this will go to trial, she's going to want to have us

24   give it a shot; okay?

25             MR. CAFFAS:  Yeah.  My only other position on

                                                              60

```
1    that, Your Honor, is that I concur with the position that it

2    might be premature because it's our understanding that

3    plaintiff still does intend to try and certify a class, and

4    there may be a discussion of whether there will be an effort

5    to extend discovery that we have to discuss before that

6    point.

7              THE COURT:  Have you ever tried a case before

8    Judge Brinkema?

9              MR. CAFFAS:  I have, yes.

10             THE COURT:  Yes.  If you know, she does not -- you

11   know, extending things are not sort of her favorite thing to

12   do.

13             MR. CAFFAS:  I know.  I understand that very much,

14   Your Honor.

15             THE COURT:  So, it is -- you know, oftentimes, you

16   know, parties think, well, this happens in other districts,

17   or, you know -- and they're very surprised at the pace -- or

18   they are very surprised at the limited time that they're

19   given to do things.  So just bear that in mind; all right?

20             MR. CAFFAS:  Yes.

21             THE COURT:  All right.  Thank you, guys.  Have a

22   great weekend.

23             MR. CAFFAS:  Thank you, Your Honor.

24             (Proceedings adjourned at 11:55 a.m.)
                ---------------------------------
25   I certify that the foregoing is a true and accurate
```

61

1    transcription of my stenographic notes.

2

3    _Stephanie Austin_____

4              Stephanie M. Austin, RPR, CRR

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

62

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Ruth Smith ("Plaintiff"), by and through her counsel, respectfully moves this

Court for an Order certifying the following proposed class of similarly situated individuals:

All persons who either reside in Virginia or who have telephone numbers with a
Virginia area code, who (1) on or after May 14, 2018 through December 31, 2021;
(2) had a number registered on the national Do Not Call Registry for at least thirty
one days; (3) received at least one call placed by Chukran Management Group,
LLC d/b/a American Protection Corp.; (4) that is reflected in the records produced
by Five9, Inc.

In accordance with Local Rule 7(E), Plaintiff certifies that she conferred with SunPath

regarding the requested relief. SunPath does not consent to the requested relief.

Dated: December 14, 2022

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

By: */s/ Francis J. Driscoll, Jr.*
    One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

1

**JA304**

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 14, 2022.

*/s/ Francis J. Driscoll, Jr.*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

      Plaintiff,

      v.

**SUNPATH, LTD.**, a Massachusetts corporation,

      Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### I.    INTRODUCTION

Defendant SunPath, Ltd. ("Defendant" or "SunPath") markets and administers vehicle service contracts to consumers nationwide. Rather than conduct its telemarketing in-house, SunPath relies exclusively on third party marketers to conduct telemarketing on its behalf. SunPath supplies its marketers with training and marketing materials, and then turns a blind eye as its telemarketers place thousands of illegal calls to Virginia residents registered on the National Do Not Call Registry without any prior express invitation or permission—all in violation of the Virginia Telephone Privacy Protection Act ("VTPPA").

One of SunPath's marketers, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), placed unlawful calls to Plaintiff Ruth Smith ("Plaintiff" or "Smith") and thousands of other potential class members in an effort to sell SunPath's vehicle service contracts. In the process, SunPath accepted all the benefits of American Protection's telemarketing while supposedly ignoring its conduct. While SunPath will argue that its hands-off approach to monitoring its marketers shields it from liability, that is of

1

course untrue: as will be explained at the appropriate time, the VTPPA expressly holds companies like SunPath jointly and severally liable for unlawful calls when it hires third parties to place the offending calls on its behalf. For present purposes, what matters is that this question—whether SunPath can be held liable for American Protection's VTPPA violations—can be answered for *everyone* in the entire Class in a single stroke.

Indeed, this matter presents a textbook case for class certification. American Protection placed thousands of calls to Virginia telephone numbers registered on the Do Not Call Registry—all to market SunPath's vehicle service contracts. Despite wide-ranging discovery, American Protection cannot show any prior express consent from any of the class members. As such, common issues abound for which this case will provide common answers, including: (1) whether SunPath is liable for American Protection's conduct, (2) whether the calls in question constitute "telephone solicitations", (3) whether the class members consented to be called, and (4) whether SunPath acted willfully and knowingly. The answers to these questions rely on the same evidence, are identical for each class member, and will drive the resolution of the litigation for the proposed Class as a collective whole.

The remaining requirements under Rule 23 are met as well. The proposed Class, which consists of thousands of class members, is sufficiently numerous. Plaintiff Smith's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, the common issues of whether SunPath is liable of American Protection's calls, whether the calls were "telephone solicitations", and whether any consent was obtained predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. Consequently, Plaintiff Smith seeks certification of the following Class:

2

All persons who either reside in Virginia or who have telephone numbers with a Virginia area code, who (1) on or after May 14, 2018 through December 31, 2021; (2) had a number registered on the national Do Not Call Registry for at least thirty one days; (3) received at least one call placed by Chukran Management Group, LLC d/b/a American Protection Corp.; (4) that is reflected in the records produced by Five9, Inc.

Accordingly, and as explained below, the Court should certify the proposed Class.

## II.    BACKGROUND FACTS

### *SunPath engages third-party marketers to conduct marketing efforts on its behalf*

Defendant SunPath is company that develops and administers vehicle service contracts to consumers nationwide. (Compl. ¶ 6.) Rather than conduct its telemarketing in-house using employees, SunPath contracts with third-party marketers to conduct telemarketing on its behalf. (SunPath Depo. Tr., excerpts of which are attached hereto as Ex. A, at 35:19-25; Call Center Marketing Agreement, attached hereto as Ex. B.) SunPath requires its marketers to agree to its form contract, or "Call Center Marketing Agreement", which requires them, in part, "to actively market [SunPath's] Products." (Ex. B, at pg. 1.)

After agreeing to SunPath's terms, marketers set out to solicit consumers to purchase SunPath's vehicle service plans. (*Id.*; American Protection Depo. Tr., excerpts of which are attached hereto as Ex. C, at 48:22-49:7.) Once a potential client is located, marketers would gather necessary information from the potential client and submit the information for approval to SunPath. (Ex. C, at 30:16-22.) If SunPath approves the sale, then the marketer is responsible for collecting monthly payments from client under the policy. (*Id.* at 61:24-62:2) The marketer is required to pay SunPath for a set amount, or the "cost", of the policy. (*Id.* at 61:5-23.) The marketers then continue to service the client's contract throughout the life of the agreement. (*Id.* at 60:6-19.)

3

**JA309**

*SunPath's enters into an agreement with American Protection to place telemarketing calls to solicit sales of its vehicle service plans*

On June 29, 2017, SunPath entered into a call center marketing agreement with Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (Ex. B at pg. 1.) SunPath also appointed American Protection as its agent in the State of Florida sell its auto warranty products. (Florida Appointment Record, attached hereto as Ex. D.) Between 2017 and 2022, American Protection engaged in soliciting sales on behalf of SunPath. (Ex. C, at 25:6-15.) To sell the vehicle service contracts, American Protection contacted potential clients by telephone. (*Id.* at 24:5-18; 32:1-8.)

On May 26, 2020, despite her registration on the National Do Not Call registry ("DNC Registry"), Plaintiff began receiving relentless telemarketing calls from American Protection soliciting her to purchase SunPath's vehicle service plans. (Declaration of Taylor T. Smith ("Smith Decl.") ¶ 6, attached hereto as Ex. E.) In total, Plaintiff received 172-calls between May and August 2020 placed by American Protection on behalf of SunPath. (*Id.*) After one of the calls, American Protection also sent a follow-up email soliciting Plaintiff to purchase SunPath's products and services. (May 28, 2020 Email, attached hereto as Ex. F.)

Smith wasn't alone. On November 30, 2022, in response to a subpoena, Five9, Inc. ("Five9")—the provider of the telephone system that American Protection used to place the calls at issue—produced American Protection's call records spanning from 2018 to the present. (Smith Decl. ¶ 4.) The records reflect hundreds of thousands (likely millions) of calls placed by American Protection throughout the class period. (*Id.*) The calls to Plaintiff are reflected in the call records. (*Id.* ¶ 6.) Additionally, the data includes identifying information with respect to all the calls, including the names of the persons called and their mailing addresses (street, city, state, and zip code). (*Id.* ¶ 5.)

4

**JA310**

For the purposes of this motion, Plaintiff's counsel conducted a review of two months of the call records, which demonstrate that the records plainly satisfy the Rule 23 requirements. (*Id.* ¶ 7.) In May 2020, the records reflect 4,745 calls placed to 386 unique telephone numbers corresponding with Virginia addresses. (*Id.* ¶ 8.) Of those number, 151 of the telephone numbers were registered on the national DNC Registry. (*Id.*) All of these calls were placed by American Protection on behalf of SunPath. (Ex. C, at 73:24-74:5; 217:23-218:8.)

In June 2020, the records reflect 3,298 calls placed to 452 unique telephone numbers corresponding with Virginia addresses. (Smith Decl. ¶ 9.) Of those number, 174 of the telephone numbers were registered on the national DNC Registry. (*Id.*) All of these calls were placed by American Protection on behalf of SunPath. (Ex. C, at 73:24-74:5; 217:23-218:8.)

American Protection's telemarketing practices were careless. Indeed, its representative testified that if failed to maintain records of consent for the individuals that it calls:

> Q. Okay. Does American Protection maintain records of prior express consent from the individuals that it places calls to?
>
> A. No.

(Ex. C, at 83:25-84:3.) As for Plaintiff, American Protection has no clue how it received her contact information (*Id.* at 100:5-16) and no record of her providing any prior express written consent (*Id.* at 155:18-156:2).

Worse yet, its actions to comply with the National DNC Registry and state telemarketing laws fell woefully short. Indeed, American Protection's representative testified that it let its subscription to the National DNC Registry expire "a couple of years ago". (*Id.* 231:6-21.) Given this testimony, it is unsurprising that American Protection testified that it does not run any of the numbers that it receives from lead generators against the National DNC Registry. (*Id.* at 83:13-24.)

**JA311**

And with respect to the Virginia Telephone Privacy Protection Act, American

Protection's representative explained the company lacked any policies and procedures to

ensure compliance with the Act and had not even heard of the Act until this lawsuit was

filed. Specifically, he testified as follows:

> Q. Okay. And does American Protection have any specific policies or procedures that relate to compliance with the Virginia Telephone Privacy Act?
>
> A. No.
>
> Q. Prior to this lawsuit, did you have -- were you aware of the Virginia Telephone Privacy Act?
>
> A. No.

(*Id.* 156:12-18.)

Based on these facts and as further explained below, the record firmly supports

certification.

## III. ARGUMENT

Class certification is appropriate when the proponent of certification demonstrates that

each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has

been satisfied. Fed. R. Civ. P. 23; *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-

14, 117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that

joinder of all individual class members is impracticable (numerosity); (ii) that there are common

questions of law and fact among the class members (commonality); (iii) that the proposed

representative's claims are typical of those of the class (typicality); and (iv) that both the named

representative and its counsel have and will continue to adequately represent the interests of the

class (adequacy). Fed. R. Civ. P. 23(a).

Plaintiff seeks certification here under both Rule 23(b)(2) and 23(b)(3). Under Rule

23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on

6

grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(3), on the other hand, there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

As explained below, the proposed Class satisfies Rules 23(a), (b)(2), and (b)(3) and should be certified.

### A.     The Class Is Ascertainable—Class Members Can Be Identified By Reference To Objective Criteria, American Protection's Call Records.

Although not explicitly required by Rule 23, the Fourth Circuit has recognized that Rule 23 "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654–55 (4th Cir. 2019) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Under this "ascertainability" requirement, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* at 655; *see also In re Jeld-wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326, at *9 (E.D. Va. Mar. 29, 2021) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (To be ascertainable, class membership must "be 'readily identifiable' by use of 'objective criteria'"). Plaintiff "need not 'identify every class member at the time of certification.'" *Id.* Instead, she must only "ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point.'" *Id.* Objective criteria can include call records. *See Krakauer*, 925 F.3d at 658 (finding call records to be sufficient to establish ascertainable).

The proposed Class is ascertainable by reference to objective criteria. Plaintiff seeks to

7

represent a class of Virginia consumers who've received at least one unsolicited telephone solicitations placed by American Protection on behalf of SunPath during the class period whose numbers were registered on the National DNC Registry. Through discovery, Plaintiff has obtained American Protection's call records during the class period. (Smith Decl. ¶ 4.) All of the calls contained within the call records were placed on behalf of SunPath. (AP, at 73:24-74:5.) Based on a two-month sampling of these records, Proposed Class Counsel was able to identify 325 individual telephone numbers, which include a Virginia address and were registered on the national Do Not Call Registry. (Smith Decl. ¶¶ 8-9.) Put simply, there is nothing subjective about whether a class member's number appears in American Protection's calling records, whether it ties to an address located in Virginia, or whether they received an outbound call. While it is unnecessary for Plaintiff to identify each potential class member at this time, it is clear that class membership will be based on objective criteria, the call records. As such, membership in the proposed Class is ascertainable.

## B. The Proposed Class Meets Each Of The Requirements Of Rule 23(a).

In addition to being ascertainable, the proposed Class is sufficiently numerous and shares common question. Further, Plaintiff's claims are typical and it, along with its counsel, will fairly and adequately represent the interests of the class.

### 1. The Class consists of thousands of aggrieved members.

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is not a specific number of class members needed to establish numerosity; however, courts generally find the numerosity requirement to be satisfied when the class size exceeds forty members. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) ("[a]s a general guideline, ... a class that encompasses fewer than

8

20 members will likely not be certified ... while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone," (quoting 1 Newberg on Class Actions § 3:12 (5th ed. 2021))). At this stage, Plaintiff is not required to identify a "specific number" to "maintain a class action." *Id.* Rather, the Court is entitled to make common sense assumptions in order to find support for numerosity. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ¶ 7.20, 66 (4th ed. 2001); *see also Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006).

Numerosity is not an impediment to certification in this case. That is, American Protection placed thousands of unlawful telephone solicitations to individuals who fall into the defined Class. As previously stated, a two-month sampling revealed 325 Virginia residents that received unlawful calls from American Protection on behalf of SunPath. (Smith Decl. ¶¶ 8-9.) While the total number of class members is not known at this time, it is clear that it will be more than forty. Further, neither SunPath nor American Protection has been able to produce any consent from any of the called numbers. Numerosity is plainly satisfied here.

### 2.       The Class shares common questions of law and fact.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained in *Dukes*, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

9

**JA315**

To satisfy the Rule 23(a)(2) commonality requirement, "there need be only a single issue common to the class." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (citation omitted). The issues are also not required to be identical. *Sustainable Forest, L.L.C. v. Qwest Commc'ns Int'l, Inc.*, No. CV 0:01-2935-CMC, 2005 WL 8146267, at *6 (D.S.C. Nov. 28, 2005). Rather, when "common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Haywood v. Barnes*, 109 F.R.D. 568, 581 (E.D.N.C. 1986) (citing Wright and Miller, *Federal Practice and Procedure: Civil* § 1778 (1972)). Commonality has been characterized as a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Several common issues will drive the instant litigation, including whether SunPath can be held liable for the calls that American Protection made on its behalf, whether the calls can be considered "telephone solicitations" under the VTPPA, whether SunPath or American Protection obtained consent from any of the class members, and whether SunPath acted willfully.

(a)     **Whether SunPath can be liable for the calls.**

The first common issue asks whether SunPath can be liable for the calls placed by American Protection. The VTPPA holds "a seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call" to be "jointly and severally liable" for calls in violation of the Act placed by "telephone solicitor making or initiating the telephone call". Va. Code Ann. § 59.1-514.1 (West). At this stage in the litigation, the question is whether the liability determination can be proven using common evidence.

Here, common evidence will be used to show that SunPath can be held liable as a "seller"

10

under the VTPPA for the calls placed by American Protection. Indeed, SunPath entered into a Call Center Marketing Agreement with American Protection to place telemarketing calls on its behalf. (Ex. B.) SunPath also designated American Protection as its agent in the State of Florida to sell its vehicle service contracts. (Ex. D.) Moreover, American Protection testified that it placed calls to solicit the sale of SunPath's vehicle service contracts (Ex. C, at 29:22-30:7.) Consequently, American Protection acted as a "telephone solicitor" on behalf of SunPath within the meaning of the VTPPA. And because American Protection placed the calls for the purpose of selling SunPath's vehicle service contracts, SunPath can be held jointly and severally liable for calls as a "seller" under the VTPPA. And this doesn't change depending on who the class member happens to be—the answer to the question of whether SunPath can be held liable for the calls placed by American Protection is the same for everyone.

### (b) Whether the calls constitute telephone solicitations.

The second common issue asks whether the class members received telephone solicitations. The VTPPA defines a "telephone solicitation call" as:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

Va. Code Ann. § 59.1-510 (West).

Here, American Protection's representative testified that it contacts consumers for the purpose of selling vehicle service contracts. (Ex. C, at 32:1-8.) And during the class period, American Protection only sold vehicle service contracts. (*Id.* at 213:21-5.) Put succinctly,

11

whether American Protection's calls can be considered "telephone solicitation calls" will be the same with respect to every single call that was placed. Indeed, American Protection testified that their sales purpose did not change throughout the class period. As such, if the calls to Plaintiff were "telephone solicitation", then all of the calls were "telephone solicitations" and vice-versa.

### (c)   Whether the class members consented to be called.

The third common issue asks whether any of the class members provided prior express invitation or permission (or consent) to be called. Prior express invitation or permission must be "evidenced by a signed, written agreement stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone number to which the call may be placed". Va. Code Ann. § 59.1-514(D) (West). To date, neither American Protection nor SunPath has been able to produce any record of prior express invitation or permission for either Plaintiff or any class member. Indeed, American Protection's representative testified that it kept no such consent records:

> Q. Okay. Does American Protection maintain records of prior express consent from the individuals that it places calls to?
>
> A. No.

(Ex. C, at 83:25-84:3.) Because no evidence of consent has been produced, consent is also a common issue for the Class. *See Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 629 (S.D. Cal. 2015) ("courts should not simply accept a party's argument that consent requires individualized inquiries without evidence demonstrating consent is, in fact, an individualized issue." (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012))); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) (rejecting an argument that consent required individualized inquiries in a TCPA class action where the defendant failed to produce substantiating evidence); *Salam v. Lifewatch, Inc.*, No. 13

12

CV 9305, 2016 WL 8905321, at *3 (N.D. Ill. Sept. 6, 2016) ("While issues of consent may prohibit the certification of a class in TCPA class action suits, Defendant must 'set[ ] forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone.'" (citation omitted))).

### (d) **Whether SunPath acted willfully.**

A fourth common issue asks whether SunPath acted willfully. The VTPPA sets statutory damages at $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation. Va. Code Ann. § 59.1-515 (West). But where willfulness is shown, the Court has the discretion to increase the damages award for the first and second violation to an amount not exceeding $5,000. *Id.* Moreover, the inquiry into whether a defendant acted willfully or knowingly focuses on the "intent" of the defendant, and "not any unique or particular characteristics related to potential class members." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016).

In this case, SunPath acted the same with respect to every class member. That is, SunPath contracted with American Protection to market its products and services. After that, it permitted American Protection to engage in telemarketing on its behalf for years without any intervention. In short, there is simply no evidence that SunPath's intent or actions varied with respect to any individual class members. As such, a fact finder could either conclude that SunPath acted willfully with respect to the entire class or to none. *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2017 WL 5054287, at *14 (N.D.W. Va. July 11, 2017) ("where defendant's conduct is uniform as to the class, class certification is appropriate.").

Therefore, the case will produce common answers to several questions of law and fact.

13

### 3.     Plaintiff's claims are typical.

Plaintiff's claims are typical as well. The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *McKnight v. Cir. City Stores, Inc.*, No. CIV. A. 3:95CV964, 1996 WL 454994, at *5 (E.D. Va. Apr. 30, 1996) (citation omitted).

"The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 88 (D. Md. 2009) (citing *Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 287–88 (D. Md. 2008)). But "[t]he claims of the class representative need not be identical to those of the other class members, however." *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004). "For instance, factual variances in the claimed damages, or differences in the availability of certain defenses, do not defeat typicality, so long as the class claims are based on the same legal or remedial theory." *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citation omitted).

Plaintiff's claims are typical. To start, Smith is a member of the proposed Class. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (typicality "requires that the class representative 'be part of the class and possess the same interest and suffer the same injury as the class members.'"). Further, Plaintiff and the Class were subjected to a uniform course of conduct: everyone received unwanted telephone solicitations from American Protection; the calls were placed to market vehicle service contracts; and neither SunPath nor

14

American Protection has produced any record of consent for anyone.

Because Plaintiff's claims arise out of the same course of conduct as the class members' claims, typicality is satisfied.

## 4.    Plaintiff and her counsel are adequate representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Amchem Products, Inc.*, 117 S.Ct. at 2250-2251. "[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Nelson v. Warner*, 336 F.R.D. 118, 124 (S.D.W. Va. 2020).

Applied here, Plaintiff's interests are aligned with the interests of the proposed class. Plaintiff has stepped forward and lend her name and time to this case. Smith has responded to discovery requests, produced responsive documents within its possession, and has provided testimony during a full day deposition. In short, Plaintiff has vigorously represented the interests of the class and will continue to do so throughout the duration of this litigation.

Plaintiff has also retained experienced attorneys with extensive experience in consumer class actions. Indeed, proposed class counsel are respected members of the legal community who have sufficient experience in class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Woodrow & Peluso, LLC, attached hereto as Ex. G.) Plaintiff's

15

counsel have also devoted significant time and resources toward this litigation, and will continue to commit the resources necessary to represent the class. Plaintiff and her counsel have no conflicts of interest with the class and have demonstrated a commitment to vigorously prosecuting this action. Thus, Rule 23(a)(4) adequacy is met.

### C.    The Proposed Class Meets The Requirements Of Rule 23(b)(2).

Once Rule 23(a) is satisfied, the inquiry turns to Rule 23(b). In this case, Plaintiff seeks certification under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. 2451 at 2557. While Rule 23(b)(2) does not have a predominance or superiority requirement, it is well settled that the proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

In this case, SunPath subjected Plaintiff and the Class to a uniform course of conduct. SunPath hired third-party companies to conduct call marketing efforts on its behalf. All of SunPath's marketers sign a form contract, the Call Center Marketing Agreement, which governs their relationship with SunPath. (Ex. A, at 18:3-7; Ex. B.) SunPath's only claim that it has procedures in place to ensure compliance with the VTPPA (or the TCPA for that matter) is the "Standards of Conduct" section of its marketing agreements. (Ex. A, at 45:13-25.) However, SunPath has not implemented any independent policies or procedures to ensure that its sales representatives comply with the VTPPA. (*Id.* at 46:1-47:20) Likewise, SunPath has not implemented a do not call list. (Ex.A, at 56:1-3.) The result of SunPath's intentionally hands off

16

**JA322**

approach is that it enables its marketers to engage in unlawful telemarketing, from which it will ultimately reap the benefits. As such, Plaintiff seeks an injunction requiring SunPath to implement stricter policies and procedures to ensure that its marketers comply with the VTPPA.

Given that SunPath subjected Plaintiff and the Class to a uniform course of conduct, the Court should issue an Order granting certification pursuant to Rule 23(b)(2).

## D.     The Proposed Class Meets The Requirements Of Rule 23(b)(3).

Certification is also warranted under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1.     Common questions of law and fact predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted).

The predominance inquiry "is not simply a matter of counting common versus noncommon questions and checking the final tally." *Soutter v. Equifax Info. Servs.*, LLC, 307 F.R.D. 183, 214 (E.D. Va. 2015). Instead, the test "test is qualitative rather than quantitative." *Id.* "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified

17

**JA323**

notwithstanding the need to resolve individualized issues." *Id.* (citing *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013)). As an example, if "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Id.* (citation omitted).

The common questions set forth in Section B.2, *supra*, will succeed or fail based on common proof. Here, American Protection acted in the same manner with respect to all class members. American Protection placed calls for the purposes of selling vehicle service contracts, including SunPath's products. Further, it failed to adopt any policies or procedures to ensure compliance with the VTPPA. Additionally, there is no record of prior express invitation, permission, or consent for any of the calls placed. As such, the common questions in this case are subject to common proof, cut to the core of the case, and aren't trumped by any individual truths.

SunPath may assert that American Protection placed calls on behalf of other vehicle service contract companies as well. But this doesn't pose an issue with respect to class certification. Rather, the central inquiry is whether the calls in question were initiated to promote SunPath's products and services. Whether the calls ultimately resulted in the sale of a SunPath product or service is immaterial. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) ("Whether a call from Alliance ultimately resulted in installation of a system with an Alarm.com component is circumstantial evidence and certainty not dispositive."); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (denying a similar argument and explaining, "The TCPA violations, if any, occurred when the messages were *sent*, not when class members phoned in and were pitched products or services of Stonebridge or any other Trifecta client." (emphasis in original)). As American Protection's designee confirmed, at the time the call was placed, all of

18

the calls that it placed could have resulted in the sale of a SunPath product or service. (Ex. C, at 73:24-74:5.) And in any case, its designee testified that during the time it worked with SunPath it "mostly sold SunPath products." (*Id.* at 215:10-11.) Because each of the calls were placed for the purpose of soliciting consumers to purchase SunPath's vehicle service contracts, this issue is a common question for the Class.

In short, if SunPath violated the VTPPA with respect to the calls placed by American Protection to Plaintiff, then it violated the VTPPA with respect to every single class member. As such, the Court should find that the common issues predominate over any supposed individualized issues.

## 2. A class action is superior to any other method of adjudication.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to other available methods for adjudicating the controversy. Fed. R. Civ. P 23(b)(3). "Superiority 'depends greatly on the circumstances surrounding each case,' but 'requires the court to find that the objectives of the class-action procedure really will be achieved.'" *Soutter*, 307 F.R.D. at 217. Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to this inquiry:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 445 (E.D. Va. 2004) (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir.1996)); *see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019) ("[I]f the goal of the TCPA is to remove a 'scourge' from our society, it is unlikely that 'individual suits would deter large commercial entities as effectively as aggregated

19

**JA325**

class actions and that individuals would be as motivated ... to sue in the absence of the class action vehicle.'").

As a result of low statutory damages and the uniformity of telemarketing practices, courts routinely certify class actions involving violations of telemarketing laws. *See Krakauer*, 311 F.R.D. at 400 (granting class certification in a TCPA case); *Mey v. Venture Data, LLC*, No. 5:14-CV-123, 2017 WL 10398569, at *15 (N.D.W. Va. June 6, 2017); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413 (W-AJB), 2008 WL 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he class action procedure is the superior mechanism for dispute resolution in this matter. The alternative ... would be costly and duplicative."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014) (granting class certification in a TCPA class).

In this case, the proposed class action is a superior method of adjudication. That is, Plaintiff is seeking statutory damages for each violation of the VTPPA, which amounts to $500 for the first violation, $1,000 for the second violation, and $5,000 for each subsequent violation. (Comp. ¶¶ 54, 61.) Given the small amount of damages likely to be recovered, pursuing suits on an individual basis would be prohibitively expensive for all members of the Class. Further, no other VTPPA actions are currently pending against SunPath. In the end, individualized trials would only result in duplicative cases, inconsistent rulings, and a waste of judicial resources. Moreover, a class action is superior here because the case is easily manageable. That is, as previously explained, the common issues in this case predominate of any individualized issues. And a trial in this action will involve nearly all class wide proof. Indeed, American Protection failed to adopt any procedures to ensure compliance with the VTPPA, placed numerous calls to numbers registered on the DNC Registry, and lacks consent for any class member. As such, the

20

Court should find that the superiority requirement is satisfied here.

## IV. CONCLUSION

The proposed Class is worthy of certification. The Class is sufficiently numerous, common questions of law and fact predominate over individual issues, Plaintiff's claims are typical of those of the class members, and she is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, common issues predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. As such, Plaintiff respectfully requests that the Court certify the Class, appoint Patrick H. Peluso, and Taylor T. Smith of Woodrow & Peluso, LLC as Class Counsel, appoint Plaintiff Ruth Smith as Class Representative, order that a Notice Plan be submitted within thirty (30) days of certification, and grant all other and further relief that the Court deems reasonable and just.

Dated: December 14, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: */s/ Francis J. Driscoll, Jr.*
      One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

21

**JA327**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 14, 2022.

/s/ Francis J. Driscoll, Jr.

22

# Exhibit A

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    ALEXANDRIA DIVISION
 4    RUTH SMITH, individually and
      on behalf of all others    Case No. 1:22-cv-00081-LMB-WEF
 5    similarly situated,
 6         Plaintiff,
 7    vs.
 8    SUNPATH, LTD, a Massachusetts
      corporation,
 9
           Defendant.
10    _____
11      VIDEOCONFERENCED 30(b)(6) DEPOSITION OF SUNPATH, LTD
                   (through ANDREW GARCIA)
12                    December 8, 2022
13    _____
14    VIDEOCONFERENCED APPEARANCES:
15    ON BEHALF OF THE PLAINTIFF:
              PATRICK H. PELUSO, ESQ.
              Woodrow & Peluso, LLC
16            3900 E. Mexico Avenue, Suite 300
              Denver, Colorado  80210
17            Phone: 720-213-0675
              Email: ppeluso@woodrowpeluso.com
18
      ON BEHALF OF THE DEFENDANT:
19            GREGORY CAFFAS, ESQ.
              Roth Jackson Gibbons Condlin
20            8200 Greensboro Drive, Suite 820
              McLean, Virginia  22102
21            Phone:  703-485-3535
              Email:  gcaffas@rothjackson.com
22
      Also Present:  Paul Sporn, Esq.
23
24
25
```

Page 1

```
 1              Q.   (By Mr. Peluso)  Okay?

 2              A.   Yep.

 3              Q.   So is it your understanding that this is --

 4    is it fair to say that this document is a -- an example, a

 5    sample of the Call Center Marketing Agreement that SunPath

 6    would have with one of its third-party partners?

 7              A.   Yes.

 8              Q.   Okay.  Is it your understanding that that's

 9    why it was filed in the case?  The judge sort of asked

10    SunPath to provide a -- an example of its marketing

11    agreement?

12              MR. CAFFAS:  I'll object to calling for

13    speculation.  You can answer, Andrew.

14              A.   I have no idea.

15              Q.   (By Mr. Peluso)  Okay.  It's not a very

16    important question, so I'm not even going to bother trying

17    to rephrase.

18              All right.  So I'm going to scroll down

19    here to what is page 10 of 17 of this document.  Andrew,

20    do you see that the -- sort of the title of this document

21    says Direct Marketing Standards and Guidelines?

22              A.   Yep.

23              Q.   Is this added -- this document here, it

24    seems to go from 10 all the way to 17.  Is this added as

25    an addendum to these Call Center Marketing Agreements?
```

Page 18

1   like to go through these topics with you.

2                   Topic 1 says, "All telephone calls you or

3   any third party acting on your behalf caused to be made to

4   plaintiff."

5                   Did SunPath place any calls to plaintiff?

6        A.    No.   We don't -- we don't make any phone

7   calls unless it's for people who have called us about

8   claims.

9        Q.    Right.   That's my understanding, as well.

10  So SunPath does not do outbound telemarketing itself;

11  correct?

12       A.    No.   Nobody makes calls on our behalf,

13  either.

14       Q.    Okay.   I think we could disagree on that,

15  but --

16                   MR. CAFFAS:   Objection to form.

17       Q.    (By Mr. Peluso)   Any legal conclusions

18  about "on behalf of" are not really what I'm asking about.

19                   So safe to say SunPath doesn't make

20  telemarketing calls?   Any calls that it would make would

21  just be sort of direct calls with its customers if someone

22  calls in with an issue about a claim or something like

23  that?

24       A.    Yes.   And no one makes calls for us,

25  either.   On behalf.


                                              Page 35

1          Q.    Okay.  Pretty similar, but Topic 5 says any

2    practices, policies, or procedures that you have

3    considered implementing or have implemented or any other

4    steps you have taken to ensure that you, American

5    Protection, or any other third parties acting on your

6    behalf comply with the TCPA or the VTPPA --

7          A.    We --

8          Q.    -- other than that -- sorry.

9          MR. CAFFAS:  Hold on.  Can I interject here

10   to say, Andrew, when he's reading these topics, please

11   make sure you're waiting until he actually asks a question

12   before you respond.

13         Q.    (By Mr. Peluso)  Okay.  So this is similar

14   to the topic we just discussed, but other than the

15   Standards of Conduct, are you aware of any practices,

16   policies, or procedures that SunPath has implemented to

17   ensure that you or American Protection comply with the

18   TCPA or the VTPPA?

19         MR. CAFFAS:  I will again raise the

20   objection that it calls for speculation, misstates the

21   witness's testimony, and calls for legal conclusions.

22   Andrew, you can answer to the extent that you're able to.

23         A.    We have nothing to do with the TCPA.  We

24   don't make any calls and no one makes calls on our behalf.

25   So we have the Standards of Conduct.

Page 45

```
 1            Q.    (By Mr. Peluso)  So, you know, the --
 2    that's the "on behalf of" thing again.  I understand that,
 3    you know, that's sort of a legal conclusion that we don't
 4    need to sort of argue over.  But do you dispute -- do you
 5    dispute that American Protection made phone calls in an
 6    effort to sell your product?
 7            MR. CAFFAS:  I'll object to the form of the
 8    question to the extent that it calls for a legal
 9    conclusion, but you can answer.
10            A.    I honestly don't know what they did,
11    whether they were inbound calls, outbound calls.  They
12    need to adhere by the law.  That's in the Standards of
13    Conduct.  And we have nothing to do with, you know, how
14    they operate.  They're expected to operate legally, within
15    the bounds of the law and the TCPA or any other rules that
16    exist.
17            Q.    (By Mr. Peluso)  Does SunPath take any
18    steps to ensure that they are doing so, or is it simply
19    sending the Standards of Conduct?  Are there any
20    procedures to ensure --
21            A.    If we get --
22            Q.    -- compliance?
23            A.    If we get a complaint, we will look into
24    the complaint if we're able to.  But other than that, no.
25            Q.    When you say "complaint," what do you mean
```

Page 46

1    by that?

2        A.   If a customer were to call us and complain

3    that they think they're getting illegal calls or something

4    like that, we would try to help them out and figure out,

5    you know, what's wrong, but that's it.  We have our policy

6    that they need to operate within the bounds of the law.

7    That's the Standards of Conduct.

8        Q.   Okay.  So just to close the loop, other

9    than the Standards of Conduct, SunPath doesn't have any

10    other practices, policies, or procedures that have been

11    implemented to ensure compliance with the TCPA or the

12    VTPPA, other than the Standards of Conduct and, you know,

13    responding to a consumer calling in with a complaint?

14        MR. CAFFAS:  Objection to the extent that

15    question is vague.  Object to the form of the question.

16    Misstates the witness's testimony so far and calls for

17    improper legal conclusions.  Andrew, if you can answer, do

18    so.

19        A.   That's all, I mean, I've said, that took

20    place.

21        Q.   (By Mr. Peluso)  Okay.  The next topic

22    here, the dialing equipment used to place any telephone

23    call to plaintiff's cellular telephone number, this will

24    probably be a quick one.

25        Did SunPath place any telephone calls to

Page 47

```
 1              A.    That seems like the same question.  We
 2      don't -- we don't do training and we don't have an
 3      internal do not call list.
 4              Q.    Has SunPath ever encouraged or required any
 5      third party to conduct training regarding an internal do
 6      not call list?
 7              MR. CAFFAS:  Objection to the form.  Vague.
 8      And I believe it's asked and answered.  But you can answer
 9      it, Andrew.
10              A.    We don't have an internal do not call list
11      and we haven't had anyone train on a do not call list and
12      we don't make any calls --
13              Q.    (By Mr. Peluso)  Let me just ask -- pardon
14      me.  I broke my rule and spoke over you and I'm sorry.
15              Let's just focus on American Protection,
16      this third party that we've discussed during this
17      deposition.  Has SunPath ever conducted any training to
18      American Protection regarding an internal do not call
19      list?
20              A.    No.  We don't have an internal do not call
21      list.
22              Q.    Okay.  Has SunPath ever encouraged American
23      Protection to implement its own internal do not call list?
24              A.    No.
25              Q.    Okay.  For Topic 12 -- I don't want to keep
```

Page 56

# Exhibit B

## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement. CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products. This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

**JA338**

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%). For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein. In all cases CCM shall be solely responsible for all of its expenses

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year. This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below. Written notice shall be made at least thirty (30) days prior to the end of the current term

2

## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term. Written notice shall be sent via registered mail, return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may be terminated immediately for cause upon written notice from Company to CCM if:

i) CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

ii) An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

iii) Breach by CCM of any provisions contained herein;

iv) CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

v) CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination. Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20. The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed. Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

3

## NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

If to the Company:

SunPath, LTD.
50 Braintree Hill Office Park – Suite 310
Braintree, MA 02184

If to the CCM:

Chukran Management Group, LLC
10627 Cococolo Way
Boynton Beach, FL 33437
Attention: Kobi Chukran

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided. The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

## INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company. Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including but not limited to any action, suit, or other proceeding which may be brought in connection therewith arising out of or related to: (i) CCM's sale of Product, (ii) the negligent acts, omissions or intentional wrongdoing of CCM, (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services, or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

## MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company. The Company may assign this Agreement without CCM's consent. Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement. The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

4

**JA341**

24) Property Rights   Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company. This provision shall survive the expiration or termination of this Agreement.

25) No Benefit to Third Parties.   The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) Changes and Waiver.  This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM.  The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) Entire Agreement.  This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby.  All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) Governing Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) Severability.  If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired, provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) Law and License.  Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement.  Facsimile signatures will be accepted by both parties as execution original signatures.

32) Announcements.  The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) Jurisdiction.  The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                          CHUKRAN MANAGEMENT GROUP, LLC

X _____              X _____

Name: _____              Name: Kobi Chukran

Date: _____              Date: 6/29/17

5

ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement

1)  VSC Product - Horizon
2)  VSC Product – Mileage Plus
3)  VSC Product – Secure Advantage

ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to

All states in the continental US, except: TBD

See attached

EXHIBIT 1 – STANDARDS of CONDUCT



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD. or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD. or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

                                         Very truly yours,

                                         Andrew Garcia
                                         President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

# Exhibit C

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2

3

RUTH SMITH, individually and on
behalf of all others similarly
situated,

4

5

                    Plaintiff,        Case No.
                                      1:22-cv-00081-LMB-
     vs.                              WEF

6

7

     SUNPATH, LTD., a Massachusetts
     corporation,

8

9

                    Defendant.

10

_____/

11

                    DEPOSITION OF
     RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
     d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                    KOBI CHUKRAN

12

13

          (Conducted Via Videoconference)

14

15

     DATE:          November 1, 2022

16

17

     TIME:          11:03 a.m. to 2:06 p.m.

18

19

     PURSUANT TO:   Notice by counsel for Plaintiff
                    for purposes of discovery, use at
                    trial or such other purposes as
                    are permitted under the Federal
                    Rules of Civil Procedure

20

21

22

     REPORTED BY:   Aaron T. Perkins, RMR, CRR, CRC
                    Notary Public, State of
                    Florida at Large

23

24

                    Pages 1 to 128

25

                                              Page 1

```
 1                    MR. CAFFAS:  Object to form as well.
 2       BY MR. SMITH:
 3            Q.   You can answer.
 4            A.   Can you repeat the question please?
 5            Q.   Yeah.  So you said you received leads
 6       from various websites, from the BBB, from your
 7       website.
 8                    How do you utilize the leads?  Do you
 9       use them for telemarketing?  Do you -- I'm trying
10       to understand how you reach out to these people.
11                    MR. TANDY:  I'm going to object.
12                    MR. CAFFAS:  Yeah.  Object to form.
13       It's become a compound question.
14       BY MR. SMITH:
15            Q.   You can answer.
16            A.   Yes.  The leads -- yes, we call them.
17            Q.   Call them?
18            A.   Yes.
19            Q.   All right.  I want to talk about your
20       relationship with SunPath.
21                    Can you tell me when you started working
22       with SunPath?
23            A.   I don't remember the exact date.
24            Q.   Can you give me an approximate date?
25            A.   No.
```

                                                    Page 24

```
 1              Q.   Okay.  You can't guesstimate?  Has it
 2         been five years, ten years?
 3              A.   Again, I want to make sure that I'm as
 4         accurate as possible.  I don't remember exactly.
 5              Q.   So you can't tell me at all.
 6                   Okay.  Have you worked with them within
 7         the relevant time period, which, again, is January
 8         26th, 2018, to the present?
 9              A.   Yes.
10              Q.   How did you hear about them?
11              A.   I don't recall.
12              Q.   When did your relationship with SunPath
13         end?
14              A.   I want to say approximately six months
15         ago.
16              Q.   Why did it end?
17              A.   Moneys owed.
18              Q.   Moneys owed from American Protection to
19         SunPath or the other way around?
20              A.   Yes.
21              Q.   Okay.  How would you describe your
22         relationship with SunPath?
23                   MR. TANDY:  Objection.
24                   THE WITNESS:  Good.
25         BY MR. SMITH:
```

Page 25

```
 1                  like an appropriate time.  My apologies.
 2                       MR. SPORN:  And my apologies for not
 3                  introducing myself properly, but Greg is
 4                  handling the deposition for us.  I'm merely
 5                  observing.
 6                       MR. TANDY:  All good.  Not a problem.
 7                  Thank you.
 8       BY MR. SMITH:
 9            Q.   So I will go back to my question and
10       repeat it.
11                       Is SunPath involved in
12       American Protection's sales process?
13                       MR. TANDY:  Again, note the objection.
14                       MR. CAFFAS:  Object to the form.
15       BY MR. SMITH:
16            Q.   You can still answer the question.
17            A.   I'm not sure I understand the question.
18       It's a very general question.
19            Q.   Okay.  Why don't you tell me how
20       American Protection goes about selling vehicle
21       service contracts.
22            A.   Sure.  We receive a lead of an
23       interested prospect.  We contact that client, and
24       we make sure that they are qualified to receive
25       coverage based on the year, make, and model of the
```

Page 29

1      vehicle, as well as the mileage.  Based on this

2      information, we can determine what is the best

3      coverage we can offer.

4          Q.   And then once you make that

5      determination, what happens next?

6          A.   Then we submit the sale to the -- to be

7      underwritten by SunPath.

8          Q.   And throughout that sales process, you

9      know, you get the lead, you contact the client,

10     you see what they're qualified for, you determine

11     what's best for them, and then you reach out to

12     SunPath.

13              Is that final step, reaching out to

14     SunPath, is that where contacting SunPath would

15     come in to play or would you have contacted them

16     at some point prior?

17              MR. TANDY:  Objection.

18              MR. CAFFAS:  Yeah.  Objection to form as

19          well.  It's a compound question.

20              MR. TANDY:  And I must object.  To the

21          extent that you're attempting to define the

22          term sales pathway, I object to that, or

23          process.  I'm sorry, Mr. Smith, but I do

24          think that's really compound.

25              MR. SMITH:  That's fine.

                                          Page 30

```
 1            Q.    Okay.  So let's walk through this.
 2                  You obtain leads from various sources;
 3       is that correct?
 4            A.    Yes.
 5            Q.    Okay.  And then you're going to reach
 6       out to those leads to potentially sell a vehicle
 7       service contract, right?
 8            A.    Yes.
 9            Q.    Okay.  After you contact the potential
10       client, you're going to find out what they're
11       qualified for; is that fair to say?
12            A.    Well, in some cases, the customer
13       contacts us.
14            Q.    Okay.  Maybe they contact you; you
15       contact them.  Once you're in touch with the
16       potential customer, you determine what they're
17       qualified for?
18            A.    Yes.
19            Q.    Okay.  How do you go about doing that?
20            A.    Based on the customer's vehicle
21       characteristics, the year, make, model, and
22       mileage.
23            Q.    And then what do you do with that
24       information?
25            A.    We enter it into our CRM that allows us
```

Page 32

```
 1           June 29th, 2017; is that correct?
 2                A.    Yes.
 3                      May I ask for a quick five-minute break?
 4                      MR. SMITH:  Of course.  Yeah, let's take
 5                a break.
 6                      (A recess was taken.)
 7                      MR. SMITH:  Back on the record.
 8           BY MR. SMITH:
 9                Q.    And let me share my screen again.  All
10           right.  Kobi, again, I'm showing you what's been
11           marked as Exhibit 2.
12                      You previously testified that this is an
13           agreement between SunPath and American Protection,
14           right?
15                A.    That seems to be.
16                Q.    It looks like it's dated June 29th,
17           2017, right?
18                A.    Yes.
19                Q.    Would that have been the date that your
20           relationship with SunPath began?
21                A.    Yes.
22                Q.    All right.  I will draw your attention
23           to the third "whereas" paragraph, where it says,
24           "Company desires to have CCM market the products
25           to customers for which CCM will be compensated as
```

Page 48

1    set forth below."

2          Do you see that?

3     A.   Yes.

4     Q.   Is it fair to say that SunPath entered

5    this agreement to have American Protection sell

6    its vehicle service plans?

7     A.   Yes.

8     Q.   All right.  And then underneath the

9    "general provisions," paragraph 1, it says, "The

10    company grants CCM authority to solicit customers

11    on a nonexclusive basis only in the territory

12    defined in Addendum B hereto."

13          Do you see that?

14     A.   Yes.

15     Q.   And if we scroll down to Addendum B,

16    which is on page 7 of this exhibit, it states,

17    "The geographic territory in which CCM may solicit

18    sales of products offered by the company shall be

19    exclusive and limited to all states in the

20    continental U.S. except TBD."

21          Do you see that?

22     A.   Yes.

23     Q.   So is this provisions just letting

24    American Protection market its products throughout

25    the U.S.?

Page 49

```
 1                    "maintenance" refers to.  He's not clear what
 2              "maintenance" refers to in this context.
 3                    THE WITNESS:  I'm not clear as to what
 4              "maintenance" refers to.
 5        BY MR. SMITH:
 6              Q.    Okay.  Once American Protection sells
 7        one of SunPath's vehicle protection plans, is
 8        there a continued relationship with that client
 9        that American Protection has?
10              A.    Yes.
11              Q.    How long would that relationship be?
12              A.    For the lifetime of the agreement.
13              Q.    Okay.  And what would
14        American Protection's responsibilities be through
15        the lifetime of that agreement?
16              A.    The customer might ask us for the
17        numbers to the claims department or might call us
18        to find out if something in particular is covered
19        within the plan.
20              Q.    Okay.  And we previously discussed, when
21        a contract was sold, the division of moneys from
22        American Protection to SunPath, right?
23              A.    Yes.
24              Q.    Now, these contracts, they're on a
25        monthly basis, right?  These customers pay a
```

Page 60

1     certain amount each month?

2          A.   Yes.

3          Q.   Okay.  Who do they pay that amount to?

4          A.   To us.

5          Q.   And then does a share of that each month

6     go to SunPath or does -- or how does that work?

7          A.   No.

8               MR. CAFFAS:  Objection.  Asked and

9          answered.

10    BY MR. SMITH:

11         Q.   Go ahead.

12         A.   No.  SunPath bills us for a policy.

13         Q.   Okay.  So after a policy is sold,

14    American Protection has to pay the cost of the

15    policy to SunPath; is that fair to say?

16         A.   Yes.

17         Q.   How soon do they have to pay that cost?

18         A.   We've at various times have had to pay

19    for the cost.

20         Q.   Can you give me an estimate on the

21    amount of time that you have?

22         A.   Somewhere between some months and --

23    between 30 days and more.

24         Q.   Okay.  And then is it fair to say that

25    it's American Protection's responsibility to

                                        Page 61

```
 1         collect each monthly payment from those clients?
 2              A.   Yes.
 3              Q.   Okay.  What happens if they cancel their
 4         contract or stop paying?
 5              A.   Then the plan --
 6                   MR. CAFFAS:  Object to the form.
 7                   THE WITNESS:  Then the contract is
 8              cancelled.
 9         BY MR. SMITH:
10              Q.   Does SunPath provide a refund of the
11         cost to American Protection then?
12              A.   Yes.
13              Q.   Okay.  I will scroll to page 2,
14         paragraph 10.  Give me one second.  All right.  So
15         it says, "All amounts constituting product seller
16         cost and/or net price which are received by CCM
17         shall be held in trust by CCM for the company's
18         sole benefit."
19                   Do you see that?
20              A.   Yes.
21              Q.   Is product seller costs in this context,
22         is that the cost that you were referring to that
23         gets paid to SunPath?
24              A.   Yes.
25              Q.   And is net price in this context, is
```

Page 62

**JA358**

```
 1              really sure, Taylor, there was a question.
 2         The last question I heard was, Do you know
 3         the difference between the two entities?
 4         Which I know the answer was no.
 5              MR. SMITH:  Right.  That --
 6              MR. TANDY:  Please, ask the question.
 7    BY MR. SMITH:
 8         Q.  Do you know why there's two separate
 9    agreements governing the relationship -- --
10              MR. CAFFAS:  Objection to --
11    BY MR. SMITH:
12         Q.  -- with SunPath?
13         A.  No, I don't.
14         Q.  Okay.
15              MR. CAFFAS:  Also, note my objection to
16         speculation to that question as well.
17              MR. SMITH:  That's all I wanted to ask
18         with this one.
19              Let's take five-minute break.
20              (A recess was taken.)
21    BY MR. SMITH:
22         Q.  Kobi, I will jump back to your
23    telemarketing.
24              So you previously explained your
25    telemarketing process.  My question relates to at
```

Page 73

```
 1        the time you're placing calls.  So at the time
 2        American Protection places a call, does it know
 3        which company's vehicle service plans it will be
 4        pitching on the call?
 5             A.    No.
 6             Q.    Okay.  Is that information determined
 7        later based upon the potential client's vehicle's
 8        make, model, and year?
 9             A.    Yes.
10             Q.    Okay.  And can you tell me what portion
11        of your business is generated through
12        telemarketing?
13                  MR. CAFFAS:  I will object as to vague.
14             I don't believe telemarketing has been
15             established definition-wise.
16                  THE WITNESS:  I'm not sure what you mean
17             by "telemarketing," as well.
18        BY MR. SMITH:
19             Q.    When you place calls to potential
20        clients to sell products, that would be
21        telemarketing.  So I need to understand how much
22        of your business comes from telemarketing
23        activities.
24             A.    So if I send out the postcard to a
25        customer and they call us to request information,
```

Page 74

1      other than what was previously produced?

2          A.    No.

3          Q.    Okay.  Does American Protection ever

4      obtain a listing of numbers registered on the DNC

5      Registry?

6          A.    Yes.

7          Q.    How often does it obtain that list?

8          A.    That is provided to us by any lead

9      providers in this case.  So, in other words, if

10     we -- any kind of leads that we acquire are

11     cleansed and cleaned and suppressed against the

12     National Do Not Call List.

13         Q.    Okay.  After American Protection

14     receives those leads, does it take any steps to

15     ensure that it's not calling numbers that are in

16     those leads that are registered on the National Do

17     Not Call Registry?

18         A.    We run those against our internal DNC

19     lists.

20         Q.    Just your internal DNC list?

21         A.    Yes.

22         Q.    Not the National DNC List?

23         A.    Not -- no.  It's already done by the

24     lead providers.

25         Q.    Okay.  Does American Protection maintain

                                                Page 83

1    records of prior express consent from the

2    individuals that it places calls to?

3        A.   No.

4        Q.   How does American Express [sic] ensure

5    that the individuals that it's placing calls to

6    provided prior express consent?

7            MR. CAFFAS:  I will object to this as

8        vague.  I believe you just asked about

9        American Express.  I assume you're not

10       talking about the credit card company.

11           MR. SMITH:  Did I say American Express?

12           MR. CAFFAS:  Yes.

13           MR. SMITH:  Strike that.

14   BY MR. SMITH:

15       Q.   How does American Protection ensure that

16   individuals that it's placing calls to have

17   provided prior express consent?

18       A.   We review the method of which they

19   request information.

20       Q.   So can you say that again?

21       A.   We review the method of which they have

22   requested information.

23       Q.   What do you mean by that?

24       A.   I mean I review to make sure that the

25   proper opting language is present, that our name

Page 84

```
 1        are you able to figure out the source of that
 2        contact information, where it came from?
 3             A.   In some cases I could, and in some cases
 4        I can't.
 5             Q.   Okay.  What about in the plaintiff's
 6        situation?
 7             A.   What about it?
 8             Q.   You previously said that
 9        American Protection sent a mailing to her; is that
10        correct?
11             A.   Yes.
12             Q.   Do you know where it got her contact
13        information prior to sending that mailing?
14             A.   I do not, no.
15             Q.   Did you search for that information?
16             A.   Yes.
17             Q.   What repositories were searched?
18             A.   Our CRM.
19             Q.   CRM.
20                  Does SunPath ever provide leads to
21        American Protection?
22             A.   No.
23             Q.   All right.  I will pull up my next
24        exhibit.
25                  (Exhibit No. 7 was marked for

                                            Page 100
```

 1          record?

 2                THE COURT REPORTER:  Back on the record, sir.

 3          Thank you.

 4                MR. SMITH:  All right.

 5     BY MR. SMITH:

 6          Q.   I'm going to re-ask that question, Kobi.

 7                Does American Protection have any records of

 8     the actual inbound or outbound calls to Plaintiff?

 9          A.   No.

10          Q.   Okay.  Does American Protection have any other

11     documents in its possession related to Plaintiff that

12     have not been produced?

13          A.   No.

14          Q.   Does American Protection have any record of

15     Plaintiff providing any prior express written consent?

16          A.   I'm sorry.  What -- what was the question

17     again?

18          Q.   Yeah.  Does American Protection have any record

19     of Plaintiff providing any prior express written

20     consent?

21                MR. CAFFAS:  I'm going to object to the

22          vagueness of that question.  Prior express written

23          consent, to what?

24                MR. TANDY:  I will join.

25     BY MR. SMITH:

                                                    Page 155

```
 1        Q.    You can answer.
 2        A.    No.
 3        Q.    Does American Protection have any policies or
 4   procedures to ensure compliance with the Virginia
 5   Telephone Privacy (sic) Act?
 6        A.    Everything has been provided to you.
 7        Q.    Okay.  Other than the documents that have been
 8   provided, does American Protection have any policies or
 9   procedures to ensure compliance with the Virginia
10   Telephone Privacy Act?
11        A.    No.
12        Q.    Okay.  And does American Protection have any
13   specific policies or procedures that relate to
14   compliance with the Virginia Telephone Privacy Act?
15        A.    No.
16        Q.    Prior to this lawsuit, did you have -- were you
17   aware of the Virginia Telephone Privacy Act?
18        A.    No.
19        Q.    Okay.  I want to go through calls to Plaintiff
20   briefly and ask you questions about them.
21              So Plaintiff alleges, on May 26th, 2020, that
22   she received two calls, and the caller ID was a
23   410-844-6327.
24              Do you know if American Protection has ever
25   utilized that number to place calls?
```

Page 156

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

```
 1            MR. SMITH:  Objection.  Asked and answered.
 2            THE WITNESS:  No.
 3      BY MR. CAFFAS:
 4         Q.   Have you ever inquired about those types of
 5      sales and -- to SunPath and been told you weren't
 6      permitted to sell those types of products?
 7         A.   I don't recall.
 8         Q.   I am now clicking over to the "Services" tab of
 9      American Protection Corp's website.
10            Do you see where it says "Our Partners" on the
11      left side of the screen?
12         A.   Yes.
13         Q.   Okay.  And can you describe the -- the names of
14      the partners that are listed?
15         A.   Yes.
16         Q.   Can you read them off for me?
17         A.   Royal, Marathon, SunPath, Interstate.
18         Q.   Okay.  And are all those --
19            Are those all separate companies?
20         A.   Yes.
21         Q.   Do you know what kind of products or services
22      those companies are -- or provide?
23         A.   Vehicle service contracts and home service
24      contracts.
25         Q.   Okay.  And have you sold those companies'
```

                                                    Page 213

1    based on what the consumer's needs would be, correct?

2         A.    Correct.

3         Q.    Okay.  So, for example, there would have been a

4    time when you were able to offer a con -- a consumer a

5    SunPath product or a Marathon product, for example,

6    based on whatever that consumer's vehicle was?

7              MR. SMITH:  Objection.  Asked and answered.

8              THE WITNESS:  Since we haven't talked with

9         Marathon or Interstate in many years, the answer is

10        no.  Because when we worked with SunPath, we mostly

11        sold SunPath products.  Royal is just a recent

12        addition to our -- to our products.

13             So the -- that's why I'm saying -- that's why

14        I'm saying no.

15             (Pause in the proceedings.)

16   BY MR. CAFFAS:

17        Q.    Okay.  I am going to go back to something you

18   had discussed on the first day of your deposition

19   testimony.  You were describing the process of how

20   American Protection subcontractors would be connected to

21   potential customers.

22             And I believe you said they would be connected

23   to the customer, and then the first step is that the

24   American Protection subcontractor would introduce

25   themselves to the potential customer, correct?

                                              Page 215

```
 1                MR. SMITH:  Objection.

 2                THE WITNESS:  Yes.

 3                MR. SMITH:  Misstates the witness's testimony.

 4        Calls for speculation.

 5     BY MR. CAFFAS:

 6        Q.   You can answer, Mr. Chukran.

 7        A.   Yes.

 8        Q.   And then under the next steps, in Discovery, is

 9     it correct that American Protection then asks for the

10     year, make, and model of the potential customer's

11     vehicle?

12        A.   Yes.

13        Q.   And then asks for how many miles, if they're

14     the original owner, and the year -- excuse me -- how

15     many miles they drive in a year, correct?

16        A.   Yes.

17        Q.   And what is the purpose for them asking that

18     information?

19        A.   To determine what's the best type of coverage

20     that's available based on the mileage and to make sure

21     the car actually -- the vehicle actually qualifies for

22     coverage.

23        Q.   So is it accurate then that, when an

24     American Protection subcontractor begins the call, and

25     before he or she learns that information from the
```

Page 217

**JA368**

1    customer, that they aren't aware what product they're

2    going to be offering to the customer?

3        A.   Yes.

4        Q.   And that -- the product that they're going to

5    be offering the customer, that is determined by entering

6    that information in to the Inline Customer Relation

7    Management System, correct?

8        A.   Yes.

9        Q.   So it's determined automatically, without any

10   input from the subcontractor?

11       A.   I'm sorry.  What is your question?

12       Q.   So the subcontractor doesn't pick and choose;

13   the system might spit out whatever company's products

14   just works best with the customer's vehicle, right?

15       A.   The subcontractor has access to a number of

16   different plans.  So, for example, SunPath might offer a

17   higher level of coverage versus a lower level of

18   coverage.

19       Q.   Okay.  So it could be a SunPath plan versus

20   another company's plan, if another company's plan

21   offered better coverage?

22       A.   Potentially.

23       Q.   And, again, the subcontractor on the call

24   wouldn't know that prior to the customer providing their

25   information for their vehicle on the call, right?

Page 218

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

1    American Protection has never spoofed any telephone

2    number associated with First Citizens Bank, to your

3    knowledge?

4        A.   Yes.

5        Q.   Does -- strike that.

6             Does American Protection subscribe to the

7    reg- -- the Federal Do Not Call Registry?

8        A.   Not at this time, no.

9        Q.   Why?  Why not?

10       A.   Our subscription expired.

11       Q.   And does AP --

12            Or at what time did it subscribe to the Do Not

13   Call Registry?

14       A.   I don't have the exact dates.

15       Q.   Would it be --

16            Would it have been within the past year that

17   your subscription expired?

18       A.   No.

19       Q.   Can you give me a ballpark of when the

20   subscription would have expired?

21       A.   I believe a couple of years.

22       Q.   Okay.  And in that time, did AP intentionally

23   make calls to consumers --

24       A.   No.

25       Q.   -- on the Do Not Call Registry?

                                              Page 231

# Exhibit D

## Licensee Search

# Licensee Detail

**License #:**

W093252

**Full Name:**

CHUKRAN MANAGEMENT GROUP, LLC.

**Business Address:**

6333 NW 36TH AVE
COCONUT CREEK, FL 33073

**Mailing Address:**

6333 NW 36TH AVE
COCONUT CREEK, FL 33073

**Email:**

KOBI@AMERICANPROTECTIONCORP.COM

**Phone:**

(800) 709-1117Ext. 101

**County:**

Broward

**NPN #:**

16616751

| Valid Licenses | | |
|---|---|---|
| **Type** | **Issue Date** | **Qualifying Appointment** |

## Active Appointments

### AUTOMOBILE WARRANTY (0253)

| Company Name | Issue Date | Exp Date |
|---|---|---|
| WESCO INSURANCE COMPANY | 4/18/2012 | 4/30/2024 |
| SUNPATH LTD CORP. D/B/A SUNPATH LTD CORP. OF DELAWARE | 9/20/2021 | 9/30/2023 |

## Invalid Licenses

No invalid licenses found.

## Inactive Appointments

### AUTOMOBILE WARRANTY (0253)

| Company Name | Issue Date | Exp Date | Status Date |
|---|---|---|---|
| INTERSTATE NATIONAL DEALER SERVICES OF FLORIDA, INC | 3/17/2014 | 3/31/2020 | 3/3/2020 |
| SUNPATH LTD CORP. D/B/A SUNPATH LTD CORP. OF DELAWARE | 7/13/2017 | 7/31/2021 | 9/18/2021 |
| ENTERPRISE FINANCIAL GROUP OF FLORIDA, INC. | 5/15/2018 | 5/31/2020 | 4/1/2020 |
| UNITED SERVICE PROTECTION, INC. | 5/4/2018 | 5/31/2024 | 7/24/2022 |
| LYNDON SOUTHERN INSURANCE COMPANY | 9/11/2015 | 9/30/2017 | 9/27/2016 |
| CONSUMERS SERVICES OF FLORIDA, INC. | 1/7/2013 | 1/31/2017 | 12/7/2016 |
| ENTERPRISE FINANCIAL GROUP OF FLORIDA, INC. | 2/1/2013 | 2/28/2017 | 1/19/2016 |

**JA373**
**Agency Locations**

No Agency Location information found.

Copyright © Florida Department of Financial Services 2018

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## DECLARATION OF TAYLOR T. SMITH

I, Taylor T. Smith, declare as follows:

1.      I am an attorney with the law firm Woodrow & Peluso, LLC and counsel of record for Plaintiff Ruth Smith ("Plaintiff" or "Smith").

2.      On January 26, 2022, Plaintiff filed the instant action alleging wide-scale violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act") and the Virginia Telephone Privacy Protection Act ("VTPPA").

3.      On November 9, 2022, Plaintiff issued a subpoena directed to Five9, Inc. ("Five9"), which was identified as one of the telephone service providers that was utilized by Chukran Management Group, LLC a/b/a American Protection Corp. ("American Protection") to place the calls at issue.

4.      On November 30, 2022, in response to the subpoena, Five9 produced the call records associated with American Protection's account. The call records span from 2018 to the present. The call records are contained within a series of .csv files. Between May 1, 2018 and December 31, 2021, the call records are reflected within forty-five (45) separate .csv files. The

1

records reflect hundreds of thousands (likely millions) of calls placed by American Protection throughout the class period.

5.     The call records include identifying information with respect to all the calls, including but not limited to the following: date, time, the number called (or DNIS number), the originating number (or ANI number), the direction of the call (whether it was inbound vs. outbound), duration, and disposition. Each of the call records also includes information to identify the called party, including their: name, last name, street address, city, state, zip code, and phone number.

6.     In Plaintiff's case, counsel located calls placed to her phone number between May 2020 and August 2020. In total, the records reveal that Plaintiff received 172-calls between May and August 2020, which are broken down as follows:

      a.   Nineteen (19) calls in May 2020;

      b.   Eighty-Three (83) calls in June 2020;

      c.   Fifty-Four (54) calls in July 2020; and

      d.   Sixteen (16) calls in August 2020.

7.     For the purposes of class certification, our office conducted a review of two months of the call records spanning from May 2020 to June 2020.

8.     In May 2020, the records reflect 4,745 calls placed to 386 unique telephone numbers corresponding with Virginia addresses. These numbers were obtained by filtering out all "inbound" calls and filtering only calls placed to individuals with an address listed as residing in the State of "Virginia" or "VA". Of the unique Virginia telephone numbers called in May 2020, counsel utilized searchbug.com to identify 151 of the telephone numbers were registered on the National Do Not Call Registry.

2

**JA377**

9.     In June 2020, the records reflect 3,298 calls placed to 452 unique telephone numbers corresponding with Virginia addresses. These numbers were obtained by filtering out all "inbound" calls and filtering only calls placed to individuals with an address listed as residing in the State of "Virginia" or "VA". Of the unique telephone numbers called in June 2020, counsel utilized searchbug.com to identify 174 telephone numbers that were registered on the National Do Not Call Registry.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 14, 2022, in Denver, Colorado.

By: _/s/ Taylor T. Smith_

Taylor T. Smith (admitted _pro hac vice_)
tsmith@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

3

# Exhibit F

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

**Samantha** Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance
- Complimentary Car Rental & Towing
- Complimentary Trip Interruption / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St

## Vehicle Summary

Vehicle
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

Coverage Plan
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

Plan Cost

| | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

SMITH000025

**JA380**

Case 1:22-cv-00081-LMB-WEF   Document 50-6   Filed 12/14/22   Page 3 of 6 PageID# 500

Reston, VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

SMITH000026

**JA381**

# American Automotive Protection

☎ - (800) 427-1806

## **Your Plan**

Coverage Provided By

## SunPath

Coverage Duration

## 48$^{mo}$ / 75,000$^{mi}$

The Vehicle Service Contract you are purchasing will cover your vehicle until the vehicle odometer reads 76,000$^{mi}$ or June 27, 2024, whichever occurs first.

Coverage Type

## Diamond Coverage

○ View Coverage Terms (../openfile.aspx?documentid=139)

## Deductible

○ $0.00
○ $50.00
◉ $100.00

## Payment

◉ Monthly Installments
○ Full Payment

Due Today

## $99.00

30 Monthly Payments of

## $116.33

## Your Vehicle

## 2016 BMW 228

SMITH000022

**JA382**

**Exact Odometer:**    9,500

Enter VIN Number     Validate

Vehicle VIN needs validated for accurate pricing.

## Policy Holder Information

**First Name**

Ruth

**Last Name**

Smith

**Phone**

(703) 728-9650

**Email**

rdssmith@gmail.com

**Address**

12000 Market St

**Apt/Suite**

apt 356

**City**

Reston

**State**

VA

**Zip**

20190

## Your Account

SMITH000023

Upon review and approval of your purchase you will be notified via email how to access your account online. If you already have an account, this new policy will be linked to your existing account by matching your email address on file.

SMITH000024

# Exhibit G

## WOODROW & PELUSO, LLC FIRM RESUME

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

### OUR PRACTICE AREAS

## 1.   CONSUMER CLASS ACTIONS

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

### TCPA Class Actions

Woodrow & Peluso attorneys have successfully litigated and settled numerous class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including Rita's Italian Ice, Global Marketing Research Services, LKQ Corporation, Art Van, Telenav, Price Self Storage, and the NRA, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

Notable TCPA cases and settlements include:

• *Tech Instruments, Inc. v. Eurton Electric Inc.* 1:16-cv-02981-MSK-KMT (Krieger, C.J.) (adversarial class certification granted under for transmission of junk faxes)

• *Bowman v. Art Van Furniture, Inc.* 2:17-cv-11630-NGE-RSW (Edmunds, J.) (granting final approval to all in, non-reversionary settlement fund of $5,875,000 in pre-recorded message case) (final approval granted December 10, 2018);

- *Wendell H. Stone & Co. v. LKQ Corporation*, 16-cv-07648 (N.D. Ill.) (Kennelly, J.) (granting final approval to all-in, non-reversionary, settlement fund of $3,266,500) (final approval granted May 16, 2017);

- *Martin et al. v. Global Marketing Research Services, Inc.*, 6:14-cv-1290-ORL-31-KRS (M.D. FL) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in settlement creating $10,000,000 common fund for class of 688,500 cellphone users) (final approval granted November 4, 2016);

- *Mendez v. Price Self Storage Management, Inc.*, 3:15-cv-02077-AJB-JLB (S.D. CA) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in TCPA settlement providing option of $750 cash or $1,100 in storage certificates) (final approval granted August 23, 2016);

- *Sherry Brown and Ericka Newby v. Rita's Water Ice Franchise Company, LLC*, 2:15-cv-03509-TJS (E.D. PA) ("all in" non-reversionary $3,000,000 settlement fund for text messages) (final approval granted March 20, 2017);

- *Morris et al v. SolarCity, Inc.* 3:15-cv-05107 (N.D. CA) (JPA with counsel on $15 million common fund TCPA settlement, final approval granted February 1, 2018).

- *Gergetz v. Telenav, Inc.* 3:16-cv-04261 (N.D. CA) ("all-in" non-reversionary $3.5 million fund for text messages) (final approval granted on September 6, 2018).

Further, while a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al*. (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

### FCRA Class Actions

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, Freeman Webb, Inc., and others. This includes attaining adversarial class certification in the case of *Munoz v. 7-Eleven, Inc.*, 2:18-cv-03893-RGK-AGR (C.D. Cal., October 28, 2018) and a subsequent class settlement of $1,972,500. This also includes *Woodford v. World Emblem*, 1:15-cv-02983-ELR, an FCRA settlement providing between $315 and $400 to claimants (final approval granted January 23, 2017).

## Banking and Financial Institutions Class Actions

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

- *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

## General Consumer Protection Class Actions

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana

industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1- 718 *et seq.*, which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets.

The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates. This includes attaining adversarial class certification in the case of *Joseph v. North Broward Hospital District*, Case No. 15-013213 (04) (17th Circuit Court, Florida).

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins."

**2.    COMMERCIAL LITIGATION**

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small to medium-sized businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfers. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

**3.    APPEALS**

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Mitchell v. Winco Foods, LLC*, No. 1:16-cv-00076-BLW, Appeal No. 17-35998 (9th Cir. Nov. 29, 2018). Firm attained reversal of district court's dismissal of putative FCRA class action on Article III standing grounds;

- *Walker v. Fred Meyer, Inc.*, Appeal No. 18-35592 (9th Cir. Mar. 20, 2019). Firm attained reversal of district court's dismissal of putative FCRA class action, the Ninth Circuit found that the disclosure at issue violated the FCRA;

- *Brown v. Centura Health Corporation,* No. 15CV31140 (Douglas Cnty. Colo.), Appeal No. 17CA430. Firm achieved reversal of dismissal of putative class action lawsuit challenging hospital's use of chargemaster billing system);

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law

for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case was reversed on writ of certiorari to the United States Supreme Court (argued by different attorneys).

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq*.

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et seq*. does not allow for class actions. Case settled prior to the resolution of the appeal.

## OUR ATTORNEYS

At present, our firm consists of 4 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case and the Supreme Court decision that ultimately reversed it (and now the Ninth Circuit's decision to re-affirm its prior finding of Article III standing) present some of the most widely-litigated issues in class action practice today.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed lead settlement class counsel in other HELOC suspension litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc.*

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

### EDUCATION
Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan-Ann Arbor, B.A, Political Science, with Distinction, 2002

### ADMISSIONS
State of Illinois (2005)
State of Colorado (2011)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, Northern District of Illinois
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and

JA391

moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick has been appointed Class Counsel and Settlement Class Counsel in numerous consumer cases throughout the country. Patrick has also successfully argued appeals before the Ninth Circuit Court of Appeals and the Colorado Court of Appeals.

Patrick was named to the Super Lawyers "Rising Star" list in 2017, 2018, 2019, and 2020.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D.
New York University, B.S.

**ADMISSIONS**
State of Colorado
United States Court of Appeals for the Ninth Circuit
United States Court of Appeals for the Eleventh Circuit
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States District Court, Southern District of Illinois
United States District Court, Western District of Wisconsin


**TAYLOR TRUE SMITH** focuses his practice on consumer class actions.

Throughout his life and career, Taylor has developed a passion for consumer advocacy. By pursuing class actions on behalf of consumers, Taylor can give consumers not just a voice but also a seat at the bargaining table.

Taylor received his law degree from the Creighton University School of Law. During law school, he interned with the South Dakota Supreme Court. Prior to beginning law school, Taylor attended South Dakota State University where he earned a B.S. in Economics.

Taylor was raised in Fort Pierre, South Dakota and currently resides in Denver, Colorado.

Education

**JA392**

Creighton University School of Law, J.D. *Cum Laude* 2017
South Dakota State University, B.S. *Magna Cum Laude* 2013

Admissions
State of Colorado (2017)
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois

**STEPHEN KLEIN** devotes his practice to consumer class actions and commercial litigation.

In a word, Stephen prides himself on the pursuit of results. Whether championing consumers in class actions to curb injurious commercial practices or helping businesses to secure their resources and protect their rights, Stephen is dedicated to achieving client goals.

Stephen earned his law degree at the University of Denver, Sturm College of Law, where he earned a certificate in intellectual property law. While in law school, Stephen worked as a student attorney in the Environmental Law Clinic and as a legal fellow in DU's Office of Technology Transfer. He also served as Managing Editor of the University of Denver Water Law Review. Prior to law school, Stephen earned a B.A. in Environmental and Sustainability Studies from the University of Northern Colorado.

Originally from Chicago, Illinois, Stephen spent time in Minnesota, Ohio, and Texas before settling in the Denver metro area.

**EDUCATION**
University of Denver, Sturm College of Law, J.D., Order of the Coif, 2018
University of Northern Colorado, B.A., *summa cum laude*, 2014

**ADMISSIONS**
State of Colorado (2018)
United States District Court, District of Colorado

**JA393**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S WITNESS LIST**

Pursuant to Fed. R. Civ. P. 26 and the Court's Scheduling Order, Plaintiff Ruth Smith

("Plaintiff"), by and through her counsel, respectfully submits her witness list. Included are names

of witnesses who Plaintiff expects to call and names of witnesses who Plaintiff may call if the need

arises:

Expect to call:

- Plaintiff Ruth Smith

- SunPath, Ltd. representative
  Andrew Garcia, president of SunPath

- Chukran Management Group, LLC's d/b/a American Protection Corp. representative
  Kobi Chukran (by deposition)
  10627 Cocobolo Way
  Boynton Beach, Florida 33437

- Serge D. Jorgensen, Sylint Group
  240 N. Washington Blvd. 6th Floor
  Sarasota, Florida 34236

May call:

- Five9, Inc. corporate representative

1

**JA394**

Dated: December 14, 2022

RUTH SMITH, individually and on behalf of all others similarly situated,

By: _/s/ Francis J. Driscoll, Jr._
    One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

2

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 14, 2022.

_/s/ Francis J. Driscoll, Jr._

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | **Case No. 1:22-cv-00081 (LMB/TCB)** |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

## DEFENDANT SUNPATH, LTD.'S RULE 26(a)(3) PRETRIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(3) and this Court's Scheduling Order of August 5, 2022 (ECF 25), Defendant SunPath, Ltd. ("SunPath"), by counsel, hereby submits the following list of witnesses, deposition designations, and exhibits for use at trial in this matter:

**1.      The name, and if not previously provided, the address and telephone number of each witness – separately identifying those the party expects to present and those it may call if the need arises:**

| Witness Name | Will Call | May Call |
|---|---|---|
| Ruth Smith | X | |
| Andrew Garcia – Corporate Designee of SunPath, Ltd. | X | |
| Kobi Chukran – Corporate Designee of Chukran Management Group d/b/a American Protection (by deposition designation) | | X |
| Defendant reserves the right to call other witnesses named in Plaintiff's Rule 26(a)(3) Pretrial Disclosures. | | X |

1

**JA397**

2.      The designation of those witnesses whose testimony the party expects to present by deposition, and, if not taken stenographically, a transcript of the pertinent parts of the deposition:

| Deponent/Witness Name | Page:Line Number |
|---|---|
| Kobi Chukran – Corporate Designee of Chukran Management Group d/b/a American Protection (should Mr. Chukran not appear as a witness at trial) | Deposition Transcript Volume 1: 19:3 to 27:22; 29:9 to 30:7; 31:4 to 52:1; 60:6 to 63:3; 73:22 to 79:25; 80:19 to 89:18; 92:14 to 94:3; 99:23 to 107:18 Deposition Transcript Volume 2: 138:8 to 144:12; 145:24 to 152:16; 155:7 to 162:8; 165:9 to 171:17; 176:24 to 179:14; 180:8 to 185:13; 186:2-23; 189:3 to 193:13; 195:25 to 203:22: 205:8 to 210:3; 212:12 to 226:21; 228:6 to 237:5; 237:18 to 243:1; 244:5 to 246:8; 247:14-17; Exhibits 1-20 |

Defendant reserves the right to use additional deposition testimony for the purposes of impeachment or any other purpose permitted by the Federal Rules of Civil Procedure.

3.      An identification of each document or other exhibit, including summaries of other evidence separately identifying those the party expects to offer and those it may offer if the need arises:

| Exhibit | Bates No. | Description | Expect to Offer | May Offer |
|---|---|---|---|---|
| 1. | Produced by American Protection (SunPath received via Plaintiff) | Contract between American Protection and SunPath | X | |
| 2. | ECF No. 19-1 | Form SunPath Call Center Marketing Agreement with attached Standards of Conduct | X | |
| 3. | Produced by Plaintiff (not marked) | Plaintiff's Rule 26(a) Initial Disclosures | | X |
| 4. | Produced by Plaintiff (not marked) | Plaintiff's First Supplemental Rule 26(a) Initial Disclosures | | X |

2

| 5. | Produced by Plaintiff (not marked) | Plaintiff's Second Supplemental Rule 26(a) Initial Disclosures | | X |
|---|---|---|---|---|
| 6. | Produced by Plaintiff (not marked) | Plaintiff's First Responses and Objections to SunPath's Discovery Requests | | X |
| 7. | Produced by Plaintiff (not marked) | Plaintiff's First Supplemental Responses to SunPath's Discovery Requests | | X |
| 8. | Produced by Plaintiff (not marked) | Plaintiff's Second Supplemental Responses to SunPath's Discovery Requests | | X |
| 9. | Produced by Plaintiff (not marked) | Plaintiff's Third Supplemental Responses to SunPath's Discovery Requests | | X |
| 10. | Produced by Defendant (not marked) | SunPath's First Objections and Responses to Plaintiff's Discovery Requests | | X |
| 11. | Produced by Defendant (not marked) | SunPath's Supplemental Objections and Responses to Plaintiff's Discovery Requests | | X |
| 12. | SUNPATH_SMITH_00001-8 | Emails between SunPath and American Protection | X | |
| 13. | SMITH_00001-20 | Screenshots of Plaintiff's iPhone Calls | X | |
| 14. | SMITH_000031-36 | Plaintiff's Notes Describing Calls Received | | X |
| 15. | SMITH_000022-26; SMITH_000029-30 | Emails between Plaintiff and American Protection | X | |
| 16. | Produced by Plaintiff (not marked) | Plaintiff's Subpoena to American Protection | | X |
| 17. | Produced by American Protection (SunPath received via Plaintiff) | American Protection's Written Response to Plaintiff's Subpoena | | X |
| 18. | Produced by American Protection (SunPath received via Plaintiff); Ex. 6 to American Protection Deposition Transcript | American Protection's Do Not Call Policy | X | |

3

**JA399**

| 19. | Produced by American Protection (SunPath received via Plaintiff); Ex. 4 to American Protection Deposition Transcript | American Protection's Sales Script | X | |
|-----|---|---|---|---|
| 20. | Produced by American Protection (SunPath received via Plaintiff); Ex. 5 to American Protection Deposition Transcript | American Protection Corp. Sales Rules | X | |
| 21. | Produced by American Protection (SunPath received via Plaintiff); Ex. 11 to American Protection Deposition Transcript | American Protection Postcard | X | |
| 22. | Produced by American Protection (SunPath received via Plaintiff); Ex. 10 to American Protection Deposition Transcript | American Protection Letter Advertisement | | X |
| 23. | Produced by American Protection (SunPath received via Plaintiff); Ex. 8 to American Protection Deposition Transcript | American Protection's Sample Subcontractor Agreement | X | |

**JA400**

| 24. | Produced by American Protection (not marked); Ex. 9 to American Protection Deposition Transcript | Screenshots of American Protection's Inline CRM System | X | |
|-----|---|---|---|---|
| 25. | Produced by American Protection (not marked); Ex. 12 to American Protection Deposition Transcript | American Protection's Subcontractor Proposal with Samantha Jaeger | | X |
| 26. | Referenced in American Protection Deposition Day 2 at 212:6-17 | Screenshot of American Protection's Website's Marketing Partners Page | | X |
| 27. | Produced by Plaintiff (not marked); Ex. 19 to American Protection Deposition Transcript | Screenshots from Florida Department of Financial Services Page | | X |
| 28. | Produced by Plaintiff (not marked) | Plaintiff's Subpoena to Verizon | | X |
| 29. | Produced by Plaintiff (not marked) | Verizon Response to Plaintiff's Subpoena | | X |
| 30. | Produced by Plaintiff (not marked) | Plaintiff's Subpoena to AT&T | | X |
| 31. | Produced by Plaintiff (not marked) | AT&T's Response to Plaintiff's Subpoena | | X |
| 32. | Produced by Plaintiff (not marked) | Plaintiff's Subpoena to Lumen | | X |
| 33. | Produced by Plaintiff (not marked) | Lumen's Response to Plaintiff's Subpoena | | X |
| 34. | Produced by Plaintiff (not marked) | Plaintiff's Subpoena to Five9, Inc. | | X |
| 35. | Produced by Plaintiff (not marked) | Five9, Inc.'s Written Response to Plaintiff's Subpoena | | X |
| 36. | Produced by Plaintiff (not marked) | List provided by Five9, Inc., of Caller IDs Associated with American Protection | | X |
| 37. | Produced by Plaintiff (not marked) | Logs Produced by Five9, Inc. in Response to Plaintiff's Subpoena | | X |

**JA401**

| 38. | Produced by SunPath (not marked) | Summary of records relating to Plaintiff's Phone Number extracted from Five9 records | | X |

Defendant reserves the right to introduce any exhibits identified by Plaintiff and any documents for impeachment or rebuttal evidence.

### Use of Demonstrative Evidence

Defendant may use demonstrative evidentiary techniques at trial. This may include the use of a jury notebook (selecting certain exhibits and making copies in a binder for the jurors), enlarged exhibits, and the use of drawings, colors, charts, summaries, or highlighting of portions of select exhibits. Defendant further reserves the right to supplement these disclosures pursuant to Rule 26(e).

December 14, 2022

Respectfully Submitted,
**SUNPATH, LTD.**

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

6

**JA402**

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that I caused the above and foregoing DEFENDANT SUNPATH LTD.'S

RULE 26(a)(3) PRETRIAL DISCLOSURES to be served upon counsel of record in this case via

the U.S. District Court CM/ECF System on December 14, 2022.

                                         /s/ *Gregory M. Caffas*
                                       Gregory M. Caffas

**JA403**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>　　　　Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S TRIAL EXHIBIT LIST**

　　　Plaintiff Ruth Smith ("Plaintiff"), by and through her counsel, respectfully submits this this

trial exhibit list pursuant to the Court's Scheduling Order:

| Ex. # | Bates # | Description | Expects to Offer | May Offer |
|---|---|---|---|---|
| 1 | N/A | Stipulated Facts | x | |
| 2 | SMITH000022-26 | May 28, 2020, 6:03 pm Email (w/link to website) | X | |
| 3 | SMITH000029-30 | June 11, 2020 Email | X | |
| 4 | SMITH000021 | National Do Not Call Registry – Registration Confirmation | X | |
| 5 | SMITH000027 | Call Recording | X | |
| 6 | SMITH000028 | Call Recording | X | |
| 7 | SMITH000031-36 | Notes of Calls | X | |
| 8 | N/A | Plaintiff's Objections and Responses to Defendant's First Set of Discovery Requests | | X |
| 9 | N/A | Plaintiff's First Supplemental Objections and Responses to Defendant's First Set of Discovery Requests | | X |
| 10 | N/A | Plaintiff's Second Supplemental Objections and Responses to | | X |

1

**JA404**

| | | | | |
|---|---|---|---|---|
| | | Defendant's First Set of Discovery Requests | | |
| 11 | N/A | Plaintiff's Third Supplemental Objections and Responses to Defendant's First Set of Discovery Requests | | X |
| 12 | N/A | Call Center Marketing Agreement (with Standards of Conduct) | | X |
| 13 | N/A | Defendant's Responses to Plaintiff's First Set of Discovery Requests | | X |
| 14 | N/A | Defendant's Supplemental Responses to Plaintiff's First Set of Discovery Requests | | X |
| 15 | N/A | CALL CENTER MARKETING AGREEMENT.pdf | X | |
| 16 | N/A | SELLER AGREEMENT.pdf | | X |
| 17 | N/A | American Protection Corp Sales Script.docx | X | |
| 18 | N/A | American Protection Corp.pdf | X | |
| 19 | N/A | DNC Policy.pdf | | X |
| 20 | N/A | CRM tabs expanded_001.pdf | X | |
| 21 | N/A | Appointment by sunpath_001.pdf | X | |
| 22 | N/A | American Protection Florida Appointment for Sunpath - Licensee Detail.pdf | X | |
| 23 | N/A | Postcard.pdf | X | |
| 24 | N/A | Letter1.pdf | X | |
| 25 | N/A | Gmail – Email Quote Summary.pdf (May 28, 2020, 3:30 pm Email) | X | |
| 26 | N/A | AmericanProtectionCorporation2-20180501-20180531.csv | X | |
| 27 | N/A | AmericanProtectionCorporation2-20180601-20180630.csv | X | |
| 28 | N/A | AmericanProtectionCorporation2-20180701-20180731.csv | X | |
| 29 | N/A | AmericanProtectionCorporation2-20180801-20180831.csv | X | |
| 30 | N/A | AmericanProtectionCorporation2-20180901-20180930.csv | X | |
| 31 | N/A | AmericanProtectionCorporation2-20181001-20181031.csv | X | |

2

**JA405**

| 32 | N/A | AmericanProtectionCorporation2-20181101-20181130.csv | X | |
| 33 | N/A | AmericanProtectionCorporation2-20181201-20181231.csv | X | |
| 34 | N/A | AmericanProtectionCorporation2-20190101-20190131.csv | X | |
| 35 | N/A | AmericanProtectionCorporation2-20190201-20190228.csv | X | |
| 36 | N/A | AmericanProtectionCorporation2-20190301-20190331.csv | X | |
| 37 | N/A | AmericanProtectionCorporation2-20190401-20190430.csv | X | |
| 38 | N/A | AmericanProtectionCorporation2-20190501-20190531.csv | X | |
| 39 | N/A | AmericanProtectionCorporation2-20190601-20190630.csv | X | |
| 40 | N/A | AmericanProtectionCorporation2-20190701-20190731.csv | X | |
| 41 | N/A | AmericanProtectionCorporation2-20190801-20190831.csv | X | |
| 42 | N/A | AmericanProtectionCorporation2-20190901-20190930.csv | X | |
| 43 | N/A | AmericanProtectionCorporation2-20191001-20191031.csv | X | |
| 44 | N/A | AmericanProtectionCorporation2-20191101-20191130.csv | X | |
| 45 | N/A | AmericanProtectionCorporation2-20191201-20191231.csv | X | |
| 46 | N/A | AmericanProtectionCorporation2-20200101-20200131.csv | X | |
| 47 | N/A | AmericanProtectionCorporation2-20200201-20200229.csv | X | |
| 48 | N/A | AmericanProtectionCorporation2-20200301-20200331.csv | X | |
| 49 | N/A | AmericanProtectionCorporation2-20200401-20200430.csv | X | |
| 50 | N/A | AmericanProtectionCorporation2-20200501-20200531.csv | X | |
| 51 | N/A | AmericanProtectionCorporation2-20200601-20200630.csv | X | |
| 52 | N/A | AmericanProtectionCorporation2-20200701-20200731.csv | X | |

**JA406**

| 53 | N/A | AmericanProtectionCorporation2-20200801-20200831.csv | X | |
| 54 | N/A | AmericanProtectionCorporation2-20200901-20200930.csv | X | |
| 55 | N/A | AmericanProtectionCorporation2-20201001-20201031.csv | X | |
| 56 | N/A | AmericanProtectionCorporation2-20201101-20201130.csv | X | |
| 57 | N/A | AmericanProtectionCorporation2-20201201-20201231.csv | X | |
| 58 | N/A | AmericanProtectionCorporation2-20210101-20210131.csv | X | |
| 59 | N/A | AmericanProtectionCorporation2-20210201-20210228.csv | X | |
| 60 | N/A | AmericanProtectionCorporation2-20210301-20210331.csv | X | |
| 61 | N/A | AmericanProtectionCorporation2-20210401-20210430.csv | X | |
| 62 | N/A | AmericanProtectionCorporation2-20210501-20210531.csv | X | |
| 63 | N/A | AmericanProtectionCorporation2-20210601-20210630.csv | X | |
| 64 | N/A | AmericanProtectionCorporation2-20210701-20210731.csv | X | |
| 65 | N/A | AmericanProtectionCorporation2-20210801-20210831.csv | X | |
| 66 | N/A | AmericanProtectionCorporation2-20210901-20210930.csv | X | |
| 67 | N/A | AmericanProtectionCorporation2-20211001-20211031.csv | X | |
| 68 | N/A | AmericanProtectionCorporation2-20211101-20211130.csv | X | |
| 69 | N/A | AmericanProtectionCorporation2-20211201-20211231_part_1.csv | X | |
| 70 | N/A | AmericanProtectionCorporation2-20211201-20211231_part_2.csv | X | |
| 71 | N/A | Five9_AmericanProtection_000001.xlsx | X | |
| 72 | NA | Summary of Five9 call records relating to Plaintiff's phone number | X | |

Smith reserves the right to amend this exhibit list based on the subsequent production, the

results of pending and future motions, and as the circumstances of the case may require (including

**JA407**

the addition of necessary demonstratives to aid in the trial of this matter).

Smith reserves the right to designated rebuttal exhibits and utilize the exhibits designated by Defendant.

Dated: December 14, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By:  _/s/  Francis J. Driscoll, Jr._
    One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

5

**JA408**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 14, 2022.

*/s/ Francis J. Driscoll, Jr.*

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## STATEMENT OF UNCONTESTED FACTS

The following facts are agreed to and admitted by both Plaintiff Ruth Smith ("Plaintiff" or "Smith") and Defendant SunPath, Ltd. ("Defendant" or "SunPath").

1.      Plaintiff Smith is a natural person and a citizen of Virginia and a resident of Fairfax County.

2.      Defendant SunPath is a Delaware corporation with its principal place of business located in Massachusetts.

3.      Defendant SunPath administers vehicle service contracts.

4.      On June 29, 2017, SunPath entered into a "Call Center Marketing Agreement" with Chukran Management Group, LLC d/b/a American Protection ("American Protection").

5.      At all times American Protection was authorized to sell SunPath-related products, American Protection was permitted to market and sell the products of other companies alongside SunPath's, including those of SunPath's competitors.

6.      SunPath's relationship with American Protection has been inactive since early-2022, for business reasons unrelated to the Plaintiff's claims in this case and unrelated to American

1

**JA410**

Protection's marketing conduct or practices.

7.      SunPath does not have knowledge of any instance in which American Protection was found liable for any violations the Telephone Consumer Protection Act, Virginia Telephone Privacy Protection Act, or any other laws governing telemarketing.

8.      On November 8, 2019, Plaintiff registered her telephone number ending in 9650 on the National Do Not Call Registry.

9.      SunPath does not possess any record of prior express invitation, permission, or consent for it to directly place telemarketing calls to Plaintiff Smith, and made no telemarketing calls to Plaintiff Smith.

10.     SunPath does not initiate any outgoing sales calls to consumers.

11.     SunPath did not initiate any calls to Plaintiff Smith, including any of the calls that form the basis of her claims in this case.

12.     Plaintiff never purchased a SunPath-related product.

Dated: December 14, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Francis J. Driscoll, Jr._
     One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

and

**SUNPATH, LTD.**

By: _/s/ Gregory M. Caffas_
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

_Counsel for SunPath, Ltd._

**JA412**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 15, 2022.

*/s/ Francis J. Driscoll, Jr.*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** | |
| *Defendant.* | |

**DEFENDANT SUNPATH, LTD.'S MOTION TO STRIKE
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant SunPath, Ltd. ("SunPath"), pursuant to Federal Rules of Civil Procedure 6 and 16 and Local Civil Rules 7 and 37, moves to strike Plaintiff Ruth Smith's untimely Motion for Class Certification, ECF No. 49. The grounds for this Motion are more fully articulated in the Memorandum in Support, filed contemporaneously herewith.

**LOCAL CIVIL RULES 7(E) and 37(E) STATEMENT**

On December 12, 2022, counsel for SunPath and counsel for Plaintiff engaged in a meet-and-confer conference via telephone, regarding Plaintiff's intention to file a motion for class certification, during which SunPath informed Plaintiff that the deadline for filing such a motion had passed. The parties were unable to come to an agreement. The conference ended with the understanding that Plaintiff would move forward with filing a motion for class certification without first seeking leave of Court, then SunPath would file a motion to strike. Plaintiff filed her Motion for Class Certification on December 14, 2022. Therefore, SunPath has filed this Motion to Strike.

1

On December 15, 2022, at the Final Pretrial Conference, the Court asked that the hearing on this Motion to Strike be set for Thursday, December 22, 2022. On December 15, 2022, the parties agreed that SunPath would file its Motion to Strike on December 15, 2022. Plaintiff's response in opposition will be due Tuesday, December 20, 2022 at 5:00 pm. SunPath's reply will be due as soon as possible on Wednesday, December 21, 2022.

Dated: December 15, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

2

**JA415**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Motion to Strike Plaintiff's Motion for Class Certification to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 15, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

**JA416**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>　　　*Plaintiff,*<br><br>*v.*<br><br>**SUNPATH, LTD.,** a Massachusetts corporation,<br><br>　　　*Defendant.* | Case No. 1:22-cv-00081-LMB-TCB |

**DEFENDANT SUNPATH, LTD.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant SunPath, Ltd. ("SunPath"), by counsel, hereby submits its Memorandum in Support of its Motion to Strike Plaintiff's Motion for Class Certification.

**I.      INTRODUCTION**

The Court should strike or otherwise summarily deny as untimely Plaintiff's Motion for Class Certification, ECF No. 49 ("Motion") because she filed it a month after the Court-ordered deadline of November 14, 2022, after the close of discovery on December 9, 2022, when SunPath is entitled to focus on summary judgment and trial preparation. *See* Joint Discovery Plan, ECF No. 27, at 4-5; *see also* Rule 16(B) Scheduling Order, ECF No. 31, at 1 ("Scheduling Order").  Plaintiff's untimely Motion was filed without securing leave of Court—indeed, the Court *denied* her request to extend this and other deadlines (ECF No. 37)—and thus the filing improperly disregards the Court's Scheduling Order, the Federal Rules of Civil Procedure, and this Court's Local Civil Rules.  The Court should therefore strike Plaintiff's untimely Motion.

Plaintiff and SunPath filed their Joint Discovery Plan with this Court, where they agreed upon and jointly proposed November 14, 2022 as the deadline for "Plaintiff to File Motion for Class Certification[,]" which the Court then approved. *See* Joint Discovery Plan at 4-5; Scheduling Order at 1.   Accordingly, Plaintiff was required to file any motion for class certification by November 14, 2022.   Plaintiff *knows* this was the deadline, because she sought the Court's leave to extend it, which the Court denied.[1]  *See* Order denying Plaintiff's Motion for Extension of Time to Complete Discovery, ECF. No. 37.

Despite being well aware of the deadline, Plaintiff filed no motion for class certification by November 14, 2022.  Nor did she secure the Court's leave to extend it.  But on December 14, 2022, a month after the applicable deadline had passed, after the close of discovery, and without seeking or securing the Court's consent, Plaintiff filed her untimely Motion without so much as a word of explanation for its patent untimeliness.   Plaintiff has proffered no good cause for her failure to timely file her Motion by November 14, 2022—a date proposed and agreed to by both

---

[1] At the hearing on Plaintiff's Motion for Extension of Time to Complete Discovery, Plaintiff's counsel acknowledged the motion for class certification deadlines. *See* Transcript of proceeding held on October 14, 2022, before Judge William E. Fitzpatrick ("October 14 Transcript"), ECF No. 47 at 3:3-8, 3:14-17 (MR. PELUSO: "I conferred with Mr. Caffas this morning. I, frankly, do see his point regarding the quick turnaround between the rebuttal expert disclosure and the defendant's opposition to class certification. Under our schedule, it will only afford him roughly five days or seven days, something like that. . . . I have no opposition to the defendant, you know, having more than a five-day turnaround between rebuttal experts and their opposition to class certification."). Plaintiff's counsel was even instructed by the Court regarding how to proceed if they felt an extension of a Court-ordered deadline was necessary. *See* October 14 Transcript at 9:22-10:4 (THE COURT: "I don't know of any reason why we can't stick to the deadlines currently imposed. Again, if you have - - if there are issues that you can't resolve and you're worried because I have this December 9 deadline, you know, file a motion. We'll get you heard by me or another judge, if necessary, by that - - you know, within a week. And so we'll do our best to kind of put you on a path where you can meet these deadlines.")

parties and ordered by this Court.  *See* Joint Discovery Plan at 4-5; *see also* Scheduling Order at 1.  The Court should therefore strike or summarily deny Plaintiff's Motion.  Plaintiff's cavalier view of this Court's deadlines cannot be countenanced.

## II.    ARGUMENT

### A.    Standard of Review

Motions to strike may be used to address untimely filings.  *See Padilla-Ruiz v. Commc'n. Techs.*, Action No. 2:16cv630, 2018 U.S. Dist. LEXIS 235185, at *6 (E.D. Va. July 9, 2018) (granting motion to strike untimely filed response to a motion).  A court may strike an untimely motion for class certification.  *See Meth v. Natus Med. Inc.*, Action No. 3:14-CV-173, 2014 U.S. Dist. LEXIS 97355, at *3 (E.D. Va. July 17, 2014) (noting an untimely motion for class certification was stricken); *see also Jones v. Hartford Ins. Co.*, 243 F.R.D. 694, 696-97 (N.D. Fla. 2006) (granting "Defendant's Motion to Strike Plaintiffs' Motion for Class Certification as Untimely").

A movant must show "good cause" when it files a motion after an applicable Court-ordered deadline.  *See Cook v. Howard*, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012) (when a party seeks to or does file a motion after the applicable deadline, the "party must first demonstrate 'good cause' to modify the scheduling order deadlines," pursuant to Federal Rule of Civil Procedure 16(b)(4) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008))); *see also Fitzwater v. Consol Energy, Inc.*, Civil Action No. 2:16-cv-09849, 2020 U.S. Dist. LEXIS 116562, at *9 (S.D. W.Va. July 2, 2020) (a showing of good cause is required, pursuant to Federal Rule of Civil Procedure 16(b), "[w]hen a plaintiff seeks to file an untimely [class certification] motion."); *see also Buszta v. Quality Midwestern Holdings, Inc.*, Civil No. 1:18-cv-593, 2019 U.S. Dist. LEXIS 64458, at *3 (E.D. Va. Mar. 1, 2019) (plaintiff must

"satisfactorily demonstrate[] good cause for [their] failure to" timely move for certification); *see also Rivera v. Jet Auto. Servs. LLC*, CIVIL NO. JKB-20-1037, 2021 U.S. Dist. LEXIS 109965, at *12 (D. Md. June 10, 2021) (when courts deny "eleventh-hour motions for [] certification [they] generally considered whether the movant has satisfactorily demonstrated good cause for [its] failure to move for [] certification at an earlier and more appropriate date.") (internal citation and quotations omitted).

This Court's Local Civil Rule 16(B) also provides that "[t]he parties and their counsel are bound by the dates specified in any" order or scheduling order entered by the Court, and that "no extensions or continuances thereof shall be granted in the absence of a showing of good cause." *See Robles v. United States*, Case No. 2:19cv111, 2020 U.S. Dist. LEXIS 248491, at *4 (E.D. Va. Oct. 15, 2020) ("parties and their local counsel are bound by the dates specified in the [scheduling] orders and no extensions or continuances thereof shall be granted in the absence of a showing of good cause.") (quoting E.D. Va. Loc. Civ. R. 16(B)).

"Rule 16(b)'s good cause standard focuses on the [delay of the motion] and the reasons for its tardy submission[.]" *Fitzwater*, 2020 U.S. Dist. LEXIS 116562, at *9 (citing *Montgomery v. Anne Arundel Cty., Maryland*, 182 F. Appx. 156, 162 (4th Cir. 2006)). "'Good cause' requires 'the party seeking relief [to] show that the [court-ordered] deadlines cannot reasonably be met despite the party's diligence[.]'" *Cook*, 484 Fed. Appx. at 815 (internal citations omitted). Additional "factors to be considered in determining whether there is good cause include the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Roe v. Howard*, Civil Action No. 1:16-cv-562, 2017 U.S. Dist. LEXIS 187258, at *2 (E.D. Va. June

30, 2017) (quoting *Guerrero v. Deane*, No. 1:09CV1313 JCC/TRJ, 2012 U.S. Dist. LEXIS 105343, at * 7 (E.D. Va. July 27, 2012)).

Even if the plaintiff is able to show good cause for filing an untimely motion for class certification, the plaintiff's failure to move for "certification in accordance with the applicable discovery . . . deadline[] is itself good cause to deny the Motion as untimely, even setting aside the issue of prejudice to Defendant[] and the Court." *Buszta*, 2019 U.S. Dist. LEXIS 64458 at *5 (internal citation omitted); *see also Cook*, 484 Fed. Appx. at 815 ("the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the [court-ordered] schedule.") (internal citations omitted).

Further, a Court may only entertain a late motion if a party requests an extension of its deadline to file such motion. *Malone v. Greenville Cty.*, Civil Action No. 6:06-2631-RBH-BHH, 2008 U.S. Dist. LEXIS 33896, at *3-4 (D.S.C. Feb. 22, 2008) ("[Fed. R. Civ. P.] 6 expressly requires a motion to seek an extension of an already expired deadline").  Federal Rule of Civil Procedure 6(b) guides courts on extensions of time for motion papers.  *Prior to passage of a deadline*, "the court may, for good cause, extend the time with or without motion or notice . . . before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A).  "However, 'on motion made after the time has expired,' the court may only extend the time 'if the party failed to act because of excusable neglect.'" *Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 790 (E.D. Va. 2013) (quoting Fed. R. Civ. P. 6(b)(1)(B)).

While "excusable neglect" applies to "inadvertence, mistake, or carelessness," *Symbionics Inc. v. Ortlieb*, 432 F. Appx. 216, 220 (4th Cir. 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 388 (1993)), the Fourth Circuit has ruled

that excusable neglect is "not easily demonstrated" and applicable "*only in the extraordinary cases* where injustice would otherwise result." *Symbionics*, 432 F. Appx. at 220 (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996))).  The factors for determining excusable neglect essentially mirror the additional good cause factors: "the danger of prejudice, length of delay and potential impact, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith." *Smith*, 933 F. Supp. 2d at 790 (citing *Thompson*, 76 F.3d at 533).  "The most important of these factors is the reason for failure to timely file." *Id.* (citing *Thompson*, 76 F.3d at 534).  "[C]ourts have found that undue delay or undue prejudice to defendants provide grounds to deny . . . untimely certification motions that fail[] to meet court-imposed deadlines." *Fitzwater*, 2020 U.S. Dist. LEXIS 116562, at *9 (citing *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 128 (D. Mass. 2018)).

**B.**     **The Court Should Strike or Summarily Deny Plaintiff's Untimely Motion.**

Plaintiff filed her Motion a full month after the Court-ordered deadline of November 14, 2022.  *See* Joint Discovery Plan at 4-5; *see also* Scheduling Order at 1.  Plaintiff filed her Motion after the close of discovery, and without providing any explanation for her late filing or requesting the Court's leave to file her Motion.  Therefore, Plaintiff's Motion must be stricken. *See Buszta*, 2019 U.S. Dist. LEXIS 64458, at *5 (stating that failure to comply "with the applicable discovery . . . deadlines is itself good cause to deny the Motion[.]") (internal citation omitted).

**1.     Plaintiff's Motion for Class Certification is Untimely.**

Plaintiff's deadline to file any motion for class certification was November 14, 2022.  Not only did the parties agree to and propose that deadline, *see* Joint Discovery Plan at 4-5, but that

date became a Court-ordered deadline when the Court adopted it in early September, months before the deadline. *See* Scheduling Order at 1 ("The Joint Discovery Plan filed by the parties is approved and shall control discovery to the extent of its application[.]").[2] Therefore, November 14, 2022 was the Court-ordered deadline by which Plaintiff's Motion had to be filed. Her December 14, 2022 Motion was therefore a full month late.

### 2. Plaintiff Has Not Shown Good Cause for Her Untimely Filing.

Plaintiff has failed to provide any reason for the untimeliness of her Motion and failure to comply with this Court's Order, the Federal Rules of Civil Procedure, and the Court's Local Rules. Therefore, Plaintiff has failed to show good cause for her untimely Motion, which justifies striking the Motion. *See Stanley v. Huntington Nat'l Bank*, 492 Fed. Appx. 456, 462 (4th Cir. 2012) (holding that the district court did not "abuse[] its discretion by finding that the plaintiff failed to demonstrate 'good cause'" and denying the untimely motion) (internal citations and quotations omitted); *see also Robles*, 2020 U.S. Dist. LEXIS 248491, at *5-8 (finding the movant failed to demonstrate good cause as it has "provided <u>no explanation</u> as to why it could not have submitted" its motion by the prior deadlines) (internal citations omitted).

Plaintiff has made no proffer of good cause for her patently late filing. Any *post hoc* attempt by Plaintiff to argue that she had good cause for her failure to comply with the Court-order deadline is discredited by her Motion being late by a full month and after the Court already denied her request to extend it. *See Curtis v. Norfolk Southern Ry. Co.*, 206 F.R.D. 548, 549 (M.D.N.C. 2002) ("The Fourth Circuit has strongly disapproved of [the] lackadaisical pursuit of

---

[2] The Court knew which proposed deadlines from the parties' Joint Discovery Plan it approved. This is clear from the Court explicitly stating that the "Parties' requested expert disclosure scheduled is denied[,]" but not denying the parties' proposed and agreed-upon November 14, 2022 deadline for Plaintiff's motion for class certification, or related briefing schedule. *See* Scheduling Order at 1.

class certification[.]" (citing *Carracter v. Morgan*, 491 F.2d 458, 459 (4th Cir. 1973))). Therefore, the Plaintiff's Motion should be stricken or summarily denied as untimely.

The mere untimeliness of Plaintiff's Motion justifies striking it. *See Buszta*, 2019 U.S. Dist. LEXIS 64458, at *5 (a motion for certification that fails to comply "with the applicable discovery . . . deadlines is itself good cause to deny the Motion . . . even setting aside the issue of prejudice to Defendants and the Court.") (internal citation omitted).

### 3. The Additional Good Cause Factors and Excusable Negligent Factors do not Weigh in Plaintiff's Favor.

The facts surrounding Plaintiff's untimely Motion cause the other relevant factors to weigh against Plaintiff. Plaintiff's untimely Motion clearly prejudices SunPath, the Court, and putative class members; the length of Plaintiff's delay in filing it and the impact of the delay are great; Plaintiff has provided no reason for her delay; the Plaintiff's ability to timely file the Motion was within her reasonable control; and Plaintiff failed to act in good faith in regards to her untimely filing. *Smith*, 933 F. Supp. 2d 787 at 790 (the relevant factors for determining "excusable neglect are the danger of prejudice, length of delay and potential impact, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith." (citing *Thompson*, 76 F.3d at 533)).

### a. Plaintiff's Untimely Filing Has Caused and Will Cause Undue Prejudice

Plaintiff's untimely Motion has severely prejudiced SunPath. Crucially, Plaintiff's Motion was filed after the close of discovery. *See* Order entered August 5, 2022, ECF. No. 25 (setting December 9, 2022 as the discovery deadline). The November 14, 2022 Court-ordered, and agreed-upon deadline for Plaintiff to file a motion for class certification provided SunPath with time to conduct any additional discovery necessary in order to properly oppose a timely

filed motion for class certification. Instead, Plaintiff filed her Motion five days *after* the close of discovery, and a full month after the applicable Court-ordered deadline.

SunPath should be entitled to focus its energy and resources in the *current* stage of this case, which is the summary judgment and trial-preparation phases. Plaintiff's untimely filing of her Motion would severely prejudice SunPath by depriving it of the ability to focus on the important case stages presently at hand, and it would be further prejudiced by having to respond to Plaintiff's untimely Motion without the opportunity to conduct discovery necessary to properly oppose Plaintiff's Motion.

Class-certification motions in TCPA cases like this are, essentially to a rule, supported by expert testimony, given the substantial expertise required to, among other tasks, analyze the large data sets, accurately identify and distinguish calls from other system entry records, and assess whether and when a given called party was on the internal or national DNC registries *at the time of the calls* at issue. *See Simmons v. Ford Motor Co.*, CASE NO. 18-CV-81558-RAR, 2021 U.S. Dist. LEXIS 243383, at *13 (S.D. Fla. Dec. 22, 2021) (holding that defendant would be highly prejudiced by not having the "opportunity to depose [Plaintiff's class certification] experts prior to filing its response to class certification"). Bizarrely, Plaintiff's Motion relies on Plaintiff's *counsel*'s own opinions about voluminous data produced by a third-party that was never deposed and never explained the source or meaning of the voluminous records. *See* Motion Ex. E at ¶¶ 7-9. Making matters worse, Plaintiff's counsel apparently relied on an unofficial version of the National DNC Registry—which is hosted by the Federal Trade Commission and licensed solely to those with a SAN—to engage in some rudimentary cross-referencing of some numbers he located in the third-party-produced dataset against that unauthorized Internet source of alleged DNC numbers, which certainly makes *no effort* to identify whether the phone number from the

third-party dataset was actually in the official, FTC-licensed National DNC Registry *in 2020* when the calls occurred, a necessary exercise that is fraught with challenges and the subject of many *Daubert* motions for those who try.  But instead Plaintiff skipped her expert disclosure deadline and attempts to support this Court's grant of class certification with counsel's back-of-the-envelope analysis using inadmissible datasets in an anachronistic fashion.  This is *not* what the Court's Scheduling Order entitled SunPath to focus on at this phase of the case.

SunPath is further prejudiced as Plaintiff's untimely Motion frustrates SunPath's ability to adequately respond to Plaintiff's Motion, respond to any summary judgment motion she may file, prepare SunPath's summary judgment motion, and to prepare for trial. If Plaintiff filed a timely motion for class certification by November 14, 2022, it would have been fully briefed by December 19, 2022.  *Id*. at 4-5.  The Court-ordered case schedule allowed SunPath the reasonable opportunity to focus its time after the close of discovery on preparing its own motion for summary judgment, responding to any motion for summary judgment filed by Plaintiff, and to prepare for trial (to be set 4-8 weeks from December 15, 2022). Instead, SunPath is now prejudiced by being forced to simultaneously work on responding to Plaintiff's Motion, preparing the summary judgment briefing, and for trial. The parties and the Court clearly intended to avoid this situation. *Id*. at 4-5; *see also* Scheduling Order at 1. Now Plaintiff seeks to renege on her agreement and prejudice SunPath to unduly obtain an advantage for her Motion, any impending motion for summary judgment, and trial.

The Plaintiff's untimely filing of her Motion is also prejudicial to the Court and putative class members. *See Wright v. Dyck-O'Neal, Inc.*, Case No.: 2:15-cv-249-FtM-38MRM, 2016 U.S. Dist. LEXIS 92965, at *7 (M.D. Fla. June 27, 2016) (stating that the failure to file a timely motion for class certification "impede[s] a court's ability to resolve the issues of class

certification and may prejudice the rights of the putative class members." (citing *Jones*, 243 F.R.D. at 695)). Federal Rule of Civil Procedure 23(c) "explicitly provides that, '[a]t an *early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *Id.* at *6-7 (quoting Fed. R. Civ. P. 23(c)(1)(A)).

The Plaintiff's untimely filing has prejudiced the Court by preventing it from being able to timely determine whether to certify the proposed class.  Trial is set for February 15, 2023, as ordered by the Court at the December 15, 2022 Final Pretrial Conference.  Plaintiff's Motion, per the proposed briefing schedule, will not be fully briefed until January 13, 2023.  Therefore, if Plaintiff's Motion is not stricken and then granted, this Court will be further prejudiced by likely being forced to reset the trial date. Plaintiff's untimely Motion should be stricken because "the public business of the court . . . has been hampered and delayed."  *Wright*, 2016 U.S. Dist. LEXIS 92965, at *7 (quoting *Jones*, 243 F.R.D. at 696) (referring to an untimely motion for class certification).

Plaintiff's failure to timely file her Motion has prejudiced and/or will prejudice the putative class members. This is because an untimely filing of such a motion "is a direct assault on the merits of the request for class certification[.]"  *Jones*, 243 F.R.D. at 696 (citing *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977)).  When a plaintiff seeks to serve as a class representative, under Federal Rule of Civil Procedure 23(a)(4), they "may operate as a representative of a class only if: . . . [they] will fairly and adequately protect the interests of the class."  *Ealy v. Pinkerton Gov't Servs.*, 514 Fed. Appx. 299, 304 (4th Cir. 2013). "Numerous [] courts have [] held that when a plaintiff has failed to move for class certification in a timely manner, i.e. in compliance with . . . a court order, such a plaintiff has failed to satisfy the

mandate of Rule 23(a)(4) of fairly and adequately representing the interests of the putative class." *Williams v. Southern Bell T&T Co.*, No. 77-1895-CIV-WMH, 1978 U.S. Dist. LEXIS 18582, at *5 (S.D. Fla. Apr. 4, 1978) (citing multiple cases holding that failure to timely move for class certification means the plaintiff failed to fairly and adequately represent the interests of the putative class) (internal citations omitted). [3] The Plaintiff's untimely Motion clearly demonstrates that the Plaintiff has not and cannot fairly and adequately represent the interests of putative class members.

The Court should strike or summarily deny Plaintiff's untimely Motion, built on a whitewashed version of the record and counsel's patently unsound and unreliable analysis of an unexplained data dump from a third party. *See Spencer Med. Assocs. v. C.I.R.*, 155 F.3d 268, 273 (4th Cir. 1998) (noting "that the mere untimeliness of [the] motion supports the court's denial.") (internal citations omitted); *see also Kelly v. Equifax, Inc.*, Civil Action No.: 8:12-cv-03095-MGL, 2013 U.S. Dist. LEXIS 159414, at *8 (D.S.C. Nov. 7, 2013) (stating that "[t]he court need not reach the merits of Defendant's motion" due simply to the fact that "it was untimely filed.") (internal citation omitted).

### b.  The Plaintiff's Untimeliness is too Great.

Plaintiff's delay is inexcusable.  Plaintiff's untimely Motion—filed after asking for and being denied an extension of this very deadline[4]—evidences Plaintiff's unacceptable disregard of

---

[3] *See also Rodriguez*, 431 U.S. at 405 (stating that a plaintiff's failure to timely move for class certification means the plaintiff has failed "to protect the interests of class members . . . [and] bears strongly on the adequacy of the representation that those class members might expect to receive.") (internal citations omitted); *Bennett v. Westfall*, 640 F. Supp. 169, 170 n.3 (S.D. W.Va. 1986) ("the named plaintiff's failure to protect the interests of class members by moving for certification surely bears strongly on the adequacy of the representation that those class members might expect to receive.") (quoting *Rodriguez*).

[4] Indeed, Plaintiff acknowledged awareness of the relevant deadline when she requested a modification of the discovery schedule with a blanket 60-day extension of all deadlines, and

this Court's Order. "[A] judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Palmetto Pharms. LLC v. AstraZeneca Pharms. LP*, Case No. 2:11-cv-00807-SB-JDA, 2012 U.S. Dist. LEXIS 90253 at *11 (D.S.C. June 29, 2012) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). A filing being late by a month is clearly unacceptable when the Supreme Court has ruled that a late filing, *even by one day*, is unacceptable. *See United States v. Locke*, 471 U.S. 84, 101 (1985) ("Filing deadlines . . . necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced . . . [a] filing deadline cannot be complied with, substantially or otherwise, by filing late -- *even by one day*.") (emphasis added) (internal citation omitted). Courts in the Fourth Circuit do not take the failure to comply with a scheduling order lightly, and will dismiss cases for such failure.[5]

All of the other factors weigh in favor of striking or summarily denying Plaintiff's untimely Motion. The substantial impact caused by Plaintiff's length of delay in filing her Motion is addressed above. There is nothing to demonstrate that Plaintiff's ability to timely file her Motion was not within her reasonable control. Rule 23 expressly contemplates that class

---

included in her request that the November 14, 2022 class certification deadline be moved to January 13, 2023. *See* Plaintiff's Memorandum in Support of Motion for Leave to Modify the Case Schedule, ECF No. 34, at 8. Plaintiff cannot now claim she was unaware of the November 14, 2022 deadline that she has chosen to disregard.

[5] *See Palmetto Pharms.* 2012 U.S. Dist. LEXIS 90253 at *11-12 (D.S.C. June 29, 2012) ("Courts in the Fourth Circuit take so seriously the interest in the scheduling order that, not uncommonly, cases are dismissed pursuant to the court's inherent right to control litigation before it, which 'authority includes the power to order dismissal of an action for failure to comply with court orders.'" (quoting *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989))); *see also Padilla-Ruiz*, 2018 U.S. Dist. LEXIS 235185, at *7 ("[The late filing party's] assertion that they believed a response filed two days after that date to be timely demonstrates an alarming lack of attention paid to this case."); *Locke*, 471 U.S. at 100 ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline[.]").

certification motions must be filed at "an early practicable time after a person sues."  Fed. R. Civ. P. 23(c)(1)(A).  Plaintiff has failed to provide any reason for her delay in filing her Motion.  Finally, Plaintiff failed to act in good faith in filing her Motion.  Federal Rule of Civil Procedure 16(4) requires a party to seek "the judge's consent" before filing a motion that would modify the Court's scheduling order.  She sought that consent once *and did not receive it*.  Instead of properly obtaining the Court's consent before filing her Motion out of time, Plaintiff completely disregarded this Court's Order and filed her Motion. Plaintiff's Motion should be stricken or summarily denied as untimely and unduly prejudicial to SunPath, the Court, and the efficient resolution of this case.

## III.     CONCLUSION

For the foregoing reasons, Defendant SunPath, Ltd. respectfully requests that the Court strike or summarily deny Plaintiff's untimely Motion for Class Certification.

Dated: December 15, 2022                     Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Memorandum in Support of its Motion to Strike Plaintiff's Motion for Class Certification to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 15 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

### I.    INTRODUCTION

In an attempt to avoid a decision on the merits, Defendant SunPath, Ltd. ("Defendant" or "SunPath") moves to strike Plaintiff Ruth Smith's ("Plaintiff" or "Smith") motion for class certification by arguing that the motion was untimely filed. SunPath gets it wrong.

To begin, Plaintiff's motion for class certification is timely. While SunPath attempts to insert a class certification deadline into the Court's scheduling order, the truth is that the no deadline was ever set for Plaintiff to file her motion. Instead, the Court rejected both parties' proposed schedules and set its own. Now, SunPath clings to a single sentence in the Scheduling Order to make the false assertion that all parties were supposedly aware of the deadline. Unfortunately for SunPath, the actions of both parties and the Court belies the assertion that any deadline has passed.

Nevertheless, in the event that the Court finds that the motion is untimely, the failure to meet the deadline constitutes excusable neglect. While SunPath asserts that Smith has not offered "any reason" for her inability to meet the deadline, the reason is quite clear. That is, there was no

1

articulated deadline and all parties and the Court have operated under this assumption. Moreover, because the records reflecting the calls placed to the Class were not discovered until November 30, 2022, there was no "delay" in filing the motion. Indeed, Rule 23 requires class certification to be decided "[a]t an early practicable time" Fed. R. Civ. P. 23(c)(1)(A), and it was not practicable to seek certification prior to the discovery of the class records. Finally, SunPath faces no risk of prejudice by litigating this case on a class basis. Rather, both SunPath and Plaintiff face the exact same situation: being required to litigate class certification and prepare for trial.

For these reasons and as explained further below, the Court should deny SunPath's motion to strike.

## II.    ARGUMENT

### A.    Plaintiff's Motion For Class Certification Is Timely.

SunPath begins by claiming that Plaintiff's deadline to file her motion for class certification was November 14, 2022. (Mot. at 6-7.) But there is no record of the Court ever setting a deadline for Plaintiff to move for class certification, and the actions of the parties and the Court reinforce the absence of a deadline.

To start, no deadline was set for Plaintiff to file her motion for class certification. At the initial pretrial conference, the Court addressed the parties' proposed schedules and declined to adopt either schedule. Now, SunPath clings to one line in the Rule 16(b) Scheduling Order— "[t]he Joint Discovery Plan filed by the parties is approved and *shall control discovery to the extent of its application* unless further modified by the court" (dkt. 31 pg. 1 (emphasis added))— to claim that the class certification deadlines were adopted.[1] Despite the fact that the parties

---

[1] Interestingly, despite conferring regarding its planned motion for summary judgment, SunPath made no attempt to comply with the December 19th dispositive motion deadline that it proposed in the joint discovery plan. (Dkt. 27.) SunPath cannot have it both ways. Either the deadlines were real with respect to all parties or to none.

2

proposed *separate* schedules (dkt. 27), SunPath now asserts that Plaintiff should have compared the two schedules and applied the deadlines that happened to match. But this claim runs counter to the parties' discussion with the Court, and to the minute order following the conference. (*See* Dkt. 30.) Indeed, the minute order makes clear neither party's discovery schedule was approved at all. (*Id.*) Rather, the statement at issue relates to the provisions of the joint report related to the *conduct of discovery*, such as how privileged material should be handled and how electronically stored information should be produced. (*See* Dkt. 27.) And to the extent that SunPath claims the opposite, the reality is that it certainly wasn't clear, and litigants should not be required to adhere to unknown and unarticulated deadlines.

To counter the lack of clarity, SunPath attempts to argue that Plaintiff's motion to modify the case schedule (dkts. 32, 34) demonstrates that Plaintiff was aware of the deadline. (Mot. at 2.) But Plaintiff's motion to modify the case schedule says the exact opposite. In her motion, Plaintiff explained that the only deadlines that had been set by the Court were the discovery cut-off, expert-related deadlines, and the final pre-trial conference. (Dkt. 34, pg. 2.) In addition to the request for an extension of the existing deadlines, Plaintiff proposed vacating the final pretrial conference and setting a briefing schedule regarding class certification. (*Id.* at pg. 8.) Despite SunPath's claim, nowhere in the motion does Plaintiff seek to "extend" any deadlines related to class certification.

Moreover, the Court's denial of Plaintiff's motion to modify the schedule further supports the belief that the Court understood that it did not set any deadline for certification. Indeed, the basis of Plaintiff's motion for extension of the discovery schedule is because she was having trouble procuring the *class*-related records. (*Id.* at pg. 5-6.) Hence, Plaintiff was seeking the extension to obtain further discovery to be used to brief class certification. (*Id.*) In rejecting

3

**JA435**

the motion, the Court explained, "I don't know of any reason why we can't stick to the deadlines currently imposed. Again, if you have - - if there are issues that you can't resolve and you're worried **because I have this December 9 deadline**, you know, file a motion." (*See* October 14 Transcript at 9:22-10:4 (emphasis added). This statement only makes sense if the Court likewise expected the motion for class certification to be filed *after* December 9th.

Likewise, at the November 18, 2022 motion hearing, the magistrate judge also asked whether Plaintiff still planned to move for class certification. At this time, Plaintiff indicated that she planned to file her motion for class certification, and SunPath's counsel raised no objection to the prospect of her filing of the motion. In fact, in its reply brief in support of its motion to compel further responses to discovery, SunPath was expressly seeking class-related documents, including documents relating to Smith's fitness as a class representative (dkt. 44 pg. 13). But the reply was filed on November 17th, or *after* SunPath's claimed motion deadline. It makes little sense to seek class related discovery after the deadline for certification has passed.

SunPath's motion should be seen for what it is: an opportunist attempt to avoid answering for its actions on the merits. The motion should be denied. As explained above, there was no deadline for Plaintiff to file her motion for class certification, and the motion is timely. Nevertheless, and as explained next, if the Court finds that the motion is untimely, the Court should refuse to strike the motion.

## B. Any delay in filing the motion for class certification was caused by excusable neglect.

SunPath next claims that excusable neglect cannot be demonstrated because she "has failed to provide any reason for the untimeliness of her Motion." (Mot. at 7.) Once again, this is untrue. Any failure to meet the deadline was the result of a lack of clarity regarding the deadline and no party will be prejudiced by litigating the merits of class certification.

4

**JA436**

In the event the Court finds that Plaintiff's motion was untimely, the deadline may be extended "if the party failed to act because of excusable neglect." *Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 790 (E.D. Va. 2013) (citing Fed. R. Civ. P. 6(b)(1)(B)). "Relevant circumstances for determining excusable neglect are the danger of prejudice, length of delay and potential impact, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* The most important factor "is the reason for failure to timely file." *Id.*

As to the *first* factor, SunPath faces no danger of prejudice. Aside from having to confront the facts, SunPath cannot identify any prejudice it will suffer. Instead, it claims that it will be prejudiced by having to respond to the motion while preparing for trial.[2] (Mot. at 9-10.) But this isn't *prejudice* because both parties are in the exact same situation: being required to brief and argue the motion and prepare for trial. And to the extent that certification is granted, the Court mentioned at the final pretrial conference that the trial schedule may need to be modified. Moreover, while SunPath takes issue with the lack of expert testimony in this case (*id.*), the truth is that SunPath itself failed to designate any expert prior to its deadline. As such, neither party will be offering expert testimony. Finally, SunPath claims that "putative class members" will be "prejudiced" by the late filing. (Mot. at 11.) But as Rule 23 instructs, class certification should be decided "[a]t an early *practicable time*". Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). It was not practicable to move for certification prior to receiving any of the class records, which were in the possession of a third party and required time and effort from Plaintiff to obtain. Moreover, to proceed with deciding class certification will serve the interests of the absent class members by

---

[2] While SunPath now conveniently claims that this delay constitutes prejudice, it had previously requested to brief class certification in February and March of 2023. (Dkt. 35 pg. 2-3.)

litigating their claims as well.

The *second* factor, which assesses the time of delay, weighs against granting the motion. While SunPath argues that the motion was "a full month late" (mot. at 7), this argument ignores the fact that no deadline had ever been set. Moreover, the class related records were not even produced until November 30, 2022. (*See* Declaration of Patrick H. Peluso ("Peluso Decl.") ¶ 9, attached hereto as Ex. A.) The records reveal millions of calls placed by SunPath's third party marketer. (*Id.*) Plaintiff's counsel was able to sift through the data provided and file her motion for class certification by December 14, 2022—only two weeks after receiving the records. This quick turnaround further supports denial of the motion.

The *third* factor, which analyzes the reason for the failure to meet the deadline, argues in favor of denial of the motion. Indeed, as explained above in Argument A, *supra*, no class certification deadline had been set by the Court. And this truth is supported by the actions of the parties as well as the Court throughout the entire litigation. Nevertheless, any "delay"—if it can be even called that—was not the result of a lack of diligence, but rather a lack of records. Indeed, the Court allotted only three months to complete all class-related and expert discovery. On October 7, 2022, Plaintiff sought to extend the discovery deadlines based on difficulties involved in gathering class-related discovery from SunPath's third party marketer. (Dkt. 34 pgs. 5-6.)

After the motion was denied, Plaintiff's counsel continued to work diligently to gather the requisite class discovery prior to the close of discovery, including issuing multiple subpoenas to various third parties and deposing SunPath's third-party marketer. (Peluso Decl. ¶¶ 4-9.) Indeed, while Plaintiff issued subpoenas for documents and testimony from SunPath's marketer, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") on August 24, 2022, its president contacted Plaintiff's counsel after receipt of the subpoena and

6

explained that he was not available in October for the deposition and instead could be deposed in November. (*Id.* ¶¶ 3-4.) As such, Plaintiff promptly deposed American Protection's representative, Kobi Chukran, on November 1, 2022. (*Id.* ¶ 5.) Adding to the frustration, Mr. Chukran decided to terminate the deposition roughly half-way through counsel's questioning. (*Id.*) After a discussion with American Protection's counsel, Mr. Chukran agreed to appear on November 9, 2022, to complete the deposition. (*Id.*) During the second deposition, Mr. Chukran revealed that American Protection utilized a telephone system provided by Five9, Inc. to place calls during the relevant time period. (*Id.* ¶ 6.)

That same day, on November 9, 2022, Plaintiff issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to Five9, Inc. (*Id.* ¶ 7.) Among other things, the subpoena sought the call records, which would reflect the calls placed to Plaintiff and the class, and documents reflecting the functionality of the dialing system. (*Id.*) On November 23, 2022, Five9's counsel contacted Plaintiff's counsel regarding its inability to produce the documents until November 30, 2022. (*Id.* ¶ 8.)

On November 30, 2022, Five9 produced the call records reflecting all of the calls placed to the proposed Class. (*Id.* ¶ 9.) And Plaintiff promptly filed her motion for class certification 14-days later. (Dkt. 49.) Put simply, Plaintiff diligently worked to gather the evidence necessary to litigate this case on a class basis, and the Court should decide this case on its merits not on a technicality. Indeed, it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

The *fourth* and *fifth* factors ask "whether the delay was within the reasonable control of

**JA439**

the movant, and whether the movant acted in good faith." *Smith*, 933 F. Supp. 2d at 790. As explained above, Plaintiff's delay in filing her motion was not an attempt to delay the proceedings or unfairly prejudice any party. Rather, Plaintiff filed her motion within two-weeks of receiving the class records in this case. It is also worth noting the only party that has produced any class related discovery in this action is Plaintiff. Now, in an attempt to avoid answering for its systemic misconduct, SunPath seeks to decide Plaintiff's motion for class certification on a perceived technicality rather than on the substance. But courts have discretion to avoid "what may constitute overly 'technical' applications" of the Rules. *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 224 (N.D.W. Va. 2007).

As a final point here, the only parties that will be prejudiced if the Court grants the instant motion is Plaintiff and putative class members. Indeed, Plaintiff has expended considerable time and expense to track down and procure the requisite discovery to litigate this matter on a class basis. Now, SunPath asks the Court to ignore the substance of Plaintiff's motion for class certification and require her to proceed on an individual basis. But "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits". *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

Accordingly, Plaintiff respectfully requests that the Court deny SunPath's motion to strike.

## III.   CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to strike Plaintiff's motion for class certification and order any additional relief that the Court deems necessary and just.

8

Dated: December 20, 2022

RUTH SMITH, individually and on behalf of all others similarly situated,

By: _/s/ Francis J. Driscoll, Jr._____
        One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 20, 2022.

*/s/ Francis J. Driscoll, Jr.*

10

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**<u>DECLARATION OF PATRICK H. PELUSO</u>**

I, Patrick H. Peluso, declare as follows:

1.     I am an attorney with the law firm Woodrow & Peluso, LLC and counsel of record for Plaintiff Ruth Smith ("Plaintiff" or "Smith").

2.     On January 26, 2022, Plaintiff filed the instant action alleging wide-scale violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act") and the Virginia Telephone Privacy Protection Act ("VTPPA").

3.     On August 24, 2022, Plaintiff issued subpoenas for documents and testimony from SunPath's marketer, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection").

4.     After service of the subpoenas, American Protection's president, Kobi Chukran, contacted Plaintiff's counsel and explained that he was not available in October for the deposition and instead could be deposed in November.

5.     Plaintiff promptly deposed American Protection's representative, Kobi Chukran, on November 1, 2022. Unfortunately, Mr. Chukran terminated the deposition roughly half-way

1

**JA444**

through counsel's questioning. After a discussion with American Protection's counsel, Mr.

Chukran agreed to appear on November 9, 2022, to complete the deposition.

6.      On November 9, 2022, Plaintiff deposed American Protection's representative for

the second time. During this deposition, Mr. Chukran revealed that American Protection utilized

a telephone system provided by Five9, Inc. to place calls during the relevant time period.

7.      On November 9, 2022, Plaintiff issued a Subpoena to Produce Documents,

Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to Five9,

Inc.  Among other things, the subpoena sought the call records, which would reflect the calls

placed to Plaintiff and the class, and documents reflecting the functionality of the dialing system.

8.      On November 23, 2022, Five9's counsel contacted Plaintiff's counsel regarding

its inability to produce the documents until November 30, 2022.

9.      On November 30, 2022, Five9 produced the call records reflecting all of the calls

placed to the proposed Class. The records reveal millions of calls placed by SunPath's third party

marketer, American Protection.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on December 20, 2022, in Denver, Colorado.


By:  _/s/ Patrick H. Peluso_____

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

## DEFENDANT SUNPATH, LTD.'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT SUNPATH, LTD.'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendant SunPath, Ltd. ("SunPath"), by counsel, hereby submits its Reply to Plaintiff's Memorandum in Opposition to SunPath's Motion to Strike Plaintiff's Motion for Class Certification, and in support states as follows:

## I.      INTRODUCTION

Plaintiff's Memorandum in Opposition to SunPath's Motion to Strike ("Opposition"), ECF. No. 61, is an ineffective attempt by Plaintiff to avoid the consequence of her decision to ignore two separate orders from the Court setting forth and affirming the deadlines Plaintiff *was required* to abide by. The truth is that, even after Plaintiff's Motion for Leave to Modify the Case Schedule ("Motion for Leave"), ECF Nos. 32, 34, was denied by this Court, *see* Order denying Plaintiff's Motion for Extension of Time, ECF No. 37, Plaintiff blatantly ignored this Court's authority and attempted to forge her own case schedule, ignoring the applicable deadline to move for class certification, then filing her untimely motion without the required leave of the Court. In doing so, Plaintiff defied the Court's authority, and severely prejudiced SunPath. The Court

**JA446**

should therefore address Plaintiff's impermissible and deliberate actions by striking Plaintiff's Motion for Class Certification ("Motion"), ECF No. 49.

## II.    ARGUMENT

### A.  Plaintiff's Motion for Class Certification is Untimely.

#### 1.  The November 14, 2022 Class Certification Deadline Was Adopted by the Court's Rule 16 (B) Scheduling Order.

As SunPath explained in its initial Motion to Strike, Plaintiff's Motion for Class Certification is untimely. *See* Defendant SunPath's Memorandum in Support of Its Motion to Strike Plaintiff's Motion for Class Certification ("Memorandum"), ECF No. 58 at 6-7. Plaintiff's argument for her Motion being timely is based on her incorrect interpretation of the Court's Rule 16(B) Scheduling Order ("Scheduling Order"), ECF No. 31.

Plaintiff claims that "[a]t the initial pretrial conference, the Court . . . declined to adopt either schedule." Opposition at 2. Then Plaintiff claims that the parties' agreed upon motion for class certification deadline and briefing schedule "runs counter . . . to the minute order following the conference." Opposition at 3. The Scheduling Order and related minute entry to which Plaintiff refers show that she is incorrect.

Prior to the initial pretrial conference, the parties met and conferred regarding a proposed case schedule, then submitted their Joint Discovery Plan, ECF. No. 27, to the Court, in which the parties jointly proposed November 14, 2022 as Plaintiff's Deadline to file a Motion for Class Certification. *See* Joint Discovery Plan at 4-5. Thereafter, the Court adopted the parties Joint Discovery Plan with the agreed to Motion for Class Certification deadline of November 14,

2022. *See* Minute Entry dated September 7, 2022 (ordering the parties Joint "Discovery [P]lan *adopted as amended*.") (emphasis added).[1]

That same day, the Court filed the Scheduling Order, which specifically stated "[t]he Joint Discovery Plan filed by the parties is *approved* . . . unless further modified by the court." Scheduling Order at 1 (emphasis added). The only part of the parties' proposed case schedules that the Court explicitly modified was the parties' proposed expert disclosure schedules. *Id.* ("Parties' requested expert disclosure schedule is denied."). The Court unequivocally established November 14, 2022 as the applicable deadline by declining to modify the parties' agreed-to deadline for Plaintiff's Motion for Class Certification. Plaintiff's representation that the Court simply did not set this deadline is patently false, as evidenced by the Court's Scheduling Order.

### 2. Plaintiff's Motion for Leave to Modify Case Schedule Confirms the November 14, 2022 Class Certification Deadline Was Adopted by the Court.

Plaintiff attempts to rewrite history by arguing that in her "motion to modify the case schedule" she did not "seek to 'extend' any deadlines related to class certification." Opposition at 3. Plaintiff's argument is easily defeated by a simple review of Plaintiff's Motion for Leave, where "Plaintiff proposes the following modified deadlines: . . . Plaintiff to file Motion for Class Certification: January 13, 2023." Plaintiff's Motion for Leave at 1. If there was no Court-ordered or Court-approved deadline for Plaintiff to file a motion for class certification by, there

---

[1] Plaintiff attempts to deflect from her failure to adhere to the Court's schedule, by raising an irrelevant argument relating to SunPath's anticipated Motion for Summary Judgment. *See* Opposition at 2 n.1. First, this argument is inapposite, as the parties did not agree to a dispositive deadline in the Joint Scheduling Plan, and during the Final Pretrial Conference on December 15, 2022, the Court clarified that there was no applicable dispositive motions deadline in this case, as the Court only requires that such motions be "filed . . . within a reasonable time before the date of trial[.]" *See* Local Civil Rule 56(A). Second, regardless of whether SunPath has failed to meet a Court-ordered deadline, that does not excuse Plaintiff from complying with her own Court-ordered deadlines.

would have been no need for Plaintiff to propose a modified deadline relating to the filing of a motion for class certification.  This cements that Plaintiff was aware of and disregarded her November 14, 2022 deadline to file a Motion for Class Certification, which the Court refused to move when denying her motion to modify the case schedule.

Plaintiff argues that a comment made by the Court at the hearing on Plaintiff's Motion for Leave "only makes sense if the Court [] expected the motion for class certification to be filed *after* December 9th[,]" the discovery deadline in this case. Opposition at 4. There, Plaintiff has improperly taken a single statement made by the Court out of context. Plaintiff, in her Motion for Leave, had proposed a blanket 60 day extension of the existing discovery schedule, including modifying the "Discovery Cut-Off [deadline to] February 10, 2022 . . . [and the deadline for] Plaintiff to file Motion for Class Certification [to] January 13, 2023." Memo. in Support of Mot. for Leave at 8, ECF No. 34. Plaintiff was and is well aware that the parties had agreed to, and the Court had ordered, that any motion for class certification filed by Plaintiff must be filed by November 14, 2022, and that the Court declined to extend this deadline to January 13, 2023 as Plaintiff requested. An out of context statement from the Court addressing one of the other deadlines discussed in Plaintiff's Motion for Leave does not justify Plaintiff's decision to ignore Court ordered deadlines.

The Court's ruling during this hearing is relevant, however, in showing that Plaintiff's actions do not constitute excusable neglect, as discussed in further detail below—Plaintiff was directed that she could again move the Court to modify existing deadlines when it became apparent an extension was necessary.  *See* October 14 Hearing Transcript at 9:22-10:4, ECF No. 47 (instructing Plaintiff to file a motion if there are issues with the deadlines currently imposed). As Plaintiff's counsel provided in his declaration testimony, Plaintiff knew on November 9, 2022

that she would not have records required for her Motion for Class Certification until well after her November 14, 2022 deadline.  Declaration of Patrick Peluso ¶¶ 6-7, ECF No. 61-1.  But rather than requesting an extension as instructed by the Court, Plaintiff let this deadline lapse, then eventually filed her Motion for Class Certification nearly a month later without requesting leave from the Court.

Plaintiff's Opposition improperly attempts to paint SunPath's Motion to Strike as "an opportunist attempt to avoid answering [Plaintiff's Motion for Class Certification] on the merits[.]" Opposition at 4. The truth is that Plaintiff's deliberate decision to ignore her agreements and the applicable Court-ordered deadline means that Plaintiff forfeited the opportunity to have her Motion decided on its merits.  Once the Court deems that Plaintiff's Motion for Class Certification is untimely, the Court's analysis may be considered complete. Per Local Civil Rule 16(B), it was Plaintiff's burden to first move for leave to extend the applicable deadline and make a showing of good cause before filing her untimely motion.  But Plaintiff has not moved for leave to file her late motion, so SunPath's Motion to Strike must be granted. Nevertheless, SunPath still addresses the lack of good cause and excusable neglect Plaintiff would have been required to show in a properly filed motion for leave to extend her filing deadline.

**B.  Plaintiff Fails to Establish Good Cause or Excusable Neglect.**

Plaintiff has the burden of establishing good cause *and* excusable neglect in order to justify her untimely filing. *See Cook v. Howard*, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012) (for untimely motions the "party must first demonstrate 'good cause'" (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008))); *see also Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 790 (E.D. Va. 2013)  ("'[O]n motion[s] made after the time has expired,' the court

may only extend the time 'if the party failed to act because of excusable neglect.'" (quoting Fed.

R. Civ. P. 6(b)(1)(B)). Plaintiff's Opposition fails to establish good cause or excusable neglect.

In fact, Plaintiff's Opposition fails to even address good cause.

### 1.  Plaintiff Prejudiced SunPath by Ignoring Her Court-Ordered Deadline.

Plaintiff first argues that "SunPath faces no danger of prejudice" due to Plaintiff's

untimely Motion. Opposition at 5. This is false. On December 15, 2022, at the Final Pretrial

Conference, the Court set trial for February 15, 2023. That means trial is now less than eight

weeks away. Thus, SunPath's litigation strategy has been decided. During this less than eight-

week period, SunPath is entitled to focus on implementing its litigation strategy by preparing for

trial and drafting and responding to motions in limine and dispositive motions. That is part of

why the parties agreed to, and the Court approved, a motion for class certification deadline of

November 14, 2022, and a briefing schedule that would have resulted in any motion for class

certification being fully briefed by December 19, 2022. *See* Joint Discovery Plan at 4-5; *see also*

Scheduling Order at 1. SunPath is significantly prejudiced by now having to prepare for trial and

draft and respond to dispositive motions and motions in limine, while simultaneously having to

respond to Plaintiff's Motion. This is a situation the parties agreed to avoid, and the Court

ordered to be avoided. *See* Joint Discovery Plan at 4-5; *see also* Scheduling Order at 1.

The ability of SunPath to conduct additional discovery in support of its response to

Plaintiff's Motion is the other part of why the parties agreed to, and the Court approved, the

applicable motion for class certification deadline and related briefing schedule. The Court-

ordered briefing schedule provided SunPath with three weeks to respond while discovery was

still ongoing. *See* Joint Discovery Plan at 4-5; *see also* Scheduling Order at 1.  This provided

SunPath with the opportunity to conduct additional discovery it needed to oppose Plaintiff's

Motion. As a result of Plaintiff filing her Motion after discovery closed, SunPath has been prejudiced by no longer having the opportunity to conduct discovery it deems necessary to for its response. Plaintiff conveniently fails to address this prejudice to SunPath in its Opposition. SunPath will be further prejudiced by Plaintiff being permitted to ignore the applicable Court-ordered deadlines and allowed to unilaterally dictate litigation strategy.

Plaintiff argues SunPath is not prejudiced "because both parties are in the extact same situation: being required to brief and argue the motion and prepare for trial." Opposition at 5. Not only does this argument only address one aspect of how SunPath has been prejudiced, but this argument ignores the applicable standard which is concerned with "the danger of prejudice to the *non-moving party*," not prejudice the moving party's own untimely filing causes itself. *Roe v. Howard*, Civil Action No. 1:16-cv-562, 2017 U.S. Dist. LEXIS 187258, at *2 (E.D. Va. June 30, 2017) (quoting *Guerrero v. Deane*, No. 1:09CV1313 JCC/TRJ, 2012 U.S. Dist. LEXIS 105343, at * 7 (E.D. Va. July 27, 2012)) (emphasis added). Plaintiff cannot downplay or ignore the prejudice caused to SunPath by her untimely filing just because Plaintiff may have also prejudiced herself. That is not the applicable standard.

### 2. Plaintiff Failed to Act in Good Faith.

Plaintiff's second excusable neglect argument focuses on her obtaining class related documents. In support, Plaintiff included a declaration from Patrick Peluso. *See* Peluso Decl. Instead of supporting Plaintiff's argument, Mr. Peluso's declaration only serves to show that Plaintiff cannot establish good cause or excusable neglect for her untimely filing.

As explained in SunPath's Memorandum, the Court specifically instructed Plaintiff on how she should proceed if she felt an extension of any Court-ordered deadline was necessary. *See* Memorandum at 2 n.1. On November 9, 2022, Plaintiff apparently learned "that American

Protection utilized a telephone system provided by Five9, Inc. to place calls during the relevant time period." Peluso Decl. ¶ 6. Plaintiff believed the Five9, Inc. calls records "would reflect the calls placed to Plaintiff and the class[,]" and issued a subpoena to Five9, Inc. *Id*. ¶ 7; *see also* Plaintiff's Notice of Subpoena to Five9, Inc., attached hereto as **Exhibit A** (setting Five9, Inc.'s subpoena response deadline for "11/25/2022" well after her November 14, 2022 class certification deadline). The foregoing establishes Plaintiff's knowledge that she lacked the class data she believed was needed to complete a motion for class certification, and thus she would be unable to meet the applicable November 14, 2022 deadline. Instead of acting in good faith and seeking leave of the Court or requesting an extension, as instructed by the Court, *see* Memorandum at 2 n.1, Plaintiff knowingly allowed the motion for class certification deadline to pass. Then Plaintiff untimely filed her Motion without first seeking leave of the Court or requesting an extension. The foregoing establishes that Plaintiff failed to act in good faith with respect to attempting to meet the applicable Court-ordered deadline and/or seeking relief from the applicable Court-ordered deadline. As a result, Plaintiff has failed to establish good cause or excusable neglect for her untimely filing. *See Roe*, 2017 U.S. Dist. LEXIS 187258, at *2 (E.D. Va. June 30, 2017) (In determining whether a party has good cause for its untimely filing, courts consider "whether the movant acted in good faith."); *see also Smith*, 933 F. Supp. 2d at 790 (In determining whether excusable neglect can be established for a party's untimely filing, the courts consider "whether the movant acted in good faith." (citing *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996))).

Plaintiff's failure to act in good faith is further established by her decision to file her Motion for Class Certification without first seeking leave of the Court or requesting an extension of the applicable deadline. For untimely motions, the moving party bears the burden of meeting

the applicable legal standards of good cause and excusable neglect. *See Singletary v. Cumberland Cnty. Sch.*, NO. 5:12-CV-744-FL, 2016 U.S. Dist. LEXIS 32429, at *20-21 (E.D.N.C. Feb. 12, 2016) (The moving party "bears the burden of demonstrating . . . good cause") (internal citations omitted); *see also Taggart v. Damon Motor Coach*, Civil Action: 5:05-CV-00191, 2007 U.S. Dist. LEXIS 3462, at *14 (N.D. W.Va. Jan. 17, 2007) ("[A] party filing an untimely motion must show excusable neglect[.]"). Instead of first properly attempting to meet her burden by seeking leave of the Court of requesting an extension, Plaintiff untimely filed her Motion. In doing this, Plaintiff improperly placed the onus on SunPath to address Plaintiff's untimely filing. SunPath was clearly at a disadvantage in doing so as it was without knowledge of what Plaintiff would argue in attempting to establish good cause and excusable neglect. If Plaintiff was acting in good faith, Plaintiff would have sought leave of the Court or requested an extension to file her Motion where Plaintiff would have first attempted to establish good cause and excusable neglect. As a result of failing to do so, Plaintiff has not acted in good faith. Therefore, Plaintiff cannot establish good cause or excusable neglect for her untimely filing and the Court should strike her untimely Motion for Class Certification.

## III.    CONCLUSION

For the foregoing reasons, Defendant SunPath, Ltd. respectfully requests that the Court strike or summarily deny Plaintiff's untimely Motion for Class Certification.

Dated: December 21, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Reply to Plaintiff's Memorandum in Opposition to Defendant SunPath Ltd.'s Motion to Strike Plaintiff's Motion for Class Certification to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 21 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S NOTICE OF SUBPOENA**

**PLEASE TAKE NOTICE**, pursuant to Rule 45 of the Federal Rules of Civil Procedure,

that Plaintiff will serve a Subpoena to Produce Documents, Information, or Objects or to Permit

Inspection of Premises in a Civil Action in the forms attached hereto, on Five9, Inc. The

subpoena will be sent out for service on November 9, 2022.

Dated: November 9, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By:  _/s/ Taylor T. Smith_

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

Attorneys for Plaintiff and the Classes

1

**JA458**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 9, 2022.

*/s/ Taylor T. Smith*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia ▼

|  |  |
|---|---|
| Ruth Smith, et al., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:22-cv-00081-LMB-WEF |
| SunPath, Ltd., | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                           Five9, Inc.

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Addendum A.

| Place:  Lozeau Drury LLP, 1939 Harrison St., Suite 150 Oakland, CA 94612, or a mutually agreeable location. | Date and Time:  11/25/2022 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   11/09/2022

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | /s/ Taylor T. Smith |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff Ruth Smith
_____, who issues or requests this subpoena, are:

Taylor T. Smith, tsmith@woodrowpeluso.com, Woodrow & Peluso, LLC, 3900 E. Mexico Ave., Suite 300, Denver, CO 80210; Tel: 720-907-7628

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**JA460**

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:22-cv-00081-LMB-WEF

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                              *Server's signature*

                                                   _____
                                                              *Printed name and title*

                                                   _____
                                                              *Server's address*

Additional information regarding attempted service, etc.:

**JA461**

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ADDENDUM A TO SUBPOENA TO PRODUCE DOCUMENTS TO FIVE9**

Please produce the following documents for inspection and copying on or before November 25, 2022. To the extent that YOU object to any of the below requests on the basis of privilege, YOU must provide a privilege log and produce any and all non-privileged documents. Defined terms need not be capitalized to retain their defined meanings.

1.   All DOCUMENTS sufficient to IDENTIFY YOUR complete relationship with AMERICAN PROTECTION, including all contracts, agreements, and communications between YOU and AMERICAN PROTECTION.

2.   All DOCUMENTS sufficient to IDENTIFY all outbound calls (or calls whose "call_type" are recorded as "outbound") placed from any FIVE9 account associated with AMERICAN PROTECTION during the RELEVANT TIME PERIOD.

3.   All DOCUMENTS sufficient to IDENTIFY all call recordings of all outbound calls (or calls whose "call_type" are recorded as "outbound") placed by AMERICAN PROTECTION during the RELEVANT TIME PERIOD.

4.   All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "ANI" numbers) that were utilized by AMERICAN PROTECTION to place or receive telephone calls using the FIVE9 DIALING SYSTEM.

5.   All DOCUMENTS sufficient to IDENTIFY the FIVE9 DIALING SYTEM utilized by AMERICAN PROTECTION, including documents sufficient to identify the functionality and capabilities of the system.

6.   All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (276) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls.

7.   All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (434) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls

8.   All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (540) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls

9.      All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (703) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls

10.     All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (757) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls

11.     All DOCUMENTS sufficient to IDENTIFY all telephone numbers (or "DNIS" numbers) that begin with the area code (804) that were called at least once by AMERICAN PROTECTION utilizing the FIVE9 DIALING SYSTEM during the RELEVANT TIME PERIOD, together with DOCUMENTS identifying dates, times, duration, purpose, and total number of such calls

12.     All DOCUMENTS sufficient to IDENTIFY all calls, including recordings of all calls, placed to telephone numbers identified in response to Topic Nos. 6-11 above.

13.     All DOCUMENTS sufficient to IDENTIFY the telephone service provider(s) associated any FIVE9 account associated with AMERICAN PROTECTION during the RELEVANT TIME PERIOD together with the date(s) that each provider was associated with the subject number.

## DEFINITIONS

1.      "AMERICAN PROTECTION" means and refers to Chukran Management Group, LLC d/b/a American Protection Corp. whose principal place of business is located at 10627 Cocobolo Way, Boynton Beach, Florida 33437, including all of its divisions, subsidiaries, related companies, predecessors and successors, and all of its owners, directors, managers, agents, attorneys, affiliates, subsidiaries, employees, contractors, partners, and joint ventures. For the purpose of this subpoena, this definition includes Kobi Chuckran.

2.      "FIVE9 DIALING SYSTEM" means or refers to telecommunications equipment, other telemarketing systems and/or computers or computer systems that was/were or are being used to make telephone calls in this case. It includes all equipment that allows for the storing of telephone and/or dialing them in an automated or automatic fashion, wherein telephone numbers can be stored or dialed by a machine, computer, or computers system, including dialing equipment known as a "predicative dialer" or "autodialer." The definition includes all associated hardware, software, coding, and databases (including language, fields, and database coding and schema).

3.      "DOCUMENTS" means and refers to writings, contracts, manuals, papers, drawings, graphs, diagrams, maps, audits and audit results, records, reports, investigations, charts,

studies, photographs, sound recordings, images, computer programs, letters, ESI, emails, text messages, contracts, spreadsheets, agreements, data, databases, and any and all other data or data compilations, including without limitation all ESI, Excel files, screen shots, proof of backups, data or other reporting data—stored in any medium from which information can be obtained.

4.  "IDENTIFY" shall mean the following:

   A.    When referring to a person, it means to give the person's full name, present address or last known address, additional phone number, and email address, and the name of the registered business associated, owned, or operated, in any capacity by any such person.

   B.    When referring to an entity, it means to give the entity's full name, contact telephone number, and email address, and any name that the entity purports to do business as (d/b/a name), and the type of entity that the business is registered as, including but not limited to business, corporation, limited liability company, professional association, and limited liability partnership.

5.  "LEAD INFORMATION" or "LEADS" means and refers to consumer personal identifying information, including name, address, telephone number(s), IP addresses, login or session activity, timestamps, email addresses, values for any column headers, and any other data received by You from any third party.

6.  "PERSON" means any natural person or any business, legal, quasi-governmental or governmental entity or association.

7.  "PLAINTIFF" means the Plaintiff in this action, Ruth Smith, and any subsequent PERSONS added as plaintiffs to the Complaint or any subsequent or amended complaint. Plaintiff's telephone number is (703) 728-9650.

8.  "RELEVANT TIME PERIOD" means and refers to the time from January 26, 2018 to the present.

9.  "SUNPATH" means and refers to the defendant in this case, SunPath, Ltd., and any of its present or former directors, managers, employees, agents, subsidiaries, divisions, subdivisions, predecessors, successors, or joint ventures.

10. "YOU," or "YOUR," or "FIVE9" means and refers to Five9, Inc. whose principal place of business is located at 3001 Bishop Drive, Suite 350, San Ramon, CA 94583, including all of its divisions, subsidiaries, related companies, predecessors and successors, and all of its owners, directors, managers, agents, attorneys, affiliates, subsidiaries, employees, contractors, partners, and joint ventures.

**JA465**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RUTH SMITH,                          )
                                     )
              Plaintiff,             )
                                     )
       v.                            )        1:22-cv-81 (LMB/WEF)
                                     )
SUNPATH, LTD.,                       )
                                     )
              Defendant.             )

## ORDER

For the reasons stated in open court, defendant's Motion to Strike Plaintiff's Motion for

Class Certification [Dkt. No. 57] is GRANTED, and it is hereby

ORDERED that plaintiff's Motion for Class Certification [Dkt. No. 49] be and is

STRICKEN.  This order is without prejudice, and does not convey an opinion on the merits of

any future attempts by plaintiff to certify a similar class in another civil action.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 22 day of December, 2022.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge

**JA466**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081 (LMB/WEF) |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

## DEFENDANT SUNPATH, LTD.'S MOTION FOR SUMMARY JUDGMENT

Defendant SunPath, Ltd., by counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 7 and 56, respectfully submits this Motion for Summary Judgment seeking dismissal of Counts II and III of Plaintiff's Complaint, ECF No. 1, alleging violations of the Virginia Telephone Privacy Protection Act.[1] The grounds for this Motion are more fully articulated in the Memorandum in Support of this Motion, filed contemporaneously herewith.

---

[1]     Plaintiff has informed SunPath she no longer intends to proceed with any claims under Count I for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and will be dismissing Count I and proceeding solely on claims relating to Counts II and III of the Complaint, concerning alleged violations of the Virginia Telephone Privacy Protection Act. Accordingly, the Court's decision to grant this Motion for Summary Judgment would dispose of Plaintiff's claims in their entirety.

1

**JA467**

Dated December 23, 2022

Respectfully submitted,
SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

**JA468**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 23, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081 (LMB/WEF) |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

## DEFENDANT SUNPATH, LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant SunPath, Ltd., by counsel, hereby submits its Memorandum in Support of its Motion to for Summary Judgment.

## I.    INTRODUCTION AND BACKGROUND

Plaintiff claims that she received telephone calls from a non-party in violation of the Telephone Consumer Protection Act ("TCPA") and Virginia Telephone Privacy Protection Act ("VTPPA").[1] Yet there is no genuine factual dispute that SunPath did not make any of the calls that form the basis of Plaintiff's claims, or direct any other party to make unlawful telephone solicitation calls to Plaintiff.  SunPath is the administrator of vehicle service contracts ("VSCs"). Plaintiff has never purchased a VSC administered by SunPath.  Indeed, SunPath's first contact with Plaintiff was when her lawyer asserted these claims to SunPath's own counsel.

---

[1]    While Count I of Plaintiff's Complaint alleges violations of the TCPA, Plaintiff has since informed SunPath she no longer intends to proceed with any claims under Count I, and will be dismissing Count I and proceeding solely on claims relating to Counts II and III of the Complaint concerning alleged violations of the VTPPA.  This motion therefore focuses solely on Plaintiff's remaining state VTPPA claims.

The record is clear that SunPath had no role in making any call to Plaintiff.  Instead, Plaintiff claims that SunPath may be jointly and severally liable under the VTPPA for the actions of the non-party she alleges made the calls at issue, American Protection Corp., a d/b/a of Chukran Management Group LLC ("American Protection").   American Protection had an agreement with SunPath that permitted it to sell SunPath-administered VSCs alongside those of SunPath's competitors, as an independent contractor, and explicitly within the bounds of all applicable laws.   But SunPath asserted no control over American Protection's marketing practices or over the actions of any sub-contractor that American Protection hired to make calls to consumers.   American Protection bought SunPath-related products at wholesale rates and independently controlled all facets of its sales and marketing operations, including who it employed, what it sold, the rates it which it sold it, and whether it would offer a SunPath-related product or a product of any of SunPath's many competitors.   Indeed, a SunPath-administered VSC was never even offered to Plaintiff on any call at issue in this case.

Plaintiff's VTPPA claims therefore fail for several reasons.  First, Plaintiff created an "established business relationship" ("EBR") with American Protection by first inquiring about its products before American Protection made any calls to her (American Protection mailed her an advertisement a few days before she called it the first time).  Indeed, American Protection's first contact with Plaintiff was when *she placed a call to American Protection*, to request information from American Protection.   Plaintiff's motivations for making this inquiry to American Protection are irrelevant—the inquiry itself created an EBR that remained in place until she made a seller-specific do-not-call request to American Protection.   While this EBR was in place, Plaintiff's claims for violations of the VTPPA fail as a matter of law because the calls were not "telephone solicitation calls" actionable under the VTPPA in the first place.

2

**JA471**

Furthermore, while the VTPPA contains a presumption that a "seller" as defined by the statute is jointly and severally liable for unlawful "telephone solicitation calls" made by a third-party under certain prescribed circumstances, there are threshold flaws that defeat Plaintiff's claims before the presumption even applies here.  First, the calls at issue do not qualify as "telephone solicitation calls" at all:   American Protection was *calling her back* under an established business relationship.  But even assuming that they were, SunPath still cannot be held liable for any call American Protection made because SunPath-related products were not offered or even discussed during the calls at issue.  Liability under the relevant section of the VTPPA is dependent upon the party's products, goods, or services being offered *on the call* at hand, so the absence of any mention of SunPath or its products on any of the calls at issue dooms Plaintiff's VTPPA claims.

VTPPA liability also cannot attach to SunPath because SunPath is not a "seller" under the VTPPA because it does not sell the VSCs it administers.  American Protection (and any other independent third-party authorized to sell SunPath-administered VSCs) offers other companies' products alongside SunPath's, and it does not compensate SunPath directly for any particular sales—it buys SunPath-related products from SunPath at wholesale rates and resells them for whatever price it can fetch on the competitive retail market.  As such, American Protection does not make any calls "on behalf of" or for the benefit of SunPath.  American Protection is like the sporting goods store that buys sneakers at wholesale and hopes to make a profit and sell its inventory; Dick's doesn't sell "on behalf of" Nike or Adidas any more than American Protection sells "on behalf of" any of the various underlying claims administrators of the products it sells.  And even if the VTPPA's presumption of joint liability could apply to SunPath, the facts at hand show that SunPath easily rebuts this presumption, as it has not authorized and did not have any

**JA472**

knowledge of any alleged unlawful calling practices by American Protection that are the subject of Plaintiff's claims.

Finally, Plaintiff's claims under Va. Code § 59.1-512 for a caller's failure to properly identify themselves during a solicitation call must be dismissed for all of the subject calls that went unanswered.

Plaintiff's VTPPA claims fail for the foregoing reasons, and the Court should therefore grant summary judgment in SunPath's favor and dismiss all of Plaintiff's claims against SunPath, with prejudice.

## II.   LISTING OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56(B), the following undisputed material facts support the Court's grant of this Motion:

1.      Plaintiff alleges that she received a series of calls from non-party American Protection and on at least one of these calls from American Protection she was offered a VSC administered by SunPath. *See* Compl. ¶¶ 23-25, ECF No. 1; Plaintiff's Second Supplemental Discovery Responses at 7-9 (Responding to Interrogatories 2 and 3 that Plaintiff does not allege SunPath made any of the calls at issue, but that SunPath is vicariously liable for calls made by American Protection), attached as **Exhibit 1**.

2.      SunPath is the administrator of certain VSCs: it administers and pays for covered claims that customers make under their SunPath-administered service contracts.  Declaration of Andrew Garcia ¶ 4, ECF No. 11-1.

3.      American Protection is an independent third-party company that was authorized to market and sell VSCs administered by SunPath via a "Call Center Marketing Agreement"

between SunPath and American Protection dated June 29, 2017 ("Marketing Agreement"), which is attached as **Exhibit 2**.

4.      SunPath does not sell the VSCs it administers; the contracts it administers are sold by third-party sellers.  *See* Garcia Decl. ¶ 7.   SunPath does not have any role in the sales of the VSCs it administers, does not make any outbound sales calls to consumers, and more specifically, did not make any of the alleged calls to Plaintiff that form the basis of Plaintiff's complaint.  *See id*.

5.      American Protection, via its own employees or subcontractors, is the only party that Plaintiff alleges made the calls at issue.  *See* Ex. 1 at 7 (Plaintiff's Second Supplemental Answer to Interrogatory 2, in which "Plaintiff acknowledges that SunPath did not make the calls to her itself/directly."); *id*. at 8-9 (Plaintiff's First and Second Supplemental Answers to Interrogatory 3, in which Plaintiff alleges Sunpath may be vicariously liable for calls at issue due to the actions of American Protection.); Deposition of Plaintiff Ruth Smith ("Smith Dep.") at 205:14-22 ("Can you tell me which party actually placed the calls in this case? . . . A: So it was American Protection on behalf of SunPath."), excerpts attached as **Exhibit 3**.

6.      The Marketing Agreement between American Protection and SunPath states that "[American Protection] is at all times acting as an independent contractor and not as an employee of [SunPath].  Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between [SunPath] and [American Protection]."  Marketing Agreement at ¶ 9.

7.      The Marketing Agreement further states that "[American Protection] . . . shall use utmost good faith and best efforts to ensure that their respective operations are conducted in

connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties." *Id.* at ¶ 30.

8.      At all times American Protection was authorized to sell SunPath-related products, American Protection was permitted to market and sell the products of other companies alongside SunPath's, including those of SunPath's competitors.   Garcia Decl. ¶¶ 9-10; SunPath's Responses to Plaintiff's Discovery Requests ("SunPath Disc. Resp.") at 10 (SunPath's Response to Interrogatory 12), attached as **Exhibit 4**; Deposition of American Protection ("AP Dep."), at 21:4-6 ("Q: Okay.  Is SunPath the only company that American Protection works with? A: No."), excerpts attached as **Exhibit 5**; *id.* at 23:10-12 ("Q: Did you ever work exclusively with just SunPath?  A: I don't believe so."); *id.* at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call? A: No."); *see also* SunPath Deposition at 79:17 to 80:13 (SunPath did not restrict American Protection from offering other companies' products), excerpts attached as **Exhibit 6**.

9.      SunPath did not exercise any control over how American Protection undertook to market SunPath-administered (or any other party's) contracts—American Protection had complete control and direction over its marketing operations, including how it obtained consumer leads, what scripts it used, what equipment it used, and whether it offered consumers a SunPath-related product or the product of a SunPath competitor. *See* Garcia Decl. ¶ 12-14; *see also* AP Dep. at 26:1-3 ("Q: Throughout the time you worked with SunPath, were you in regular contact with them? A: No."); *id.* at 38:12-23 ("[D]id SunPath recommend that you use this specific [Customer Relationship Management system]?  A: No. . . . Q: Did you provide SunPath with access to that CRM?  A: No."); *id.* at 39:9-14 ("Q: Does SunPath have any systems that they provided American Protection with access to? A: No.   Q: Does SunPath provide any

resources to American Protection? A: No."); *id.* at 43:4-7 ("Q: Okay. Did SunPath ever provide any guidance on telemarketing?   A: Whatever is listed within the Seller Agreement with SunPath."); *id.* at 43:17-23 ("Q: Okay.  Did SunPath ever provide any training to American Protection?  A: No. Q: Does SunPath ever have any seminars, gatherings, or meetings that they would invite American Protection to?   A: No."); *id.* at 100:20-22 ("Q: Does SunPath ever provide leads to American Protection? A: No."); SunPath Dep. at 75:6 to 78:17 (SunPath has never offered guidance or training related to how to market or sell its products to American Protection or any other third party); *id.* at 79:22 to 80:2 ("Q: [D]id the agreement that SunPath has with American Protection or any third party restrict those parties from offering other companies' products? For example, SunPath's competitors' products? A: No. No. They – they all offer other products.").

10.     SunPath exercised no control over where American Protection set up its offices or how it hired its own sub-contractors.  *See* AP Dep. at 220:9 to 221:21.

11.     American Protection did not itself maintain employees that conducted its marketing activities; it retained subcontractors to do so, none of whom were known to SunPath. AP Dep. at 79:13-22 ("Q: You previously testified that American Protection does not have employees . . . [h]ow does American Protection place  telephone calls to potential clients?  . . . A: Who? We work with some subcontractors . . . that are speaking to the consumers."); *id.* at 221:10-13 ("Q: To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself?  A: No."); SunPath Dep. at 76:7-10 ("Q: To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product?  A: No."); AP

Dep. at 226:16-20 (American Protection's subcontractors were paid by American Protection, never by SunPath).

12.     Furthermore, SunPath does not compensate American Protection in any way—American Protection covered all of its own expenses, and was ultimately compensated under the Marketing Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged consumers, which was at the discretion of American Protection. Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q: Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month? A: Yes.  Q: Okay. Who do they pay that amount to?  A: To [American Protection].  Q: And then does a share of that each month go to SunPath or . . . how does that work? A: No. . . . No. SunPath bills us for the policy.").

13.     The revenue generated by American Protection was not essential to SunPath's business, and represented a "very small" proportion of SunPath's overall revenue.  SunPath Dep. at 72:16 to 73:3.

14.     Plaintiff did not receive calls from American Protection unexpectedly; before American Protection made any calls to Plaintiff, she first made at least one call to American Protection on May 26, 2020 to inquire about the products they sold.  *See* AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *see id.* at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); *see also* Screenshots of American Protection CRM

8

**JA477**

system, attached as **Exhibit 7** (reflecting that Ms. Smith was sent "Direct Mail" on 5/22/2020); Smith Dep. at 92:10-18 ("Q: And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A: Yeah, I was trying to determine who was trying to contact me."); AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with American Protection" left a voicemail requesting Ms. Smith provide the VIN number for her BMW that had previously been discussed with American Protection); *see also* **Exhibit 8** (Line of data extracted from Five9, Inc.'s ("Five9") Subpoena response showing the first interaction with Plaintiff's telephone number is labeled as "INBOUND" on May 26, 2020).[2]

15.     SunPath's name was not mentioned during any of the calls at issue—as Plaintiff testified at deposition, her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls, yet those notes do not contain a single mention of SunPath.  *See* Smith Dep. 53:9 to 54:6; *see also* Ruth Smith Call Notes (Bates labeled SMITH000031-36, which contain no reference to SunPath), attached as **Exhibit 9**.

---

[2]     With respect to Exhibit 8, SunPath does not contend that it is admissible; Five9, is a so-called "UCaaS" or Unified Communications as a Service platform provider that provides a variety of communications-related products that companies use in a variety of ways to communicate with customers and prospects and to track and manage various data relating to the user's sales and marketing practices.  Five9 was never deposed and thus the data set, by itself, lacks necessary testimony from a competent witness qualified to explain its meaning. SunPath therefore does not maintain that this information will be admissible at trial.  While Plaintiff claims not to remember making such a call (*see* Smith Dep. at 167:20 to 170:21 (Plaintiff representing that she does not remember making a call to American Protection)), SunPath simply notes here that the Five9 data that Plaintiff identified in her exhibit list appears to corroborate American Protection's testimony that Plaintiff first made a call to American Protection four days after she was sent a direct mail advertisement, and before American Protection made any calls to Plaintiff.  That is, while there is much in the Five9 data that is difficult or impossible for a layperson with no personal knowledge about the meaning of the data to ascertain, the very first instance of Plaintiff's phone number in the produced records is in a row of data in which the word "INBOUND" is used on the day at issue.

9

16. Likewise, the sales script American Protection produced in this case does not contain any mention of SunPath's name. AP Dep. at 234:2-6 ("Q: Is it correct that, in [American Protection's sales script], as written, SunPath's name isn't mentioned in the sales script or on the – the cover of the – the script at all?  A: Correct."); American Protection Sales Script, attached as **Exhibit 10**.

17. SunPath's name was not mentioned during such calls because American Protection sold multiple companies' products, and was unaware of what product would be offered until after the consumer provided her vehicle information.  AP Dep. at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call?  A: No."); *id.* at 32:9 to 33:16 (when American Protection spoke with any consumer, he or she would first need the consumer's vehicle information before determining what products they qualified for).

18. Nor was SunPath's name in the email Plaintiff received after she made her inquiry regarding American Protection's products; as Plaintiff testified, she received an email from American Protection that did not contain any reference to SunPath, and did not see SunPath's name at all until clicking a separate link in the email that then re-directed Plaintiff to American Protection's webpage.  It was on this webpage where a SunPath VSC was listed.  *See* Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), attached as **Exhibit 11**.

19. Plaintiff has no personal knowledge supporting her allegation that American Protection made calls "on behalf of" SunPath; indeed, when asked at deposition what the basis of her belief that American Protection acted on behalf of SunPath is, she could only respond

10

**JA479**

"[b]ecause of the – I believe because the telemarketer and also because of all the, you know, calls that I received."  Smith Dep.  at 157:15-20.

20.     Plaintiff admits she has never communicated with anyone from SunPath, that no one from American Protection ever represented to her that they were operating "on behalf of" SunPath, and that she does not know anything about the "ins and outs" of the relationship between American Protection and SunPath.  *Id.* at 157:21 to 158:9; 162:8 to 163:6.

21.     Plaintiff did not purchase a vehicle service contract administered by SunPath as a result of any calls made by American Protection or otherwise.

22.     Plaintiff did not make a do-not-call request to American Protection until June 11, 2020.  *See* Email between Plaintiff and American Protection (Bates labeled SMITH000029-30), attached as **Exhibit 12**.

23.     In SunPath's investigation relating to Plaintiff's claims in this case, SunPath requested information from American Protection.  American Protection responded by insisting it did not violate any telemarketing laws in association with Plaintiff's claims.  *See* SunPath Dep. at 73:14 to 74:15 (American Protection represented to SunPath's in-house counsel that American Protection did not violate any telemarketing laws that are at issue in this case); Ex. 4, SunPath Disc. Resps. at 5-6 (Answer to Interrogatory 6).

24.     American Protection only made calls to potential customers that had requested to be contacted by American Protection, either by providing consent to be called via a website, or via first calling in themselves to American Protection.  *See* AP Dep. at 77:17-25 ("Q: Does American Protection ever place telemarketing calls to consumers that it hasn't previously sent a mailer to?  A: We only contact prospects that have requested information about those services . . . we have no interest in just contacting folks that have no interest in our products."); *id.* at 84:15

to 85:4 ("Q: How does American Protection ensure that individuals that it's placing calls to have provided prior express consent?  . . . A: I mean I review to make sure that the proper opting language is present, that our name is clearly stated, that the consumer understands they will receive a call from us, and that it authorizes us, to receive a call . . . within the means we would be using."); *see also id.* at 138:23 to 139:23 (Q: "Is it fair . . . to say that [American Protection's] subcontractors place calls on behalf of American Protection to solicit sales of vehicle service contracts? A: No, we don't . . . We return requests for contacts from potential customers.  We don't just solicit . . . and call.  We have folks that are calling and requesting information, and in some cases, we reach out to people with requested information."); *id.* at 195:25 to 196:20 (American Protection's business practices are only to call people who have "opted in," meaning they "requested to be contacted from [American Protection], specifically . . . either via online, via a website, or via calling in.").

25.    SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Ruth Smith's claims in this lawsuit, is not aware of any instance in which American Protection was found to have violated any law involving telemarketing, and never authorized American Protection to violate any laws involving telemarketing or ratified any conduct by American Protection that may have violated any telemarketing laws.  *See* SunPath's Supplemental Response to Plaintiff's Discovery Requests at 3, attached as **Exhibit 13**; *see also* SunPath Dep. at 81:5-10 ("Q: [D]o you have any knowledge at all of American Protection being accused of telemarketing violations prior to the calls that are at issue in this case that Ruth Smith has filed against SunPath? A: No.").

26.    More specifically, SunPath has never directed or authorized American Protection to violate the TCPA, VTPPA, or any other laws governing telemarketing, or ratified any conduct

by American Protection that may have violated, the TCPA, VTPPA, or any other laws involving

telemarketing.  *See* SunPath Dep. at 81:19 to 83:3; AP Dep. at 234:16 to 237:5.

## III.    LEGAL STANDARD

Summary judgment should be granted where no genuine issue of material fact exists for

resolution at trial, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  "Summary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to

secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 327 (1986) (internal quotations omitted).

A genuine issue of material fact exists when there are "disputes over facts that might

affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, (1986)).  Disputes over irrelevant or unnecessary facts will not preclude a grant of

summary judgment.  *Id.*  The burden of establishing that no "genuine issue" exists is on the party

moving for summary judgment.   *Celotex*, 477 U.S. at 330.   "And the moving party need not

necessarily 'produce evidence showing the absence of a genuine issue of material fact.'"  *Smith v.*

*Schlage Lock Co., LLC*, 986 F.3d 482, 486 (4th Cir. 2021) (quoting *Celotex*, 477 U.S. at 325).

"Rather, 'the burden on the moving party may be discharged by showing—that is, pointing out to

the district court—that there is an absence of evidence to support the nonmoving party's case.'"

*Id.*; *see also Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994)

("[U]nder *Celotex*, the moving party on a summary judgment motion need not produce evidence,

but simply can argue that there is an absence of evidence by which the nonmovant can prove his

case.") (internal quotations omitted).  If the nonmoving party "fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which . . . [it has]

the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex*,

477 U.S. at 322.  The non-moving party may not rest upon a "mere scintilla" of evidence, but

must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 252.

## IV.   ARGUMENT

### A.   The Calls at Issue Were Made Pursuant to an Established Business Relationship and Therefore Are Not "Telephone Solicitation Calls" Pursuant to the VTPPA.

This case should be dismissed as to all claims for calls that occurred while Plaintiff had

an established business relationship ("EBR") with American Protection.  Due to the EBR,

Plaintiff's claims for violations of section 59.1-514 of the VTPPA fail as a matter of law because

those calls were never "telephone solicitation calls" in the first place.

Count II of Plaintiff's Complaint alleges violations of Va. Code § 59.1-514(B) for

making "telemarketing solicitation call(s)" to phone numbers on the National Do Not Call

Registry.  *See* Compl. ¶¶ 47-54.  The VTPPA defines a "telephone solicitation call" as:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

Va. Code § 59.1-510.  However, Va. Code § 59.1-514(D) lists exceptions to what is considered a

"telemarketing solicitation call," and one such exception includes any telephone call made to a

person "(ii) with whom the person on whose behalf the telephone call is made has an established

business relationship[.]"   Thus, calls to people with whom the caller has an EBR are not "telemarketing solicitation calls," by definition.

The VTPPA's EBR exception provides that a call is not considered a "telemarketing solicitation call" if the party is making a call to prior or existing consumers within 18 months of the last transaction with that consumer, or three months after the consumer's last inquiry.  Va. Code § 59.1-510 (defining an "established business relationship").   If a consumer requests not to receive telephone solicitation calls before the applicable time period expires, the caller has 30 days to honor that request.[3]

There is no dispute that Plaintiff made an inquiry to American Protection regarding the products it sold by calling American Protection on May 26, 2020.[4]  This created an EBR that

---

[3]     While the VTPPA does not provide explicit guidance regarding the time-frame to honor a do-not-call request that terminates an EBR, the analogous TCPA Do-Not-Call regulations, which are incorporated by the VTPPA, clarify that a do-not-call request must be honored within 30 days of receiving the request, such that calls to such numbers are not actionable until after such grace period expires.  *See* Va. Code § 59.1-514(B) (incorporating 47 C.F.R. § 64.1200, which provides in subsection 64.1200(d)(3) that an entity making calls for telemarketing purposes must honor a do-not-call request within 30 days); *see also Bryant v. King's Creek Plantation, LLC*, No. 4:20-cv-00061, 2020 U.S. Dist. LEXIS 226044, at *8-9 (E.D. Va. June 22, 2020) (noting that the VTPPA is analogous to the TCPA's DNC provision, comparing 47 C.F.R. § 64.1200(c)(2) with Va. Code § 59.1-514(B)); *Hamilton v. Spurling*, Case No. 3:11cv00102, 2013 U.S. Dist. LEXIS 38585, at *34 n.12 (S.D. Ohio Mar. 20, 2013) ("[A]s the FCC report points out, it is not until a person who has an EBR with a telemarketer requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200." (quoting *Charvat v. Dispatch Consumer Servs.*, 769 N.E.2d 829, 834 (2002)).

[4]     *See* AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *see id.* at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); *see also* Screenshots of American Protection CRM system, Ex. 7 (reflecting that Ms. Smith was sent "Direct Mail" on 5/22/2020); Smith Dep. at 92:10-18 ("Q: And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A: Yeah, I was trying to determine who was trying to contact me."); AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with American Protection" left a voicemail requesting Ms. Smith provide the VIN number for her

permitted American Protection to call Plaintiff back for a three-month period because such calls are excluded from the VTPPA's definition of "telephone solicitation call," and therefore such calls do not present actionable claims under the VTPPA's do-not-call provision in Va. Code § 59.1-514.[5] The EBR then remained in place until June 11, 2020, when Plaintiff made her first and only do-not-call request.[6] At this point, American Protection had 30 days to honor that request (i.e., until July 11, 2020).

Accordingly, any of Plaintiff's claims against SunPath pursuant to Va. Code § 59.1-514 which are based upon its relationship with American Protection and which are predicated on calls made during the EBR period (i.e. between May 26, 2020 and July 11, 2020) should be dismissed. Any calls American Protection made to Plaintiff during this timeframe were not "telephone solicitation calls" and are not actionable under the VTPPA's do-not-call provision.[7]

---

BMW that had previously been discussed with American Protection); *see also* Ex. 8 (Line of data extracted from Five9's Subpoena response showing the first interaction with Plaintiff's telephone number is dispositioned as "INBOUND" on May 26, 2020).

[5]     Decisions regarding the TCPA's EBR exception likewise show that the existence of the EBR exempts analogous do-not-call claims *See, e.g., Rowan v. US Dealer Servs., Inc.*, Civ. No. 21-09945 (KM)(LDW), 2022 U.S. Dist. LEXIS 127153, at *13-14 (D.N.J. July 18, 2022), *appeal dismissed*, No. 22-2522 (3rd Cir. Nov. 21, 2022) (granting summary judgment in favor of TCPA defendant because the calls at issue were made pursuant to an established business relationship with a related business that was not a party to the case); *Thomas-Lawson v. Koons Ford of Balt., Inc.*, Civil Case No. SAG-19-3031, 2020 U.S. Dist. LEXIS 59517, at *12-13 (D. Md. Apr. 6, 2020) (dismissing TCPA claims for failure to plead calls were actionable "telephone solicitations" due to existing EBR).

[6]     Plaintiff did not make a do-not-call request to American Protection until June 11, 2020. *See* Email, Ex. 12.

[7]     This would dispose of all claims based on the calls cited in Plaintiff's Complaint and listed in her November 11, 2022 Supplemental Response to Interrogatory 1, which includes only calls that occurred between May 26, 2020 and June 9, 2020. *See* Compl. ¶ 24; Ex. 1 at 2-6. Plaintiff submitted a Third Supplemental Response to Interrogatory 1 on December 8, 2020, in which Plaintiff claims she "seeks damages and recovery for all calls placed to her cellular telephone number ending in 9650, which are reflected in the call records produced by Five9, Inc." *See* Plaintiff's Third Supplemental Responses to SunPath's Discovery Requests at 6-7, attached as **Exhibit 14**. SunPath posits that any Five9 records Plaintiff refers to are inadmissible, and further disputes the characterization of any data produced by Five9 as "call

**B.      SunPath Is Not Jointly Liable for Any Actions of American Protection.**

Even assuming, *arguendo*, that any calls American Protection made to Plaintiff were considered "telephone solicitation calls," all of Plaintiff's VTPPA claims against SunPath still fail because SunPath cannot be held jointly liable for any acts of American Protection.  Because SunPath does not make any telemarketing calls at all and has never made any calls to Plaintiff, Plaintiff's theory is that SunPath is vicariously liable for calls made by American Protection. But notably, the VTPPA *does not* impose strict liability on any party considered to be a "seller" under the statute for the conduct of anyone making a call that is authorized to market the company's products.  *See Mantian Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011) ("There is no evidence in the legislative history of the act that Virginia's legislature intended to impose strict liability on a company for the conduct of anyone making a phone call and claiming to represent the company.").

Rather, Va. Code § 59.1-514.1 presents a rebuttable presumption. Va. Code § 59.1-514.1(A) provides that a "seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of [the VTPPA] . . . shall be jointly and severally liable for such violation." And a "telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller" unless rebutted by a showing of clear and convincing evidence "that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone

---

records," which itself constitutes an impermissible lay opinion about which Plaintiff has no personal knowledge.  Therefore, Plaintiff's December 8, 2022 Third Supplemental Answer to Interrogatory 1 does not create a dispute regarding the number of calls at issue, because it does not provide any admissible evidence as to the number of calls at issue or when such calls occurred.  *See* Fed. R. Civ. P. 56(c)(1)(B) (a material fact is not in dispute when "an adverse party cannot produce admissible evidence to support the fact").

**JA486**

solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent." Va. Code § 59.1-514.1(B).

SunPath cannot be found jointly liable for any conduct of American Protection that may have violated the VTPPA because no SunPath-related VSC was ever offered on any call to Plaintiff. Therefore, SunPath is not a "seller on whose behalf or for whose benefit" American Protection made any call to Plaintiff at issue in this case. And even if SunPath was considered a "seller" to which section 59.1-514.1(B)'s presumption applies, the factual record in this case shows that SunPath overcomes this presumption because it had no affiliation with or knowledge of the calls to Plaintiff at issue here.

### 1.    SunPath's Property, Goods, or Services Were not Offered to Plaintiff on any Call.

SunPath cannot be held jointly and severally liable for the conduct of American Protection because SunPath was not mentioned on any call at issue. Again, the presumption of liability for a third-party's calls only applies if the subject "***telephone solicitation call*** offer[s] or advertis[es] a seller's property, goods, or services." Va. Code § 59.1-514.1(B) (emphasis added). But there is no material factual dispute that SunPath's name was never mentioned on any ***call*** between American Protection (via its own subcontractors) and Plaintiff. The first time Plaintiff ever saw (and crucially, not heard) SunPath's name was when she received an email from American Protection after inquiring about *American Protection*'s products and then took an additional step to click a hyperlink in that email. At that point, she was re-directed to *American Protection*'s website. There, she finally saw that a SunPath-related VSC was available for purchase based on the specifications of her vehicle that she had provided to American

18

**JA487**

Protection.[8]  Thus, Plaintiff did not even *see*—not hear—SunPath's name until she was two steps removed from her call with American Protection.

The VTPPA only applies to the content of the "telephone solicitation call," *not* the content on a website a consumer is re-directed to from an email the consumer received after expressing interest about a type of product discussed on a call.  And SunPath's name was not mentioned during any calls because American Protection sold multiple companies' products, and was unaware of what product would be offered until the consumer provided his or her vehicle information.[9]  This further illustrates why a *SunPath-related* product was not and could not have been offered during such calls as required for a finding of joint and several liability per Va. Code § 59.1-514.1(B).  SunPath therefore cannot be held jointly liable for any of the calls at issue.

### 2.    SunPath Is not a Seller as Defined by the VTPPA.

SunPath cannot be considered a "seller" under the VTPPA, and therefore cannot be subjected to joint and several liability for the conduct of American Protection.   Per Va. Code § 59.1-510, "'Seller' means any person on whose behalf or for whose benefit a telephone

---

[8]    As Plaintiff stated at deposition, her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls, yet those notes do not contain a single mention of SunPath—nor was SunPath's name contained in American Protection's sales script or the email Plaintiff received. *See* Smith Dep. 53:9 to 54:6 (Plaintiff's recollection of the calls is contained in her call notes); *see also* Ruth Smith Call Notes (Bates labeled SMITH000031-36, which contain no reference to SunPath), Ex. 9; AP Dep. at 234:2-6 ("Q: Is it correct that, in [American Protection's sales script], as written, SunPath's name isn't mentioned in the sales script or on the – the cover of the – the script at all?  A: Correct."); Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), Ex. 11.

[9]    AP Dep. at 21:4-6 ("Q: Okay.  Is SunPath the only company that American Protection works with? A: No."); *id.* at 23:10-12 ("Q: Did you ever work exclusively with just SunPath?  A: I don't believe so."); *id.* at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call?  A: No."); *id.* at 32:9 to 33:16 (when American Protection spoke with any consumer, they would first need the consumer's vehicle information before determining what products they qualified for).

solicitation call offering or advertising the person's property, goods, or services is made or initiated."  It is Plaintiff's burden to prove that this term applies to SunPath before Va. Code § 59.1-514.1(B)'s rebuttable presumption applies.  Yet, Plaintiff cannot do so because the factual record in this case is clear that any of the calls at issue were not "on behalf of" or "for the benefit" of SunPath.

Most obviously, SunPath is not a seller because it does not sell anything.  SunPath is the administrator of VSCs: it administers and pays for covered claims customers make under their SunPath-administered service contracts.  SunPath does not sell the VSCs it administers—its products are sold by third-party sellers, much like auto manufacturers' cars are sold by independent dealers.[10]

More specific to the VTPPA's definition of the term, SunPath does not benefit from any specific sales American Protection makes via telemarketing efforts.  American Protection purchased the SunPath VSCs at a wholesale price and was ultimately compensated under the Marketing Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged its consumers.  This latter price was at the sole discretion of American Protection.[11]   Moreover, Plaintiff has never purchased a VSC administered by SunPath, so it certainly received no benefit in this case relating to calls made to Plaintiff, regardless of how the term "benefit" is construed.

---

[10]     Garcia Decl. ¶ 4, 7.

[11]     Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); id. at 60:24 to 61:12 ("Q: Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month?  A: Yes.  Q: Okay. Who do they that amount to?  A: To [American Protection].  Q: And then does a share of that each month go to SunPath or . . . how does that work? A: No. . . . No. SunPath bills us for the policy.").

Furthermore, American Protection did not make any calls "on behalf" of SunPath. In fact, the record shows that subcontractors American Protection hired, and who had no relationship with SunPath,[12] made the calls at issue to sell the products marketed by American Protection, the only "seller" in this case. SunPath has no relationship whatsoever with the subcontractor(s) responsible for making any call to Plaintiff, and is a further step removed from any telephone solicitations that may be governed by the VTPPA.

Furthermore, there is no factual dispute that American Protection's subcontractors did not know what company's products would be offered to any consumer when a call was received or made: The product being offered—whether a SunPath-related product or a competitor's—was not determined until after a consumer provided information related to his or her vehicle.[13] Much like a grocery store is not acting "on behalf" of every company whose products line its shelves, and a bar is not acting "on behalf of" every brewery whose beer is on tap, American Protection could not be considered to be acting "on behalf of" SunPath or any other party whose products it sold. *See Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D. Md. Aug. 4, 2022) (dismissing analogous TCPA claims on a motion for summary judgment because "at best, Hound Energy and AGR were responsible for

---

[12]     *See* AP Dep. at 79:13-22 ("Q: You previously testified that American Protection does not have employees . . . [h]ow does American Protection place calls to potential clients? . . . A: Who? We work with some subcontractors . . . that are speaking to the consumers."); *id*. at 221:10-13 ("Q: To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself? A: No."); SunPath Dep. at 76:7-10 ("Q: To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product? A: No."); AP Dep. at 226:16-20 (American Protection's subcontractors were paid by American Protection, never by SunPath).

[13]     *See* AP Dep. at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call? A: No."); *id*. at 32:9 to 33:16 (when American Protection spoke with any consumer, they would first need the consumer's vehicle information before determining what products they qualified for).

21

**JA490**

independently soliciting customers for Discount Power, not for 'act[ing] on the principal's behalf and subject to the principal's control.'") (internal citations omitted).[14]   It is clear that *American Protection*, not SunPath, is the party on whose behalf the calls were being made because American Protection's subcontractors announced this on voicemail recordings Plaintiff produced.[15]   There is no dispute that American Protection is the only party that sold anything in this case, and it did so as an independent contractor, as provided by the terms of the Marketing Agreement, and for its own benefit.

Accordingly, SunPath is not considered a "seller" under the VTPPA.  Because any joint liability pursuant to Va. Code § 59.1-514.1 is conditioned on the non-calling party's status as a seller, Plaintiff's VTPPA claims against SunPath necessarily fail.

---

[14]     *See also*, *e.g.*,  *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 365  (N.D. Ind. 2021) (citing *Carlisle v. Deere & Co.*, 576 F.3d 649 (7th Cir. 2009)) (finding that a dealer is not an agent of the manufacturers of the products it sells, especially when the dealer sells multiple brands); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 527-28 (N.D.W. Va. 2016) (granting summary judgment because "the mere fact that a dealer uses a suppliers name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise."); *Makaron v. GE Sec. Mfg.*, CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *19-20 (C.D. Cal. May 18, 2015) (granting motion for summary judgment due to lack of actual agency despite license to use trademarks and logos because applicable contracts indicated the dealers were independent contractors).

[15]     *See* AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with *American Protection*" left a voicemail for Plaintiff).  If SunPath were hypothetically to be considered the party this call was made "on behalf of," compliance under the VTPPA's solicitor identification provision, Va. Code § 59.1-512, requiring the caller to identify himself and the party he is calling on behalf of, would be unachievable.  This would require that the caller give their name, the seller they were actually calling from, and then every separate company whose products the seller may sell, regardless of whether the caller would be offered any of those companies' products.  This is clearly not what the statute contemplates, just as SunPath is clearly not the party any call at issue was made "on behalf of."

22

**JA491**

3.   **The Factual Record Supports that SunPath Had No Connection to any Allegedly Unlawful Calling Practices that Could Subject it to Joint Liability Under the VTPPA's Rebuttable Presumption.**

Because SunPath-related products were not mentioned on any call, and SunPath is not considered a "seller" under the VTPPA, Plaintiff's VTPPA claims fail without needing to examine the applicability of Va. Code § 59.1-514.1(B)'s presumption of joint liability for another party's telephone solicitation calls. But even if this presumption did apply to SunPath in this case, the presumption is rebutted here.

"The presumption [that a telephone solicitation call offering or advertising a seller's property, goods, or services was made or initiated on behalf of or for the benefit of the seller] may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent." Va. Code § 59.1-514.1(B).

The Marketing Agreement between SunPath and American Protection states that "[American Protection] . . . shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties." Marketing Agreement at ¶ 30.[16]

---

[16]    A duty to comply with the VTPPA or the analogous TCPA can be delegated to independent contractors. *See Mantian Zhu*, 808 F. Supp. 2d at 819;  *see also Worsham*, 2022 U.S. Dist. LEXIS 139580, at *18;  *Simmons v. Charter Commc'ns., Inc.*, 222 F. Supp. 3d 121, 137 (D.Conn. 2016) ("there is no better way to ensure compliance with the TCPA than to include such compliance as an essential term of the contract.").

As discussed above, a "telephone solicitation call" under the VTPPA excludes calls made pursuant to an established business relationship. Va. Code § 59.1-514(D).  The definition also excludes calls made with the person's prior express invitation or permission to be called.  *Id.* Therefore, if American Protection was engaged in making "telephone solicitation calls" as defined by the VTPPA, i.e., not within either of these exceptions, it was acting *outside the scope* of its contractual authority by violating the VTPPA without SunPath's knowledge and contrary to its contractual commitments to SunPath.  Moreover, the VTPPA's provision regarding joint liability only applies to "prohibited acts," (*see* Va. Code § 59.1-514.1 titled "Joint Liability of seller and telephone solicitor for *prohibited acts*; rebuttable presumption.") (emphasis added), which again would be outside the scope of American Protection's authority under the Marketing Agreement.

In other words, pursuant to the express terms of the agreement between SunPath and American Protection, there was no scenario in which SunPath authorized American Protection to make "telephone solicitation calls" or engage in any "prohibited acts" that could subject it to joint liability under the VTPPA.   Indeed, another court very recently ruled on summary judgment that SunPath could not be held liable for a third-party seller's actions allegedly made in violation of the TCPA, because any unlawful conduct was explicitly prohibited under the applicable agreement, and therefore was not authorized by SunPath.  *See Black v. SunPath Ltd.*, Case No. 3:21-cv-00023, 2022 U.S. Dist. LEXIS 165799, at *9-10 (M.D. Tenn. Sep. 14, 2022), *appeal filed*, No. 22-5927 (6th Cir. Oct. 18, 2022) ("By relying on the formal contract between the parties, without any additional evidence of a broader, implicit understanding between SunPath and [an independent third-party seller], [Plaintiff] has placed herself in the difficult position of trying to establish authority to perform an act based on an agreement that clearly and

24

**JA493**

emphatically forbids that act under any circumstances.") (citing *Kern v. VIP Travel Servs.*, Case No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139, at *19 (W.D. Mich. May 10, 2017)).

Beyond the plain language of the Marketing Agreement, which is sufficient to rebut the applicable presumption, the record is clear that SunPath has no knowledge that American Protection ever undertook to make unlawful "telephone solicitation calls." In SunPath's investigation relating to Plaintiff's claims in this case, SunPath requested information from American Protection, to which American Protection responded by insisting it did not violate any telemarketing laws in association with Plaintiff's claims.[17] American Protection testified at deposition that it only made calls to potential customers that had requested to be contacted by American Protection, either by providing consent to be called via a website, or via first calling in themselves to American Protection.[18] SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Plaintiff's claims in this lawsuit, is not aware of any instance in which American Protection was found to have violated any law involving telemarketing, and has at no point authorized

---

[17]    *See* SunPath Dep. at 73:14 to 74:15 (American Protection represented to SunPath's in house counsel that American Protection did not violate any telemarketing laws that are at issue in this case); SunPath Disc. Resps. at 5-6 (Answer to Interrogatory 6).

[18]    *See* AP Dep. at 77:17-25 ("Q: Does American Protection ever place telemarketing calls to consumers that it hasn't previously sent a mailer to? A: We only contact prospects that have requested information about those services . . . we have no interest in just contacting folks that have no interest in our products."); *id.* at 84:15 to 85:4 ("Q: How does American Protection ensure that individuals that it's placing calls to have provided prior express consent? . . . A: I mean I review to make sure that the proper opting language is present, that our name is clearly stated, that the consumer understands they will receive a call from us, and that it authorizes us, to receive a call . . . within the means we would be using."); *see also id.* at 138:23 to 139:23 (Q: "Is it fair . . . to say that [American Protection's] subcontractors place calls on behalf of American Protection to solicit sales of vehicle service contracts? A: No, we don't . . . We return requests for contacts from potential customers. We don't just solicit . . . and call. We have folks that are calling and requesting information, and in some cases, we reach out to people with requested information."); *id.* at 195:25 to 196:20 (American Protection's business practices are only to call people who have "opted-in," meaning they "requested to be contacted from [American Protection], specifically . . . either via online, via a website, or via calling in.").

**JA494**

American Protection to violate any laws involving telemarketing or ratified any conduct by American Protection that may have violated any telemarketing laws.[19]

Based on this record—when the alleged unlawful calls were made "without the seller's knowledge or consent"—summary judgment in favor of the SunPath, to the extent it can even be considered a "seller," is appropriate. *See Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 253 (4th Cir. 2018) (granting summary judgment for defendants in part because the record showed defendants repudiated any allegedly unlawful acts by third-party telemarketers); *see also Black*, 2022 U.S. Dist. LEXIS 165799, at *12-13 (granting summary judgment in favor of SunPath because there was no evidence that SunPath had knowledge of and subsequently ratified the relevant allegedly unlawful calling practices of a third party).

Furthermore, the record clearly shows that while SunPath had an agreement with American Protection that authorized it to market SunPath-related products alongside those of other companies, SunPath did not direct or control how American Protection conducted its operations.  Here, SunPath had no relationship whatsoever with any of the subcontractors American Protection hired and who made any calls to consumers.  As explained in Section II(B)(2), *supra*, neither American Protection nor its subcontractors acted "on behalf of" SunPath or for SunPath's benefit—SunPath did not directly financially benefit from any sale made by American Protection, and had no knowledge of how American Protection's subcontractors

---

[19]     *See* SunPath's Supplemental Response to Plaintiff's Discovery Requests at 3, Ex.12; *see also* SunPath Dep. at 81:5-10 ("Q: [D]o you have any knowledge at all of American Protection being accused of telemarketing violations prior to the calls that are at issue in this case that Ruth Smith has filed against SunPath? A: No."); *id*. at 81:19 to 83:3 (SunPath has never directed or authorized American Protection to violate the TCPA, VTPPA, or any other laws governing telemarketing, or ratified any conduct by American Protection that may have violated any laws involving telemarketing.); AP Dep. at 234:16 to 237:5 (same).

decided who to contact or whether those subcontractors would offer any consumer SunPath-related products or another company's products.

Finally, Plaintiff cannot offer any material evidence to show that American Protection made calls "on behalf of" SunPath.  She admittedly has never interacted with SunPath in any way.  No one from American Protection ever conveyed to her that it operated "on behalf of" SunPath.  And Plaintiff lacks any knowledge as to the specifics of the relationship between SunPath and American Protection.[20]  Besides reading SunPath's name on a website she visited separate from any call at issue, Plaintiff and SunPath were strangers to each other until Plaintiff's attorneys contacted SunPath in the form of a pre-suit demand.  *See Black*, 2022 U.S. Dist. LEXIS 165799, at *11 (granting summary judgment dismissing claims against SunPath because SunPath did not manifest to Plaintiff that a third-party marketer was authorized to operate on its behalf).[21]

---

[20]    *See* Smith Dep. at 157:21 to 158:9; 162:8 to 163:6 (Plaintiff admits she has never communicated with anyone from SunPath, that no one from American Protection ever represented to her that they were operating "on behalf of" SunPath, and that she does not know anything about the "ins and outs" of the relationship between American Protection and SunPath.); *id.* at  157:15-20 (The basis of Plaintiff's belief that American Protection acted on behalf of SunPath is "[b]ecause of the – I believe because the telemarketer and also because of all the, you know, calls that I received."); *id.* at 206:1 to 208:1 (Plaintiff testified that SunPath's name was not in the email Plaintiff received after she made her inquiry regarding American Protection's products, and she did not see SunPath's name at all until clicking a separate link in the email that then re-directed Plaintiff to American Protection's webpage.); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), Ex. 11.

[21]    SunPath also notes that under Virginia law, vicarious liability has never been imposed on a party for the acts of an independent contractor via a theory of apparent agency based on a third-party's belief that the purported agent is authorized to act on behalf of a principal.  *See Giordano v. Atria Assisted Living, Virginia Beach, LLC*, 429 F. Supp. 2d 732, 738 (E.D. Va. 2006) (In Virginia, "[t]he apparent agency relationship is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal.") (internal citation omitted); *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 307-08 (2005) ("[I]n Virginia, we have not previously imposed vicarious liability on an employer for the negligence of an independent contractor on the basis of apparent or ostensible agency, or agency by estoppel."); *see also S. Floors & Acoustics, Inc. v. Max-Yeboah*, 267 Va. 682, 690 n.1 (2004)

For the foregoing reasons, even if Va. Code § 59.1-514.1's presumption of joint liability is found to apply to SunPath, the factual record supports via clear and convincing evidence that none of the calls at issue in this case were made on behalf of SunPath, and SunPath has no knowledge of and has not consented to any party making unlawful telemarketing calls. Accordingly, Plaintiff's VTPPA claims against SunPath should be dismissed.

### C.   Plaintiff's Claims Pursuant to Va. Code § 59.1-512 Fail as to All Calls at Issue that Went Unanswered.

Count III of Plaintiff's Complaint alleges violations of Va. Code § 59.1-512, which provides that "A telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person."   In addition to the arguments set forth above that SunPath cannot be subjected to any joint liability for alleged VTPPA violations stemming from calls made by American Protection, Plaintiff's claims also fail under Count III for all calls that went unanswered.  More specifically, Plaintiff describes 54 calls in her Supplemental Response to Interrogatory 1, of which Plaintiff describes 46 as "unanswered," without any further description of the contents of any call. Ex. 1 at 2-6. Accordingly, there is no dispute that Plaintiff did not speak with anyone that failed to properly identify themselves as required by Va. Code § 59.1-512 during any of these calls.  Plaintiff's claims pursuant to Count III should therefore be dismissed as to all of these unanswered calls.

---

("As a general rule, an owner who employs an independent contractor is not liable for injuries to third persons caused by the contractor's negligence." (quoting *Kesler v. Allen*, 233 Va. 130, 134 (1987))).

## V.    CONCLUSION

WHEREFORE, Defendant SunPath requests that this Court grant its Motion for Summary Judgment, and grant such other relief as it deems necessary.

Dated: December 23, 2022                    Respectfully submitted,

                                            SUNPATH, LTD.

                                            By Counsel

                                            /s/ *Gregory M. Caffas*
                                            Gregory M. Caffas (VSB No. 92142)
                                            Mitchell N. Roth (VSB No. 35863)
                                            ROTH JACKSON
                                            8200 Greensboro Drive, Suite 820
                                            McLean, VA 22314
                                            (703) 485-3535
                                            (703) 485-3525 (fax)
                                            gcaffas@rothjackson.com
                                            mroth@rothjackson.com

                                            Joseph P. Bowser (VSB No. 88399)
                                            ROTH JACKSON
                                            1519 Summit Ave., Ste. 102
                                            Richmond, VA 23230
                                            804-441-8701
                                            804-441-8438 (fax)
                                            jbowser@rothjackson.com

                                            *Counsel for SunPath, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Memorandum in Support of its Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 23, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

RUTH SMITH, individually and on behalf of all
others similarly situated,

    Plaintiff,

    v.

SUNPATH, LTD., a Massachusetts corporation,

    Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO
## DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for

her responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set

of Discovery Requests, states as follows: all responses and objections contained herein are based

only upon such information presently available to Plaintiff. Further discovery, investigation,

research and analysis may supply additional facts and/or add meaning to known facts. The

responses below are given without prejudice to Plaintiff's right to later produce additional

documents or information.

### INTERROGATORIES

1.    Identify all telephone calls to Your Cellular Telephone Numbers for which you

seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all

factual bases for your contention that each call was made by or on behalf of SunPath.

    ANSWER: Objection, this interrogatory also seeks information that is more readily in the

possession, custody, or control of Defendant and/or third parties. This interrogatory is also

premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themselves by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's products and services.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at

10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls, Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m, which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff

3

asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themselves by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls

4

were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing

system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themselves by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. As of today, November 30, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

2.      If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

6

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, the calls at issue were place for the purpose of soliciting Plaintiff to purchase SunPath's vehicle service contracts. (*See* SMITH000022-26.) As such, SunPath is a "seller" within the meaning of Va. Code Ann. § 59.1-514.1 (West). Accordingly, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has stated all facts currently in her knowledge in response to this interrogatory. Plaintiff acknowledges that SunPath did not make the calls to her itself/directly. Instead, the calls were placed by third parties.

3.      If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at

7

issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services, specifically its vehicle service contracts. Indeed, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") testified that it placed calls for the purpose of soliciting sales of SunPath's vehicle service contracts. Further, American Protection asserts that SunPath provided training to assist in selling its products and services. Further, Plaintiff directs SunPath's attention to its contractual agreements with American Protection, which governs the relationship with SunPath and reveals substantial control that SunPath asserts of American Protection's operations and telemarketing. Additionally, Plaintiff also directed SunPath's attention to documents produced, which reflect SunPath's appointment of American Protection as its agent in the State of Florida for the purposes of selling automobile warranties. Plaintiff also asserts that SunPath is liable for American Protection's actions by ratifying its acts and omissions, including accepting the benefits of the telemarketing calls at issue.  Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West) as set forth in response to Interrogatory No. 2 above. Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

JA507

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has already stated the facts currently in her knowledge in response to this interrogatory, and points SunPath to the deposition transcript from American Protection's deposition for additional details. To the extent additional information may be learned between now and the close of discovery, the interrogatory will be supplemented as such additional information becomes available.

18.    If you contend that you suffered any compensable harm(s) as a result of the calls or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of such contention and identify the amount of damages you are seeking in this action for such harm(s) and from which Defendant.

ANSWER: Objection, this interrogatory is premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5000 per call for each subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and complete computation of damages at this time. Discovery is ongoing and Plaintiff will supplement this response following receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made. Plaintiff further states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier,

interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

SUPPLEMENTAL ANSWER: Objection, this interrogatory is premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5,000 per call for each subsequent call received in violation of the VTPPA. Consequently, based on the information currently available to Plaintiff, she seeks $81,000 in damages for violations of the TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to provide a full and complete computation of all class members' damages at this time. Discovery is ongoing and Plaintiff will supplement this response following receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made. Plaintiff further states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has stated the damages calculation to the best of her ability at this time. When Plaintiff receives her call records from AT&T, she will be in a better position to split out the damages sought for each individual call she received, and will do so promptly once the records are in her physical possession.

21.    Identify any and all settlement agreements you have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the TCPA or VTPPA, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration you received under the terms of such agreements.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, this interrogatory seeks information regarding settlement and lawsuits that has no relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and/or confidentiality agreements. This interrogatory is also designed to harass.

SUPPLEMENTAL ANSWER: Plaintiff reiterates her objection that the information sought is beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. However, in light of the Court's order, below Plaintiff states the name of the case, date of the settlement, and release language for each settlement she has been a party to related to alleged unlawful text messages or phone calls since January 2017. Note that these cases all pre-date the calls which gave rise to this case and are therefore irrelevant, as Plaintiff previously stated. Furthermore, please note that there are two settlements unrelated to telemarketing which are not included below. One is a divorce, the other is related to mislabeled food products.

1.  Defendant/Company: Vehicle Protection Specialist

11

12

Date of agreement: September 30, 2019

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

2.   Defendant/Company: My Financial Solutions

Date of Agreement: August 1, 2019

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

3.   Defendant/Company: Vehicle Protection Specialist

Date of Agreement: July 23, 2019

**JA511**

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

## REQUESTS FOR ADMISSION

7.     You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020 because she has access

13

to her cellular telephone bills, which may reflect such calls reflecting the full scope of all calls at issue in this case. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery, changes the answer, a supplement will be sent.

8. You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020 because she has access to her cellular telephone bills, which may reflect such calls once third parties identify the full scope of the calls. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in

14

discovery, which may reveal responsive documents and information.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery, changes the answer, a supplement will be sent.

16.    During each of the calls described in Paragraphs 23-24 of your Complaint, the caller did not state that he or she was calling from or on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Deny. For every call that was answered or that left a voicemail message, the caller did not identify themselves by first and last name. A complete breakdown of the calls at issue can be found in Plaintiff's supplemental response to Interrogatory No. 1.

Dated: November 30, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Patrick H. Peluso_
        One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscollawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

15

16

Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 30, 2022.

_/s/ Patrick H. Peluso_

## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement. CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products. This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

1

Exhibit
0003

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%).   For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company.

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid.

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein.  In all cases CCM shall be solely responsible for all of its expenses.

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year.  This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below.  Written notice shall be made at least thirty (30) days prior to the end of the current term.



**JA517**

## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term. Written notice shall be sent via registered mail, return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may be terminated immediately for cause upon written notice from Company to CCM if:

    i)    CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

    ii)    An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

    iii)    Breach by CCM of any provisions contained herein;

    iv)    CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

    v)    CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination. Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer, service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20. The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed. Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

## NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

If to the Company:       SunPath, LTD
                         50 Braintree Hill Office Park – Suite 310
                         Braintree, MA 02184

If to the CCM:           Chukran Management Group, LLC
                         10627 Cocosolo Way
                         Boynton Beach, FL 33437
                         Attention : Kobi Chukran

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided. The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

## INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company. Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM.

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature, including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including, but not limited to any action, suit, or other proceeding which may be brought in connection therewith, arising out of or related to:   (i) CCM's sale of Product; (ii) the negligent acts, omissions or intentional wrongdoing of CCM; (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services; or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

## MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company. The Company may assign this Agreement without CCM's consent. Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement. The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

4

**JA519**

24) Property Rights. Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company. This provision shall survive the expiration or termination of this Agreement.

25) No Benefit to Third Parties. The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) Changes and Waiver. This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM. The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) Entire Agreement. This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby. All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) Severability. If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired; provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) Law and License. Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) Counterparts; Facsimile Signatures. This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement. Facsimile signatures will be accepted by both parties as execution original signatures.

32) Announcements. The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) Jurisdiction. The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                              CHUKRAN MANAGEMENT GROUP, LLC


X: _____               X: _____

Name: _____               Name: _KoBi chukran_

Date: _____                Date: _6/29/17_

5

## ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement:

1) VSC Product - Horizon
2) VSC Product – Mileage Plus
3) VSC Product – Secure Advantage

6

ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to:

All states in the continental US, except: TBD

7

EXHIBIT 1 – STANDARDS of CONDUCT

See attached

8



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD, or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD, or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

Very truly yours,

Andrew Garcia
President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

25 BRAINTREE HILL PARK  //  SUITE 100  //  BRAINTREE, MA 02184  //  888 990 7786  //  FAX 855 786 7500

**JA524**



# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1          (Discussion off the record from 11:00

2     a.m. to 11:00 a.m.)

3          MR. CAFFAS:  Let's go back on the

4     record.

5          Can you reread my last question, Kelly.

6          (The reporter read the requested

7     testimony.)

8     BY MR. CAFFAS:

9          Q    Why would you have to refer to your

10    notes?

11         A    For the exact language.

12         Q    Do you remember anything about the

13    language that led you to make that statement that

14    the purpose of the call was to solicit the sale of

15    SunPath's vehicle service contracts?

16         A    Based on my memory, they gave the name

17    of the company and what they were -- what they

18    were -- I think what they were selling.

19         Q    When you say the name of the company,

20    what was the name of the company?

21         A    SunPath.

22         Q    You say that they used the word

1    "SunPath" as the name of the company, not another

2    company's name?

3           MR. SMITH:  Objection, misstates the

4    witness's testimony.

5       A   I would have to refer to my notes for

6    exactly what the...

7    BY MR. CAFFAS:

8       Q   I'll represent to you that we have not

9    received any notes at all that show what your

10   recollection is of any of these calls.

11          MR. SMITH:  Objection.  That misstates

12   the question.

13   BY MR. CAFFAS:

14      Q   You're saying that any of your notes

15   regarding the calls that we're talking about were

16   given to counsel, right?

17      A   After my -- after I received the calls,

18   yes, I put it on my notes and I submitted it.

19      Q   I'm going enter what will be -- I think

20   this is Exhibit 5.

21          MR. CAFFAS:  Is that correct?

22          THE REPORTER:  4.

1          MR. CAFFAS:   4.

2          (Smith Deposition Exhibit No. 4 was

3    marked for identification and was attached to the

4    deposition transcript.)

5    BY CAFFAS:

6          Q    This is a packet of documents, Exhibit

7    4, and you'll notice these are Bates stamped.  By

8    Bates stamped, they have a label at the bottom

9    right corner and it says Smith and a series of

10   numbers to make it easier to reference.  So these

11   are Bates labeled SMITH1 through 20.

12          Now, these are the documents that we

13   received from your counsel with the exception of

14   an e-mail from a company called American

15   Protection and two recordings.  I want you to take

16   a few minutes to look through the documents that I

17   have shown you, and can you confirm whether or not

18   this is a full collection of the documents that

19   you say that you had given to counsel that reflect

20   the notes that you provided in this case.

21          A    To the best of my knowledge, this is all

22   of the screenshots provided.

1      Q   Now, is it correct to say that there are

2   no notes in that production that contain your

3   description or recollection of any of the calls

4   that you've described?

5      A   So these are the lists of the

6   screenshots.

7      Q   So is it accurate that the notes that

8   you're referring to about your recollection of the

9   calls, those aren't contained in that set of

10  documents?

11     A   I'm not sure how that's like compiled.

12     Q   In the set of documents that I just

13  handed you, can you confirm just with a yes or no,

14  if you can, whether or not the notes that you're

15  referring to are in that set of documents?

16     A   Of the -- no.

17     Q   And I'll represent to you that with the

18  exclusion of an e-mail that contains I believe the

19  SunPath policy quote that you're referring to, we

20  received no other documents, written documents,

21  from you at all.  Are you saying that --

22         MR. SMITH:  Objection.  That

1  that call was received and what number you

2  received that telephone call from?

3          A    At this time, I don't believe I have it.

4          Q    Do you have your voicemail saved on your

5  phone?

6          A    I don't keep them for long periods of

7  time.

8          Q    Is there a reason why you got rid of

9  this voicemail that's the subject of the claims in

10  the lawsuit?

11          A    You're talking about the second

12  voicemail?

13          Q    Yes.

14          A    Yeah, I don't remember receiving that

15  voicemail.  That specific voicemail, I don't

16  remember.  The first one I do.

17          Q    Are you saying that you don't -- you

18  didn't provide this to your counsel, or you just

19  don't remember receiving it or giving it to your

20  counsel?

21          A    I don't remember receiving that

22  voicemail.

1       Q    Do you have any reason to doubt that you

2  did receive it and provide it to your counsel?

3       A    You're saying do I have a doubt that I

4  received it and didn't provide it to my counsel?

5  I'm sorry.  I'm not understanding.

6       Q    You say you don't remember receiving it.

7  Do you have any reason to doubt that this call was

8  made to you, resulted in this voicemail that you

9  received, and then you then passed it on to your

10 counsel?

11      A    So to the best of my knowledge,

12 everything that I received, I provided, but I do

13 not remember that second voicemail.

14      Q    Do you know why you received -- did you

15 ask to receive a quote regarding the vehicle

16 service contract that was attached to the e-mail

17 that you received from Samantha Yaeger?

18           MR. SMITH:  Object to form.

19           You can answer.

20      A    I was trying to understand who was

21 trying to contact me.

22 BY MR. CAFFAS:

1          Q    And in the process of trying to

2     understand who is contacting you, did you request

3     to receive that product?

4               MR. SMITH:  Object, vague,

5     argumentative.

6               MR. CAFFAS:  Argumentative?

7               MR. SMITH:  Yeah.

8               MR. CAFFAS:  Can you explain?

9               MR. SMITH:  You're trying to suggest the

10    answer to her.

11              MR. CAFFAS:  Before you answer, Kelly,

12    could you read my question again.

13              (The reporter read the requested

14    question.)

15         A    So I was trying to understand who was

16    trying to contact me.

17              MR. CAFFAS:  Can you reread the

18    question, please.

19              (The reporter read the requested

20    question.)

21         A    Did I request to see the specific

22    product?  No.  I was asking I believe that I

1  wanted them to have them e-mail me something to

2  validate who they were.

3  BY MR. CAFFAS:

4      Q   So you made an inquiry about who they

5  were and what they were selling?

6          MR. SMITH:  Objection, argumentative.

7      A   No.  I was trying to determine who was

8  trying to contact me.

9  BY MR. CAFFAS:

10     Q   Right.  And in the process of trying to

11  determine that, did you make an inquiry about who

12  they were and what they were selling?

13         MR. SMITH:  Objection, asked and

14  answered, argumentative, and calls for a legal

15  conclusion.

16         You can answer.

17     A   Yeah, I was trying to determine who was

18  trying to contact me.

19  BY MR. CAFFAS:

20     Q   And in the process of doing so, did you

21  make an inquiry about who they were and what they

22  were selling?

1        Q    You don't know anything about their

2    business practices?

3        A    I just know it's a telemarketer.  It's a

4    third party on behalf of, you know, SunPath.  I

5    don't know specifically what they're --

6        Q    You say you know it's a third party on

7    behalf of SunPath?

8            MR. SMITH:  Objection, misstates the

9    witness's testimony.

10           MR. CAFFAS:  Kelly, can you read Ms.

11   Smith's response back, please.

12           (The reporter read the requested

13   answer.)

14   BY MR. CAFFAS:

15       Q    What is the basis of your belief that

16   American Protection is a third party on behalf of

17   SunPath?

18       A    Because of the -- I believe because of

19   the telemarketer and also because of all the, you

20   know, calls that I received.

21       Q    Did anybody from American SunPath [sic]

22   specifically say I, American Protection, am a

1    third party on behalf of SunPath?

2            MR. SMITH:  Objection, asked and

3    answered, argumentative.

4    BY MR. CAFFAS:

5         Q    You can answer.

6         A    Not -- not to my knowledge, no.

7         Q    Have you ever communicated directly with

8    SunPath?

9         A    Not to my knowledge, no.

10        Q    So you understand there's a difference

11   between American Protection and SunPath?

12            MR. SMITH:  Object to form.

13            You can answer.

14        A    So American Protection is a third party

15   on behalf of SunPath.

16   BY MR. CAFFAS:

17        Q    So is it correct that you understand

18   that they are different companies?

19            MR. SMITH:  Object to form.

20            Go ahead.

21        A    Yes, but they are -- but they're

22   connected.

1  BY MR. CAFFAS:

2        Q    How are they connected?

3        A    It's a third party on behalf of SunPath.

4        Q    Have you purchased a Coca-Cola or Pepsi

5  product from a grocery store?

6        A    Yes.

7        Q    When you purchased that product from the

8  grocery store, is the name of the grocery store on

9  the receipt?

10       A    I would -- I would assume, yes.

11       Q    When you purchase a product from the

12  grocery store, do you believe that the maker of

13  the product controls how the grocery store

14  displays that product?

15            MR. SMITH:  Objection, calls for

16  speculation.

17            You can answer.

18       A    You're buying a Coca-Cola.  It's going

19  to be Coca-Cola wherever it was or whatever the

20  brand is, yes.

21  BY MR. CAFFAS:

22       Q    So do you believe that Coca-Cola

1  controls -- what grocery store do you go to?

2       A    I go to Whole Foods.

3       Q    Okay.  Do you believe that if you buy a

4  Coca-Cola from Whole Foods that Coca-Cola controls

5  how Whole Foods sells their product?

6            MR. SMITH:  Objection, calls for

7  speculation.

8            Go ahead.

9       A    I believe that they do -- that there's a

10  certain way that their products are displayed and

11  where in the grocery store they are, et cetera.

12  BY MR. CAFFAS:

13      Q    And do you believe that Whole Foods is a

14  third party on behalf of Coca-Cola?

15            MR. SMITH:  Objection, vague, confusing,

16  calls for a legal conclusion.

17      A    Yeah, I'm not -- I guess I don't

18  understand.

19  BY MR. CAFFAS:

20      Q    So you said something along the lines of

21  you understand that American Protection is a third

22  party on behalf of SunPath.  Is that right?

1        A    They were soliciting, yes.

2        Q    So in the analogy that I'm drawing, do

3   you then believe that Whole Foods in selling

4   Coca-Cola's products is a third party on behalf of

5   Coca-Cola the same way that you're saying that

6   American Protection is a third party on behalf of

7   SunPath?

8             MR. SMITH:  Object to form.

9        A    Right.  I think it's hard to compare the

10  two, but -- so I...

11  BY MR. CAFFAS:

12       Q    Why?

13            MR. SMITH:  Object to form.

14       A    I mean, Whole Foods is designed or any

15  grocery store is designed to carry other people's

16  products, so it's a direct relationship.  I don't

17  know the in's and out's of what the connections

18  are here, but -- so I -- it's just hard for me to

19  give you an answer.

20  BY MR. CAFFAS:

21       Q    So you have no basis to say whether or

22  not the relationship between American Protection

1    and SunPath is similar or different from Coca-Cola

2    and Whole Foods, for example?

3              MR. SMITH:  Objection, harassing,

4    argumentative.

5        A    I just know that they're a third party

6    on behalf of SunPath.

7    BY MR. CAFFAS:

8        Q    But you don't know anything about the

9    in's and out's of that relationship?

10       A    Between American Protection and SunPath?

11       Q    Correct.  You don't know anything about

12   the in's and out's in the relationship?

13       A    Right.  I don't.

14       Q    Do you have any reason to believe, for

15   example, that SunPath controls sales scripts that

16   American Protection uses when it contacts

17   consumers?

18       A    I don't.

19       Q    Do you have any reason to believe that

20   SunPath determines what phone numbers American

21   Protection calls?

22       A    I don't know anything, I mean, about

1    what they -- in terms of what phone numbers or how

2    they get them.

3          Q    Do you have any reason to believe that

4    SunPath determines what companies' products that

5    American Protection offers to consumers?

6          A    I don't know.

7          Q    Ruth, I'd like to direct you back to

8    your complaint, specifically on page 7 of your

9    complaint.  There's paragraph 29, which is the

10   very top of that page.  You state or the complaint

11   states, "All of the calls at issue here were

12   placed via an ATDS at the direction and oversight

13   of defendant," defendant meaning SunPath, the only

14   defendant here.  "Defendant knew about, directed,

15   ratified, and benefited from those calls."

16              So to specifically address the statement

17   that the calls were placed at the direction and

18   oversight of defendant, do you have any idea how

19   that could be true?

20              MR. SMITH:  Objection, calls for a legal

21   conclusion.

22          A    Yeah, I rely on my counsel.

1   BY MR. CAFFAS:

2        Q   Do you personally know any facts that

3   would lead you to state that the calls at issue

4   were placed at the direction or oversight of

5   SunPath?

6             MR. SMITH:  Same objection.

7        A   Yeah.  I rely on my counsel.

8   BY MR. CAFFAS:

9        Q   You rely on your counsel for what?

10       A   To determine the direction and

11  oversight.

12       Q   Well, I'm not asking about your counsel

13  determining anything.  I'm asking about what you

14  know or don't know that would lead you to say that

15  American Protection, for example, if they're

16  making the calls, did anything at the direction of

17  SunPath?

18       A   I rely on them for that.

19       Q   You rely on "them" being your counsel?

20       A   Yes.

21       Q   And you rely on them to say what facts

22  you know?

1          MR. SMITH:  Objection, misstates the

2    testimony.

3          A    That is not -- I rely on their guidance,

4    not...

5    BY MR. CAFFAS:

6          Q    Right, and I'm not asking for your

7    counsel's legal guidance, I'm asking for what

8    facts, what information do you know, that is, if

9    anything?

10          MR. SMITH:  Objection, calls for a legal

11    conclusion.

12          A    I rely on my counsel.

13          MR. SMITH:  Let me take a break and grab

14    a water.

15          MR. CAFFAS:  We'll go off the record.

16          (A brief recess was had from 2:38 p.m.

17    to 2:40 p.m.)

18          MR. CAFFAS:  Let's go back on the

19    record.

20          I think it might be productive if I ask

21    Kelly to again read back the question that I

22    asked.

1          Could you read the last question,

2    Kelly.

3          (The reporter read the requested

4    question.)

5        A    I don't -- I don't know.

6    BY MR. CAFFAS:

7        Q    I'll ask the same thing about the

8    potential oversight that you're claiming that the

9    defendant had over any party making calls.  Do you

10   have any facts that support that SunPath exercised

11   any oversight over anyone making calls?

12          MR. SMITH:  Objection, calling for a

13   legal conclusion.

14          You can answer.

15       A    Is it specific to a certain number, or

16   just all?

17   BY MR. CAFFAS:

18       Q    Any specific one.

19       A    Yeah, I don't know.

20       Q    There's a statement in here that

21   defendant knew about the calls.  Do you have any

22   facts or evidence that you're aware of that

1   supports that SunPath knew about any specific

2   calls that are the basis of your claims?

3         A    I would defer to my counsel.  I don't

4   know.

5         Q    So just generally, what evidence do you

6   have to support your contention that SunPath is

7   responsible or liable for the actions of any other

8   party that made the calls that form the basis of

9   your claims?

10              MR. SMITH:  Objection, calls for a legal

11  conclusion.

12              You can answer.

13        A    I rely on my counsel.

14  BY MR. CAFFAS:

15        Q    Are you aware that American Protection,

16  the company that sent you an e-mail after making

17  presumably some of the calls at issue, was deposed

18  in this case?

19        A    I don't remember.

20        Q    I will represent to you that American

21  Protection has been deposed and they have

22  represented that they did not make any calls to

1    you until after they first received a call from

2    you regarding information about their products.

3    Do you recall making a call to American Protection

4    prior to receiving any of the calls that are the

5    basis of your claims?

6        A    I do not.

7        Q    Are you saying that you've never called

8    American Protection directly at all?

9            MR. SMITH:   Objection to form.

10       A    Yeah, I don't remember making any calls.

11           MR. CAFFAS:   I will introduce to you

12   what will be Exhibit 10.

13           (Smith Deposition Exhibit No. 10 was

14   marked for identification and was attached to the

15   deposition transcript.)

16   BY MR. CAFFAS:

17       Q    Now, Exhibit 10 is a document that was

18   produced by American Protection in response to a

19   subpoena that was served by your counsel in this

20   case.  Do you recognize this document?

21       A    I don't.

22       Q    And just to describe this for the

1    record, this is what appears to be some kind of

2    mail notice or something akin to a postcard that

3    reads at the top Vehicle Alert Notice, Please

4    Respond Within Five Days, and the same number to

5    call in to.  I will represent to you that American

6    Protection represented in their deposition that

7    one of these mailers was mailed to you, and in

8    response you called in requesting information

9    about the products American Protection sells.  Do

10   you confirm that you -- excuse me.  Can you

11   confirm whether or not you called American

12   Protection in response to a mailer similar to this

13   exhibit?

14        A    Yeah, I don't remember receiving a

15   mailer and I don't remember making a phone call

16   based on that mailer.

17        Q    Just to clarify slightly, are you saying

18   that you categorically did not make such a call,

19   or you just don't remember?

20        A    I believe -- no, I did not make the

21   call.  I did not remember making the call.

22        Q    Again, just to clarify, you have never

1  made a call in response to receiving a mailer

2  similar to this?

3       A    Yeah, I don't remember ever receiving a

4  mailer like this before.

5       Q    Okay.  Just to clarify because I think

6  you said both things.  You don't remember, or you

7  did not?

8       A    And just to make sure I understand,

9  you're specifically talking if I ever received a

10 mailer for my vehicle saying that you have a

11 five-day notice?

12      Q    First we'll say yes.  Have you received

13 a mailer similar to the exhibit that I've just

14 shown you?

15      A    No, I do not remember ever receiving a

16 mailer.

17      Q    Okay.  And then that would mean that you

18 then are saying that you did not make a call in

19 response to receiving such a mailer?

20      A    Correct.  I do not ever remember making

21 a phone call, no.

22      Q    Have you ever visited a website where

1    you requested to receive a call regarding vehicle

2    service contracts?

3         A    Not to my knowledge, no.

4         Q    And likewise, have you ever visited a

5    website where you input your personal information,

6    including your phone number, and may have

7    consented to receive calls regarding vehicle

8    service contracts?

9         A    Not to my knowledge, no.

10        Q    Have you ever visited any website where

11   you requested information regarding information

12   for your car insurance?

13        A    Not to my knowledge, no.

14        Q    So you've never visited any website

15   where you requested a quote for car insurance?

16        A    No.  My insurance is through -- my

17   father pays for it, so he takes care of all that

18   stuff.

19        Q    Have you ever filed a lawsuit involving

20   telemarketing calls other than this one?

21        A    Yes.

22        Q    When was that?

1      A    I'd have to refer to the documentation,

2  but I have.  I cannot remember.

3      Q    Was that on more than one occasion?

4      A    Yes.

5      Q    Do you remember how many specific cases

6  that would be?

7      A    Again, I'd have to -- I don't want to

8  get the number incorrect, so I'd have to...

9      Q    Would you be able to say whether it was

10  more or less than five?

11      A    I don't want to -- I just don't know a

12  hundred percent.

13      Q    It was more than one?

14      A    Yes.

15      Q    Is it around five?  Is it less than ten

16  you can say?

17      A    I don't -- again, I don't remember.  I

18  just -- I need to check.

19      Q    Are these -- I'm specifically at this

20  point asking about lawsuits that were filed in

21  court, right?  And you say that there's been more

22  than one of these besides the present case?

1          MR. SMITH:  Objection, misstates the

2     witness's testimony.

3          A    Again, to the best of my knowledge, and

4     I think I'm also waiting on the AT&T call logs,

5     so...

6          MR. CAFFAS:  I have nothing further.

7          MR. SMITH:  I just have a few follow-up

8     questions.

9          THE WITNESS:  Sure.

10         EXAMINATION BY COUNSEL FOR THE PLAINTIFF

11    BY MR. SMITH:

12         Q    So earlier you testified that SunPath

13    made the calls at issue.  I just want to clarify.

14    Can you tell me which party actually placed the

15    calls in this case?

16         A    So it's --

17         MR. CAFFAS:  Objection, speculation,

18    misstating the witness's testimony.

19    BY MR. SMITH:

20         Q    You can answer.

21         A    So it was American Protection on behalf

22    of SunPath.

1          Q    Okay.  Earlier you reviewed an e-mail

2     that was marked as Exhibit 6.  See that?

3          A    Yes.

4          Q    Can you turn to page SMITH22.

5          A    Yes.  Got it.

6          Q    Can you review SMITH22, SMITH23, and

7     SMITH24.

8          A    I reviewed it.

9          Q    All right.  Do you know what these three

10    pages are or how they relate to the e-mail on

11    SMITH25?

12              MR. CAFFAS:  I'm going to object to

13    vague as -- could you clarify which three pages

14    you're referring to?

15              MR. SMITH:  Yeah, the ones we just

16    discussed, 22 through 24, how they relate to

17    SMITH -- the e-mail on SMITH25.

18         A    So these are the options for the plans

19    for the --

20    BY MR. SMITH:

21         Q    Do you know how you would access that?

22         A    I believe there was a link.

1          Q    Can I direct your attention to SMITH26.

2          A    I'm trying to find it.  It's on page 26

3     with the Buy Now?

4          Q    The Buy Now link?  Okay.  After you

5     clicked the Buy Now link, what would happen?

6               MR. CAFFAS:  Sorry.  I didn't catch.

7     I'm not sure if the court reporter did.  Can you

8     repeat that last question and answer?

9               THE WITNESS:  Okay.  So I --

10              MR. SMITH:  Yeah.  Sure.  Hold on.

11    BY MR. SMITH:

12         Q    All right.  Just to clarify your

13    testimony, are you stating that on page SMITH26

14    you clicked the Buy Now, which would take you to

15    the document that starts on SMITH22?

16         A    Yes.  Based on my -- the best of my

17    knowledge, yes.

18         Q    Okay.  Do you see on SMITH22 where it

19    says Your Plan?

20         A    I do at the top of the page on the left.

21         Q    Below that it says Coverage Provided by

22    SunPath?

1        A    Yes.

2        Q    So is it a fair statement that this is

3    an e-mail from American Protection that would have

4    solicited you to purchase a SunPath vehicle

5    service protection plan?

6        A    Yes.

7        Q    Okay.  Does this change your testimony

8    as to whose products were being sold via the calls

9    at issue in this case?

10       A    So it's SunPath.

11       Q    Okay.  I just want to clarify.  American

12   Protection was placing calls to sell SunPath's

13   products and services?

14       A    On behalf, yes.

15       Q    Is it fair to say that you rely on your

16   counsel to conduct an investigation in this case?

17       A    Yes.

18       Q    To gather facts?

19       A    Yes.

20       Q    Are you aware that there were call logs

21   obtained in this case from Five9, Incorporated?

22       A    Yes.

```
 1            CERTIFICATE OF SHORTHAND REPORTER

 2                ELECTRONIC NOTARY PUBLIC

 3            I, Kelly Carnegie, Certified Shorthand

 4    Reporter, Registered Professional Reporter, the

 5    officer before whom the foregoing proceedings were

 6    taken, do hereby certify that the foregoing

 7    transcript is a true and correct record of the

 8    proceedings; that said proceedings were taken by

 9    me stenographically and thereafter reduced to

10    typewriting under my direction; that reading and

11    signing was requested; and that I am neither

12    counsel for, related to, nor employed by any of

13    the parties to this case and have no interest,

14    financial or otherwise, in its outcome.

15            IN WITNESS WHEREOF, I have hereunto

16    electronically set my hand and affixed my notarial

17    seal this 5th day of December, 2022.

18
      My commission expires:
19    July 31, 2026

20

21    _____
      NOTARY PUBLIC IN AND FOR THE
22    COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
      Notary Registration Number: 7060756
```

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH, on behalf of herself and a class of others similarly situated,** | |
| Plaintiff, | |
| | **Civil Action No. 1:22-cv-00081 (LMB/TCB)** |
| v. | |
| **SUNPATH, LTD.,** | |
| Defendant. | |

### SUNPATH, LTD.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant SunPath, Ltd. ("SunPath") submits the following objections and responses to Plaintiff's First Set of Interrogatories and Document Requests as follows:

### INTERROGATORIES

1.      Identify and Describe the manner by which any prior express written consent to place telephone calls to Plaintiff Smith's cellphone was obtained by You (or a third-party acting on Your behalf or for Your behalf or Your benefit), including identification of the complete Consent Language that was used to obtain such consent and the location of any proof of such consent.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control

(or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products. SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

SunPath also objects this request to the extent it seeks information already known to Plaintiff or in Plaintiff's possession.

**ANSWER:** See objections. Subject to and without waiving these objections, SunPath has not placed any calls to Plaintiff's cell phone and does not make any telemarketing calls at all, including any calls made using an automatic telephone dialing system or prerecorded voice, that would require Plaintiff or any other parties' prior express written consent to be called.

2.      Identify each and every step You have taken to comply with the TCPA, including all procedures and policies You have adopted and the training of third parties in telemarketing or other outbound calling activities in such procedures.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies. SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis,

2

**JA556**

other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.   SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath reiterates that it does not make telemarketing calls or direct or control the operations of any independent third-party company that does.  To the extent this interrogatory seeks information relating to the independent third-parties authorized to market and sell SunPath's products, pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that such entities at all times agree to operate "in accordance with laws and regulations of the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, the United States Postal Service and all other applicable federal, state, and local regulations and laws" when marketing or selling SunPath products.

3.       Identify all third-parties from whom You (or a third-party acting on Your behalf or for Your behalf or for Your benefit) obtained Plaintiff's lead information during the relevant time period, and Describe Your complete business relationship with each third-party, including all contracts and agreements.

**OBJECTION:** Defendant objects to this interrogatory on the grounds that it contains multiple questions in discrete subparts that apply towards Plaintiff's permitted number of Interrogatories as stated in the Court's scheduling order dated August 5, 2022. For the remainder of its objection, SunPath incorporates its objection to Interrogatory 1 as if fully set forth here.

**ANSWER:** See objection. Subject to and without waiving these objections, to the extent this request is directed at SunPath, none.

4.      Identify each and every step You have taken to comply with the VTPPA, including all procedures and policies You have adopted and the training of third parties in telemarketing or other outbound calling activities in such procedures.

**ANSWER:** SunPath incorporates its objection and answer to Interrogatory 2 as if fully set forth here.

5.      Identify all Persons who are residents of Virginia or whose telephone numbers have a Virginia area code that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with the dates, times, duration, purpose, and total number of such calls and Persons.

<u>**OBJECTION**</u>:  Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.   SunPath further responds that it does not make

4

telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise. Additionally, SunPath objects on the grounds that the statement "for the same purpose that Plaintiff was called" is overly vague and requires the legal conclusion that SunPath has knowledge relating to or a role in making any of the calls Plaintiff refers to, a legal conclusion SunPath denies.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath has never called Plaintiff.  Therefore, none.


6.  Identify all communications between You on the one hand and any third-party on the other hand regarding the instant lawsuit.

**OBJECTION**: Defendant objects to the extent this request seeks work product or privileged information.  Defendant further objects that this request based only on what Plaintiff may consider to be "regarding the instant lawsuit." as it is vague, overly broad, and not narrowly tailored to a specific subject matter that might assist with producing relevant or admissible information.

**ANSWER:** See objection. Subject to and without waiving its objection, after receiving notice from counsel for Plaintiff that American Protection had sent Plaintiff an email providing a quote for what appeared to be a vehicle service contract administered by SunPath, SunPath's general counsel sent an email to the owner of American Protection asking whether American Protection had any phone records relating to the calls listed in Plaintiff's Complaint.  This communication was already produced by American Protection in response to the subpoena issued by Plaintiff.  SunPath is also producing all email communications with American

5

Protection relevant to this litigation, which may include those already produced by American Protection in response to Plaintiff's subpoena, such that SunPath refers Plaintiff to these emails pursuant to pursuant to Fed. R. Civ. P. 33.   Additionally, on between one and three occasions, most recently on September 16, 2022, SunPath's general counsel made calls to American Protection to further inquire regarding this request for records relating to the calls listed in Plaintiff's Complaint, to which American Protection provided no substantive response beyond what was provided in the previously referenced email communications.

7.     Identify and Describe Your complete factual basis for Your assertion, if any, that SunPath cannot be held liable for calls placed to Plaintiff.

**OBJECTION:** SunPath objects to this request as being overly vague in that it does not specify or define which "calls placed to Plaintiff" are specifically referred to with this request.

**ANSWER:** See objection.   To the extent this request refers to the calls listed in paragraph 25 of Plaintiff's Complaint, SunPath refers Plaintiff to the testimony in the declaration of its president, Andrew Garcia, provided in support of its Motion to Dismiss.

8.     Identify all Leads received from American Protection, including the total number of Leads.

**OBJECTION:**   SunPath objects to this request as vague and confusing as the term "Leads" is undefined.   SunPath further objects by incorporating its objection to Interrogatory 1 as if fully set forth here.

**ANSWER:** See objection.   Subject to and without waiving its objections, to the extent "leads" refers to information relating to consumers for the purposes of making telemarketing

calls to those consumers, SunPath reiterates that it does not make any telemarketing calls, and specifically has never made any telemarketing calls to Plaintiff.  Therefore, none.

9.      Identify and Describe any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath also objects to any legal conclusion that these parties make calls "on behalf of" SunPath because such parties market and sell SunPath products non-exclusively, meaning that those parties sell SunPath-administered products simultaneously alongside SunPath's competitors and decide independently what product to offer.  SunPath additionally reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of

Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding unrelated collateral matters has no bearing here and discovery into such collateral matters is not proportional to the needs of this case. *See*, *e.g.*, *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at *4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at *4 (E.D. Va. Apr. 11, 2018).

Defendant also objects to this request as overly broad and unduly burdensome, as this request seeks information not proportional to the needs of the case, including information equally available to Plaintiff in public filings, serves no purpose other than to harass and cause undue burden.

**ANSWER:** See objection.  Subject to and without waiving this objection, SunPath is continuing to investigate this request regarding American Protection, and will supplement this response as warranted.

10.    Identify and Describe any and all knowledge that You possess regarding American Protection's telemarketing activity.

**OBJECTION:** Defendant incorporates its objection to Interrogatory 2 as if fully set forth here.

**ANSWER:** See objection. Subject to and without waiving its objection, SunPath incorporates its answers to Interrogatories 6 and 12 as if fully set forth here.

11.    Identify and Describe all call scripts, marketing materials, or marketing guidelines that You provided to any third party that places calls on Your behalf or for Your benefit during

8

**JA562**

the relevant time period, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath reiterates that it does not make telemarketing calls or direct or control the operations of any independent third-party company authorized to market or sell SunPath's products on a non-exclusive basis, including what consumers these companies contact or whether a consumer is offered a SunPath product or the product of one of SunPath's competitor.  The marketing operations of these companies, including how they obtain leads, what scripts they use, and what equipment they use, are entirely determined by those companies.  Regarding "marketing guidelines," pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable laws and regulations if and when conducting any telemarketing operations.

12.     Identify and Describe Your complete relationship with American Protection.

**ANSWER:** Pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the agreement between SunPath and American Protection, which American Protection produced in response to the subpoena served on it by Plaintiff. SunPath also reiterates that it objects to any characterization of any party authorized to market or sell products it administers, including American Protection, as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities at all times to operate "in accordance with laws and regulations of the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, the United States Postal Service and all other applicable federal, state, and local regulations and laws" when selling SunPath products.  Any such third party, including American Protection, was permitted to sell the products of SunPath's competitors alongside SunPaths, and representatives of those third parties independently selected what policy to promote and sell.  SunPath also reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party, including American Protection, to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.  SunPath further responds that its agreement with American Protection was suspended in July of 2022, for commercial reasons not related to any of the claims in this lawsuit.

## DOCUMENT REQUESTS

1.     All Documents sufficient to Identify any prior express consent You claim or contend was obtained to place the telephone calls at issue to Plaintiff together with all

10

**JA564**

Documents sufficient to Identify the manner by which any such prior express consent was obtained.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

SunPath also objects this request to the extent it seeks information already known to Plaintiff or in Plaintiff's possession.

**RESPONSE:** See objections.


2.      All Documents sufficient to Identify the full and complete Consent Language that You claim applied Plaintiff.

**OBJECTION:** Defendant incorporates its objection to Document Request 1 as if fully set forth here.

**RESPONSE:** See objections.

3.      All Documents sufficient to Identify Your complete contract or other arrangement with any third party from whom You (or a third-party acting on Your behalf or for Your benefit) obtained Plaintiff's phone number or consent to place the telephone calls at issue.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath reiterates that it does not make telemarketing calls, did not make any telephone calls to Plaintiff, and does not direct or control the marketing operations of any independent third-party that may have called Plaintiff.  Accordingly, SunPath does not have any responsive documents in its possession, custody, or control.

4.  All Documents sufficient to Identify all telephone calls that were placed to Plaintiff.

**OBJECTION:** SunPath objects to this request as being overly vague in that it does not specify or define which "calls placed to Plaintiff" are specifically referred to with this request.

SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath reiterates that it does not make telemarketing calls, did not make any telephone calls to Plaintiff, and does not direct or control the marketing operations of any independent third-party that may have called Plaintiff.  Accordingly, SunPath does not have any responsive documents in its possession, custody, or control.

5.      Copies of any subpoenas You caused to be issued or served in the case together with proofs of service, if any.

**RESPONSE:** No responsive documents exist.  SunPath will supplement this response if necessary.

6.      Copies of any documents obtained from any third party, by subpoenas or otherwise, relating to this action and the claims at issue, if any.

**<u>OBJECTION:</u>** Defendant objects to the extent this request seeks work product or privileged information.

**RESPONSE:** See objection.  To the extent this seeks non-privileged information, Plaintiff is already in possession of any documents received in response to its subpoena served on American Protection.  SunPath does not presently have any other responsive documents in its possession, custody, or control.

7.  Copies of all Documents identified in SunPath's Rule 26(a)(1) Initial Disclosures.

**RESPONSE:** No responsive documents exist.

8. The sworn or unsworn statements of any witnesses.

   **OBJECTION:** Defendant objects on the grounds that this request seeks documents already in Plaintiff's possession.  Defendant further objects to the extent this request seeks work product or privileged information.

   **RESPONSE:** See objection.   To the extent this seeks non-privileged information, SunPath does not presently have any responsive documents in its possession, custody, or control.

9.   All Documents sufficient to Identify any policies, practices, procedures, or any other steps You have caused to be taken to attempt compliance with the TCPA.

   **OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath or by an "agent" of SunPath, a legal conclusion SunPath denies.  SunPath further objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

14

**RESPONSE:** See objection. Subject to and without waiving its objections, SunPath reiterates that it does not engage in any telemarketing activities, does not make any outbound marketing calls, and specifically did not make any such calls to Plaintiff.  To the extent this refers to compliance requirements of any independent third-party authorized to market or sell Sunapth products, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable state and federal laws and regulations if and when conducting any telemarketing operations.

10.     All Documents sufficient to Identify any policies, practices, procedures, or any other steps You have caused to be taken to attempt compliance with the VTPPA.

**RESPONSE:** Defendant incorporates its objection and response to Document Request 9 as if fully set forth here.

11.     All Documents supporting Your assertion, if any, that Plaintiff is inadequate to serve as Class Representative.

**OBJECTION:** Defendant objects to the extent this request seeks documents already in Plaintiff's possession, custody, or control, or equally accessible to Plaintiff.

**RESPONSE:** See objection.  Subject to and without waiving its objection, SunPath does not currently have any responsive documents in its possession, custody, or control.

12.     All Documents supporting Your assertion, if any, that Plaintiff's attorneys are inadequate to serve as Class Counsel.

**OBJECTION:** Defendant objects to the extent this request seeks documents already in Plaintiff's possession, custody, or control, or equally accessible to Plaintiff.

**RESPONSE:** See objection.  Subject to and without waiving its objection, SunPath does not currently have any responsive documents in its possession, custody, or control.

13.     All Documents sufficient to Identify all Persons who You (or a third-party acting on Your behalf or for Your benefit) caused to be placed a telephone call during the relevant time period on their cellphones, for the same purpose that Plaintiff received a telephone call, using the same Dialing Equipment that was used to call Plaintiff, where You obtained the cellphone number and consent to call in the same manner as You obtained Plaintiff's telephone number and consent.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Additionally, SunPath objects on the grounds that the statement "for the same purpose that Plaintiff was called" is overly vague and requires the legal conclusion that SunPath has knowledge relating to or a role in making any of the calls Plaintiff refers to, a legal conclusion SunPath denies

**RESPONSE:**  See objection.  Subject to and without waiving its objection, no responsive documents exist.

14.     For all Persons Identified in Documents produced in Your response to Request to Produce No. 13 above, all Documents sufficient to Identify the number of times You (or a third-party acting on Your behalf or for Your benefit) caused each such Person to receive a telephone call, including the dates and times of all such telephone calls.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** See objection.  Subject to and without waiving its objection, no responsive documents exist.

15.     All Documents sufficient to Identify all Persons that reside in the State of Virginia whose numbers were registered on the National Do Not Call Registry for at least thirty (30) days who were called at least once by You (or by a third-party on Your behalf or for Your benefit) together with Documents identifying the dates, times, duration, purpose, and total number of such calls.

**OBJECTION:** SunPath objects to the extent that this request suggests, incorrectly, that all calls to persons registered on the National Do Not Call Registry, are unlawful.  Defendant

17

**JA571**

further objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.  SunPath further objects that this request seeks information not relevant to the claims at issue, which involves allegedly unlawful *telemarketing* calls, and this request seeking information regarding calls *generally*, has no bearing on Plaintiff's individual or class claims, and serves no purpose other than to harass and cause undue burden.

   **RESPONSE:** See objection.   To the extent this request seeks records relating to telemarketing calls to residents of the Commonwealth of Virginia, SunPath does not make any telemarketing calls or direct or control any party that does, and therefore no responsive documents exist.


   16.   All Documents sufficient to Identify all Persons with Virginia area codes whose numbers were registered on the National Do Not Call Registry for at least thirty (30) days who

were called at least once by You (or by a third-party on Your behalf or for Your benefit) together with Documents identifying the dates, times, duration, purpose, and total number of such calls.

**OBJECTION:** SunPath incorporates its objection to Document Request 15 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 15 as if fully set forth here.

17.     All Documents sufficient to Identify all Persons who are residents of Virginia that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with Documents identifying the dates, times, duration, purpose, and total number of such calls and Persons.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 13 as if fully set forth here.

18.     All Documents sufficient to Identify all Persons whose telephone numbers begin with a Virginia area code that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with Documents identifying the dates, times, duration, purpose, and total number of such calls and Persons.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 13 as if fully set forth here.

19.     All Documents sufficient to Identify Your complete contract or other arrangement or agreement with any third party that placed the calls at issue to Plaintiff, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding

independent third-parties with no connection to Plaintiff's claims has no bearing here and discovery into such collateral matters is not proportional to the needs of this case. *See*, *e.g.*, *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at \*4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at \*4 (E.D. Va. Apr. 11, 2018).

**RESPONSE:**  See objection.  Subject to and without waiving its objections specifically relating to seeking documents regarding any party that has not made any calls to Plaintiff that form the basis of Plaintiff's claims, SunPath incorporates its response to Interrogatory 12 as if fully set forth here.


20.    All Documents sufficient to Identify any oversight, control, guidance, or training related to telemarketing that You exercise or provide to third parties that act on Your behalf or for Your benefit.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make

21

**JA575**

telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**RESPONSE:** See objections. Subject to and without waiving its objections, SunPath reiterates that it does not engage in any telemarketing activities, does not make any outbound marketing calls, and specifically did not make any such calls to Plaintiff.  To the extent this refers to compliance requirements of any independent third-party authorized to market or sell Sunapth products over whom SunPath does not direct or control their marketing activities, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable state and federal laws and regulations if and when conducting any telemarketing operations.

21.     All Documents sufficient to Identify all call scripts or marketing materials that You provided to American Protection during the relevant time period.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 20 as if fully set forth here.

22.     All Documents sufficient to Identify all call scripts or marketing materials that You provided to any third party that places calls on Your behalf or for Your benefit during the relevant time period.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 20 as if fully set forth here.

23.     All Documents sufficient to Identify all knowledge You possess regarding American Protection's telemarketing activity.

**OBJECTION:** SunPath incorporates its objection to Document request 20 as if fully set forth here.

**RESPONSE:** Subject to and without waiving its objections, SunPath incorporates its responses to Interrogatories 6 and 12 as if fully set forth here, and responds that it does not currently have any other responsive documents in its possession, custody, or control.

24.     All Documents sufficient to Identify any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant incorporates its objection to Interrogatory 9 as if fully set forth here.

**RESPONSE:** See objection.

25. All Documents sufficient to Identify all Leads received from American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by

23

**JA577**

SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, no responsive documents exist.

26.    All Documents sufficient to identify any written or oral communications between You and any third party identified in Documents responsive to Request for Production No. 19 above regarding: (i) the Plaintiff or this lawsuit, (ii) calls to persons on the National DNC List, (iii) the existence, maintenance and use of any telemarketing policies or procedures, (iv) training related to any such policies or procedures, or (v) any such vendor's performance with respect to any agreement.

**<u>OBJECTION:</u>** SunPath incorporates its objection to Document Request 19 as if fully set forth here.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath will produce any responsive document in its possession, custody, or control, which are referenced in its response Interrogatory 6.

27.     All Documents supporting Your contention, if any, that You did not retain or request American Protection to make Telephone Solicitation Calls on Your behalf or for Your benefit.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 19 as if fully set forth here.

28.     All Documents supporting Your contention, if any, that You had no knowledge and provided no consent to American Protection placing Telephone Solicitation Calls offering or advertising Your property, goods, or services.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 19 as if fully set forth here.

**JA579**

Dated:  October 7, 2022            Respectfully submitted,


                                    SUNPATH, LTD.

                                    By Counsel

                                    By: /s/ Gregory M. Caffas
                                    Gregory M. Caffas (VSB No. 92142)
                                    Mitchell N. Roth (VSB No. 35863)
                                    Roth Jackson Gibbons Condlin, PLC
                                    8200 Greensboro Drive, Suite 820
                                    McLean, VA 22102
                                    T: 703-485-3533
                                    F: 703-485-3525
                                    gcaffas@rothjackson.com
                                    mroth@rothjackson.com


                                    Joseph P. Bowser (VSB No. 88399)
                                    Roth Jackson Gibbons Condlin, PLC
                                    1519 Summit Avenue, Suite 102
                                    Richmond, VA 23230
                                    T: 804-441-8701
                                    F: 804-441-8438
                                    jbowser@rothjackson.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of October 2022, a copy of the foregoing document was served via email to the following:

Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**

/s/ *Gregory M. Caffas*
Gregory M. Caffas

```
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION
 3
        RUTH SMITH, individually and on
 4      behalf of all others similarly
        situated,
 5
                         Plaintiff,        Case No.
 6                                         1:22-cv-00081-LMB-
        vs.                                WEF
 7
        SUNPATH, LTD., a Massachusetts
 8      corporation,
 9                       Defendant.
        _____/
10
11                       DEPOSITION OF
        RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12      d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                            KOBI CHUKRAN
13
                    (Conducted Via Videoconference)
14
15
        DATE:              November 1, 2022
16
17      TIME:              11:03 a.m. to 2:06 p.m.
18
        PURSUANT TO:       Notice by counsel for Plaintiff
19                         for purposes of discovery, use at
                           trial or such other purposes as
20                         are permitted under the Federal
                           Rules of Civil Procedure
21
22      REPORTED BY:       Aaron T. Perkins, RMR, CRR, CRC
                           Notary Public, State of
23                         Florida at Large
24
                           Pages 1 to 128
25

                                                      Page 1
```

1     sell a contract that SunPath would have an

2     obligation to perform under; is that correct?

3         A.   Yes.

4         Q.   Okay.  Is SunPath the only company that

5     American Protection works with?

6         A.   No.

7         Q.   Okay.  Can you tell me all the companies

8     that American Protection does work with?

9         MR. TANDY:  Objection.

10    BY MR. SMITH:

11         Q.   You can answer.

12         MR. TANDY:  To the extent --

13         THE WITNESS:  Well --

14         MR. TANDY:  Wait, let me finish.  To the

15     extent that your contracts allow you to

16     disclose the names of the parties of whom you

17     contracted with, you can answer the question.

18     If the contracts have confidentiality

19     provision, then I will instruct you not to

20     answer until we have a chance to look at

21     those contracts, so that you don't violate

22     those agreements.

23         Sorry, Mr. Smith, but I needed to make

24     sure about that.

25         THE WITNESS:  Mr. Tandy, I'm going to --

Page 21

```
 1              Q.   That's a bit of a compound question, so
 2       let me ask that again.
 3              Are those the current companies that
 4       you're working with?
 5              A.   Yes.  With the exception of SunPath.
 6              Q.   With the exception of SunPath.
 7              Okay.  Have you worked with all three of
 8       those companies dating all the way back to 2012?
 9              A.   No.
10              Q.   Okay.  Did you ever work exclusively
11       with just SunPath?
12              A.   I don't believe so.
13              Q.   How so does American Protection market
14       its vehicle protection contracts?
15              A.   We market by a few different methods,
16       including lead generation through websites,
17       through the Internet, via mail, and some other
18       methods.  We receive -- we receive sales leads
19       from various sources, such as our Better Business
20       Bureau profile, a listing of a website, and...
21              Q.   That's about it?
22              A.   Yeah.
23              Q.   Okay.  And when you say you receive
24       these leads, how do you utilize those leads?
25              MR. TANDY:  Objection.
```

Page 23

```
 1              Q.   Throughout the time you worked with

 2       SunPath, were you in regular contact with them?

 3              A.   No.

 4              Q.   Did you have an individual that you

 5       could contact if you needed to discuss something?

 6              A.   Yes.

 7              Q.   Was it just one person or were there

 8       multiple people?

 9              A.   Mostly one.

10              Q.   Can you --

11              A.   I apologize.  There were a few different

12       persons.

13              Q.   Okay.  Was there one primary and then a

14       few additional?

15              A.   Yes.

16              Q.   Okay.  Can you tell me who your primary

17       contact was?

18              A.   Mr. Joe Abrahms.

19              Q.   Can you spell that?

20              A.   J-o-e; Abrahms, A-b-r-a-h-m-s.

21              Q.   And who were the other individuals that

22       you would communicate with from SunPath?

23              A.   Mr. Larry Lowe.

24              Q.   Can you spell that?

25              A.   L-a-r-r-y, L-o-w-e.
```

Page 26

```
 1            Q.    Okay.  So let's walk through this.
 2                  You obtain leads from various sources;
 3       is that correct?
 4            A.    Yes.
 5            Q.    Okay.  And then you're going to reach
 6       out to those leads to potentially sell a vehicle
 7       service contract, right?
 8            A.    Yes.
 9            Q.    Okay.  After you contact the potential
10       client, you're going to find out what they're
11       qualified for; is that fair to say?
12            A.    Well, in some cases, the customer
13       contacts us.
14            Q.    Okay.  Maybe they contact you; you
15       contact them.  Once you're in touch with the
16       potential customer, you determine what they're
17       qualified for?
18            A.    Yes.
19            Q.    Okay.  How do you go about doing that?
20            A.    Based on the customer's vehicle
21       characteristics, the year, make, model, and
22       mileage.
23            Q.    And then what do you do with that
24       information?
25            A.    We enter it into our CRM that allows us
```

Page 32

```
 1        to determine what coverage the particular customer
 2        qualifies for.
 3            Q.   Okay.  And how does your CRM know which
 4        product is best for the customer?  Let me rephrase
 5        that question.  Sorry.  I will strike that
 6        question.
 7                 What do you input into your CRM to
 8        determine what customers will be best qualified
 9        for?
10            A.   The year, make, model, and mileage
11        information of the vehicle.
12            Q.   All right.  From, let's say, SunPath, if
13        you're selling a SunPath product, what information
14        would be in your CRM to determine if they qualify
15        for that product?
16            A.   A product availability.
17            Q.   Okay.  While you're determining whether
18        o not they qualify for a product, do you ever
19        reach out to those service companies?
20                 MR. TANDY:  Objection.
21                 THE WITNESS:  I don't understand the
22            question.
23        BY MR. SMITH:
24            Q.   Okay.  Is it fair to say, if I say a
25        vehicle service company, I'm referring to SunPath
```

Page 33

```
 1              Q.    How would SunPath receive that
 2       information?
 3              A.    They would receive a feed from the CRM
 4       system.
 5              Q.    A feed.
 6                    Okay.  So would that -- do you know if
 7       that would communicate with one of SunPath's
 8       systems?
 9              A.    I assume.  I don't know.
10              Q.    Okay.
11              A.    I have never seen the operation.
12              Q.    Is the CRM -- did SunPath recommend that
13       you use this specific CRM?
14              A.    No.
15              Q.    Do you know the name of the CRM?
16              A.    Yes.
17              Q.    What is it?
18              A.    Inline CRM.
19              Q.    And when did you start using that?
20              A.    I believe around 2018.
21              Q.    Did you provide SunPath with access to
22       that CRM?
23              A.    No.
24              Q.    When you say they would receive a fee,
25       can you elaborate on that, what you mean by that?
```

Page 38

```
 1            A.    I'm not sure of the technical process in

 2      place, so I would -- I don't want to provide

 3      inaccurate information.    I would assume that it's

 4      some kind of feed that goes from the CRM to

 5      SunPath's office.

 6            Q.    Okay.

 7            A.    It depends on what language or how it's

 8      done.    I'm not sure.

 9            Q.    Does SunPath have any systems that they

10      provided American Protection with access to?

11            A.    No.

12            Q.    Does SunPath provide any resources to

13      American Protection?

14            A.    No.

15            Q.    Okay.    Do they provide any oversight

16      over your business?

17            A.    We are appointed by SunPath in Florida

18      in terms of the agent of record.

19            Q.    What does that mean?

20            A.    That means that SunPath appoints us as

21      an agent of record in Florida in terms of

22      licensing or in terms of the ability to sell this

23      product.

24            Q.    Okay.    And when you say "appoints," is

25      this through a government database, or is this
```

Page 39

```
 1           would be highlighted in the Seller Agreement
 2           between American Protection and SunPath.
 3    BY MR. SMITH:
 4           Q.   Okay.  Did SunPath ever provide any
 5    guidance on telemarketing?
 6           A.   Whatever is listed within the Seller
 7    Agreement with SunPath.
 8           Q.   Okay.  Nothing else?
 9           A.   From time to time we would receive an
10    e-mail from Mr. Sporn with specific numbers that
11    have to be added to our internal DNC list.
12           Q.   How frequently would you receive those?
13           A.   I don't know if there was a particular
14    way to quantify that.
15           Q.   Okay.  Any other guidance?
16           A.   No.
17           Q.   Okay.  Did SunPath ever provide any
18    training to American Protection?
19           A.   No.
20           Q.   Does SunPath ever have any seminars,
21    gatherings, or meetings that they would invite
22    American Protection to?
23           A.   No.
24           Q.   Does SunPath provide any training on the
25    Telephone Consumer Protection Act?
```

Page 43

```
1        territorial scope?
2             A.    It is limited to the states SunPath
3        operates in.
4             Q.    And do you know those states?
5             A.    Not offhand.
6             Q.    Okay.  Does SunPath put any pressure on
7        American Protection to make a certain number of
8        sales each month?
9             A.    No.
10            Q.    Does SunPath require American Protection
11       to maintain a do-not-call list?
12            A.    No.
13            Q.    Does SunPath have a do-not-call list
14       that American Protection is required to adhere to?
15            A.    No.
16            Q.    Does SunPath permit American Protection
17       to use its name in marketing materials?
18            A.    I believe so, yes.
19            Q.    Does SunPath restrict how
20       American Protection can market?
21            A.    Everything would be highlighted in the
22       Seller Agreement.
23            Q.    But nothing beyond a Seller Agreement?
24            A.    Not to my knowledge.
25            Q.    Okay.  Can you tell me how SunPath would
```

Page 45

```
 1      compensate American Protection for the sale of one
 2      of its vehicle service contracts?
 3              MR. TANDY:  I'm going to object to the
 4          extent of relevance, but I will leave that --
 5          I don't know that it's protected by the
 6          contract.
 7              MR. CAFFAS:  I will also object to the
 8          form in that it's leading, suggesting that
 9          SunPath does pay American Protection at all,
10          which I don't believe that's in the
11          testimony, so I will object, again, to
12          leading, as I believe that's your testimony,
13          Mr. Smith.
14      BY MR. SMITH:
15          Q.   You can answer, Kobi.
16          A.   SunPath does not compensate us for the
17      sales.  We are -- we pay SunPath a cost for the
18      policy, and we then collect the payments from the
19      customer.
20          Q.   Okay.  So American Protection, would
21      they set the price of the vehicle service
22      contracts?
23          A.   Yes.
24          Q.   Okay.  And, then, a portion of that is
25      the cost of the contract.  Is that fair to say?
```

Page 46

```
 1              A.   Yes.

 2              Q.   And that's the portion that

 3        American Protection has to provide to SunPath?

 4              A.   Yes.

 5              Q.   Okay.  And then whatever amount above

 6        that cost portion American Protection keeps

 7        themselves?

 8              A.   Yes.

 9              Q.   Got it.

10              All right.  Let me put up my next

11        exhibit.  Give me a second.

12              (Exhibit No. 2 was marked for

13              identification.)

14        BY MR. TANDY:

15              Q.   All right.  I'm showing you what has

16        been marked as Exhibit 2.

17              Do you recognize this document?

18              A.   Yes.

19              Q.   Can you tell me what it is?

20              A.   I believe this is the Call Center

21        Marketing Agreement.

22              Q.   And that agreement is between SunPath

23        and American Protection; is that correct?

24              A.   Yes.

25              Q.   It looks like it was entered into on
```

Page 47

```
 1              "maintenance" refers to.  He's not clear what
 2              "maintenance" refers to in this context.
 3                   THE WITNESS:  I'm not clear as to what
 4              "maintenance" refers to.
 5         BY MR. SMITH:
 6              Q.   Okay.  Once American Protection sells
 7         one of SunPath's vehicle protection plans, is
 8         there a continued relationship with that client
 9         that American Protection has?
10              A.   Yes.
11              Q.   How long would that relationship be?
12              A.   For the lifetime of the agreement.
13              Q.   Okay.  And what would
14         American Protection's responsibilities be through
15         the lifetime of that agreement?
16              A.   The customer might ask us for the
17         numbers to the claims department or might call us
18         to find out if something in particular is covered
19         within the plan.
20              Q.   Okay.  And we previously discussed, when
21         a contract was sold, the division of moneys from
22         American Protection to SunPath, right?
23              A.   Yes.
24              Q.   Now, these contracts, they're on a
25         monthly basis, right?  These customers pay a
```

Veritext Legal Solutions
303-988-8470

**JA594**

1      certain amount each month?

2           A.   Yes.

3           Q.   Okay.  Who do they pay that amount to?

4           A.   To us.

5           Q.   And then does a share of that each month

6      go to SunPath or does -- or how does that work?

7           A.   No.

8                MR. CAFFAS:  Objection.  Asked and

9           answered.

10     BY MR. SMITH:

11          Q.   Go ahead.

12          A.   No.  SunPath bills us for a policy.

13          Q.   Okay.  So after a policy is sold,

14     American Protection has to pay the cost of the

15     policy to SunPath; is that fair to say?

16          A.   Yes.

17          Q.   How soon do they have to pay that cost?

18          A.   We've at various times have had to pay

19     for the cost.

20          Q.   Can you give me an estimate on the

21     amount of time that you have?

22          A.   Somewhere between some months and --

23     between 30 days and more.

24          Q.   Okay.  And then is it fair to say that

25     it's American Protection's responsibility to

Page 61

```
 1        the time you're placing calls.  So at the time

 2        American Protection places a call, does it know

 3        which company's vehicle service plans it will be

 4        pitching on the call?

 5             A.   No.

 6             Q.   Okay.  Is that information determined

 7        later based upon the potential client's vehicle's

 8        make, model, and year?

 9             A.   Yes.

10             Q.   Okay.  And can you tell me what portion

11        of your business is generated through

12        telemarketing?

13                  MR. CAFFAS:  I will object as to vague.

14             I don't believe telemarketing has been

15             established definition-wise.

16                  THE WITNESS:  I'm not sure what you mean

17             by "telemarketing," as well.

18        BY MR. SMITH:

19             Q.   When you place calls to potential

20        clients to sell products, that would be

21        telemarketing.  So I need to understand how much

22        of your business comes from telemarketing

23        activities.

24             A.   So if I send out the postcard to a

25        customer and they call us to request information,
```

Page 74

1      American Protection to inquire about products or

2      services?

3           A.   Yes.

4           Q.   Okay.  And does -- sorry.  Strike that.

5                After those consumers call in, does

6      SunPath -- sorry.  Strike that.

7                After those consumers call in, does

8      American Protection sometimes place additional

9      calls to that individual to sell vehicle service

10     plans?

11          A.   Yes.

12          Q.   Okay.  Does American Protection ever

13     just place calls to consumers that they haven't

14     previously sent a mailer to?

15          A.   I'm sorry, repeat the question.

16          Q.   Yeah.

17               Does American Protection ever place

18     telemarketing calls to consumers that it hasn't

19     previously sent a mailer to?

20          A.   We only contact prospects that have

21     requested information about those services.  I

22     don't know if -- if you define that as

23     telemarketing or not, but that's the only -- we

24     have no interest in just contacting folks that

25     have no interest in our products.

Page 77

```
 1                    THE WITNESS:  Very rarely.
 2         BY MR. SMITH:
 3              Q.    Can you give me an estimate?
 4              A.    Maybe a few times a year.
 5              Q.    Okay.  Who places telephone calls on
 6         behalf of American Protection?
 7                    MR. CAFFAS:  Objection.  I'm going to
 8              note that this calls for an improper lay
 9              opinion and speculation.
10                    THE WITNESS:  I don't understand the
11              question.
12         BY MR. SMITH:
13              Q.    Okay.  You previously testified that
14         American Protection does not have employees,
15         correct?
16              A.    Correct.
17              Q.    How does American Protection place
18         telephone calls to potential clients?
19              A.    You mean the system that we use or --
20              Q.    I mean, who specifically?
21              A.    Who?  We work with some subcontractors
22         that are -- that are speaking to the consumers.
23              Q.    Okay.  And how many subcontractors does
24         American Protection utilize?
25              A.    From time to time, one or two.
```

Veritext Legal Solutions
303-988-8470

**JA598**

```
 1              misleads Mr. Chukran's testimony about calls.
 2         That's it.
 3              THE WITNESS:  Yes, we do.
 4    BY MR. SMITH:
 5         Q.   Are they written?
 6         A.   Yes.
 7         Q.   Where are they maintained?
 8         A.   On my hard drive.
 9         Q.   Can you tell me how many policies you
10    have?
11         A.   You were provided with the policies we
12    have.
13         Q.   Everything you've produced, that's all
14    your policies related to telephone calls; is that
15    fair?
16         A.   Yes.
17         Q.   Okay.  You don't have any other policies
18    and procedures to ensure compliance with the TCPA?
19              MR. TANDY:  Objection, to the extent
20         that you are making a supposition about
21         compliance with the TCPA and only those
22         policies and not something else, you can
23         answer the question.
24              THE WITNESS:  As it relates to this
25         particular case that we are gathered here
```

                                              Page 81

```
 1              today to discuss, this was a consumer that
 2              received a mailer from us and called us to
 3              receive information.  So there was no
 4              telemarketing in this case and there was no
 5              TCPA involved here.  The consumer requested
 6              the information, so that not would not
 7              fall --
 8    BY MR. SMITH:
 9         Q.   That's not what I'm asking.  I'm trying
10    to understand, other than the documents that you
11    have already produced, if you have any additional
12    policies that are in place to ensure compliance
13    with the TCPA.
14         A.   You were provided with everything we
15    have.
16         Q.   Okay.  So you also don't have any
17    additional policies and procedures in place to
18    ensure compliance with the Virginia Telephone
19    Privacy Act other than what was produced?
20         A.   Correct.
21         Q.   Okay.  And do you have any other --
22    sorry.  Strike that.
23              Do you have any other policies and
24    procedures in place to ensure compliance with the
25    federal National Do Not Call Registry rulings
```

Page 82

```
 1        records of prior express consent from the
 2        individuals that it places calls to?
 3            A.   No.
 4            Q.   How does American Express [sic] ensure
 5        that the individuals that it's placing calls to
 6        provided prior express consent?
 7                 MR. CAFFAS:  I will object to this as
 8            vague.  I believe you just asked about
 9            American Express.  I assume you're not
10            talking about the credit card company.
11                 MR. SMITH:  Did I say American Express?
12                 MR. CAFFAS:  Yes.
13                 MR. SMITH:  Strike that.
14        BY MR. SMITH:
15            Q.   How does American Protection ensure that
16        individuals that it's placing calls to have
17        provided prior express consent?
18            A.   We review the method of which they
19        request information.
20            Q.   So can you say that again?
21            A.   We review the method of which they have
22        requested information.
23            Q.   What do you mean by that?
24            A.   I mean I review to make sure that the
25        proper opting language is present, that our name
```

Page 84

1      is clearly stated, that the consumer understands

2      they will receive a call from us, and that it

3      authorizes us, to receive a call from us, from me

4      within the means we would be using.

5          Q.   Okay.  And do you review that for each

6      potential client?

7          A.   I don't understand the question when you

8      say "potential client."

9          Q.   You said you reviewed to ensure that the

10     disclosures are proper, right?

11         A.   Yes, I do, yes.

12         Q.   Okay.  Do you review that with each

13     potential lead that you receive?

14         A.   Yes.

15         Q.   Okay.  Do you ever have individuals that

16     request to no longer receive calls from

17     American Protection?

18         A.   Yes.

19         Q.   How frequently would you say that

20     happens?

21         A.   Multiple times per week.

22         Q.   What does American Protection do when

23     someone requests not to receive calls?

24         A.   They are marked as a do-not-call record

25     and then moved from any further contact.

Page 85

```
 1        are you able to figure out the source of that

 2        contact information, where it came from?

 3             A.   In some cases I could, and in some cases

 4        I can't.

 5             Q.   Okay.  What about in the plaintiff's

 6        situation?

 7             A.   What about it?

 8             Q.   You previously said that

 9        American Protection sent a mailing to her; is that

10        correct?

11             A.   Yes.

12             Q.   Do you know where it got her contact

13        information prior to sending that mailing?

14             A.   I do not, no.

15             Q.   Did you search for that information?

16             A.   Yes.

17             Q.   What repositories were searched?

18             A.   Our CRM.

19             Q.   CRM.

20                  Does SunPath ever provide leads to

21        American Protection?

22             A.   No.

23             Q.   All right.  I will pull up my next

24        exhibit.

25                  (Exhibit No. 7 was marked for
```

Page 100

1      Q.   So other than talking to your attorney and

2  producing the documents, nothing else you did to prepare

3  for this deposition?

4      A.   No.

5      Q.   Okay.  All right.  I want to talk about

6  American Protection's calling practices and the calls

7  made to Plaintiff.

8           So, first, during your prior deposition, I was

9  reviewing the transcript, and you testified that

10 American Protection uses subcontractors to place

11 telemarketing calls; is that correct?

12          MR. TANDY:  Objection to the word

13      telemarketing.

14          You can answer.

15          THE WITNESS:  American Protection uses

16      subcontractors to -- to communicate with potential

17      clients and clients.

18 BY MR. SMITH:

19      Q.   Okay.  And you previously told me that you

20 worked with one or two subcontractors at any particular

21 time; is that accurate?

22      A.   Yes.

23      Q.   Okay.  Is it a fair character --

24 characterization to say that the subcontractors place

25 calls on behalf of American Protection to solicit sales

                                          Page 138

```
 1    of vehicle service contracts?

 2         A.   No, we don't --

 3              MR. CAFFAS:  Objection.  Speculation.

 4              I'm sorry.

 5              THE WITNESS:  I'm sorry.

 6              MR. CAFFAS:  I --

 7              MR. TANDY:  Greg was --

 8              I'll do this, Greg, just so it's clear.

 9              Greg is lodging an objection to Taylor's

10         question with regard to the form of the question.

11         You're still required to answer it.  You were about

12         to answer it, and thank you for waiting for Greg to

13         finish his objection before you started so the court

14         reporter can't -- can't take us all down at once.

15              So can you answer Taylor's question?

16              THE WITNESS:  Yes.

17              MR. TANDY:  Okay.  Please do.

18              THE WITNESS:  We return requests for contacts

19         from potential customers.  We don't just solicit

20         and -- and -- and call.  We have folks that are

21         calling and requesting information, and in some

22         cases, we reach out to people with requested

23         information.

24    BY MR. SMITH:

25         Q.   Okay.  I understand you're reaching out to
```

Page 139

1              THE COURT REPORTER:  Yes, sir.  Thank you.

2      BY MR. SMITH:

3          Q.   Kobi, I'm going to play a recording that's been

4      produced in this litigation.

5              MR. SMITH:  It's going to be marked as

6          Exhibit 13 to this deposition.

7              (Deposition Exhibit 13 was marked.)

8              MR. SMITH:  For the record, this is a recording

9          produced by Plaintiff.  It's been produced in

10         litigation and marked as "SMITH000027."  I'm going

11         to play it in full.

12             (At this time the recorded voicemail was played

13         for the witness.)

14             MS. JAEGER:  Hi, Ruth.  This is Samantha

15         calling with America Protection.  I'm just calling

16         you to get the VIN number on your BMW to get your

17         coverage going for you.  I will be back in the

18         office in about an hour.  I'm going to lunch.

19             My number is 1-800-427-1806, extension 5005.

20             Talk to you soon.  Bye-bye.

21             (Recording concluded.)

22     BY MR. SMITH:

23         Q.   Do you recognize that voice at all?

24         A.   She's identified herself as Samantha.

25         Q.   Yeah.  So would this be Samantha Jaeger?

                                             Page 180

```
 1        A.   Yes.

 2        Q.   -- to Plaintiff?

 3        A.   Yes.

 4        Q.   And when you stated that the Five9 system keeps

 5   records for 30 to 60 days, was that an estimate or do

 6   you know, for a fact, that's true?

 7        A.   I know, for a fact, that's true.

 8        Q.   Okay.  And did you search the Five9 system for

 9   records of any other calls that would be responsive to

10   the subpoena?

11        A.   Yes.

12        Q.   Okay.  And there were no records?

13        A.   None.

14             MR. SMITH:  Okay.  All right.  Greg, you can

15        take over.

16                     CROSS-EXAMINATION

17   BY MR. CAFFAS:

18        Q.   Hi, Mr. Chukran.  Thanks again for taking some

19   time to continue this deposition.

20             As we mentioned last time, my name's

21   Gregory Caffas.  I am here as counsel for SunPath in

22   this case, so I'm just going to be asking you a few

23   questions in addition to what Mr. Smith has -- has given

24   to you today.

25             American Protection's business practices are
```

Page 195

```
 1    only to call people who have opted in, correct?
 2         A.   Yes.
 3         Q.   And when you -- when you say "only to call
 4    people who opted in" do you -- what do you mean by
 5    "opted in"?
 6         A.   It's --
 7              MR. SMITH:  Objection.  Asked and answered.
 8              MR. TANDY:  You -- you can answer, Kobi.
 9              THE WITNESS:  It means they requested -- they
10         requested to be contacted from us, specifically.
11    BY MR. CAFFAS:
12         Q.   Okay.  And that could be from --
13              Can you tell me what kind of methods they would
14    have been providing their request to be contacted by
15    American Protection, specifically?
16         A.   As I --
17              MR. SMITH:  Objection.  Asked and answered.
18              THE WITNESS:  As I -- as I replied in my
19         response, I provided this information either via
20         online, via a website, or via calling in.
21    BY MR. CAFFAS:
22         Q.   Has American Protection, including through any
23    subcontractors, ever knowingly or willfully called
24    anyone who had specifically requested not to be called
25    by American Protection?
```

                                        Page 196

```
 1   here.
 2            So it would seem that Ms. -- or Dawn would have
 3   known that someone had already expressed interest, so
 4   she would have used a telephone where she manually took
 5   that customer's information and called them, in
 6   particular, herself?
 7            MR. SMITH:  Objection.  Calls for speculation.
 8       Misstates the witness's testimony.
 9            THE WITNESS:  Yes.
10   BY MR. CAFFAS:
11       Q.   Okay.  So do you --
12            Are you able to say, for a fact, whether that
13   was on a physical telephone, or would this be stored in
14   a computer system?
15       A.   No.  It was -- that was the same phone system
16   that would be virtual or via web browser.
17            In this case, the plaintiff gave us a credit
18   card number and agreed to the terms of the sale, so as
19   far as Dawn, she had written consent from a customer of
20   ours.
21       Q.   Uh-huh.  So my confusion, Mr. Chukran, is I
22   believe your testimony earlier was, when someone is
23   contacted as a potential -- to make a potential sale,
24   they are in a list, and they are being -- the
25   subcontractor of American Protection that is going to be
```

Page 199

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

1       A.   Yes.

2       Q.   I'll stop sharing my screen for a sec.

3            Mr. Chukran, do you have record of Ms. Smith,

4    the plaintiff, ever making a Do Not Call request?

5       A.   No, I do not.

6       Q.   Mr. Chukran, I'm going to ask you some

7    questions now about American Protection's specific

8    relationship with SunPath.

9            Did SunPath assert any control over where

10   American Protection had any kind of physical offices?

11      A.   Not to my knowledge.

12      Q.   Now, did SunPath ever instruct you on what type

13   of dialing system to use?

14      A.   Not to my knowledge.

15      Q.   Did SunPath have any say over who

16   American Protection hired?

17      A.   No.

18      Q.   Did SunPath have any say over whether or not

19   American Protection could fire or terminate any kind of

20   employee or independent contractor?

21      A.   With the exception of anybody that has a

22   noncompete with SunPath.

23      Q.   What do you mean by that?

24      A.   So if a previous employee, for example, of

25   SunPath would have gotten a new job with

                                        Page  220

```
 1    American Protection, then maybe that they left some

 2    restrictions in place for them.  That's the only

 3    scenario I'm familiar with.

 4         Q.   Did that ever happen?

 5         A.   No.

 6         Q.   Did SunPath have any say over the number of

 7    employees or independent contractors that

 8    American Protection had on its staff?

 9         A.   No.

10         Q.   To your knowledge, would SunPath even know the

11    names of any of American Protection's employees or

12    independent contractors, besides yourself?

13         A.   No.

14         Q.   Does SunPath have any kind of control over

15    whether American Protection uses subcontractors to

16    generate lead information?

17         A.   No.

18         Q.   Does SunPath control where or how

19    American Protection would purchase any kind of supplies

20    for its services, like computers or anything like that?

21         A.   No.

22         Q.   Did SunPath direct how American Protection was

23    going to perform any work at all?

24         A.   Re -- can you please repeat the question?

25         Q.   Did SunPass -- Path control how
```

Page  221

1      A.    No.

2      Q.    Did SunPath ever reimburse you for any of --

3   any expenses associated with office space, travel

4   expenses, or office supplies?

5      A.    No.  I believe they may have provided some

6   stationeries, pens, and mouse pads and -- and -- and

7   table -- table -- or desk mats with their product name

8   on it and stuff.

9      Q.    So this would be like mouse pads and

10  advertising-type products?

11     A.    Yes.

12     Q.    But there was no reimbursement for

13  American Protection or any of its subcontractors like

14  providing office supplies, right?

15     A.    No, I don't believe so.

16     Q.    Who paid American Protection's subcontractors?

17     A.    We did.

18     Q.    Is it correct to say that American Protection's

19  subcontractors were not ever compensated directly by

20  SunPath?

21     A.    Yes.

22     Q.    All right.  Mr. Chukran, I'm sharing my screen

23  with you again.

24          Can you see what's listed -- or what's

25  displayed on my screen as a "Seller Agreement"?

                                        Page  226

```
 1        A.   No.

 2        Q.   Is it correct that, in this exhibit, as

 3   written, SunPath's name isn't mentioned in the sales

 4   script or on the -- the cover of the -- the script at

 5   all?

 6        A.   Correct.

 7        Q.   Okay.  Has American Protection or any

 8   subcontractors that it hired ever intentionally violated

 9   the Telephone Consumer Protection Act, to your

10   knowledge?

11        A.   No.

12        Q.   Have you ever advised any of

13   American Protection's employees or subcontractors to

14   violate the Telephone Consumer Protection Act?

15        A.   No.

16        Q.   Has SunPath ever advised American Protection to

17   violate the Telephone Consumer Protection Act?

18        A.   No.

19        Q.   Has American Protection, including any of its

20   subcontractors, ever intentionally violated the Virginia

21   Telephone Privacy Protection Act?

22             MR. SMITH:  Objection.

23             THE WITNESS:  No.

24             MR. SMITH:  Lacks foundation.

25   BY MR. CAFFAS:
```

Page  234

1      Q.   Has SunPath ever directed American Protection

2  or any of its subcontractors to violate the Virginia

3  Telephone Privacy Protection Act?

4      A.   No.

5      Q.   Has American Protection ever knowingly called

6  the plaintiff, Ruth Smith, in violation of the Telephone

7  Consumer Protection Act?

8           MR. SMITH:  Objection.  Calls for speculation.

9           THE WITNESS:  No.

10  BY MR. CAFFAS:

11      Q.   I'll rephrase in case I said that incorrectly.

12           Had -- has American Protection ever

13  intentionally or knowingly called Ruth Smith in

14  violation of the Telephone Consumer Protection Act?

15           MR. SMITH:  Objection.  Calls for speculation.

16           THE WITNESS:  No.

17  BY MR. CAFFAS:

18      Q.   Has American Protection, including any of its

19  subcontractors, ever intentionally or knowingly called

20  Ruth Smith in violation of the Virginia Telephone

21  Privacy and Protection Act?

22           MR. SMITH:  Objection.  Calls for speculation.

23           THE WITNESS:  No.

24  BY MR. CAFFAS:

25      Q.   Has SunPath ever directed American Protection

Page  235

```
1    or any of its subcontractors to intentionally or
2    knowingly violate the Virginia Telephone Privacy
3    Protection Act?
4         A.   No.
5         Q.   Has American Protection, including through any
6    of its subcontractors/employees, ever knowingly violated
7    any telemarketing laws?
8         A.   Can you please repeat the question?
9         Q.   Has American Protection, including through any
10   of its employees or subcontract -- subcontractors, ever
11   knowingly violated any telemarketing laws?
12        A.   No.
13        Q.   And has SunPath ever directed or controlled
14   American Protection, including through any of its
15   employees or subcontractors, to violate any kind of
16   telemarketing law?
17        A.   I'm sorry.  Can you repeat the question?
18        Q.   Has SunPath ever --
19        A.   I apologize.  I apologize.  Go ahead.
20        Q.   Has SunPath ever directed or controlled
21   American Protection, including through any kind of
22   employee or subcontract -- subcontractor, to violate any
23   kind of telemarketing law?
24        A.   I'm sorry.  Can you please repeat the question
25   again?  For the last time.
```

Page 236

```
 1        Q.    Has SunPath ever directed or controlled

 2   American Protection, including through any kind of

 3   subcontractor/employee, to violate any kind of

 4   telemarketing law?

 5        A.    No.

 6              MR. CAFFAS:  Thank you.  That's all --

 7              THE WITNESS:  I apologize, Greg.  By the way,

 8         that was not intentional.  My apology.

 9              MR. CAFFAS:  Not a problem.

10              That's all I have for you right now.

11              I reserve my right to -- to recross based on

12         anything Taylor might -- might ask you or anything I

13         might have missed, but I'll cede to Taylor again

14         right now.

15              MR. SMITH:  Okay.

16                       REDIRECT EXAMINATION

17   BY MR. SMITH:

18        Q.    Kobi, I'll try to be quick so you can get out

19   of here.  I want to discuss Exhibit 4, which is the

20   sales script, and I'm happy to bring it up, if you want.

21   Just let me know.  The questions are pretty

22   straightforward, though.

23              You've just testified that, when a

24   subcontractor would utilize the sales agreement, they

25   would say hi, insert the name of the prospective client,
```

Page 237

```
 1                    CERTIFICATE OF REPORTER

 2                      (VIA VIDEOCONFERENCE)

 3    STATE OF WISCONSIN:

 4    COUNTY OF WINNEBAGO:

 5

 6         I, COURTNEY N. LANGHOFF, RMR, CRR, FPR-C,

 7    Notary Public, State of Florida, certify that I was

 8    authorized to and did stenographically and remotely

 9    report the Zoom videoconference deposition of

10    KOBI CHUKRAN (CHUKRAN MANAGEMENT GROUP, LLC); that a

11    review of the transcript was requested; and that the

12    foregoing transcript, pages 134 through 248, is a true

13    and accurate record of my stenographic notes.

14         I further certify that I am not a relative,

15    employee, or attorney, or counsel of any of the parties,

16    nor am I a relative or employee of any of the parties'

17    attorneys or counsel connected with the action, nor am I

18    financially interested in the action.

19

20         DATED this 16th day of November, 2022.

21

22

23

           COURTNEY N. LANGHOFF, RMR, CRR, FPR-C

24

25
```

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    ALEXANDRIA DIVISION
 4   RUTH SMITH, individually and
     on behalf of all others    Case No. 1:22-cv-00081-LMB-WEF
 5   similarly situated,
 6        Plaintiff,
 7   vs.
 8   SUNPATH, LTD, a Massachusetts
     corporation,
 9
          Defendant.
10   _____
11     VIDEOCONFERENCED 30(b)(6) DEPOSITION OF SUNPATH, LTD
                      (through ANDREW GARCIA)
12                      December 8, 2022
     _____
13
     VIDEOCONFERENCED APPEARANCES:
14
     ON BEHALF OF THE PLAINTIFF:
15           PATRICK H. PELUSO, ESQ.
             Woodrow & Peluso, LLC
16           3900 E. Mexico Avenue, Suite 300
             Denver, Colorado  80210
17           Phone: 720-213-0675
             Email: ppeluso@woodrowpeluso.com
18
     ON BEHALF OF THE DEFENDANT:
19           GREGORY CAFFAS, ESQ.
             Roth Jackson Gibbons Condlin
20           8200 Greensboro Drive, Suite 820
             McLean, Virginia  22102
21           Phone:  703-485-3535
             Email:  gcaffas@rothjackson.com
22
     Also Present:  Paul Sporn, Esq.
23
24
25
                                                 Page 1
```

1    addressed with regard to Topic Number 24.

2              Andrew, you said that 100 percent of the

3    revenue is -- is due to sales by third parties because

4    SunPath doesn't sell; right?

5         A.   Yes.

6         Q.   Is SunPath able to discern what portion any

7    percent of that revenue is generated through any specific

8    type of marketing?

9         A.   The specific type of marketing?  No.

10        Q.   Like, for example, you wouldn't be able to

11   tell what proportion is done through direct calls versus

12   online sales or sales generated through a third party's

13   use of mailings, documents?

14        A.   Correct.  We don't know what type of

15   marketing a third party uses.

16        Q.   Okay.  As a proportion of the total revenue

17   that SunPath would generate through third-party sales, do

18   you have any idea what American Protection specifically

19   would be responsible for?

20        A.   It would be very small.  I don't know what

21   percentage, but it would be very small.

22        Q.   So would it be accurate to say that you

23   don't rely in any large part on American Protection's

24   sales of SunPath products?

25        A.   No.  Not at all.

                                        Page 72

```
 1                   Q.   It is not essential to SunPath's business,
 2     American Protection sales?
 3                   A.   Not at all.
 4                   Q.   Andrew, I want to clarify your testimony
 5     regarding earlier in the deposition, when you discussed
 6     the documents you reviewed in preparation for the
 7     deposition.
 8                        In the process of preparing for this
 9     deposition, did you also review relevant pleadings filed
10     in this case including, for example, the complaint, as
11     well as documents produced by American Protection in
12     response to subpoenas in this case?
13                   A.   Yes.
14                   Q.   And also, when asked if SunPath
15     communicated with any third parties regarding this case, I
16     believe there may have been some confusion regarding who
17     plaintiff's counsel was referring to when it said "third
18     party."
19                        Did anyone at SunPath contact American
20     Protection regarding the claims at issue in this case?
21                   A.   Paul.
22                   Q.   And was that disclosed in the documents
23     that SunPath produced in response to plaintiff's discovery
24     requests in this case?
25                   A.   Yes.  I believe so.
```

Page 73

1           Q.   And when you say "Paul," I assume you're

2     referring to Paul Sporn?

3           A.   Paul Sporn, our attorney.

4           Q.   And are you aware of whether he was able to

5     contact American Protection and receive any response about

6     the claims in this case?

7           A.   Yes.  He spoke to them.

8           Q.   And in any of the communications that

9     SunPath specifically, through Paul, had with American

10    Protection, are you aware of whether American Protection

11    represented that it violated any of the telemarketing laws

12    that are at issue in this case?

13          A.   No.  They said they didn't.

14          Q.   I'm sorry.  When you say they didn't --

15          A.   They didn't violate any laws.

16          Q.   As part of the preparation for today's

17    deposition, did you review the deposition transcript for

18    the deposition that was conducted with American Protection

19    in connection with this case?

20          A.   Yes.

21          Q.   I'm going to share my screen here.  Sorry.

22    My -- okay.  Can you see on my screen what I have here

23    that's --

24          A.   Yes.

25          Q.   -- the cover page of Mr. Chukran's

                                                    Page 74

1   deposition as a representative for American Protection?

2          A.   Yes.

3          Q.   And do you recognize this as the transcript

4   that you reviewed?

5          A.   Yes.

6          Q.   And I'll represent that this is just an

7   excerpt of Mr. Chukran's deposition, and I will scroll to

8   testimony that he provided on page 222.

9               Okay.  You'll see here it starts at line

10  20 -- the question that I'm referring to -- the question

11  posed to Mr. Chukran was:

12               "Did SunPath provide any kind of training

13  to American Protection?

14               "Answer:  Any kind of what?"

15               It was clarified "training" in line 23.

16               And you'll see on line 24, Mr. Chukran

17  answered, "Just in terms of product training."

18               Do you see that?

19          A.   Yes.

20          Q.   Do you have any idea what Mr. Chukran would

21  have been referring to when he referenced "product

22  training"?

23          A.   He would be referring to getting education

24  on what our products are.  I really wouldn't call it

25  training.  I would call it education.  So we explain to

Page 75

1    people what our products are and how they work.

2           Q.   And -- but as part of that product

3    education, would SunPath ever provide American Protection

4    with any kind of instruction as to how to market or sell

5    that product at all?

6           A.   No.

7           Q.   To your knowledge, would SunPath have any

8    knowledge of any subcontractor that American Protection

9    would have hired in order to market or sell any product?

10          A.   No.

11          Q.   Okay.  I'd like to now direct you to the

12   bottom of page 223 of Mr. Chukran's deposition testimony

13   where it -- where it states at page -- at line 24, it

14   says:

15               "On occasion, some companies would offer

16   training that could be done, for example, via Zoom, and

17   that would include some subcontractors attending those

18   trainings."

19               Do you ever know of an -- are you aware of

20   any instance in which SunPath would have provided any Zoom

21   training of any type to any subcontractor of American

22   Protection?

23          A.   No.

24          Q.   I'd like to now direct you to line 6 of

25   page 224 of Mr. Chukran's deposition, where he says,

                                                    Page 76

```
 1     "Possibly."  And that is in the context of whether or not

 2     American Protection's subcontractors may have received

 3     training.  And then he continues:

 4               "I'm not sure of an exact -- I don't have a

 5     time.  I don't know exactly, but SunPath does have a sales

 6     representative.  His name's Brian.  It is my understanding

 7     his job is to provide training."

 8               Are you aware of an employee of SunPath

 9     named Brian that Mr. Chukran --

10          A.   Yes.

11          Q.   -- is referring to?

12          A.   Yes.

13          Q.   And who is Brian that Mr. Chukran is

14     referring to?

15          A.   Brian is our account rep, so when, you

16     know, an independent company has a question about our

17     product or something, they can call Brian.  If they have

18     an issue that they think a customer is upset over a claim

19     or something, they can call Brian.

20               He's just an account rep that people

21     contact and he would educate people, he would tell them

22     about our products and that's it.  He doesn't provide any

23     kind of training, other than telling people about how our

24     products work.

25          Q.   Okay.  So would it be accurate to say that
```

Page 77

```
 1   he never conducted training sessions of any kind for any
 2   third party authorized to sell --
 3           A.   No.  He does not provide training ever.
 4           Q.   And would that be accurate then to also say
 5   that he didn't provide -- "he" being Brian in this case or
 6   anyone else at SunPath -- did not provide any kind of
 7   training or instruction on how to market or sell any
 8   SunPath product in any way to a third party authorized to
 9   market or sell SunPath's product?
10           A.   Yes.  That's accurate.  Brian doesn't do
11   any training.
12           Q.   Do you have any idea why Mr. Chukran would
13   have testified to that?
14           A.   No.  I mean, he may have had other
15   companies provide training, but Brian didn't do it.  I
16   mean, I don't -- I have no idea what someone provided to
17   them, but it wasn't SunPath or Brian.
18           Q.   Okay.  I'd like you now to look at line 15
19   of page 224 of Mr. Chukran's deposition testimony where
20   the question was asked:
21               "And you said already, though, that if it
22   was any kind of training, it would just be as to what
23   SunPath's products are."
24               To which Mr. Chukran responded:
25               "In some cases, they would offer -- and,
```

Page 78

```
 1    again, I -- I don't have specific incidents, but just in
 2    terms of industry, sometimes they would offer some
 3    incentives of the highest sales for the month, for
 4    example.  They would offer some kind of cash incentive."
 5              To your knowledge, Andrew, was there ever
 6    any incentives SunPath offered based on monthly sales or a
 7    cash incentive to any third-party marketer or seller of
 8    SunPath's products?
 9         A.   No.  We have never offered them or anyone
10    else a cash incentive to sell products, no.
11         Q.   Okay.  And specifically, with regard to
12    American Protection, would it also be accurate that there
13    was no kind of any cash or monthly incentive for the
14    volume of SunPath's products?
15         A.   Correct.  We never offered American
16    Protection any type of incentive or anything else.
17         Q.   Andrew, did SunPath ever in any way
18    restrict American Protection's ability to offer other
19    companies' products at the same time American, for
20    example, was authorized to sell SunPath's products?
21         A.   Did we restrict what?
22         Q.   Was -- for example, did the agreement that
23    SunPath has with American Protection or any third party
24    restrict those parties from offering other companies'
25    products?  For example, SunPath's competitors' products?
```

Page 79

```
 1                A.   No.  No.  They -- they all offer other
 2      products.
 3                Q.   So, to your understanding, American, for
 4      example, would have been authorized to offer SunPath's
 5      competitors' products alongside SunPath's products to any
 6      consumer they contacted?
 7                A.   Yes.  That's up to them.  We have nothing
 8      to do with it.
 9                Q.   And to your knowledge, did American
10      Protection offer other companies' products at the same
11      time it was authorized to sell SunPath's products?
12                A.   I believe so, but I don't know for sure
13      because I don't know what they sell.
14                Q.   You mentioned there may have been one other
15      complaint involving American Protection besides the
16      complaint in this lawsuit.
17                     Do you recall, in that other case, whether
18      or not SunPath or American Protection were found to be
19      liable for violating any telemarketing laws?
20                A.   We haven't been liable for anything, and to
21      my knowledge, they haven't been, either, but -- that's my
22      understanding.
23                Q.   And to your knowledge, regarding the other
24      complaint or case you referred to involving American
25      Protection, were the telemarketing calls that were the
```

Page 80

```
1    subject of that case or complaint prior to or after the
2    calls at issue in the present lawsuit?
3              A.   I believe they were after, but I would have
4    to check.
5              Q.   To the best of your knowledge, do you have
6    any knowledge at all of American Protection being accused
7    of telemarketing violations prior to the calls that are at
8    issue in this case that Ruth Smith has filed against
9    SunPath?
10             A.   No.
11             Q.   Do you recall reviewing and verifying the
12   contents of the written discovery responses that SunPath
13   provided in this case?
14             A.   Yes.
15             Q.   And were those responses accurate to the
16   best of your knowledge based on the information you had
17   available?
18             A.   Yes.
19             Q.   Andrew, if you'll recall, the agreement
20   between SunPath and American Protection that you reviewed
21   earlier today, is it your understanding that pursuant to
22   the terms of that agreement, American Protection agreed to
23   obey all applicable laws that are the subject of any
24   marketing that it undertook?
25             A.   Yes.  Yes, I did.
```

Page 81

1              Q.   Has SunPath ever directed American

2    Protection or any other third-party authorized sellers of

3    SunPath's product to violate the Telephone Consumer

4    Protection Act?

5              A.   No.

6              Q.   Has SunPath ever directed American

7    Protection or any other third party authorized to sell or

8    market SunPath's product to violate the Virginia Telephone

9    Privacy Protection Act?

10             A.   No.

11             Q.   Has SunPath ever directed American

12   Protection to violate any telemarketing laws?

13             A.   No.

14             Q.   Has SunPath ever authorized American

15   Protection to operate outside of the bounds of the

16   agreement between the parties?

17             A.   No.

18             Q.   Is SunPath aware at all that American

19   Protection has at any time violated any telemarketing

20   laws?

21             A.   No.

22             Q.   Has SunPath ever intentionally violated the

23   Virginia Telephone Privacy Protection Act?

24             A.   No.

25             Q.   Has SunPath ever caused another party to

                                                    Page 82

```
 1    call Ruth Smith or any other person in violation of any
 2    law governing telemarketing?
 3                    A.    No.
 4                    MR. CAFFAS:  I think that's all I have for
 5    the moment.  If you wouldn't mind, Pat, I'd like to take a
 6    5-minute recess just to review my notes and make sure I
 7    haven't missed anything.  But, otherwise, I think that's
 8    all I have for now.
 9                    MR. PELUSO:  Yeah.  Sure.  No problem.
10                    MR. CAFFAS:  Let's go off the record.
11    Again, I'll just take 5 minutes.
12                    MR. PELUSO:  All right.
13                    (Recess taken, 1:11 p.m. to 1:13 p.m.)
14                    MR. CAFFAS:  I do not have any other
15    questions.  So we're back on the record.  I'll turn it
16    back over to you, Pat, if you have any additional
17    questions, but I'm finished.
18                    MR. PELUSO:  That will be it for me, too.
19                    THE COURT REPORTER:  And do you want a copy
20    of the deposition, Greg?
21                    MR. CAFFAS:  Yes, I would like a copy of
22    the deposition.  I would say by Monday, if possible.
23                    THE COURT REPORTER:  Will you handle
24    signature for me?
25                    MR. CAFFAS:  Yes.
```

Page 83

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2   STATE OF COLORADO              )

 3   CITY AND COUNTY OF DENVER      )

 4           I, Bonnie Carpenter Johnshoy, a Registered

 5   Professional Reporter, commissioned to administer oaths,

 6   do hereby certify that previous to the commencement of

 7   the examination, the witness was duly sworn by me to

 8   testify to the truth in relation to matters in

 9   controversy between the said parties; that the said

10   deposition was taken in stenotype by me at the time and

11   place aforesaid and was thereafter reduced to typewritten

12   form by me; and that the foregoing is a true and correct

13   transcript of my stenotype notes thereof.

14           That I am not an attorney nor counsel nor in any

15   way connected with any attorney or counsel for any of the

16   parties to said action nor otherwise interested in the

17   outcome of this action.

18

19

20           Bonnie Carpenter Johnshoy

             Registered Professional Reporter

21           Certified Shorthand Reporter

             Certified Realtime Reporter

22

23

24

25

                                            Page 86
```















6/11/20
I sent an email to Samantha at American Protection Corp not to contact me as I am not interested in purchasing any vehicle protection/warrenty for my car.
Do not call me anymore.

5/28/20
Company: American Protection
Agent: Samantha
Phone: 1-800-427-1806 (Ext 1190)
Website: Americanprotectioncorp.com
Location: FL
Type of call: I answered the call there was a 3 second delay and Samantha came on the line.
16 Minute call at 12:51PMET
Received a voicemail from Samantha (following up on my VIN number) at 1:55PMET and an email quote from Samantha at 4:09PMET.
(In order to for Samantha to provide me the information I let her know that I would purchase the highest plan and gave her a Visa gift card as payment)

Date: 5/26/20
Type of call: Auto dial.  I answered the call there was a three second delay then Marina came on the line asked me questions about my vehicle and then she said she was going to transfer me but we got disconnected.
Agent: Marina
Company name: Vehicle Protection Center
Number: 410-844-6327
1 minute call at 3:51PMET

Received additional voicemail and call from American Automotive protection corp operator Dawn (worked with Samantha. Received at 12:37PMET



6/5/20
Received additional voicemail and call from American Automotive protection corp operator Dawn (worked with Samantha. Received at 12:37PMET

6/11/20
I sent an email to Samantha at American Protection Corp not to contact me as I am not interested in purchasing any vehicle protection/warrenty for my car.
Do not call me anymore.

11:44

# +1 (281) 709-0786

Houston, TX
May 28, 2020 at 1:55 PM

0:00                                              −0:21



## Transcription Beta

"Hi Ruth this is Samantha calling with American protection I was just calling you to get the Vin number on your BMW to get your car is going for you um I'll be back in the office in about an hour I'm going to lunch my number is 1-800-427-1806 extension 5005 talk to you soon bye-bye..."

Was this transcription useful or not useful?

Favorites   Recents   Contacts   Keypad   **Voicemail**

On Jun 10, 2020, at 11:15 AM, Ruth Smith <rdssmith@gmail.com> wrote:

JA642



## **American Protection Corp. Sales Script**

Hi _____this is _____, thank you for calling American Protection Corp. How may I direct your call?

### **DISCOVERY**

- What is the <Year>, <Make>, <Model> of your vehicle?

- About how many miles do you currently have?

- Are you the original owner?

- How many miles do you drive a year/month?

- Has your car had any problems or broken down?

- Do you keep up with regular maintenance and oil changes.

Great! You qualify for the _____ protection plan! Your <Model>  will be covered for the next _____ years and additional _____ miles. This plan covers your <REFER TO PLAN COVERAGE DETAILS>: engine, transmission, front and rear drive axe assembly, your air conditioning system, your electrical components, alternator, starter, power door locks, power window motors, cooling system, fuel delivery system right down to all the seals and gaskets on your <Model>.

You can bring your <Mode> to any licensed repair facility of your choice. As long as they are ASE certified and licensed.

**<u>Also included with your plan:</u>**

• Towing

• 24 hr. road side assistance- covers towing, jump start, Gas, lock out.

• Rental car reimbursement up to 5 days per claim


Do you any other questions about the coverage before we talk about the price?

You can get this policy started today for $_____. If you pay that in full today we do offer an additional discount, But if you do not have the means to do so for we do offer no-fee payment plans that will allow you to put a small down payment and make monthly payments over the next year or two.

I can give you two options. The down payment is $_____ and I can give you either 18 monthly installments at $_____ per month OR 24 monthly installments at $_____ per month.

You will also receive a 30-day review period and 100% money back guaranteed. I will be your account manager for the life time of the policy and you can reach me any time with any questions or assistance you may need.

**<u>VERIFICATION SCRIPT</u>**

• Congratulations on your purchase | Must Get Verbal authorization to run payment

• Will receive policy card, booklet, and contract. GIVE DIRECT PHONE # & Ext.

American Protection Corp. | 10267 Cocobolo way. Boynton Beach, FL 33437 | www.AmericanProtectionCorp.com

**JA644**



# American Protection Corp. Sales Script

Hi _____this is _____, thank you for calling American Protection Corp. How may I direct your call?

## DISCOVERY

- What is the <Year>, <Make>, <Model> of your vehicle?

- About how many miles do you currently have?

- Are you the original owner?

- How many miles do you drive a year/month?

- Has your car had any problems or broken down?

- Do you keep up with regular maintenance and oil changes.

Great! You qualify for the _____ protection plan! Your <Model>  will be covered for the next _____ years and additional _____ miles. This plan covers your <REFER TO PLAN COVERAGE DETAILS>: engine, transmission, front and rear drive axe assembly, your air conditioning system, your electrical components, alternator, starter, power door locks, power window motors, cooling system, fuel delivery system right down to all the seals and gaskets on your <Model>.

You can bring your <Mode> to any licensed repair facility of your choice. As long as they are ASE certified and licensed.

JA645

**<u>Also included with your plan:</u>**

• Towing

• 24 hr. road side assistance- covers towing, jump start, Gas, lock out.

• Rental car reimbursement up to 5 days per claim

Do you any other questions about the coverage before we talk about the price?

You can get this policy started today for $_____. If you pay that in full today we do offer an additional discount, But if you do not have the means to do so for we do offer no-fee payment plans that will allow you to put a small down payment and make monthly payments over the next year or two.

I can give you two options. The down payment is $_____ and I can give you either 18 monthly installments at $_____ per month OR 24 monthly installments at $_____ per month.

You will also receive a 30-day review period and 100% money back guaranteed. I will be your account manager for the life time of the policy and you can reach me any time with any questions or assistance you may need.

**<u>VERIFICATION SCRIPT</u>**

• Congratulations on your purchase | Must Get Verbal authorization to run payment

• Will receive policy card, booklet, and contract. GIVE DIRECT PHONE # & Ext.

American Protection Corp. | 10267 Cocobolo way. Boynton Beach, FL 33437 | www.AmericanProtectionCorp.com

**JA646**

# American Automotive Protection

☎ - (800) 427-1806

## Your Plan

Coverage Provided By

## SunPath

Coverage Duration

## 48$^{mo}$ / 75,000$^{mi}$

The Vehicle Service Contract you are purchasing will cover your vehicle until the vehicle odometer reads 76,000$^{mi}$ or June 27, 2024, whichever occurs first.

Coverage Type

## Diamond Coverage

∘ View Coverage Terms (../openfile.aspx?documentid=139)

---

## Deductible

○ $0.00
○ $50.00
◉ $100.00

---

## Payment

◉ Monthly Installments
○ Full Payment

Due Today

## $99.00

30 Monthly Payments of

## $116.33

---

## Your Vehicle

## 2016 BMW 228

Case 1:22-cv-00081-LMB-WEF Document 66-11 Filed 12/23/22 Page 2 of 5 PageID# 755

## Exact Odometer:

9,500

Enter VIN Number

Validate

Vehicle VIN needs validated for accurate pricing.

# Policy Holder Information

**First Name**

Ruth

**Last Name**

Smith

**Phone**

(703) 728-9650

**Email**

rdssmith@gmail.com

**Address**

12000 Market St

**Apt/Suite**

apt 356

**City**

Reston

**State**

VA

**Zip**

20190

# Your Account

Upon review and approval of your purchase you will be notified via email how to access your account online. If you already have an account, this new policy will be linked to your existing account by matching your email address on file.

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

---

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

**Samantha** Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

Vehicle
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

Coverage Plan
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

Plan Cost
Subtotal:          $3,589.00
Tax:                    $0.00
Total:             $3,589.00
Down Payment:          $99.00
Payments:                  30
Monthly Payment:     $116.33

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance
- Complimentary Car Rental & Towing
- Complimentary Trip Interruption / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St

**JA650**

Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

**From:** Ruth Smith <rdssmith@gmail.com>
**Date:** June 11, 2020 at 7:49:00 AM CDT
**To:** sjaeger@americanprotectioncorp.com
**Subject: Re: American Protection Corp. Quote Summary**

Samantha,

I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty for my car.

Do not call me anymore.

Ruth

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

Samantha Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

| Vehicle | |
|---|---|
| Make: 2016 BMW | |
| Model: 228 | |
| Odometer: 9,500 | |
| Vin: | |

| Coverage Plan | |
|---|---|
| Plan: Diamond | |
| Expiration Date: 6/27/2024 | |
| Expiration Miles: 76,000 | |
| Deductible: $100.00 | |

| Plan Cost | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance

JA652

- Complimentary Car Rental & Towing
- 24-Hour Roadside Support / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St
Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

JA653

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH, on behalf of herself and a class of others similarly situated,** | |
| Plaintiff, | |
| | **Civil Action No. 1:22-cv-00081 (LMB/TCB)** |
| v. | |
| **SUNPATH, LTD.,** | |
| Defendant. | |

### SUNPATH, LTD.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant SunPath, Ltd. ("SunPath") supplements its responses and objections to Plaintiff's First Set of Interrogatories and Document Requests as follows:

### INTERROGATORIES

9.      Identify and Describe any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis,

other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products. SunPath also objects to any legal conclusion that these parties make calls "on behalf of" SunPath because such parties market and sell SunPath products non-exclusively, meaning that those parties sell SunPath-administered products simultaneously alongside SunPath's competitors and decide independently what product to offer. SunPath additionally reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding unrelated collateral matters has no bearing here and discovery into such collateral matters is not proportional to the needs of this case. *See, e.g.*, *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at *4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at *4 (E.D. Va. Apr. 11, 2018).

Defendant also objects to this request as overly broad and unduly burdensome, as this request seeks information not proportional to the needs of the case, including information equally available to Plaintiff in public filings, serves no purpose other than to harass and cause undue burden.

**JA655**

**ANSWER:** See objection.  Subject to and without waiving this objection, SunPath is continuing to investigate this request regarding American Protection, and will supplement this response as warranted.

**SUPPLEMENTAL ANSWER:**   Subject to and without waiving the foregoing objections, and only to the extent this request seeks information relating to American Protection, with the exception of the present lawsuit, SunPath is aware of only a single complaint made against American Protection relating to telemarketing activity, which was a lawsuit filed by Theron Noble, a resident of Pennsylvania, in the Court of Common Pleas of Clearfield County, Pennsylvania, in relation to alleged telemarketing calls Mr. Noble claimed he received in March of 2021.  SunPath understands that this complaint was resolved without any finding of liability as to either American Protection or SunPath for any of the subject claims, including any claims relating to telemarketing.   Moreover, SunPath reiterates that the alleged calls that were the subject of Mr. Noble's complaint occurred well after the calls Ruth Smith alleges she received from American Protection that are the subject of the present lawsuit.  SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Ruth Smith's claims in this lawsuit, and more generally is not aware of any instance in which American Protection was found to have violated any law involving telemarketing.  SunPath has at no point authorized American Protection to violate any laws involving telemarketing, or ratified any conduct by American Protection that may have violated any laws involving telemarketing.

## **VERIFICATION**

I, Andrew Garcia, President of SunPath, Ltd., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing interrogatory answers are true and correct to the best of my knowledge.

Dated: 12/9/22

_____
Andrew Garcia

Dated:  December 9, 2022        Respectfully submitted,

SUNPATH, LTD.

By Counsel

By: /s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
Roth Jackson Gibbons Condlin, PLC
8200 Greensboro Drive, Suite 820
McLean, VA 22102
T: 703-485-3533
F: 703-485-3525
gcaffas@rothjackson.com
mroth@rothjackson.com


Joseph P. Bowser (VSB No. 88399)
Roth Jackson Gibbons Condlin, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

4

**JA658**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December 2022, a copy of the foregoing document

was served via email to the following:


Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
Taylor T. Smith
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**


/s/ *Gregory M. Caffas*
Gregory M. Caffas


5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>     Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her third supplemental esponses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

## INTERROGATORIES

1.     Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themselves by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's products and services.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at

2

10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls, Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m., which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff

asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themselves by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls

were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing

system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themselves by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. As of today, November 30, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

DECEMBER 8, 2022 THIRD SUPPLEMENTAL ANSWER: Plaintiff seeks damages and recovery for all calls placed to her cellular telephone number ending in 9650, which are reflected in the call records produced by Five9, Inc. The Five9, Inc. call records were produced

**JA665**

to SunPath on November 30, 2022. Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. Plaintiff again requested the call records from AT&T on December 3, 2022. As of today, December 8, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

### REQUESTS FOR ADMISSION

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020 because she has access to her cellular telephone bills, which may reflect such calls once third parties identify the full scope of the calls. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

7

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery,  changes the answer, a supplement will be sent.

DECEMBER 8, 2022 THIRD SUPPLEMENTAL ANSWER: Denied.


Dated: December 8, 2022                    **RUTH SMITH**, individually and on behalf of all others similarly situated,

By:  _/s/  Patrick H. Peluso_____
                 One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by electronic mail on December 8, 2022.

 _/s/ Patrick H. Peluso_

8

**JA667**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S RUTH SMITH'S VERIFICATION**

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing supplemental responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___12 / 08 / 2022___.

_____
Ruth Smith

1

Doc ID: 5ca6d000c4f2eec2ed8ba71250b2ba68bd73981d

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081-LMB-TCB |
| **SUNPATH, LTD.,** | |
| *Defendant.* | |

**DEFENDANT SUNPATH, LTD.'S OBJECTIONS TO PLAINTIFF'S WITNESS LIST**

Pursuant to the Court's Order dated August 5, 2022, ECF No. 25, Defendant SunPath

Ltd. ("SunPath"), by counsel, and pursuant to Federal Rule of Civil Procedure 26(a)(3)(B), sets

forth the following objections to Plaintiff's Witness List, ECF. No. 52.

**SPECIFIC OBJECTIONS**

1. Plaintiff Ruth Smith

While SunPath does not object to the appearance of Plaintiff Ruth Smith at trial, SunPath

reserves all objections to the admissibility of her testimony as may be available to SunPath under

the Federal Rules of Evidence when such testimony is presented. SunPath preserves its

objections to testimony elicited that is hearsay, lacks foundation, is argumentative, is irrelevant,

calls for speculation, and/or calls for a legal conclusion.

2. SunPath, Ltd. representative
   Andrew Garcia, president of SunPath

While SunPath does not object to the appearance of Mr. Garcia at trial, SunPath reserves

all objections to the admissibility of his testimony as may be available to SunPath under the

Federal Rules of Evidence when such testimony is presented. SunPath preserves its objections to

1

**JA669**

testimony elicited that is hearsay, lacks foundation, is argumentative, is irrelevant, calls for speculation, and/or calls for a legal conclusion.

3.  Chukran Management Group, LLC's d/b/a American Protection Corp. representative
    Kobi Chukran (by deposition)

While SunPath does not object to the use of relevant and admissible portions of Mr. Chukran's deposition testimony at trial, Plaintiff's purported designation of Mr. Chukran's entire transcript creates undue burden and waste of resources for SunPath and for the Court at trial to address stated objections in the transcript as well as potentially inadmissible evidence that does not advance the matters at issue to be presented at trial. In addition, SunPath preserves its objections to testimony elicited in the deposition that was outside the scope of the designated topic areas identified in Plaintiff's deposition notice, is hearsay, lacks foundation, is argumentative, is irrelevant, calls for speculation, and/or calls for a legal conclusion.

4.  Serge D. Jorgensen, Sylint Group

SunPath objects to the appearance of Mr. Jorgensen at trial. It is unclear if Plaintiff intends for Mr. Jorgensen to be an expert or fact witness.  In either case, his disclosure is untimely and prejudicial to SunPath.  SunPath objects to his appearance on the grounds that he was untimely disclosed by Plaintiff on December 9, 2022, the last day of discovery. *See* Order dated August 5, 2022 (Ordering discovery completed "by Friday, December 9, 2022. . . . no person may testify whose identity, being subject to disclosure . . . was not disclosed in time to be deposed").

The Court-ordered expert disclosure deadline for Plaintiff was October 10, 2022, and her rebuttal expert disclosure deadline was November 28, 2022. *See* Rule 16(B) Scheduling Order ("Scheduling Order"), ECF No. 31, ¶ 4 ("expert disclosures shall be due from plaintiff by October 10, 2022 . . . [r]ebuttal reports from plaintiff, if any, shall be due by November 28,

**JA670**

2022"). If Mr. Jorgensen is being offered as an expert witness, Plaintiff's untimely disclosure of Mr. Jorgensen prevented SunPath from being able to take his deposition and retain its own expert. Plaintiff's untimely disclosure of Mr. Jorgensen was not substantially justified or harmless. SunPath further objects to Mr. Jorgensen's appearance at trial as an expert witness on the grounds that Plaintiff failed to produce any report from Mr. Jorgensen in violation of Federal Rule of Civil Procedure 26(a)(2)(B).

If Mr. Jorgensen is being offered as a fact witness, SunPath objects to his appearance at trial on the grounds that he was untimely disclosed by Plaintiff on the last day of discovery. *See* Order dated August 5, 2022 (Ordering discovery completed "by Friday, December 9, 2022. . . . no person may testify whose identity, being subject to disclosure . . . was not disclosed in time to be deposed"). Plaintiff's untimely disclosure prevented SunPath from being able to take the deposition of Mr. Jorgensen. Plaintiff's untimely disclosure was neither substantially justified nor harmless. SunPath further objects to his appearance at trial on the grounds that his expected testimony will be improper lay witness testimony in violation of Federal Rules of Evidence 602 and 701.

5. Five9, Inc. corporate representative

SunPath objects to the appearance of the Five9, Inc. corporate representative at trial. It is unclear if Plaintiff intends for the Five9, Inc. corporate representative to be an expert or fact witness. In either case, his or her disclosure is untimely and prejudicial to SunPath. SunPath objects to his or her appearance on the grounds that he or she was untimely disclosed by Plaintiff on December 9, 2022, the last day of discovery. *See* Order dated August 5, 2022 (Ordering discovery completed "by Friday, December 9, 2022. . . . no person may testify whose identity, being subject to disclosure . . . was not disclosed in time to be deposed").

3

**JA671**

The Court-ordered expert disclosure deadline for Plaintiff was October 10, 2022 and her rebuttal expert disclosure deadline was November 28, 2022. *See* Scheduling Order ¶ 4 ("expert disclosures shall be due from plaintiff by October 10, 2022 . . . [r]ebuttal reports from plaintiff, if any, shall be due by November 28, 2022"). Plaintiff's untimely disclosure of the Five9, Inc. corporate representative prevented SunPath from being able to take his or her deposition and retain its own expert. Plaintiff's untimely disclosure of the Five9, Inc. corporate representative was not substantially justified or harmless. SunPath further objects to the Five9, Inc. corporate representative's appearance at trial as an expert witness on the grounds that Plaintiff failed to produce any report from the Five9, Inc. corporate representative in violation of Federal Rule of Civil Procedure 26(a)(2)(B).

If the Five9, Inc. corporate representative is being offered as a fact witness, SunPath objects to his or her appearance at trial on the grounds that he or she was untimely disclosed by Plaintiff on the last day of discovery. *See* Order dated August 5, 2022 (Ordering discovery completed "by Friday, <u>December 9, 2022. . . . no person may testify whose identity, being subject to disclosure . . . was not disclosed in time to be deposed</u>"). Plaintiff's untimely disclosure prevented SunPath from being able to take the deposition of the Five9, Inc. corporate representative. Plaintiff's untimely disclosure was neither substantially justified nor harmless. SunPath further objects to the Five9, Inc. corporate representative's appearance at trial on the grounds that his or her expected testimony will be improper lay witness testimony in violation of Federal Rules of Evidence 602 and 701.

**JA672**

Dated: December 30, 2022                    Respectfully submitted,

                                            SUNPATH, LTD.

                                            By Counsel

                                            /s/ *Mitchell N. Roth*
                                            Mitchell N. Roth (VSB No. 35863)
                                            ROTH JACKSON
                                            8200 Greensboro Drive, Suite 820
                                            McLean, VA 22314
                                            (703) 485-3535
                                            (703) 485-3525 (fax)
                                            mroth@rothjackson.com


                                            Joseph P. Bowser (VSB No. 88399)
                                            Carl Taylor Smith (VSB No. 97376)
                                            ROTH JACKSON
                                            1519 Summit Ave., Ste. 102
                                            Richmond, VA 23230
                                            804-441-8701
                                            804-441-8438 (fax)
                                            jbowser@rothjackson.com
                                            tsmith@rothjackson.com

                                            *Counsel for SunPath, Ltd.*

**JA673**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Objections to Plaintiff's Witness List to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 30, 2022.

/s/ *Mitchell N. Roth*
Mitchell N. Roth

**JA674**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **SUNPATH, LTD.**, a Massachusetts corporation, <br><br> Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## DEFENDANT SUNPATH, LTD.'S OBJECTIONS TO PLAINTIFF'S TRIAL EXHIBIT LIST

Pursuant to the Court's Order dated August 5, 2022, ECF No. 25, Defendant SunPath Ltd.

("SunPath"), by counsel, and pursuant to Federal Rule of Civil Procedure 26(a)(3)(B), sets forth

the following objections to Plaintiff's Trial Exhibit List, ECF. No. 54.

| Ex. # | Bates # | Description | SunPath's Objections |
|---|---|---|---|
| 1 | N/A | Stipulated Facts | |
| 2 | SMITH000022-26 | May 28, 2020, 6:03 pm Email (w/link to website) | Fed. R. Evid. 802 – Hearsay |
| 3 | SMITH000029-30 | June 11, 2020 Email | |
| 4 | SMITH000021 | National Do Not Call Registry – Registration Confirmation | |
| 5 | SMITH000027 | Call Recording | Fed. R. Evid. 802 – Hearsay |
| 6 | SMITH000028 | Call Recording | Fed. R. Evid. 802 – Hearsay |
| 7 | SMITH000031-36 | Notes of Calls | Fed. R. Evid. 802 – Hearsay |
| 8 | N/A | Plaintiff's Objections and Responses to Defendant's First Set of Discovery Requests | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 802 – Hearsay |
| 9 | N/A | Plaintiff's First Supplemental Objections and Responses to Defendant's First Set of Discovery Requests | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 802 – Hearsay |

**JA675**

| 10 | N/A | Plaintiff's Second Supplemental Objections and Responses to Defendant's First Set of Discovery Requests | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 802 – Hearsay |
|----|-----|-----|-----|
| 11 | N/A | Plaintiff's Third Supplemental Objections and Responses to Defendant's First Set of Discovery Requests | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 802 – Hearsay |
| 12 | N/A | Call Center Marketing Agreement (with Standards of Conduct) | |
| 13 | N/A | Defendant's Responses to Plaintiff's First Set of Discovery Requests | |
| 14 | N/A | Defendant's Supplemental Responses to Plaintiff's First Set of Discovery Requests | |
| 15 | N/A | CALL CENTER MARKETING AGREEMENT.pdf | |
| 16 | N/A | SELLER AGREEMENT.pdf | Fed. R. Evid. 402 – Relevance |
| 17 | N/A | American Protection Corp Sales Script.docx | Fed. R. Evid. 802 – Hearsay |
| 18 | N/A | American Protection Corp.pdf | |
| 19 | N/A | DNC Policy.pdf | |
| 20 | N/A | CRM tabs expanded_001.pdf | |
| 21 | N/A | Appointment by sunpath_001.pdf | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 802 – Hearsay |
| 22 | N/A | American Protection Florida Appointment for Sunpath - Licensee Detail.pdf | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 802 – Hearsay |
| 23 | N/A | Postcard.pdf | |
| 24 | N/A | Letter1.pdf | |
| 25 | N/A | Gmail – Email Quote Summary.pdf (May 28, 2020, 3:30 pm Email) | Fed. R. Evid. 802 – Hearsay |
| 26 | N/A | AmericanProtectionCorporation2-20180501-20180531.csv | Fed. R. Evid. 402 – Relevance |

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 27 | N/A | AmericanProtectionCorporation2-20180601-20180630.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 28 | N/A | AmericanProtectionCorporation2-20180701-20180731.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 29 | N/A | AmericanProtectionCorporation2-20180801-20180831.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 30 | N/A | AmericanProtectionCorporation2-20180901-20180930.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation |

3

**JA677**

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 31 | N/A | AmericanProtectionCorporation2-20181001-20181031.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 32 | N/A | AmericanProtectionCorporation2-20181101-20181130.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 33 | N/A | AmericanProtectionCorporation2-20181201-20181231.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 34 | N/A | AmericanProtectionCorporation2-20190101-20190131.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 35 | N/A | AmericanProtectionCorporation2-20190201-20190228.csv | Fed. R. Evid. 402 – Relevance |

4

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 36 | N/A | AmericanProtectionCorporation2-20190301-20190331.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 37 | N/A | AmericanProtectionCorporation2-20190402-20190430.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 38 | N/A | AmericanProtectionCorporation2-20190501-20190531.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 39 | N/A | AmericanProtectionCorporation2-20190601-20190630.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation |

5

**JA679**

| | | | Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
|---|---|---|---|
| 40 | N/A | AmericanProtectionCorporation2-20190701-20190731.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 41 | N/A | AmericanProtectionCorporation2-20190801-20190831.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 42 | N/A | AmericanProtectionCorporation2-20190901-20190930.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 43 | N/A | AmericanProtectionCorporation2-20191001-20191031.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 44 | N/A | AmericanProtectionCorporation2-20191101-20191130.csv | Fed. R. Evid. 402 – Relevance |

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 45 | N/A | AmericanProtectionCorporation2-20191201-20191231.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 46 | N/A | AmericanProtectionCorporation2-20200101-20200131.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 47 | N/A | AmericanProtectionCorporation2-20200201-20200229.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 48 | N/A | AmericanProtectionCorporation2-20200301-20200331.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation |

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 49 | N/A | AmericanProtectionCorporation2-20200402-20200430.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 50 | N/A | AmericanProtectionCorporation2-20200501-20200531.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 51 | N/A | AmericanProtectionCorporation2-20200601-20200630.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 52 | N/A | AmericanProtectionCorporation2-20200701-20200731.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 53 | N/A | AmericanProtectionCorporation2-20200801-20200831.csv | Fed. R. Evid. 402 – Relevance |

8

**JA682**

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 54 | N/A | AmericanProtectionCorporation2-20200901-20200930.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 55 | N/A | AmericanProtectionCorporation2-20201001-20201031.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 56 | N/A | AmericanProtectionCorporation2-20201101-20201130.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
| 57 | N/A | AmericanProtectionCorporation2-20201201-20201231.csv | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation |

9

**JA683**

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 58 | N/A | AmericanProtectionCorporation2-20210101-20210131.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 59 | N/A | AmericanProtectionCorporation2-20210201-20210228.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 60 | N/A | AmericanProtectionCorporation2-20210301-20210331.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 61 | N/A | AmericanProtectionCorporation2-20210402-20210430.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 62 | N/A | AmericanProtectionCorporation2-20210501-20210531.csv | Fed. R. Evid. 402 – Relevance |

| | | | |
|---|---|---|---|
| | | | Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 63 | N/A | AmericanProtectionCorporation2-20210601-20210630.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 64 | N/A | AmericanProtectionCorporation2-20210701-20210731.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 65 | N/A | AmericanProtectionCorporation2-20210801-20210831.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 66 | N/A | AmericanProtectionCorporation2-20210901-20210930.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation |

11

| | | | Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
|---|---|---|---|
| 67 | N/A | AmericanProtectionCorporation2-20211001-20211031.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 68 | N/A | AmericanProtectionCorporation2-20211101-20211130.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 69 | N/A | AmericanProtectionCorporation2-20211201-20211231_part_1.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 70 | N/A | AmericanProtectionCorporation2-20211201-20211231_part_2.csv | Fed. R. Evid. 402 – Relevance<br>Fed. R. Evid. 403 – More Prejudicial than Probative<br>Fed. R. Evid. 602 – Lack of Foundation<br>Fed. R. Evid. 701 – Improper Lay Witness Opinion<br>Fed. R. Evid. 802 – Hearsay |
| 71 | N/A | Five9_AmericanProtection_000001.xlsx | Fed. R. Evid. 402 – Relevance |

12

| | | | Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |
|---|---|---|---|
| 72 | NA | Summary of Five9 call records relating to Plaintiff's phone number | Fed. R. Evid. 402 – Relevance Fed. R. Evid. 403 – More Prejudicial than Probative Fed. R. Evid. 602 – Lack of Foundation Fed. R. Evid. 701 – Improper Lay Witness Opinion Fed. R. Evid. 802 – Hearsay |

Dated: December 30, 2022

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Mitchell N. Roth*
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com
tsmith@rothjackson.com

*Counsel for SunPath, Ltd.*

13

**JA687**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Objections to Plaintiff's Trial Exhibit List to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 30, 2022.

/s/ *Mitchell N. Roth*
Mitchell N. Roth