No. 23-1140

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

RUTH SMITH,

*Plaintiff-Appellant*,

v.

SUNPATH, LTD.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia

---

## JOINT APPENDIX
## Volume 2 of 3 (Pages JA689 to JA1338)

---

Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
Taylor T. Smith
(tsmith@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Ste. 300
Denver, Colorado 80210
Telephone: (720) 907-7628

*Attorneys for Appellant Ruth Smith*

Joseph P. Bowser
Carl Taylor Smith
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
mroth@rothjackson.com

*Attorneys for Appellee SunPath, Ltd.*

# TABLE OF CONTENTS

District Court Docket Sheet [1:22-cv-00081-LMB-WEF]...................................... 1

Complaint [ECF 1] ........................................................................... 11

August 5, 2022 Scheduling Order [ECF 25] ......................................... 26

Answer [ECF 26] ........................................................................... 27

Joint Discovery Plan [ECF 27] ........................................................ 37

September 7, 2022 Scheduling Order [ECF 31] .................................... 44

Plaintiff's Motion for Leave to Modify Case Schedule [ECF 32]........................ 49

    Exhibit A [ECF 32-1] ............................................................... 52
    Memorandum in support of Motion [ECF 34] ........................... 57

Defendant's Response in Opposition to Plaintiff's Motion to Modify Case
    Schedule [ECF 35] ................................................................... 66

    Exhibit to Defendant's Response in Opposition to Plaintiff's Motion to
        Modify Case Schedule [ECF 35-1] .................................. 71

Order Denying Plaintiff's Motion for Leave to Modify Case Schedule
    [ECF 37] ................................................................................. 80

Defendant's Motion to Compel [ECF 40] ........................................... 81

    Memorandum in Support of Motion [ECF 41]........................... 84
        Exhibit 1 [ECF 41-1]....................................................... 99
        Exhibit 2 [ECF 41-2]..................................................... 134
        Exhibit 3 [ECF 41-3]..................................................... 151
        Exhibit 4 [ECF 41-4]..................................................... 161
        Exhibit 5 [ECF 41-5]..................................................... 168
        Exhibit 6 [ECF 41-6]..................................................... 171

Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel
    [ECF 43] ............................................................................... 177

Exhibit A [ECF 43-1] ................................................................... 189

Exhibit B [ECF 43-2] ................................................................... 203

Exhibit C [ECF 43-3] ................................................................... 207

Defendant's Reply in Support of its Motion to Compel [ECF 44] ...................... 214

Exhibit 1 [ECF 44-1] ................................................................... 229

Order Granting in Part and Deny in Part Defendant's Motion to Compel
[ECF 46] ................................................................................ 230

Transcript of October 14, 2022 Hearing regarding Plaintiff's Motion for Leave to
Modify Case Schedule [ECF 47] ........................................................ 231

Transcript of November 18, 2022 Hearing regarding Defendant's Motion to
Compel [ECF 48] ...................................................................... 242

Plaintiff's Motion for Class Certification [ECF 49] ................................... 304

Memorandum in Support of Motion [ECF 50] ............................................ 307

Exhibit A [ECF 50-1] ................................................................... 329

Exhibit B [ECF 50-2] ................................................................... 337

Exhibit C [ECF 50-3] ................................................................... 347

Exhibit D [ECF 50-4] ................................................................... 371

Exhibit E [ECF 50-5] ................................................................... 375

Exhibit F [ECF 50-6] ................................................................... 379

Exhibit G [ECF 50-7] ................................................................... 385

Plaintiff's Witness List [ECF 52] ..................................................... 394

Defendant's Pretrial Disclosures [ECF 53] ............................................ 397

Plaintiff's Trial Exhibit List [ECF 54] .............................................. 404

Statement of Undisputed Facts [ECF 56] ............................................... 410

Defendant's Motion to Strike Plaintiff's Motion for Class Certification
[ECF 57] .............................................................................. 414

Memorandum in Support of Motion [ECF 58] ............................................ 417

Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike
[ECF 61] ............................................................................................... 433

Exhibit A [ECF 61-1] ......................................................................... 443

Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's
Motion to Strike Plaintiff's Motion for Class Certification [ECF 62] ....... 446

Exhibit A [ECF 62-1] ......................................................................... 457

Order Striking Plaintiff's Motion for Class Certification [ECF 64] .................... 466

Defendant's Motion for Summary Judgment [ECF 65] ....................................... 467

Memorandum in Support of Motion [ECF 66] ............................................ 470
Exhibit 1 [ECF 66-1] ......................................................... 500
Exhibit 2 [ECF 66-2] ......................................................... 516
Exhibit 3 [ECF 66-3] ......................................................... 525
Exhibit 4 [ECF 66-4] ......................................................... 555
Exhibit 5 [ECF 66-5] ......................................................... 582
Exhibit 6 [ECF 66-6] ......................................................... 618
Exhibit 7 [ECF 66-7] ......................................................... 632
Exhibit 8 [ECF 66-8] ......................................................... 636
Exhibit 9 [ECF 66-9] ......................................................... 637
Exhibit 10 [ECF 66-10] ...................................................... 643
Exhibit 11 [ECF 66-11] ...................................................... 647
Exhibit 12 [ECF 66-12] ...................................................... 652
Exhibit 13 [ECF 66-13] ...................................................... 654
Exhibit 14 [ECF 66-14] ...................................................... 660

Defendant's Objections to Plaintiff's Witness List [ECF 70] ............................. 669

Defendant's Objections to Plaintiff's Trial Exhibit List [ECF 71] ...................... 675

Plaintiff's Motion for Partial Summary Judgment [ECF 73] .............................. 689

Memorandum in Support of Motion [ECF 74] ............................................ 692
Exhibit A [ECF 74-1] ......................................................... 710
Exhibit B [ECF 74-2] ......................................................... 720
Exhibit C [ECF 74-3] ......................................................... 729
Exhibit D [ECF 74-4] ......................................................... 754

Exhibit E [ECF 74-5] ....................................................................... 758
Exhibit F [ECF 74-6] ....................................................................... 761
Exhibit G [ECF 74-7] ...................................................................... 766
Exhibit H [ECF 74-8] ...................................................................... 775
Exhibit I [ECF 74-9] ........................................................................ 787
Exhibit J [ECF 74-10] ...................................................................... 789
Exhibit K [ECF 74-11] ..................................................................... 795
Exhibit L [ECF 74-12] ...................................................................... 798
Exhibit M [ECF 74-13] ..................................................................... 802

Plaintiff's Opposition to Defendant's Motion for Summary Judgment
[ECF 76] ..................................................................................... 807

Exhibit A [ECF 76-1] ....................................................................... 833
Exhibit B [ECF 76-2] ....................................................................... 842
Exhibit C [ECF 76-3] ....................................................................... 854
Exhibit D [ECF 76-4] ....................................................................... 858
Exhibit E [ECF 76-5] ....................................................................... 864
Exhibit F [ECF 76-6] ....................................................................... 883
Exhibit G [ECF 76-7] ...................................................................... 888
Exhibit H [ECF 76-8] ...................................................................... 892
Exhibit I [ECF 76-9] ........................................................................ 902
Exhibit J [ECF 76-10] ...................................................................... 905
Exhibit K [ECF 76-11] ..................................................................... 907

Defendant's Reply in Support of Motion for Summary Judgment [ECF 80] ....... 910

Exhibit 1 [ECF 80-1] ........................................................................ 933
Exhibit 2 [ECF 80-2] ........................................................................ 948
Exhibit 3 [ECF 80-3] ........................................................................ 963
Exhibit 4 [ECF 80-4] ........................................................................ 970
Exhibit 5 [ECF 80-5] ........................................................................ 993

Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment
[ECF 81] ..................................................................................... 1001

Exhibit 1 [ECF 81-1] ........................................................................ 1032
Exhibit 2 [ECF 81-2] ........................................................................ 1063
Exhibit 3 [ECF 81-3] ........................................................................ 1070
Exhibit 4 [ECF 81-4] ........................................................................ 1093
Exhibit 5 [ECF 81-5] ........................................................................ 1103

Exhibit 6 [ECF 81-6] ............................................................... 1111
Exhibit 7 [ECF 81-7] ............................................................... 1121
Exhibit 8 [ECF 81-8] ............................................................... 1164
Exhibit 9 [ECF 81-9] ............................................................... 1264
Exhibit 10 [ECF 81-10] ............................................................. 1278
Exhibit 11 [ECF 81-11] ............................................................. 1283
Exhibit 12 [ECF 81-12] ............................................................. 1289
Exhibit 13 [ECF 81-13] ............................................................. 1296
Exhibit 14 [ECF 81-14] ............................................................. 1301
Exhibit 15 [ECF 81-15] ............................................................. 1304
Exhibit 16 [ECF 81-16] ............................................................. 1332

**Defendant's Motion to Strike Plaintiff's Declaration [ECF 82]** ....................... 1339

Memorandum in Support of Motion [ECF 83] ................................... 1342
    Exhibit 1 [ECF 83-1] ......................................................... 1349
    Exhibit 2 [ECF 83-2] ......................................................... 1356
    Exhibit 3 [ECF 83-3] ......................................................... 1363
    Exhibit 4 [ECF 83-4] ......................................................... 1386
    Exhibit 5 [ECF 83-5] ......................................................... 1396

**Defendant's First Motion in Limine [ECF 84]** ...................................... 1410

Memorandum in Support of Motion [ECF 85] ................................... 1413
    Exhibit 1 [ECF 85-1] ......................................................... 1426
    Exhibit 2 [ECF 85-2] ......................................................... 1436
    Exhibit 3 [ECF 85-3] ......................................................... 1444
    Exhibit 4 [ECF 85-4] ......................................................... 1451
    Exhibit 5 [ECF 85-5] ......................................................... 1487
    Exhibit 6 [ECF 85-6] ......................................................... 1501
    Exhibit 7 [ECF 85-7] ......................................................... 1516
    Exhibit 8 [ECF 85-8] ......................................................... 1523

**Defendant's Second Motion in Limine [ECF 88]** ................................... 1530

Memorandum in Support of Motion [ECF 89] ................................... 1533
    Exhibit 1 [ECF 89-1] ......................................................... 1544
    Exhibit 2 [ECF 89-2] ......................................................... 1551
    Exhibit 3 [ECF 89-3] ......................................................... 1558
    Exhibit 4 [ECF 89-4] ......................................................... 1572
    Exhibit 5 [ECF 89-5] ......................................................... 1579

Exhibit 6 [ECF 89-6] ...................................................................... 1596
Exhibit 7 [ECF 89-7] ...................................................................... 1606

Transcript of December 22, 2022 Hearing [ECF 91] ........................ 1610

Plaintiff's Opposition to Defendant's First Motion in Limine [ECF 92] .......... 1616

Exhibit A [ECF 92-1] .................................................... 1631
Exhibit B [ECF 92-2] .................................................... 1635
Exhibit C [ECF 92-3] .................................................... 1638
Exhibit D [ECF 92-4] .................................................... 1647

Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Declaration
[ECF 93] ........................................................................... 1664

Exhibit A [ECF 93-1] .................................................... 1673
Exhibit B [ECF 93-2] .................................................... 1676
Exhibit C [ECF 93-3] .................................................... 1679

Plaintiff's Opposition to Defendant's Second Motion in Limine [ECF 94] ....... 1689

Exhibit A [ECF 94-1] .................................................... 1701
Exhibit B [ECF 96] ...................................................... 1708
Exhibit C [ECF 94-3] .................................................... 1725
Exhibit D [ECF 94-4] .................................................... 1728
Exhibit E [ECF 94-5] .................................................... 1745

Plaintiff's Reply in Support of Motion for Partial Summary Judgment
[ECF 95] ........................................................................... 1762

Defendant's Reply in Support of First Motion in Limine [ECF 100] ............... 1782

Exhibit 1 [ECF 100-1] .................................................. 1790

Defendant's Reply in Support of Second Motion in Limine [ECF 101] ........... 1794

Defendant's Reply in Support of Motion to Strike Plaintiff's Declaration
[ECF 102] .......................................................................... 1801

Exhibit 1 [ECF 102-1] .................................................. 1808

Order Granting Defendant's Motion for Summary Judgment and Pretrial
    Evidentiary Motions and Denying Plaintiff's Motion for Partial Summary
    Judgment [ECF 104]................................................................. 1819

Clerk's Judgment [ECF 105] ............................................................ 1820

Notice of Appeal [ECF 106]............................................................. 1821

Transcript of January 27, 2023 Hearing [ECF 110] ........................................... 1823

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT II OF HER COMPLAINT

Plaintiff Ruth Smith ("Plaintiff"), by and through her counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 56 for entry of summary judgment in favor of Plaintiff with respect to Count II of her Complaint. The grounds for this Motion are set forth more fully in the memorandum in support of this motion, filed herewith.

In accordance with Local Rule 7(E), Plaintiff certifies that she conferred with SunPath regarding the requested relief. SunPath does not consent to the requested relief.

Dated: January 6, 2023

**RUTH SMITH**,

By: _/s/ Francis J. Driscoll, Jr._
      One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com

1

**JA689**

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff

**JA690**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 6, 2023.

/s/ Francis J. Driscoll, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

      Plaintiff,

      v.

**SUNPATH, LTD.**, a Massachusetts corporation,

      Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT II OF HER COMPLAINT

### I.  INTRODUCTION

Defendant SunPath, Ltd. ("Defendant" or "SunPath") sells and administers vehicle service contracts ("VSCs") to consumers nationwide. Rather than conduct its sales in-house, SunPath relies exclusively on third-party marketers to sell its VSCs on its behalf and for its benefit. One of those marketers, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), placed over one hundred calls to Plaintiff Ruth Smith ("Plaintiff" or "Smith") to solicit her to purchase a SunPath VSC without first securing any consent—a clear violation of the Virginia Telephone Privacy Protection Act ("VTPPA"). As such, Plaintiff now seeks summary judgment with respect to Count II of her Complaint.

The undisputed record is clear that Plaintiff is entitled to summary judgment with respect to Count II. That is, despite registering her telephone number on the National Do No Call Registry, American Protection placed 172 calls to Plaintiff for the purpose of soliciting her to purchase SunPath's VSCs. And neither American Protection nor SunPath has any record of prior express invitation, permission, or consent to place the calls at issue. Plaintiff does not, however, seek

1

recovery for all of the calls. Rather, she concedes that she feigned an interest in SunPath's VSCs during a May 28, 2020 call to ascertain the identity of the company placing the annoying calls. As a result, she concedes that she created an established business relationship ("EBR") with American Protection on that date. Nevertheless, she later terminated that EBR on June 11, 2020, by communicating, in writing, her lack of interest in the VSCs being pitched and clearly requesting that American Protection "not call [her] anymore." Consequently, Plaintiff agrees that the calls placed throughout the duration of the EBR are not actionable. This leaves 122 telephone solicitations for which Plaintiff seeks judgment in her favor.

SunPath is liable for the calls at issue. While SunPath will argue that its hands-off approach to monitoring its marketers shields it from liability, that is of course untrue: the VTPPA expressly holds companies like SunPath jointly and severally liable for unlawful calls when it hires third parties to place the offending calls on its behalf or for its benefit. Here, there is no question that SunPath retained American Protection to place telemarketing calls to solicit clients for its VSCs. Indeed, the contract between the two parties is titled "Call Center Marketing Agreement". The record is also clear that SunPath had knowledge of and consented to American Protection's calling practices. Put simply, SunPath is a "seller" as defined by the VTPPA and should be held jointly and severally liable for the 122 unlawful calls.

For these reasons and as set forth below, the Court should grant summary judgment in favor of Plaintiff with respect to Count II of her Complaint.

## II.     LISTING OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56(B), the following undisputed material facts support the instant Motion:

***SunPath's enters into an agreement with American Protection to place telemarketing calls to solicit sales of its vehicle service plans***

2

1.      Defendant SunPath is company that develops and administers vehicle service contracts ("VSCs") to consumers nationwide. (*See* Call Center Marketing Agreement, attached hereto as Ex. A at pg. 1; *see also* Declaration of Andrew Garcia, Dkt. 11-1 ¶ 4.)

2.      Rather than conduct its sales in-house using employees, SunPath contracts with third-party marketers to conduct telemarketing on its behalf. (*See* SunPath Depo. Tr., excerpts of which are attached hereto as Ex. B, at 35:19-25; Dkt. 11-1 ¶¶ 7, 9.) SunPath requires its marketers to agree to its form contract, named the "Call Center Marketing Agreement". (Ex. A at pg. 1.)

3.      SunPath's designee testified that it derives 100 percent of its revenue from third party sales of its VSCs. (SunPath Depo.Tr., Ex B, at 71:12-19.).

4.      On June 29, 2017, SunPath entered into a call center marketing agreement with Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (Ex. A, pg. 1.)

5.      The Call Center Marketing Agreement requires American Protection to "actively market" SunPath's products and limits the territory in which it is permitted to solicit customers. (Ex. A, pg. 1).

6.      Additionally, the agreement states that SunPath will provide "Promotional Materials" to American Protection, which cannot be altered, substituted, or supplemented without SunPath's written authorization. (*Id.*)

7.      The Call Center Marketing Agreement also requires American Protection to perform acts necessary to protect and safeguard the interests of SunPath, and requires it to maintain and service customers in accordance with SunPath's policies and procedures. (*Id.*)

8.      Between 2017 and 2022, American Protection engaged in soliciting sales on behalf of SunPath. (AP Depo Tr., excerpts of which are attached hereto as Ex. C, at 25:6-15; *see also*

3

Statement of Uncontested Facts, Dkt. 56 ¶¶ 5-6.)

9.      SunPath concedes that during all times relevant to this complaint "American Protection was authorized to sell SunPath-related products". (Statement of Uncontroverted Facts, Dkt. 56 ¶ 5.)

10.     To sell the VSCs, American Protection contacted potential clients by telephone. (AP Depo Tr., Ex C, at 24:5-18; 32:1-8.) American Protection would also mail potential clients postcards and letters with the hope that the recipients would call American Protection. (*Id.* at 76:19-77:3.)

11.     Once a potential client is located, American Protection would gather necessary information from the potential client and submit the information for approval or rejection to SunPath. (*Id.* at 30:16-22.)

12.     If SunPath approves the sale, then American Protection is responsible for collecting monthly payments from client under the policy. (*Id.* at 61:24-62:2) American Protection is required to pay SunPath for a set amount, or the "cost", of the policy. (*Id.* at 61:5-23.) American Protection then continues to service the client's contract throughout the life of the agreement. (*Id.* at 60:6-19.)

13.     SunPath's Call Center Marketing Agreement specifies how American Protection is compensated for the sale of its VSCs. (Ex. A, at pg. 2.) Specifically, the agreement states in relevant part:

> 13) [American Protection's] compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by [American Protection] and the Net Price as supplied by [SunPath], and at all times inclusive of any down payment, the minimum of which is five percent (5%). For the purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to [SunPath] for approval and approved by [SunPath] accompanied by full payment or financing approved by [Sunpath].

4

**JA695**

14) Payment or realization of compensation to [American Protection] is the sole responsibility of [American Protection] and [American Protection] shall indemnify and hold [SunPath] harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by [SunPath] as a result of any claim asserted by [American Protection] that compensation had not been paid.

15) The compensation paid or realized by [American Protection] constitutes all compensation paid or payable to [American Protection] for services pursuant hereto, including all expenses incurred by [American Protection] in the performance of its duties as detailed herein. In all cases [American Protection] shall be solely responsible for all of its expenses.

(*Id.* at pg. 2.) Hence, American Protection was compensated for each sale by receiving the difference between the sale price and the "net price" set by SunPath for the sale of its VSCs. (*Id.*; *see also* AP Depo. Tr., Ex C, at 46:20-47:8.) Under the Call Center Marketing Agreement, American Protection is required collect the payments from the customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. A, at pg. 2.)

14.     SunPath designated American Protection as a licensed representative or agent in the State of Florida to sell its auto warranties. (*See* Florida Licensee Detail, attached hereto as Ex. D; September 20, 2021 Re-Appointment Email, attached hereto as Ex. E; SunPath Depo. Tr., Ex. B, at 29:18-32:14 (explaining SunPath's involvement in the Florida appointment and licensing process); AP Depo. Tr., Ex. C, at 39:15-23 (describing SunPath's appointment of American Protection as its "agent" in the State of Florida).

15.     During the course of its relationship, SunPath approved hundreds of contracts that were sold by American Protection. (SunPath Depo. Tr., Ex. B, at 40:10-22.).

16.     American Protection communicated with SunPath "weekly" regarding various matters, including "business matters, production information, product pricing . . ., [and] claim information." (*See* AP Depo. Tr., Ex. C, at 26:4-27:22 (discussing American Protection's communications with SunPath's employees).

17.     SunPath would inform American Protection of certain individuals who should be

added to their DNC lists. (*Id.* at 43:9-14.)

*Plaintiff receives hundreds of calls placed by American Protection soliciting the sale of SunPath's vehicle service contracts*

18. Plaintiff is a resident of the State of Virginia. (Statement of Uncontested Facts, Dkt. 56 ¶ 1.)

19. Plaintiff is the primary and customer user of the telephone number ending in 9650, which also has a Virginia area code. (*See* Plaintiff's Response to SunPath's Interrogatory No. 10, attached hereto ax Ex. F.)

20. Plaintiff registered her telephone number on the National DNC Registry on November 8, 2019. (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 8.)

21. Between May 26, 2020 and August 18, 2020, Plaintiff received 172 calls initiated by American Protection. (*See* Summary of Five9 call records relating to Plaintiff's phone number, attached hereto as Ex. G[1]; *see also* Declaration of Ruth Smith ("Smith Decl."), attached hereto as Ex. H ¶ 4.)

22. Plaintiff placed one call to American Protection on May 26, 2020, which went unanswered. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 2; *see also* Smith Decl., Ex. H ¶ 5.)

23. Upon receiving a call placed by American Protection on May 28, 2020, at 12:51 p.m. ET, Smith feigned an interest in the products being offered by American Protection to ascertain the identity of the calling entity. (*See* Smith Decl., Ex. H ¶ 6; *see also* Notes of May 28, 2020 Call, attached hereto as Ex. I; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 9.)

---

[1] The Five9 Call Records data file is available in native format for inspection by the Court upon request.

24.     As a result of her feigned interest, American Protection sent a follow up email to Smith on May 28, 2020, which identified American Protection at the caller and contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, attached hereto as Ex. J; *see also* AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system)).

25.     On June 11, 2020, at 8:49 a.m. ET, Smith sent an email to American Protection which stated that she was no longer interested in purchasing any VSC and stated, in no uncertain terms, "Do not call me anymore." (June 11, 2020 Email, attached hereto as Ex. K.)

26.     Despite the June 11, 2020 email, American Protection continued to place 116 calls to Plaintiff between June 11, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.)

27.     Even after July 11, 2020, American Protection continued to place 50 telephone solicitation calls to Plaintiff. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.)

28.     American Protection conceded that it lacked any written evidence of prior express invitation or permission to place calls to Plaintiff and was not aware of where it obtained her contact information. (AP Depo. Tr., Ex. C, at 155:18-156:2; 100:5-16.)

29.     SunPath likewise does not possess any record of prior express invitation, permission, or consent for it to place telemarketing calls to Plaintiff. (Statement of Uncontested Facts, Dkt. 56 ¶ 9.)

30.     American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr.,

7

**JA698**

excerpts of which are attached hereto as Ex. L, at 53:12-21 ("Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath.").

Further, the May 28, 2020 follow-up email that American Protection sent to Plaintiff contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J; *see also* AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system)).

Added to this, American Protection's internal CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) The CRM system reveals no other VSC quotes. (*See* CRM Screenshots, Ex. M, at pg. 1.)

Additionally, American Protection's designee testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase only that company's plan. (AP Depo. Tr., Ex. C, at 35:3-10) If the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.* at 37:11-15.)

31.    Plaintiff never purchased a SunPath product (Statement of Uncontested Facts, Dkt. 56 ¶ 12).

## III. ARGUMENT

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Sillah v. Azar*, 774 F. App'x 165, 166 (4th Cir. 2019) (citing *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56(a))). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKnight v. Pickens Police Dep't*, No. 22-1427, 2022 WL 17729227, at \*1 (4th Cir. Dec. 16, 2022) (citing *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018)). To survive summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* (citing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

As explained below, Plaintiff is entitled to summary judgment with respect to Count II of her Complaint.

### A. No reasonable juror reviewing the record could conclude that the calls at issue did not violate VA. CODE ANN. § 59.1-514.

The VTPPA prohibits "telephone solicitors" from initiating "telephone solicitation calls" to numbers registered on the National DNC Registry. VA. CODE ANN. § 59.1-514(B) (West). The Act defines a "telephone solicitor" as "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." *Id.* § 59.1-510 (West). Further, a "telephone solicitation call" is defined as:

(i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or

9

to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

*Id.* However, the definition shall not include a telephone call made to any person: (1) with that person's "prior express invitation or permission as evidenced by a signed, written agreement"; (2) with whom "the person on whose behalf the telephone call is made has an established business relationship"; or (3) with whom "the telephone solicitor making the telephone call has a personal relationship." *Id.* § 59.1-514 (West) (emphasis added). However, "[t]he exemption for an established business relationship or a personal relationship shall not apply when the person called previously has stated that he does not wish to receive telephone solicitation calls as provided in subsection A." *Id.*

The undisputed evidence demonstrates that Plaintiff received calls in violation of the VTPPA. That is, on November 8, 2019, Plaintiff registered her telephone number on the National DNC Registry.[2] (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 8.) Notwithstanding her registration, Plaintiff received 172 calls initiated by American Protection directed to her cellular telephone between May 26, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 4.) All of the calls were placed by American Protection for the purpose of soliciting Plaintiff to purchase a SunPath VSC. (*See* Smith Depo. Tr., Ex. L, at 53:12-21; *see also* May 28, 2020 Email and Link to American Protection Webpage, Ex. J (email containing link soliciting the sale of SunPath's VSC); *see also*

---

[2] Plaintiff is a Virginia resident whose cellular telephone number ending in 9650 contains a Virginia area code. (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 1; Plaintiff's Response to SunPath's Interrogatory No. 10, Ex. F.)

10

AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system); *also compare* CRM Screenshots, Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J (revealing that American Protection's CRM system only created quotes for SunPath's "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC)). Moreover, American Protection conceded that it lacked any written evidence of prior express invitation or permission to place calls to Plaintiff and was not aware of where it obtained her contact information. (AP Depo. Tr., Ex. C, at 155:18-156:2; 100:5-16.) SunPath likewise does not possess any record of prior express invitation, permission, or consent for it to place telemarketing calls to Plaintiff. (Statement of Uncontested Facts, Dkt. 56 ¶ 9.) Further, neither SunPath nor American Protection has put forth any evidence of a "personal relationship" with Smith. These are clear cut violations of the VTPPA.

Plaintiff does not, however, seek damages for all of the calls at issue. Of the three exceptions to the definition of a "telephone solicitation", only the EBR defense has any application in this case. The VTPPA defines an EBR as:

> [A] relationship between the called person and the person on whose behalf the telephone solicitation call is being made or initiated based on (i) the called person's purchase from, or transaction with, the person on whose behalf the telephone solicitation call is being made or initiated within the 18 months immediately preceding the date of the call or (ii) the called person's inquiry or application regarding any property, good, or service offered by the person on whose behalf the telephone solicitation call is being made or initiated within the three months immediately preceding the date of the call.

VA. CODE ANN. § 59.1-510 (West) (emphasis added). Since the parties agree that Plaintiff never purchased a SunPath product (dkt. 56 ¶ 12), SunPath must rely on Smith's inquiry or application regarding its products. Whether a consumer's inquiry is sufficient to establish an EBR turns on the nature of the inquiry, which "must … be such to create an expectation on the part of the

11

consumer that a particular company will call them." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019) (citing 68 Fed. Reg. 44,144) (applying the TCPA's EBR definition).[3] "'[A]n inquiry regarding a business's hours or location,' for example, would not establish an EBR." *Id.*

Relevant here, upon answering a call on May 28, 2020, at 12:51 p.m. ET, Smith feigned an interest in the products being offered by American Protection to ascertain the identity of the calling entity.[4] (Smith Decl., Ex. H ¶ 6; *see also* Notes of May 28, 2020 Call, Ex. I; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 9.) As a result of her feigned interest, American Protection sent a follow up email to Smith on May 28, 2020, which identified American Protection at the caller and again solicited her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) At this point, Plaintiff concedes that she established a business relationship with American Protection sufficient to permit it to continue to place calls to her. *See Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4-5 (S.D. Ohio Sept. 30, 2019) (finding a feigned inquiry regarding a company's products to be sufficient to establish an EBR). On June 11, 2020, at 8:49 a.m. ET, after receiving additional calls, Smith sent an email to American Protection which stated that she was no longer interested in purchasing any VSC and stated "Do not call me anymore." (June 11, 2020 Email, Ex. K.) At this point, Plaintiff terminated her prior EBR with American Protection and all subsequent calls are unlawful. *See* VA. CODE ANN. § 59.1-514 (West). However, between May 28, 2020 and

---

[3] The VTPPA's EBR definition is substantially similar to the Telephone Consumer Protection Act's definition of an EBR. *See* 47 C.F.R. § 64.1200(f)(5).

[4] SunPath claims that Plaintiff established an EBR on May 26, 2020 by placing a call to American Protection. (Dkt. 66 pg. 15.) As set forth more fully in Plaintiff's opposition to SunPath's motion for summary judgment, Plaintiff could not have *inquired* into SunPath's products during the May 26th call because the call was never answered. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 2; *see also* Smith Decl., Ex. H ¶ 5.)

12

June 11, 2020, Plaintiff had an EBR with American Protection, and Plaintiff agrees that the calls placed during this timeframe are not actionable.

Despite her termination of the EBR on June 11, 2020, American Protection continued to place 116 calls to Plaintiff between June 11, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.) While SunPath has sought to read a 30-day grace period into the VTPPA to minimize the damages associated with these calls (dkt. 66, pg. 16), the VTPPA contains no such provision. Instead, and as explained more fully in her opposition to SunPath's motion for summary judgment, the VTPPA makes clear that an EBR exemption does not apply where the person "**previously** has stated that he does not wish to receive telephone solicitation calls as provided in subsection A." Va. Code Ann. § 59.1-514 (West) (emphasis added). Consequently, Plaintiff seeks summary judgment with respect to 122 calls (including 6 calls prior to the May 28, 2020 inquiry and 116 calls placed to her after June 11, 2020 termination of the EBR). All of these calls were unlawful "telephone solicitations" as defined by the VTPPA.[5]

Because Plaintiff received 122 telephone solicitations in violation of the VTPPA, Plaintiff is entitled to summary judgment with respect to Count II of her complaint.

## B. Because SunPath retained American Protection to solicit consumers via telemarketing, it can be held liable as a "seller" for the violations of the Act.

The VTPPA provides that the seller "on whose behalf or for whose benefit" the unlawful call was made and the solicitor who initiated the call "shall be jointly and severally liable for such violation." VA. CODE ANN. § 59.1-514.1(A). A "seller" is defined as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property,

---

[5] As explained in Plaintiff's opposition to SunPath's motion for summary judgment, even if the Court finds that a 30-day grace period applies to the termination of an EBR, there are still 50 telephone solicitation calls more than 30-days after Plaintiff's stop request.

13

goods, or services is made or initiated." *Id.* § 59.1-510 (West). The Act further applies a presumption of responsibility to companies like SunPath whose products are offered to consumers via telemarketing, and as a result of that presumption, Defendant "shall be" jointly and severally liable for the calls, regardless of any agency relationship as follows:

> A telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call.

*Id.* § 59.1-514.1(B). To rebut this presumption, the seller must show by "clear and convincing evidence" that: (1) it did not retain or request the solicitor to make such calls on its behalf or for its benefit; and (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B).

In this case, the undisputed evidence demonstrates that SunPath should be held liable for the calls at issue as a "seller." Specific to the calls placed to Plaintiff, American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Indeed, Plaintiff testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. L, at 53:12-21.) Added to this, American Protection sent Plaintiff a follow-up email, which contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) Finally, American Protection's CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) Even if SunPath was correct that its name was not used during the calls (it is not correct), it makes no difference. Rather, the presumption applies to calls offering or

14

advertising a company's *products* regardless of the use of its name. Because the calls at issue advertised SunPath's products, the presumption that the calls were made on behalf of or for the benefit of SunPath applies.

Try as it may, SunPath cannot overcome the presumption of responsibility. Indeed, SunPath expressly retained American Protection for the express purpose of "actively" soliciting the sale of its auto warranties via telemarketing. (Call Center Marketing Agreement, Ex. A; Dkt. 11-1 ¶ 9.) It further concedes that during all times relevant to this complaint "American Protection was authorized to sell SunPath-related products". (Dkt. 56 ¶ 5.) And it designated American Protection as a licensed representative or agent in the State of Florida to sell its auto warranties. (*See* Florida Licensee Detail, Ex. D; September 20, 2021 Re-Appointment Email, Ex. E; SunPath Depo. Tr., Ex. B, at 29:18-32:14; AP Depo. Tr., Ex. C, at 39:15-23.) Put simply, SunPath cannot credibly contend that it did not "retain or request" American Protection to place the calls at issue on its behalf. This alone is enough to maintain application of the VTPPA's presumption.

Nevertheless, even if SunPath were to argue that it did not "request or retain" American Protection to sell its products, it also cannot credibly claim that the calls were made without its "knowledge or consent." *See* VA. CODE ANN. § 59.1-514.1(B). During the course of its relationship, SunPath approved hundreds of contracts that were sold by American Protection. (SunPath Depo. Tr., Ex. B, at 40:10-22.). Throughout that time, American Protection communicated with SunPath frequently regarding various matters. (*See* AP Depo. Tr., Ex. C, at 26:4-27:22 (discussing American Protection's communications with SunPath's employees on a "weekly" basis). Finally, SunPath would also inform American Protection of certain individuals who should be added to their DNC lists. (*Id.* at 43:9-14.) Together, the undisputed facts demonstrate that in addition to retaining and requesting American Protection to place

15

telemarketing calls on its behalf, SunPath also had knowledge that American Protection was in fact placing calls to solicit the sale of its VSCs and consented to its practices by accepting and approving each contract that it sold.

Accordingly, the VTPPA's presumption applies to SunPath as a "seller" under the Act, such that it can be held "jointly and severally liable" for any calls by its telemarketers that violated the Act. The Court should hold therefore hold SunPath liable for the violations of the VTPPA stemming from the calls placed by American Protection.

**D.      The Court should award damages and attorneys' fees and costs to Plaintiff.**

The VTPPA authorizes any natural person who is aggrieved by a violation of the Act to seek damages in the sum of "$500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation." VA. CODE ANN. § 59.1-515(A). As detailed above, the undisputed evidence establishes that Plaintiff received 122 telephone solicitation calls in violation of the VTPPA. Applying the VTPPA's damages provisions, the Court should award Plaintiff $601,500 in damages.[6]

Additionally, the VTPPA also provides that an aggrieved person may be awarded their attorneys' fees and costs. *Id.* § 59.1-515 (C). Accordingly, the Court should also award Plaintiff her attorneys' fees and costs for prosecuting this action as provided by the statute. Pursuant to Fed. R. Civ. P. 54(d)(2)(B), Plaintiff will file a motion supporting her request for attorneys' fees within 14 days of entry of final judgment.

**IV.     CONCLUSION**

Summary judgment should be granted in Plaintiff's favor. American Protection placed

---

[6] If the Court applies the 30-day grace period following Plaintiff's stop request, the Court should award $271,500 in damages for 56 telephone solicitations in violation of the VTPPA, including 6 calls prior to May 28, 2020 and 50 calls after July 11, 2020.

more than one hundred calls to Plaintiff for the express purpose of selling SunPath's VSCs. SunPath cannot carry its burden to demonstrate that an EBR exists for the 122 calls in violation of the Act. Nor can SunPath carry its burden to demonstrate that it is not a "seller" as defined by the VTPPA. Accordingly, the Court should grant summary judgment in favor of Plaintiff and award such relief as it deems necessary and just.

Dated: January 6, 2023

**RUTH SMITH**,

By: _/s/ Francis J. Driscoll, Jr._
       One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 6, 2023.

*/s/ Francis J. Driscoll, Jr.*

18

**JA709**

Exhibit A

## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement. CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products. This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

**JA711**

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%).   For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company.

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid.

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein.  In all cases CCM shall be solely responsible for all of its expenses.

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year.  This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below.  Written notice shall be made at least thirty (30) days prior to the end of the current term



## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term.  Written notice shall be sent via registered mail; return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may  be terminated immediately for cause upon written notice from Company to CCM if:

    i)        CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

    ii)       An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

    iii)      Breach by CCM of any provisions contained herein;

    iv)      CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

    v)      CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination.  Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer, service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20.  The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed.  Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

## NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

If to the Company:              SunPath, LTD
                                50 Braintree Hill Office Park – Suite 310
                                Braintree, MA 02184

If to the CCM:                  Chukran Management Group, LLC
                                10627 Cocosolo Way
                                Boynton Beach, FL 33437
                                Attention : Kobi Chukran

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided.  The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice.  Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

## INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company.  Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM.

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature, including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including, but not limited to any action, suit, or other proceeding which may be brought in connection therewith, arising out of or related to:  (i) CCM's sale of Product; (ii) the negligent acts, omissions or intentional wrongdoing of CCM; (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services; or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

## MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company.  The Company may assign this Agreement without CCM's consent.  Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement.  The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

4

**JA714**

24) Property Rights.  Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company.  This provision shall survive the expiration or termination of this Agreement.

25) No Benefit to Third Parties.  The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) Changes and Waiver.  This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM.  The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) Entire Agreement.  This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby.  All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) Governing Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) Severability.  If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired; provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) Law and License.  Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement.  Facsimile signatures will be accepted by both parties as execution original signatures.

32) Announcements.   The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) Jurisdiction.  The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                                   CHUKRAN MANAGEMENT GROUP, LLC


X: _____                      X: _____

Name: _____                       Name: _Kobi chukran_____

Date: _____                       Date: _6/29/17_____

5

**JA715**

## ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement:

1) VSC Product - Horizon
2) VSC Product – Mileage Plus
3) VSC Product – Secure Advantage

6

## ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to:

All states in the continental US, except: TBD

**JA717**

EXHIBIT 1 – STANDARDS of CONDUCT

See attached

8



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD, or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD, or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

Very truly yours,

Andrew Garcia
President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

25 BRAINTREE HILL PARK  //  SUITE 100  //  BRAINTREE, MA 02184  //  888 990 7786  //  FAX 855.786.7500

**JA719**

# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    ALEXANDRIA DIVISION
 4   RUTH SMITH, individually and
     on behalf of all others      Case No. 1:22-cv-00081-LMB-WEF
 5   similarly situated,
 6        Plaintiff,
 7   vs.
 8   SUNPATH, LTD, a Massachusetts
     corporation,
 9
          Defendant.
10   _____
11      VIDEOCONFERENCED 30(b)(6) DEPOSITION OF SUNPATH, LTD
                      (through ANDREW GARCIA)
12                     December 8, 2022
13   _____

     VIDEOCONFERENCED APPEARANCES:
14
     ON BEHALF OF THE PLAINTIFF:
15           PATRICK H. PELUSO, ESQ.
             Woodrow & Peluso, LLC
16           3900 E. Mexico Avenue, Suite 300
             Denver, Colorado  80210
17           Phone: 720-213-0675
             Email: ppeluso@woodrowpeluso.com
18
     ON BEHALF OF THE DEFENDANT:
19           GREGORY CAFFAS, ESQ.
             Roth Jackson Gibbons Condlin
20           8200 Greensboro Drive, Suite 820
             McLean, Virginia  22102
21           Phone:  703-485-3535
             Email:  gcaffas@rothjackson.com
22
     Also Present:  Paul Sporn, Esq.
23
24
25
                                              Page 1
```

1    can answer to the extent you're able to, Andrew.

2              A.   I assume so.

3              Q.   (By Mr. Peluso)   Okay.   All right.   We can

4    move on.   Just real quickly, this document that I've

5    labeled Exhibit 4, can you see it?

6              A.   Yep.

7              Q.   It is a two-, three-page document.   I think

8    it's three, but the third page is just blank.   Have you

9    seen this before?

10             A.   I don't believe so, no.

11             Q.   Okay.   Well, let's take -- take a look at

12   it together then.   Okay?

13                  You'll see that it says "Licensee Search"

14   at the top.   And then it says -- you notice there's a

15   stamp that says "Chief Financial Officer, Florida

16   Department of Financial Services."   Do you see that?

17             A.   Yep.

18             Q.   So I'll represent to you that this is a --

19   a printout -- a screenshot of a website operated by the

20   Florida Department of Financial Services where you're able

21   to search for licensees in that state.   And as you'll see,

22   the -- the first page, you know, the title says "Licensee

23   Detail" and then there's a license number, and then a full

24   name of Chukran Management Group, LLC.   Do you see that?

25             A.   Yep.

Veritext Legal Solutions
303-988-8470
JA722

```
 1              Q.    So we're looking at the licensee details

 2    for Chukran Management Group, which is the entity that's a

 3    party to the contract that we just reviewed as Exhibit 3.

 4              A.    Okay.

 5              Q.    Scrolling down, it's kind of split between

 6    the first and second page, but, you know, it says valid

 7    licenses.  The type of license is automobile warranty.

 8    And then it says active appointments, automobile warranty,

 9    and then there's two companies listed there.  One says

10    Wesco Insurance Company, and then the second one says

11    SunPath Ltd Corp d/b/a SunPath Ltd Corp of Delaware.

12              Do you see that?

13              A.    Yep.

14              Q.    Safe to say that that is your company,

15    SunPath?

16              A.    Yes.

17              Q.    Do you have any knowledge of -- of what a

18    licensee appointment in this context means and why SunPath

19    would be listed?

20              A.    Yes.

21              Q.    Can you explain that to me?

22              A.    Because Florida requires that they be

23    appointed to sell there if they want to sell products in

24    Florida.

25              Q.    Okay.  So is it -- is it accurate to say
```

Page 30

```
 1    that in order to sell SunPath products in Florida, there

 2    has to be a licensee appointment affiliating the entity

 3    with SunPath?

 4                MR. CAFFAS:  I'm going to object to the

 5    extent that it calls for a legal conclusion, object to the

 6    extent it's not relevant, and object to the extent it

 7    calls for speculation.  But, Andrew, you can answer to the

 8    extent you're able to.

 9         A.    Yeah.  I know that they have to get

10    appointed and they need to have a license for Florida, but

11    what that means legally, I have no idea.

12         Q.    (By Mr. Peluso)  Right.  Okay.  Is SunPath

13    involved in the process of being listed as an active

14    appointment with the State of Florida, or is that

15    something that the third party just kind of handles?

16                MR. CAFFAS:  Before you answer, Andrew,

17    I'll also raise the objection of relevance before you

18    answer, but you can answer to the extent you're able to.

19         A.    We confirmed that they obtained the license

20    when they request signup to, you know, get access to our

21    products.

22         Q.    (By Mr. Peluso)  Is there any paperwork

23    that SunPath has to file with the State of Florida in

24    order to get this appointment active?

25                MR. CAFFAS:  Objection again, relevance and
```

Page 31

1    to the extent it calls for speculation.  You can answer,

2    Andrew.

3            A.    Yeah.  Our attorney handles it after we

4    find out if they have a license.  I don't know the exact

5    process.

6            Q.    (By Mr. Peluso)  Okay.  But SunPath is

7    involved in that appointment process, even if it's just

8    handled by SunPath's in-house attorney; correct?

9            MR. CAFFAS:  Objection.  Again, relevance.

10   Objection on the grounds of speculation and on the grounds

11   that it misstates the witness's testimony.  You can answer

12   to the extent you're able to, Andrew.

13           A.    I know we have to get the license from the

14   entity, and I don't know what happens after that.

15           Q.    (By Mr. Peluso)  Would anyone at SunPath

16   know?

17           A.    Our attorney.

18           Q.    Okay.  What is that attorney's name?

19           A.    Paul Sporn.

20           Q.    And then on that "Active Appointment" tab

21   there, you know, next to SunPath, it says there's an issue

22   date of 9/20/2021, and then I guess it expires on

23   9/30/2023.  Do you see that?

24           A.    Yeah.

25           Q.    If we go down to sort of the bottom of that

                                                    Page 32

1    like to go through these topics with you.

2                Topic 1 says, "All telephone calls you or

3    any third party acting on your behalf caused to be made to

4    plaintiff."

5                Did SunPath place any calls to plaintiff?

6        A.    No.  We don't -- we don't make any phone

7    calls unless it's for people who have called us about

8    claims.

9        Q.    Right.  That's my understanding, as well.

10   So SunPath does not do outbound telemarketing itself;

11   correct?

12       A.    No.  Nobody makes calls on our behalf,

13   either.

14       Q.    Okay.  I think we could disagree on that,

15   but --

16              MR. CAFFAS:  Objection to form.

17       Q.    (By Mr. Peluso)  Any legal conclusions

18   about "on behalf of" are not really what I'm asking about.

19              So safe to say SunPath doesn't make

20   telemarketing calls?  Any calls that it would make would

21   just be sort of direct calls with its customers if someone

22   calls in with an issue about a claim or something like

23   that?

24       A.    Yes.  And no one makes calls for us,

25   either.  On behalf.

                                            Page 35

```
 1    CRM or somehow --
 2            A.    We don't -- we don't have any access to
 3    that.  The CRM will send us a file weekly of sales that
 4    it's gotten from the contractor.
 5            Q.    Those weekly files, are they just sent over
 6    email?
 7            A.    I do not believe they are sent by email.
 8    They are more secure than that.  They are put into like
 9    FTP folders.
10            Q.    Okay.  Approximately how many persons
11    during the duration of this relationship were sold a
12    SunPath service contract by American Protection and then
13    had their -- had that sale reflected in these weekly file
14    transfers?
15            MR. CAFFAS:  Before you answer, Andrew,
16    I'll object to relevance.  I'll object to the extent it
17    calls for speculation.  You can answer to the extent
18    you're able.
19            A.    I don't know.  Probably in the range of a
20    few hundred, maybe.
21            Q.    (By Mr. Peluso)  A few hundred total?
22            A.    I said a few hundred.  I don't -- I don't
23    know offhand how many contracts they actually sold, but
24    it's a pretty small amount.
25            Q.    Okay.  I just want to make sure we're clear
```

Page 40

1    with you about is Topic 24 here, that says, "Your sources

2    of revenue, including the portion of your revenue that is

3    generated from sales made by third parties acting on your

4    behalf."

5                    So just, you know, to sort of -- to frame

6    this a little bit, I'm not asking you to disclose

7    SunPath's total revenue; right?  Give me a number.  I'm

8    not asking that.  And I -- I understand sort of your

9    consistent statement through this deposition that third

10   parties don't act on your behalf.  So let's sort of

11   reframe this to -- a way that I think everyone can agree.

12                   I'm interested in understanding the portion

13   of SunPath's revenue that is generated from sales made by

14   third parties who sell SunPath's service contracts.

15                   Is that 100 percent of SunPath's revenue?

16   Is it 10 percent?  What sort of chunk of its revenue do

17   you think is generated by third-party sales?

18           A.    100 percent of our revenue is from third

19   parties because we don't do any selling.

20                   MR. PELUSO:  Okay.  Easy enough.  I don't

21   really have anything else.  I'll turn it over to Greg.

22                           EXAMINATION

23   BY MR. CAFFAS:

24           Q.    Great.  First things first.  I just want to

25   address that last line of questioning that Pat just

                                          Page 71

Exhibit C

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
2                    ALEXANDRIA DIVISION
3

    RUTH SMITH, individually and on
4   behalf of all others similarly
    situated,
5
                    Plaintiff,        Case No.
6                                      1:22-cv-00081-LMB-
    vs.                                WEF
7

    SUNPATH, LTD., a Massachusetts
8   corporation,
9                    Defendant.
    _____/
10
11                    DEPOSITION OF
    RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12  d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                      KOBI CHUKRAN
13
              (Conducted Via Videoconference)
14
15
    DATE:              November 1, 2022
16
17  TIME:              11:03 a.m. to 2:06 p.m.
18
    PURSUANT TO:       Notice by counsel for Plaintiff
19                     for purposes of discovery, use at
                       trial or such other purposes as
20                     are permitted under the Federal
                       Rules of Civil Procedure
21
22  REPORTED BY:       Aaron T. Perkins, RMR, CRR, CRC
                       Notary Public, State of
23                     Florida at Large
24
                       Pages 1 to 128
25
```

Page 1

1          MR. CAFFAS:  Object to form as well.

2    BY MR. SMITH:

3          Q.   You can answer.

4          A.   Can you repeat the question please?

5          Q.   Yeah.  So you said you received leads

6    from various websites, from the BBB, from your

7    website.

8               How do you utilize the leads?  Do you

9    use them for telemarketing?  Do you -- I'm trying

10   to understand how you reach out to these people.

11         MR. TANDY:  I'm going to object.

12         MR. CAFFAS:  Yeah.  Object to form.

13   It's become a compound question.

14   BY MR. SMITH:

15         Q.   You can answer.

16         A.   Yes.  The leads -- yes, we call them.

17         Q.   Call them?

18         A.   Yes.

19         Q.   All right.  I want to talk about your

20   relationship with SunPath.

21              Can you tell me when you started working

22   with SunPath?

23         A.   I don't remember the exact date.

24         Q.   Can you give me an approximate date?

25         A.   No.

                                        Page 24

```
 1              Q.    Okay.  You can't guesstimate?  Has it
 2      been five years, ten years?
 3              A.    Again, I want to make sure that I'm as
 4      accurate as possible.  I don't remember exactly.
 5              Q.    So you can't tell me at all.
 6              Okay.  Have you worked with them within
 7      the relevant time period, which, again, is January
 8      26th, 2018, to the present?
 9              A.    Yes.
10              Q.    How did you hear about them?
11              A.    I don't recall.
12              Q.    When did your relationship with SunPath
13      end?
14              A.    I want to say approximately six months
15      ago.
16              Q.    Why did it end?
17              A.    Moneys owed.
18              Q.    Moneys owed from American Protection to
19      SunPath or the other way around?
20              A.    Yes.
21              Q.    Okay.  How would you describe your
22      relationship with SunPath?
23              MR. TANDY:  Objection.
24              THE WITNESS:  Good.
25      BY MR. SMITH:
```

Page 25

1      Q.    Throughout the time you worked with

2   SunPath, were you in regular contact with them?

3      A.    No.

4      Q.    Did you have an individual that you

5   could contact if you needed to discuss something?

6      A.    Yes.

7      Q.    Was it just one person or were there

8   multiple people?

9      A.    Mostly one.

10      Q.    Can you --

11      A.    I apologize.  There were a few different

12   persons.

13      Q.    Okay.  Was there one primary and then a

14   few additional?

15      A.    Yes.

16      Q.    Okay.  Can you tell me who your primary

17   contact was?

18      A.    Mr. Joe Abrahms.

19      Q.    Can you spell that?

20      A.    J-o-e; Abrahms, A-b-r-a-h-m-s.

21      Q.    And who were the other individuals that

22   you would communicate with from SunPath?

23      A.    Mr. Larry Lowe.

24      Q.    Can you spell that?

25      A.    L-a-r-r-y, L-o-w-e.

Page 26

```
 1          Q.    Anyone else?

 2          A.    A few persons in the claims department.

 3          Q.    Okay.  Do you remember their names?

 4          A.    No.

 5          Q.    Okay.  Mr. Joe Abrahms, what would you

 6    typically communicate with him about?

 7          A.    Just business matters, product

 8    information, product pricing --

 9          Q.    Okay.  Can you tell me how frequently --

10          A.    -- claim information.

11          Q.    Okay.  Can you tell me how frequently

12    you would say you have talked with him?

13          A.    Maybe once a month or so, maybe even

14    less frequently.

15          Q.    Okay.  And Mr. Lowe, how often would you

16    say you have spoke with him?

17          A.    More regularly.

18          Q.    Daily, weekly?

19          A.    Weekly.

20          Q.    And what would you talk to Mr. Lowe

21    about?

22          A.    Clients' claims.

23          Q.    Okay.  Was SunPath involved in American

24    Protection's sales process?

25                MR. TANDY:  Could you repeat that
```

Page 27

1      vehicle, as well as the mileage.  Based on this

2      information, we can determine what is the best

3      coverage we can offer.

4          Q.   And then once you make that

5      determination, what happens next?

6          A.   Then we submit the sale to the -- to be

7      underwritten by SunPath.

8          Q.   And throughout that sales process, you

9      know, you get the lead, you contact the client,

10     you see what they're qualified for, you determine

11     what's best for them, and then you reach out to

12     SunPath.

13              Is that final step, reaching out to

14     SunPath, is that where contacting SunPath would

15     come in to play or would you have contacted them

16     at some point prior?

17              MR. TANDY:  Objection.

18              MR. CAFFAS:  Yeah.  Objection to form as

19          well.  It's a compound question.

20              MR. TANDY:  And I must object.  To the

21          extent that you're attempting to define the

22          term sales pathway, I object to that, or

23          process.  I'm sorry, Mr. Smith, but I do

24          think that's really compound.

25              MR. SMITH:  That's fine.

                                        Page 30

1    Q. Okay.  So let's walk through this.

2     You obtain leads from various sources;

3 is that correct?

4    A. Yes.

5    Q. Okay.  And then you're going to reach

6 out to those leads to potentially sell a vehicle

7 service contract, right?

8    A. Yes.

9    Q. Okay.  After you contact the potential

10 client, you're going to find out what they're

11 qualified for; is that fair to say?

12    A. Well, in some cases, the customer

13 contacts us.

14    Q. Okay.  Maybe they contact you; you

15 contact them.  Once you're in touch with the

16 potential customer, you determine what they're

17 qualified for?

18    A. Yes.

19    Q. Okay.  How do you go about doing that?

20    A. Based on the customer's vehicle

21 characteristics, the year, make, model, and

22 mileage.

23    Q. And then what do you do with that

24 information?

25    A. We enter it into our CRM that allows us

Page 32

1      plan?

2           A.    I'm sorry, repeat the question please.

3           Q.    Once you determine which plan a customer

4      is best qualified for, then you back to the

5      customer and provide them with the plan that you

6      believe best suits their needs?

7           A.    Yes.

8           Q.    Okay.  And then the customer can either

9      say, no, I don't want that plan, or, yes, I do?

10          A.    Yes.

11          Q.    Okay.  What happens if the customer

12     says, All right, I want to purchase that plan?

13               MR. TANDY:  Objection.  I'm not sure I

14          understood your question, Taylor.

15     BY MR. SMITH:

16          Q.    I'm just trying to understand how they

17     go about closing the sales process.  What happens

18     after a customer says, All right, I will purchase

19     that vehicle service plan?

20          A.    We receive information, and that

21     information is then submitted, in this case,

22     SunPath for fulfillment.

23          Q.    And would SunPath always accept that

24     contract, or would they sometimes decline it?

25               MR. TANDY:  Objection.

Page 35

1     vehicle was rebuilt or rebranded.

2         Q.   Any other reasons?

3         A.   That's most of the -- that would be the

4     most.

5         Q.   Okay.  Let's say SunPath rejected one of

6     the contracts.  Would American Protection go about

7     trying to fix the issue with SunPath and submit it

8     again?

9         A.   No.  If the vehicle does not qualify for

10    coverage, there's really nothing we can do.

11        Q.   Okay.  And if SunPath rejects the

12    contract, would American Protection ever say, All

13    right, well, then we have these other options with

14    one of the other companies that you work with?

15        A.   No.

16        Q.   Okay.  You said you entered the payment

17    information and submit it to, in this case,

18    SunPath.

19         Where would you enter that payment

20    information?

21        A.   Into our CRM system.

22        Q.   The CRM.

23         And does SunPath have access to that CRM

24    system?

25        A.   I'm not sure.

Page 37

```
1              A.    I'm not sure of the technical process in

2        place, so I would -- I don't want to provide

3        inaccurate information.   I would assume that it's

4        some kind of feed that goes from the CRM to

5        SunPath's office.

6              Q.    Okay.

7              A.    It depends on what language or how it's

8        done.   I'm not sure.

9              Q.    Does SunPath have any systems that they

10       provided American Protection with access to?

11             A.    No.

12             Q.    Does SunPath provide any resources to

13       American Protection?

14             A.    No.

15             Q.    Okay.  Do they provide any oversight

16       over your business?

17             A.    We are appointed by SunPath in Florida

18       in terms of the agent of record.

19             Q.    What does that mean?

20             A.    That means that SunPath appoints us as

21       an agent of record in Florida in terms of

22       licensing or in terms of the ability to sell this

23       product.

24             Q.    Okay.  And when you say "appoints," is

25       this through a government database, or is this
```

Page 39

1        would be highlighted in the Seller Agreement

2        between American Protection and SunPath.

3   BY MR. SMITH:

4        Q.   Okay.  Did SunPath ever provide any

5   guidance on telemarketing?

6        A.   Whatever is listed within the Seller

7   Agreement with SunPath.

8        Q.   Okay.  Nothing else?

9        A.   From time to time we would receive an

10  e-mail from Mr. Sporn with specific numbers that

11  have to be added to our internal DNC list.

12       Q.   How frequently would you receive those?

13       A.   I don't know if there was a particular

14  way to quantify that.

15       Q.   Okay.  Any other guidance?

16       A.   No.

17       Q.   Okay.  Did SunPath ever provide any

18  training to American Protection?

19       A.   No.

20       Q.   Does SunPath ever have any seminars,

21  gatherings, or meetings that they would invite

22  American Protection to?

23       A.   No.

24       Q.   Does SunPath provide any training on the

25  Telephone Consumer Protection Act?

                                        Page 43

1    compensate American Protection for the sale of one

2    of its vehicle service contracts?

3           MR. TANDY:  I'm going to object to the

4    extent of relevance, but I will leave that --

5    I don't know that it's protected by the

6    contract.

7           MR. CAFFAS:  I will also object to the

8    form in that it's leading, suggesting that

9    SunPath does pay American Protection at all,

10   which I don't believe that's in the

11   testimony, so I will object, again, to

12   leading, as I believe that's your testimony,

13   Mr. Smith.

14   BY MR. SMITH:

15         Q.   You can answer, Kobi.

16         A.   SunPath does not compensate us for the

17   sales.  We are -- we pay SunPath a cost for the

18   policy, and we then collect the payments from the

19   customer.

20         Q.   Okay.  So American Protection, would

21   they set the price of the vehicle service

22   contracts?

23         A.   Yes.

24         Q.   Okay.  And, then, a portion of that is

25   the cost of the contract.  Is that fair to say?

Page 46

```
 1              A.    Yes.

 2              Q.    And that's the portion that

 3      American Protection has to provide to SunPath?

 4              A.    Yes.

 5              Q.    Okay.  And then whatever amount above

 6      that cost portion American Protection keeps

 7      themselves?

 8              A.    Yes.

 9              Q.    Got it.

10                    All right.  Let me put up my next

11      exhibit.  Give me a second.

12                    (Exhibit No. 2 was marked for

13              identification.)

14      BY MR. TANDY:

15              Q.    All right.  I'm showing you what has

16      been marked as Exhibit 2.

17                    Do you recognize this document?

18              A.    Yes.

19              Q.    Can you tell me what it is?

20              A.    I believe this is the Call Center

21      Marketing Agreement.

22              Q.    And that agreement is between SunPath

23      and American Protection; is that correct?

24              A.    Yes.

25              Q.    It looks like it was entered into on
```

                                            Page 47

1 "maintenance" refers to.  He's not clear what

2 "maintenance" refers to in this context.

3  THE WITNESS:  I'm not clear as to what

4 "maintenance" refers to.

5 BY MR. SMITH:

6  Q. Okay.  Once American Protection sells

7 one of SunPath's vehicle protection plans, is

8 there a continued relationship with that client

9 that American Protection has?

10  A. Yes.

11  Q. How long would that relationship be?

12  A. For the lifetime of the agreement.

13  Q. Okay.  And what would

14 American Protection's responsibilities be through

15 the lifetime of that agreement?

16  A. The customer might ask us for the

17 numbers to the claims department or might call us

18 to find out if something in particular is covered

19 within the plan.

20  Q. Okay.  And we previously discussed, when

21 a contract was sold, the division of moneys from

22 American Protection to SunPath, right?

23  A. Yes.

24  Q. Now, these contracts, they're on a

25 monthly basis, right?  These customers pay a

Page 60

1      certain amount each month?

2          A.   Yes.

3          Q.   Okay.  Who do they pay that amount to?

4          A.   To us.

5          Q.   And then does a share of that each month

6      go to SunPath or does -- or how does that work?

7          A.   No.

8               MR. CAFFAS:  Objection.  Asked and

9          answered.

10     BY MR. SMITH:

11         Q.   Go ahead.

12         A.   No.  SunPath bills us for a policy.

13         Q.   Okay.  So after a policy is sold,

14     American Protection has to pay the cost of the

15     policy to SunPath; is that fair to say?

16         A.   Yes.

17         Q.   How soon do they have to pay that cost?

18         A.   We've at various times have had to pay

19     for the cost.

20         Q.   Can you give me an estimate on the

21     amount of time that you have?

22         A.   Somewhere between some months and --

23     between 30 days and more.

24         Q.   Okay.  And then is it fair to say that

25     it's American Protection's responsibility to

                                        Page 61

1       collect each monthly payment from those clients?

2          A.   Yes.

3          Q.   Okay.  What happens if they cancel their

4       contract or stop paying?

5          A.   Then the plan --

6             MR. CAFFAS:  Object to the form.

7             THE WITNESS:  Then the contract is

8       cancelled.

9   BY MR. SMITH:

10         Q.   Does SunPath provide a refund of the

11      cost to American Protection then?

12         A.   Yes.

13         Q.   Okay.  I will scroll to page 2,

14      paragraph 10.  Give me one second.  All right.  So

15      it says, "All amounts constituting product seller

16      cost and/or net price which are received by CCM

17      shall be held in trust by CCM for the company's

18      sole benefit."

19            Do you see that?

20         A.   Yes.

21         Q.   Is product seller costs in this context,

22      is that the cost that you were referring to that

23      gets paid to SunPath?

24         A.   Yes.

25         Q.   And is net price in this context, is

1          THE WITNESS:  I don't recall exactly

2      back then.

3   BY MR. SMITH:

4      Q.    All right.  When did American Protection

5   start utilizing telemarketing to sell products?

6          MR. TANDY:  Objection.  Just so I'm

7          clear, Taylor, when you say the word

8          "telemarketing," for purposes of this

9          deposition, you're talking about outbound

10         calls that are not generated from the -- from

11         a prior contact?

12         MR. SMITH:  No.  I'm talking about any

13         outbound call.

14         MR. TANDY:  Okay.  But --

15         MR. SMITH:  Maybe we should talk about

16         mailing.

17         THE WITNESS:  Maybe that will help.

18  BY MR. SMITH:

19     Q.    Based on your responses before, it's my

20  understanding that American Protection mails out

21  postcards and letters to potential clients; is

22  that true?

23     A.    Yes.

24     Q.    Okay.  And then is the hope of that that

25  those potential clients will call

                                        Page 76

```
1          American Protection to inquire about products or

2          services?

3               A.    Yes.

4               Q.    Okay.  And does -- sorry.  Strike that.

5                     After those consumers call in, does

6          SunPath -- sorry.  Strike that.

7                     After those consumers call in, does

8          American Protection sometimes place additional

9          calls to that individual to sell vehicle service

10         plans?

11              A.    Yes.

12              Q.    Okay.  Does American Protection ever

13         just place calls to consumers that they haven't

14         previously sent a mailer to?

15              A.    I'm sorry, repeat the question.

16              Q.    Yeah.

17                    Does American Protection ever place

18         telemarketing calls to consumers that it hasn't

19         previously sent a mailer to?

20              A.    We only contact prospects that have

21         requested information about those services.  I

22         don't know if -- if you define that as

23         telemarketing or not, but that's the only -- we

24         have no interest in just contacting folks that

25         have no interest in our products.
```

Page 77

1      are you able to figure out the source of that

2      contact information, where it came from?

3          A.   In some cases I could, and in some cases

4      I can't.

5          Q.   Okay.  What about in the plaintiff's

6      situation?

7          A.   What about it?

8          Q.   You previously said that

9      American Protection sent a mailing to her; is that

10     correct?

11         A.   Yes.

12         Q.   Do you know where it got her contact

13     information prior to sending that mailing?

14         A.   I do not, no.

15         Q.   Did you search for that information?

16         A.   Yes.

17         Q.   What repositories were searched?

18         A.   Our CRM.

19         Q.   CRM.

20            Does SunPath ever provide leads to

21     American Protection?

22         A.   No.

23         Q.   All right.  I will pull up my next

24     exhibit.

25            (Exhibit No. 7 was marked for

Page 100

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

```
 1        record?

 2             THE COURT REPORTER:  Back on the record, sir.

 3        Thank you.

 4             MR. SMITH:  All right.

 5    BY MR. SMITH:

 6        Q.   I'm going to re-ask that question, Kobi.

 7             Does American Protection have any records of

 8    the actual inbound or outbound calls to Plaintiff?

 9        A.   No.

10        Q.   Okay.  Does American Protection have any other

11    documents in its possession related to Plaintiff that

12    have not been produced?

13        A.   No.

14        Q.   Does American Protection have any record of

15    Plaintiff providing any prior express written consent?

16        A.   I'm sorry.  What -- what was the question

17    again?

18        Q.   Yeah.  Does American Protection have any record

19    of Plaintiff providing any prior express written

20    consent?

21             MR. CAFFAS:  I'm going to object to the

22        vagueness of that question.  Prior express written

23        consent, to what?

24             MR. TANDY:  I will join.

25    BY MR. SMITH:
```

Page 155

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

1     Q.   You can answer.

2     A.   No.

3     Q.   Does American Protection have any policies or

4   procedures to ensure compliance with the Virginia

5   Telephone Privacy (sic) Act?

6     A.   Everything has been provided to you.

7     Q.   Okay.   Other than the documents that have been

8   provided, does American Protection have any policies or

9   procedures to ensure compliance with the Virginia

10  Telephone Privacy Act?

11    A.   No.

12    Q.   Okay.   And does American Protection have any

13  specific policies or procedures that relate to

14  compliance with the Virginia Telephone Privacy Act?

15    A.   No.

16    Q.   Prior to this lawsuit, did you have -- were you

17  aware of the Virginia Telephone Privacy Act?

18    A.   No.

19    Q.   Okay.   I want to go through calls to Plaintiff

20  briefly and ask you questions about them.

21         So Plaintiff alleges, on May 26th, 2020, that

22  she received two calls, and the caller ID was a

23  410-844-6327.

24         Do you know if American Protection has ever

25  utilized that number to place calls?

Page 156

 1              (Deposition Exhibit 16 was marked.)

 2      BY MR. SMITH:

 3          Q.   All right, Kobi.  I'm showing you what's been

 4      marked as Exhibit 16.

 5              Do you recognize this document?

 6          A.   (Witness perused document.)  Yes.

 7          Q.   Okay.  And I'll represent this is a document

 8      that was produced by Plaintiff in this litigation, and

 9      it's been marked as SMITH000025 through 26.

10              Can you tell me what it is?

11          A.   It seems to be an e-mail quote re- -- that was

12      requested by the plaintiff.

13          Q.   This e-mail was sent on May 28th, 2020, at

14      6:03 p.m.; is that correct?

15          A.   I don't know.  I -- I don't know if that's

16      correct or not.

17          Q.   Okay.  That's what the exhibit states, though,

18      right?

19          A.   That's what it -- yes.

20          Q.   Okay.  It was sent to Ruth Smith, and it's --

21              I guess, it was sent by Samantha Jaeger; is

22      that correct?

23              MR. TANDY:  Objection.

24              MR. CAFFAS:  Yeah.  Objection.  It calls for

25          speculation.

                                         Page 189

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

```
1              THE WITNESS:  It looks like the e-mail address

2        is of Samantha Jaeger.

3    BY MR. SMITH:

4        Q.   Okay.  This e-mail also begins -- or --

5    sorry -- strike that.

6              This e-mail begins with, "Thank you for taking

7    the time to discuss your vehicle protection needs."

8              Do you see that?

9        A.   Yes.

10       Q.   Fair to say this e-mail would have followed a

11   phone call?

12       A.   Yes.

13       Q.   Okay.  Do you know why this document wasn't

14   also produced by American Protection?

15       A.   No, I do not.  I believe -- I'm not sure if

16   this is an attachment or what exactly is the format this

17   came in.

18       Q.   Okay.  But you don't know why it was -- wasn't

19   produced?

20       A.   No, I do not.

21            MR. TANDY:  Objection.

22            (Deposition Exhibit 17 was marked.)

23   BY MR. SMITH:

24       Q.   Okay.  I'm showing you what's been marked as

25   Exhibit 17.
```

Page 190

1           Do you recognize this document?

2       A.   (Witness perused document.)  Yes, I do.

3       Q.   Can you tell me what it is?

4       A.   Well, I think this is the link that is

5    generated by Inline when a customer presses the

6    "Buy Now" button on their e-mail.

7       Q.   Okay.  All right.  That's all the questions I

8    had about this one.

9           (Deposition Exhibit 18 was marked.)

10   BY MR. SMITH:

11      Q.   Kobi, I'm showing you what's been marked as

12   Exhibit 18.

13          Do you recognize this document?

14      A.   Yes.

15      Q.   Can you tell me what it is?

16      A.   This is a confirmation of an e-mail from

17   Paul Sporn of SunPath, confirming appointment of our

18   company, in terms of the Florida licensing requirement.

19      Q.   Okay.  And it's dated September 20th, 2021; is

20   that correct?

21      A.   Yes.

22      Q.   And this is, it looks like, a reappointment; is

23   that correct?

24      A.   That's what it says, yes.

25      Q.   Okay.  Is this a confirmation that SunPath

                                                   Page 191

# Exhibit D

# Licensee Search

# Licensee Detail

**License #:**

W093252

**Full Name:**

CHUKRAN MANAGEMENT GROUP, LLC.

**Business Address:**

6333 NW 36TH AVE
COCONUT CREEK, FL 33073

**Mailing Address:**

6333 NW 36TH AVE
COCONUT CREEK, FL 33073

**Email:**

KOBI@AMERICANPROTECTIONCORP.COM

**Phone:**

(800) 709-1117Ext. 101

**County:**

Broward

**NPN #:**

16616751

| Valid Licenses | | |
|---|---|---|
| | **JA755** | |
| **Type** | **Issue Date** | **Qualifying Appointment** |

AUTOMOBILE WARRANTY (0253)                                         4/18/2012        YES

## Active Appointments

### AUTOMOBILE WARRANTY (0253)

| Company Name | Issue Date | Exp Date |
|---|---|---|
| WESCO INSURANCE COMPANY | 4/18/2012 | 4/30/2024 |
| SUNPATH LTD CORP. D/B/A SUNPATH LTD CORP. OF DELAWARE | 9/20/2021 | 9/30/2023 |

## Invalid Licenses

No invalid licenses found.

## Inactive Appointments

### AUTOMOBILE WARRANTY (0253)

| Company Name | Issue Date | Exp Date | Status Date |
|---|---|---|---|
| INTERSTATE NATIONAL DEALER SERVICES OF FLORIDA, INC | 3/17/2014 | 3/31/2020 | 3/3/2020 |
| SUNPATH LTD CORP. D/B/A SUNPATH LTD CORP. OF DELAWARE | 7/13/2017 | 7/31/2021 | 9/18/2021 |
| ENTERPRISE FINANCIAL GROUP OF FLORIDA, INC. | 5/15/2018 | 5/31/2020 | 4/1/2020 |
| UNITED SERVICE PROTECTION, INC. | 5/4/2018 | 5/31/2024 | 7/24/2022 |
| LYNDON SOUTHERN INSURANCE COMPANY | 9/11/2015 | 9/30/2017 | 9/27/2016 |
| CONSUMERS SERVICES OF FLORIDA, INC. | 1/7/2013 | 1/31/2017 | 12/7/2016 |
| ENTERPRISE FINANCIAL GROUP OF FLORIDA, INC. | 2/1/2013 | 2/28/2017 | 1/19/2016 |

**JA756**

## Agency Locations

Copyright © Florida Department of Financial Services 2018

Exhibit E

-------- Original Message --------

**Subject:** FW: eAppoint Filing Submitted Successfully
**Date:** 2021-09-20 12:16 PM
**From:** Paul Sporn <PSporn@mysunpath.com>
**To:** Kobi Chukran <kobi@americanprotectioncorp.com>
**Cc:** Joe Abraham <jabraham@mysunpath.com>

Kobi:

I completed the re-appointment this morning. Apologies for the confusion.

Thank you.

PS

*Paul E. Sporn*

**General Counsel**

**50 Braintree Hill Office Park Suite 310**

**Braintree Ma 02184**

781-817-4511

**From:** Florida Department of Financial Services <eAppoint@fldfs.com>
**Sent:** Monday, September 20, 2021 12:15 PM
**To:** Paul Sporn <PSporn@mysunpath.com>
**Subject:** eAppoint Filing Submitted Successfully

**Congratulations, your eAppoint Filing has been submitted successfully.**

**Filing Details:**

**Filing Type:** New Appointments

**JA759**

**Appointing Entity Name:**SUNPATH LTD CORP. D/B/A SUNPATH LTD CORP. OF DELAWARE

**Date Created:**09/20/2021

If you did not authorize this filing, someone has mistakenly filed using your email address. We regret the inconvenience. Please do **NOT** reply to this message as it is coming from an unmonitored email address. Please forward this email to <u>AgentLicensing@MyFloridaCFO.com</u> and advise of your request.

**JA760**

Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

**INTERROGATORIES**

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

making contact with you, state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, when Plaintiff answered the calls at issue, the callers never identified their first and last name as required by the VTPPA.

10.    Identify and describe Your Cellular Telephone Number (703-728-9650, along with any other cellular telephone number used by you during the relevant time period), including, the date on which you were first assigned that telephone number, and from November 8, 2019 to present, state whether the number is associated with a cellular, mobile, or wireless telephone provider service in connection with that telephone number or any other service for which you incurred a charge for incoming calls or text messages; the name of each such provider; the type of device or telephone associated with that telephone number; the name of each person that controlled, owned, operated, or used that number, and when each person controlled, owned operated, or used that number; and whether or not it was used for personal or business purposes, or both.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, the interrogatory seeks information regarding telephone numbers that have no relationship to the claims or defenses in this case. This interrogatory is also compound and actually consists of six separate interrogatories.  Without waiving said objections, Plaintiff's obtained the telephone number ending in 9650 in or around 2006. Plaintiff's wireless provider is AT&T and the device

**JA763**

is an Apple iPhone 12 Pro. Plaintiff is the primary and customary user of this telephone number and it is used for personal purposes.

11.     Identify all communications between you and all other persons, other than your attorneys, relating to SunPath, or your claims or allegations in this Lawsuit, including the date, method, and substance of the communication and the identities of all persons with whom you had contact.

ANSWER: Objection, this interrogatory is also overbroad and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and the work product doctrine. This interrogatory also constitutes an impermissible fishing expedition. Without waiving said objections, Plaintiff does not recall any communications responsive to this interrogatory.

12.     If you assert that you or any member of the proposed classes ever informed SunPath that you or they did not want to be contacted by or on behalf of SunPath, describe the date and substance of that event or communication, the means of such communication, and state whether SunPath communicated with you or any member of the proposed classes after such communication and identify each such communication.

ANSWER: Objection, this interrogatory is also overbroad and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney work product doctrine. This interrogatory also constitutes an impermissible fishing expedition. This interrogatory also seeks

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF RUTH SMITH'S VERIFICATION**

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2022.

_____
Ruth Smith

# Exhibit G

| CALL ID | SESSION | DATE | TIME | DNIS | ANI | CALL TYPE | DURATION | HOLD TIM | HANDLE T | ACW TIM | TALK TIM | PARK TIM | CONF. TIM | CONSULT | THIRD PA | QUEUE TI | HOLD COL | CONF. CO | PARK COL | CALLS CO | CALLS AB | DISPOSITI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3E+14 | 1544F4EE85 | 5/26/20 | 12:52:08 | 3107340319 | 7037289650 | Inbound | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:07 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 3E+14 | CA619FDEF9 | 5/26/20 | 12:58:52 | 7037289650 | 8152494786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | B9F1E1D860 | 5/26/20 | 13:45:08 | 7037289650 | 2817090786 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | ACDF4D55A1 | 5/26/20 | 15:50:46 | 7037289650 | 2817090786 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 3E+14 | C015669662 | 5/28/20 | 7:06:50 | 7037289650 | 2817090786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 71BC85F9FE | 5/28/20 | 7:53:58 | 3107340319 | 7037289650 | Inbound | 0:01:42 | 0:00:00 | 0:03:05 | 0:01:26 | 0:01:39 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | 28A426B7AA | 5/28/20 | 7:57:09 | 7037289650 | 2817090786 | Manual | 0:00:12 | 0:00:00 | 0:00:15 | 0:00:03 | 0:00:12 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 53CF57065C | 5/28/20 | 9:51:27 | 7037289650 | 2817090786 | Outbound | 0:16:48 | 0:00:00 | 0:19:35 | 0:02:51 | 0:16:44 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Personal Call |
| 3E+14 | 799FFCFF4D | 5/28/20 | 10:52:15 | 7037289650 | 2817090786 | Manual | 0:00:15 | 0:00:00 | 0:00:17 | 0:00:03 | 0:00:14 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | DBF76A046E | 5/28/20 | 10:54:00 | 7037289650 | 2817090786 | Manual | 0:00:37 | 0:00:00 | 0:02:30 | 0:01:54 | 0:00:36 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 906F00AF1A | 5/28/20 | 12:08:35 | 7037289650 | 2817090786 | Outbound | 0:01:25 | 0:00:00 | 0:02:28 | 0:01:08 | 0:01:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | A412CD988B | 5/29/20 | 7:03:42 | 7037289650 | 2817090786 | Manual | 0:00:07 | 0:00:00 | 0:00:25 | 0:00:18 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | C103C96348 | 5/29/20 | 7:27:16 | 7037289650 | 2817090786 | Outbound | 0:00:24 | 0:00:00 | 0:00:21 | 0:00:02 | 0:00:19 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 73C8E266AB | 5/29/20 | 10:15:55 | 7037289650 | 3522002321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 6852AE8315 | 5/29/20 | 12:17:08 | 7037289650 | 3522002321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 7A665F9FD9 | 5/29/20 | 15:18:57 | 7037289650 | 3522002321 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 7BE2474D1D | 5/29/20 | 15:19:17 | 7037289650 | 3522002321 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | CFF0D4442C | 5/29/20 | 16:06:40 | 7037289650 | 3522002321 | Manual | 0:00:03 | 0:00:00 | 0:01:04 | 0:01:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 488CC52FA3 | 5/30/20 | 11:57:49 | 7037289650 | 4074797228 | Manual | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 27DA39D539 | 5/30/20 | 11:58:32 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | AB4FF515A0 | 5/30/20 | 13:06:12 | 7037289650 | 4074797228 | Manual | 0:00:06 | 0:00:00 | 0:00:09 | 0:00:03 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C0B4E7753A | 6/1/20 | 7:14:37 | 7037289650 | 2817090884 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 854A9F9952 | 6/1/20 | 9:36:38 | 7037289650 | 2817090884 | Outbound | 0:00:17 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 6C5CF69B24 | 6/1/20 | 14:11:23 | 7037289650 | 2817090884 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | DDFAD225DE | 6/1/20 | 14:12:01 | 7037289650 | 2817090849 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 3E+14 | 0A11019694 | 6/1/20 | 14:41:20 | 7037289650 | 2817090849 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 3E+14 | C94530DCCB | 6/1/20 | 16:08:29 | 7037289650 | 2817090849 | Manual | 0:00:03 | 0:00:00 | 0:00:07 | 0:00:05 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 49EB9B0C97 | 6/1/20 | 16:09:26 | 7037289650 | 2817090849 | Manual | 0:00:46 | 0:00:00 | 0:00:52 | 0:00:07 | 0:00:46 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 0516DB7877 | 6/2/20 | 8:24:27 | 7037289650 | 5125534518 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | E5AE446E13 | 6/2/20 | 10:44:25 | 7037289650 | 2816679986 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 648BC197F3 | 6/2/20 | 13:13:11 | 7037289650 | 2816679986 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 3E+14 | FCB256765D | 6/2/20 | 14:33:41 | 7037289650 | 2816679986 | Manual | 0:00:06 | 0:00:00 | 0:00:08 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C93E917E57 | 6/3/20 | 10:05:35 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | E3E88458A3 | 6/3/20 | 14:34:04 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | CC55D0820A | 6/3/20 | 16:20:41 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | BEF0F6D665 | 6/4/20 | 11:52:54 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 6121F8FF91 | 6/4/20 | 15:52:07 | 7037289650 | 4074797228 | Manual | 0:00:14 | 0:00:00 | 0:00:16 | 0:00:03 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 510F2A8099 | 6/4/20 | 15:53:18 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 83587DA32B | 6/5/20 | 7:52:30 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C54170F433 | 6/5/20 | 7:52:52 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C8A5F63C14 | 6/5/20 | 8:31:34 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 1F3A230F71 | 6/5/20 | 9:32:27 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | CFEE4B3F75 | 6/5/20 | 11:46:15 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 8742E32BBC | 6/5/20 | 11:46:26 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 4F10EAFD4B | 6/6/20 | 11:17:23 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | EC027419DB | 6/6/20 | 11:17:46 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 7AF2616D4C | 6/8/20 | 9:59:20 | 7037289650 | 4074797228 | Manual | 0:00:54 | 0:00:00 | 0:01:09 | 0:00:16 | 0:00:53 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | F3C6D4D919 | 6/8/20 | 10:21:17 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 1F6902008E | 6/8/20 | 13:51:12 | 7037289650 | 4074797228 | Manual | 0:00:21 | 0:00:00 | 0:00:23 | 0:00:02 | 0:00:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 3E+14 | 83486C7FDD | 6/8/20 | 13:52:03 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:04 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 52 | 3E+14 | 2A0DF394CE | 6/8/20 | 16:31:35 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 53 | 3E+14 | D154AB5093 | 6/8/20 | 16:31:49 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 54 | 3E+14 | 4853F7B924 | 6/8/20 | 16:32:08 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 55 | 3E+14 | AF03D9AD2C | 6/9/20 | 8:10:00 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 56 | 3E+14 | 9BB7C77DFF | 6/9/20 | 13:32:13 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 57 | 3E+14 | 9025B48D70 | 6/9/20 | 16:39:29 | 7037289650 | 4074797228 | Manual | 0:00:09 | 0:00:00 | 0:00:10 | 0:00:02 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 58 | 3E+14 | 6A5469682F | 6/10/20 | 9:14:14 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 59 | 3E+14 | 263A60855F | 6/11/20 | 7:06:05 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 60 | 3E+14 | DCC3AE8CE8 | 6/11/20 | 9:39:59 | 7037289650 | 4074797228 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 61 | 3E+14 | 0792C13279 | 6/11/20 | 13:30:46 | 7037289650 | 4074797228 | Manual | 0:00:08 | 0:00:00 | 0:00:18 | 0:00:10 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 62 | 3E+14 | 9C1FED306C | 6/12/20 | 9:36:18 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 63 | 3E+14 | 7CDB0407B9 | 6/12/20 | 10:06:49 | 4074797228 | 7037289650 | Inbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 64 | 3E+14 | D9DB278AFE | 6/13/20 | 8:42:29 | 7037289650 | 7187018964 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 65 | 3E+14 | 9EC32C616D | 6/13/20 | 9:31:48 | 7187018964 | 7037289650 | Inbound | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Abandon |
| 66 | 3E+14 | EFD7D12BD4 | 6/13/20 | 9:38:18 | 7037289650 | 7187018964 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 67 | 3E+14 | 2D869605BE | 6/15/20 | 9:26:58 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 68 | 3E+14 | 4E927D33C5 | 6/15/20 | 14:59:36 | 7037289650 | 2163936985 | Outbound | 0:00:13 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back N |
| 69 | 3E+14 | 10E4E23E84I | 6/16/20 | 7:01:43 | 7037289650 | 2163936985 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 70 | 3E+14 | FD934C51D9 | 6/16/20 | 9:22:06 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 71 | 3E+14 | 947D48034F | 6/16/20 | 9:22:25 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 72 | 3E+14 | F5FCEF359A | 6/16/20 | 10:06:07 | 7037289650 | 2696820245 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 73 | 3E+14 | FFD9E2E71F | 6/16/20 | 13:20:50 | 7037289650 | 2696820245 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 74 | 3E+14 | F991559D02 | 6/16/20 | 15:58:07 | 7037289650 | 2696820245 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 75 | 3E+14 | 4FB1B49BB5 | 6/17/20 | 9:36:55 | 7037289650 | 3059081169 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 76 | 3E+14 | 3FE9A1264D | 6/17/20 | 12:49:20 | 7037289650 | 3059081169 | Outbound | 0:00:14 | 0:00:00 | 0:00:31 | 0:00:21 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 77 | 3E+14 | 72C3263C8B- | 6/17/20 | 13:12:44 | 7037289650 | 3059081169 | Manual | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 78 | 3E+14 | 7954057BB3 | 6/17/20 | 14:01:20 | 7037289650 | 3059081169 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 79 | 3E+14 | D91AE5A40E | 6/17/20 | 16:18:26 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 80 | 3E+14 | 9DAF1B414E | 6/18/20 | 7:15:13 | 7037289650 | 3125770024 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 81 | 3E+14 | F20308646E | 6/18/20 | 9:10:52 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:11 | 0:00:07 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 82 | 3E+14 | 19C64D3D78 | 6/18/20 | 11:39:24 | 7037289650 | 3125770024 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 83 | 3E+14 | 3E25AD4C18 | 6/18/20 | 12:47:37 | 7037289650 | 3125770024 | Manual | 0:00:18 | 0:00:00 | 0:00:20 | 0:00:03 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 84 | 3E+14 | 9F2A104F67 | 6/18/20 | 12:48:30 | 7037289650 | 3125770024 | Manual | 0:00:09 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 85 | 3E+14 | 06939B79B8 | 6/19/20 | 7:19:36 | 7037289650 | 3132815613 | Outbound | 0:00:10 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back N |
| 86 | 3E+14 | 2B20E60171 | 6/19/20 | 10:44:38 | 7037289650 | 4076120572 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 87 | 3E+14 | 7B4825317E | 6/19/20 | 13:24:47 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 88 | 3E+14 | 5D8C51D510 | 6/19/20 | 13:25:09 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 89 | 3E+14 | D18C7A96B9 | 6/19/20 | 14:50:28 | 7037289650 | 4076120572 | Manual | 0:00:36 | 0:00:00 | 0:00:38 | 0:00:07 | 0:00:31 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 90 | 3E+14 | 5EC62661E2 | 6/20/20 | 10:08:13 | 7037289650 | 5125888120 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 91 | 3E+14 | 46FAD8D6AC | 6/20/20 | 11:18:33 | 7037289650 | 5125888120 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 92 | 3E+14 | 37BED99003 | 6/22/20 | 9:14:47 | 7037289650 | 5125888120 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 93 | 3E+14 | D9478CD3C4 | 6/22/20 | 15:09:49 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 94 | 3E+14 | D41A75FF17 | 6/23/20 | 12:37:14 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 95 | 3E+14 | 7BA0279823 | 6/23/20 | 14:26:32 | 7037289650 | 9047176954 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 96 | 3E+14 | 6A97800AAC | 6/24/20 | 9:20:38 | 7037289650 | 9047176954 | Manual | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 97 | 3E+14 | BC90FD34E5 | 6/24/20 | 9:21:05 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 98 | 3E+14 | C0B632490C | 6/24/20 | 14:27:48 | 7037289650 | 9047176954 | Manual | 0:00:04 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 99 | 3E+14 | 2544960B01 | 6/25/20 | 7:16:31 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 100 | 3E+14 | A80291D68E | 6/25/20 | 9:36:12 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 3E+14 | 6F5A68CA3B | 6/25/20 | 9:51:54 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 102 | 3E+14 | 9D362D8E84 | 6/26/20 | 10:51:57 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 103 | 3E+14 | C4BDE07A10 | 6/26/20 | 14:38:28 | 7037289650 | 9179942924 | Manual | 0:00:18 | 0:00:00 | 0:00:22 | 0:00:04 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 104 | 3E+14 | 0DB0569DD8 | 6/26/20 | 15:48:49 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 105 | 3E+14 | 13BDB42B95 | 6/29/20 | 8:46:40 | 7037289650 | 2696820245 | Outbound | 0:00:26 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:13 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 106 | 3E+14 | 833D5465EE | 6/29/20 | 12:55:19 | 7037289650 | 3059081169 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 107 | 3E+14 | 70E40ED7DA | 6/30/20 | 11:28:41 | 7037289650 | 2696820506 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 108 | 3E+14 | CDDFDDE4C8 | 7/1/20 | 7:15:03 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 109 | 3E+14 | CD0C57A507 | 7/1/20 | 15:35:56 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 110 | 3E+14 | BEFEE2EC68 | 7/2/20 | 10:58:51 | 7037289650 | 3134869416 | Outbound | 0:00:35 | 0:00:00 | 0:00:35 | 0:00:05 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 111 | 3E+14 | D8CC9072FA | 7/3/20 | 13:23:42 | 7037289650 | 5128554305 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 112 | 3E+14 | 9BF0C4DCA5 | 7/6/20 | 9:39:54 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 113 | 3E+14 | 18224DA460 | 7/6/20 | 14:08:10 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 114 | 3E+14 | E37B3ECD8E | 7/6/20 | 15:27:27 | 7037289650 | 7348884504 | Manual | 0:00:04 | 0:00:00 | 0:00:13 | 0:00:10 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 115 | 3E+14 | 8F10C61457( | 7/6/20 | 15:55:58 | 7037289650 | 9045076919 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 116 | 3E+14 | A0E05B12C8 | 7/7/20 | 13:00:19 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 117 | 3E+14 | F0CF391360( | 7/7/20 | 14:09:11 | 7037289650 | 2487939009 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 118 | 3E+14 | D9F27C7EDC | 7/8/20 | 10:34:13 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 119 | 3E+14 | AB8349C209 | 7/9/20 | 7:07:41 | 7037289650 | 3123007050 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 120 | 3E+14 | CA2F2838D2 | 7/9/20 | 12:07:40 | 7037289650 | 3133489416 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 121 | 3E+14 | 70D70CD308 | 7/9/20 | 12:08:14 | 7037289650 | 3133489416 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 122 | 3E+14 | 023E6955F2( | 7/9/20 | 15:43:12 | 7037289650 | 4076055018 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 123 | 3E+14 | 0B5D74B67B | 7/10/20 | 10:35:36 | 7037289650 | 6174407961 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 124 | 3E+14 | B4FED9C85A | 7/10/20 | 12:02:51 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 125 | 3E+14 | A829285DC0 | 7/10/20 | 12:03:12 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 126 | 3E+14 | CA66972833 | 7/10/20 | 15:53:54 | 7037289650 | 2483136496 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 127 | 3E+14 | D16CCD3EBE | 7/10/20 | 15:54:22 | 7037289650 | 2483136496 | Manual | 0:00:10 | 0:00:00 | 0:00:11 | 0:00:02 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 128 | 3E+14 | 58483AF31C( | 7/11/20 | 10:33:21 | 6174407961 | 7037289650 | Inbound | 0:00:07 | 0:00:00 | 0:00:10 | 0:00:05 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 129 | 3E+14 | 9E1AFCF9CB | 7/11/20 | 10:52:39 | 7037289650 | 2483136496 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 130 | 3E+14 | C67ECFE1A2 | 7/11/20 | 10:54:05 | 7037289650 | 2483136496 | Manual | 0:00:31 | 0:00:00 | 0:00:33 | 0:00:03 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 131 | 3E+14 | BD71DD9C10 | 7/11/20 | 10:54:47 | 7037289650 | 2483136496 | Manual | 0:00:13 | 0:00:00 | 0:00:15 | 0:00:02 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 132 | 3E+14 | EC0EAA1607 | 7/13/20 | 8:54:48 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 133 | 3E+14 | 0199019776; | 7/13/20 | 13:45:17 | 7037289650 | 3057484394 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 134 | 3E+14 | 3AD8C11A2E | 7/14/20 | 12:17:42 | 7037289650 | 3124700811 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 135 | 3E+14 | CD9FD8BD78 | 7/14/20 | 15:24:33 | 7037289650 | 3132815693 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 136 | 3E+14 | 1A20B89775 | 7/15/20 | 9:54:31 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 137 | 3E+14 | 9B40B00DA4 | 7/15/20 | 12:56:33 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 138 | 3E+14 | F556E0C20B | 7/16/20 | 13:15:07 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 139 | 3E+14 | 13B431FDF4 | 7/16/20 | 15:36:01 | 7037289650 | 6172064680 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 140 | 3E+14 | 9552389A36 | 7/17/20 | 9:02:56 | 7037289650 | 7342064680 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 141 | 3E+14 | 4D1074484E | 7/18/20 | 8:17:36 | 7037289650 | 7342064680 | Outbound | 0:00:16 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 142 | 3E+14 | 81CF435E59( | 7/20/20 | 10:51:47 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 143 | 3E+14 | 24BEC97973 | 7/20/20 | 13:23:07 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 144 | 3E+14 | B21004FA93 | 7/21/20 | 9:58:31 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 145 | 3E+14 | 18EB7DB383 | 7/21/20 | 9:58:37 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 146 | 3E+14 | D8C1F0AF3B | 7/22/20 | 7:56:30 | 7037289650 | 3124700811 | Outbound | 0:00:13 | 0:00:00 | 0:00:10 | 0:00:03 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 147 | 3E+14 | E13D1CB528 | 7/22/20 | 9:30:57 | 7037289650 | 3124700811 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 148 | 3E+14 | 77A3775612 | 7/22/20 | 9:31:14 | 7037289650 | 3124700811 | Manual | 0:00:04 | 0:00:00 | 0:00:21 | 0:00:17 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 149 | 3E+14 | D1AE20212D | 7/23/20 | 14:10:14 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 150 | 3E+14 | 24FFF8A363( | 7/23/20 | 16:00:26 | 7037289650 | 7342064116 | Manual | 0:00:07 | 0:00:00 | 0:00:11 | 0:00:05 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | 3E+14 | C688A6C8DF | 7/24/20 | 14:33:01 | 7037289650 | 2692004257 | Manual | 0:00:02 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 152 | 3E+14 | 883CD190FE( | 7/25/20 | 7:41:03 | 7037289650 | 2692004257 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 153 | 3E+14 | 77CC72E59A | 7/25/20 | 10:10:00 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 154 | 3E+14 | A0A40D849F | 7/25/20 | 11:36:28 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 155 | 3E+14 | 2192991424/ | 7/27/20 | 12:36:59 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 156 | 3E+14 | 56F220B736 | 7/27/20 | 13:36:53 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 157 | 3E+14 | 6545A3E989 | 7/28/20 | 14:40:57 | 7037289650 | 4076120673 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 158 | 3E+14 | 305EF70EEE/ | 7/29/20 | 7:21:28 | 7037289650 | 4076120673 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 159 | 3E+14 | 4D5A6FC0C1 | 7/29/20 | 15:33:44 | 7037289650 | 2037796516 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 160 | 3E+14 | CBB82A0651 | 7/30/20 | 12:45:27 | 7037289650 | 2488091721 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 161 | 3E+14 | 628D570E22 | 7/31/20 | 9:15:23 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 162 | 3E+14 | 25236EA74D | 7/31/20 | 12:48:14 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 163 | 3E+14 | 8116CFB20D | 8/3/20 | 12:04:46 | 7037289650 | 6026129574 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 164 | 3E+14 | 633A92F50E | 8/3/20 | 14:35:20 | 7037289650 | 6026129574 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 165 | 3E+14 | 25F22DF0F0 | 8/4/20 | 15:41:25 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 166 | 3E+14 | 2C6103FDBB | 8/5/20 | 9:22:43 | 7037289650 | 9179663235 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 167 | 3E+14 | 5E3BCC05F1 | 8/6/20 | 9:05:23 | 7037289650 | 3129733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 168 | 3E+14 | 51D488CE1F. | 8/7/20 | 11:29:46 | 7037289650 | 5122121577 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 169 | 3E+14 | EBC4E18DD5 | 8/7/20 | 12:20:59 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 170 | 3E+14 | C132971CFC | 8/7/20 | 15:57:48 | 7037289650 | 3139733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 171 | 3E+14 | 15F78505E0( | 8/10/20 | 12:15:22 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 172 | 3E+14 | 1F86C1A08E( | 8/10/20 | 14:23:59 | 7037289650 | 5124305992 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 173 | 3E+14 | B5BD08D635 | 8/11/20 | 15:33:02 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 174 | 3208 | FF093242E0: | 8/12/20 | 12:00:42 | 7037289650 | 3129733698 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 175 | 3E+14 | B1ACDC0989 | 8/13/20 | 9:43:17 | 7037289650 | 9044251482 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 176 | 3E+14 | 84D7946F35 | 8/14/20 | 12:40:18 | 7037289650 | 3057674115 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 177 | 3E+14 | C5D181F2D2 | 8/14/20 | 14:19:00 | 7037289650 | 3057674115 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 178 | 3E+14 | 1BE2BCA61F | 8/18/20 | 15:35:22 | 7037289650 | 7348884537 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 179 | | | | | | | | | | | | | | | | | | | | | | | |
| 180 | | | | | | | | | | | | | | | | | | | | | | | |
| 181 | | | | | | | | | | | | | | | | | | | | | | | |
| 182 | | | | | | | | | | | | | | | | | | | | | | | |
| 183 | | | | | | | | | | | | | | | | | | | | | | | |
| 184 | | | | | | | | | | | | | | | | | | | | | | | |
| 185 | | | | | | | | | | | | | | | | | | | | | | | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CAMPAIG | AGENT | AGENT EI | SKILL | RATE | BILL TIME | COST | NUMBER | NUMBER | NUMBER | FIRST NA | LAST NAN | COMPANY | STREET | CITY | STATE | ZIP | |
| 2 | TIGER LIVE T | [None] | [Deleted] | LIVE TRANSF | 0 | 0:00:00 | 0 | | | | Ruth | Smith | 617RC12986 | | | | | |
| 3 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 4 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 5 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 6 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 7 | TIGER LIVE T | sjaeger@am | sjaeger@am | LIVE TRANSF | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 8 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 9 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 10 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 11 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 12 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 13 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 14 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 15 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 16 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 17 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 18 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 19 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 20 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 21 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 22 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 23 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 24 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 25 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 26 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 27 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 28 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 29 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 30 | GC_Aged | [Deleted] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 31 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 32 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 33 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 34 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 35 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 36 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 37 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 38 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 39 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 40 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 41 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 42 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 43 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 44 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 45 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 46 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 47 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 48 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 49 | TIGER POSTI | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 50 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

5

**JA771**

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 52 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 53 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 54 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 55 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 56 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 57 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 58 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 59 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 60 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 61 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 62 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 63 | Inbound Sale | [None] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 64 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 65 | Inbound Sale | [None] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 66 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 67 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 68 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 69 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 70 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 71 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 72 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 73 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 74 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 75 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 76 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 77 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 78 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 79 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 80 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 81 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 82 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 83 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 84 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 85 | Quoted - Foll | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 86 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 87 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 88 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 89 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 90 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 91 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 92 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 93 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 94 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 95 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 96 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 97 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 98 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 99 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 100 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 102 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 103 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 104 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 105 | Quoted - Fol | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 106 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 107 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 108 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 109 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 110 | L2 Campaign | edenton@an | edenton@an | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 111 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 112 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 113 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 114 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 115 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 116 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 117 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 118 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 119 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 120 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 121 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 122 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 123 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 124 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 125 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 126 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 127 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 128 | Inbound Sale | lrry190@net | lrry190@net | Inbound Sale | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 129 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 130 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 131 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 132 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 133 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 134 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 135 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 136 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 137 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 138 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 139 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 140 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 141 | TIGER POSTE | ldelbrocco@ | ldelbrocco@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 142 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 143 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 144 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 145 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 146 | TIGER POSTE | sgoodhew@ | sgoodhew@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 147 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 148 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 149 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 150 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 152 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 153 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 154 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 155 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 156 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 157 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 158 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 159 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 160 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 161 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 162 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 163 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 164 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 165 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 166 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 167 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 168 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 169 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 170 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 171 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 172 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 173 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 174 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 175 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 176 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 177 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 178 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | | 0 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 179 | | | | | | | | | | | | | | | | | | |

Exhibit H

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>　　　　　Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

<u>**DECLARATION OF RUTH SMITH**</u>

I, Ruth Smith, declare as follows:

1.　　　　I am over the age of eighteen (18) and am the Plaintiff in the above-captioned action. I make this declaration in support of Plaintiff's Motion for Partial Summary Judgment. I am able to testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge.

2.　　　　Having reviewed the records provided by Five9, Inc., I confirm that the calls contained within the spreadsheet identified as Plaintiff's Trial Exhibit 72 (*see* dkt. 54) and Defendant's Trial Exhibit 38 (*see* dkt. 53) represents an accurate reflection of the calls that I recall receiving from Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection").

3.　　　　Attached as Exhibit 1 to this declaration are screenshots of the calls contained within the spreadsheet identified as Plaintiff's Trial Exhibit 72 (*see* dkt. 54) and Defendant's Trial Exhibit 38 (*see* dkt. 53). Exhibit 1 to this declaration likewise represents an accurate reflection of the calls that I recall receiving from Chukran Management Group, LLC d/b/a

**JA776**

Doc ID: e49daa69e5211785b3155c3d475ad3fc855400d8

American Protection Corp. ("American Protection").

4.    Between May 26, 2020 and August 18, 2020, I received 172 calls initiated by American Protection. (*See* Exhibit 1)

5.    On May 26, 2020, I placed a call to American Protection, which went unanswered. (*See* Exhibit 1, at line 2.)

6.    On May 28, 2020, at 12:51 p.m. ET, I received a call placed by American Protection. During this call, I feigned an interest in the products being offered to ascertain the identity of the calling entity.

7.    On June 11, 2020, at 8:49 a.m. ET, I sent an email to American Protection, which stated that I was no longer interested in purchasing any vehicle service contract or auto warranty and stated, "Do not call me anymore."

8.    Despite requesting that American Protection stop calling, I continued to receive 116 calls initiated by American Protection between June 11, 2020 and August 18, 2020—which includes 50 calls that I received after July 11, 2020. (*See* Exhibit 1, lines 60-62, 64, 66-127, 129-178.)

9.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further affiant sayeth not.

Executed on __01 / 05 / 2023_____, in the State of Virginia.


_____
                                    Ruth Smith

Doc ID: e49daa69e5211785b3155c3d475ad3fc855400d8

Exhibit 1

| | CALL ID | SESSION | DATE | TIME | DNIS | ANI | CALL TYPE | DURATION | HOLD TIM | HANDLE T | ACW TIM | TALK TIM | PARK TIM | CONF. TI | CONSULT | THIRD PA | QUEUE T | HOLD CO | CONF. CO | PARK CO | CALLS CO | CALLS AB | DISPOSITI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 3E+14 | 1544F4EE85 | 5/26/20 | 12:52:08 | 3107340319 | 7037289650 | Inbound | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:07 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 3 | 3E+14 | CA619FDEF9 | 5/26/20 | 12:58:52 | 7037289650 | 8152494786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 4 | 3E+14 | B9F1E1D860 | 5/26/20 | 13:45:08 | 7037289650 | 2817090786 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 5 | 3E+14 | ACDF4D55A1 | 5/26/20 | 15:50:46 | 7037289650 | 2817090786 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 6 | 3E+14 | C015669662I | 5/28/20 | 7:06:50 | 7037289650 | 2817090786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 7 | 3E+14 | 71BC8SF9FEI | 5/28/20 | 7:53:58 | 3107340319 | 7037289650 | Inbound | 0:01:42 | 0:00:00 | 0:03:05 | 0:01:26 | 0:01:39 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 8 | 3E+14 | 28A426B7AA | 5/28/20 | 7:57:09 | 7037289650 | 2817090786 | Manual | 0:00:12 | 0:00:00 | 0:00:15 | 0:00:03 | 0:00:12 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 9 | 3E+14 | 53CF57065CO | 5/28/20 | 9:51:27 | 7037289650 | 2817090786 | Outbound | 0:16:48 | 0:00:00 | 0:19:35 | 0:02:51 | 0:16:44 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Personal Call |
| 10 | 3E+14 | 799FFCFF4D | 5/28/20 | 10:52:15 | 7037289650 | 2817090786 | Manual | 0:00:15 | 0:00:00 | 0:00:17 | 0:00:03 | 0:00:14 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 11 | 3E+14 | DBF76A046E | 5/28/20 | 10:54:00 | 7037289650 | 2817090786 | Manual | 0:00:37 | 0:00:00 | 0:02:30 | 0:01:54 | 0:00:36 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 12 | 3E+14 | 906F00AF1A | 5/28/20 | 12:08:35 | 7037289650 | 2817090786 | Manual | 0:01:25 | 0:00:00 | 0:02:28 | 0:01:08 | 0:01:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 13 | 3E+14 | A412CD988B | 5/29/20 | 7:03:42 | 7037289650 | 2817090786 | Manual | 0:00:07 | 0:00:00 | 0:00:25 | 0:00:18 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 14 | 3E+14 | C103C9634B! | 5/29/20 | 7:27:16 | 7037289650 | 2817090786 | Outbound | 0:00:24 | 0:00:00 | 0:00:21 | 0:00:02 | 0:00:19 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 15 | 3E+14 | 73C8E266AB | 5/29/20 | 10:15:55 | 7037289650 | 3522003321 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 16 | 3E+14 | 6852AE8315 | 5/29/20 | 12:17:08 | 7037289650 | 3522002321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 17 | 3E+14 | 7A665F9FD9 | 5/29/20 | 15:18:57 | 7037289650 | 3522002321 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 18 | 3E+14 | 7BE2474D1D | 5/29/20 | 15:19:17 | 7037289650 | 3522002321 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 19 | 3E+14 | CFF0D4442C | 5/29/20 | 16:06:40 | 7037289650 | 3522002321 | Manual | 0:00:03 | 0:00:00 | 0:01:04 | 0:01:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 20 | 3E+14 | 488CC52FA3 | 5/30/20 | 11:57:49 | 7037289650 | 4074797228 | Manual | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 21 | 3E+14 | 27DA39D539 | 5/30/20 | 11:58:32 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 22 | 3E+14 | AB4FF515A0 | 5/30/20 | 13:06:12 | 7037289650 | 4074797228 | Manual | 0:00:06 | 0:00:00 | 0:00:09 | 0:00:03 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 23 | 3E+14 | C084E7753A | 6/1/20 | 7:14:37 | 7037289650 | 2817090884 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 24 | 3E+14 | 854A9F9952 | 6/1/20 | 9:36:38 | 7037289650 | 2817090884 | Outbound | 0:00:17 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 25 | 3E+14 | 6C5CF69B24 | 6/1/20 | 14:11:23 | 7037289650 | 2817090849 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 26 | 3E+14 | DDFAD225DI | 6/1/20 | 14:12:01 | 7037289650 | 2817090849 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 27 | 3E+14 | 0A11019694 | 6/1/20 | 14:41:20 | 7037289650 | 2817090849 | Outbound | 0:00:02 | 0:00:00 | 0:00:07 | 0:00:05 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Answering M |
| 28 | 3E+14 | C94530DCCB | 6/1/20 | 16:08:29 | 7037289650 | 2817090849 | Manual | 0:00:03 | 0:00:00 | 0:00:07 | 0:00:05 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 29 | 3E+14 | 49EB9B0C97 | 6/1/20 | 16:09:26 | 7037289650 | 2817090849 | Manual | 0:00:46 | 0:00:00 | 0:00:52 | 0:00:07 | 0:00:46 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 30 | 3E+14 | 0516DB7877 | 6/2/20 | 8:24:27 | 7037289650 | 5125534518 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 31 | 3E+14 | E5AE446E13 | 6/2/20 | 10:44:25 | 7037289650 | 2816679986 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 32 | 3E+14 | 648BC197F3! | 6/2/20 | 13:13:11 | 7037289650 | 2816679986 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 33 | 3E+14 | FCB256765D | 6/2/20 | 14:33:41 | 7037289650 | 2816679986 | Manual | 0:00:06 | 0:00:00 | 0:00:08 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 34 | 3E+14 | C93E917E57I | 6/3/20 | 10:05:35 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | No Answer |
| 35 | 3E+14 | E3EB8458A3 | 6/3/20 | 14:34:04 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 36 | 3E+14 | CC55D0820A | 6/3/20 | 16:20:41 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 37 | 3E+14 | BEF0F6D665 | 6/4/20 | 11:52:54 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 38 | 3E+14 | 6121F8FF91I | 6/4/20 | 15:52:07 | 7037289650 | 4074797228 | Manual | 0:00:14 | 0:00:00 | 0:00:16 | 0:00:03 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 39 | 3E+14 | 510F2A8099 | 6/4/20 | 15:53:18 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 40 | 3E+14 | B3587DA32B | 6/5/20 | 7:52:30 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 41 | 3E+14 | C54170F433I | 6/5/20 | 7:52:52 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 42 | 3E+14 | C8A5F63C14! | 6/5/20 | 8:31:34 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 43 | 3E+14 | 1F3A230F71 | 6/5/20 | 9:32:27 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 44 | 3E+14 | CFEE4B3F75 | 6/5/20 | 11:46:15 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 45 | 3E+14 | 8742E32BBC | 6/5/20 | 11:46:26 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 46 | 3E+14 | 4F10EAFD4B | 6/6/20 | 11:17:23 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 47 | 3E+14 | EC02741908I | 6/6/20 | 11:17:46 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 48 | 3E+14 | 7AF2616D4C | 6/8/20 | 9:59:20 | 7037289650 | 4074797228 | Manual | 0:00:54 | 0:00:00 | 0:01:09 | 0:00:16 | 0:00:53 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 49 | 3E+14 | F3C6D4D919 | 6/8/20 | 10:21:17 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 50 | 3E+14 | 1F6902008EI | 6/8/20 | 13:51:12 | 7037289650 | 4074797228 | Manual | 0:00:21 | 0:00:00 | 0:00:23 | 0:00:02 | 0:00:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 3E+14 | 83486C7FDD | 6/8/20 | 13:52:03 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:04 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 52 | 3E+14 | 2A0DF394CE | 6/8/20 | 16:31:35 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 53 | 3E+14 | D154AB5093 | 6/8/20 | 16:31:49 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 54 | 3E+14 | 4853F7B924 | 6/8/20 | 16:32:08 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 55 | 3E+14 | AF03D9AD2C | 6/9/20 | 8:10:00 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 56 | 3E+14 | 98B7C77DFF | 6/9/20 | 13:32:13 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 57 | 3E+14 | 9025B48D70 | 6/9/20 | 16:39:29 | 7037289650 | 4074797228 | Manual | 0:00:09 | 0:00:00 | 0:00:10 | 0:00:02 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 58 | 3E+14 | 6A5469682F | 6/10/20 | 9:14:14 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 59 | 3E+14 | 263A60855F | 6/11/20 | 7:06:05 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 60 | 3E+14 | DCC3AE8CE8 | 6/11/20 | 9:39:59 | 7037289650 | 4074797228 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 61 | 3E+14 | 0792C13279 | 6/11/20 | 13:30:46 | 7037289650 | 4074797228 | Manual | 0:00:08 | 0:00:00 | 0:00:18 | 0:00:10 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 62 | 3E+14 | 9C1FED306C | 6/12/20 | 9:36:18 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 63 | 3E+14 | 7CDB0407B9 | 6/12/20 | 10:06:49 | 4074797228 | 7037289650 | Inbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 64 | 3E+14 | D9D8278AFE | 6/13/20 | 8:42:29 | 7037289650 | 7187018964 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 65 | 3E+14 | 9EC32C616D | 6/13/20 | 9:31:48 | 7187018964 | 7037289650 | Inbound | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Abandon |
| 66 | 3E+14 | EFD7D12BD4 | 6/13/20 | 9:38:18 | 7037289650 | 7187018964 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 67 | 3E+14 | 2D869605BE | 6/15/20 | 9:26:58 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 68 | 3E+14 | 4E927D33C5 | 6/15/20 | 14:59:36 | 7037289650 | 2163936985 | Outbound | 0:00:13 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 69 | 3E+14 | 10E4E23E84I | 6/16/20 | 7:01:43 | 7037289650 | 2163936985 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 70 | 3E+14 | FD934C51D9 | 6/16/20 | 9:22:06 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 71 | 3E+14 | 947D48034F | 6/16/20 | 9:22:25 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 72 | 3E+14 | F5FCEF359A | 6/16/20 | 10:06:07 | 7037289650 | 2696820245 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 73 | 3E+14 | FFD9E2E71F | 6/16/20 | 13:20:50 | 7037289650 | 2696820245 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 74 | 3E+14 | F991559D02 | 6/16/20 | 15:58:07 | 7037289650 | 2696820245 | Manual | 0:00:00 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 75 | 3E+14 | 4F81B49885 | 6/17/20 | 9:36:55 | 7037289650 | 3059081169 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 76 | 3E+14 | 3FE9A1264D | 6/17/20 | 12:49:20 | 7037289650 | 3059081169 | Outbound | 0:00:14 | 0:00:00 | 0:00:31 | 0:00:21 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 77 | 3E+14 | 72C3263C8B | 6/17/20 | 13:12:44 | 7037289650 | 3059081169 | Manual | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 78 | 3E+14 | 7954057BB3 | 6/17/20 | 14:01:20 | 7037289650 | 3059081169 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 79 | 3E+14 | D91AE5A40E | 6/17/20 | 16:18:26 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 80 | 3E+14 | 9DAF1B414E | 6/18/20 | 7:15:13 | 7037289650 | 3125770024 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 81 | 3E+14 | F203086466 | 6/18/20 | 9:10:52 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:11 | 0:00:07 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 82 | 3E+14 | 19C64D3D78 | 6/18/20 | 11:39:24 | 7037289650 | 3125770024 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 83 | 3E+14 | 3E25AD4C18 | 6/18/20 | 12:47:37 | 7037289650 | 3125770024 | Manual | 0:00:18 | 0:00:00 | 0:00:20 | 0:00:03 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 84 | 3E+14 | 9F2A104F67 | 6/18/20 | 12:48:30 | 7037289650 | 3125770024 | Manual | 0:00:09 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 85 | 3E+14 | 06939B79B8 | 6/19/20 | 7:19:36 | 7037289650 | 3132815613 | Outbound | 0:00:10 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 86 | 3E+14 | 2B20E60171 | 6/19/20 | 10:44:38 | 7037289650 | 4076120572 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 87 | 3E+14 | 7B4825317E | 6/19/20 | 13:24:47 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 88 | 3E+14 | 5D8C51D510 | 6/19/20 | 13:25:09 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 89 | 3E+14 | D18C7A96B9 | 6/19/20 | 14:50:28 | 7037289650 | 4076120572 | Manual | 0:00:36 | 0:00:00 | 0:00:38 | 0:00:07 | 0:00:31 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 90 | 3E+14 | 5EC62661E2 | 6/20/20 | 10:08:13 | 7037289650 | 5125888120 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 91 | 3E+14 | 46FADBD6AC | 6/20/20 | 11:18:33 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 92 | 3E+14 | 37BED99003 | 6/22/20 | 9:14:47 | 7037289650 | 5125888120 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 93 | 3E+14 | D9478CD3C4 | 6/22/20 | 15:09:49 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 94 | 3E+14 | D41A75FF17 | 6/23/20 | 12:37:14 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 95 | 3E+14 | 7BA0279823 | 6/23/20 | 14:26:32 | 7037289650 | 9047176954 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 96 | 3E+14 | 6A97800AAC | 6/24/20 | 9:20:38 | 7037289650 | 9047176954 | Manual | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 97 | 3E+14 | BC90FD34E5 | 6/24/20 | 9:21:05 | 7037289650 | 9047176954 | Manual | 0:00:05 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 98 | 3E+14 | C0B632490C | 6/24/20 | 14:27:48 | 7037289650 | 9047176954 | Manual | 0:00:02 | 0:00:00 | 0:00:02 | 0:00:00 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 99 | 3E+14 | 2544960B01 | 6/25/20 | 7:16:31 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 100 | 3E+14 | A80291D68E | 6/25/20 | 9:36:12 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 3E+14 | 6F5A68CA3B | 6/25/20 | 9:51:54 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 102 | 3E+14 | 9D362D8E84 | 6/26/20 | 10:51:57 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 103 | 3E+14 | C4BDE07A1C | 6/26/20 | 14:38:28 | 7037289650 | 9179942924 | Manual | 0:00:18 | 0:00:00 | 0:00:22 | 0:00:04 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 104 | 3E+14 | 0DB0569DD8 | 6/26/20 | 15:48:49 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 105 | 3E+14 | 13BDB42B9! | 6/29/20 | 8:46:40 | 7037289650 | 2696820245 | Outbound | 0:00:26 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:13 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 106 | 3E+14 | 83305465EE | 6/29/20 | 12:55:19 | 7037289650 | 3059081169 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 107 | 3E+14 | 70E40ED7DA | 6/30/20 | 11:28:41 | 7037289650 | 2696820506 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 108 | 3E+14 | CDDFDDE4C8 | 7/1/20 | 7:15:03 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 109 | 3E+14 | CD0C57A507 | 7/1/20 | 15:35:56 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 110 | 3E+14 | BEFEE2EC68 | 7/2/20 | 10:58:51 | 7037289650 | 3134869416 | Outbound | 0:00:35 | 0:00:00 | 0:00:35 | 0:00:05 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 111 | 3E+14 | D8CC9072FA | 7/3/20 | 13:23:42 | 7037289650 | 5128554305 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 112 | 3E+14 | 9BF0C4DCA5 | 7/6/20 | 9:39:54 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 113 | 3E+14 | 18224DA460 | 7/6/20 | 14:08:10 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 114 | 3E+14 | E37B3ECD8E | 7/6/20 | 15:27:27 | 7037289650 | 7348884504 | Manual | 0:00:04 | 0:00:00 | 0:00:13 | 0:00:10 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 115 | 3E+14 | 8F10C61457! | 7/6/20 | 15:55:58 | 7037289650 | 9045076919 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 116 | 3E+14 | A0E05B12C8 | 7/7/20 | 13:00:19 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 117 | 3E+14 | F0CF391360 | 7/7/20 | 14:09:11 | 7037289650 | 2487939009 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 118 | 3E+14 | D9F27C7EDC | 7/8/20 | 10:34:13 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 119 | 3E+14 | AB8349C209 | 7/9/20 | 7:07:41 | 7037289650 | 3123007050 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 120 | 3E+14 | CA2F283BD2 | 7/9/20 | 12:07:40 | 7037289650 | 3133489416 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 121 | 3E+14 | 70D70CD308 | 7/9/20 | 12:08:14 | 7037289650 | 3133489416 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 122 | 3E+14 | 023E6955F2I | 7/9/20 | 15:43:12 | 7037289650 | 4076055018 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 123 | 3E+14 | 0B5D74B67B | 7/10/20 | 10:35:36 | 7037289650 | 6174407961 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 124 | 3E+14 | B4FED9C85A | 7/10/20 | 12:02:51 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 125 | 3E+14 | A829285DC0 | 7/10/20 | 12:03:12 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 126 | 3E+14 | CA66972833 | 7/10/20 | 15:53:54 | 7037289650 | 2483136496 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 127 | 3E+14 | D16CCD3EBE | 7/10/20 | 15:54:22 | 7037289650 | 2483136496 | Manual | 0:00:10 | 0:00:00 | 0:00:11 | 0:00:02 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 128 | 3E+14 | 58483AF31C | 7/11/20 | 10:33:21 | 6174407961 | 7037289650 | Inbound | 0:00:07 | 0:00:00 | 0:00:10 | 0:00:05 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 129 | 3E+14 | 9E1AFCF9CB | 7/11/20 | 10:52:39 | 7037289650 | 2483136496 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 130 | 3E+14 | C67ECFE1A2 | 7/11/20 | 10:54:05 | 7037289650 | 2483136496 | Manual | 0:00:31 | 0:00:00 | 0:00:33 | 0:00:03 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 131 | 3E+14 | BD71DD9C1C | 7/11/20 | 10:54:47 | 7037289650 | 2483136496 | Manual | 0:00:13 | 0:00:00 | 0:00:15 | 0:00:02 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 132 | 3E+14 | EC0EAA1607 | 7/13/20 | 8:54:48 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 133 | 3E+14 | 0199019776. | 7/13/20 | 13:45:17 | 7037289650 | 3057484394 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 134 | 3E+14 | 3AD8C11A2E | 7/14/20 | 12:17:42 | 7037289650 | 3124700811 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 135 | 3E+14 | CD9FD88D78 | 7/14/20 | 15:24:33 | 7037289650 | 3132815693 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 136 | 3E+14 | 1A20B89775 | 7/15/20 | 9:54:31 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 137 | 3E+14 | 9B40B00DA4 | 7/15/20 | 12:56:33 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 138 | 3E+14 | F556E0C20B | 7/16/20 | 13:15:07 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 139 | 3E+14 | 13B431FDF4 | 7/16/20 | 15:36:01 | 7037289650 | 6172064680 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 140 | 3E+14 | 9552389A36 | 7/17/20 | 9:02:56 | 7037289650 | 7342064680 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 141 | 3E+14 | 4D1074484E | 7/18/20 | 8:17:36 | 7037289650 | 7342064680 | Outbound | 0:00:16 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 142 | 3E+14 | 81CF435E59! | 7/20/20 | 10:51:47 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 143 | 3E+14 | 24BEC97973 | 7/20/20 | 13:23:07 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 144 | 3E+14 | B21004FA93 | 7/21/20 | 9:58:31 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 145 | 3E+14 | 18EB7DB383 | 7/21/20 | 9:58:37 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 146 | 3E+14 | D8C1F0AF3B | 7/22/20 | 7:56:30 | 7037289650 | 3124700811 | Outbound | 0:00:13 | 0:00:00 | 0:00:10 | 0:00:03 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 147 | 3E+14 | E13D1CB528 | 7/22/20 | 9:30:57 | 7037289650 | 3124700811 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 148 | 3E+14 | 77A3775612 | 7/22/20 | 9:31:14 | 7037289650 | 3124700811 | Manual | 0:00:04 | 0:00:00 | 0:00:21 | 0:00:17 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 149 | 3E+14 | D1AE20212D | 7/23/20 | 14:10:14 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 150 | 3E+14 | 24FFF8A363 | 7/23/20 | 16:00:26 | 7037289650 | 7342064116 | Manual | 0:00:07 | 0:00:00 | 0:00:11 | 0:00:05 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

3

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | 3E+14 | C688A6C8DF | 7/24/20 | 14:33:01 | 7037289650 | 2692004257 | Manual | 0:00:02 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 152 | 3E+14 | 883CD190FE | 7/25/20 | 7:41:03 | 7037289650 | 2692004257 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 153 | 3E+14 | 77CC72E59A | 7/25/20 | 10:10:00 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 154 | 3E+14 | A0A40D849F | 7/25/20 | 11:36:28 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 155 | 3E+14 | 2192991424 | 7/27/20 | 12:36:59 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 156 | 3E+14 | 56F220B736 | 7/27/20 | 13:36:53 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 157 | 3E+14 | 6545A3E989 | 7/28/20 | 14:40:57 | 7037289650 | 4076120673 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 158 | 3E+14 | 305EF70EEE | 7/29/20 | 7:21:28 | 7037289650 | 4076120673 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 159 | 3E+14 | 4D5A6FC0C1 | 7/29/20 | 15:33:44 | 7037289650 | 2037796516 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 160 | 3E+14 | CBB82A0651 | 7/30/20 | 12:45:27 | 7037289650 | 2488091721 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 161 | 3E+14 | 628D570E22 | 7/31/20 | 9:15:23 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 162 | 3E+14 | 25236EA74D | 7/31/20 | 12:48:14 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 163 | 3E+14 | 8116CFB20D | 8/3/20 | 12:04:46 | 7037289650 | 6026129574 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 164 | 3E+14 | 633A92F50E | 8/3/20 | 14:35:20 | 7037289650 | 6026129574 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 165 | 3E+14 | 25F22DF0F0 | 8/4/20 | 15:41:25 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 166 | 3E+14 | 2C6103FDBB | 8/5/20 | 9:22:43 | 7037289650 | 9179663235 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 167 | 3E+14 | 5E38CC05F1 | 8/6/20 | 9:05:23 | 7037289650 | 3129733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 168 | 3E+14 | 51D488CE1F | 8/7/20 | 11:29:46 | 7037289650 | 5122121577 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 169 | 3E+14 | EBC4E18DD5 | 8/7/20 | 12:20:59 | 7037289650 | 7342064116 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 170 | 3E+14 | C132971CFC | 8/7/20 | 15:57:48 | 7037289650 | 3139733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 171 | 3E+14 | 15F78505E0 | 8/10/20 | 12:15:22 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 172 | 3E+14 | 1F86C1A08E | 8/10/20 | 14:23:59 | 7037289650 | 5124305992 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 173 | 3E+14 | B5BD08D63! | 8/11/20 | 15:33:02 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 174 | 3208 | FF093242E0 | 8/12/20 | 12:00:42 | 7037289650 | 3129733698 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 175 | 3E+14 | B1ACDC0989 | 8/13/20 | 9:43:17 | 7037289650 | 9044251482 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 176 | 3E+14 | 84D7946F35 | 8/14/20 | 12:40:18 | 7037289650 | 3057674115 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 177 | 3E+14 | C5D181F2D2 | 8/14/20 | 14:19:00 | 7037289650 | 3057674115 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 178 | 3E+14 | 1BE2BCA61F | 8/18/20 | 15:35:22 | 7037289650 | 7348884537 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 179 | | | | | | | | | | | | | | | | | | | | | | | |
| 180 | | | | | | | | | | | | | | | | | | | | | | | |
| 181 | | | | | | | | | | | | | | | | | | | | | | | |
| 182 | | | | | | | | | | | | | | | | | | | | | | | |
| 183 | | | | | | | | | | | | | | | | | | | | | | | |
| 184 | | | | | | | | | | | | | | | | | | | | | | | |
| 185 | | | | | | | | | | | | | | | | | | | | | | | |
| 186 | | | | | | | | | | | | | | | | | | | | | | | |

4

**JA782**

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CAMPAIG | AGENT | AGENT E | SKILL | RATE | BILL TIME | COST | NUMBER | NUMBER | NUMBER | FIRST NA | LAST NAM | COMPAN | STREET | CITY | STATE | ZIP | |
| 2 | TIGER LIVE T | [None] | [Deleted] | LIVE TRANSF | 0 | 0:00:00 | 0 | | | | Ruth | Smith | 617RC12986 | | | | | |
| 3 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 4 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 5 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 6 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 7 | TIGER LIVE T | sjaeger@am | sjaeger@am | LIVE TRANSF | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 8 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 9 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 10 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 11 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 12 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 13 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 14 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 15 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 16 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 17 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 18 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 19 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 20 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 21 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 22 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 23 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 24 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 25 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 26 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 27 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 28 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 29 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 30 | GC_Aged | [Deleted] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 31 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 32 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 33 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 34 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 35 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 36 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 37 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 38 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 39 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 40 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 41 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 42 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 43 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 44 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 45 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 46 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 47 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 48 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 49 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 50 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 52 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 53 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 54 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 55 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 56 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 57 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 58 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 59 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 60 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 61 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 62 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 63 | Inbound Sale | [Deleted] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 64 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 65 | Inbound Sale | [Deleted] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 66 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 67 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 68 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 69 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 70 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 71 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 72 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 73 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 74 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 75 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 76 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 77 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 78 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 79 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 80 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 81 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 82 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 83 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 84 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 85 | Quoted - Fol | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 86 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 87 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 88 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 89 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 90 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 91 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 92 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 93 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 94 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 95 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 96 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 97 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 98 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 99 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 100 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 102 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 103 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 104 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 105 | Quoted - Fol | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 106 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 107 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 108 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 109 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 110 | L2 Campaign | edenton@an | edenton@an | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 111 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 112 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 113 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 114 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 115 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 116 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 117 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 118 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 119 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 120 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 121 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 122 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 123 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 124 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 125 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 126 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 127 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 128 | Inbound Sale | lrry190@net | lrry190@net | Inbound Sale | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 129 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 130 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 131 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 132 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 133 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 134 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 135 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 136 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 137 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 138 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 139 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 140 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 141 | TIGER POST | ldelbrocco@ | ldelbrocco@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 142 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 143 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 144 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 145 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 146 | TIGER POST | sgoodhew@ | sgoodhew@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 147 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 148 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 149 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 150 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 152 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 153 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 154 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 155 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 156 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 157 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 158 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 159 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 160 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 161 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 162 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 163 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 164 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 165 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 166 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 167 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 168 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 169 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 170 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 171 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 172 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 173 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 174 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 175 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 176 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 177 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 178 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 179 | | | | | | | | | | | | | | | | | | |

# Exhibit I

5/28/20
Company: American Protection
Agent: Samantha
Phone: 1-800-427-1806 (Ext 1190)
Website: Americanprotectioncorp.com
Location: FL
Type of call: I answered the call there was a 3 second delay and Samantha came on the line.
16 Minute call at 12:51PMET
Received a voicemail from Samantha (following up on my VIN number) at 1:55PMET and an email quote from Samantha at 4:09PMET.
(In order to for Samantha to provide me the information I let her know that I would purchase the highest plan and gave her a Visa gift card as payment)

# Exhibit J

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

---

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

**Samantha** Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

**Vehicle**
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

**Coverage Plan**
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

**Plan Cost**
Subtotal:        $3,589.00
Tax:                    $0.00
Total:            $3,589.00
Down Payment:      $99.00
Payments:               30
Monthly Payment:  $116.33

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance
- Complimentary Car Rental & Towing
- Complimentary Trip Interruption / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St

**JA790**

Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

**JA791**

# American Automotive Protection

☎ - (800) 427-1806

## Your Plan

Coverage Provided By

# SunPath

Coverage Duration

# 48$^{mo}$ / 75,000$^{mi}$

The Vehicle Service Contract you are purchasing will cover your vehicle until the vehicle odometer reads 76,000$^{mi}$ or June 27, 2024, whichever occurs first.

Coverage Type

# Diamond Coverage

○ View Coverage Terms (../openfile.aspx?documentid=139)

---

## Deductible

○ $0.00
○ $50.00
◉ $100.00

---

## Payment

◉ Monthly Installments
○ Full Payment

Due Today

$99.00

30 Monthly Payments of

$116.33

---

## Your Vehicle

2016 BMW 228

**JA792**

## Exact Odometer:

9,500

Enter VIN Number

Validate

Vehicle VIN needs validated for accurate pricing.

---

# Policy Holder Information

**First Name**

Ruth

**Last Name**

Smith

**Phone**

(703) 728-9650

**Email**

rdssmith@gmail.com

**Address**

12000 Market St

**Apt/Suite**

apt 356

**City**

Reston

**State**

VA

**Zip**

20190

---

# Your Account

JA793

Upon review and approval of your purchase you will be notified via email how to access your account online. If you already have an account, this new policy will be linked to your existing account by matching your email address on file.

Exhibit K

**From:** Ruth Smith <rdssmith@gmail.com>
**Date:** June 11, 2020 at 7:49:00 AM CDT
**To:** sjaeger@americanprotectioncorp.com
**Subject: Re: American Protection Corp. Quote Summary**


Samantha,

I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty for my car.

Do not call me anymore.

Ruth


On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

Samantha Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

| Vehicle | |
|---|---|
| Make: 2016 BMW | |
| Model: 228 | |
| Odometer: 9,500 | |
| Vin: | |

| Coverage Plan | |
|---|---|
| Plan: Diamond | |
| Expiration Date: 6/27/2024 | |
| Expiration Miles: 76,000 | |
| Deductible: $100.00 | |

| Plan Cost | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance

**JA796**

- Complimentary Car Rental & Towing
- Courteous Customer Support / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St
Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

Exhibit L



**Planet Depos**
We Make It *Happen*™

# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF VIRGINIA

3                      Alexandria Division

4       --------------------------x

5    RUTH SMITH, individually    :

6    and on behalf of all        :

7    others similarly situated,  :

8                 Plaintiffs, : Case No.:

9       v.                       : 1:22-cv-00081-LMB-TCB

10   SUNPATH, LTD., a            :

11   Massachusetts corporation,  :

12                 Defendant.  :

13      --------------------------x

14

15              Deposition of RUTH SMITH

16                  McLean, Virginia

17              Friday, December 2, 2022

18                  9:56 a.m. EST

19

20   Job No:  472707

21   Pages:  1 - 213

22   Reported by:  Kelly Carnegie, CSR, RPR
```

Transcript of Ruth Smith
December 2, 2022                                                    53

```
1              (Discussion off the record from 11:00

2    a.m. to 11:00 a.m.)

3              MR. CAFFAS:  Let's go back on the

4    record.

5              Can you reread my last question, Kelly.

6              (The reporter read the requested

7    testimony.)

8    BY MR. CAFFAS:

9        Q    Why would you have to refer to your

10   notes?

11       A    For the exact language.

12       Q    Do you remember anything about the

13   language that led you to make that statement that

14   the purpose of the call was to solicit the sale of

15   SunPath's vehicle service contracts?

16       A    Based on my memory, they gave the name

17   of the company and what they were -- what they

18   were -- I think what they were selling.

19       Q    When you say the name of the company,

20   what was the name of the company?

21       A    SunPath.

22       Q    You say that they used the word
```

Exhibit M















## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

**RUTH SMITH,** individually and on behalf of
all others similarly situated,

    *Plaintiff,*

*v.*

**SUNPATH, LTD.,** a Massachusetts corporation,

    *Defendant.*

Case No. 1:22-cv-00081-LMB-TCB

**RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## I.   INTRODUCTION

This case challenges Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") serial

violations of the Virginia Telephone Privacy Protection Act ("VTPPA").[1] In an attempt to

market and sell its vehicle service contracts, SunPath contracted with telemarketing agents like

Chukran Management Group LLC, d/b/a American Protection ("American Protection") that—

acting on SunPath's behalf and for its benefit—placed unsolicited telemarketing calls to

consumers like Plaintiff Smith who registered their phone numbers on the National Do Not Call

("DNC") Registry specifically to avoid the receipt of such calls.

Defendant has moved for summary judgment with respect to Plaintiff's VTPPA claims,

arguing that her claims fail or should "be dismissed" because: (1) the calls at issue were

supposedly made pursuant to an established business relationship and therefore were not

solicitation calls; (2) SunPath cannot be held jointly or severally liable for the actions of

---

[1] Plaintiff no longer intends to pursue her claims related to the TCPA, and, as indicated in her
concurrently-filed Motion for Summary Judgment, Plaintiff seeks to proceed with a
determination of her VTPPA claims.

American Protection because SunPath is not a "seller" and its products were supposedly not offered on the calls to Plaintiff; and (3) Plaintiff's claims for failure of callers to self-identify by first and last name cannot be applied to calls that she did not answer. While Plaintiff concedes the final point that the claim for failure to identify does not apply to calls she did not answer, Defendant's remaining arguments for summary judgment or "dismissal" are not supported by undisputed facts. Rather, SunPath's litany of "undisputed facts" is instead a series of legal arguments in which Defendant selectively interprets the underlying factual record (to which there are generally few disputes) in its favor. When considering the complete factual record, including evidence that weighs against the legal arguments that SunPath implores the Court to adopt, Defendant's arguments for summary judgment or "dismissal" fail—SunPath is simply not entitled to judgment as a matter of law.

First, Defendant's argument that the calls at issue were made pursuant to an established business relationship ("EBR") is not without dispute. SunPath contends that an EBR was established on May 26, 2020, when Plaintiff made a call to American Protection that was not answered. Plaintiff does not dispute making such a call, but whether the unanswered May 26, 2020 call constitutes an "inquiry" sufficient to establish an EBR is a genuine issue that remains for determination; Plaintiff contends that the EBR between herself and American Protection, if any, began on May 28, 2020, when she actually spoke at length with a representative regarding the products in question. Further, while it is undisputed that Plaintiff requested the calls stop on June 11, 2020, the applicability of the TCPA's 30-day rule for callers to honor stop requests to VTPPA claims is uncertain, and it otherwise should not be applied to immunize the actions of a caller who failed to honor the request at all. Even if it were to apply here, Plaintiff still received fifty (50) calls marketing SunPath's products more than thirty days after her stop request.

2

Second, the factual record does not support judgment as a matter of law in favor of SunPath on its belief that it cannot be held jointly and severally liable under the VTPPA for calls made by American Protection. Though a dispute exists as to whether SunPath's name was mentioned on the calls, the facts support a finding that Defendant is a "seller" as defined in the statute and its products or services were being offered to Plaintiff on the calls. Likewise, there is no "clear and convincing" evidence to rebut the VTPPA's presumption that the calls were initiated on behalf or for the benefit of SunPath because the Call Center Marketing Agreement ("CCMA") plainly retained American Protection's services to do so.

Accordingly, and as explained below, Defendant's Motion to Summary Judgment should be denied. Plaintiff does, however, concede that her claims for violation of Section 59.1-512 of the VTPPA—failure of callers to identify themselves by first and last name—is inapplicable to calls that Plaintiff did not answer.

## II.   DISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56(B), Plaintiff hereby responds to each of Defendant's purported "undisputed facts," including record cites to support each dispute. As a preliminary note, because SunPath's statement of "undisputed facts" comprises legal arguments and conclusions in addition to facts, Plaintiff has included statements of dispute responding to such arguments:

1.      Disputed as phrased and not supported by the proffered evidence. Plaintiff received 172 calls placed by American Protection. (*See* Summary of Five9 call records relating to Plaintiff's phone number, attached hereto as Ex. A[2]; *see also* Declaration of Ruth Smith ("Smith Decl."),

---

[2] The Five9 Call Records data file is available in native format for inspection by the Court upon request.

3

**JA809**

attached hereto as Ex. B ¶ 4.) American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr., excerpts of which are attached hereto as Ex. C, at 53:12-21 ("Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath.").

Further, the May 28, 2020 follow-up email that American Protection sent to Plaintiff contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, attached hereto as Ex. D; *see also* AP Depo. Tr., attached hereto as Ex. E, at 189:1-191:8 (explaining that the email and link attached as Ex. D was generated by American Protection's Inline CRM system)).

Added to this, American Protection's internal CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. F, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. D.) The CRM system reveals no other VSC quotes. (*See* CRM Screenshots, Ex. F, at pg. 1.)

Additionally, American Protection's designee testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase only that company's plan. (AP Depo. Tr., Ex. E, at 35:3-10) If the customer was ultimately rejected for coverage by SunPath,

4

American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.* at 37:11-15.)

Finally, Plaintiff disputes SunPath's characterization that she seeks to hold it "vicariously liable" for the calls placed by American Protection. In addition to vicarious liability, Plaintiff asserts that SunPath is "directly liable under VA. CODE ANN. § 59.1-514.1 (West) for the calls in violation of the VTPPA." (Plaintiff's Second Supplemental Responses to Discovery, p. 7, attached hereto as Ex. G.)

2. Undisputed.

3. Undisputed.

4. Disputed as phrased. Plaintiff does not dispute that SunPath does not directly sell any of its VSCs, but Plaintiff disputes the claim that SunPath "does not have any role" in the sales of its VSCs. SunPath contracts with third-parties who solicit the sale of SunPath's VSCs via its Call Center Marketing Agreements. (*See* Call Center Marketing Agreement, attached hereto as Ex. H.) SunPath derived 100 percent of its revenue from third party sales of its VSCs. (SunPath Depo. Tr., excerpts of which are attached hereto as Ex. I, at 71:12-19.)

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Disputed. Plaintiff disputes the contention that "SunPath did not exercise any control over how American Protection" marketed Defendant's products. The Call Center Marketing Agreement requires American Protection to "actively market" SunPath's products and limits the territory in which it is permitted to solicit customers. (Ex. H, at pg. 1). Additionally,

5

**JA811**

SunPath provides "Promotional Materials" to American Protection, which cannot be altered, substituted, or supplemented without SunPath's written authorization. (*Id.*) The Call Center Marketing Agreement also requires American Protection to perform acts necessary to protect and safeguard the interests of SunPath, and requires it to maintain and service customers in accordance with SunPath's policies and procedures. (*Id.*)

10. Undisputed.

11. Undisputed.

12. Disputed. SunPath's Call Center Marketing Agreement specifies how American Protection is compensated for the sale of its VSCs. (Ex. H, at pg. 2.) Specifically, the agreement states in relevant part:

> 13) [American Protection's] compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by [American Protection] and the Net Price as supplied by [SunPath], and at all times inclusive of any down payment, the minimum of which is five percent (5%). For the purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to [SunPath] for approval and approved by [SunPath] accompanied by full payment or financing approved by [Sunpath].
>
> 14) Payment or realization of compensation to [American Protection] is the sole responsibility of [American Protection] and [American Protection] shall indemnify and hold [SunPath] harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by [SunPath] as a result of any claim asserted by [American Protection] that compensation had not been paid.
>
> 15) The compensation paid or realized by [American Protection] constitutes all compensation paid or payable to [American Protection] for services pursuant hereto, including all expenses incurred by [American Protection] in the performance of its duties as detailed herein. In all cases [American Protection] shall be solely responsible for all of its expenses.

(*Id.*) Hence, American Protection was compensated for each sale by receiving the difference between the sale price and the "net price" set by SunPath for the sale of its VSCs. (*Id.*; *see also* AP Depo. Tr., Ex. E, at 46:20-47:8.) Under the Call Center Marketing Agreement, American

Protection is required collect the payments from the customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. H, at pg. 2.)

13.     Disputed. While American Protection's sales alone may represent a "small portion" of its overall revenue, 100 percent of SunPath's revenue is generated by third party sales. (SunPath Depo. Tr., Ex. I, at 71:12-19.)

14.     Disputed and not supported by the proffered evidence. After being sent a mailing from American Protection (*see* Ex. F), Plaintiff placed a call to American Protection on May 26, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, ln. 2; *see also* Smith Decl., Ex. B ¶ 5.) However, the May 26, 2020 call was "abandoned" and never answered by American Protection. (*Id.*) Accordingly, Plaintiff could not have "inquired" about any product offered by American Protection during this call.

Thereafter, American Protection placed three outbound telephone solicitation calls to Plaintiff on May 26, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, lines 3-5.) American Protection then placed three additional outbound telephone solicitation calls to Plaintiff on May 28, 2020. (*Id.*, at lines 6-9.) On the third call on May 28, 2020, Plaintiff answered and spoke with a representative of American Protection for 16 minutes and 48 seconds. (*Id.*, at line 9.) During this call, Plaintiff feigned an interest in the products being offered in order to identify the entity placing the calls. (*See* Smith Decl., Ex. B ¶ 6; *see also* Notes of May 28, 2020 Call, attached hereto as Ex. J; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, ln. 9.)

15.     Disputed. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr., Ex. C, at 53:12-21 ("Q: Do you remember anything about the language

7

**JA813**

that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath."). This recollection is reinforced by the May 28, 2020 email received by Plaintiff, which contained a link soliciting her to purchase a SunPath VSC. (*See* Ex. D.) Further, SunPath permits American Protection to use SunPath's name to market its VSCs (*see* AP Depo. Tr., Ex. E, at 45:16–18), and the Call Center Marketing Agreement states that "[SunPath] desires to have [American Protection] market the Products to Customers." (Ex. H, at pg. 1.)

16. Undisputed.

17. Disputed. While American Protection did work with other VSC companies, its representative testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase said plan. (AP Depo. Tr., Ex. E, 35:3-10) If the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.*, at 37:11-15.) Added to this, American Protection's CRM system reveals that it only created quotes for a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. F, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. D.)

18. Undisputed.

19. Disputed. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. C, at 53:12-21.) This recollection is reinforced by the May 28, 2020 email

8

received by Plaintiff, which contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. D.) Further, SunPath permits American Protection to use SunPath's name to market its VSCs (AP Depo. Tr., Ex. E, at 45:16–18), and the Call Center Marketing Agreement states that "[SunPath] desires to have [American Protection] market the Products to Customers." (Ex. H, at pg. 1.)

20.    Disputed. Plaintiff does not dispute that she did not communicate with anyone from SunPath. Plaintiff disputes the assertion that "no one from American Protection ever represented to her that they were operating 'on behalf of' SunPath." Again, Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. C, at 53:12-21.) Further, the May 28, 2020 Email reveals that American Protection was soliciting Plaintiff to purchase SunPath's VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. D.)

21.    Undisputed.

22.    Disputed as phrased. Plaintiff sent an email on June 11, 2020, at 7:49 a.m. CDT, which stated in relevant part: "I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty [sic] for my car. Do not call me anymore." (June 11, 2020 Email, attached hereto as Ex. K.)

23.    Disputed. While Plaintiff does not dispute that American Protection made such a representation, Plaintiff disputes the veracity of the underlying representation. American Protection's representative testified that it let its subscription to the National DNC Registry expire "a couple of years ago" (AP Depo. Tr., Ex. E, at 231:6-21) and further testified that American Protection does not run any of the numbers that it receives from lead generators

9

against the National DNC Registry. (*Id.* at 83:13-24). Additionally, with respect to the VTPPA,

American Protection's representative explained the company lacked any policies and procedures

to ensure compliance with the Act and had not even heard of the Act until this lawsuit was filed:

> Q. Okay. And does American Protection have any specific policies or
> procedures that relate to compliance with the Virginia Telephone Privacy Act?
>
> A. No.
>
> Q. Prior to this lawsuit, did you have – were you aware of the Virginia
> Telephone Privacy Act?
>
> A. No.

(*Id.* at 156:12–18.) American Protection also permitted its subcontractors to utilize only their

first name when placing calls to prospective clients. (*Id.* at 88:21-89:2.)

24. Disputed. While American Protection claimed that it only places calls to individuals

who previously consented, its designee testified that American Protection failed to maintain

records of consent for the individuals that it calls:

> Q. Okay. Does American Protection maintain records of prior express consent from
> the individuals that it places calls to?
>
> A. No.

(*Id.* at 83:25-84:3.) As for Plaintiff, American Protection has no clue how it received her

contact information (*Id.* at 100:5-16) and no record of her providing any prior express

written consent (*Id.* at 155:18-156:2). Further, after Plaintiff expressly stated that she was

not interested in making any purchases and requested that she no longer receive calls—

thereby terminating any existing business relationship—Plaintiff received 116 additional

calls, including 50 calls more than thirty days after Plaintiff requested that they stop. (*See*

Summary of Five9 call records relating to Plaintiff's phone number, Ex. A; *see also*

Smith Decl., Ex. B ¶ 8.)

10

25. Disputed. Whether SunPath "ratified any conduct" is a legal conclusion, and Plaintiff maintains that SunPath ratified the conduct of American Protection by accepting the benefits of its reckless telemarketing activities. Indeed, SunPath expressly approves each sale by American Protection on a case-by-case basis. (AP Depo. Tr., Ex. E, at 35:3-36:4.)

26. Disputed. Whether SunPath "ratified any conduct" is a legal conclusion, and Plaintiff maintains that SunPath ratified the conduct of American Protection by accepting the benefits of its reckless telemarketing activities. Indeed, SunPath expressly approves each sale by American Protection on a case-by-case basis. (*Id.*)

## III. ARGUMENT

### A. A Genuine Dispute Exists As To Which Of The 172 Calls Plaintiff Received Were Made Pursuant To An Established Business Relationship—Legal Determinations Must Be Made Regarding Which Call Constituted An "Inquiry" And Which Calls, If Any, Were Permissible After Plaintiff's Stop Request.

In its first argument, Defendant contends that Plaintiff's case "should be dismissed as to all claims for calls that occurred while Plaintiff had an [EBR] with American Protection." (Dkt. 66 at 14.) This argument is based on the VTPPA's definition of and exemptions to what constitutes a "telephone solicitation call." Plaintiff does not dispute that, to the extent she is found to have had an EBR with American Protection for some portion of the calls, she would be unable to pursue claims for such portion. However, Plaintiff is factually and legally supported in her dispute as to what call may have created an EBR and whether some or all of the calls she received after her stop request are actionable.

As Defendant points out, the VTPPA defines "telephone solicitation call" as a call made "for the purpose of offering or advertising any property, goods, or services." VA. CODE ANN. § 59.1-510. The prohibition of such calls does not, however, include calls "with whom the person

11

on whose behalf the telephone call is made has an established business relationship." *Id.* § 59.1-514(D). An EBR is said to exist: (1) for 18 months after the called person made a purchase from the company on whose behalf the call is made; or (2) for 3 months after the called person's "inquiry or application regarding any property, good, or service" offered by the company. *Id.* § 59.1-510. The exemption "shall not apply," however, when a called person has stated that they "do[] not wish to receive telephone solicitation calls." *Id.* § 59.1-514(D). The VTPPA provides that no such calls shall be initiated to someone who has made a "stop request," and that request "shall be honored for at least 10 years from the time the request is made." *Id.*

Here, there are four distinct periods of calls received by Plaintiff, each of which may receive its own legal determination as to whether such calls were prohibited:

(1)    the six (6) calls received between May 26, 2020, and May 28, 2020—these calls occurred after Plaintiff made a call to American Protection that wasn't answered, and before she feigned interest in and discussed the VSC products with SunPath's telemarketer;

(2)    the fifty (50) calls received between May 28, 2020, and June 11, 2020—these calls occurred after Plaintiff feigned interest in and discussed the VSC products with a telemarketer, and before she made her "STOP" request;

(3)    the sixty-six (66) calls received between June 11, 2020, and July 11, 2020—these calls occurred no more than thirty days after Plaintiff's stop request; and

(4)    the fifty (50) calls received after July 11, 2020—these calls occurred more than thirty days after Plaintiff's stop request.

Accordingly, Plaintiff will address each of these call batches in turn.

12

*First Six Calls*

Prior to the first six calls that Plaintiff received—three received on May 26, 2020 and three received on May 28, 2020—Plaintiff admits that she made a call of her own to the American Protection phone number, but call records confirm that the call was "abandoned" and never answered. (Ex. B ¶ 5; Ex. A, ln. 2.) Defendant contends that the EBR began on Plaintiff's outbound call, arguing that "[t]here is no dispute that Plaintiff made an inquiry to American Protection regarding the products it sold by calling American Protection on May 26, 2020." (Dkt. 66 at 15.) But there is frankly no legal support for this position.

As defined in the VTPPA, the inquiry must be "regarding any property, good, or service" offered by the company, and Plaintiff's call was never answered. *See id.* § 59.1-510. Guidance on the federal TCPA is instructive on the establishment of an EBR: the term refers to a "prior or existing relationship formed by a *voluntary two-way communication* between a person or entity and a business" on the basis of an inquiry related to products or services. *E&G, Inc. v. Mount Vernon Mills, Inc.*, No. 6:17-CV-318-TMC, 2019 WL 4034951, at *3 (D.S.C. Aug. 22, 2019) (citing 47 C.F.R. § 64.1200 (f)(6)); *see also Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *2 (S.D. Ohio Sept. 30, 2019) (same). The FCC further clarified that the inquiry must be such "to create an expectation on the part of the consumer that a particular company will call them"; this would not include, for example, inquiries related to a business's hours or location. F.C.C., *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, 44159 (2003). Defendant has not produced and cannot produce any evidence to demonstrate the nature of Plaintiff's inquiry on May 26, 2020, because no such inquiry occurred. Plaintiff ended her call before reaching a representative, and thus there was no inquiry or even a "voluntary two-way communication" to support the

13

establishment of an EBR. Thus, Plaintiff disputes the applicability of any EBR to the first six calls she received.

### *Fifty Calls After May 28 Conversation*

On May 28, 2020, on the sixth call that Plaintiff received, she spoke with a representative for sixteen minutes and feigned an interest in the products being offered in an effort to identify the entity making the calls. (Ex. B ¶ 6; Ex. A, ln. 9.) Even though she was feigning interest, Plaintiff concedes that the conversation on May 28 was a voluntary two-way conversation and inquiry sufficient to establish an EBR, such that the fifty calls that she received between May 28, 2020, and June 11, 2020, would be exempt from the VTPPA's definition of "telephone solicitation calls."

### *Sixty-six Calls Within 30 Days After Stop Request*

On June 11, 2020, Plaintiff made a request that American Protection stop calling her—Defendant does not dispute this request. (Ex. K; Dkt. 66 at 16.) At the time of this request, Plaintiff affirmatively ended any EBR in existence, and the VTPPA's exemption no longer applied to protect the calls made from liability. VA. CODE ANN. § 59.1-514(D); *see also Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1123 (W.D. Mo. 2020) (noting that a "seller-specific do-not-call request . . . terminates an EBR for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller") (citing 47 C.F.R. § 64.1200(f)(5)(i)).

Defendant does not dispute that this request ended the EBR, but it claims that, "[a]t this point, American Protection had 30 days to honor that request (i.e., until July 11, 2020)." (Dkt. 66 at 16.) This thirty-day rule does not appear in the VTPPA—it is pulled from the Code of Federal Regulations ("CFR") supporting the TCPA. Defendant encourages the implementation of this

14

rule because: (1) "the VTPPA does not provide explicit guidance regarding the time-frame to honor a do-not-call request that terminates an EBR"; and (2) the statute elsewhere incorporates the CFR. *Id.* Neither of these assertions is completely accurate.

First, the VTPPA does provide guidance regarding the time-frame for honoring a stop request: "Any such request not to receive telephone solicitation calls shall be honored *for at least 10 years from the time the request is made*." VA. CODE ANN. § 59.1-514(A) (emphasis added). Thus, by the plain language of the statute, Plaintiff's request should have been honored from June 11, 2020, to June 11, 2030. This period does not include a "thirty-day rule," and it is twice as long as the five-year period specified in the TCPA. *Compare id.*, *with, e.g.*, 47 C.F.R. § 64.1200(d)(6). Second, the VTPPA's "incorporation" of the CFR is a result of reference to "the National Do Not Call Registry maintained by the federal government pursuant to [47 C.F.R. § 64.1200]." VA. CODE ANN. § 59.1-514(B). This reference to the DNC list established by federal law does not amount to a wholesale adoption of federal law in place of the state statute. Accordingly, Plaintiff disputes the applicability of the federal "thirty-day rule" as a safe harbor for the sixty-six calls that were made to Plaintiff the first month after her stop request. The calls should have stopped immediately.

Nevertheless, even if the thirty-day rule were applicable to this case, the rule states that telemarketers "must honor a residential subscriber's do-not-call request within a reasonable time—not [to] exceed thirty days from the date of such request." 47 C.F.R. § 64.1200(d)(3). This rule does not automatically absolve telemarketers from liability for any calls made in the thirty days after receiving a stop request, especially when the telemarketer *fails* to honor the stop request at all. Here, Defendant has not proffered any evidence to suggest that Plaintiff's stop request was honored within any reasonable time, let alone thirty days. Rather, the evidence

15

suggests that American Protection *continued* calling Plaintiff even after the thirty-day period. (Ex. A; *see also* Smith Decl., Ex. B ¶ 8.) Thus, even if the thirty-day rule were operative in this case, it should not apply to any of the calls received by Plaintiff because her stop request was not honored within a reasonable time.

### *Fifty Calls More Than 30 Days After Stop Request*

Finally, and even in the event that the TCPA's thirty-day rule were applied in this case to shield Defendant from liability for the sixty-six calls it made in the first month after Smith's stop request, there is no protection and no EBR to shield the fifty calls that Plaintiff received more than thirty days after her stop request. Defendant recognizes in its motion that the maximum period during which calls could be protected—by function of both an EBR beginning at the unanswered call (which should not be considered an inquiry) and application of the CFR's thirty-day rule after Smith's stop request—would run from May 26, 2020 to July 11, 2020. Thus, the calls received after July 11, 2020, are not subject to any protection, and Plaintiff would still proceed with regard to at least fifty calls.

In short, Defendant has not stated an adequate basis for judgment as a matter of law regarding whether many of the calls Plaintiff received were exempt from liability. Plaintiff concedes that the fifty calls that she received between May 28, 2020 and June 11, 2020 are exempt as made pursuant to an EBR, but the remaining 122 calls are in dispute.

### B.  SunPath May Be Held Jointly And Severally Liable For The Calls Under The VTPPA.

Defendant's next basis for seeking summary judgment is on the issue of joint and several liability established by the VTPPA for sellers of a product that is offered on a telephone solicitation call. (Dkt. 66 at 17–22.) SunPath contends that the VTPPA's presumption and assignment of liability to sellers does not apply to it because: (1) Defendant's products or

16

services were supposedly not offered to Plaintiff on the calls; (2) Defendant supposedly is not a "seller"; and (3) Defendant supposedly "had no connection" to the calls at issue. As explained below, the factual record does not support SunPath's position on any of these points, and Defendant is not entitled to summary judgment in its favor on the application of joint and several liability through the VTPPA's presumption.

Defendant contends that the VTPPA does not impose strict liability on sellers, based on *Zhu v. Dish Network*, LLC, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011). However, this is not good law. *Zhu* was decided in 2011—approximately eight years before the VTPPA was amended to add the relevant presumption and application of joint liability to the statute. As of 2019, under the VTPPA, it is "presumed" that telemarketing calls advertising a company's products were made on behalf of the company:

> A telephone solicitation call offering or advertising a seller's property, goods, or services **shall be presumed** to have been made or initiated on behalf of or for the benefit of the seller, **whether or not any agency relationship exists** between the telephone solicitor and the seller, **whether or not the seller supervised or directed the conduct** of the telephone solicitor, and **whether or not the telephone solicitor is shown to have acted at the seller's direction and request** when making or initiating the telephone solicitation call.

VA. CODE ANN. § 59.1-514.1(B) (emphasis added). The Act provides that the seller "on whose behalf or for whose benefit" the unlawful call was made and the solicitor who initiated the call "shall be jointly and severally liable for such violation." *Id.* § § 59.1-514.1(A). To rebut this presumption, the seller must show by "clear and convincing evidence" that: (1) it did not retain or request the solicitor to make such calls on its behalf or for its benefit; **and** (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B). Here, the statute's presumption and standard of liability apply to Defendant and the calls at issue.

17

**JA823**

### 1. SunPath's VSCs were offered to Plaintiff on the calls.

First, SunPath contends that the presumption that calls were made on its behalf or for its benefit does not apply because, according to Defendant, its products were not offered on the calls. (Dkt. 66 at 18–19.) Defendant relies heavily on the contention that Plaintiff did not hear the name "SunPath" on the calls that she received. Plaintiff testified that SunPath's name was identified on at least one of the calls, but, even if Defendant's contention were true, this consideration does not impact the statute's application.

To be sure, the VTPPA's presumption applies to calls "offering or advertising a seller's property, goods, or services." VA. CODE ANN. § 59.1-514.1(B). The statute makes no mention of whether the seller must be identified by name on the call—only that the call must offer or advertise the seller's goods. *Id.* Nevertheless, Smith testified that she recalled American Protection identifying SunPath as the company whose products were being pitched during the calls at issue. (Ex. C at 53:12-21.) Her recollection is reinforced by the follow-up email she received on May 28, 2020, which contained a link soliciting purchase of a SunPath VSC. (Ex. D.) Further, American Protection's representative testified that, after identifying the best VSC plan for a given consumer, American Protection would exclusively solicit the purchase of that plan, and it would not later attempt to solicit the purchase of a VSC from a competing company if the first was rejected. (Ex. E at 35:3-10, 37:11-15.) Given that American Protection's CRM system revealed that the only quote it created for Plaintiff was for a "Diamond 48/75,000" VSC plan—the same plan identified by email as SunPath's VSC—the only product that was offered to Plaintiff on the calls was Defendant's VSC. (*Compare* Ex. F at 1, *with* Ex. D.)

In light of these facts, it is evident that the calls at issue were made to market or solicit the purchase of Defendant's vehicle service contract products, regardless of whether the name

18

"SunPath" was spoken on some or all of the calls. These facts are sufficient to create a genuine issue, and Defendant is not entitled to summary judgment on this point.

> **2.      SunPath cannot credibly contend that it is not a "seller" as defined by the VTPPA.**

Next, Defendant claims that it is not a "seller" as the term is defined in the VTPPA. (Dkt. 66 at 19–22.) SunPath claims that the calls attempting to solicit purchase of its VSCs were neither made on its behalf nor for its benefit. But the facts in this case suggest otherwise, and SunPath qualifies as a seller.

The VTPPA defines a "seller" as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated." VA. CODE ANN. § 59.1-510. In the context of the presumption established in Section 514.1, this definition is rendered redundant—the statute assigns joint and several liability to "seller[s] on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call" in violation of the statute (*id.* § 59.1-514(A)), and likewise a call offering or advertising a seller's products "shall be presumed to have been made or initiated *on behalf of or for the benefit of a seller*." *Id.* § 59.1-514(B) (emphasis added). Thus, if Defendant's products or services were offered or advertised on the call, it is presumed that the calls were made on behalf of or for the benefit of SunPath, and SunPath is therefore presumed to be the seller as defined. It would make little sense to require a plaintiff to doubly prove that calls were made on behalf of or for the benefit of a particular company, especially when the statute applies a presumption to that particular fact. As explained above, the facts here support a finding that SunPath's VSC products were offered on the calls, and accordingly Defendant is presumed to be the "seller."

However, and despite SunPath's protestations, the facts here demonstrate that American

19

Protection made calls on behalf of and for the benefit of SunPath. SunPath testified that it derives 100 percent of its revenue from third-party sales of its VSCs, and to sell its VSCs, SunPath contracts with third-parties like American Protection who offer the products to consumers in order to solicit sales. (Ex. I, at 71:12-19.) The Call Center Marketing Agreement also requires that American Protection collect payments from customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. H at 2.)

These facts completely refute Defendant's contention that the calls made by third-party marketers like American Protection were not made on behalf of and for the benefit of SunPath— they account for all of SunPath's revenue, and given that SunPath does not sell directly to consumers, it must rely on others to make sales on its behalf. Defendant attempts to liken this relationship to that of a grocery store with items on its shelves or a bar with multiple beers on tap, simply because American Protection can market products for other companies as well. (Dkt. 66 at 21–22) (citing *Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D. Md. Aug. 4, 2022). The analogy is of little use here due to the differences in industries and consumer choice. A customer can walk into a grocery store or bar and select the goods they want to purchase—it would be unusual for a brewery to contractually obligate a bar to engage in wide-scale telemarketing to "actively market" and solicit the purchase of a particular beer. But that is what has occurred here: SunPath contracted with American Protection to "actively market" SunPath's products (Ex. H at 1.), and after determining which consumers it would market Defendant's products to, American Protection would not present alternate contracts or attempt to solicit the purchase of a competing product to any given consumer. (Ex. E at 35:3-10, 37:11-15.)

The factual record supports both the presumption and a direct finding that the calls at

20

issue were made "on behalf of or for the benefit of" SunPath, thereby rendering Defendant a "seller" as defined in the VTPPA. The facts do not support judgment as a matter of law in Defendant's favor.

> **2.    The factual record does not contain "clear and convincing" evidence to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath.**

As a third means of attempting to evade the VTPPA's standard of joint and several liability, Defendant contends that the underlying facts in this case are sufficient to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath. (Dkt. 66 at 23–28.) However, in order to rebut the presumption, the facts must show by clear and convincing evidence that Defendant did not retain or request American Protection to make solicitation calls and that the calls were made without the seller's knowledge. Such a showing is not supported by the factual record.

Once again, the VTPPA creates a presumption that calls made offering or advertising a particular seller's product were made "on behalf of or for the benefit of" said seller, such that they may be held jointly and severally liable for the calls. VA. CODE ANN. § 59.1-514.1(B). This presumption can be rebutted:

> The presumption may be rebutted if it is shown by **clear and convincing evidence** that the seller **did not retain or request the telephone solicitor to make telephone solicitation calls** on the seller's behalf or for the seller's benefit **and** that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor **without the seller's knowledge or consent**.

*Id.* (emphasis added). In other words, SunPath must demonstrate with "clear and convincing" evidence *both* that it did not retain American Protection to make solicitation calls for its benefit, *and* that the calls were made without its knowledge or consent. The evidence is insufficient to

21

**JA827**

rebut this presumption.

Much of Defendant's argument is that, because the contract required that American Protection use "good faith and best efforts" to ensure compliance with applicable laws, any potentially unlawful call falls outside the scope of the contracted telemarketing activity. (Dkt. 66 at 23–25.) This argument is flawed for at least two reasons. First, it is unsurprising that SunPath would require American Protection to comply with the law because any contract authorizing a telemarketer to violate the TCPA or any state telemarketing law would be void *ab initio*. *See, e.g.*, *Meuse v. Henry*, 296 Va. 164, 183, 819 S.E.2d 220, 230 (2018). Taken to its logical end, SunPath's position would prevent any seller from being held liable for the unlawful actions of its third-party telemarketers—eviscerating the VTPPA's presumption and attachment of liability completely—so long as the seller told its downline agents not to break the law. Such a standard would immunize all sellers from liability under the Virginia law, which is designed specifically to attach liability to those sellers.

However, and secondly, the presumption must be rebutted by clear and convincing evidence as to *both* portions: (1) that the seller did not "retain or request" that the telemarketer make solicitation calls on its behalf or for its benefit; **AND** (2) that the calls were made without the seller's knowledge or consent. VA. CODE ANN. § 59.1-514.1(B). The contract's "good faith" compliance provision could perhaps be evidence that any unlawful calls were made without SunPath's consent, but the evidence plainly demonstrates that Defendant retained American Protection for the purpose of making calls to sell its VSCs. SunPath expressly contracted with American Protection to "actively market" SunPath's products, and it provided "Promotional Materials" to American Protection to enable it to do so. (Ex. H at 1.) Further, the Call Center Marketing Agreement required American Collection to collect payments from customers and

22

hold SunPath's portion of the proceeds "in trust" for SunPath's benefit, (Ex. H at 2), and, as stated above, third-party sales like the ones made by American Protection account for 100 percent of SunPath's revenue. (Ex. I at 71:12-19.)

The evidence in this case does not, by a "clear and convincing" standard, suggest that Defendant did not retain American Protection for the purpose of making telemarketing calls to solicit the purchase of SunPath's products. Quite the opposite—the contract between SunPath and American Protection clearly demonstrates that Defendant retained American Protection for the purpose of "actively marketing" its products to consumers. Thus, even if the Court accepts Defendant's argument that it did not consent to any unlawful telemarketing calls made on its behalf, Defendant has failed to establish both prongs required to successfully rebut the presumption from which its liability arises. Accordingly, Defendant is not entitled to summary judgment.

## C. Plaintiff Concedes That Her Claims For Violation of Section 59.1-512 Of The VTPPA Are Inapplicable To Unanswered Calls.

Defendant's final bid for summary judgment refers to Count III of Plaintiff's Complaint, which is Smith's claim for violation of Section 59.1-512 of the VTPPA. (Dkt. 66 at 28.) Specifically, Defendant argues that Plaintiff's claims for failure of callers to identify themselves by first and last name, as is required by Section 59.1-512, cannot be applied to any calls that Plaintiff did not answer. (*Id.*) Of course, if Plaintiff did not answer a particular call, she cannot testify to any communications made on such call and thus cannot attest to such callers failing to adequately identify themselves. Thus, Plaintiff concedes that her claims related to VA. CODE ANN. § 59.1-512 are not applicable to any calls that she did not answer. However, Plaintiff maintains—and SunPath does not dispute in its Motion for Summary Judgment—that the representatives on calls that she did answer failed to identify themselves by first and last name,

23

**JA829**

as required by the VTPPA. Therefore, as it pertains to the calls she answered, Smith's third cause of action is not subject to dismissal or summary judgment in Defendant's favor.

## IV.    CONCLUSION

While Plaintiff concedes that her claim for failure of callers to identify themselves by full name cannot apply to calls she did not answer, the remainder of Defendant's motion for summary judgment should be denied in its entirety. A genuine issue exists as to both the origin of the EBR between Plaintiff and American Protection and the timeframe in which American Protection had to stop calling Plaintiff after she made a stop request and ended the EBR, and even if both issues were decided favorably to Defendant, there are still at least fifty calls unprotected by any EBR. Further, the factual record supports the application of the VTPPA's standard of joint and several liable to SunPath—SunPath is a seller whose products were offered on the solicitation calls in question, and Defendant has failed to rebut the statutory presumption by clear and convincing evidence. Accordingly, the Court should deny Defendant's Motion to Summary Judgment and grant any further relief as it deems necessary, reasonable, and just.

Respectfully Submitted,

**RUTH SMITH**, individually and on behalf of all others similarly situated,

Dated: January 6, 2023

By:  _/s/ Francis J. Driscoll, Jr._
        Counsel for Plaintiff

Francis J. Driscoll, Jr.
frank@driscolllawoffice.com
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com

24

**JA830**

Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

\* *Pro Hac Vice*

25

JA831

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled

document was served upon counsel of record by filing such papers via the Court's ECF system

on January 6, 2023.

/s/ Francis J. Driscoll, Jr.

# Exhibit A

| CALL ID | SESSION | DATE | TIME | DNIS | ANI | CALL TYPE | DURATION | HOLD TIM | HANDLE T | ACW TIM | TALK TIM | PARK TIM | CONF. TIM | CONSULT | THIRD PA | QUEUE T | HOLD CO | CONF. CO | PARK CO | CALLS CO | CALLS AB | DISPOSITI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3E+14 | 1544F4EE85 | 5/26/20 | 12:52:08 | 3107340319 | 7037289650 | Inbound | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:07 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 3E+14 | CA619FDEF9 | 5/26/20 | 12:58:52 | 7037289650 | 8152494786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | B9F1E1D860 | 5/26/20 | 13:45:08 | 7037289650 | 2817090786 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | ACDF4D55A1 | 5/26/20 | 15:50:46 | 7037289650 | 2817090786 | Outbound | 0:00:02 | 0:00:00 | 0:00:06 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Answering M |
| 3E+14 | C015669662I | 5/28/20 | 7:06:50 | 7037289650 | 2817090786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 71BC85F9FEI | 5/28/20 | 7:53:58 | 3107340319 | 7037289650 | Inbound | 0:01:42 | 0:00:00 | 0:03:05 | 0:01:26 | 0:01:39 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | 28A426B7AA | 5/28/20 | 7:57:09 | 7037289650 | 2817090786 | Manual | 0:00:12 | 0:00:00 | 0:00:15 | 0:00:03 | 0:00:12 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 53CF57065CI | 5/28/20 | 9:51:27 | 7037289650 | 2817090786 | Outbound | 0:16:48 | 0:00:00 | 0:19:35 | 0:02:51 | 0:16:44 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Personal Call |
| 3E+14 | 799FFCFF4D | 5/28/20 | 10:52:15 | 7037289650 | 2817090786 | Manual | 0:00:15 | 0:00:00 | 0:00:17 | 0:00:03 | 0:00:14 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | DBF76A046C | 5/28/20 | 10:54:00 | 7037289650 | 2817090786 | Manual | 0:00:37 | 0:00:00 | 0:02:30 | 0:01:54 | 0:00:36 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 906F00AF1A | 5/28/20 | 12:08:35 | 7037289650 | 2817090786 | Manual | 0:01:25 | 0:00:00 | 0:02:28 | 0:01:08 | 0:01:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 3E+14 | A412CD988B | 5/29/20 | 7:03:42 | 7037289650 | 2817090786 | Manual | 0:00:07 | 0:00:00 | 0:00:25 | 0:00:18 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | C103C96348! | 5/29/20 | 7:27:16 | 7037289650 | 2817090786 | Outbound | 0:00:24 | 0:00:00 | 0:00:21 | 0:00:02 | 0:00:19 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 73C8E266AB | 5/29/20 | 10:15:55 | 7037289650 | 3522003211 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 6852AE8315 | 5/29/20 | 12:17:08 | 7037289650 | 3522002321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 7A665F9FD9 | 5/29/20 | 15:18:57 | 7037289650 | 3522002321 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 7BE2474D1D | 5/29/20 | 15:19:17 | 7037289650 | 3522002321 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | CFF0D4442C | 5/29/20 | 16:06:40 | 7037289650 | 3522002321 | Manual | 0:00:03 | 0:00:00 | 0:01:04 | 0:01:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 488CC52FA3 | 5/30/20 | 11:57:49 | 7037289650 | 4074797228 | Manual | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 27DA39D539 | 5/30/20 | 11:58:32 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | AB4FF515A0 | 5/30/20 | 13:06:12 | 7037289650 | 4074797228 | Manual | 0:00:06 | 0:00:00 | 0:00:09 | 0:00:03 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C0B4E7753A | 6/1/20 | 7:14:37 | 7037090884 | 2817090884 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 854A9F9952 | 6/1/20 | 9:36:38 | 7037289650 | 2817090884 | Outbound | 0:00:17 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 3E+14 | 6C5CF69B24 | 6/1/20 | 14:11:23 | 7037289650 | 2817090849 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | DDFAD225DI | 6/1/20 | 14:12:01 | 7037289650 | 2817090849 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 3E+14 | 0A11019694 | 6/1/20 | 14:41:20 | 7037289650 | 2817090849 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 3E+14 | C94530DCCB | 6/1/20 | 16:08:29 | 7037289650 | 2817090849 | Manual | 0:00:03 | 0:00:00 | 0:00:07 | 0:00:05 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 49EB9B0C97 | 6/1/20 | 16:09:26 | 7037289650 | 2817090849 | Manual | 0:00:46 | 0:00:00 | 0:00:52 | 0:00:07 | 0:00:46 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 0516DB7877 | 6/2/20 | 8:24:27 | 7037289650 | 5125534518 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Call Back Lat |
| 3E+14 | E5AE446E13 | 6/2/20 | 10:44:25 | 7037289650 | 2816679986 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 648BC197F3 | 6/2/20 | 13:13:11 | 7037289650 | 2816679986 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 3E+14 | FCB256765D | 6/2/20 | 14:33:41 | 7037289650 | 2816679986 | Manual | 0:00:06 | 0:00:00 | 0:00:08 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C93E917E57I | 6/3/20 | 10:05:35 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | E3E8845BA3 | 6/3/20 | 14:34:04 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | CC55D0820A | 6/3/20 | 16:20:41 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | BEF0F6D665 | 6/4/20 | 11:52:54 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 6121F8FF91I | 6/4/20 | 15:52:07 | 7037289650 | 4074797228 | Manual | 0:00:14 | 0:00:00 | 0:00:16 | 0:00:03 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 510F2A8099 | 6/4/20 | 15:53:18 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 83587DA32B | 6/5/20 | 7:52:30 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C54170F433I | 6/5/20 | 7:52:52 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | C8A5F63C14 | 6/5/20 | 8:31:34 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 1F3A230F71 | 6/5/20 | 9:32:27 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | CFEE4B3F75 | 6/5/20 | 11:46:15 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 8742E32BBC | 6/5/20 | 11:46:26 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 4F10EAFD4B | 6/6/20 | 11:17:23 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:00 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | EC027419081 | 6/6/20 | 11:17:46 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | 7AF2616D4C | 6/8/20 | 9:59:20 | 7037289650 | 4074797228 | Manual | 0:00:54 | 0:00:00 | 0:01:09 | 0:00:16 | 0:00:53 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 3E+14 | F3C6D4D919 | 6/8/20 | 10:21:17 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 3E+14 | 1F6902008EI | 6/8/20 | 13:51:12 | 7037289650 | 4074797228 | Manual | 0:00:21 | 0:00:00 | 0:00:23 | 0:00:02 | 0:00:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 3E+14 | 83486C7FDD | 6/8/20 | 13:52:03 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:04 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 52 | 3E+14 | 2A0DF394CE | 6/8/20 | 16:31:35 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 53 | 3E+14 | D154AB5093 | 6/8/20 | 16:31:49 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 54 | 3E+14 | 48S3F7B924 | 6/8/20 | 16:32:08 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 55 | 3E+14 | AF03D9AD2( | 6/9/20 | 8:10:00 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 56 | 3E+14 | 9B7C77DFF | 6/9/20 | 13:32:13 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 57 | 3E+14 | 9025B48D70 | 6/9/20 | 16:39:29 | 7037289650 | 4074797228 | Manual | 0:00:09 | 0:00:00 | 0:00:10 | 0:00:02 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 58 | 3E+14 | 6A5469682F | 6/10/20 | 9:14:14 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 59 | 3E+14 | 263A60855F | 6/11/20 | 7:06:05 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 60 | 3E+14 | DCC3AE8CE8 | 6/11/20 | 9:39:59 | 7037289650 | 4074797228 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 61 | 3E+14 | 0792C13279A | 6/11/20 | 13:30:46 | 7037289650 | 4074797228 | Manual | 0:00:08 | 0:00:00 | 0:00:18 | 0:00:10 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 62 | 3E+14 | 9C1FED306C | 6/12/20 | 9:36:18 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 63 | 3E+14 | 7CDB0407B9 | 6/12/20 | 10:06:49 | 4074797228 | 7037289650 | Inbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 64 | 3E+14 | D9DB278AFE | 6/13/20 | 8:42:29 | 7037289650 | 7187018964 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 65 | 3E+14 | 9EC32C616D | 6/13/20 | 9:31:48 | 7187018964 | 7037289650 | Inbound | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Abandon |
| 66 | 3E+14 | EFD7D12BD4 | 6/13/20 | 9:38:18 | 7037289650 | 7187018964 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 67 | 3E+14 | 2D869605BE | 6/15/20 | 9:26:58 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 68 | 3E+14 | 4E927D33C5 | 6/15/20 | 14:59:36 | 7037289650 | 2163936985 | Outbound | 0:00:13 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 69 | 3E+14 | 10E4E23E84I | 6/16/20 | 7:01:43 | 7037289650 | 2163936985 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 70 | 3E+14 | FD934C51D9 | 6/16/20 | 9:22:06 | 7037289650 | 2696820245 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 71 | 3E+14 | 947D48034F | 6/16/20 | 9:22:25 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 72 | 3E+14 | F5FCEF359A/ | 6/16/20 | 10:06:07 | 7037289650 | 2696820245 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 73 | 3E+14 | FFD9E2E71F | 6/16/20 | 13:20:50 | 7037289650 | 2696820245 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 74 | 3E+14 | F991559D02 | 6/16/20 | 15:58:07 | 7037289650 | 2696820245 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 75 | 3E+14 | 4F81B49885 | 6/17/20 | 9:36:55 | 7037289650 | 3059081169 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 76 | 3E+14 | 3FE9A1264D | 6/17/20 | 12:49:20 | 7037289650 | 3059081169 | Outbound | 0:00:14 | 0:00:00 | 0:00:31 | 0:00:21 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 77 | 3E+14 | 72C3263C8B | 6/17/20 | 13:12:44 | 7037289650 | 3059081169 | Manual | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 78 | 3E+14 | 7954057BB3 | 6/17/20 | 14:01:20 | 7037289650 | 3059081169 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 79 | 3E+14 | D91AE5A40E | 6/17/20 | 16:18:26 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 80 | 3E+14 | 9DAF1B414E | 6/18/20 | 7:15:13 | 7037289650 | 3125770024 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 81 | 3E+14 | F20308646( | 6/18/20 | 9:10:52 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:11 | 0:00:07 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 82 | 3E+14 | 19C64D3D78 | 6/18/20 | 11:39:24 | 7037289650 | 3125770024 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 83 | 3E+14 | 3E25AD4C18 | 6/18/20 | 12:47:37 | 7037289650 | 3125770024 | Manual | 0:00:18 | 0:00:00 | 0:00:20 | 0:00:03 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 84 | 3E+14 | 9F2A104F67 | 6/18/20 | 12:48:30 | 7037289650 | 3125770024 | Manual | 0:00:09 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 85 | 3E+14 | 06939B79B8 | 6/19/20 | 7:19:36 | 7037289650 | 3132815613 | Outbound | 0:00:10 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 86 | 3E+14 | 2B20E60171 | 6/19/20 | 10:44:38 | 7037289650 | 4076120572 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 87 | 3E+14 | 7B48253176 | 6/19/20 | 13:24:47 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 88 | 3E+14 | 5D8C51D510 | 6/19/20 | 13:25:09 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 89 | 3E+14 | D18C7A96B9 | 6/19/20 | 14:50:28 | 7037289650 | 4076120572 | Manual | 0:00:36 | 0:00:00 | 0:00:38 | 0:00:07 | 0:00:31 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back La |
| 90 | 3E+14 | 5EC62661E2 | 6/20/20 | 10:08:13 | 7037289650 | 5125888120 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 91 | 3E+14 | 46FADBD6A( | 6/20/20 | 11:18:33 | 7037289650 | 5125888120 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 92 | 3E+14 | 37BED99003 | 6/22/20 | 9:14:47 | 7037289650 | 5125888120 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 93 | 3E+14 | D9478CD3C4 | 6/22/20 | 15:09:49 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 94 | 3E+14 | D41A75FF17 | 6/23/20 | 12:37:14 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 95 | 3E+14 | 7BA0279823 | 6/23/20 | 14:26:32 | 7037289650 | 9047176954 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 96 | 3E+14 | 6A97800AAC | 6/24/20 | 9:20:38 | 7037289650 | 9047176954 | Manual | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 97 | 3E+14 | BC90FD34E5 | 6/24/20 | 9:21:05 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:03 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 98 | 3E+14 | C0B632490C | 6/24/20 | 14:27:48 | 7037289650 | 9047176954 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 99 | 3E+14 | 2544960B01. | 6/25/20 | 7:16:31 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 100 | 3E+14 | A80291D68E | 6/25/20 | 9:36:12 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 3E+14 | 6F5A68CA3B | 6/25/20 | 9:51:54 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 102 | 3E+14 | 9D362D8E84 | 6/26/20 | 10:51:57 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 103 | 3E+14 | C4BDE07A10 | 6/26/20 | 14:38:28 | 7037289650 | 9179942924 | Manual | 0:00:18 | 0:00:00 | 0:00:22 | 0:00:04 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 104 | 3E+14 | 0DB0569DD8 | 6/26/20 | 15:48:49 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 105 | 3E+14 | 13BD842B9 | 6/29/20 | 8:46:40 | 7037289650 | 2696820245 | Outbound | 0:00:26 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:13 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 106 | 3E+14 | 83305465EE | 6/29/20 | 12:55:19 | 7037289650 | 3059081169 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 107 | 3E+14 | 70E40ED7DA | 6/30/20 | 11:28:41 | 7037289650 | 2696820506 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 108 | 3E+14 | CDDFDDE4C8 | 7/1/20 | 7:15:03 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 109 | 3E+14 | CD0C57A507 | 7/1/20 | 15:35:56 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 110 | 3E+14 | BEFEE2EC68 | 7/2/20 | 10:58:51 | 7037289650 | 3134869416 | Outbound | 0:00:35 | 0:00:00 | 0:00:35 | 0:00:05 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 111 | 3E+14 | D8CC9072FA | 7/3/20 | 13:23:42 | 7037289650 | 5128554305 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 112 | 3E+14 | 9BF0C4DCA5 | 7/6/20 | 9:39:54 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 113 | 3E+14 | 18224DA460 | 7/6/20 | 14:08:10 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 114 | 3E+14 | E37B3ECD8E | 7/6/20 | 15:27:27 | 7037289650 | 7348884504 | Manual | 0:00:04 | 0:00:00 | 0:00:13 | 0:00:10 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 115 | 3E+14 | 8F10C61457 | 7/6/20 | 15:55:58 | 7037289650 | 9045076919 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 116 | 3E+14 | A0E05B12C8 | 7/7/20 | 13:00:19 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 117 | 3E+14 | F0CF391360 | 7/7/20 | 14:09:11 | 7037289650 | 2487939009 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 118 | 3E+14 | D9F27C7EDC | 7/8/20 | 10:34:13 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 119 | 3E+14 | AB8349C209 | 7/9/20 | 7:07:41 | 7037289650 | 3123007050 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 120 | 3E+14 | CA2F283BD2 | 7/9/20 | 12:07:40 | 7037289650 | 3133489416 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 121 | 3E+14 | 70D70CD308 | 7/9/20 | 12:08:14 | 7037289650 | 3133489416 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 122 | 3E+14 | 023E6955F2I | 7/9/20 | 15:43:12 | 7037289650 | 4076055018 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 123 | 3E+14 | 0B5D748678 | 7/10/20 | 10:35:36 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 124 | 3E+14 | B4FED9C85A | 7/10/20 | 12:02:51 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 125 | 3E+14 | A829285DC0 | 7/10/20 | 12:03:12 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 126 | 3E+14 | CA66972833 | 7/10/20 | 15:53:54 | 7037289650 | 2483136496 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 127 | 3E+14 | D16CCD3EBE | 7/10/20 | 15:54:22 | 7037289650 | 2483136496 | Manual | 0:00:10 | 0:00:00 | 0:00:11 | 0:00:02 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 128 | 3E+14 | 58A83AF31C | 7/11/20 | 10:33:21 | 6174407961 | 7037289650 | Inbound | 0:00:07 | 0:00:00 | 0:00:10 | 0:00:05 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 129 | 3E+14 | 9E1AFCF9CB | 7/11/20 | 10:52:39 | 7037289650 | 2483136496 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 130 | 3E+14 | C67ECFE1A2 | 7/11/20 | 10:54:05 | 7037289650 | 2483136496 | Manual | 0:00:31 | 0:00:00 | 0:00:33 | 0:00:03 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 131 | 3E+14 | BD71DD9C1C | 7/11/20 | 10:54:47 | 7037289650 | 2483136496 | Manual | 0:00:13 | 0:00:00 | 0:00:15 | 0:00:02 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 132 | 3E+14 | EC0EAA1607 | 7/13/20 | 8:54:48 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 133 | 3E+14 | 0199019776: | 7/13/20 | 13:45:17 | 7037289650 | 3057484394 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 134 | 3E+14 | 3AD8C11A2E | 7/14/20 | 12:17:42 | 7037289650 | 3124700811 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 135 | 3E+14 | CD9FD88D78 | 7/14/20 | 15:24:33 | 7037289650 | 3132815693 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 136 | 3E+14 | 1A20B89775 | 7/15/20 | 9:54:31 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 137 | 3E+14 | 9B40B00DA4 | 7/15/20 | 12:56:33 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 138 | 3E+14 | F556E0C20B | 7/16/20 | 13:15:07 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 139 | 3E+14 | 13B431FDF4 | 7/16/20 | 15:36:01 | 7037289650 | 6172064680 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 140 | 3E+14 | 9552389A36 | 7/17/20 | 9:02:56 | 7037289650 | 7342064680 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 141 | 3E+14 | 4D1074484E | 7/18/20 | 8:17:36 | 7037289650 | 7342064680 | Outbound | 0:00:16 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 142 | 3E+14 | 81CF435E59( | 7/20/20 | 10:51:47 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 143 | 3E+14 | 24BEC97973 | 7/20/20 | 13:23:07 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 144 | 3E+14 | B21004FA93 | 7/21/20 | 9:58:31 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 145 | 3E+14 | 18EB7DB383 | 7/21/20 | 9:58:37 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 146 | 3E+14 | D8C1F0AF3B | 7/22/20 | 7:56:30 | 7037289650 | 3124700811 | Manual | 0:00:13 | 0:00:00 | 0:00:10 | 0:00:03 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 147 | 3E+14 | E13D1CB528 | 7/22/20 | 9:30:57 | 7037289650 | 3124700811 | Manual | 0:00:02 | 0:00:00 | 0:00:02 | 0:00:00 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 148 | 3E+14 | 77A3775612 | 7/22/20 | 9:31:14 | 7037289650 | 3124700811 | Manual | 0:00:04 | 0:00:00 | 0:00:21 | 0:00:17 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 149 | 3E+14 | D1AE20212D | 7/23/20 | 14:10:14 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 150 | 3E+14 | 24FFF8A363( | 7/23/20 | 16:00:26 | 7037289650 | 7342064116 | Manual | 0:00:07 | 0:00:00 | 0:00:11 | 0:00:05 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | 3E+14 | C688A6C8DF | 7/24/20 | 14:33:01 | 7037289650 | 2692004257 | Manual | 0:00:02 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 152 | 3E+14 | 883CD190FE | 7/25/20 | 7:41:03 | 7037289650 | 2692004257 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 153 | 3E+14 | 77CC72E59A | 7/25/20 | 10:10:00 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 154 | 3E+14 | A0A40D849F | 7/25/20 | 11:36:28 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 155 | 3E+14 | 2192991424 | 7/27/20 | 12:36:59 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 156 | 3E+14 | 56F220B736 | 7/27/20 | 13:36:53 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 157 | 3E+14 | 6545A3E989 | 7/28/20 | 14:40:57 | 7037289650 | 4076120673 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 158 | 3E+14 | 305EF70EEE/ | 7/29/20 | 7:21:28 | 7037289650 | 4076120673 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 159 | 3E+14 | 4D5A6FC0C1 | 7/29/20 | 15:33:44 | 7037289650 | 2037796516 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 160 | 3E+14 | CBB82A0651 | 7/30/20 | 12:45:27 | 7037289650 | 2488091721 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 161 | 3E+14 | 628D570E22 | 7/31/20 | 9:15:23 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 162 | 3E+14 | 25236EA74D | 7/31/20 | 12:48:14 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 163 | 3E+14 | B116CFB20D | 8/3/20 | 12:04:46 | 7037289650 | 6026129574 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 164 | 3E+14 | 633A92F50E | 8/3/20 | 14:35:20 | 7037289650 | 6026129574 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 165 | 3E+14 | 25F22DF0F0 | 8/4/20 | 15:41:25 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 166 | 3E+14 | 2C6103FDBB | 8/5/20 | 9:22:43 | 7037289650 | 9179663235 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 167 | 3E+14 | 5E3BCC05F1 | 8/6/20 | 9:05:23 | 7037289650 | 3129733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 168 | 3E+14 | 51D488CE1F. | 8/7/20 | 11:29:46 | 7037289650 | 5122121577 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 169 | 3E+14 | EBC4E18DD5 | 8/7/20 | 12:20:59 | 7037289650 | 7342064116 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 170 | 3E+14 | C132971CFC. | 8/7/20 | 15:57:48 | 7037289650 | 3139733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 171 | 3E+14 | 15F78505E0 | 8/10/20 | 12:15:22 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 172 | 3E+14 | 1F86C1A08E | 8/10/20 | 14:23:59 | 7037289650 | 5124305992 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 173 | 3E+14 | B5BD08D635 | 8/11/20 | 15:33:02 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 174 | 320B | F09324ZE0. | 8/12/20 | 12:00:42 | 7037289650 | 3129733698 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 175 | 3E+14 | B1ACDC0989 | 8/13/20 | 9:43:17 | 7037289650 | 9044251482 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 176 | 3E+14 | B4D7946F35 | 8/14/20 | 12:40:18 | 7037289650 | 3057674115 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 177 | 3E+14 | C5D181F2D2 | 8/14/20 | 14:19:00 | 7037289650 | 3057674115 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 178 | 3E+14 | 1BE2BCA61F | 8/18/20 | 15:35:22 | 7037289650 | 7348884537 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 179 | | | | | | | | | | | | | | | | | | | | | | | |
| 180 | | | | | | | | | | | | | | | | | | | | | | | |
| 181 | | | | | | | | | | | | | | | | | | | | | | | |
| 182 | | | | | | | | | | | | | | | | | | | | | | | |
| 183 | | | | | | | | | | | | | | | | | | | | | | | |
| 184 | | | | | | | | | | | | | | | | | | | | | | | |
| 185 | | | | | | | | | | | | | | | | | | | | | | | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CAMPAIG | AGENT | AGENT E| SKILL | RATE | BILL TIME | COST | NUMBER | NUMBER | NUMBER | FIRST NA | LAST NAM | COMPAN | STREET | CITY | STATE | ZIP | |
| 2 | TIGER LIVE T | [None] | [Deleted] | LIVE TRANSF | 0 | 0:00:00 | 0 | | | | Ruth | Smith | 617RC12986 | | | | | |
| 3 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 4 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 5 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 6 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 7 | TIGER LIVE T | sjaeger@am | sjaeger@am | LIVE TRANSF | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 8 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 9 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 10 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 11 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 12 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 13 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 14 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 15 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 16 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 17 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 18 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 19 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 20 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 21 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 22 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | | |
| 23 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 24 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 25 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 26 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 27 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 28 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 29 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 30 | GC_Aged | [Deleted] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 31 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 32 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 33 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 34 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 35 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 36 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 37 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 38 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 39 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 40 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 41 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 42 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 43 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 44 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 45 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 46 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 47 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 48 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 49 | TIGER POST | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 50 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 52 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 53 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 54 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 55 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 56 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 57 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 58 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 59 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 60 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 61 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 62 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 63 | Inbound Sale | [Deleted] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 64 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 65 | Inbound Sale | [None] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 66 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 67 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 68 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 69 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 70 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 71 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 72 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 73 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 74 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 75 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 76 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 77 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 78 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 79 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 80 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 81 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 82 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 83 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 84 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 85 | Quoted - Foll | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 86 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 87 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 88 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 89 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 90 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 91 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 92 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 93 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 94 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 95 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 96 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 97 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 98 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 99 | Quoted - Foll | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 100 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 102 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 103 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 104 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 105 | Quoted - Fol | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 106 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 107 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 108 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 109 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 110 | L2 Campaign | edenton@an | edenton@an | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 111 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 112 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 113 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 114 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 115 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 116 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 117 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 118 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 119 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 120 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 121 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 122 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 123 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 124 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 125 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 126 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 127 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 128 | Inbound Sale | lrry190@net | lrry190@net | Inbound Sale | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 129 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 130 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 131 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 132 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 133 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 134 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 135 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 136 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 137 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 138 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 139 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 140 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 141 | TIGER POSTE | ldelbrocco@ | ldelbrocco@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 142 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 143 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 144 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 145 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 146 | TIGER POSTE | sgoodhew@ | sgoodhew@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 147 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 148 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 149 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 150 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 152 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 153 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 154 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 155 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 156 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 157 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 158 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 159 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 160 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 161 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 162 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 163 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 164 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 165 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 166 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 167 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 168 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 169 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 170 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 171 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 172 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 173 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 174 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 175 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 176 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 177 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 178 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 179 | | | | | | | | | | | | | | | | | | |

Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>      Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## DECLARATION OF RUTH SMITH

I, Ruth Smith, declare as follows:

1.      I am over the age of eighteen (18) and am the Plaintiff in the above-captioned action. I make this declaration in support of Plaintiff's Motion for Partial Summary Judgment. I am able to testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge.

2.      Having reviewed the records provided by Five9, Inc., I confirm that the calls contained within the spreadsheet identified as Plaintiff's Trial Exhibit 72 (*see* dkt. 54) and Defendant's Trial Exhibit 38 (*see* dkt. 53) represents an accurate reflection of the calls that I recall receiving from Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection").

3.      Attached as Exhibit 1 to this declaration are screenshots of the calls contained within the spreadsheet identified as Plaintiff's Trial Exhibit 72 (*see* dkt. 54) and Defendant's Trial Exhibit 38 (*see* dkt. 53). Exhibit 1 to this declaration likewise represents an accurate reflection of the calls that I recall receiving from Chukran Management Group, LLC d/b/a

Doc ID: e49daa69e5211785b3155c3d475ad3fc855400d8

American Protection Corp. ("American Protection").

4.      Between May 26, 2020 and August 18, 2020, I received 172 calls initiated by American Protection. (*See* Exhibit 1)

5.      On May 26, 2020, I placed a call to American Protection, which went unanswered. (*See* Exhibit 1, at line 2.)

6.      On May 28, 2020, at 12:51 p.m. ET, I received a call placed by American Protection. During this call, I feigned an interest in the products being offered to ascertain the identity of the calling entity.

7.      On June 11, 2020, at 8:49 a.m. ET, I sent an email to American Protection, which stated that I was no longer interested in purchasing any vehicle service contract or auto warranty and stated, "Do not call me anymore."

8.      Despite requesting that American Protection stop calling, I continued to receive 116 calls initiated by American Protection between June 11, 2020 and August 18, 2020—which includes 50 calls that I received after July 11, 2020. (*See* Exhibit 1, lines 60-62, 64, 66-127, 129-178.)

9.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Further affiant sayeth not.

Executed on_____01 / 05 / 2023_____, in the State of Virginia.

_____
Ruth Smith

**JA844**

Doc ID: e49daa69e5211785b3155c3d475ad3fc855400d8

Exhibit 1

| | CALL ID | SESSION | DATE | TIME | DNIS | ANI | CALL TYPE | DURATION | HOLD TIM | HANDLE T | ACW TIM | TALK TIM | PARK TIM | CONF. TI | CONSULT | THIRD PA | QUEUE T | HOLD CO | CONF. CO | PARK CO | CALLS CO | CALLS AB | DISPOSITI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 3E+14 | 1544F4EE85 | 5/26/20 | 12:52:08 | 3107340319 | 7037289650 | Inbound | 0:00:08 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:07 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 3 | 3E+14 | CA619FDEF9 | 5/26/20 | 12:58:52 | 7037289650 | 8152494786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 4 | 3E+14 | B9F1E1D860 | 5/26/20 | 13:45:08 | 7037289650 | 2817090786 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 5 | 3E+14 | ACDF4D55A1 | 5/26/20 | 15:50:46 | 7037289650 | 2817090786 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering N |
| 6 | 3E+14 | C015669662I | 5/28/20 | 7:06:50 | 7037289650 | 2817090786 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 7 | 3E+14 | 71BC85F9FEI | 5/28/20 | 7:53:58 | 3107340319 | 7037289650 | Inbound | 0:01:42 | 0:00:00 | 0:03:05 | 0:01:26 | 0:01:39 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 8 | 3E+14 | 28A426B7AA | 5/28/20 | 7:57:09 | 7037289650 | 2817090786 | Manual | 0:00:12 | 0:00:00 | 0:00:15 | 0:00:03 | 0:00:12 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 9 | 3E+14 | 53CF57065C( | 5/28/20 | 9:51:27 | 7037289650 | 2817090786 | Outbound | 0:16:48 | 0:00:00 | 0:19:35 | 0:02:51 | 0:16:44 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Personal Call |
| 10 | 3E+14 | 799FFCFF4D | 5/28/20 | 10:52:15 | 7037289650 | 2817090786 | Manual | 0:00:15 | 0:00:00 | 0:00:17 | 0:00:03 | 0:00:14 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 11 | 3E+14 | DBF76A046E | 5/28/20 | 10:54:00 | 7037289650 | 2817090786 | Manual | 0:00:37 | 0:00:00 | 0:02:30 | 0:01:54 | 0:00:36 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 12 | 3E+14 | 906F00AF1A | 5/28/20 | 12:08:35 | 7037289650 | 2817090786 | Outbound | 0:01:25 | 0:00:00 | 0:02:28 | 0:01:08 | 0:01:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | CLOSER_CB |
| 13 | 3E+14 | A412CD988B | 5/29/20 | 7:03:42 | 7037289650 | 2817090786 | Manual | 0:00:07 | 0:00:00 | 0:00:25 | 0:00:18 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 14 | 3E+14 | C103C96348! | 5/29/20 | 7:27:16 | 7037289650 | 2817090786 | Outbound | 0:00:24 | 0:00:00 | 0:00:21 | 0:00:02 | 0:00:19 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 15 | 3E+14 | 73C8E266AB | 5/29/20 | 10:15:55 | 7037289650 | 3522003321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 16 | 3E+14 | 6852AE8315 | 5/29/20 | 12:17:08 | 7037289650 | 3522002321 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 17 | 3E+14 | 7A665F9FD9 | 5/29/20 | 15:18:57 | 7037289650 | 3522002321 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 18 | 3E+14 | 7BE2474D1D | 5/29/20 | 15:19:17 | 7037289650 | 3522002321 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 19 | 3E+14 | CFF0D4442C | 5/29/20 | 16:06:40 | 7037289650 | 3522002321 | Manual | 0:00:03 | 0:00:00 | 0:01:04 | 0:01:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 20 | 3E+14 | 488CC52FA3 | 5/30/20 | 11:57:49 | 7037289650 | 4074797228 | Manual | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:15 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 21 | 3E+14 | 27DA39D539 | 5/30/20 | 11:58:32 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 22 | 3E+14 | AB4FF515A0 | 5/30/20 | 13:06:12 | 7037289650 | 4074797228 | Manual | 0:00:06 | 0:00:00 | 0:00:09 | 0:00:03 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 23 | 3E+14 | C0B4E7753A | 6/1/20 | 7:14:37 | 7037289650 | 2817090884 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 24 | 3E+14 | 854A9F9952 | 6/1/20 | 9:36:38 | 7037289650 | 2817090884 | Outbound | 0:00:17 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 25 | 3E+14 | 6C5CF69B24 | 6/1/20 | 14:11:23 | 7037289650 | 2817090849 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 26 | 3E+14 | DDFAD225DE | 6/1/20 | 14:12:01 | 7037289650 | 2817090849 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 27 | 3E+14 | 0A11019694 | 6/1/20 | 14:41:20 | 7037289650 | 2817090849 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering N |
| 28 | 3E+14 | C94530DCCB | 6/1/20 | 16:08:29 | 7037289650 | 2817090849 | Manual | 0:00:03 | 0:00:00 | 0:00:07 | 0:00:05 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 29 | 3E+14 | 49EB9B0C97 | 6/1/20 | 16:09:26 | 7037289650 | 2817090849 | Manual | 0:00:46 | 0:00:00 | 0:00:52 | 0:00:07 | 0:00:46 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 30 | 3E+14 | 0516DB7877 | 6/2/20 | 8:24:27 | 7037289650 | 5125534518 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 31 | 3E+14 | E5AE446E13 | 6/2/20 | 10:44:25 | 7037289650 | 2816679986 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 32 | 3E+14 | 648BC197F3! | 6/2/20 | 13:13:11 | 7037289650 | 2816679986 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering N |
| 33 | 3E+14 | FCB256765D | 6/2/20 | 14:33:41 | 7037289650 | 2816679986 | Manual | 0:00:06 | 0:00:00 | 0:00:08 | 0:00:02 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 34 | 3E+14 | C93E917E57( | 6/3/20 | 10:05:35 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 35 | 3E+14 | E3E8B458A3 | 6/3/20 | 14:34:04 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 36 | 3E+14 | CC55D0820A | 6/3/20 | 16:20:41 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 37 | 3E+14 | BEF0F6D665 | 6/4/20 | 11:52:54 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 38 | 3E+14 | 6121F8FF91I | 6/4/20 | 15:52:07 | 7037289650 | 4074797228 | Manual | 0:00:14 | 0:00:00 | 0:00:16 | 0:00:03 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 39 | 3E+14 | 510F2A809\ | 6/4/20 | 15:53:18 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 40 | 3E+14 | 83587DA32B | 6/5/20 | 7:52:30 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 41 | 3E+14 | C54170F433I | 6/5/20 | 7:52:52 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 42 | 3E+14 | C8A5F63C14( | 6/5/20 | 8:31:34 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 43 | 3E+14 | 1F3A230F71 | 6/5/20 | 9:32:27 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 44 | 3E+14 | CFEE4B3F75 | 6/5/20 | 11:46:15 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:06 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 45 | 3E+14 | 8742E32BBC | 6/5/20 | 11:46:26 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 46 | 3E+14 | 4F10EAFD4B | 6/6/20 | 11:17:23 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 47 | 3E+14 | EC0274190B( | 6/6/20 | 11:17:46 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 48 | 3E+14 | 7AF2616D4C | 6/8/20 | 9:59:20 | 7037289650 | 4074797228 | Manual | 0:00:54 | 0:00:00 | 0:01:09 | 0:00:16 | 0:00:53 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 49 | 3E+14 | F3C6D4D919 | 6/8/20 | 10:21:17 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 50 | 3E+14 | 1F6902008EI | 6/8/20 | 13:51:12 | 7037289650 | 4074797228 | Manual | 0:00:21 | 0:00:00 | 0:00:23 | 0:00:02 | 0:00:20 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | 3E+14 | 83486C7FDD | 6/8/20 | 13:52:03 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:04 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 52 | 3E+14 | 2A0DF394CE | 6/8/20 | 16:31:35 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 53 | 3E+14 | D154AB5093 | 6/8/20 | 16:31:49 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 54 | 3E+14 | 4853F7B924 | 6/8/20 | 16:32:08 | 7037289650 | 4074797228 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 55 | 3E+14 | AF03D9AD2C | 6/9/20 | 8:10:00 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 56 | 3E+14 | 9BB7C77DFF | 6/9/20 | 13:32:13 | 7037289650 | 4074797228 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 57 | 3E+14 | 9025B48D70 | 6/9/20 | 16:39:29 | 7037289650 | 4074797228 | Manual | 0:00:09 | 0:00:00 | 0:00:10 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 58 | 3E+14 | 6A5469682F | 6/10/20 | 9:14:14 | 7037289650 | 4074797228 | Manual | 0:00:05 | 0:00:00 | 0:00:06 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 59 | 3E+14 | 263A60855F | 6/11/20 | 7:06:05 | 7037289650 | 4074797228 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 60 | 3E+14 | DCC3AE8CE8 | 6/11/20 | 9:39:59 | 7037289650 | 4074797228 | Manual | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 61 | 3E+14 | 0792C1327S | 6/11/20 | 13:30:46 | 7037289650 | 4074797228 | Manual | 0:00:08 | 0:00:00 | 0:00:18 | 0:00:10 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 62 | 3E+14 | 9C1FED306C | 6/12/20 | 9:36:18 | 7037289650 | 4074797228 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 63 | 3E+14 | 7CDB0407B9 | 6/12/20 | 10:06:49 | 4074797228 | 7037289650 | Inbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 64 | 3E+14 | D9D8278AFE | 6/13/20 | 8:42:29 | 7037289650 | 7187018964 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 65 | 3E+14 | 9EC32C616D | 6/13/20 | 9:31:48 | 7187018964 | 7037289650 | Inbound | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Abandon |
| 66 | 3E+14 | EFD7D12BD4 | 6/13/20 | 9:38:18 | 7037289650 | 7187018964 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 67 | 3E+14 | 2D869605BE | 6/15/20 | 9:26:58 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 68 | 3E+14 | 4E927D33C5 | 6/15/20 | 14:59:36 | 7037289650 | 2163936985 | Outbound | 0:00:13 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 69 | 3E+14 | 10E4E23E84I | 6/16/20 | 7:01:43 | 7037289650 | 2163936985 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 70 | 3E+14 | FD934C51D9 | 6/16/20 | 9:22:06 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 71 | 3E+14 | 947D48034F | 6/16/20 | 9:22:25 | 7037289650 | 2696820245 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 72 | 3E+14 | F5FCEF359A | 6/16/20 | 10:06:07 | 7037289650 | 2696820245 | Manual | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 73 | 3E+14 | FFD9E2E71F | 6/16/20 | 13:20:50 | 7037289650 | 2696820245 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 74 | 3E+14 | F991559D02 | 6/16/20 | 15:58:07 | 7037289650 | 2696820245 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 75 | 3E+14 | 4F81B49BB5 | 6/17/20 | 9:36:55 | 7037289650 | 3059081169 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 76 | 3E+14 | 3FE9A1264D | 6/17/20 | 12:49:20 | 7037289650 | 3059081169 | Outbound | 0:00:14 | 0:00:00 | 0:00:31 | 0:00:21 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 77 | 3E+14 | 72C3263C8B | 6/17/20 | 13:12:44 | 7037289650 | 3059081169 | Manual | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 78 | 3E+14 | 7954057BB3 | 6/17/20 | 14:01:20 | 7037289650 | 3059081169 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 79 | 3E+14 | D91AE5A40E | 6/17/20 | 16:18:26 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:06 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 80 | 3E+14 | 9DAF1B414E | 6/18/20 | 7:15:13 | 7037289650 | 3125770024 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 81 | 3E+14 | F20308646E | 6/18/20 | 9:10:52 | 7037289650 | 3125770024 | Manual | 0:00:04 | 0:00:00 | 0:00:11 | 0:00:07 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 82 | 3E+14 | 19C64D3D78 | 6/18/20 | 11:39:24 | 7037289650 | 3125770024 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 83 | 3E+14 | 3E25AD4C18 | 6/18/20 | 12:47:37 | 7037289650 | 3125770024 | Manual | 0:00:18 | 0:00:00 | 0:00:20 | 0:00:00 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 84 | 3E+14 | 9F2A104F67 | 6/18/20 | 12:48:30 | 7037289650 | 3125770024 | Manual | 0:00:09 | 0:00:00 | 0:00:08 | 0:00:00 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 85 | 3E+14 | 06939B79B8 | 6/19/20 | 7:19:36 | 7037289650 | 3132815613 | Outbound | 0:00:10 | 0:00:00 | 0:00:07 | 0:00:02 | 0:00:06 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 86 | 3E+14 | 28209E60171 | 6/19/20 | 10:44:38 | 7037289650 | 4076120572 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 87 | 3E+14 | 7B48253176 | 6/19/20 | 13:24:47 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 88 | 3E+14 | 5D8C51D510 | 6/19/20 | 13:25:09 | 7037289650 | 4076120572 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 89 | 3E+14 | D18C7A96B9 | 6/19/20 | 14:50:28 | 7037289650 | 4076120572 | Manual | 0:00:36 | 0:00:00 | 0:00:38 | 0:00:00 | 0:00:31 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 90 | 3E+14 | 5EC62661E2 | 6/20/20 | 10:08:13 | 7037289650 | 5125888120 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 91 | 3E+14 | 46FAD8D6AC | 6/20/20 | 11:18:33 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Customer Se |
| 92 | 3E+14 | 37BED99003 | 6/22/20 | 9:14:47 | 7037289650 | 5125888120 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 93 | 3E+14 | D9478CD3C4 | 6/22/20 | 15:09:49 | 7037289650 | 5125888120 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 94 | 3E+14 | D41A75FF17 | 6/23/20 | 12:37:14 | 7037289650 | 9047176954 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 95 | 3E+14 | 7BA0279823 | 6/23/20 | 14:26:32 | 7037289650 | 9047176954 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 96 | 3E+14 | 6A97800AAC | 6/24/20 | 9:20:38 | 7037289650 | 9047176954 | Manual | 0:00:01 | 0:00:00 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 97 | 3E+14 | BC90FD34E5 | 6/24/20 | 9:21:05 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:03 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 98 | 3E+14 | C0B632490C | 6/24/20 | 14:27:48 | 7037289650 | 9047176954 | Manual | 0:00:02 | 0:00:00 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 99 | 3E+14 | 2544960B01 | 6/25/20 | 7:16:31 | 7037289650 | 9047176954 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 100 | 3E+14 | A80291D68E | 6/25/20 | 9:36:12 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 3E+14 | 6F5A68CA3B | 6/25/20 | 9:51:54 | 7037289650 | 9047176954 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 102 | 3E+14 | 9D362D8E84 | 6/26/20 | 10:51:57 | 7037289650 | 9047176954 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 103 | 3E+14 | C4BDE07A10 | 6/26/20 | 14:38:28 | 7037289650 | 9179942924 | Manual | 0:00:18 | 0:00:00 | 0:00:22 | 0:00:04 | 0:00:17 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 104 | 3E+14 | 0DB05690DD8 | 6/26/20 | 15:48:49 | 7037289650 | 2485074531 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 105 | 3E+14 | 13BDB42B95 | 6/29/20 | 8:46:40 | 7037289650 | 2696820245 | Outbound | 0:00:26 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:09 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:13 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 106 | 3E+14 | 833D5465EE | 6/29/20 | 12:55:19 | 7037289650 | 3059081169 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 107 | 3E+14 | 70E40ED7DA | 6/30/20 | 11:28:41 | 7037289650 | 2696820506 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 108 | 3E+14 | CDDFDDE4C8 | 7/1/20 | 7:15:03 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 109 | 3E+14 | CD0C57A507 | 7/1/20 | 15:35:56 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 110 | 3E+14 | BEFEE2EC68 | 7/2/20 | 10:58:51 | 7037289650 | 3134869416 | Outbound | 0:00:35 | 0:00:00 | 0:00:35 | 0:00:05 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 111 | 3E+14 | DBCC9D72FA | 7/3/20 | 13:23:42 | 7037289650 | 5128554305 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 112 | 3E+14 | 9BF0C4DCA5 | 7/6/20 | 9:39:54 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 113 | 3E+14 | 18224DA460 | 7/6/20 | 14:08:10 | 7037289650 | 7348884504 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 114 | 3E+14 | E37B3ECD8E | 7/6/20 | 15:27:27 | 7037289650 | 7348884504 | Outbound | 0:00:04 | 0:00:00 | 0:00:13 | 0:00:10 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 115 | 3E+14 | 8F10C61457( | 7/6/20 | 15:55:58 | 7037289650 | 9045076919 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 116 | 3E+14 | A0E05B12C8 | 7/7/20 | 13:00:19 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 117 | 3E+14 | F0CF391360( | 7/7/20 | 14:09:11 | 7037289650 | 2487939009 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 118 | 3E+14 | D9F27C7EDC | 7/8/20 | 10:34:13 | 7037289650 | 3057484394 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 119 | 3E+14 | AB8349C209 | 7/9/20 | 7:07:41 | 7037289650 | 3123007050 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 120 | 3E+14 | CA2F2838D2 | 7/9/20 | 12:07:40 | 7037289650 | 3133489416 | Manual | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 121 | 3E+14 | 70D70CD308 | 7/9/20 | 12:08:14 | 7037289650 | 3133489416 | Manual | 0:00:05 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 122 | 3E+14 | 023E6955F2I | 7/9/20 | 15:43:12 | 7037289650 | 4076055018 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 123 | 3E+14 | 0B5D74B67B | 7/10/20 | 10:35:36 | 7037289650 | 6174407961 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 124 | 3E+14 | B4FED9C85A | 7/10/20 | 12:02:51 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 125 | 3E+14 | A829285DC0 | 7/10/20 | 12:03:12 | 7037289650 | 6174407961 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 126 | 3E+14 | CA66972833 | 7/10/20 | 15:53:54 | 7037289650 | 2483136496 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 127 | 3E+14 | D16CCD3EBE | 7/10/20 | 15:54:22 | 7037289650 | 2483136496 | Manual | 0:00:10 | 0:00:00 | 0:00:11 | 0:00:02 | 0:00:10 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 128 | 3E+14 | 58483AF31C| | 7/11/20 | 10:33:21 | 6174407961 | 7037289650 | Inbound | 0:00:07 | 0:00:00 | 0:00:10 | 0:00:05 | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 129 | 3E+14 | 9E1AFCF9CB | 7/11/20 | 10:52:39 | 7037289650 | 2483136496 | Outbound | 0:00:05 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:01 | 0 | 0 | 0 | 0 | 1 | Abandon |
| 130 | 3E+14 | C67ECFE1A2 | 7/11/20 | 10:54:05 | 7037289650 | 2483136496 | Manual | 0:00:31 | 0:00:00 | 0:00:33 | 0:00:03 | 0:00:30 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 131 | 3E+14 | BD71DD9C1I | 7/11/20 | 10:54:47 | 7037289650 | 2483136496 | Manual | 0:00:13 | 0:00:00 | 0:00:15 | 0:00:02 | 0:00:13 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 132 | 3E+14 | EC0EAA1607 | 7/13/20 | 8:54:48 | 7037289650 | 2483136496 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 133 | 3E+14 | 019901977G. | 7/13/20 | 13:45:17 | 7037289650 | 3057484394 | Manual | 0:00:03 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 134 | 3E+14 | 3AD8C11A2E | 7/14/20 | 12:17:42 | 7037289650 | 3124700811 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 135 | 3E+14 | CD9FD88D78 | 7/14/20 | 15:24:33 | 7037289650 | 3132815693 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 136 | 3E+14 | 1A20B89775 | 7/15/20 | 9:54:31 | 7037289650 | 5124305992 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 137 | 3E+14 | 9B40B00DA4 | 7/15/20 | 12:56:33 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:07 | 0:00:03 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 138 | 3E+14 | F556E0C20B | 7/16/20 | 13:15:07 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:01 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 139 | 3E+14 | 13B431FDF4 | 7/16/20 | 15:36:01 | 7037289650 | 6172064680 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 140 | 3E+14 | 9552389A36 | 7/17/20 | 9:02:56 | 7037289650 | 7342064680 | Manual | 0:00:00 | 0:00:00 | 0:00:01 | 0:00:01 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 141 | 3E+14 | 4D1074484E | 7/18/20 | 8:17:36 | 7037289650 | 7342064680 | Outbound | 0:00:16 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:11 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 142 | 3E+14 | 81CF435E59( | 7/20/20 | 10:51:47 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 143 | 3E+14 | 24BEC97973 | 7/20/20 | 13:23:07 | 7037289650 | 2483136496 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 144 | 3E+14 | B21004FA93 | 7/21/20 | 9:58:31 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:04 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 145 | 3E+14 | 18EB7DB383 | 7/21/20 | 9:58:37 | 7037289650 | 9179663235 | Manual | 0:00:00 | 0:00:00 | 0:00:03 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 146 | 3E+14 | D8C1F0AF3B | 7/22/20 | 7:56:30 | 7037289650 | 3124700811 | Outbound | 0:00:13 | 0:00:00 | 0:00:10 | 0:00:03 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:02 | 0 | 0 | 0 | 1 | 0 | Call Back Lat |
| 147 | 3E+14 | E13D1CB528 | 7/22/20 | 9:30:57 | 7037289650 | 3124700811 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 148 | 3E+14 | 77A3775612 | 7/22/20 | 9:31:14 | 7037289650 | 3124700811 | Manual | 0:00:04 | 0:00:00 | 0:00:21 | 0:00:17 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 149 | 3E+14 | D1AE20212D | 7/23/20 | 14:10:14 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 150 | 3E+14 | 24FFF8A363( | 7/23/20 | 16:00:26 | 7037289650 | 7342064116 | Manual | 0:00:07 | 0:00:00 | 0:00:11 | 0:00:05 | 0:00:07 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | 3E+14 | C688A6C8DF | 7/24/20 | 14:33:01 | 7037289650 | 2692004257 | Manual | 0:00:02 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 152 | 3E+14 | 883CD190FE | 7/25/20 | 7:41:03 | 7037289650 | 2692004257 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 153 | 3E+14 | 77CC72E59A | 7/25/20 | 10:10:00 | 7037289650 | 5124305992 | Manual | 0:00:03 | 0:00:00 | 0:00:04 | 0:00:02 | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 154 | 3E+14 | A0A40D849F | 7/25/20 | 11:36:28 | 7037289650 | 5124305992 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 155 | 3E+14 | 2192991424 | 7/27/20 | 12:36:59 | 7037289650 | 5124305992 | Manual | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 156 | 3E+14 | 56F220B736 | 7/27/20 | 13:36:53 | 7037289650 | 5124305992 | Manual | 0:00:04 | 0:00:00 | 0:00:05 | 0:00:02 | 0:00:04 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 157 | 3E+14 | 6545A3E989 | 7/28/20 | 14:40:57 | 7037289650 | 4076120673 | Manual | 0:00:00 | 0:00:00 | 0:00:02 | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 1 | 0 | Customer Se |
| 158 | 3E+14 | 305EF70EEE | 7/29/20 | 7:21:28 | 7037289650 | 4076120673 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 159 | 3E+14 | 4D5A6FC0C1 | 7/29/20 | 15:33:44 | 7037289650 | 2037796516 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 160 | 3E+14 | CBB82A0651 | 7/30/20 | 12:45:27 | 7037289650 | 2488091721 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 161 | 3E+14 | 628D570E22 | 7/31/20 | 9:15:23 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 162 | 3E+14 | 25236EA74D | 7/31/20 | 12:48:14 | 7037289650 | 3057484394 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 163 | 3E+14 | B116CFB20D | 8/3/20 | 12:04:46 | 7037289650 | 6026129574 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 164 | 3E+14 | 633A92F50E | 8/3/20 | 14:35:20 | 7037289650 | 6026129574 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 165 | 3E+14 | 25F22DF0F0 | 8/4/20 | 15:41:25 | 7037289650 | 9179663235 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 166 | 3E+14 | 2C6103FDBB | 8/5/20 | 9:22:43 | 7037289650 | 9179663235 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 167 | 3E+14 | 5E38CC05F1 | 8/6/20 | 9:05:23 | 7037289650 | 3129733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 168 | 3E+14 | 51D488CE1F | 8/7/20 | 11:29:46 | 7037289650 | 5122121577 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 169 | 3E+14 | EBC4E18DD5 | 8/7/20 | 12:20:59 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 170 | 3E+14 | C132971CFC | 8/7/20 | 15:57:48 | 7037289650 | 3139733698 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 171 | 3E+14 | 15F785050E0 | 8/10/20 | 12:15:22 | 7037289650 | 5124305992 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 172 | 3E+14 | 1F86C1A08E | 8/10/20 | 14:23:59 | 7037289650 | 5124305992 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 173 | 3E+14 | B5BD08D63 | 8/11/20 | 15:33:02 | 7037289650 | 7342064116 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 174 | 3208 | FF093242E0 | 8/12/20 | 12:00:42 | 7037289650 | 3129733698 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 175 | 3E+14 | B1ACDC0989 | 8/13/20 | 9:43:17 | 7037289650 | 9044251482 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 176 | 3E+14 | 84D7946F35 | 8/14/20 | 12:40:18 | 7037289650 | 3057674115 | Outbound | 0:00:03 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 177 | 3E+14 | C5D181F2D2 | 8/14/20 | 14:19:00 | 7037289650 | 3057674115 | Outbound | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | No Answer |
| 178 | 3E+14 | 1BE2BCA61F | 8/18/20 | 15:35:22 | 7037289650 | 7348884537 | Outbound | 0:00:02 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0:00:00 | 0 | 0 | 0 | 0 | 0 | Answering M |
| 179 | | | | | | | | | | | | | | | | | | | | | | | |
| 180 | | | | | | | | | | | | | | | | | | | | | | | |
| 181 | | | | | | | | | | | | | | | | | | | | | | | |
| 182 | | | | | | | | | | | | | | | | | | | | | | | |
| 183 | | | | | | | | | | | | | | | | | | | | | | | |
| 184 | | | | | | | | | | | | | | | | | | | | | | | |
| 185 | | | | | | | | | | | | | | | | | | | | | | | |

| | CAMPAIG | AGENT | AGENT E | SKILL | RATE | BILL TIME | COST | NUMBER | NUMBER | NUMBER | FIRST NA | LAST NAM | COMPAN | STREET | CITY | STATE | ZIP |
|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|
| 2 | TIGER LIVE T | [None] | [Deleted] | LIVE TRANSF | 0 | 0:00:00 | 0 | | | | | | | | | | |
| 3 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 4 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 5 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 6 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 7 | TIGER LIVE T | sjaeger@am | sjaeger@am | LIVE TRANSF | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 8 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 9 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 10 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 11 | L2 Campaign | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 12 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 13 | GC_Aged | sjaeger@am | sjaeger@am | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 14 | L2 Campaign | sjaeger@am | sjaeger@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 15 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 16 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 17 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 18 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 19 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 20 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 21 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 22 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 617RC12986 | | | | |
| 23 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 24 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 25 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 26 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 27 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 28 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 29 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 30 | GC_Aged | [Deleted] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 31 | TIGER POSTE | [None] | [None] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 32 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 33 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 34 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 35 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 36 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 37 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 38 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 39 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 40 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 41 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 42 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 43 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 44 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 45 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 46 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 47 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 48 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 49 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |
| 50 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 52 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 53 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 54 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 55 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 56 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 57 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 58 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 59 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 60 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 61 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 62 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 63 | Inbound Sale | [Deleted] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 64 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 65 | Inbound Sale | [Deleted] | [Deleted] | Inbound Sale | 0 | 0:00:00 | 0 | | | | | | | | | | | |
| 66 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 67 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 68 | L2 Campaign | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 69 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 70 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 71 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 72 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 73 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 74 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 75 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 76 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 77 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 78 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 79 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 80 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 81 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 82 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 83 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 84 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 85 | Quoted - Fol | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 86 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 87 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 88 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 89 | L2 Campaign | [Deleted] | [Deleted] | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 90 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 91 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 92 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 93 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 94 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 95 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 96 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 97 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 98 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 99 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 100 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 101 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 102 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 103 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 104 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 105 | Quoted - Fol | mleroy@am | mleroy@am | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 106 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 107 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 108 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 109 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 110 | L2 Campaign | edenton@an | edenton@an | APC_Closers | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 111 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 112 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 113 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 114 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 115 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 116 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 117 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 118 | L2 Campaign | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 119 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 120 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 121 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 122 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 123 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 124 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 125 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 126 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 127 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 128 | Inbound Sale | lrry190@net | lrry190@net | Inbound Sale | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 129 | L2 Campaign | [None] | [Deleted] | test skill | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 130 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 131 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 132 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 133 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 134 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 135 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 136 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 137 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 138 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 139 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 140 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 141 | TIGER POSTE | ldelbrocco@ | ldelbrocco@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 142 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 143 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 144 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 145 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 146 | TIGER POSTE | sgoodhew@ | sgoodhew@ | A-F-J-O-P-T- | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 147 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 148 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 149 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 150 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |

| | X | Y | Z | AA | AB | AC | AD | AE | AF | AG | AH | AI | AJ | AK | AL | AM | AN | AO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 151 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 152 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 153 | TIGER POSTE | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 154 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 155 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 156 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 157 | GC_Aged | dcoletta@an | dcoletta@an | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 158 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 159 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 160 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 161 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 162 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 163 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 164 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 165 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 166 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 167 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 168 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 169 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 170 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 171 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 172 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 173 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 174 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 175 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 176 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 177 | TIGER POSTE | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 178 | Quoted - Fol | [None] | [Deleted] | [None] | 0 | 0:00:00 | 0 | 7037289650 | | | Ruth | Smith | 501RD06127 | 12000 Marke | Reston | VA | 20190 | |
| 179 | | | | | | | | | | | | | | | | | | |

# Exhibit C



**Planet Depos**
We Make It *Happen*™

# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

JA855

```
1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF VIRGINIA

3                   Alexandria Division

4     --------------------------x

5     RUTH SMITH, individually   :

6     and on behalf of all       :

7     others similarly situated, :

8                  Plaintiffs, : Case No.:

9        v.                     : 1:22-cv-00081-LMB-TCB

10    SUNPATH, LTD., a           :

11    Massachusetts corporation, :

12                 Defendant.   :

13    --------------------------x

14

15             Deposition of RUTH SMITH

16                 McLean, Virginia

17            Friday, December 2, 2022

18                 9:56 a.m. EST

19

20    Job No:  472707

21    Pages:  1 - 213

22    Reported by:  Kelly Carnegie, CSR, RPR
```

Transcript of Ruth Smith
December 2, 2022                                                53

```
 1                  (Discussion off the record from 11:00

 2      a.m. to 11:00 a.m.)

 3                  MR. CAFFAS:  Let's go back on the

 4      record.

 5                  Can you reread my last question, Kelly.

 6                  (The reporter read the requested

 7      testimony.)

 8      BY MR. CAFFAS:

 9          Q    Why would you have to refer to your

10      notes?

11          A    For the exact language.

12          Q    Do you remember anything about the

13      language that led you to make that statement that

14      the purpose of the call was to solicit the sale of

15      SunPath's vehicle service contracts?

16          A    Based on my memory, they gave the name

17      of the company and what they were -- what they

18      were -- I think what they were selling.

19          Q    When you say the name of the company,

20      what was the name of the company?

21          A    SunPath.

22          Q    You say that they used the word
```

# Exhibit D

American Automotive Protection Corp Mail - American Automotive Protection Corp Coverage Summary - heritagedulawful.com@gmail Gmail

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

**Samantha** Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

**Vehicle**
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

**Coverage Plan**
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

**Plan Cost**
| | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance
- Complimentary Car Rental & Towing
- Complimentary Trip Interruption / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St

**JA859**

Reston, VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

# American Automotive Protection

☎ - (800) 427-1806

## Your Plan

Coverage Provided By

## SunPath

Coverage Duration

## 48$^{mo}$ / 75,000$^{mi}$

The Vehicle Service Contract you are purchasing will cover your vehicle until the vehicle odometer reads 76,000$^{mi}$ or June 27, 2024, whichever occurs first.

Coverage Type

## Diamond Coverage

○ View Coverage Terms (../openfile.aspx?documentid=139)

---

### Deductible

○ $0.00
○ $50.00
◉ $100.00

---

### Payment

◉ Monthly Installments
○ Full Payment

Due Today

## $99.00

30 Monthly Payments of

## $116.33

---

### Your Vehicle

### 2016 BMW 228

**JA861**

## Exact Odometer:

9,500

Enter VIN Number

Validate

Vehicle VIN needs validated for accurate pricing.

# Policy Holder Information

**First Name**

Ruth

**Last Name**

Smith

**Phone**

(703) 728-9650

**Email**

rdssmith@gmail.com

**Address**

12000 Market St

**Apt/Suite**

apt 356

**City**

Reston

**State**

VA

**Zip**

20190

# Your Account

Upon review and approval of your purchase you will be notified via email how to access your account online. If you already have an account, this new policy will be linked to your existing account by matching your email address on file.

JA863

Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION
 3

    RUTH SMITH, individually and on
 4  behalf of all others similarly
    situated,
 5
                    Plaintiff,        Case No.
 6                                    1:22-cv-00081-LMB-
    vs.                               WEF
 7

    SUNPATH, LTD., a Massachusetts
 8  corporation,
 9                  Defendant.
    _____/
10
11                    DEPOSITION OF
    RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12  d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                     KOBI CHUKRAN
13
                (Conducted Via Videoconference)
14
15
    DATE:            November 1, 2022
16
17  TIME:            11:03 a.m. to 2:06 p.m.
18
    PURSUANT TO:     Notice by counsel for Plaintiff
19                   for purposes of discovery, use at
                     trial or such other purposes as
20                   are permitted under the Federal
                     Rules of Civil Procedure
21
22  REPORTED BY:     Aaron T. Perkins, RMR, CRR, CRC
                     Notary Public, State of
23                   Florida at Large
24
                     Pages 1 to 128
25
                                              Page 1
```

1    plan?

2        A.    I'm sorry, repeat the question please.

3        Q.    Once you determine which plan a customer

4    is best qualified for, then you back to the

5    customer and provide them with the plan that you

6    believe best suits their needs?

7        A.    Yes.

8        Q.    Okay.   And then the customer can either

9    say, no, I don't want that plan, or, yes, I do?

10       A.    Yes.

11       Q.    Okay.   What happens if the customer

12   says, All right, I want to purchase that plan?

13           MR. TANDY:   Objection.   I'm not sure I

14       understood your question, Taylor.

15   BY MR. SMITH:

16       Q.    I'm just trying to understand how they

17   go about closing the sales process.   What happens

18   after a customer says, All right, I will purchase

19   that vehicle service plan?

20       A.    We receive information, and that

21   information is then submitted, in this case,

22   SunPath for fulfillment.

23       Q.    And would SunPath always accept that

24   contract, or would they sometimes decline it?

25           MR. TANDY:   Objection.

                                           Page 35

```
1              You can answer.  I'm objecting to the
2         form of the question.
3              THE WITNESS:  In some cases it would be
4         rejected.
5    BY MR. SMITH:
6         Q.   Can you tell me an example of why
7    SunPath would reject a particular contract?
8              MR. TANDY:  Objection, Taylor, to the
9         extent you're asking him to surmise why
10        another company rejected the a contract.  Or
11        are you only asking if he's ever been told
12        specific reasons?  Because the first way I'm
13        going to object that that's speculation.  But
14        if it's the second reason, then I would ask
15        you to ask that specific question.
16             Does that make sense?
17             MR. SMITH:  I understand what you're
18        saying.
19   BY MR. SMITH:
20        Q.   Would you ever receive a rationale for
21   why SunPath would have rejected one of
22   American Protection's sales contracts?
23        A.   Yes.
24        Q.   What would those rationales be?
25        A.   It could have been that the title of the
```

Page 36

1     vehicle was rebuilt or rebranded.

2          Q.   Any other reasons?

3          A.   That's most of the -- that would be the

4     most.

5          Q.   Okay.  Let's say SunPath rejected one of

6     the contracts.  Would American Protection go about

7     trying to fix the issue with SunPath and submit it

8     again?

9          A.   No.  If the vehicle does not qualify for

10    coverage, there's really nothing we can do.

11         Q.   Okay.  And if SunPath rejects the

12    contract, would American Protection ever say, All

13    right, well, then we have these other options with

14    one of the other companies that you work with?

15         A.   No.

16         Q.   Okay.  You said you entered the payment

17    information and submit it to, in this case,

18    SunPath.

19              Where would you enter that payment

20    information?

21         A.   Into our CRM system.

22         Q.   The CRM.

23              And does SunPath have access to that CRM

24    system?

25         A.   I'm not sure.

                                             Page 37

1        territorial scope?

2        A.    It is limited to the states SunPath

3   operates in.

4        Q.    And do you know those states?

5        A.    Not offhand.

6        Q.    Okay.  Does SunPath put any pressure on

7   American Protection to make a certain number of

8   sales each month?

9        A.    No.

10       Q.    Does SunPath require American Protection

11  to maintain a do-not-call list?

12       A.    No.

13       Q.    Does SunPath have a do-not-call list

14  that American Protection is required to adhere to?

15       A.    No.

16       Q.    Does SunPath permit American Protection

17  to use its name in marketing materials?

18       A.    I believe so, yes.

19       Q.    Does SunPath restrict how

20  American Protection can market?

21       A.    Everything would be highlighted in the

22  Seller Agreement.

23       Q.    But nothing beyond a Seller Agreement?

24       A.    Not to my knowledge.

25       Q.    Okay.  Can you tell me how SunPath would

                                        Page 45

1    compensate American Protection for the sale of one

2    of its vehicle service contracts?

3         MR. TANDY:  I'm going to object to the

4    extent of relevance, but I will leave that --

5    I don't know that it's protected by the

6    contract.

7         MR. CAFFAS:  I will also object to the

8    form in that it's leading, suggesting that

9    SunPath does pay American Protection at all,

10   which I don't believe that's in the

11   testimony, so I will object, again, to

12   leading, as I believe that's your testimony,

13   Mr. Smith.

14   BY MR. SMITH:

15        Q.   You can answer, Kobi.

16        A.   SunPath does not compensate us for the

17   sales.  We are -- we pay SunPath a cost for the

18   policy, and we then collect the payments from the

19   customer.

20        Q.   Okay.  So American Protection, would

21   they set the price of the vehicle service

22   contracts?

23        A.   Yes.

24        Q.   Okay.  And, then, a portion of that is

25   the cost of the contract.  Is that fair to say?

Page 46

1    A.  Yes.

2    Q.  And that's the portion that

3 American Protection has to provide to SunPath?

4    A.  Yes.

5    Q.  Okay.  And then whatever amount above

6 that cost portion American Protection keeps

7 themselves?

8    A.  Yes.

9    Q.  Got it.

10     All right.  Let me put up my next

11 exhibit.  Give me a second.

12     (Exhibit No. 2 was marked for

13   identification.)

14 BY MR. TANDY:

15    Q.  All right.  I'm showing you what has

16 been marked as Exhibit 2.

17     Do you recognize this document?

18    A.  Yes.

19    Q.  Can you tell me what it is?

20    A.  I believe this is the Call Center

21 Marketing Agreement.

22    Q.  And that agreement is between SunPath

23 and American Protection; is that correct?

24    A.  Yes.

25    Q.  It looks like it was entered into on

Page 47

1     other than what was previously produced?

2         A.   No.

3         Q.   Okay.  Does American Protection ever

4     obtain a listing of numbers registered on the DNC

5     Registry?

6         A.   Yes.

7         Q.   How often does it obtain that list?

8         A.   That is provided to us by any lead

9     providers in this case.  So, in other words, if

10    we -- any kind of leads that we acquire are

11    cleansed and cleaned and suppressed against the

12    National Do Not Call List.

13        Q.   Okay.  After American Protection

14    receives those leads, does it take any steps to

15    ensure that it's not calling numbers that are in

16    those leads that are registered on the National Do

17    Not Call Registry?

18        A.   We run those against our internal DNC

19    lists.

20        Q.   Just your internal DNC list?

21        A.   Yes.

22        Q.   Not the National DNC List?

23        A.   Not -- no.  It's already done by the

24    lead providers.

25        Q.   Okay.  Does American Protection maintain

Page 83

1      records of prior express consent from the

2      individuals that it places calls to?

3          A.   No.

4          Q.   How does American Express [sic] ensure

5      that the individuals that it's placing calls to

6      provided prior express consent?

7              MR. CAFFAS:   I will object to this as

8          vague.   I believe you just asked about

9          American Express.   I assume you're not

10         talking about the credit card company.

11             MR. SMITH:   Did I say American Express?

12             MR. CAFFAS:   Yes.

13             MR. SMITH:   Strike that.

14     BY MR. SMITH:

15         Q.   How does American Protection ensure that

16     individuals that it's placing calls to have

17     provided prior express consent?

18         A.   We review the method of which they

19     request information.

20         Q.   So can you say that again?

21         A.   We review the method of which they have

22     requested information.

23         Q.   What do you mean by that?

24         A.   I mean I review to make sure that the

25     proper opting language is present, that our name

                                          Page 84

1    strike that.

2            Do you know if it's been altered during

3    the relevant time period, since January 26th,

4    2018, to the present?

5        A.   No, I don't believe so.

6        Q.   And who would this be provided to?

7        A.   To a subcontractor.

8        Q.   Could you give me an example of --

9    sorry.  Look to the first line.  "It says, Hi,

10   blank.  This is, blank, thank you for calling

11   American Protection Corp. How may I direct your

12   call?"

13           Would you provide any instructions to

14   the subcontractors as to how they're supposed to

15   use this?

16       A.   No.

17       Q.   You would just provide the document and

18   say, Adhere to this?

19       A.   That is the essence of a subcontractor,

20   correct.

21       Q.   Okay.  Would you ever tell the

22   subcontractors that they're retired -- sorry, that

23   they're required to identify themselves by first

24   and last name?

25       A.   I believe it's left to their choice of

                                        Page 88

1    how they would prefer to, whether it's the first

2    name or last name or both.

3         Q.   Okay.  And is this the script that all

4    of your subcontractors would use to sell any

5    vehicle service plan?

6         A.   Yes.

7         Q.   Okay.  Did American Protection ever

8    provide training to the subcontractors as to how

9    they should conduct telemarketing?

10        A.   No.

11        Q.   Does it have a written agreement with

12   all of the subcontractors?

13        A.   Yes.

14        Q.   Would that be the affiliate agreement

15   that you produced?  Is that an example of that?

16        A.   Yes.

17        Q.   Okay.  We'll get to that in a minute and

18   move on to another exhibit.

19             (Exhibit No. 5 was marked for

20        identification.)

21   BY MR. SMITH:

22        Q.   Kobi, I'm showing you what has been

23   marked as Exhibit 5.

24             Do you recognize this document?

25        A.   Yes.

Page 89

```
 1        are you able to figure out the source of that

 2        contact information, where it came from?

 3            A.   In some cases I could, and in some cases

 4        I can't.

 5            Q.   Okay.  What about in the plaintiff's

 6        situation?

 7            A.   What about it?

 8            Q.   You previously said that

 9        American Protection sent a mailing to her; is that

10        correct?

11            A.   Yes.

12            Q.   Do you know where it got her contact

13        information prior to sending that mailing?

14            A.   I do not, no.

15            Q.   Did you search for that information?

16            A.   Yes.

17            Q.   What repositories were searched?

18            A.   Our CRM.

19            Q.   CRM.

20                 Does SunPath ever provide leads to

21        American Protection?

22            A.   No.

23            Q.   All right.  I will pull up my next

24        exhibit.

25                 (Exhibit No. 7 was marked for
```

Page 100

1      record?

2         THE COURT REPORTER:  Back on the record, sir.

3      Thank you.

4         MR. SMITH:  All right.

5      BY MR. SMITH:

6        Q.   I'm going to re-ask that question, Kobi.

7         Does American Protection have any records of

8      the actual inbound or outbound calls to Plaintiff?

9        A.   No.

10     Q.   Okay.  Does American Protection have any other

11    documents in its possession related to Plaintiff that

12    have not been produced?

13     A.   No.

14     Q.   Does American Protection have any record of

15    Plaintiff providing any prior express written consent?

16     A.   I'm sorry.  What -- what was the question

17    again?

18     Q.   Yeah.  Does American Protection have any record

19    of Plaintiff providing any prior express written

20    consent?

21        MR. CAFFAS:  I'm going to object to the

22       vagueness of that question.  Prior express written

23       consent, to what?

24        MR. TANDY:  I will join.

25    BY MR. SMITH:

Page 155

Kobi Chukran (Chukran Management Group), Volume 2 - November 9, 2022

```
 1        Q.   You can answer.

 2        A.   No.

 3        Q.   Does American Protection have any policies or

 4   procedures to ensure compliance with the Virginia

 5   Telephone Privacy (sic) Act?

 6        A.   Everything has been provided to you.

 7        Q.   Okay.  Other than the documents that have been

 8   provided, does American Protection have any policies or

 9   procedures to ensure compliance with the Virginia

10   Telephone Privacy Act?

11        A.   No.

12        Q.   Okay.  And does American Protection have any

13   specific policies or procedures that relate to

14   compliance with the Virginia Telephone Privacy Act?

15        A.   No.

16        Q.   Prior to this lawsuit, did you have -- were you

17   aware of the Virginia Telephone Privacy Act?

18        A.   No.

19        Q.   Okay.  I want to go through calls to Plaintiff

20   briefly and ask you questions about them.

21             So Plaintiff alleges, on May 26th, 2020, that

22   she received two calls, and the caller ID was a

23   410-844-6327.

24             Do you know if American Protection has ever

25   utilized that number to place calls?
```

Page 156

1              (Deposition Exhibit 16 was marked.)

2    BY MR. SMITH:

3         Q.   All right, Kobi.  I'm showing you what's been

4    marked as Exhibit 16.

5              Do you recognize this document?

6         A.   (Witness perused document.)  Yes.

7         Q.   Okay.  And I'll represent this is a document

8    that was produced by Plaintiff in this litigation, and

9    it's been marked as SMITH000025 through 26.

10             Can you tell me what it is?

11        A.   It seems to be an e-mail quote re- -- that was

12   requested by the plaintiff.

13        Q.   This e-mail was sent on May 28th, 2020, at

14   6:03 p.m.; is that correct?

15        A.   I don't know.  I -- I don't know if that's

16   correct or not.

17        Q.   Okay.  That's what the exhibit states, though,

18   right?

19        A.   That's what it -- yes.

20        Q.   Okay.  It was sent to Ruth Smith, and it's --

21             I guess, it was sent by Samantha Jaeger; is

22   that correct?

23             MR. TANDY:  Objection.

24             MR. CAFFAS:  Yeah.  Objection.  It calls for

25        speculation.

                                        Page 189

Kobi Chukran (Chukran Management Group), Volume 2 - November 9, 2022

```
 1              THE WITNESS:  It looks like the e-mail address

 2       is of Samantha Jaeger.

 3    BY MR. SMITH:

 4       Q.   Okay.  This e-mail also begins -- or --

 5    sorry -- strike that.

 6              This e-mail begins with, "Thank you for taking

 7    the time to discuss your vehicle protection needs."

 8              Do you see that?

 9       A.   Yes.

10       Q.   Fair to say this e-mail would have followed a

11    phone call?

12       A.   Yes.

13       Q.   Okay.  Do you know why this document wasn't

14    also produced by American Protection?

15       A.   No, I do not.  I believe -- I'm not sure if

16    this is an attachment or what exactly is the format this

17    came in.

18       Q.   Okay.  But you don't know why it was -- wasn't

19    produced?

20       A.   No, I do not.

21              MR. TANDY:  Objection.

22              (Deposition Exhibit 17 was marked.)

23    BY MR. SMITH:

24       Q.   Okay.  I'm showing you what's been marked as

25    Exhibit 17.
```

Page 190

```
 1              Do you recognize this document?

 2        A.    (Witness perused document.)  Yes, I do.

 3        Q.    Can you tell me what it is?

 4        A.    Well, I think this is the link that is

 5   generated by Inline when a customer presses the

 6   "Buy Now" button on their e-mail.

 7        Q.    Okay.  All right.  That's all the questions I

 8   had about this one.

 9              (Deposition Exhibit 18 was marked.)

10   BY MR. SMITH:

11        Q.    Kobi, I'm showing you what's been marked as

12   Exhibit 18.

13              Do you recognize this document?

14        A.    Yes.

15        Q.    Can you tell me what it is?

16        A.    This is a confirmation of an e-mail from

17   Paul Sporn of SunPath, confirming appointment of our

18   company, in terms of the Florida licensing requirement.

19        Q.    Okay.  And it's dated September 20th, 2021; is

20   that correct?

21        A.    Yes.

22        Q.    And this is, it looks like, a reappointment; is

23   that correct?

24        A.    That's what it says, yes.

25        Q.    Okay.  Is this a confirmation that SunPath
```

Page 191

```
 1      American Protection has never spoofed any telephone

 2      number associated with First Citizens Bank, to your

 3      knowledge?

 4          A.   Yes.

 5          Q.   Does -- strike that.

 6               Does American Protection subscribe to the

 7      reg- -- the Federal Do Not Call Registry?

 8          A.   Not at this time, no.

 9          Q.   Why?  Why not?

10          A.   Our subscription expired.

11          Q.   And does AP --

12               Or at what time did it subscribe to the Do Not

13      Call Registry?

14          A.   I don't have the exact dates.

15          Q.   Would it be --

16               Would it have been within the past year that

17      your subscription expired?

18          A.   No.

19          Q.   Can you give me a ballpark of when the

20      subscription would have expired?

21          A.   I believe a couple of years.

22          Q.   Okay.  And in that time, did AP intentionally

23      make calls to consumers --

24          A.   No.

25          Q.   -- on the Do Not Call Registry?
```

Veritext Legal Solutions
303-988-8470

**JA882**

Exhibit F















Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO
DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

**INTERROGATORIES**

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

**JA889**

1

system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themselves by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. As of today, November 30, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

2.      If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, the calls at issue were place for the purpose of soliciting Plaintiff to purchase SunPath's vehicle service contracts. (*See* SMITH000022-26.) As such, SunPath is a "seller" within the meaning of Va. Code Ann. § 59.1-514.1 (West). Accordingly, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.


NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has stated all facts currently in her knowledge in response to this interrogatory. Plaintiff acknowledges that SunPath did not make the calls to her itself/directly. Instead, the calls were placed by third parties.


3.      If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at

# Exhibit H

## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company   (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement.  CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products.  This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor  and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%).   For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company.

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid.

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein.  In all cases CCM shall be solely responsible for all of its expenses.

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year.  This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below.  Written notice shall be made at least thirty (30) days prior to the end of the current term

2



## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term. Written notice shall be sent via registered mail; return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may be terminated immediately for cause upon written notice from Company to CCM if:

    i)    CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

    ii)    An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

    iii)    Breach by CCM of any provisions contained herein;

    iv)    CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

    v)    CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination. Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer, service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20. The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed. Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

If to the Company:        SunPath, LTD
                          50 Braintree Hill Office Park – Suite 310
                          Braintree, MA 02184

If to the CCM:            Chukran Management Group, LLC
                          10627 Cocosolo Way
                          Boynton Beach, FL 33437
                          Attention : Kobi Chukran

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided. The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company. Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM.

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature, including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including, but not limited to any action, suit, or other proceeding which may be brought in connection therewith, arising out of or related to:  (i) CCM's sale of Product; (ii) the negligent acts, omissions or intentional wrongdoing of CCM; (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services; or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company.  The Company may assign this Agreement without CCM's consent.  Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement. The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

4

24) Property Rights.  Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company.  This provision shall survive the expiration or termination of this Agreement.

25) No Benefit to Third Parties.  The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) Changes and Waiver.  This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM.  The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) Entire Agreement.  This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby.  All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) Governing Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) Severability.  If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired; provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) Law and License.  Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement.  Facsimile signatures will be accepted by both parties as execution original signatures.

32) Announcements.  The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) Jurisdiction.  The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                                CHUKRAN MANAGEMENT GROUP, LLC


X: _____               X: _____

Name: _____               Name: _KoBi chukran_

Date: _____               Date: _6/29/17_

5

**JA897**

## ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement:

1) VSC Product - Horizon
2) VSC Product – Mileage Plus
3) VSC Product – Secure Advantage

## ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to:

All states in the continental US, except: TBD

7

EXHIBIT 1 – STANDARDS of CONDUCT

See attached

8



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD, or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD, or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

Very truly yours,

Andrew Garcia
President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

**JA901**

Exhibit I

```
 1                IN THE UNITED STATES DISTRICT COURT
 2               FOR THE EASTERN DISTRICT OF VIRGINIA
 3                       ALEXANDRIA DIVISION
 4    RUTH SMITH, individually and
      on behalf of all others      Case No. 1:22-cv-00081-LMB-WEF
 5    similarly situated,
 6         Plaintiff,
 7    vs.
 8    SUNPATH, LTD, a Massachusetts
      corporation,
 9
10         Defendant.
      _____
11      VIDEOCONFERENCED 30(b)(6) DEPOSITION OF SUNPATH, LTD
                       (through ANDREW GARCIA)
12                     December 8, 2022
      _____
13
14    VIDEOCONFERENCED APPEARANCES:
15    ON BEHALF OF THE PLAINTIFF:
              PATRICK H. PELUSO, ESQ.
              Woodrow & Peluso, LLC
16            3900 E. Mexico Avenue, Suite 300
              Denver, Colorado  80210
17            Phone: 720-213-0675
              Email: ppeluso@woodrowpeluso.com
18
      ON BEHALF OF THE DEFENDANT:
19            GREGORY CAFFAS, ESQ.
              Roth Jackson Gibbons Condlin
20            8200 Greensboro Drive, Suite 820
              McLean, Virginia  22102
21            Phone:  703-485-3535
              Email:  gcaffas@rothjackson.com
22
      Also Present:  Paul Sporn, Esq.
23
24
25
                                              Page 1
```

1   with you about is Topic 24 here, that says, "Your sources

2   of revenue, including the portion of your revenue that is

3   generated from sales made by third parties acting on your

4   behalf."

5                 So just, you know, to sort of -- to frame

6   this a little bit, I'm not asking you to disclose

7   SunPath's total revenue; right?  Give me a number.  I'm

8   not asking that.  And I -- I understand sort of your

9   consistent statement through this deposition that third

10  parties don't act on your behalf.  So let's sort of

11  reframe this to -- a way that I think everyone can agree.

12                I'm interested in understanding the portion

13  of SunPath's revenue that is generated from sales made by

14  third parties who sell SunPath's service contracts.

15                Is that 100 percent of SunPath's revenue?

16  Is it 10 percent?  What sort of chunk of its revenue do

17  you think is generated by third-party sales?

18         A.    100 percent of our revenue is from third

19  parties because we don't do any selling.

20                MR. PELUSO:  Okay.  Easy enough.  I don't

21  really have anything else.  I'll turn it over to Greg.

22                        EXAMINATION

23  BY MR. CAFFAS:

24         Q.    Great.  First things first.  I just want to

25  address that last line of questioning that Pat just

                                              Page 71

# Exhibit J

5/28/20
Company: American Protection
Agent: Samantha
Phone: 1-800-427-1806 (Ext 1190)
Website: Americanprotectioncorp.com
Location: FL
Type of call: I answered the call there was a 3 second delay and Samantha came on the line.
16 Minute call at 12:51PMET
Received a voicemail from Samantha (following up on my VIN number) at 1:55PMET and an email quote from Samantha at 4:09PMET.
(In order to for Samantha to provide me the information I let her know that I would purchase the highest plan and gave her a Visa gift card as payment)

Exhibit K

**From:** Ruth Smith <rdssmith@gmail.com>
**Date:** June 11, 2020 at 7:49:00 AM CDT
**To:** sjaeger@americanprotectioncorp.com
**Subject: Re: American Protection Corp. Quote Summary**

Samantha,

I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty for my car.

Do not call me anymore.

Ruth

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

Samantha Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

| Vehicle | |
|---|---|
| Make: 2016 BMW | |
| Model: 228 | |
| Odometer: 9,500 | |
| Vin: | |

| Coverage Plan | |
|---|---|
| Plan: Diamond | |
| Expiration Date: 6/27/2024 | |
| Expiration Miles: 76,000 | |
| Deductible: $100.00 | |

| Plan Cost | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance

**JA908**

- Complimentary Car Rental & Towing
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St
Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

**JA909**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**RUTH SMITH,** individually and on behalf of
all others similarly situated,

       *Plaintiff,*

*v.*

**SUNPATH, LTD.,** a Massachusetts corporation,

       *Defendant.*

Case No. 1:22-cv-00081 (LMB/WEF)

**DEFENDANT SUNPATH, LTD.'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Defendant SunPath, Ltd. ("SunPath"), by counsel, submits its Reply to Plaintiff's Response in Opposition to SunPath's Motion for Summary Judgment ("Opposition"), ECF No. 76.

I.      **SunPath's Undisputed Facts Are Undisputed.**

    **A.  Plaintiff Mischaracterizes the Record Evidence to Manufacture a Dispute of Fact that is Not Real.**

Plaintiff's Opposition fails to prove that any of the undisputed facts are genuinely disputed.  In a transparent effort to stave off the Court's resolution of SunPath's Motion for Summary Judgment in its favor, Plaintiff mischaracterizes record evidence in a failed attempt to muddy the record.  The three most prevalent mischaracterizations involve Plaintiff's and American Protection's deposition testimony, and the Marketing Agreement ("Agreement") between SunPath and American Protection. The facts listed in SunPath's Memorandum in Support of its Motion for Summary Judgment ("Memo"), ECF No. 66, are undisputed once Plaintiff's mischaracterizations are properly disregarded.  Therefore, no questions of fact are left for the jury. All that remains are legal questions for the Court to determine.

It is undisputed that SunPath's name was never mentioned on any of the calls at issue. *See* SunPath's Memo at 9. Plaintiff claims that she "specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue." Opp'n at 4. But, the full context of Plaintiff's testimony plainly shows that "her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls." Memo at 9.[1] Yet, those notes do not contain a single mention of SunPath. *See* Memo **Ex. 9**, ECF No. 66-9

---

[1] *See* Deposition of Plaintiff Ruth Smith ("Smith Dep.") at 52:12-19; 53:9-54:2; 54:5-6 (Q: "The next line of that paragraph and the final line says, 'Further, the caller solicited plaintiff to purchase SunPath's vehicle service contracts.' Can you describe how the caller solicited you to purchase SunPath's vehicle service contract. A: I would have to – for the exact information, **I**

(Plaintiff's call notes containing no reference to SunPath).[2]  This is not a surprise:  It was not until later when American Protection emailed her a link to another document that she learned of SunPath's identity.  *See* Memo **Ex. 11**, ECF No. 66-11.  Moreover, "the sales script American Protection produced in this case does not contain any mention of SunPath's name." Mem at 10; *see also* Memo **Ex. 10**, ECF No. 66-10 (American Protection sales script). Thus, it is undisputed that SunPath's name was never mentioned on any of the calls at issue.

Plaintiff then mischaracterizes the deposition testimony of American Protection in a failed attempt to create a dispute as to the fact that Plaintiff was never offered a SunPath VSC on the calls at issue. Plaintiff claims that "[i]f the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company." Opp'n at 4-5. First, this claim is irrelevant because there is no evidence that SunPath rejected Plaintiff for coverage. The only record evidence is that **Plaintiff rejected** a VSC she had been offered by American Protection. *See* Memo **Ex. 12,** ECF No. 66-12 (Plaintiff's email to American Protection). Plaintiff never actually purchased a SunPath VSC. *See* Statement of Uncontested Facts ¶ 12, ECF No. 56. Thus, SunPath never heard of Plaintiff until her attorney approached it for money to settle these claims.  SunPath certainly never had an

---

**would have to refer to my notes**. . . . Q: Why would you have to refer to your notes? A: For the exact language. Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were – what they were – I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath. Q: You say that they used the word 'SunPath' as the name of the company, not another company's name? . . .  A: **I would have to refer to my notes for exactly what the…**") (emphasis added), attached as **Exhibit 1**.

[2] Plaintiff tries to claim that a May 28, 2020 email from American Protection reinforces her recollection that SunPath was mentioned on one of the calls with American Protection. *See* Opp'n at 18. Plaintiff's deposition testimony defeats that claim. She testified that it was her notes she would need to rely on, not the email, to see what company names were stated on the calls at issue. *See* Smith Dep. at 52:12-19; 53:9-54:2; 54:5-6. Plaintiff cannot now contradict her deposition testimony and claim her recollection instead relies on that email.

opportunity to reject a sale to Plaintiff.   Second, Plaintiff mischaracterizes that testimony by stating "American Protection's representative testified that, after identifying the best VSC plan for a given consumer, American Protection would exclusively solicit the purchase of that plan, and it would not later attempt to solicit the purchase of a VSC from a competing company if the first was rejected." Opp'n at 18. But, American Protection's actual testimony does not address what happens when *the consumer* rejects an offered VSC.[3] A consumer's rejection of an offered VSC is all that is applicable in this case. *See* Memo **Ex. 12**. Plaintiff cannot rely on that irrelevant testimony to create an issue of fact.

Finally, Plaintiff's Opposition repeatedly mischaracterizes SunPath's Agreement with American Protection. But, her interpretation of it cannot create any disputed triable facts as "[t]he interpretation of a contract is a question of law[.]" *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007) (citing *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984)).   Thus, when Plaintiff's red herrings are properly ignored, the Court is left with an undisputed record that is ripe for summary judgment in SunPath's favor.

### B.  Plaintiff Improperly Relies on Inadmissible and Improper Evidence.

Plaintiff's Opposition also improperly relies upon inadmissible documents, namely the records recently produced by Five9, Inc. ("Five9") and Plaintiff's newly crafted declaration. *See* Opp'n **Ex. A,** ECF No. 76-1; **Ex. B**, ECF No. 76-2; *see also* Opp'n at 3-4. Neither are admissible[4] and Plaintiff cannot rely on them now.[5] In addition to being inadmissible, Plaintiff's

---

[3] *See* Deposition of American Protection ("AP Dep.") 37:11-15 (": Okay. And if SunPath rejects the contract, would American Protection ever say, All right, well, then we have these other options with one of the other companies that you work with? A: No."), excerpts attached as **Exhibit 2**.
[4] The inadmissibility of the Five9 records is addressed more fully in SunPath's First Motion in Limine, ECF No. 84. *See also* Memo at 9 n.2; 16-17 n.7 (addressing the inadmissibility of the

declaration cannot be used to oppose summary judgment because it is based exclusively on Five9 records about which she lacks personal knowledge.[6]  For example, Plaintiff points to the Five9 data to support her claim that a call that she made to American Protection was "abandoned and never answered."  Opp'n at 13.  Plaintiff relies solely on the Five9 records for that claim. *See* Opp'n **Ex. B**. ¶ 4.  But, she lacks personal knowledge of their meaning and interpretation.  These records are nothing more than unexplained, non-self-explanatory content that Five9 produced in response to a subpoena for American Protection data that Plaintiff served late in the discovery window and which Five9 only authenticated well after the close of discovery.  Notably, the Five9 records contain the term "Abandon." It is not self-explanatory what this term means. Plaintiff took no deposition of a Five9 representative to explain the meaning of this mishmash of data.  This leaves both the parties and the Court without a key to decipher it.

Furthermore and as addressed below, there is no available witness with specialized knowledge of the Five9 records that can explain them through admissible testimony.  Without

---

Five9 records). The inadmissibility of Plaintiff's declaration is addressed in SunPath's Motion to Strike Plaintiff's Declaration, ECF No. 82.

[5] *See Guessous v. Fairview Prop. Invs. LLC*, 828 F.3d 208, 216 (4th Cir. 2016) ("The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial" and can only "do so by offering sufficient proof in the form of **admissible** evidence[.]") (internal quotations and citations omitted) (emphasis added); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[6] *See* Smith Dep. 147:3-148:11 ("Q: You contend that June 9 was the last call that you received that you're seeking damages for in this case? A: Again, whatever I provided initially was correct, but I know that there's the call logs that were received. So that is correct, what's in the logs. Q: Can you clarify what you mean by that? A: So when I submitted all the documentation that I had, that was to the best of my knowledge at the time, but I understand that the call logs have different information, and they are – they are correct. Q: [W]hen you say the call logs, are you referring to call logs that you believe your counsel has received but you have not yet reviewed? A. Yes. They just came this week, yes. Q: So when you say that you believe that the call logs confirm this not to be the case, is that based on representations from counsel? A: Because it's an accurate – because of the logs that were received by the company versus what I have. Q: Right, And I'm just saying you haven't reviewed these call logs that you're referring to, right? A: Correct. Q: So how do you know that the call logs confirm this? A: I rely on my counsel.").

4

**JA914**

such, Plaintiff's declaration is inadmissible and cannot be used to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence[.]").[7]

Further, the Five9 records have never been authenticated as "call records," as Plaintiff contends. *See* Declaration of Five9 Representative ("Five9 Decl."), attached as **Exhibit 3**. Therefore, Plaintiff's characterization of the Five9 data as "call records" is inadmissible speculation.[8]

Plaintiff's declaration is also improper for summary judgment purposes because it supplements and contradicts her discovery responses and deposition testimony.[9] As explained above, Plaintiff testified at her deposition that she had no personal knowledge of the Five9 records and had not even reviewed them. Plaintiff cannot now contradict her deposition testimony by claiming that the Five9 records "represent[] an accurate reflection of the calls that

---

[7] *See* Fed. R. Evid. 602 and 701; *see also Steves & Sons Inc. v. Jeld-Wen, Inc.*, Civil Action No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061, at *4 (E.D. Va. Jan. 10, 2018) ("The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on personal knowledge" (citing *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990))).

[8] It is obvious they are not simply call records of the type traditionally produced by phone companies because the column titled "DURATION" contains many entries of 00:00:00. All calls take *some* time. Moreover, there are numerous other temporal-related categories in those records that make it further inscrutable as to what they may mean, and Plaintiff never elicited any such testimony from Five9, whether during discovery or to this day. Indeed, Plaintiff only recently secured a declaration from Five9 purporting to authenticate the records, but that declaration simply refers to the voluminous data as "records"—not "call records," as Plaintiff would have it. *See* **Ex. 3**. "Records" is as illuminating as calling it "digital stuff."

[9] *See Gomez v. Haystax Tech, Inc.*, 761 Fed. Appx. 220, 229 (4th Cir. 2019) (When a party fails to provide information as required by Fed. R. Civ. P. 26(e) "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." (citing Fed. R. Civ. P. 37(c)(1))); *see also Alba v. Merrill Lynch & Co*, 198 Fed. Appx. 288, 300 (4th Cir. 2006) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

[she] recall[s] receiving from" American Protection. Opp'n **Ex. B ¶** 2.[10] Plaintiff's declaration cannot be considered in evaluating SunPath's entitlement to summary judgment.

The Five9 records are also inadmissible because there is no witness who can properly testify to them. Five9 (a publicly traded company based in California) cannot testify at trial because Plaintiff untimely disclosed the entire entity as a potential trial witness at 5:46 PM on the last day of discovery.[11] Plaintiff has neither sought leave for, nor provided substantial justification for, her untimely disclosure.  The harm and prejudice to SunPath is self-evident. Until that disclosure, the Five9 spreadsheets were simply a non-party's unauthenticated data dump of unidentified data produced in response to Plaintiff's subpoena late in the discovery

---

[10]  Plaintiff's declaration also serves to improperly supplement and contradict her timely discovery responses. Since August 29, 2022, Plaintiff had a duty to fully answer and supplement her answer to an interrogatory asking her to identify all calls she sought recovery for in this Lawsuit. *See* SunPath's First Set of Discovery Request to Plaintiff Ruth Smith at 7, attached as **Exhibit 4**. In her initial answer and two supplemental answers, Plaintiff never identified more than 54 calls, none of which occurred after June 9, 2020. Then the day before the end of discovery Plaintiff untimely supplemented her answer a third time to claim she is now seeking recovery for calls she claims are reflected in the inadmissible Five9 records. *See* Memo **Ex. 14** at 6-7, ECF No. 66-14. Based on Plaintiff's declaration, apparently that totals 118 *more calls* that occurred after June 9, 2020. Plaintiff cannot now rely on the contradictory statements in her declaration to support her claim *to more than three times* the amount of calls she was seeking recovery for throughout the entire discovery period.  The dramatic incongruence between the calls Plaintiff knew about and the unidentified "records" produced by Five9 further highlights why Plaintiff cannot reasonably assume them to be "call records."

[11]  *See* Plaintiff's Second Supplemental Initial Disclosures at 3, dated December 9, 2022 (listing Five9 and its unidentified "agents, former agents, employees, former employees, and records custodians of Five9"), attached as **Exhibit 5**; *see also* August 5, 2022 Order, ECF No. 25 (ordering discovery completed by "December 9, 2022" and that "no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.") (emphasis in Court's Order); *see also Gomez,* 761 Fed. Appx. at 229, 233-34 ("When a party fails to make a disclosure 'as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless'. . . . [holding] the district court did not abuse its discretion in excluding . . . witnesses . . . [disclosed] the last day of discovery.") (internal citations omitted).

window.  This Court's Orders, its Local Rules, the Federal Rules, and *Gomez* all confirm that Five9 should be precluded from testifying at trial.

Since Five9 cannot testify at trial, Plaintiff has no witness with specialized knowledge to testify to the Five9 records. Again, the Five9 records are not self-explanatory. They are complex data that require specialized skill and knowledge to decipher and explain.  An expert witness competent in elucidating their meaning is needed to explain them.  Any lay testimony about them, even if they were somehow relevant, would create an undue risk of confusion and would be misleading to the jury.[12] *See* Fed. R. Evid. 403, 602, 701, 702.

Plaintiff untimely produced the Five9 Decl. on January 6, 2023. *See* **Ex. 2**. Plaintiff cannot use the Five9 Decl. due to its untimely production.[13] Even if Plaintiff could offer the Five9 Decl., it does not state that the Five9 records are *call* records.  By its own terms, the Declaration refers to the spreadsheets simply as "records."  Records of what, we do not know. Neither SunPath, the Court, nor the jury should be made to guess. Therefore, Plaintiff cannot offer them as "call records." *See* Fed. R. Evid 901(a).

## II. All the Calls at Issue Were Either Made Pursuant to an Established Business Relationship or Did Not Offer or Advertise a SunPath Product.

---

[12] *See Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 101 (D. Md. 2020) (Excluding testimony where "there is no basis for the Court to conclude that [the witness] has 'specialized knowledge' regarding medical billing practices[.]"); *see also Abrams v. Nucor Steel Marion, Inc.*, Case No. 3:13 CV 137, 2015 U.S. Dist. LEXIS 154161, at *128 (N.D. Ohio Nov. 9, 2015) (refusing to permit Plaintiff to present a "'data dump' [of] EPA records for a jury to decipher."); *see also Butzer v. CoreCivic, Inc.*, 5:17-cv-360-Oc-30PRL, 2019 U.S. Dist. LEXIS 41026, at *9 (M.D. Fla. Jan. 9, 2019) (denying a motion to take judicial notice of documents where it was argued that "admitting [] complex documents to the jury without explanatory testimony would cause confusion.").

[13] *See* August 5, 2022 Order ("<u>Exhibits not so disclosed and listed will not be permitted at trial except for impeachment or rebuttal</u>") (emphasis in Court's Order); *see also Lafleur v. Dollar Tree Stores, Inc.*, Case No.: 2:12-cv-363, 2013 U.S. Dist. LEXIS 205078, at *8 (E.D. Va. Aug. 29, 2013) (Ordering the exclusion of untimely declarations where "Plaintiffs fail[ed] to provide substantial justification as to why the Declarations were proffered at or after the close of discovery," and failed to establish why the "late production was harmless.")

Plaintiff breaks down the calls at issue into four groups. *See* Opp'n at 12-16. Plaintiff concedes that SunPath is entitled to summary judgment for the calls in Group Two (50 "calls" occurring between May 28, 2020 and June 11, 2020). *See* Opp'n at 14. She fails to defeat SunPath's right to summary judgment for the calls in Group One (six calls occurring from May 26-28, 2020), Group Three (66 "calls" occurring from June 11, 2020-July 11, 2020), and Group Four (50 "calls" received after July 11, 2020).

### A. Group One Calls

#### 1. American Protection had the Right to Call Plaintiff.

Plaintiff has conceded that "she made a call of her own to [] American Protection" before receiving the six calls in Group One that led to her entering into a transaction with American Protection. *Id*. at 13. Plaintiff incorrectly argues that her call did not form an established business relationship ("EBR") with American Protection. *Id*. As Plaintiff correctly points out, the "TCPA is instructive on the establishment of an EBR: the term refers to a prior or existing relationship formed by a *voluntary two-way communication*[.]" *Id*. (internal quotation and citation omitted). Fatal to Plaintiff's argument is her mistaken belief that the initial voluntary two-way communication has to occur simultaneously.[14]

---

[14] The voluntary two-way communication between Plaintiff and American Protection occurred in one of two ways: First, American Protection sent a direct mailer to Plaintiff, *see* Opp'n **Ex. F**, ECF. No. 76-6, then Plaintiff voluntarily called American Protection on May 26, 2020. *See* Opp'n at 13. Second, *even if* Plaintiff fails to recall that this is what prompted her to call American Protection in the first place, Plaintiff still concedes that she voluntarily called American Protection on May 26, 2020, and American Protection then voluntarily returned her call. Either way, by Plaintiff first calling American Protection, there was a reasonable "expectation on the part of [Plaintiff] that" American Protection would return her call. *See Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA of 1991)*, 68 FR 44144-01, 44159 (2003). Therefore, the EBR was formed before the six calls in Group One occurred.

8

**JA918**

As common sense and decades of precedent dictate, when a consumer voluntarily provides her phone number to a company, the consumer has effectively asked the company to call them back. *See Aderhold v. car2go N.A., LLC*, CASE NO. C13-489RAJ, 2014 U.S. Dist. LEXIS 26320, at *10 (W.D. Wash. Feb. 27, 2014) ("In the 1992 Ruling, the FCC concluded that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." (internal quotations and citation omitted)). There is no requirement that the consumer's initial call to the company be answered, as Plaintiff mistakenly implies. The company's resulting callbacks are "invited calls[, ] not unsolicited telemarketing calls 'initiated' for the purpose of" offering or advertising property, goods, or services. *Newhart v. Quicken Loans, Inc.*, CASE NO. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721, at *10 (S.D. Fla. Oct. 12, 2016) (citing 47 C.F.R. § 64.1200(f)(12)). Thus, the voluntary two-way communication creating an EBR is not required to occur simultaneously (which is obviously *always* the case in text message communications, which are regulated like "calls" under the TCPA). It is undisputed that Plaintiff's May 26, 2020 call to American Protection resulted in the formation of an EBR. Therefore, the Group One calls were not telephone solicitation calls and did not violate the VTPPA as a matter of law.[15]

### 2. SunPath Was Not The "Seller" For the Group One "Calls."

SunPath was not the "seller" for the Group One calls. American Protection did not make those calls for the benefit of, or on behalf of, SunPath. Plaintiff's Opposition argues that *after*

---

[15] The foregoing section relies, in part, on guidance from the FCC, the TPCA, and 47 C.F.R. 64.1200. The Virginia Legislature clearly intended for this federal regime to provide guidance for and be applicable to the VTPPA. *See* Va. Code § 59.1-514(D). Therefore, the Virginia Legislature knew how to memorialize any intent it had that the related federal regime not to apply to the VTPPA. Tellingly, the VTPPA is devoid of any language establishing such intent.

American Protection "identified the plan that a customer was best qualified for, they would pitch them to purchase [] that company's plan." Opp'n at 4. American Protection offers multiple companies' VSCs. *See* Memo at 6. It only determines which company's VSC it will offer a consumer once it speaks with the consumer and confirms the consumer's vehicle's characteristics, year, make, model, and mileage.[16] American Protection did not speak with Plaintiff until after it placed the Group One calls. Thus, American Protection could not have determined for which VSC Plaintiff was qualified before it made those calls. *See also* Opp'n **Ex. F** at 5 (a quote was made for Plaintiff on May 28, 2020). Therefore, those calls could not have been made for the benefit of, or on behalf of, SunPath. Nor did those calls offer or advertise a SunPath VSC as explained above. Thus, SunPath cannot have been the VTPPA-defined "seller" for those calls. SunPath is entitled to summary judgment for the Group One calls for this independent reason.

### B. Plaintiff Relies on Inadmissible Evidence and Untimely Disclosures in Attempting to Hold SunPath Liable for the "Calls" in Groups Three and Four.

There are 116 "calls" in Groups Three and Four for which Plaintiff seeks to hold SunPath liable.[17] Plaintiff has no personal knowledge of those calls. *See supra* Section I.B.   The Five9 records are the *only* evidence supporting Plaintiff's claim that she received those "calls."[18] But the Five9 records are inadmissible. *See supra* Section I.B.  There are no witnesses that can offer admissible testimony relating to the Five9 records. *Id.* Thus, Plaintiff lacks any admissible

---

[16] *See* AP Dep. at 32:14-22 (Q. "Once you're in touch with the potential customer, you determine what they're qualified for? A. Yes. Q. Okay. How do you go about doing that? A. Based on the customer's vehicle characteristics, the year, make, model, and mileage.").

[17] For the reasons described above, SunPath disputes that these are properly classified as "calls." *See supra* Section I.B. They are more accurately described as "data entries."

[18] As they relate to the 116 "calls", Plaintiff's improper declaration and the pertinent portion of Plaintiff's untimely Third Supplemental Responses to SunPath's Discovery Requests rely solely on the Five9 records.

evidence that she even received the "calls" in Groups Three and Four. Plaintiff's Opposition does not address this issue. SunPath is entitled to summary judgment for those 116 "calls."

### C.  Group Three "Calls"

#### 1.  47 C.F.R. § 64.1200(d)(3)'s 30-Day Safe Harbor Provision Applies to the Group Three "Calls".

The Group Three calls occurred in the 30 days after Plaintiff sent her June 11, 2020 do-not-call request to American Protection. American Protection is entitled to 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision. The 66 "calls" in Group Three occurred during the 30-day safe harbor. Therefore, they did not violate the VTPPA.

Plaintiff is correct that the VTPPA provides guidance for how long a do-not-call request must be honored. *See* Opp'n at 15. The VTPPA is devoid of guidance on how long a company has to begin complying with such a request. 47 C.F.R. § 64.1200(d)(3) provides the needed guidance. 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision requires that do-not-call requests be honored within a reasonable period of time, not to "exceed **thirty days** from the date of such request."  Plaintiff's June 11, 2020 email to American Protection highlights why the 30-day safe harbor exists. Do-not-call requests are not made in an automated fashion. They can be received any time of day and in a variety of forms. The company receiving such requests needs an opportunity to process them. The 30-day safe harbor provision provides that opportunity.

Courts have held that calls occurring within the 30-day safe harbor do not provide a party with a cause of action.[19] Whether calls occurred after the 30-day safe harbor expired is irrelevant.

---

[19] *See Orsatti v. Quicken Loans, Inc.*, 2:15-cv-09380-SVW-AGRa, 2016 U.S. Dist. LEXIS 182873, at *19 (C.D. Cal. Sept. 12, 2016) (referring to 47 C.F.R. § 64.1200(d)(3) as a "safe harbor provision" and holding that calls occurring within the 30-day "safe harbor provision of the FCC regulation [do] not constitute a cause of action."); *see also Mattson v. Quicken Loans, Inc.*, Case No. 3:18-CV-00989-YY, 2018 U.S. Dist. LEXIS 180737, at *6 (D. Or. Oct. 22, 2018)

11

**JA921**

Plaintiff cites no authority in support of her argument that the 30-day safe harbor does not apply to the "calls" she received in the 30 days after June 11, 2020. Neither the VTPPA nor 47 C.F.R. § 64.1200 provides that a party can be held liable for calls occurring during 30-day safe harbor if calls occur after the 30-days safe harbor expires. SunPath is entitled to summary judgement for the Group Three "calls" since they all occurred during the 30-day safe harbor.

### 2. The TCPA and 47 C.F.R. § 64.1200 are Applicable to the VTPPA.

Plaintiff argues that the 30-day safe harbor provision in 47 C.F.R. § 64.1200(d)(3) does not apply to the VTPPA. *See* Opp'n at 15. Plaintiff's argument holds no weight.  In fact, she also relies on the TCPA and 47 C.F.R. § 64.1200 which the VTPPA expressly relies upon to frame the calls subject to that state law.[20] Plaintiff cannot have it both ways:  Either the TCPA and 47 C.F.R. § 64.1200 are applicable to the VTPPA or they are not. But since the TCPA and 47 C.F.R. § 64.1200 are applicable to the VTPPA, 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor applies to claims under the VTPPA.

### D.  SunPath was not the "Seller" for the Group Three and Four "Calls".

Groups Three and Four include the 116 "calls" Plaintiff allegedly received after sending her June 11, 2020 email. Plaintiff, as the party opposing summary judgment, is entitled to **reasonable** inferences drawn in her favor.[21] But no reasonable inference can be made that SunPath was the "seller" for the Group Three and Four "calls."

---

(holding that "[a]llegations of calls **beyond** the 30-day safe-haven have been held to be sufficient to state a claim") (emphasis added).
[20] *Id*. at 13-14. (Plaintiff relies on the TCPA to provide guidance on what constitutes an EBR for purposes of meeting the VTPPA exemption. Plaintiff relies on 47 C.F.R. § 64.1200 to establish that Plaintiff's June 11, 2020 email "ended any EBR in existence," meaning the "VTPPA's exemption no longer applied[.]").
[21] *See Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "permissible inferences must still be within the range of reasonable

12

Plaintiff claims American Protection only offered her one VSC before June 11, 2020. *See* Opp'n at 4. If that was actually a SunPath VSC, Plaintiff's June 11, 2020 email served as a clear rejection of it. It would be an unreasonable inference to draw from those facts that American Protection continued to call Plaintiff to offer her a SunPath product after she rejected it. That inference is made further unreasonable by the fact that American Protection was selling other companies' VSCs then. *See* Memo at 6. The only reasonable inferences that this Court can draw is that American Protection's calls to Plaintiff after June 11, 2020 (if they occurred) were unrelated to SunPath, did not offer or advertise SunPath's VSC, were not made on behalf of SunPath, and were not made for SunPath's benefit.  In fact, as to all her "calls," she has no evidence that SunPath was ever mentioned on *any* of them. SunPath is entitled to summary judgment for the Group Three and Four "calls."

### III.   Plaintiff's Opposition Fails to Establish that SunPath can be held Jointly and Severally Liable for the Calls Under the VTPPA.

Plaintiff's joint-and-several liability arguments begin with her misunderstanding of the VTPPA. Plaintiff mistakenly argues that the VTPPA imposes strict liability on entities meeting the applicable definition of "seller," and that *Zhu* is not good law. *See* Opp'n at 17. The VTPPA's inclusion of the *rebuttable* presumption is wholly inconsistent with Plaintiff's strict-liability theory. *See* Va. Code § 59.1-514.1(B). Therefore, *Zhu* remains good law.

### A.  SunPath's VSC Was not Offered on Any Telephone Solicitation Call at Issue.

The VTPPA's "seller" definition and presumption are **contingent** on the seller's "property, goods, or services" being offered or advertised **during** the subject telephone solicitation calls. *See* Va. Code §§ 59.1-510; 59.1-514.1.  They have broad application in cases

---

probability" and that "whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary") (internal quotations omitted).

where a seller outsources its telemarketing sales operations to a dedicated third-party marketing company that exclusively sells that seller's products.  This is typically the case where the seller provides the scripts the call center should use, monitors the operations as if they were its own, and exercises control over the call center.  But they become far more tenuous in cases like this -- one where the independent seller controls its own operations and independently resells the products of various competitors after purchasing them wholesale.[22]  Therefore, whether a company's name is stated on the telephone solicitation call is imperative to determining whether a company's product was *offered or advertised on the call*. Despite Plaintiff's argument, nowhere does the VTPPA provide that such determination can be made by reviewing after-the-fact email correspondence and weblinks exchanged well after a call ends.  This would be illogical. The plain and unambiguous language of the VTPPA's seller definition and presumption shows that their applicability is determined based on what occurs during the call, not after.[23]

It is undisputed that SunPath's name was never mentioned on any call between American Protection and Plaintiff. Plaintiff's mischaracterization of Plaintiff's and American Protection's deposition testimony does not create any dispute as to that fact. *See supra* Section I.A. American Protection offered products from multiple companies at all relevant times. Therefore, there is no

---

[22] The VTPPA is not designed or intended to extend liability to companies whose products are sold by a telephone solicitor that also sells products from other companies. This is demonstrated by Va. Code § 59.1-512 which requires a telephone solicitor to identify "the name of the person on whose behalf the telephone solicitation call is being made[.]" If a telephone solicitor's calls are made on behalf of every company whose products it could potentially sell on the call, the telephone solicitor would have to name each individual company whose products it may ultimately sell in order to comply with Va. Code § 59.1-512. This is illogical and cannot be the intent of the VTPPA. It must be that a telephone solicitor reselling products from multiple companies only makes a telephone solicitation call on its own behalf.

[23] *See Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712, 716 (E.D. Va. 2008) ("[I]n Virginia, where . . . a statutory term is plain and unambiguous, there is no need for judicial construction; the language will be applied as written.") (internal quotations omitted).

evidence that a SunPath product was ever offered or advertised to Plaintiff on any call at issue. The VTPPA's seller definition and presumption cannot apply to SunPath.

### B. Plaintiff Improperly Collapses "Telephone Solicitation Calls" into "Calls" in General.

To gloss over Plaintiff's proof problems, Plaintiff improperly expands the VTPPA's application to "telephone solicitation calls" into all "calls" writ large. As a result, Plaintiff improperly seeks to hold SunPath liable for *any* calls she received from American Protection. But only "telephone solicitation calls" violate the VTPPA.

First, the VTPPA's definition of "telephone solicitation call" requires the call to be "for the purpose of offering or advertising any property, goods, or services for sale[.]" Va. Code § 59.1-510. Plaintiff lacks evidence showing that any call at issue she received after June 9, 2020 was for such purpose. Plaintiff lacks personal knowledge relating to the calls at issue she now allegedly received after June 9, 2020. *See supra* Section I.B. American Protection did not provide any testimony relating to the context of calls that occurred after June 9, 2020, and Plaintiff never even knew they existed (if they ever did) until Five9's unexplained data dump appeared in the case late in discovery. Plaintiff cannot prove those calls were "telephone solicitation calls." No reasonable inference can be made based on this complete lack of evidence.

Second, a violation of Va. Code § 59.1-514(B) occurs when a "telephone solicitor [] initiate[s], or cause[s] to be initiated, a **telephone solicitation call** to a telephone number on the National" DNC Registry. *Id.* (emphasis added). The VTPPA defines "telephone solicitation call" and lists the type of calls that do not constitute a "telephone solicitation call." *See* Va. Code §§ 59.1-510; 59.1-514(D). When taken together, they render a "telephone solicitation call" unlawful *by definition*. The VTPPA's definition of "seller" is "any person **on whose behalf or for whose benefit** a **telephone solicitation call** . . . is made or initiated." Va. Code § 59.1-510 (emphasis

added). The Agreement only authorized American Protection to market SunPath's VSC lawfully. Therefore, any "telephone solicitation call" made by American Protection would be outside the scope of the Agreement. Those calls cannot be presumed to be made on behalf of or for the benefit of SunPath. *See Black v. SunPath, Ltd.*, Case No. 3:21-cv-00023, 2022 U.S. Dist. LEXIS 165799, at *9-10 (M.D. Tenn. Sep. 14, 2022), *appeal dismissed per stipulation*, No. 22-5927 (6th Cir. Dec. 27, 2022). It follows that SunPath cannot meet the VTPPA's definition of "seller" for any "telephone solicitation call" made by American Protection.

### C.  The VTPPA's Definition of Seller is Not Redundant.

The VTPPA's seller presumption can only apply to SunPath once Plaintiff meets her burden of proving SunPath is a "seller" under the VTPPA. Plaintiff's contention that the seller presumption renders the VTPPA's definition of "seller" redundant is incorrect. *See* Opp'n at 19. Plaintiff's contention violates traditional canons of statutory interpretation.[24]

The proper seller-liability analysis under the VTPPA starts at Va. Code § 59.1-514.1(A), which provides that "[a] **seller** on whose behalf or for whose benefit a telephone solicitor makes or initiates a [VTPPA violating] telephone solicitation call . . . shall be jointly and severally liable for such violation." (emphasis added). Va. Code § 59.1-510 defines the term "seller" as it is used throughout the VTPPA, including as it is used in Va. Code § 59.1-514.1(A).  Therefore, Plaintiff must first establish that SunPath meets the VTPPA's definition of "seller" before moving to Va. Code § 59.1-514.1(B)'s rebuttable presumption. The plain language of the VTPPA grounds the proper statutory-interpretation analysis, and cannot read the "seller" construct out of the statute as "redundant." The VTPPA's proper statutory-construction analysis

---

[24] Any dispute relating to the statutory interpretation of the VTPPA does not create a triable issue of fact. *See Health Keepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) ("[A] question of statutory interpretation, [is] a quintessential question of law") (quoting *Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010)).

16

**JA926**

prevents the VTPPA's seller definition from being rendered redundant.[25] Therefore, Plaintiff must first prove that American Protection's telephone solicitation calls at issue were made on behalf of, or for the benefit of, SunPath. Only once Plaintiff does that can she invoke Va. Code § 59.1-514.1(B). But again, Plaintiff cannot prove the telephone solicitation calls at issue were made on behalf or for the benefit of SunPath. *See supra* II.D.; III.A; *infra* III.D. Therefore, SunPath is not the "seller" and Plaintiff is not entitled to apply the seller presumption here.

### D. There is No Dispute That SunPath Was Not a VTPPA-defined "Seller."

#### 1. Plaintiff Relies on Irrelevant Facts.

The VTPPA defines a "seller" as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated." Va. Code § 59.1-510.  Plaintiff attempted to create a disputed fact regarding whether the calls at issue were made on behalf of, or for the benefit of, SunPath. Plaintiff's argument relies on two allegations. *See* Opp'n at 20. Plaintiff's argument fails as neither claim is evidence of or relevant to whether the calls at issue were made on behalf of, or for the benefit of, SunPath. Plaintiff failed to provide the full context relating to her point that American Protection was required to "hold SunPath's portion of the proceeds," or "net price", "in trust" for SunPath's benefit." *Id*. American Protection testified that was not how it worked in practice, and certainly not here, where American Protection never consummated any sale with Plaintiff.[26] This further weakens Plaintiff's mistaken argument.

---

[25] *See Hedin v. Thompson*, 355 F.3d 746, 750 (4th Cir. 2004) (refusing to adopt an interpretation that "would render a significant portion of the statute . . . without meaning" because "[a] court must attempt to interpret a statute so as to give each word meaning and to avoid creating surplusage.") (internal quotations omitted).

[26] *See* AP Dep. 63:23-64:7 ("Q: I'm trying to understand. If I understand this correctly, American Protection is required to hold the product seller cost in trust on behalf of SunPath after they make

## 2.   Plaintiff Failed to Address Salient Facts.

Plaintiff's Opposition fails to materially address three of the most important facts that make it impossible for SunPath to have been the "seller" for the calls at issue. First, SunPath does not sell anything. Since SunPath does not sell anything, it cannot be a "seller." Second, subcontractors hired by American Protection made the calls at issue. *See* Memo at 21. That fact further removes SunPath from being the "seller" for any of the calls at issue. Third, American Protection sells VSCs for multiple companies at the same time. *Id*. at 6.

American Protection selling products from multiple companies places SunPath in a position similar to a car manufacturer. Car manufacturers' vehicles are sold by licensed dealerships that sell a variety of vehicles. When people receive calls from a Ted Britt dealership, no one is under the mistaken belief that the dealership is calling on behalf of, or for the benefit of, Ford, Chevrolet, Lincoln, etc. The dealership is calling on its own behalf and for its own benefit, even if it did not make the product in question. Similarly, it is unreasonable for anyone to believe American Protection made calls on behalf of, or for the benefit of, SunPath.[27]

It is undisputed that American Protection makes calls to offer or advertise products from a variety of companies. Those calls are only made by American Protection on its own behalf and for its own benefit. This is because American Protection does not know which companies' VSC

---

the sale. . . . A: It is my understanding that American Protection would submit the cost of the product to SunPath.").

[27] SunPath previously used the example of a grocery store. *See* Memo at 21. Plaintiff argues the analogy is inapplicable because SunPath required American Protection to "actively market" SunPath's products. *See* Opp'n at 20. That "actively market" provision is no different than when Frito-Lay requires a grocery store to set up a special in-store promotional display for its products. It is not evidence that American Protection made calls on behalf of SunPath.

it is going to offer on any given call at the time the call is initiated.[28] The VTPPA is clear that seller liability is contingent on a company's product actually being offered or advertised on the call. *See* Va. Code. § 59.1-514.1. The VTPPA is devoid of any language or intent that seller liability can be assigned based on the mere possibility that a company's product could be offered on a call.

### E. The VTPPA Cannot Apply in Situations Where a Telephone Solicitor Offers or Advertises Products for Multiple Companies.

The language in Va. Code. § 59.1-514.1 indicates that the seller presumption was intended to apply to situations where a company outsources its telemarketing to third parties on an exclusive basis. This results in the telephone solicitor offering and advertising one company's product(s). In that situation, there is no confusion as to whose property, goods, or services are being offered on a call. That is determined before the call is even made. It also avoids the possibility of liability being determined by luck of the draw: If SunPath were to be held liable in this case, it would only be because SunPath was the unlucky party whose VSC happened to be the best match for Plaintiff. This is illogical. It cannot be the Virginia Legislature's intent for seller liability to be determined by something as arbitrary as the year, make, model, or mileage of a person's vehicle. The only logical conclusion is that none of American Protection's telephone solicitation calls were made on behalf of or for the benefit of SunPath. Therefore, SunPath cannot be held liable as a "seller" under the VTPPA.

### F. SunPath Can Rebut the VTPPA's Seller Presumption.

The VTPPA's seller presumption is rebuttable. If it applied, SunPath would have to show by clear and convincing evidence that it did not retain or request American Protection to make

---

[28] *See* AP Dep. 32:14-22 (Q. "Once you're in touch with the potential customer, you determine what they're qualified for? A. Yes. Q. Okay. How do you go about doing that? A. Based on the customer's vehicle characteristics, the year, make, model, and mileage.").

telephone solicitation calls on its behalf or for its benefit, and that American Protection made the calls without SunPath's knowledge or consent. *See* Va. Code § 59.1-514.1(B). SunPath has addressed that American Protection was not retained or requested to make telephone solicitation calls on behalf of or for its benefit. *See supra* III.D. Plaintiff concedes that any unlawful calls made by American Protection were without SunPath's consent. *See* Opp'n at 22. It is undisputed that SunPath lacked any knowledge of American Protection making unlawful calls. *See* Memo at 12. Plaintiff failed to create a dispute as to SunPath's consent and knowledge. Plaintiff once again mischaracterizes deposition testimony. Plaintiff claims that "SunPath expressly approves each sale by American Protection on a case-by-case basis." Opp'n at 11. The relevant deposition testimony is that SunPath's approval of American Protection's sales was related only to whether *the subject vehicle* qualified for coverage, not whether the related call was lawful.[29] There is nothing to establish that SunPath had any knowledge relating to such calls. SunPath has rebutted the VTPPA's seller presumption to the extent it ever applied.

In short, SunPath is entitled to summary judgment on Plaintiff's claims on the undisputed record evidence.

---

[29] *See* AP Dep. 36:20-37:4 ("Q: Would you ever receive a rationale for why SunPath would have rejected one of American Protection's sales contracts? A: Yes. Q: What would those rationales be? A: It could have been that the title of the vehicle was rebuilt or rebranded. Q: Any other reasons? A: That's most of the – that would be the most.").

Dated: January 18, 2023

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Joseph P. Bowser*
Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
mroth@rothjackson.com

*Counsel for SunPath, Ltd.*

21

**JA931**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused Defendant SunPath, Ltd.'s Reply in Support of its Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on January 18, 2023.


<u>/s/ *Joseph P. Bowser*   </u>
Joseph P. Bowser

# EXHIBIT 1



# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1   review them before they were served?

2          MR. SMITH:  Objection, asked and

3   answered.  Also vague.

4          You can answer.  Any time I don't

5   instruct you, you can answer the question.

6      A   So you asked me if -- could you restate

7   the question?

8   BY MR. CAFFAS:

9      Q   These supplemental interrogatory

10  responses that we're discussing, these were served

11  on November 11, 2022.  Today is December 2, 2022,

12  so it was just a few weeks ago.  You had said

13  before that you reviewed these supplemental

14  interrogatories and verified them prior to them

15  being served, correct?

16     A   Yes, I reviewed.  To the best of my

17  knowledge, this is correct, yes.

18     Q   So just a couple weeks ago on November

19  11, you verified the information that we're

20  discussing that the caller did not identify

21  himself by their first and last name, right?

22     A   Yes.  I reviewed the document to the

1   best of my knowledge, yeah.

2        Q   Did you review the notes that you're

3   referring to that were sent to your counsel when

4   you verified these interrogatory responses?

5        A   I believe I did, yes.

6        Q   And you're saying now that you can't

7   remember what those notes said at all?

8        A   I generally remember, but not

9   specifically.  That's why I would have to refer to

10  them.

11       Q   And if the name of the caller was

12  included in those notes, is there a reason why you

13  didn't include it in your supplemental

14  interrogatory response?

15       A   So I defer to my counsel.

16       Q   You defer to your counsel on what?

17       A   On how the document was prepared.  Or I

18  rely on my counsel.  Excuse me.

19           MR. SMITH:  He's just asking if you had

20  the name, would you have included it in the

21  response?

22       A   So if I specifically had the name for

1   this particular call, would I have provided a

2   response?  Yes.

3   BY MR. CAFFAS:

4       Q   So then can I take it to -- so can I

5   understand that if you reviewed these notes two

6   weeks ago and didn't provide a name in the

7   response, then you don't know the name?

8       A   I would have to go back through my notes

9   specifically.

10      Q   So do you not know whether the name was

11  in your notes or not?

12      A   For this -- for this particular -- for

13  this particular number, the (410) 844-6327?

14      Q   Yes.  I'm referring to the same sentence

15  we've been discussing, which is on the second

16  paragraph of your supplemental answer to

17  interrogatory one where you say that the caller

18  did not identify themselves by their first and

19  last name.

20      A   So you're asking me if I had -- if I had

21  the last name, it would be included, or the first

22  name?

1      Q   I believe your testimony today -- you
2  can correct me if I'm misunderstanding -- is that
3  you believe that that information is in the notes
4  that you reviewed a few weeks ago in order to
5  submit these on November 11.  Is that right?
6          MR. SMITH:  Object to form, misstates
7  the witness's testimony.
8      A   Yeah.  I do not -- I do not have a last
9  name.  I have to confirm about the first name if
10 it would be tied to that phone number.
11 BY MR. CAFFAS:
12     Q   The next line of that paragraph and the
13 final line says, "Further, the caller solicited
14 plaintiff to purchase SunPath's vehicle service
15 contracts."  Can you describe how the caller
16 solicited you to purchase SunPath's vehicle
17 service contracts.
18     A   I would have to -- for the exact
19 information, I would have to refer to my notes.
20         MR. CAFFAS:  Can we take a break to go
21 off the record, please?
22         MR. SMITH:  Sure.

1              (Discussion off the record from 11:00

2       a.m. to 11:00 a.m.)

3              MR. CAFFAS:  Let's go back on the

4       record.

5              Can you reread my last question, Kelly.

6              (The reporter read the requested

7       testimony.)

8       BY MR. CAFFAS:

9          Q    Why would you have to refer to your

10      notes?

11         A    For the exact language.

12         Q    Do you remember anything about the

13      language that led you to make that statement that

14      the purpose of the call was to solicit the sale of

15      SunPath's vehicle service contracts?

16         A    Based on my memory, they gave the name

17      of the company and what they were -- what they

18      were -- I think what they were selling.

19         Q    When you say the name of the company,

20      what was the name of the company?

21         A    SunPath.

22         Q    You say that they used the word

1   "SunPath" as the name of the company, not another

2   company's name?

3           MR. SMITH:  Objection, misstates the

4   witness's testimony.

5       A   I would have to refer to my notes for

6   exactly what the...

7   BY MR. CAFFAS:

8       Q   I'll represent to you that we have not

9   received any notes at all that show what your

10  recollection is of any of these calls.

11          MR. SMITH:  Objection.  That misstates

12  the question.

13  BY MR. CAFFAS:

14      Q   You're saying that any of your notes

15  regarding the calls that we're talking about were

16  given to counsel, right?

17      A   After my -- after I received the calls,

18  yes, I put it on my notes and I submitted it.

19      Q   I'm going enter what will be -- I think

20  this is Exhibit 5.

21          MR. CAFFAS:  Is that correct?

22          THE REPORTER:  4.

1              MR. CAFFAS:   4.

2              (Smith Deposition Exhibit No. 4 was

3    marked for identification and was attached to the

4    deposition transcript.)

5    BY CAFFAS:

6         Q    This is a packet of documents, Exhibit

7    4, and you'll notice these are Bates stamped.  By

8    Bates stamped, they have a label at the bottom

9    right corner and it says Smith and a series of

10   numbers to make it easier to reference.  So these

11   are Bates labeled SMITH1 through 20.

12             Now, these are the documents that we

13   received from your counsel with the exception of

14   an e-mail from a company called American

15   Protection and two recordings.  I want you to take

16   a few minutes to look through the documents that I

17   have shown you, and can you confirm whether or not

18   this is a full collection of the documents that

19   you say that you had given to counsel that reflect

20   the notes that you provided in this case.

21        A    To the best of my knowledge, this is all

22   of the screenshots provided.

1      Q    Now, is it correct to say that there are

2    no notes in that production that contain your

3    description or recollection of any of the calls

4    that you've described?

5      A    So these are the lists of the

6    screenshots.

7      Q    So is it accurate that the notes that

8    you're referring to about your recollection of the

9    calls, those aren't contained in that set of

10   documents?

11     A    I'm not sure how that's like compiled.

12     Q    In the set of documents that I just

13   handed you, can you confirm just with a yes or no,

14   if you can, whether or not the notes that you're

15   referring to are in that set of documents?

16     A    Of the -- no.

17     Q    And I'll represent to you that with the

18   exclusion of an e-mail that contains I believe the

19   SunPath policy quote that you're referring to, we

20   received no other documents, written documents,

21   from you at all.  Are you saying that --

22              MR. SMITH:  Objection.  That

1   American Protection from Samantha Yaeger that we

2   discussed earlier, is there a reason you didn't

3   respond in any way including to request not to

4   receive any more calls?

5        A    No.  I just didn't -- you know, I wasn't

6   interested in getting the insurance.

7        Q    Right, but you weren't interested in

8   receiving additional calls, correct?

9        A    Correct.

10       Q    So is there a reason why you didn't

11  respond to that e-mail stating that you didn't

12  wish to receive additional calls?

13       A    So I -- you know, I forwarded it to my

14  counsel.

15            MR. CAFFAS:  Can you read the question

16  back, Kelly.

17            (The reporter read the requested

18  question.)

19  BY MR. CAFFAS:

20       Q    Can you repeat your response?

21       A    Okay.  So I guess I didn't want to

22  correspond with the e-mail because I didn't want

1    any more, you know, back and forth.

2        Q   And you didn't think that requesting to

3    not to receive more calls would be an approach to

4    not receiving more calls?

5            MR. SMITH:  Object to form.

6    BY MR. CAFFAS:

7        Q   You can answer.

8        A   You said to object to not receiving more

9    calls?  I'm sorry.

10           MR. CAFFAS:  Kelly, could you read my

11   question again, please.

12           (The reporter read the requested

13   question.)

14       A   So based on here, I stated that I didn't

15   want to receive more calls.

16   BY MR. CAFFAS:

17       Q   So you thought that forwarding this

18   e-mail to an attorney rather than making a call or

19   making a request not to receive more calls would

20   be the best option to cease receiving calls?

21           MR. SMITH:  Object to form.

22       A   Yeah.  I just -- I didn't want to engage

1    with the correspondents.

2    BY MR. CAFFAS:

3         Q    You contend that June 9 was the last

4    call that you received that you're seeking damages

5    for in this case?

6         A    Again, whatever I provided initially was

7    correct, but I know that there's the call logs

8    that were received.  So that is correct, what's in

9    the logs.

10        Q    Can you clarify what you mean by that?

11        A    So when I submitted all the

12   documentation that I had, that was to the best of

13   my knowledge at the time, but I understand that

14   the call logs have different information, and they

15   are -- they are correct.

16        Q    And when you say the call logs, are you

17   referring to call logs that you believe your

18   counsel has received but you have not yet

19   reviewed?

20        A    Yes.  They just came this week, yes.

21        Q    So when you say that you believe that

22   the call logs confirm this not to be the case, is

1    that based on representations from counsel?

2        A   Because it's an accurate -- because of

3    the logs that were received by the company versus

4    what I have.

5        Q   Right.  And I'm just saying you haven't

6    reviewed these call logs that you're referring to,

7    right?

8        A   Correct.

9        Q   So how do you know that the call logs

10    confirm this?

11        A   I rely on my counsel.

12        Q   Do you believe that SunPath is the only

13    company that administers vehicle service

14    contracts?

15        A   No.

16        Q   So you're saying that if you received a

17    call soliciting you for vehicle service contracts

18    without mentioning they're SunPath's vehicle

19    service contracts, those would not be about

20    SunPath vehicle service contracts, right?

21        A   They may or may not.

22        Q   How do you discern the difference if

1          CERTIFICATE OF SHORTHAND REPORTER

2             ELECTRONIC NOTARY PUBLIC

3          I, Kelly Carnegie, Certified Shorthand

4     Reporter, Registered Professional Reporter, the

5     officer before whom the foregoing proceedings were

6     taken, do hereby certify that the foregoing

7     transcript is a true and correct record of the

8     proceedings; that said proceedings were taken by

9     me stenographically and thereafter reduced to

10    typewriting under my direction; that reading and

11    signing was requested; and that I am neither

12    counsel for, related to, nor employed by any of

13    the parties to this case and have no interest,

14    financial or otherwise, in its outcome.

15          IN WITNESS WHEREOF, I have hereunto

16    electronically set my hand and affixed my notarial

17    seal this 5th day of December, 2022.

18    My commission expires:
19    July 31, 2026

20

21    _____
      NOTARY PUBLIC IN AND FOR THE
22    COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
      Notary Registration Number: 7060756

# EXHIBIT 2

```
 1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          ALEXANDRIA DIVISION
 3
        RUTH SMITH, individually and on
 4      behalf of all others similarly
        situated,
 5
                               Plaintiff,      Case No.
 6                                             1:22-cv-00081-LMB-
        vs.                                    WEF
 7
        SUNPATH, LTD., a Massachusetts
 8      corporation,
 9                         Defendant.
        _____/
10
11                          DEPOSITION OF
        RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12      d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                            KOBI CHUKRAN
13
                   (Conducted Via Videoconference)
14
15
         DATE:              November 1, 2022
16
17       TIME:              11:03 a.m. to 2:06 p.m.
18
         PURSUANT TO:       Notice by counsel for Plaintiff
19                          for purposes of discovery, use at
                            trial or such other purposes as
20                          are permitted under the Federal
                            Rules of Civil Procedure
21
22       REPORTED BY:       Aaron T. Perkins, RMR, CRR, CRC
                            Notary Public, State of
23                          Florida at Large
24
                            Pages 1 to 128
25
                                                       Page 1
```

```
1    vehicle, as well as the mileage.  Based on this
2    information, we can determine what is the best
3    coverage we can offer.
4          Q.   And then once you make that
5    determination, what happens next?
6          A.   Then we submit the sale to the -- to be
7    underwritten by SunPath.
8          Q.   And throughout that sales process, you
9    know, you get the lead, you contact the client,
10   you see what they're qualified for, you determine
11   what's best for them, and then you reach out to
12   SunPath.
13            Is that final step, reaching out to
14   SunPath, is that where contacting SunPath would
15   come in to play or would you have contacted them
16   at some point prior?
17            MR. TANDY:  Objection.
18            MR. CAFFAS:  Yeah.  Objection to form as
19       well.  It's a compound question.
20            MR. TANDY:  And I must object.  To the
21       extent that you're attempting to define the
22       term sales pathway, I object to that, or
23       process.  I'm sorry, Mr. Smith, but I do
24       think that's really compound.
25            MR. SMITH:  That's fine.
```

Veritext Legal Solutions
303-988-8470

**JA950**

BY MR. SMITH:

    Q.   You can still answer.

    A.   What was the question again?

    Q.   I'm just trying to understand when the first time throughout American Protection's sales process they would contact SunPath about a particular sale.  Is it in the end, or is it at some point along the way, for example, when they're trying to find out if a customer is qualified for a product?

          MR. TANDY:  Object to the form.  I'm going to renew my objection to the compound question.  And as well, I'm not sure that it is accurately characterizing Mr. Chukran's testimony to the extent you're suggesting that they only use SunPath, which I believe he has already said is not the case.  To the extent you are testifying, Mr. Smith, I would object to that.

          MR. SMITH:  All right, Greg.

BY MR. SMITH:

    Q.   You can answer the question.

    A.   So we provide the specifications in terms of what would qualify for specific coverage based on a customer's vehicle information.

1      Q.   Okay.  So let's walk through this.

2           You obtain leads from various sources;

3      is that correct?

4      A.   Yes.

5      Q.   Okay.  And then you're going to reach

6      out to those leads to potentially sell a vehicle

7      service contract, right?

8      A.   Yes.

9      Q.   Okay.  After you contact the potential

10     client, you're going to find out what they're

11     qualified for; is that fair to say?

12     A.   Well, in some cases, the customer

13     contacts us.

14     Q.   Okay.  Maybe they contact you; you

15     contact them.  Once you're in touch with the

16     potential customer, you determine what they're

17     qualified for?

18     A.   Yes.

19     Q.   Okay.  How do you go about doing that?

20     A.   Based on the customer's vehicle

21     characteristics, the year, make, model, and

22     mileage.

23     Q.   And then what do you do with that

24     information?

25     A.   We enter it into our CRM that allows us

Veritext Legal Solutions
303-988-8470

1    to determine what coverage the particular customer

2    qualifies for.

3        Q.   Okay.  And how does your CRM know which

4    product is best for the customer?  Let me rephrase

5    that question.  Sorry.  I will strike that

6    question.

7            What do you input into your CRM to

8    determine what customers will be best qualified

9    for?

10       A.   The year, make, model, and mileage

11   information of the vehicle.

12       Q.   All right.  From, let's say, SunPath, if

13   you're selling a SunPath product, what information

14   would be in your CRM to determine if they qualify

15   for that product?

16       A.   A product availability.

17       Q.   Okay.  While you're determining whether

18   o not they qualify for a product, do you ever

19   reach out to those service companies?

20            MR. TANDY:  Objection.

21            THE WITNESS:  I don't understand the

22       question.

23   BY MR. SMITH:

24       Q.   Okay.  Is it fair to say, if I say a

25   vehicle service company, I'm referring to SunPath

1     and the other parties who you sell their vehicle

 2     services contracts?  Do you understand that?

 3          A.   Yes.

 4          Q.   Okay.  So when you're trying to

 5     determine if a customer is qualified for a

 6     particular plan, do you ever contact these

 7     companies?

 8          A.   No.

 9          Q.   So American Protection would make that

10     determination, and then they would provide the

11     potential client with the best plan.

12               MR. TANDY:  I will object to the form

13          and, again, object to the extent that you're

14          characterizing Mr. Chukran's testimony

15          regarding whether or not American Protection

16          is making a determination.

17     BY MR. SMITH:

18          Q.   You can answer.

19          A.   Again, we provide the specifications,

20     plan specifications, by, in this case, SunPath

21     which allows us to determine what is the best plan

22     for the customer's needs.

23          Q.   Okay.  And once you determine what's the

24     best plan that customer is qualified for, then you

25     go back to the customer and provide them with that

```
 1     plan?
 2          A.   I'm sorry, repeat the question please.
 3          Q.   Once you determine which plan a customer
 4     is best qualified for, then you back to the
 5     customer and provide them with the plan that you
 6     believe best suits their needs?
 7          A.   Yes.
 8          Q.   Okay.  And then the customer can either
 9     say, no, I don't want that plan, or, yes, I do?
10          A.   Yes.
11          Q.   Okay.  What happens if the customer
12     says, All right, I want to purchase that plan?
13               MR. TANDY:  Objection.  I'm not sure I
14          understood your question, Taylor.
15     BY MR. SMITH:
16          Q.   I'm just trying to understand how they
17     go about closing the sales process.  What happens
18     after a customer says, All right, I will purchase
19     that vehicle service plan?
20          A.   We receive information, and that
21     information is then submitted, in this case,
22     SunPath for fulfillment.
23          Q.   And would SunPath always accept that
24     contract, or would they sometimes decline it?
25               MR. TANDY:  Objection.
```

Veritext Legal Solutions
303-988-8470

**JA955**

```
 1              You can answer.  I'm objecting to the

 2         form of the question.

 3              THE WITNESS:  In some cases it would be

 4         rejected.

 5    BY MR. SMITH:

 6         Q.   Can you tell me an example of why

 7    SunPath would reject a particular contract?

 8              MR. TANDY:  Objection, Taylor, to the

 9         extent you're asking him to surmise why

10         another company rejected the a contract.  Or

11         are you only asking if he's ever been told

12         specific reasons?  Because the first way I'm

13         going to object that that's speculation.  But

14         if it's the second reason, then I would ask

15         you to ask that specific question.

16              Does that make sense?

17              MR. SMITH:  I understand what you're

18         saying.

19    BY MR. SMITH:

20         Q.   Would you ever receive a rationale for

21    why SunPath would have rejected one of

22    American Protection's sales contracts?

23         A.   Yes.

24         Q.   What would those rationales be?

25         A.   It could have been that the title of the
```

Veritext Legal Solutions
303-988-8470
**JA956**

```
 1      vehicle was rebuilt or rebranded.
 2           Q.   Any other reasons?
 3           A.   That's most of the -- that would be the
 4      most.
 5           Q.   Okay.  Let's say SunPath rejected one of
 6      the contracts.  Would American Protection go about
 7      trying to fix the issue with SunPath and submit it
 8      again?
 9           A.   No.  If the vehicle does not qualify for
10      coverage, there's really nothing we can do.
11           Q.   Okay.  And if SunPath rejects the
12      contract, would American Protection ever say, All
13      right, well, then we have these other options with
14      one of the other companies that you work with?
15           A.   No.
16           Q.   Okay.  You said you entered the payment
17      information and submit it to, in this case,
18      SunPath.
19                Where would you enter that payment
20      information?
21           A.   Into our CRM system.
22           Q.   The CRM.
23                And does SunPath have access to that CRM
24      system?
25           A.   I'm not sure.
```

1     collect each monthly payment from those clients?

2          A.   Yes.

3          Q.   Okay.  What happens if they cancel their

4     contract or stop paying?

5          A.   Then the plan --

6               MR. CAFFAS:  Object to the form.

7               THE WITNESS:  Then the contract is

8     cancelled.

9     BY MR. SMITH:

10         Q.   Does SunPath provide a refund of the

11    cost to American Protection then?

12         A.   Yes.

13         Q.   Okay.  I will scroll to page 2,

14    paragraph 10.  Give me one second.  All right.  So

15    it says, "All amounts constituting product seller

16    cost and/or net price which are received by CCM

17    shall be held in trust by CCM for the company's

18    sole benefit."

19              Do you see that?

20         A.   Yes.

21         Q.   Is product seller costs in this context,

22    is that the cost that you were referring to that

23    gets paid to SunPath?

24         A.   Yes.

25         Q.   And is net price in this context, is

```
 1        that the amount that American Protection gets to
 2        keep for each sale?
 3             A.   Yes.
 4             Q.   Okay.  And so is it fair to say that
 5        this paragraph requires American Protection to
 6        hold SunPath's portion of the financials in trust
 7        on behalf of SunPath?
 8             A.   I'm sorry, can you repeat the question?
 9             Q.   Yeah.
10             Is it fair to say that this paragraph
11        requires American Protection to hold SunPath's
12        portion of the financials for each sale in trust
13        on behalf of SunPath?
14             MR. CAFFAS:  I will object to the form.
15        I believe that's -- I think it's vague.  I
16        didn't understand the question, and to the
17        extent it's leading.
18        BY MR. SMITH:
19             Q.   You can answer.
20             A.   Yeah.  Again, I'm having a hard time
21        also understanding not only the question but also
22        the relevance to this topic at hand.
23             Q.   I'm trying to understand.  If I
24        understand this correctly, American Protection is
25        required to hold the product seller cost in trust
```

1     on behalf of SunPath after they make the sale.

2          MR. CAFFAS:  Objection.  Form and

3          relevance.  We're not here for your

4          understanding.

5          THE WITNESS:  It is my understanding

6          that American Protection would submit the

7          cost of the product to SunPath.

8     BY MR. SMITH:

9          Q.   Okay.  Does this paragraph create a

10    fiduciary duty that American Protection owes to

11    SunPath?

12          MR. CAFFAS:  Objection.  Calls for

13          speculation.

14          MR. TANDY:  And I'm going to object that

15          the witness is not a lawyer.  And to the

16          extent that answering the question would

17          require him to explain some type of legal

18          relationship that will impinge on the

19          attorney-client privilege and any advice he

20          may have received from myself or others,

21          other attorneys, I'm instructing him not to

22          answer that question.

23          MR. SMITH:  You're instructing him not

24          to answer based on the --

25          MR. TANDY:  I'm instructing him not to

1          answer the question as to whether or not
2          somebody has informed him with enough
3          information or legal advice to determine
4          whether or not some sort of fiduciary
5          relationship has occurred.  He's not a
6          lawyer.
7               And, Mr. Smith, I have let you go a long
8          time, but he's not a lawyer, and he's not
9          going to answer legal questions that are
10          determined down the road.
11               MR. SMITH:  You can certainly object to
12          a legal conclusion, but that's not a basis to
13          instruct a witness not to answer a question.
14               MR. TANDY:  No, no.  Wait.  I'm
15          instructing him that to the extent that he
16          was provided with legal advice from an
17          attorney that would need to be disclosed in
18          answering your question, I'm instructing him
19          not to answer that question for that purpose.
20               So if you want to ask him -- Mr. Smith,
21          if you want to ask him a "yes" or "no"
22          question, Did somebody tell you that
23          American Protection is a fiduciary for
24          SunPath? you can ask that "yes" or "no"
25          question.  But what you can't ask is how he

```
 1                  CERTIFICATE OF REPORTER
 2                    (VIA VIDEOCONFERENCE)
 3     STATE OF WISCONSIN:
 4     COUNTY OF WINNEBAGO:
 5
 6         I, COURTNEY N. LANGHOFF, RMR, CRR, FPR-C,
 7     Notary Public, State of Florida, certify that I was
 8     authorized to and did stenographically and remotely
 9     report the Zoom videoconference deposition of
10     KOBI CHUKRAN (CHUKRAN MANAGEMENT GROUP, LLC); that a
11     review of the transcript was requested; and that the
12     foregoing transcript, pages 134 through 248, is a true
13     and accurate record of my stenographic notes.
14         I further certify that I am not a relative,
15     employee, or attorney, or counsel of any of the parties,
16     nor am I a relative or employee of any of the parties'
17     attorneys or counsel connected with the action, nor am I
18     financially interested in the action.
19
20         DATED this 16th day of November, 2022.
21
22
23
           COURTNEY N. LANGHOFF, RMR, CRR, FPR-C
24
25
                                              Page  250
```

# EXHIBIT 3

**From:**          Taylor Smith
**Sent:**          Friday, January 6, 2023 12:57 PM
**To:**            Mitchell Roth; Joe Bowser; Taylor Smith
**Cc:**            Patrick Peluso
**Subject:**       Re: Motions in Limine
**Attachments:**   Records Custodian Declaration - Ruth Smith v. SunPath 4891-0151-8663
                   v.1.pdf

**Follow Up Flag:**      Copied to Worldox (Client Files\2834\017\01494675.MSG)

Counsel:

Attached is the declaration provided to us by Five9 this morning.

Thanks,
Taylor







## Declaration of Custodian of Records

I, the undersigned, do hereby declare:

1.      My name is Melinda Bas.

2.      I am a United States citizen and over eighteen (18) years of age. I am acting on behalf of the custodian of records of the business named in the subpoena, or I am otherwise qualified as a result of my position with the business named in the subpoena to make this declaration.

3.      I am in receipt of the subpoena for Civil Action No. 1:22-cv-00081-LMB-WEF served on Five9 Communications by Woodrow & Peluso, LLC on November 10, 2022.  In response to the subpoena, Five9 produced records in its possession relating to Chukran Management Group, LLC d/b/a American Protection Corp.

4.      Specifically, Five9 produced a single .cvs file containing telephone numbers provisioned for use by American Protection Bates-Stamped Five9_AmericanProtection_000001.

5.      Additionally, Five9 produced a .zip file Bates-Stamped Five9_AmericanProtection_000002 containing forty-five (45) separate .cvs files for the time period between May 2018 and December 2021.  The Five9 records are labeled as follows:

- AmericanProtectionCorporation2-20180501-20180531.csv

- AmericanProtectionCorporation2-20180601-20180630.csv

- AmericanProtectionCorporation2-20180701-20180731.csv

- AmericanProtectionCorporation2-20180801-20180831.csv

- AmericanProtectionCorporation2-20180901-20180930.csv

- AmericanProtectionCorporation2-20181001-20181031.csv

- AmericanProtectionCorporation2-20181101-20181130.csv

- AmericanProtectionCorporation2-20181201-20181231.csv

- AmericanProtectionCorporation2-20190101-20190131.csv

- AmericanProtectionCorporation2-20190201-20190228.csv

- AmericanProtectionCorporation2-20190301-20190331.csv

- AmericanProtectionCorporation2-20190401-20190430.csv

- AmericanProtectionCorporation2-20190501-20190531.csv

- AmericanProtectionCorporation2-20190601-20190630.csv
- AmericanProtectionCorporation2-20190701-20190731.csv
- AmericanProtectionCorporation2-20190801-20190831.csv
- AmericanProtectionCorporation2-20190901-20190930.csv
- AmericanProtectionCorporation2-20191001-20191031.csv
- AmericanProtectionCorporation2-20191101-20191130.csv
- AmericanProtectionCorporation2-20191201-20191231.csv
- AmericanProtectionCorporation2-20200101-20200131.csv
- AmericanProtectionCorporation2-20200201-20200229.csv
- AmericanProtectionCorporation2-20200301-20200331.csv
- AmericanProtectionCorporation2-20200401-20200430.csv
- AmericanProtectionCorporation2-20200501-20200531.csv
- AmericanProtectionCorporation2-20200601-20200630.csv
- AmericanProtectionCorporation2-20200701-20200731.csv
- AmericanProtectionCorporation2-20200801-20200831.csv
- AmericanProtectionCorporation2-20200901-20200930.csv
- AmericanProtectionCorporation2-20201001-20201031.csv
- AmericanProtectionCorporation2-20201101-20201130.csv
- AmericanProtectionCorporation2-20201201-20201231.csv
- AmericanProtectionCorporation2-20210101-20210131.csv
- AmericanProtectionCorporation2-20210201-20210228.csv
- AmericanProtectionCorporation2-20210301-20210331.csv
- AmericanProtectionCorporation2-20210401-20210430.csv
- AmericanProtectionCorporation2-20210501-20210531.csv
- AmericanProtectionCorporation2-20210601-20210630.csv

- AmericanProtectionCorporation2-20210701-20210731.csv

- AmericanProtectionCorporation2-20210801-20210831.csv

- AmericanProtectionCorporation2-20210901-20210930.csv

- AmericanProtectionCorporation2-20211001-20211031.csv

- AmericanProtectionCorporation2-20211101-20211130.csv

- AmericanProtectionCorporation2-20211201-20211231_part_1.csv

- AmericanProtectionCorporation2-20211201-20211231_part_2.csv


I hereby certify that the records provided to Woodrow & Peluso, LLC:

a.   Were made at or near the time of the occurrence of the matters set forth in the records by or from information transmitted by a person with knowledge of those matters;

b.   Were kept in the course of a regularly conducted business activity; and

c.   Were made by the regularly conducted activity as a regular practice.

I DECLARE under the penalty for perjury that the foregoing is true and correct.


Executed on January ⁵, 2023

1/5/2023 | 15:54 PST

DocuSigned by:

*Melinda E. Bas*

D3931B7E118A429...

Melinda Bas, VP of Compliance and Privacy

Five9, Inc.
3001 Bishop Drive,
Suite 350
San Ramon, CA 94583


**JA969**

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH, on behalf of herself and a class of others similarly situated,** | |
| Plaintiff, | |
| | **Civil Action No. 1:22-cv-00081 (LMB/TCB)** |
| v. | |
| **SUNPATH, LTD.,** | |
| Defendant. | |

**SUNPATH, LTD.'S FIRST SET OF DISCOVERY REQUESTS
TO PLAINTIFF RUTH SMITH**

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, Defendant SunPath, Ltd. ("SunPath") hereby propounds the following First Set of Interrogatories, Document Requests, and Requests for Admission (collectively, "Discovery Requests") to Plaintiff Ruth Smith ("Plaintiff" or "Smith") to be answered, in writing and under oath, within thirty (30) days from the date of service hereof.

Throughout these discovery requests:

1. Unless otherwise stated, or identified in the local rules, all definitions should be responded to according to their ordinary meaning.

2. Unless otherwise stated, the relevant time period of these Discovery Requests is November 8, 2019 to the present, and shall include all information that relates or refers to this period unless another time or period of time is referred to in a Discovery Request.

3. Defined terms are set forth below. Whenever a defined term is used in any Discovery Request, which is indicated in **bold** type, the request shall be answered applying the

term as defined in detail herein. Any undefined term shall be answered as that term is generally understood by you consistent with common usage.

4.      The words "Plaintiff," "you," or "your" shall mean and refer to Plaintiff Ruth Smith, or any of her agents, attorneys, representatives, or other persons purporting to act on her behalf.

5.      The word "SunPath" shall refer to Defendant SunPath, Ltd., and any of their agents, employees, or persons purporting to act on their behalf.

6.      The word "Parties" shall collectively mean and refer to you and SunPath.

7.      "Lawsuit" refers to the above-captioned action.

8.      "Complaint" means the Complaint (ECF No. 1) you filed in this Lawsuit.

9.      "Your Cellular Telephone Number" means the telephone number you allege received the calls that are the basis of your Complaint (703-728-9650), along with any other cellular telephone number used by you during the relevant time period.

10.     "Initial Disclosures" refers to Plaintiff's Rule 26(A)(1) Disclosures.

11.     "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

12.     "Describe" means state, list, relate, narrate, and/or recount.

13.      "Identify" means to state:

    a.      Relating to a natural person:  (1) his or her full name, (2) present or last known address, (3) telephone number(s), (4) employer, and (5) job title;

2

**JA972**

b.      Relating to business, legal or governmental entity, association, or proprietorship:  (1) its full name, (2) present or last known address, and (3) telephone number;

c.      Relating to a document:  (1) the name and address of its author or maker, (2) the names and addresses of each person or entity who or which was an addressee, (3) the date on which it was created or made, (4) the nature of the document, and (5) the substance of the information or data set forth in the document;

d.      Relating to conversations and written or oral communications:  (1) the date on which each conversation or communication occurred, (2) the persons engaged in such conversation or making such communication, (3) the substance of the conversation or communication, (4) the names and addresses of all persons present when the conversation or communication occurred, (5) the place where the conversation or communication took place and, if by telephone or text message, the telephone number from and to which the call or text was placed.

e.      Relating to a telephone number: (1) the full telephone number (with area code and country code, where applicable), (2) the time period in which you were responsible for the charges associated with that number and/or you regularly used that number, (3) the telecommunications carrier that provided you service in connection with that telephone number, and (4) the nature of the telecommunications service provided to you in connection with that service, such as cellular service, landline service, or VoIP service (as that term is defined in 47 C.F.R. § 9.3).

   f.  Relating to an IP address: (1) the IP address, (2) the device associated with that IP address; (3) the time period in which you owned the device(s) associated with that IP address and/or you regularly used that IP address, (4) the internet provider that provided you service in connection with that address, and (5) the nature and location associated with the use of that IP address (i.e. at work, home, personal).

  14.  "Document" means any written, recorded or graphic matter however produced or reproduced whether or not in your possession, custody or control, and whether or not claimed to be privileged against discovery on any grounds, including, but not limited to, emails, text messages, internet postings (including without limitation blogs), reports, lists, memoranda, call reports, work logs, time sheets, drawings, designs, sketches, worksheets, correspondence, schedules, sound recordings, photographs, videotapes, film, ledgers, books of account, catalogs, brochures and written statements of witnesses or other persons having knowledge of the pertinent facts.  The term "document" also includes any and all copies of any document that contain any notation or otherwise differ from the original and other copies, and specifically includes any and all drafts of the above and any and all handwritten notes or notations in whatever form together with any attachments to any such documents.  The term "document" expressly includes all computer records, and when such computer records are incorporated within the scope of these discovery requests, all documents shall be produced in both hard copy format and in a computer readable format, together with the computer file name and the identity of the language in which it is encoded.

15.     To identify a document that was, but is no longer, in your possession or subject to your control, or in existence, state whether it (1) is missing or lost, (2) has been destroyed, (3) has been transferred, voluntarily or involuntarily, to others, or (4) has been otherwise disposed of; and in each instance, explain the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

16.     "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations at 47 C.F.R. 64.1200.

17.     "VTPPA" means the Virginia Telephone Privacy Protection Act, Va. Code §§ 59.1-510 to -518.01, which forms the basis for the Second and Third Causes of Action of the Complaint.

18.     "Classes", "proposed classes", or "purported classes" means the No Consent Class, Virginia Do Not Call Registry Class, and Virginia Unidentified Caller Class as defined in Paragraph 34 of the Complaint.

19.     "Relating to" or "referring to" means discussing, reflecting, containing, dealing with, analyzing, evaluating, estimating, constituting, describing, evidencing or pertaining to in any way either directly or indirectly, whether supportive, exculpatory, harmful, or negative, and either in whole or in part.

20.     The Discovery Requests are intended to discover all discoverable information sought by them, such that they should be read with the following rules of construction in mind:

> a. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Discovery Requests all responses that might otherwise be construed to be outside of its scope.

**JA975**

    b.   The word "all" shall be construed to include every, any and each, as necessary to bring within the scope of these Discovery Requests information, documents, and things that might otherwise be construed as outside their scope.

    c.   All references to the singular shall include the plural, and all references to the plural shall include the singular.

    d.   A masculine, feminine, or neuter pronoun shall not exclude the other genders.

21.    The Discovery Requests that follow are continuing in nature; that is, you have a duty to supplement your responses to them pursuant to Fed. R. Civ. P. 26(e).  You are requested to provide such additional documents as you or any other person on your behalf may hereafter obtain that which will augment or otherwise modify your answers now given to the Discovery Requests below. Such supplementary information is to be provided to the undersigned immediately upon your receipt of such information.

22.    If any documents, materials, or information responsive to the Discovery Requests below are withheld on the basis of a claim of privilege, set forth a privilege log detailing as to each item of information or document:

    a.   the type of any document;

    b.   the name of the author of any document;

    c.   the name of the sender or the source, if any, of the documents or information;

    d.   the date of the document;

    e.   the nature of the privilege claim;

    f.   attachments to any such document;

    g.   the number of pages comprising any document;

    h.   a brief description of the nature and the subject matter of the information or document; and

    i.   the identification number, control number, or "Bates" number of the document.

**JA976**

## **INTERROGATORIES**

1.    **Identify** all telephone calls to **Your Cellular Telephone Numbers** for which **you** seek recovery in this **Lawsuit** that **you** allege were made by or on behalf of **SunPath**, and state all factual bases for your contention that each call was made by or on behalf of **SunPath**.

ANSWER:

2.    If **you** contend that **SunPath** is directly liable for any of the telephone calls identified in **your** answer to Interrogatory No. 1, **identify** such telephone calls and state all facts in support of such contention.

ANSWER:

3.    If **you** contend that **SunPath** is vicariously liable for any of the telephone calls identified in **your** answer to Interrogatory No. 1, **identify** such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER:

4.    If **you** contend that **SunPath** or any third-party you allege is **SunPath**'s agent utilized an automatic system for the selection or dialing of telephone numbers regulated by the TCPA and/or the VTPPA to make any calls to **Your Cellular Telephone Number** or to any members of the **proposed classes**, then state the factual and legal basis for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER:

5.    If **you** contend that **SunPath** or any third-party you allege is **SunPath's** agent called **Your Cellular Telephone Number** or to any members of the **proposed classes**, without implementing internal procedures for maintaining a list of persons who request not to be called by **SunPath** or any third-party you alleged is **SunPath's** agent and/or without implementing

7

procedures meeting requirements from 47 C.F.R. § 64.1200(d), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER:

6. If **you** contend **SunPath** or any third-party you allege is **SunPath's** agent made calls to **Your Cellular Telephone Number**, or to any members of the **proposed classes**, that utilized an artificial or prerecorded voice, then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER:

7. If **you** contend that **you** registered **Your Cellular Telephone Number** or any members of the **proposed classes** registered their telephone number on the National Do Not Call Registry, and then **SunPath** or any third-party you allege is **SunPath's** agent made telephone calls to **you** or them without proper consent from **you** or the member or an established business relationship with **you** or them (as defined by 47 C.F.R. § 64.1200(f)(5)), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER:

8. If **you** contend **SunPath** or any third-party you allege is **SunPath's** agent called **Your Cellular Telephone Number**, or to any members of the **proposed classes**, willfully or knowingly in violation of the TCPA and/or VTPPA, then identify such members and state the factual and legal bases for that contention.

ANSWER:

9. If **you** contend that the party that made any of the telephone calls identified in

8

**JA978**

**your** answer to Interrogatory No. 1 failed to identify his or herself by his or her first and last name and by the name of the person on whose behalf the call was being made promptly upon making contact with **you**, state all facts in support of such contention with respect to each such call.

ANSWER:

10.     **Identify** and **describe Your Cellular Telephone Number** (703-728-9650, along with any other cellular telephone number used by **you** during the relevant time period), including, the date on which you were first assigned that telephone number, and from November 8, 2019 to present, state whether the number is associated with a cellular, mobile, or wireless telephone provider service in connection with that telephone number or any other service for which you incurred a charge for incoming calls or text messages; the name of each such provider; the type of device or telephone associated with that telephone number; the name of each person that controlled, owned, operated, or used that number, and when each person controlled, owned operated, or used that number; and whether or not it was used for personal or business purposes, or both.

ANSWER:

11.     Identify all **communications** between **you** and all other persons, other than **your** attorneys, **relating** to **SunPath**, or **your** claims or allegations in this **Lawsuit**, including the date, method, and substance of the **communication** and the identities of all persons with whom **you** had contact.

ANSWER:

12.     If **you** assert that **you** or any member of the **proposed classes** ever informed **SunPath** that **you** or they did not want to be contacted by or on behalf of **SunPath**, **describe** the

date and substance of that event or **communication**, the means of such **communication**, and state whether **SunPath** communicated with **you** or any member of the **proposed classes** after such **communication** and **identify** each such **communication**.

ANSWER:

13.     State whether **you** have ever been named as a defendant or respondent in any criminal, civil, administrative, or regulatory action under any federal, state, or local law, rule or regulation and provide the following information regarding any such action: the forum for the action, the case number assigned to the action, the legal cause(s) of action asserted in the matter, the status of the action, and the outcome of the action.

ANSWER:

14.     **Identify** all vehicle service contracts or related or similar products **you** have purchased, using **your** own name or any alias, between January 26, 2017 and present, including, without limitation, for each such policy, plan or related or similar product, who **you** purchased it from, the administrator of the policy or plan, and the date of purchase and date of cancellation, if applicable.

ANSWER:

15.     **Identify** all persons, other than a person intended to be called as an expert witness at trial, who are likely to have knowledge of any of the facts and/or allegations set forth in the Complaint and/or the denials and/or affirmative defenses set forth in any other pleading in this **Lawsuit**, and for each such person, **describe** in detail the facts and/or allegations of which they are likely to have knowledge, **identify** the documents about which they have knowledge, and indicate whether **you** intend to call them as a witness at trial.

ANSWER:

**JA980**

16.     Disclose all websites **you** have visited since January 1, 2019 relating to vehicle service contracts, automobile insurance, extended warranty plans, or similar or related products and on or through which you provided any of **Your Telephone Numbers**. Include in **your** answer the address of the website and the dates visited.  **Your** answer should also include whether **you** provided consent to be called to any third party about vehicle service contracts or similar or related products when visiting such websites.

ANSWER:

17.     If **your** response to any of the Requests for Admissions below is a denial, state in full the basis for each such denial.

ANSWER:

18.     If **you** contend that **you** suffered any compensable harm(s) as a result of the calls or text messages identified in **your** answer to Interrogatory No. 1, then state all facts in support of such contention and identify the amount of damages **you** are seeking in this action for such harm(s) and from which Defendant.

ANSWER:

19.     **Identify** the names, addresses, and telephone numbers of any person **you** claim may be a member of the **purported classes** alleged in the **Complaint** (excluding yourself), the **class** or **classes** they are a member of, and identify the specific knowledge that each such person may have vis-à-vis their putative claims against **SunPath**.

ANSWER:

20.     **Describe**, in specific detail, how it came about  that **you** were selected to be a class representative on behalf of the **classes** alleged in the **Complaint** , including how **you** came to hire **your** current counsel to represent **you** and the **classes** in this matter, whether **you**

contacted **your** counsel or whether they contacted **you**, whether **you** were referred to **your** counsel by someone else (if so, by whom), and whether **you** considered hiring any other law firms.

ANSWER:

21.    **Identify** any and all settlement agreements **you** have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the **TCPA** or **VTPPA**, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration **you** received under the terms of such agreements.

ANSWER:

22.    If you contend that your claims against **SunPath** are typical as related to those of the **proposed classes**, **identify** and **describe** in detail all factual and legal bases for that contention.

ANSWER:

23.    If you contend that your claims against **SunPath** contain questions of law and fact that are common to the clams of the **proposed classes**, and those questions predominate over any questions that may affect individual members of the **proposed classes**, **identify** and **describe** in detail all factual and legal bases for those contentions.

ANSWER:

12

**JA982**

## **<u>VERIFICATION</u>**

I, _____, declare under penalty of perjury, pursuant to

28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.


Dated September ____, 2022.                                    _____

13

**JA983**

## DOCUMENT REQUESTS

1. All **documents** and **communications** that **you** identified, relied upon, reviewed, considered or consulted in answering any of the foregoing Interrogatories or in **your** Initial Disclosures.

2. All **documents** and **communications relating to** the information contained in response to each of the Interrogatories.

3. All **documents** and **communications you** have received from, or sent to, **SunPath** or any third party for whose actions **you** allege **SunPath** is liable, vicariously or otherwise.

4. All non-privileged **documents** and **communications related to SunPath**, any third party for whose actions **you** allege **SunPath** is liable, the calls for which **you** seek recovery in this action, or any of the allegations contained in **your Complaint**.

5. All non-privileged **documents** or electronically stored information on **your** computers, tablets, smartphones or other electronic devices **related to SunPath**, or any of the allegations contained in **your Complaint**.

6. All **documents** memorializing, reflecting or commenting upon the content of any **communication** that **you** had with **SunPath** or any third party for whose actions **you** allege **SunPath** is liable, vicariously or otherwise.

7. All audio recordings, transcripts and notes in **your** possession **relating to communications** to or from **you** and **SunPath** or any third party for whose actions **you** allege **SunPath** is liable, vicariously or otherwise.

8. All calendars, diaries, logs, notes, journals, or any other written or recorded summary of events maintained by **you** in any way **relating to** this **Lawsuit**.

14

9.     All **documents** and **communications relating to** the information contained in response to each of the Interrogatories and Requests for Admission.

10.     **Documents** or **communications** showing all websites **you** have visited between November 8, 2019 and present relating to vehicle service contracts, auto insurance, extended warranty plans, or similar or related products including providing consent to be called to any third party about such product when visiting such websites.

11.     All **documents** and **communications** evidencing any settlement agreements **you** have entered into or compensation **you** have received from any person or party, relating to this action or the calls or text messages at issue in it.

12.     Any and all written reports and *curriculum vitae* of any expert witness **you** intend to call as a witness at any trial or hearing in this action, a copy of each and every **document**, electronically stored information, physical model, or tangible thing that was generated, prepared or reviewed by or on behalf of an expert in anticipation of trial or that was used in any consultation that forms any basis of the expert' s anticipated testimony, and documents reflecting the compensation to be paid to each expert.

13.     All **documents you** received or that were made available to **you**, electronically or otherwise, from **your** telecommunications service provider(s) for each cellular telephone service **you** used (including that associated with **Your Cellular Telephone Number)** at any time from November 1, 2019 to present (or, to the extent **you** seek recovery for calls outside that period, then include any such time period here), including statements or invoices showing the amount billed, subscriber agreements, terms and/or conditions of service, the duration of each call made and received, the telephone number for each call made or received, and the charges imposed for each call made or received.

14.     All pleadings, correspondence, discovery, settlement agreements, payments received, judgments, **documents** evidencing monies paid, and other non-privileged **documents** **relating to** any demand, claim, allegation, litigation, administrative, or regulatory investigation or proceeding, other than this **Lawsuit**, to which **you** have ever been a party at any time in the past five years, in which **you** have sought damages or any other form of relief under the **TCPA**, **VTPPA**, or any other state law **relating** to telemarketing or other allegedly unlawful communications.

15.     All **documents you** receive in response to any document request, subpoena or other substantially similar demand for the production of documents or things that **you** have served or serve in the future on any party or non-party in connection with this **Lawsuit**.

16.     All **documents** and **communications** evidencing any member of the **purported classes**' receipt of a call from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

17.     All **documents** and **communications** evidencing the identity of any person, other than **you**, whom **you** claim is a member of any of the **purported classes** as alleged in the **Complaint**.

18.     Recordings of all telephone calls received by **purported class** members from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

19.     **You** and **your** attorneys' **communications** with any member of the **purported classes** (excluding yourself), including any documents reflecting notes of such **communications**. This includes any **communications** to any member of the **purported classes**, even if the class member did not respond.

20.     All documents reflecting notes of communications between any potential member of the purported classes and **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise, including any documents reflecting notes of such communications.

21.     All **documents** reflecting notes of **communications** between **you** and any potential member of the **purported classes**, including any **documents** reflecting notes of such **communications**.

22.     All **documents** and **communications** reflecting all telephone numbers at which any member of the **purported classes** received calls from **SunPath**  or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

23.     All **documents** evidencing any damages and/or harm caused to any potential members of the **purported classes** as a result of their receipt of calls from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

24.     All **documents** and **communications** exchanged between you and any member of the **purported classes** relating to the facts and/or allegations contained in the **Complaint**.

25.     All **documents** and **communications** relating to **your** and any member of the **purported classes'** consent to receive calls or text messages from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

26.     All **documents** and **communications** relating to **your** and any member of the **purported classes'** established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

27. All **documents** and **communications** relating to **you** registering **Your Cellular Telephone Number** and any of the members of the **proposed classes** registering their telephone number on the National Do Not Call Registry, and then **SunPath** or any third-party for whose actions you allege **SunPath** is liable, vicariously or otherwise, making telephone calls to **you** or them without proper consent or an established business relationship (as defined by 47 C.F.R. § 64.1200(f)(5)).

28. All **documents** and **communications** that identify any potential members of the **purported classes** (other than yourself).

29. All **documents** and **communications** that represent or evidence the number of persons that may be members that fall within the **purported classes**.

30. All **documents** and **communications** that support your contention that **SunPath** is vicariously liable for calls received by **you** or any member of the **purported classes**.

31. All **documents** and **communications** regarding **your** attorneys' prior putative class action lawsuits and class representations evidencing their ability to adequately represent the **purported classes**.

32. All **documents** and **communications you** intend to rely upon to support **your** request for class certification.

33. Documents that support **your** contention that the **proposed classes** are capable of being certified, including but not limited to, documents supporting that the **classes** are numerous enough for certification, have common issues that will predominate over individual issues, have typical issues, and have adequate representation.

## <u>REQUESTS FOR ADMISSION</u>

1. During the period November 8, 2019 to present, the only cellular telephone number registered in **your** name was 703-728-9650.

2. During the period November 8, 2019 to present, a cellular telephone number registered in **your** name was 703-728-9650.

3. During the period January 1, 2019 to present, **you** visited a website and provided **your** phone number to be contacted regarding vehicle service contracts, or related or similar products.

4. During the period January 1, 2019 to present, **you** have asked another person to visit a website and provide **your** phone number to be contacted regarding vehicle service contracts, or related or similar products.

5. Prior to May 26, 2020, **you** did not receive any calls to **Your Cellular Telephone Numbers** from or allegedly on behalf of **SunPath**.

6. After June 9, 2020, **you** did not receive any calls to **Your Cellular Telephone Numbers** from or allegedly on behalf of **SunPath**.

7. **You** are in possession of no written or audio evidence that **SunPath** or any party allegedly acting on **SunPath**'s behalf contacted **you** via **Your Cellular Telephone Number** before May 26, 2020.

8. **You** are in possession of no written or audio evidence that **SunPath** or any party allegedly acting on **SunPath**'s behalf contacted **you** via **Your Cellular Telephone Number** after June 9, 2020.

9. **You** were not assessed any per-call or data rate charges in connection with any telephone calls that **you** allege **you** received from or on behalf of **SunPath**.

19

**JA989**

10.     None of the calls that **you** received in May or June 2020 that are described in Paragraphs 23-24 of your Complaint were made with a prerecorded or artificial voice message.

11.     **You** provided y**our** consent to receive the telephone calls identified in **your** Complaint.

12.     **You** had an established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise, at the time you received the calls at issue.

13.     The telephone calls **you** allegedly received, as described in Paragraphs 23-24 of **your Complaint**, were not from or on behalf of **SunPath**.

14.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller promptly identified the name of the person on whose behalf the telephone call was being made.

15.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller promptly identified his or herself by his or her first and last name.

16.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller did not state that he or she was calling from or on behalf of SunPath.

17.     At no point on or before June 9, 2020 did **you** ever advise **SunPath** not to call you.

18.     **You** were located in Virginia when you received the calls listed in **your Complaint**.

19.     **You** personally registered **Your Cellular Telephone Number** on the National Do Not Call Registry on November 8, 2019.

20.     Another person, other than yourself, registered **Your Cellular Telephone Number** on the National Do Not Call Registry.


Dated:  August 29, 2022                        Respectfully submitted,


                                               SUNPATH, LTD.

                                               By Counsel

                                               By: /s/ *Joseph P. Bowser*
                                               Joseph P. Bowser (VSB No. 88399)
                                               Roth Jackson Gibbons Condlin, PLC
                                               1519 Summit Avenue, Suite 102
                                               Richmond, VA 23230
                                               T: 804-441-8701
                                               F: 804-441-8438
                                               jbowser@rothjackson.com

                                               Gregory M. Caffas (VSB No. 92142)
                                               Mitchell N. Roth (VSB No. 35863)
                                               Roth Jackson Gibbons Condlin, PLC
                                               8200 Greensboro Drive, Suite 820
                                               McLean, VA 22102
                                               T: 703-485-3533
                                               F: 703-485-3525
                                               gcaffas@rothjackson.com
                                               mroth@rothjackson.com

**JA991**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2022, a copy of the foregoing document

was served via email to the following:

Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**

/s/ *Joseph P. Bowser*
Joseph P. Bowser

22

**JA992**

# EXHIBIT 5

| From: | Taylor Smith |
|---|---|
| Sent: | Friday, December 9, 2022 5:46 PM |
| To: | Greg Caffas |
| Cc: | Joe Bowser; Patrick Peluso |
| Subject: | Smith v. SunPath - Case No. 1:22-cv-00081 - Second Supplemental Initial Disclosures & Document Production |
| Attachments: | SMITH000029-30.pdf; SMITH000031-36.pdf; Smith v. SunPath - Plaintiff's Second Supplemental Initial Disclosures.pdf |

Greg,

Attached please find Plaintiff's second supplemental initial disclosures, along with her supplemental document production.

Thanks,
Taylor

--

Taylor T. Smith I  Woodrow & Peluso LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 907-7628 (direct)
tsmith@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES**

Plaintiff Ruth Smith ("Smith" or "Plaintiff") submits the following supplemental Initial Rule 26(a)(1) Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

### I. Prefatory Statement

Plaintiff's investigation in this action continues, and these supplemental disclosures reflect only the current status of her knowledge. Plaintiff reserves the right to supplement and/or amend these disclosures as additional information becomes known.

Rule 26(a)(1) does not require the production of any information or documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege or applicable doctrine with respect to all such information and documents. The inadvertent disclosure of any information or documents shall not constitute a waiver of any such privilege.

This Prefatory Statement is incorporated in its entirety into each of the following disclosures. It shall be deemed continuing as to each such disclosure, and it is not waived, or in any way limited, by the following disclosures.

1

**JA995**

*II. Disclosures*

(A)     *The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.*

1.      <u>Ruth Smith</u>: Ms. Smith has knowledge of certain matters alleged in the Complaint, including the circumstances under which Ms. Smith received the telemarketing calls, her lack of providing any prior express written consent to Defendant, and related matters. Ms. Smith may only be contacted through counsel, Woodrow & Peluso, LLC.

2.      <u>Defendant SunPath, Ltd. ("SunPath"), including agents, former agents, employees, former employees, and records custodians of SunPath</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including SunPath's telemarketing practices, the telemarketing calls placed to Plaintiff and the Class, SunPath's failure to obtain prior express written consent, SunPath's hiring of third-party telemarketers, lead generators, or other third parties, and related matters. As such individuals are all former or current employees or agents of the SunPath, SunPath is in a better position to ascertain their phone numbers and other contact information. The names, addresses, and telephone numbers of other agents, employees, and records custodians of SunPath are not known to Plaintiff at this time.

3.      <u>Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), including agents, former agents, employees, former employees, and records custodians of American Protection</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including Defendant's failure to obtain prior express written consent, Defendant's procurement of Plaintiff's lead information, calls

2

**JA996**

placed on behalf of or for the benefit of Defendant, and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of American Protection are not known to Plaintiff at this time. American Protection's mailing address is 10627 Cocobolo Way, Boynton Beach, Florida 33437.

4.      Five9, Inc. including agents, former agents, employees, former employees, and records custodians of Five9: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including the call records reflecting the calls placed by American Protection on behalf of SunPath and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of Five9 are not known to Plaintiff at this time. Five9's mailing address is 3001 Bishop Drive, Suite 350, San Ramon, CA 94583.

5.      Serge D. Jorgensen: Mr. Jorgensen may have knowledge of certain matters in this action, including his review and analysis of the Five9, Inc. call records produced in this case and related matters. Mr. Jorgensen may only be contacted through counsel, Woodrow & Peluso, LLC.

6.      Third party contractors and service providers of Defendant: Such contractors, including without limitation telemarketers, telephone number lead generators, and telephone service providers, may have knowledge of certain matters alleged in the Complaint, including but not limited to the facts surrounding the calls placed by Defendant, or were placed on Defendant's behalf or for its benefit, to Plaintiff and the other class members, including without limitation the manner by which the calls were placed and Plaintiff's lead information was obtained. Defendant is in a better position to ascertain the phone numbers and other contact information of such contractors.

3

7.      Any expert witnesses on whose opinions Plaintiff will rely on to support her claims. To date, Plaintiff has not yet retained an expert witness, but will supplement these disclosures as necessary.

(B)     *A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;*

Plaintiff has access to applicable records related to the calls placed by Defendant or by a third party acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant.

Plaintiff anticipates that a significant portion of discovery in this case will be obtained from Defendant, and in particular via Defendant's records, servers, databases, and other electronic storage platforms. Plaintiff also anticipates that a significant portion of discovery will be obtained from third parties acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a contract with Defendant. Plaintiff is not presently aware of the location of such databases, and the third parties have not been identified. Investigation continues.

(C)     *A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and*

The total amount of damages incurred by Plaintiff and the putative class members is unknown at this time. Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

4

**JA998**

per call for the second call received in violation of the VTPPA, and $5,000 per call for each

subsequent call received in violation of the VTPPA. Consequently, based on the information

currently available to Plaintiff, she seeks $81,000 in damages for violations of the TCPA, and

she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to provide a full

and complete computation of all class members' damages at this time. Discovery is ongoing and

Plaintiff will supplement her disclosures following the receipt of relevant data from Defendant

and any other relevant sources regarding the number of calls made.

(D)     *For inspection and copying as under Rule 34 any insurance agreement under which any*

        *person carrying on an insurance business may be liable to satisfy part or all of a*

        *judgment which may be entered in the action or to indemnify or reimburse for payments*

        *made to satisfy the judgment.*

        Plaintiff does not have any policy of insurance related to this action.


Dated: December 9, 2022                    **RUTH SMITH**, individually and on behalf of all
                                           others similarly situated,


                                           By: _/s/ Taylor T. Smith_____
                                                  One of Plaintiff's Attorneys

                                           Francis J. Driscoll, Jr.
                                           (frank@driscolllawoffice.com)
                                           4669 South Blvd., Suite 107
                                           Virginia Beach, VA 23452
                                           Telephone: 757-321-0054
                                           Facsimile: 757-321-4020

                                           Patrick H. Peluso
                                           ppeluso@woodrowpeluso.com
                                           Woodrow & Peluso, LLC
                                           3900 East Mexico Ave., Suite 300
                                           Denver, Colorado 80210
                                           Telephone: (720) 213-0675
                                           Facsimile: (303) 927-0809

                                           Attorneys for Plaintiff and the Classes

5

**JA999**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by electronic mail on December 9, 2022.

*/s/ Taylor T. Smith*

6

**JA1000**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081 (LMB/WEF) |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant SunPath, Ltd. ("SunPath"), by counsel, hereby submits its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

**I.      INTRODUCTION AND BACKGROUND**

Plaintiff claims she is entitled to summary judgment for 122 "calls" she received from a non-party in violation of the Virginia Telephone Privacy Protection Act ("VTPPA"). Yet there is no genuine factual dispute that SunPath did not make any of the calls at issue, nor were they made on behalf or for the benefit of SunPath.  SunPath is the administrator of vehicle service contracts ("VSCs").  Plaintiff never purchased a VSC administered by SunPath.  Indeed, SunPath's first contact with Plaintiff was when her lawyer asserted these claims to SunPath's own counsel.  The record is clear that SunPath had no role in making any call to Plaintiff.

Instead, Plaintiff claims that SunPath is jointly and severally liable under the VTPPA for the actions of non-party American Protection Corp., a d/b/a of Chukran Management Group LLC ("American Protection"), who Plaintiff alleges made the calls at issue.  American Protection had an agreement with SunPath that permitted it to sell SunPath-administered VSCs alongside those

of SunPath's competitors, as an independent contractor, and explicitly within the bounds of applicable law.   But SunPath asserted no control over American Protection's marketing practices, or over the actions of any sub-contractor that American Protection hired to receive calls from or make calls to consumers.   American Protection bought SunPath-related products at wholesale rates, and independently controlled all facets of its sales and marketing operations, including who it employed, what it sold, the prices at which it sold, and whether it would offer a SunPath-related product or a product of any of SunPath's many competitors.   Indeed, a SunPath-administered VSC was never even offered to Plaintiff on any call at issue in this case.

Plaintiff's VTPPA claim therefore fails for several reasons and precludes her entitlement to summary judgment.   First, Plaintiff created an "established business relationship" ("EBR") with American Protection when *she called American Protection first*, before American Protection ever made any outbound calls to her. While this EBR was in place, Plaintiff's claims fail as a matter of law because the calls were not "telephone solicitation calls" actionable under the VTPPA, and secondary liability is irrelevant because there would not even be primary liability as to American Protection.

Furthermore, while the VTPPA contains a presumption that a "seller," as defined by the statute, is jointly and severally liable for unlawful "telephone solicitation calls" made by a third-party under certain prescribed circumstances, there are threshold flaws that defeat Plaintiff's claims before the presumption even applies here. SunPath-related products were not offered or even discussed during the calls at issue.   Liability under the VTPPA is dependent upon the party's products, goods, or services being offered *on the call* at hand, so the absence of any mention of SunPath or its products on any of the calls at issue dooms Plaintiff's VTPPA claims.

VTPPA liability also cannot attach to SunPath because SunPath is not a "seller" under the VTPPA because it does not sell the VSCs it administers.  American Protection (and any other independent third-party authorized to sell SunPath-administered VSCs) offers other companies' products alongside SunPath's, and it does not compensate SunPath directly for any particular sales—it buys SunPath-related products from SunPath at wholesale rates and resells them for whatever price it can fetch on the competitive retail market.  As such, American Protection does not make any calls "on behalf of" or for the benefit of SunPath.  Even if the VTPPA's presumption of joint liability could apply to SunPath, SunPath rebuts this presumption, as it has not authorized and did not have any knowledge of any alleged unlawful calling practices by American Protection.

Finally, even if Plaintiff could clear those hurdles, she relies upon inadmissible evidence concerning the "calls" at issue, and the admissible evidence that does exist only supports the inference that many of the "calls" Plaintiff seeks recovery for would not have been sales calls at all, but rather customer-service follow-up communications from American Protection.  Plaintiff is not entitled to summary judgment for the foregoing reasons.

## II.    DISPUTED MATERIAL FACTS

### A.  Plaintiff Improperly Relies on Inadmissible or Genuinely Disputed Evidence.

Before responding to Plaintiff's purported "undisputed" facts, SunPath objects to Plaintiff's improper reliance on her new declaration and records produced by non-party Five9, Inc. ("Five9"). *See* Plaintiff's Memorandum in Support of her Motion for Partial Summary Judgment, ECF No. 74 ("Memo") **Ex. G**, **Ex. H**. Neither are admissible[1] and Plaintiff cannot

---

[1] The inadmissibility of the Five9 records is addressed in SunPath's First Motion in Limine, ECF No. 84.  The inadmissibility of Plaintiff's Declaration is addressed in SunPath's Motion to Strike Plaintiff's Declaration, ECF No. 82.

3

**JA1003**

rely on them.[2] Further, Plaintiff's declaration cannot be used here because it is based exclusively on Five9 records about which she lacks personal knowledge.[3] These Five9 records are unexplained, non-self-explanatory rows of data that Five9 produced in response to a subpoena for American Protection-related data that Plaintiff served late in the discovery window and which Five9 only authenticated well after the close of discovery.  Plaintiff did not depose a Five9 representative to explain the meaning of this unexplained data.   No one from Five9 has competently explained what this specialized data may mean.  There is no available witness with specialized knowledge of the Five9 records that can explain them through admissible testimony. Without that, Plaintiff's declaration is inadmissible and cannot be used to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence[.]").[4]

---

[2] *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[3] *See* Deposition of Ruth Smith ("Smith Dep.") at 147:3-148:11 ("Q. You contend that June 9 was the last call that you received that you're seeking damages for in this case? A. Again, whatever I provided initially was correct, but I know that there's the call logs that were received. So that is correct, what's in the logs. Q. Can you clarify what you mean by that? A. So when I submitted all the documentation that I had, that was to the best of my knowledge at the time, but I understand that the call logs have different information, and they are – they are correct. Q. [W]hen you say the call logs, are you referring to call logs that you believe you counsel has received but you have not yet reviewed? A. Yes. They just came this week, yes. Q. So when you say that you believe that the call logs confirm this not to be the case, is that based on representations from counsel? A. Because it's an accurate – because of the logs that were received by the company versus what I have. Q. Right, And I'm just saying you haven't reviewed these call logs that you're referring to, right? A. Correct. Q. So how do you know that the call logs confirm this? A. I rely on my counsel."), excerpts attached as **Exhibit 1**.

[4] *See also* Fed. R. Evid. 602 and 701; *Steves & Sons Inc. v. Jeld-Wen, Inc.*, Civil Action No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061, at *4 (E.D. Va. Jan. 10, 2018) ("The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on **personal knowledge**" (citing *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990))) (emphasis added).

**JA1004**

Further, the Five9 records have never been authenticated as "call records," as Plaintiff contends. *See* Declaration of Five9 Representative ("Five9 Decl."), attached as **Exhibit 2**. The records custodian merely calls them "records"—sans adjective. Therefore, even Plaintiff calling the Five9 records "call records" is inadmissible speculation.[5]

Plaintiff's declaration is further improper for summary judgment purposes because it supplements and contradicts her discovery responses and deposition testimony.[6] As explained above, Plaintiff testified at her deposition that she had no personal knowledge of the Five9 records, and had not even reviewed them. Plaintiff cannot now contradict her deposition testimony by claiming that the Five9 records "represent[] an accurate reflection of the calls that [she] recall[s] receiving from" American Protection. Memo **Ex. H** ¶ 2.[7] Plaintiff's declaration cannot be considered here.

---

[5] It is obvious they are not simply call records of the type traditionally produced by phone companies because the column titled "DURATION" contains multiple entries of 00:00:00. All calls take *some* time. Moreover, there are numerous other temporal-related categories in those records that make it further inscrutable as to what they may mean, and Plaintiff never elicited any such testimony from Five9, whether during discovery or to this day.

[6] *See Gomez v. Haystax Tech, Inc.*, 761 Fed. Appx. 220, 229 (4th Cir. 2019) (When a party fails to provide information as required by Fed. R. Civ. P. 26(e) "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." (citing Fed. R. Civ. P. 37(c)(1))); *see also Alba v. Merrill Lynch & Co*, 198 Fed. Appx. 288, 300 (4th Cir. 2006) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

[7] Plaintiff's declaration also serves to improperly supplement and contradict her timely discovery responses. Since August 29, 2022, Plaintiff had a duty to fully answer and supplement her answer to an interrogatory asking her to identify all calls she sought recovery for in this Lawsuit. *See* SunPath's First Set of Discovery Request to Plaintiff Ruth Smith at 7, attached as **Exhibit 3**. In her initial answer and two supplemental answers, Plaintiff never identified more than 54 calls, none of which occurred after June 9, 2020. Then, the day before the end of discovery, Plaintiff supplemented her answer a third time to claim she is now seeking recovery for calls she claims are reflected in the inadmissible Five9 records. *See* Plaintiff's Third Supplemental Discovery Responses at 6, attached as **Exhibit 4**. Based on Plaintiff's declaration, apparently that totals 118 *more calls* that occurred after June 9, 2020. Plaintiff cannot now rely on the contradictory

5

The Five9 records are inadmissible as there is no witness who can properly testify to them. Five9 (a publicly traded company based in California) cannot testify at trial because Plaintiff untimely disclosed them at 5:46 PM on the last day of discovery.[8] Plaintiff has neither sought leave for, nor provided substantial justification for, her untimely disclosure. The harm and prejudice to SunPath is self-evident. Until that disclosure, the Five9 spreadsheets were simply a non-party's unauthenticated data dump of unidentified data produced in response to Plaintiff's subpoena late in the discovery window. This Court's Orders, its Local Rules, the Federal Rules, and *Gomez* all confirm that Five9 should be precluded from testifying at trial.

Since Five9 cannot appear at trial, Plaintiff has no witness with specialized knowledge to testify to the Five9 records. Again, the Five9 records are not self-explanatory. They are complex data that require specialized experience and knowledge to decipher and explain. An expert witness competent in elucidating their meaning is needed to explain them. Any lay testimony about them, even if they were somehow relevant, would create an undue risk of confusion and would be misleading to the jury.[9] *See* Fed. R. Evid. 403, 602, 701, 702.

---

statements in her declaration to support her claim *to more than three times* the amount of calls she was seeking recovery for throughout the entire discovery period. The dramatic incongruence between the calls Plaintiff knew about and the unexplained "records" produced by Five9 further highlights why Plaintiff cannot reasonably assume them to be "call records."

[8] *See* Plaintiff's Second Supplemental Initial Disclosures at 3, dated December 9, 2020 (listing Five9 and its unidentified "agents, former agents, employees, former employees, and records custodians of Five9"), attached as **Exhibit 5**; *see also* August 5, 2022 Order, ECF No. 25 (ordering discovery completed by "December 9, 2022" and that "no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.") (emphasis in Court's Order); *see also See Gomez*, 761 Fed. Appx. at 229, 233-34 ("When a party fails to make a disclosure 'as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. . . . [holding] the district court did not abuse its discretion in excluding . . . witnesses . . . [disclosed] the last day of discovery.") (internal citations omitted).

[9] *See Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 101 (D. Md. 2020) (Excluding testimony where "there is no basis for the Court to conclude that [the witness] has 'specialized knowledge'

6

**JA1006**

Plaintiff untimely produced the Five9 Decl. on January 6, 2023. *See* Five9 Decl. Plaintiff

cannot use that Declaration due to its untimely production.[10] Even if Plaintiff could offer the

Five9 Decl., it does not state that the Five9 records are "*call* records." The Declaration refers to

the spreadsheets simply as "records." *Id*. Records of what, we do not know. Neither SunPath,

the Court, nor the jury should be made to guess. Therefore, Plaintiff cannot offer them as "call

records." *See* Fed. R. Evid 901(a).

**B. Statement of Disputed Facts.**

Pursuant to Local Civil Rule 56(B), SunPath hereby responds to each of Plaintiff's

purported "undisputed facts." As a preliminary note, because Plaintiff's statement of "undisputed

facts" also includes legal arguments, SunPath has included statements of dispute responding to

such arguments. SunPath also incorporates its objection to each "fact" in support of which

Plaintiff cites the Five9 records or her declaration.

1.    Undisputed.

2.    Disputed. SunPath authorizes certain third parties to market its VSCs on a non-

exclusive basis.[11] Plaintiff's claim that third parties conducted telemarketing on SunPath's

---

regarding medical billing practices[.]"); *see also Abrams v. Nucor Steel Marion, Inc.*, Case No.
3:13 CV 137, 2015 U.S. Dist. LEXIS 154161, at *128 (N.D. Ohio Nov. 9, 2015) (refusing to
permit Plaintiff to present a "'data dump' [of] EPA records for a jury to decipher."); *see also
Butzer v. CoreCivic, Inc.*, 5:17-cv-360-Oc-30PRL, 2019 U.S. Dist. LEXIS 41026, at *9 (M.D.
Fla. Jan. 9, 2019) (denying a motion to take judicial notice of documents where it was argued
that "admitting [] complex documents to the jury without explanatory testimony would cause
confusion.").

[10] *See* August 5, 2022 Order ("Exhibits not so disclosed and listed will not be permitted at trial
except for impeachment or rebuttal[.]") (emphasis in Court's Order); *see also Lafleur v. Dollar
Tree Stores, Inc.*, Case No.: 2:12-cv-363, 2013 U.S. Dist. LEXIS 205078, at *8 (E.D. Va. Aug.
29, 2013) (Ordering the exclusion of untimely declarations where "Plaintiffs fail[ed] to provide
substantial justification as to why the Declarations were proffered at or after the close of
discovery," and failed to establish why the "late production was harmless.").

[11] Declaration of Andrew Garcia ("Garcia Decl.") ¶¶ 7, 9-10, ECF No. 11-1; Call Center
Marketing Agreement ("Agreement"), attached as **Exhibit 6**; Deposition of SunPath ("SunPath

"behalf" is an improper legal conclusion, which Plaintiff knows. *See* SunPath Dep. at 46:1-4 ("Q. (By Mr. Pelsuo) So you know, the – that's the 'on behalf of' thing again. I understand that, you know, that's sort of a legal conclusion[.]"). Those third parties (and their subcontractors), including American Protection, only market SunPath VSCs on their own behalf.[12]

        3.       Disputed as phrased. Not all of SunPath's revenue is generated through telemarketing.[13] The revenue generated by American Protection was not essential to SunPath's business, and represented a "very small" proportion of SunPath's overall revenue.  SunPath Dep. at 72:16 to 73:3.  Moreover, as here, Plaintiff called American Protection first after she received an advertisement in the mail from American Protection, so this was *inbound* telemarketing.

---

[Dep.") at 79:22 to 80:2 ("Q. [D]id the agreement that SunPath has with American Protection or any third party restrict those parties from offering other companies' products? For example, SunPath's competitors' products? A. No. No. They – they all offer other products."), excerpts attached as **Exhibit 7**.

[12] *See* Agreement ¶ 9 ("[American Protection] is at all times acting as an independent contractor and not as an employee of [SunPath].  Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between [SunPath] and [American Protection]."); Garcia Decl. ¶¶ 9-10, 14-15; Deposition of American Protection ("AP Dep.") at 79:13-22 ("Q. You previously testified that American Protection does not have employees . . . [h]ow does American Protection place telephone calls to potential clients?  . . . A. Who? We work with some subcontractors . . . that are speaking to the consumers."); *id.* at 221:10-13 ("Q. To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself? A. No."), excerpts attached as **Exhibit 8**; SunPath Dep. at 76:7-10 ("Q. To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product?  A. No."); AP Dep. at 226:16-21 (American Protection's subcontractors were paid by American Protection, never by SunPath); *id.* at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q. Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month? A. Yes.  Q. Okay. Who do they that amount to?  A. To [American Protection].  Q. And then does a share of that each month go to SunPath or . . . how does that work? A. No. . . . No. SunPath bills us for the policy."); SunPath Dep. at 35:12-13 (A. "Nobody makes calls on [SunPath's] behalf[.]").

[13] SunPath Dep. at 72:2-9 ("Q. Andrew, you said that 100 percent of the revenue is – is due to sales by third parties because SunPath doesn't sell; right? A. Yes. Q. Is SunPath able to discern what portion any percent of that revenue is generated through any specific type of marketing? A. The specific type of marketing? No.").

8

4.      Undisputed.

5.      Disputed as phrased. American Protection agreed "to actively market" SunPath's VSCs as an independent contractor and "not to solicit the sale of" SunPath's VSCs "anywhere other than . . . in the continental US[.]" *See* Agreement at 1, 7.

6.      Disputed. SunPath never provided American Protection with call scripts, marketing materials, or marketing guidelines.[14]

7.      Disputed as phrased. The Agreement provides that American Protection will "perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of [SunPath] in accordance with [SunPath's] policies and procedures." Agreement at 1.

8.      Disputed. SunPath did not exercise control over what activities American Protection undertook to market SunPath-administered products.[15] Plaintiff's claim that American

---

[14] SunPath Dep. at 67:22-25 (Q. "Has SunPath ever provided call scripts, marketing materials, or marketing guidelines to American Protection? A: No.); AP Dep. at 53:20-24 ("Q. Okay. Did SunPath ever provide any professional material to American Protection? . . . THE WITNESS: No, I don't recall."); *id*. at 54:7-8 ("Q. What [did SunPath] provide? A. The rates of their coverage claims.").

[15] Garcia Decl. ¶¶ 12-14; AP Dep. at 26:1-3 ("Q. Throughout the time you worked with SunPath, were you in regular contact with them? A. No."); *id*. at 38:12-23 ("[D]id SunPath recommend that you use this specific [Customer Relationship Management system]? A. No. . . . Q. Did you provide SunPath with access to that CRM? A: No."); *id*. at 39:9-14 ("Q. Does SunPath have any systems that they provided American Protection with access to? A. No. Q. Does SunPath provide any resources to American Protection? A. No."); *id*. at 43:4-7 ("Q. Okay. Did SunPath ever provide any guidance on telemarketing? A. Whatever is listed within the Seller Agreement with SunPath."); *id*. at 43:17-23 ("Q. Okay. Did SunPath ever provide any training to American Protection? A. No. Q. Does SunPath ever have any seminars, gatherings, or meetings that they would invite American Protection to? A. No."); *id*. at 100:20-22 ("Q. Does SunPath ever provide leads to American Protection? A: No."); SunPath Dep. at 75:6 to 78:17 (SunPath has never offered guidance or training related to how to market or sell its products to American Protection or any other third party); *id*. at 79:22 to 80:2 ("Q. [D]id the agreement that SunPath has with American Protection or any third party restrict those parties from offering other companies' products? For example, SunPath's competitors' products? A. No. No. They – they all offer other products.").

Protection engaged in soliciting sales "on behalf of" SunPath is an improper legal conclusion. SunPath Dep. at 46:1-4. American Protection (and its subcontractors) only marketed SunPath's VSCs on American Protection's own behalf.[16]

9.     Undisputed.

10.     Disputed. American Protection has subcontractors that contact potential clients, including those, like Plaintiff, who called American Protection in response to a mailed advertisement. AP Dep. at 79:13-22.

11.     Denied as phrased. American Protection determines which company's VSC it will offer a consumer once it speaks with the consumer and confirms the consumer's vehicle's characteristics.[17] SunPath's approval or rejection of American Protection's sales was related solely to confirming that the vehicles qualified for coverage after the sale.[18]

12.     Disputed. SunPath does not compensate American Protection in any way— American Protection covered all of its own expenses, and was ultimately compensated under the Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and

---

[16] Garcia Decl. ¶¶ 7, 9-10, 12-15; Agreement ¶ 9; SunPath Dep. at 35:12-13, 76:7-10, 79:22 to 80:2; AP Dep. at 45:25 to 47:8, 60:24 to 61:12, 79:13-22, 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with American Protection" left a voicemail requesting Ms. Smith provide the VIN number for her BMW that had previously been discussed with American Protection), 221:10-13, 226:16-20.

[17] AP Dep. at 32:14-22 ("Q. Once you're in touch with the potential customer, you determine what they're qualified for? A. Yes. Q. Okay. How do you go about doing that? A. Based on the customer's vehicle characteristics, the year, make, model, and mileage.").

[18] *See* AP Dep. at 36:20-37:4 "(Q. Would you ever receive a rationale for why SunPath would have rejected one of American Protection's sales contracts? A. Yes. Q. What would those rationales be? A. It could have been that the title of the vehicle was rebuilt or rebranded. Q. Any other reasons? A. That's most of the – that would be the most.").

whatever price American Protection charged consumers, which was at the sole discretion of American Protection.[19]

13. Disputed. SunPath does not compensate American Protection in any way—American Protection covered all of its own expenses, and was ultimately compensated under the Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged consumers, which was at the discretion of American Protection. Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8, 60:24 to 61:12. In practice, American Protection submitted the wholesale cost of the VSCs to SunPath.[20]

14. Disputed as phrased. SunPath filed with the Florida Department of Financial Services the state-required form disclosing American Protection as a licensed seller of SunPath-related service contracts in Florida.[21]

15. Disputed as phrased. SunPath's approval or rejection of American Protection's sales was related solely to whether the vehicles qualified for coverage. AP Dep. at 36:20-37:4.

---

[19] Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q. Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month? A. Yes. Q. Okay. Who do they pay that amount to? A. To [American Protection]. Q. And then does a share of that each month go to SunPath or . . . how does that work? A. No. . . . No. SunPath bills us for the policy.").

[20] AP Dep. at 63:23-64:7 ("Q. I'm trying to understand. If I understand this correctly, American Protection is required to hold the product seller cost in trust on behalf of SunPath after they make the sale. . . . A: It is my understanding that American Protection would submit the cost of the product to SunPath.").

[21] SunPath Dep. at 30:17-24 ("Q. Do you have any knowledge of – of what a licensee appointment in this context means and why SunPath would be listed? A. Yes. Q. Can you explain that to me? A: Because Florida requires that they be appointed to sell there if they want to sell products in Florida."); *see also* Fla. Stat. § 634.171 ("Salesperson to be licensed and appointed.—Salespersons for motor vehicle service agreement companies and insurers shall be licensed, appointed, renewed, continued, reinstated, or terminated as prescribed in chapter 626 for insurance representatives in general. . . . No employee or salesperson of a motor vehicle service agreement company or insurer may directly or indirectly solicit or negotiate insurance contracts, or hold herself or himself out in any manner to be an insurance agent, unless so qualified, licensed, and appointed therefor under the Florida Insurance Code.").

**JA1011**

16.     Disputed. American Protection would communicate with Joe Abrahms from SunPath once a month at most regarding business matters, product information, product pricing, and claim information.[22] American Protection would communicate with Larry Lowe at SunPath weekly regarding customer claims.[23]

17.     Undisputed.

18.     Undisputed.

19.     Undisputed.

20.     Undisputed.

21.     Disputed. SunPath objects to Plaintiff's reliance on the Five9 records and her declaration. During discovery, Plaintiff only produced hearsay evidence claiming that she received 54 calls from American Protection between May 26, 2020 and June 9, 2020.[24] Plaintiff never produced any call records or invoices from her wireless carrier, AT&T, evidencing any of these calls. Moreover, even if every row in the inadmissible Five9 spreadsheets represented a phone call, many of the 172 "calls" Plaintiff claims to have "received" were zero seconds in duration, which makes it impossible to understand how such a "call" would have been

---

[22] AP Dep. at 27:5-14 ("Q. Okay. Mr. Joe Abrahms, what would you typically communicate with him about? A: Just business matters, product information, product pricing -- Q: Okay. Can you tell me how frequently -- A. – claim information. Q. Okay. Can you tell me how frequently you would say you have talked with him? A. Maybe once a month or so, maybe even less frequently.").

[23] *Id*. at 27:15-22 ("A. Okay. And Mr. Lowe, how often would you say you spoke with him? A. More regularly. Q. Daily, weekly? A. Weekly. Q. And what would you talk to Mr. Lowe about? A: Clients' claims.").

[24] Plaintiff's First Supplemental Discovery Responses at 2-6, dated November 11, 2022 (listing 54 calls Plaintiff claims to have received), attached as **Exhibit 9**.

"received," and many of the "calls" from American Protection were not for the purpose offering or advertising *any* property, goods, or services.[25]

      22.    Undisputed that Plaintiff first called American Protection on May 26, 2020[26] after it mailed her an advertisement on May 22, 2020. [27] SunPath objects to Plaintiff's reliance on her declaration and the Five9 records.

      23.    Undisputed that that call occurred. SunPath objects to Plaintiff's reliance on her declaration and the Five9 records.

---

[25] AP Dep. at 183:10-184:15 (playing a recording of a voicemail Plaintiff allegedly received from American Protection stating "[t]his is Dawn with American Automotive Protection Corp . . . it's important that you give us a call back so we can confirm your information for the file . . . Q. Do you recognize that voice? A. Yes. Q: Can you tell me who that is? A: Her name is Dawn. Q. Do you know her last name? A. Coletta"); *id*. at 185:7-8 (A: "Dawn is . . . a back office or admin type of a role."); *id*. at 197:15-200:11 (Q. "[Y]ou had said that Dawn worked on the – the backend of American Protection. Is that how you described her position? A. Yes. Q. And does that mean Dawn would have only been making calls to someone who was already a customer or who had already expressed interest in purchasing a product from American Protection? . . . A. Yes. . . . Q. Would Dawn be making any kind of sales calls at all? . . . A. No."); Five9 records summary, ECF No. 74-7 (SunPath maintains that these records are in admissible but notes the records list "dcoletta@americanprotectioncorp.com" in the agent column for 78 of the entries).

[26] While Plaintiff claimed not to remember making such a call, *see* Smith Dep. at 167:20 to 170:21, SunPath notes here that the inadmissible Five9 data appears to corroborate American Protection's testimony that Plaintiff first made a call to American Protection four days after she was sent a direct mail advertisement, and before American Protection made any calls to Plaintiff. That is, while there is much in the Five9 data that is difficult or impossible for a layperson with no personal knowledge about the meaning of the data to ascertain, the very first instance of Plaintiff's phone number in the produced records is in a row of data in which the word "INBOUND" is used on the day at issue.

[27] AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *id*. at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); Screenshots of American Protection CRM system, attached as **Exhibit 10** (reflecting Ms. Smith was sent "Direct Mail" on 5/22/2020 and responded on 5/26/2020); Smith Dep. at 92:10-18 ("Q. And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A. Yeah, I was trying to determine who was trying to contact me."); AP Dep. at 180:10-20.

24.     Disputed. SunPath's name was not in the email Plaintiff received after she made her second inquiry regarding American Protection's products; as Plaintiff testified, she received an email from American Protection that did not contain any reference to SunPath, and did not see SunPath's name at all until clicking a separate link in the email that then re-directed Plaintiff to American Protection's webpage. It was on this webpage where a SunPath VSC was listed.[28]

25.     Undisputed she sent the identified email, which speaks for itself.

26.     Disputed. SunPath objects to Plaintiff's sole reliance on her declaration and the Five9 records. Plaintiff lacks any admissible evidence to prove this claim is a fact.

27.     Disputed. SunPath objects to Plaintiff's sole reliance on her declaration and the Five9 records. Plaintiff lacks any admissible evidence to prove this claim is a fact.

28.     Disputed. An EBR was formed between Plaintiff and American Protection through Plaintiff's May 26, 2020 call to American Protection. *See* Memo at 12-13. This provided American Protection with permission to call Plaintiff.[29] Consent was further received through Plaintiff providing her credit card information and agreeing to the terms of a sale.[30]

29.     Undisputed; SunPath never called Plaintiff.

30.     Disputed. SunPath disputes that American Protection solicited Plaintiff a SunPath VSC as SunPath's name was not mentioned during the calls at issue. American Protection sold multiple companies' products and was unaware of what product would be offered until the

---

[28]Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), attached as **Exhibit 11**.
[29] *See* AP Dep. at 81:24 to 82:3, 199:17-20; Screenshots of American Protection CRM system; Smith Dep. at 92:10-18; AP Dep. at 180:10-20.
[30] AP Dep. at 199:17-20 ("A. [P]laintiff gave us a credit card number and agreed to the terms of the sale, so as far as Dawn, she had written consent from a customer of ours.").

14

**JA1014**

consumer provided his or her vehicle information.[31] Plaintiff mischaracterizes her deposition testimony in attempting to establish that "SunPath" was said on a call. But the full context of Plaintiff's testimony shows that her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls.[32] Yet her notes never mention SunPath. *See* Plaintiff's notes (Bates labeled SMITH000031-36), attached as **Exhibit 12**. Plaintiff's claim about what Ms. Jaeger may have said on the call is inadmissible hearsay. It was only later, when American Protection emailed her a link to one of its websites, that she learned of SunPath's name.[33] Moreover, the sales script American Protection used does not mention SunPath's name. *See* **Exhibit 13**. Thus, it is undisputed that SunPath's name was never mentioned on any of the calls at issue.

SunPath disputes the relevance of what American Protection did when SunPath rejected a consumer for coverage. The only record evidence is that **Plaintiff rejected** a VSC she had been offered by American Protection. *See* Plaintiff's June 11, 2020 email, attached as **Exhibit 14**. Plaintiff never purchased a SunPath VSC. *See* Statement of Uncontested Facts ¶ 12, ECF No. 56.

---

[31] AP Dep. at 74:1-5 ("Q. . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call? A. No."); *id.* at 32:9 to 33:16 (when American Protection spoke with any consumer, he or she would first need the consumer's vehicle information before determining what products they qualified for).

[32] *See* Smith Dep. at 52:12-19; 53:9-54:2; 54:5-6 (Q. "The next line of that paragraph and the final line says, 'Further, the caller solicited plaintiff to purchase SunPath's vehicle service contracts.' Can you describe how the caller solicited you to purchase SunPath's vehicle service contract. A. I would have to – for the exact information, **I would have to refer to my notes**. . . . Q. Why would you have to refer to your notes? A. For the exact language. Q. Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A. Based on my memory, they gave the name of the company and what they were – what they were – I think what they were selling. Q. When you say the name of the company, what was the name of the company? A: SunPath. Q. You say that they used the word 'SunPath' as the name of the company, not another company's name? . . . A. **I would have to refer to my notes for exactly what the…**") (emphasis added).

[33] *See* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (American Protection email containing a link that re-directed to American Protection's webpage); Smith Dep. at 206:1 to 208:1.

31.     Undisputed.

## III.   ARGUMENT

### A.  72 of the Calls at Issue Did not Violate the VTPPA

The calls at issue can be split into four groups. Group One contains the six calls occurring from May 26-28, 2020. Group Two contains the 50 "calls" (or inadmissible Five9 spreadsheet entries) that occurred between May 28, 2020 and June 11, 2020, which Plaintiff concedes did not violate the VTPPA. *See* Memo at 12-13. Group Three contains the 66 "calls" that occurred from June 11, 2020-July 11, 2020. Group Four contains the 50 "calls" that occurred after July 11, 2020. The Group One calls did not violate the VTPPA due to an existing EBR between Plaintiff and American Protection. The Group Three "calls" did not violate the VTPPA because they occurred during the applicable 30-day safe harbor period. Plaintiff lacks any admissible evidence showing that the Group Three and Four "calls" actually occurred.

### 1.   The Group One Calls Did Not Violate the VTPPA.

Count II of Plaintiff's Complaint alleges violations of Va. Code § 59.1-514(B) for making "telemarketing solicitation call(s)" to phone numbers on the National Do Not Call Registry.  *See* Compl. ¶¶ 47-54.  The VTPPA defines a "telephone solicitation call." Va. Code § 59.1-510. Va. Code § 59.1-514(D) excludes from the definition of "telemarketing solicitation call," calls made to those "(ii) with whom the person on whose behalf the telephone call is made has an established business relationship[.]" Thus, calls to people with whom the caller has an EBR are not "telemarketing solicitation calls," by definition.

The VTPPA's EBR exception provides that a call is not considered a "telemarketing solicitation call" if the party is making a call to a consumer within three months after the consumer's last inquiry.  Va. Code § 59.1-510 (defining an "established business relationship").

16

**JA1016**

47 C.F.R. § 64.1200(f)(5) explains that an EBR is "formed by a voluntary two-way communication" between the consumer and company.[34]

There is no dispute that Plaintiff made a voluntary inquiry to American Protection regarding the products it sold by calling American Protection on May 26, 2020.[35] This created an EBR that permitted American Protection to call Plaintiff back for a three-month period because such calls are not "telephone solicitation calls," and therefore do not present actionable claims under Va. Code § 59.1-514.[36] The EBR remained in place until June 11, 2020, when Plaintiff made her first and only do-not-call request to American Protection.[37]

Accordingly, SunPath, not Plaintiff, is entitled to summary judgment for the six Group

---

[34] The voluntary two-way communication between Plaintiff and American Protection occurred in one of two ways: First, American Protection sent a direct mailer to Plaintiff, then Plaintiff voluntarily called American Protection on May 26, 2020. Second, *even if* Plaintiff fails to recall that this is what prompted her to call American Protection in the first place, Plaintiff still concedes that she voluntarily called American Protection on May 26, 2020, and American Protection then returned her call. Either way, by Plaintiff first calling American Protection, there was a reasonable "expectation on the part of [Plaintiff] that" American Protection would return her call. *See Rules and Regulations Implementing the Telephone Consumer Protection Act*, 68 FR 44144-01, 44159 (2003).

[35] *See* Memo at 6; *see also* AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *see id.* at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); *see also* Screenshots of American Protection CRM system (reflecting that Ms. Smith was sent "Direct Mail" on 5/22/2020); Smith Dep. at 92:10-18 ("Q. And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A. Yeah, I was trying to determine who was trying to contact me.").

[36] Decisions regarding the TCPA's EBR exception likewise show that the existence of the EBR exempts analogous federal do-not-call claims. *See, e.g., Rowan v. US Dealer Servs., Inc.*, Civ. No. 21-09945 (KM)(LDW), 2022 U.S. Dist. LEXIS 127153, at *13-14 (D.N.J. July 18, 2022), *appeal dismissed*, No. 22-2522 (3rd Cir. Nov. 21, 2022) (granting summary judgment in favor of TCPA defendant because the calls at issue were made pursuant to an established business relationship with a related business that was not a party to the case); *Thomas-Lawson v. Koons Ford of Balt., Inc.*, Civil Case No. SAG-19-3031, 2020 U.S. Dist. LEXIS 59517, at *12-13 (D. Md. Apr. 6, 2020) (dismissing TCPA claims for failure to plead calls were actionable "telephone solicitations" due to existing EBR).

[37] *See* Plaintiff's June 11, 2020 Email.

One calls that occurred during the EBR period (i.e. between May 26, 2020 and May 28, 2020). Those calls were not "telephone solicitation calls" and are not actionable under the VTPPA's do-not-call provision as a matter of law.

### 2.  Group Three "Calls"

The Group Three "calls" occurred in the 30 days after Plaintiff sent her June 11, 2020 do-not-call request to American Protection. American Protection is entitled to 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision. The 66 "calls" in Group Three occurred during the 30-day safe harbor. Therefore, they did not violate the VTPPA.

The VTPPA does not explicitly prescribe how long a company has to implement a do-not-call request. 47 C.F.R. § 64.1200(d)(3) provides the applicable guidance.[38]   47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision requires that do-not-call requests be honored within a reasonable period of time, not to "exceed **thirty days** from the date of such request." (emphasis added). Plaintiff's June 11, 2020 email to American Protection highlights why the 30-day safe harbor exists. Do-not-call requests are often not made in an automated fashion. They can be received any time of day and in a variety of forms. The company receiving such requests needs an opportunity to process them. The 30-day safe harbor provision provides that opportunity.

---

[38] *See* Va. Code § 59.1-514(B) (incorporating 47 C.F.R. § 64.1200, which provides in subsection 64.1200(d)(3) that an entity making calls for telemarketing purposes must honor a do-not-call request within 30 days); *see also Bryant v. King's Creek Plantation, LLC*, No. 4:20-cv-00061, 2020 U.S. Dist. LEXIS 226044, at *8-9 (E.D. Va. June 22, 2020) (noting that the VTPPA is analogous to the TCPA's DNC provision, comparing 47 C.F.R. § 64.1200(c)(2) with Va. Code § 59.1-514(B)); *Hamilton v. Spurling*, Case No. 3:11cv00102, 2013 U.S. Dist. LEXIS 38585, at *34 n.12 (S.D. Ohio Mar. 20, 2013) ("[A]s the FCC report points out, it is not until a person who has an EBR with a telemarketer requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200.") (citation omitted).

Courts have held that calls occurring within the 30-day safe harbor are not actionable.[39] Neither the VTPPA nor 47 C.F.R. § 64.1200 provides that a party can be held liable for calls occurring during 30-day safe harbor. SunPath, not Plaintiff, is entitled to summary judgement for the Group Three "calls" since they all occurred during the applicable 30-day safe harbor.

### 3. Group Three and Four "Calls"

There are 116 "calls" in Groups Three and Four for which Plaintiff seeks to hold SunPath liable.[40] Plaintiff has no personal knowledge or admissible evidence of those calls. *See supra* Section II.A. The Five9 records are the *only* evidence supporting Plaintiff's claim that she received those "calls."[41] But the Five9 records are inadmissible. There are no witnesses that can offer admissible testimony relating to the Five9 records. *Id.* Thus, Plaintiff lacks any admissible evidence that she even received the "calls" in Groups Three and Four. In addition to lacking such evidence, Plaintiff crucially cannot even prove these 116 "calls" were "telephone solicitation calls" as defined by the VTPPA. *See* AP Dep. at 183:10-184:15, 185:7-8, 197:15-200:11. SunPath, not Plaintiff, is entitled to summary judgment for those 116 "calls."

### B. SunPath Is Not Jointly or Severally Liable for any VTPPA-Violating Calls.

Plaintiff's Motion fails to show that SunPath can be held jointly or severally liable for any VTPPA-violating telephone solicitation calls at issue. Plaintiff, in relying on a number of

---

[39] *See Orsatti v. Quicken Loans, Inc.*, 2:15-cv-09380-SVW-AGRa, 2016 U.S. Dist. LEXIS 182873, at *19 (C.D. Cal. Sept. 12, 2016) (referring to 47 C.F.R. § 64.1200(d)(3) as a "safe harbor provision" and holding that calls occurring within the 30-day "safe harbor provision of the FCC regulation [do] not constitute a cause of action."); *see also Mattson v. Quicken Loans, Inc.*, Case No. 3:18-CV-00989-YY, 2018 U.S. Dist. LEXIS 180737, at *6 (D. Or. Oct. 22, 2018) (holding that "[a]llegations of calls **beyond** the 30-day safe-haven have been held to be sufficient to state a claim") (emphasis added).

[40] For the reasons described above, SunPath disputes that these are properly classified as "calls." *See supra* Section II.A. They are unidentified data records.

[41] As they relate to the 116 "calls," Plaintiff's improper declaration and the pertinent portion of Plaintiff's untimely Third Supplemental Discovery Responses to SunPath's Discovery Requests rely solely on the inadmissible Five9 records.

19

irrelevant "facts," never establishes that any VTPPA-violating call at issue was made by American Protection on behalf of, or for the benefit of, SunPath. Therefore, it is never proven that SunPath is a "seller" as defined by the VTPPA. Instead, the facts show that no SunPath-related VSC was ever offered on any call to Plaintiff. Even if SunPath was considered a "seller" to which Va. Code § 59.1-514.1(B)'s presumption applies, SunPath can overcome this presumption because it had no affiliation with or knowledge of the calls to Plaintiff at issue here, if they ever occurred. Therefore, SunPath, not Plaintiff, is entitled to summary judgment.

### 1. SunPath's Property, Goods or Services Were not Offered to Plaintiff on Any Call.

The VTPPA's "seller" definition and presumption are **contingent** on the seller's "property, goods, or services" being offered or advertised **during** the subject telephone solicitation calls. *See* Va. Code §§ 59.1-510; 59.1-514.1. They have broad application in cases where a seller outsources its telemarketing sales operations to a dedicated third-party marketing company that exclusively sells that seller's products. This is typically the case where the seller provides the scripts the call center should use, monitors the third-party's operations as if they were its own, and exercises control over the call center.  But they become far more tenuous in cases, like this -- where the independent seller controls its own operations and independently resells the products of various competitors after purchasing them wholesale.[42]  Therefore,

---

[42] The VTPPA is not designed or intended to extend liability to companies whose products are sold by a telephone solicitor that also sells products from other companies. This is demonstrated by Va. Code § 59.1-512 which requires a telephone solicitor to identify "the name of the person on whose behalf the telephone solicitation call is being made[.]" If a telephone solicitor's calls are made on behalf of every company whose products it could potentially sell on the call, the telephone solicitor would have to name each individual company whose products it may ultimately sell in order to comply with Va. Code § 59.1-512. This is an unreasonable construction. It must be that a telephone solicitor reselling other companies' products in its own name only makes a telephone solicitation call on its own behalf.

whether a company's name is stated on the telephone solicitation call is imperative to determining whether a company's product was *offered or advertised on the call*.

There is no material factual dispute that SunPath's name was never mentioned on any *call* between American Protection and Plaintiff.[43] Plaintiff's mischaracterizing of her own testimony creates no dispute. The first time Plaintiff ever saw (and crucially, not heard) SunPath's name was when she received an email from American Protection after inquiring about *American Protection*'s products, and then took an additional step to click a hyperlink in that email. At that point, she was re-directed to *American Protection*'s website. There, she finally saw that a SunPath-related VSC was available for purchase based on the specifications of her vehicle that she had provided to American Protection. Thus, Plaintiff did not even *see*—not hear—SunPath's name until she was two steps removed from her call with American Protection. Nowhere does the VTPPA provide that a liability determination can be made by reviewing after-the-fact email correspondence and weblinks exchanged well after a call ends. The plain and unambiguous language of the VTPPA's seller definition and presumption shows that their applicability is determined solely based on what occurs during the call, not after.[44] Since there is

---

[43] As Plaintiff stated at deposition, her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls, yet **her notes never mention SunPath**—nor was SunPath's name contained in American Protection's sales script or the email Plaintiff received. *See* Smith Dep. 53:9 to 54:6 (Plaintiff's recollection of the calls is contained in her call notes); *see also* Plaintiff's Notes (Bates labeled SMITH000031-36, which contain no reference to SunPath); AP Dep. at 234:2-6 ("Q: Is it correct that, in [American Protection's sales script], as written, SunPath's name isn't mentioned in the sales script or on the – the cover of the – the script at all?  A: Correct."); Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage.

[44] *See Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712, 716 (E.D. Va. 2008) ("[I]n Virginia, where . . . a statutory term is plain and unambiguous, there is no need for judicial construction; the language will be applied as written.") (internal quotations omitted).

no evidence that a SunPath product was ever offered or advertised to Plaintiff on any call at issue, VTPPA's seller definition and presumption cannot apply to SunPath.[45]

### 2. Plaintiff Lacks Evidence that the Calls at Issue That Occurred After June 9, 2020 Were VTPPA-Violating "Telephone Solicitation Calls."

The VTPPA's definition of "telephone solicitation call" requires the call to be "for the purpose of offering or advertising any property, goods, or services for sale[.]" Va. Code § 59.1-510. Plaintiff lacks evidence showing that any "call" at issue she received after June 9, 2020 was for such purpose. Plaintiff lacks personal knowledge relating to "calls" at issue she now allegedly received after June 9, 2020. *See supra* Section II.A. American Protection did not provide any testimony relating to the context of "calls" that occurred after June 9, 2020, and Plaintiff never even knew they existed (if they ever did) until Five9's unexplained data dump appeared in the case late in discovery. Plaintiff cannot prove those "calls" were "telephone solicitation calls."[46] Plaintiff's lack of evidence precludes her entitlement to summary judgment.

### 3. SunPath is not a "Seller" as Defined by the VTPPA.

SunPath cannot be considered a "seller" under the VTPPA, and therefore cannot be subjected to joint and several liability for American Protection's actions. Per Va. Code § 59.1-510, "'Seller' means any person on whose behalf or for whose benefit a telephone solicitation

---

[45] When the calling party is offering products from multiple companies, it further requires that liability be determined at the time a call is made, not after. If not, it results in liability being assigned by luck of the draw: If SunPath were to be held liable in this case, it would only be because SunPath was the unlucky party whose VSC happened to be the best match for Plaintiff. This is illogical. It cannot be the Virginia Legislature's intent for seller liability to be determined by something as arbitrary as the year, make, model, or mileage of a person's vehicle.

[46] The fact that at least one call was made only for information-collection purposes prevents Plaintiff from being able to establish which calls were actually "telephone solicitation calls." *See* AP Dep. at 183:10-184:15, 185:7-8, 197:15-200:11; *see also In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 (2006) (Communications are not advertisements when their "purpose is to facilitate, complete, or confirm a commercial transaction [] the recipient previously agreed to[.]").

call offering or advertising the person's property, goods, or services is made or initiated." Due to Va. Code § 49.1-514.1(A)'s use of the term "seller," it is Plaintiff's burden to prove that term applies to SunPath before Va. Code § 59.1-514.1(B)'s rebuttable presumption applies. But Plaintiff cannot do so because the factual record in this case is clear that any of the calls at issue were not "on behalf of," or "for the benefit of," SunPath.

Most obviously, SunPath is not a seller because it does not sell anything.  SunPath is the administrator of VSCs: it administers and pays for covered claims customers make under their SunPath-administered service contracts.  SunPath does not sell the VSCs it administers—its products are sold by third-party sellers, much like auto manufacturers' cars are sold by independent dealers.[47]

More specific to the VTPPA's definition of the term, SunPath does not benefit from any specific sales American Protection makes via its own marketing efforts.  American Protection purchased the SunPath VSCs at wholesale and was ultimately compensated under the Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged its consumers at retail.  This latter price was set at American Protection's sole discretion.[48]  Moreover, Plaintiff has never purchased a VSC administered by SunPath, so it certainly received no benefit from any calls made to Plaintiff, regardless of how the term "benefit" is construed.

Furthermore, American Protection did not make any calls "on behalf" of SunPath.  In fact, the record shows that subcontractors American Protection hired, and who had no

---

[47] Garcia Decl. ¶¶ 4, 7.

[48] Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q. Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month?  A. Yes.  Q. Okay. Who do they that amount to?  A: To [American Protection].  Q. And then does a share of that each month go to SunPath or . . . how does that work? A. No. . . . No. SunPath bills us for the policy.").

relationship with SunPath,[49] made the calls at issue to sell the products marketed by American Protection, the only "seller" in this case. SunPath has no relationship whatsoever with the subcontractor(s) responsible for making any call to Plaintiff, and is a further step removed from any telephone solicitations that may be governed by the VTPPA.

There is no factual dispute that American Protection's subcontractors did not know what company's products would be offered to any consumer when a call was received or made:  The product being offered—whether a SunPath-related product or a competitor's—was not determined until after a consumer provided information related to his or her vehicle.[50]  Much like a grocery store is not acting "on behalf" of every company whose products line its shelves, and a bar is not acting "on behalf of" every brewery whose beer is on tap, American Protection could not be considered to be acting "on behalf of" SunPath or any other party whose products it sold.  *See Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D. Md. Aug. 4, 2022) (dismissing analogous TCPA claims on a motion for summary judgment because "[a]t best, Hound Energy and AGR were responsible for independently soliciting customers for Discount Power, not for 'act[ing] on the principal's behalf

---

[49] *See* AP Dep. at 79:13-22 ("Q. You previously testified that American Protection does not have employees . . . [h]ow does American Protection place calls to potential clients?  . . . A. Who? We work with some subcontractors . . . that are speaking to the consumers."); *id*. at 221:10-13 ("Q. To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself?  A. No."); SunPath Dep. at 76:7-10 ("Q. To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product?  A. No."); AP Dep. at 226:16-20 (American Protection's subcontractors were paid by American Protection, never by SunPath).

[50] *See* AP Dep. at 74:1-5 ("Q. . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call?  A. No."); *id*. at 32:9 to 33:16 (when American Protection spoke with any consumer, they would first need the consumer's vehicle information before determining what products they qualified for).

and subject to the principal's control.'") (internal citations omitted).[51] The fact that the Agreement contemplated that American Protection would market SunPath's products is of no consequence. It is clear that *American Protection*, not SunPath, is the party on whose behalf the calls were being made because American Protection's subcontractors announced this on voicemail recordings Plaintiff produced.[52]   There is no dispute that American Protection is the only party that tried to sell anything in this case, and it did so as an independent contractor, as provided by the terms of the Agreement, and for its own benefit.

Accordingly, SunPath is not considered a "seller" under the VTPPA.  Because any joint liability pursuant to Va. Code § 59.1-514.1 is conditioned on the non-calling party's status as a seller, Plaintiff is not entitled to summary judgment.

> **4.   The Factual Record Supports that SunPath Had No Connection to any Allegedly Unlawful Calling Practices that Could Subject it to Joint Liability Under the VTPPA's Rebuttable Presumption.**

The foregoing establishes that Va. Code § 59.1-514.1(B)'s seller presumption does not apply to SunPath here.  But even if this presumption did apply to SunPath, it is rebutted.  The presumption is rebutted by "clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's

---

[51] *See also*, *e.g.*,  *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 365  (N.D. Ind. 2021) (citing *Carlisle v. Deere & Co.*, 576 F.3d 649 (7th Cir. 2009)) (finding that a dealer is not an agent of the manufacturers of the products it sells, especially when the dealer sells multiple brands); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 527-28 (N.D.W. Va. 2016) (granting summary judgment because "the mere fact that a dealer uses a suppliers name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise."); *Makaron v. GE Sec. Mfg.*, CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *19-20 (C.D. Cal. May 18, 2015) (granting motion for summary judgment due to lack of actual agency despite license to use trademarks and logos because applicable contracts indicated the dealers were independent contractors).

[52] *See* AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with *American Protection*" left a voicemail for Plaintiff).

benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent." Va. Code § 59.1-514.1(B).

The Agreement between SunPath and American Protection states that "[American Protection] . . . shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties." Agreement at ¶ 30.[53]

As discussed above, a "telephone solicitation call" under the VTPPA excludes calls made pursuant to an EBR. Va. Code § 59.1-514(D). The definition also excludes calls made with the person's prior express invitation or permission to be called. *Id.* Therefore, if American Protection was engaged in making "telephone solicitation calls" as defined by the VTPPA, i.e., not within either of these exceptions, it was acting *outside the scope* of its contractual authority by violating the VTPPA without SunPath's knowledge and contrary to its contractual commitments to SunPath. Moreover, the VTPPA's provision regarding joint liability only applies to "prohibited acts," (*see* Va. Code § 59.1-514.1 titled "Joint Liability of seller and telephone solicitor for *prohibited acts*; rebuttable presumption.") (emphasis added), which again would be outside the scope of American Protection's authority under the Agreement.

In other words, pursuant to the express terms of the Agreement, there was no scenario in which SunPath authorized American Protection to make "telephone solicitation calls" or engage

---

[53] A duty to comply with the VTPPA or the analogous TCPA can be delegated to independent contractors. *See Mantian Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815, 819 (E.D. Va. 2011); *see also Worsham*, 2022 U.S. Dist. LEXIS 139580, at *18; *Simmons v. Charter Commc'ns., Inc.*, 222 F. Supp. 3d 121, 137 (D. Conn. 2016) ("there is no better way to ensure compliance with the TCPA than to include such compliance as an essential term of the contract.").

26

in any "prohibited acts" that could subject it to joint liability under the VTPPA.   Indeed, another court very recently ruled on summary judgment that SunPath could not be held liable for a third-party seller's actions allegedly made in violation of the TCPA, because any unlawful conduct was explicitly prohibited under the applicable agreement, and therefore was not authorized by SunPath.  *See Black v. SunPath Ltd.*, Case No. 3:21-cv-00023, 2022 U.S. Dist. LEXIS 165799, at *9-10 (M.D. Tenn. Sep. 14, 2022), *appeal dismissed*, No. 22-5927 (6th Cir. Dec. 27, 2022) ("By relying on the formal contract between the parties, without any additional evidence of a broader, implicit understanding between SunPath and [an independent third-party seller], [Plaintiff] has placed herself in the difficult position of trying to establish authority to perform an act based on an agreement that clearly and emphatically forbids that act under any circumstances.") (citing *Kern v. VIP Travel Servs.*, Case No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139, at *19 (W.D. Mich. May 10, 2017)).

Beyond the plain language of the Agreement, the record is clear that SunPath has no knowledge that American Protection ever undertook to make unlawful "telephone solicitation calls."  In SunPath's investigation relating to Plaintiff's claims in this case, SunPath requested information from American Protection, to which American Protection responded by insisting it did not violate any telemarketing laws in association with Plaintiff's claims.[54]   American Protection testified at deposition that it only made calls to potential customers that had requested to be contacted by American Protection, either by providing consent to be called via a website,

---

[54] *See* SunPath Dep. at 73:14 to 74:15 (American Protection represented to SunPath's in house counsel that American Protection did not violate any telemarketing laws that are at issue in this case); *see* SunPath's Discovery Responses at 5-6 (Answer to Interrogatory 6), attached as **Exhibit 15**.

or, as in Plaintiff's case, via first calling in themselves *to* American Protection.[55]  SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred before the calls to Plaintiff, is not aware of any instance in which American Protection was found to have violated any law involving telemarketing, and has at no point authorized American Protection to violate any laws involving telemarketing or ratified any conduct by American Protection that may have violated any telemarketing laws.[56]

Based on this record—when the alleged unlawful calls were made "without the seller's knowledge or consent"—summary judgment in favor of Plaintiff is improper.  *See Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 253 (4th Cir. 2018) (granting summary judgment for defendants in part because the record showed defendants repudiated any allegedly unlawful acts by third-party telemarketers); *see also Black*, 2022 U.S. Dist. LEXIS 165799, at *12-13 (granting

---

[55] *See* AP Dep. at 77:17-25 ("Q. Does American Protection ever place telemarketing calls to consumers that it hasn't previously sent a mailer to?  A. We only contact prospects that have requested information about those services . . . we have no interest in just contacting folks that have no interest in our products."); *id.* at 84:15 to 85:4 ("Q. How does American Protection ensure that individuals that it's placing calls to have provided prior express consent?  . . . A. I mean I review to make sure that the proper opting language is present, that our name is clearly stated, that the consumer understands they will receive a call from us, and that it authorizes us, to receive a call . . . within the means we would be using."); *see also id.* at 138:23 to 139:23 (Q. "Is it fair . . . to say that [American Protection's] subcontractors place calls on behalf of American Protection to solicit sales of vehicle service contracts? A. No, we don't . . . We return requests for contacts from potential customers.  We don't just solicit . . . and call.  We have folks that are calling and requesting information, and in some cases, we reach out to people with requested information."); *id.* at 195:25 to 196:20 (American Protection's business practices are only to call people who have "opted-in," meaning they "requested to be contacted from [American Protection], specifically . . . either via online, via a website, or via calling in.").

[56] *See* SunPath's Supplemental Response to Plaintiff's Discovery Requests at 3, attached as **Exhibit 16**; *see also* SunPath Dep. at 81:5-10 ("Q: [D]o you have any knowledge at all of American Protection being accused of telemarketing violations prior to the calls that are at issue in this case that Ruth Smith has filed against SunPath? A: No."); *id.* at 81:19 to 83:3 (SunPath has never directed or authorized American Protection to violate the TCPA, VTPPA, or any other laws governing telemarketing, or ratified any conduct by American Protection that may have violated any laws involving telemarketing.); AP Dep. at 234:16 to 237:5 (same).

28

SunPath summary judgment because there was no evidence that SunPath had knowledge of and subsequently ratified any allegedly unlawful calling practices of a third party seller).

Plaintiff's contentions that "SunPath approved hundreds of contracts" sold by American Protection and communicated with American Protection "frequently regarding various matters" are incorrect and/or irrelevant. Memo at 15. SunPath's approval of American Protection's sales was related only to whether *the subject vehicle* qualified for coverage. *See* AP Dep. 36:20-37:4. SunPath's approval or rejection of sales was completely unrelated to whether American Protection's sales call was lawful. SunPath's "frequent" communications with American Protection were related existing customer claims, not sales. *Id.* at 27:15-22.

For the foregoing reasons, even if Va. Code § 59.1-514.1's presumption of joint liability could apply to SunPath, the factual record supports via clear and convincing evidence that none of the calls at issue in this case were made on behalf of SunPath, and SunPath has no knowledge of and has not consented to any party making unlawful telemarketing calls. Accordingly, SunPath, not Plaintiff, is the one entitled to summary judgment.

## IV.    CONCLUSION

WHEREFORE, Defendant SunPath requests that this Court deny Plaintiff's Motion for Partial Summary Judgment and grant SunPath's Motion for Summary Judgment.

Dated: January 18, 2023

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Joseph P. Bowser*
Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
mroth@rothjackson.com

*Counsel for SunPath, Ltd.*

**JA1030**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused Defendant SunPath, Ltd.'s Response in Opposition to Plaintiff's Motion for Partial Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on January 18, 2023.


<u>/s/ *Joseph P. Bowser*  </u>
Joseph P. Bowser

**JA1031**

# EXHIBIT 1



# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1   review them before they were served?

2           MR. SMITH:  Objection, asked and

3   answered.  Also vague.

4           You can answer.  Any time I don't

5   instruct you, you can answer the question.

6       A   So you asked me if -- could you restate

7   the question?

8   BY MR. CAFFAS:

9       Q   These supplemental interrogatory

10  responses that we're discussing, these were served

11  on November 11, 2022.  Today is December 2, 2022,

12  so it was just a few weeks ago.  You had said

13  before that you reviewed these supplemental

14  interrogatories and verified them prior to them

15  being served, correct?

16      A   Yes, I reviewed.  To the best of my

17  knowledge, this is correct, yes.

18      Q   So just a couple weeks ago on November

19  11, you verified the information that we're

20  discussing that the caller did not identify

21  himself by their first and last name, right?

22      A   Yes.  I reviewed the document to the

1   best of my knowledge, yeah.

2        Q   Did you review the notes that you're

3   referring to that were sent to your counsel when

4   you verified these interrogatory responses?

5        A   I believe I did, yes.

6        Q   And you're saying now that you can't

7   remember what those notes said at all?

8        A   I generally remember, but not

9   specifically.  That's why I would have to refer to

10  them.

11       Q   And if the name of the caller was

12  included in those notes, is there a reason why you

13  didn't include it in your supplemental

14  interrogatory response?

15       A   So I defer to my counsel.

16       Q   You defer to your counsel on what?

17       A   On how the document was prepared.  Or I

18  rely on my counsel.  Excuse me.

19           MR. SMITH:  He's just asking if you had

20  the name, would you have included it in the

21  response?

22       A   So if I specifically had the name for

1    this particular call, would I have provided a

2    response?  Yes.

3    BY MR. CAFFAS:

4         Q    So then can I take it to -- so can I

5    understand that if you reviewed these notes two

6    weeks ago and didn't provide a name in the

7    response, then you don't know the name?

8         A    I would have to go back through my notes

9    specifically.

10        Q    So do you not know whether the name was

11   in your notes or not?

12        A    For this -- for this particular -- for

13   this particular number, the (410) 844-6327?

14        Q    Yes.  I'm referring to the same sentence

15   we've been discussing, which is on the second

16   paragraph of your supplemental answer to

17   interrogatory one where you say that the caller

18   did not identify themselves by their first and

19   last name.

20        A    So you're asking me if I had -- if I had

21   the last name, it would be included, or the first

22   name?

1      Q   I believe your testimony today -- you

2  can correct me if I'm misunderstanding -- is that

3  you believe that that information is in the notes

4  that you reviewed a few weeks ago in order to

5  submit these on November 11.  Is that right?

6           MR. SMITH:  Object to form, misstates

7  the witness's testimony.

8      A   Yeah.  I do not -- I do not have a last

9  name.  I have to confirm about the first name if

10  it would be tied to that phone number.

11  BY MR. CAFFAS:

12      Q   The next line of that paragraph and the

13  final line says, "Further, the caller solicited

14  plaintiff to purchase SunPath's vehicle service

15  contracts."  Can you describe how the caller

16  solicited you to purchase SunPath's vehicle

17  service contracts.

18      A   I would have to -- for the exact

19  information, I would have to refer to my notes.

20           MR. CAFFAS:  Can we take a break to go

21  off the record, please?

22           MR. SMITH:  Sure.

1            (Discussion off the record from 11:00

2     a.m. to 11:00 a.m.)

3            MR. CAFFAS:  Let's go back on the

4     record.

5            Can you reread my last question, Kelly.

6            (The reporter read the requested

7     testimony.)

8     BY MR. CAFFAS:

9        Q    Why would you have to refer to your

10    notes?

11       A    For the exact language.

12       Q    Do you remember anything about the

13    language that led you to make that statement that

14    the purpose of the call was to solicit the sale of

15    SunPath's vehicle service contracts?

16       A    Based on my memory, they gave the name

17    of the company and what they were -- what they

18    were -- I think what they were selling.

19       Q    When you say the name of the company,

20    what was the name of the company?

21       A    SunPath.

22       Q    You say that they used the word

1   "SunPath" as the name of the company, not another

2   company's name?

3           MR. SMITH:  Objection, misstates the

4   witness's testimony.

5       A   I would have to refer to my notes for

6   exactly what the...

7   BY MR. CAFFAS:

8       Q   I'll represent to you that we have not

9   received any notes at all that show what your

10  recollection is of any of these calls.

11          MR. SMITH:  Objection.  That misstates

12  the question.

13  BY MR. CAFFAS:

14      Q   You're saying that any of your notes

15  regarding the calls that we're talking about were

16  given to counsel, right?

17      A   After my -- after I received the calls,

18  yes, I put it on my notes and I submitted it.

19      Q   I'm going enter what will be -- I think

20  this is Exhibit 5.

21          MR. CAFFAS:  Is that correct?

22          THE REPORTER:  4.

1              MR. CAFFAS:   4.

2              (Smith Deposition Exhibit No. 4 was

3     marked for identification and was attached to the

4     deposition transcript.)

5     BY CAFFAS:

6         Q    This is a packet of documents, Exhibit

7     4, and you'll notice these are Bates stamped.  By

8     Bates stamped, they have a label at the bottom

9     right corner and it says Smith and a series of

10    numbers to make it easier to reference.  So these

11    are Bates labeled SMITH1 through 20.

12             Now, these are the documents that we

13    received from your counsel with the exception of

14    an e-mail from a company called American

15    Protection and two recordings.  I want you to take

16    a few minutes to look through the documents that I

17    have shown you, and can you confirm whether or not

18    this is a full collection of the documents that

19    you say that you had given to counsel that reflect

20    the notes that you provided in this case.

21        A    To the best of my knowledge, this is all

22    of the screenshots provided.

1          Q   Now, is it correct to say that there are

2     no notes in that production that contain your

3     description or recollection of any of the calls

4     that you've described?

5          A   So these are the lists of the

6     screenshots.

7          Q   So is it accurate that the notes that

8     you're referring to about your recollection of the

9     calls, those aren't contained in that set of

10    documents?

11         A   I'm not sure how that's like compiled.

12         Q   In the set of documents that I just

13    handed you, can you confirm just with a yes or no,

14    if you can, whether or not the notes that you're

15    referring to are in that set of documents?

16         A   Of the -- no.

17         Q   And I'll represent to you that with the

18    exclusion of an e-mail that contains I believe the

19    SunPath policy quote that you're referring to, we

20    received no other documents, written documents,

21    from you at all.  Are you saying that --

22              MR. SMITH:  Objection.  That

1    that call was received and what number you

2    received that telephone call from?

3         A    At this time, I don't believe I have it.

4         Q    Do you have your voicemail saved on your

5    phone?

6         A    I don't keep them for long periods of

7    time.

8         Q    Is there a reason why you got rid of

9    this voicemail that's the subject of the claims in

10   the lawsuit?

11        A    You're talking about the second

12   voicemail?

13        Q    Yes.

14        A    Yeah, I don't remember receiving that

15   voicemail.  That specific voicemail, I don't

16   remember.  The first one I do.

17        Q    Are you saying that you don't -- you

18   didn't provide this to your counsel, or you just

19   don't remember receiving it or giving it to your

20   counsel?

21        A    I don't remember receiving that

22   voicemail.

1      Q   Do you have any reason to doubt that you

2   did receive it and provide it to your counsel?

3      A   You're saying do I have a doubt that I

4   received it and didn't provide it to my counsel?

5   I'm sorry.  I'm not understanding.

6      Q   You say you don't remember receiving it.

7   Do you have any reason to doubt that this call was

8   made to you, resulted in this voicemail that you

9   received, and then you then passed it on to your

10  counsel?

11     A   So to the best of my knowledge,

12  everything that I received, I provided, but I do

13  not remember that second voicemail.

14     Q   Do you know why you received -- did you

15  ask to receive a quote regarding the vehicle

16  service contract that was attached to the e-mail

17  that you received from Samantha Yaeger?

18          MR. SMITH:  Object to form.

19          You can answer.

20     A   I was trying to understand who was

21  trying to contact me.

22  BY MR. CAFFAS:

1          Q    And in the process of trying to

2     understand who is contacting you, did you request

3     to receive that product?

4               MR. SMITH:  Object, vague,

5     argumentative.

6               MR. CAFFAS:  Argumentative?

7               MR. SMITH:  Yeah.

8               MR. CAFFAS:  Can you explain?

9               MR. SMITH:  You're trying to suggest the

10    answer to her.

11              MR. CAFFAS:  Before you answer, Kelly,

12    could you read my question again.

13              (The reporter read the requested

14    question.)

15         A    So I was trying to understand who was

16    trying to contact me.

17              MR. CAFFAS:  Can you reread the

18    question, please.

19              (The reporter read the requested

20    question.)

21         A    Did I request to see the specific

22    product?  No.  I was asking I believe that I

1   wanted them to have them e-mail me something to

2   validate who they were.

3   BY MR. CAFFAS:

4       Q   So you made an inquiry about who they

5   were and what they were selling?

6           MR. SMITH:  Objection, argumentative.

7       A   No.  I was trying to determine who was

8   trying to contact me.

9   BY MR. CAFFAS:

10      Q   Right.  And in the process of trying to

11  determine that, did you make an inquiry about who

12  they were and what they were selling?

13          MR. SMITH:  Objection, asked and

14  answered, argumentative, and calls for a legal

15  conclusion.

16          You can answer.

17      A   Yeah, I was trying to determine who was

18  trying to contact me.

19  BY MR. CAFFAS:

20      Q   And in the process of doing so, did you

21  make an inquiry about who they were and what they

22  were selling?

1   American Protection from Samantha Yaeger that we

2   discussed earlier, is there a reason you didn't

3   respond in any way including to request not to

4   receive any more calls?

5        A    No.  I just didn't -- you know, I wasn't

6   interested in getting the insurance.

7        Q    Right, but you weren't interested in

8   receiving additional calls, correct?

9        A    Correct.

10        Q    So is there a reason why you didn't

11   respond to that e-mail stating that you didn't

12   wish to receive additional calls?

13        A    So I -- you know, I forwarded it to my

14   counsel.

15             MR. CAFFAS:  Can you read the question

16   back, Kelly.

17             (The reporter read the requested

18   question.)

19   BY MR. CAFFAS:

20        Q    Can you repeat your response?

21        A    Okay.  So I guess I didn't want to

22   correspond with the e-mail because I didn't want

1  any more, you know, back and forth.

2      Q   And you didn't think that requesting to

3  not to receive more calls would be an approach to

4  not receiving more calls?

5          MR. SMITH:  Object to form.

6  BY MR. CAFFAS:

7      Q   You can answer.

8      A   You said to object to not receiving more

9  calls?  I'm sorry.

10          MR. CAFFAS:  Kelly, could you read my

11  question again, please.

12          (The reporter read the requested

13  question.)

14      A   So based on here, I stated that I didn't

15  want to receive more calls.

16  BY MR. CAFFAS:

17      Q   So you thought that forwarding this

18  e-mail to an attorney rather than making a call or

19  making a request not to receive more calls would

20  be the best option to cease receiving calls?

21          MR. SMITH:  Object to form.

22      A   Yeah.  I just -- I didn't want to engage

1  with the correspondents.

2  BY MR. CAFFAS:

3       Q   You contend that June 9 was the last

4  call that you received that you're seeking damages

5  for in this case?

6       A   Again, whatever I provided initially was

7  correct, but I know that there's the call logs

8  that were received.  So that is correct, what's in

9  the logs.

10      Q   Can you clarify what you mean by that?

11      A   So when I submitted all the

12 documentation that I had, that was to the best of

13 my knowledge at the time, but I understand that

14 the call logs have different information, and they

15 are -- they are correct.

16      Q   And when you say the call logs, are you

17 referring to call logs that you believe your

18 counsel has received but you have not yet

19 reviewed?

20      A   Yes.  They just came this week, yes.

21      Q   So when you say that you believe that

22 the call logs confirm this not to be the case, is

1    that based on representations from counsel?

2          A    Because it's an accurate -- because of

3    the logs that were received by the company versus

4    what I have.

5          Q    Right.  And I'm just saying you haven't

6    reviewed these call logs that you're referring to,

7    right?

8          A    Correct.

9          Q    So how do you know that the call logs

10   confirm this?

11         A    I rely on my counsel.

12         Q    Do you believe that SunPath is the only

13   company that administers vehicle service

14   contracts?

15         A    No.

16         Q    So you're saying that if you received a

17   call soliciting you for vehicle service contracts

18   without mentioning they're SunPath's vehicle

19   service contracts, those would not be about

20   SunPath vehicle service contracts, right?

21         A    They may or may not.

22         Q    How do you discern the difference if

1          MR. SMITH:  Objection, misstates the

2     testimony.

3          A    That is not -- I rely on their guidance,

4     not...

5     BY MR. CAFFAS:

6          Q    Right, and I'm not asking for your

7     counsel's legal guidance, I'm asking for what

8     facts, what information do you know, that is, if

9     anything?

10          MR. SMITH:  Objection, calls for a legal

11     conclusion.

12          A    I rely on my counsel.

13          MR. SMITH:  Let me take a break and grab

14     a water.

15          MR. CAFFAS:  We'll go off the record.

16          (A brief recess was had from 2:38 p.m.

17     to 2:40 p.m.)

18          MR. CAFFAS:  Let's go back on the

19     record.

20          I think it might be productive if I ask

21     Kelly to again read back the question that I

22     asked.

1          Could you read the last question,

2    Kelly.

3          (The reporter read the requested

4    question.)

5       A    I don't -- I don't know.

6    BY MR. CAFFAS:

7       Q    I'll ask the same thing about the

8    potential oversight that you're claiming that the

9    defendant had over any party making calls.  Do you

10   have any facts that support that SunPath exercised

11   any oversight over anyone making calls?

12          MR. SMITH:  Objection, calling for a

13   legal conclusion.

14          You can answer.

15      A    Is it specific to a certain number, or

16   just all?

17   BY MR. CAFFAS:

18      Q    Any specific one.

19      A    Yeah, I don't know.

20      Q    There's a statement in here that

21   defendant knew about the calls.  Do you have any

22   facts or evidence that you're aware of that

1   supports that SunPath knew about any specific

2   calls that are the basis of your claims?

3       A   I would defer to my counsel.  I don't

4   know.

5       Q   So just generally, what evidence do you

6   have to support your contention that SunPath is

7   responsible or liable for the actions of any other

8   party that made the calls that form the basis of

9   your claims?

10          MR. SMITH:  Objection, calls for a legal

11  conclusion.

12          You can answer.

13      A   I rely on my counsel.

14  BY MR. CAFFAS:

15      Q   Are you aware that American Protection,

16  the company that sent you an e-mail after making

17  presumably some of the calls at issue, was deposed

18  in this case?

19      A   I don't remember.

20      Q   I will represent to you that American

21  Protection has been deposed and they have

22  represented that they did not make any calls to

1    you until after they first received a call from

2    you regarding information about their products.

3    Do you recall making a call to American Protection

4    prior to receiving any of the calls that are the

5    basis of your claims?

6         A    I do not.

7         Q    Are you saying that you've never called

8    American Protection directly at all?

9              MR. SMITH:   Objection to form.

10        A    Yeah, I don't remember making any calls.

11             MR. CAFFAS:   I will introduce to you

12   what will be Exhibit 10.

13             (Smith Deposition Exhibit No. 10 was

14   marked for identification and was attached to the

15   deposition transcript.)

16   BY MR. CAFFAS:

17        Q    Now, Exhibit 10 is a document that was

18   produced by American Protection in response to a

19   subpoena that was served by your counsel in this

20   case.  Do you recognize this document?

21        A    I don't.

22        Q    And just to describe this for the

1    record, this is what appears to be some kind of

2    mail notice or something akin to a postcard that

3    reads at the top Vehicle Alert Notice, Please

4    Respond Within Five Days, and the same number to

5    call in to.  I will represent to you that American

6    Protection represented in their deposition that

7    one of these mailers was mailed to you, and in

8    response you called in requesting information

9    about the products American Protection sells.  Do

10   you confirm that you -- excuse me.  Can you

11   confirm whether or not you called American

12   Protection in response to a mailer similar to this

13   exhibit?

14        A    Yeah, I don't remember receiving a

15   mailer and I don't remember making a phone call

16   based on that mailer.

17        Q    Just to clarify slightly, are you saying

18   that you categorically did not make such a call,

19   or you just don't remember?

20        A    I believe -- no, I did not make the

21   call.  I did not remember making the call.

22        Q    Again, just to clarify, you have never

1    made a call in response to receiving a mailer

2    similar to this?

3         A    Yeah, I don't remember ever receiving a

4    mailer like this before.

5         Q    Okay.  Just to clarify because I think

6    you said both things.  You don't remember, or you

7    did not?

8         A    And just to make sure I understand,

9    you're specifically talking if I ever received a

10   mailer for my vehicle saying that you have a

11   five-day notice?

12        Q    First we'll say yes.  Have you received

13   a mailer similar to the exhibit that I've just

14   shown you?

15        A    No, I do not remember ever receiving a

16   mailer.

17        Q    Okay.  And then that would mean that you

18   then are saying that you did not make a call in

19   response to receiving such a mailer?

20        A    Correct.  I do not ever remember making

21   a phone call, no.

22        Q    Have you ever visited a website where

1    you requested to receive a call regarding vehicle

2    service contracts?

3        A    Not to my knowledge, no.

4        Q    And likewise, have you ever visited a

5    website where you input your personal information,

6    including your phone number, and may have

7    consented to receive calls regarding vehicle

8    service contracts?

9        A    Not to my knowledge, no.

10       Q    Have you ever visited any website where

11   you requested information regarding information

12   for your car insurance?

13       A    Not to my knowledge, no.

14       Q    So you've never visited any website

15   where you requested a quote for car insurance?

16       A    No.  My insurance is through -- my

17   father pays for it, so he takes care of all that

18   stuff.

19       Q    Have you ever filed a lawsuit involving

20   telemarketing calls other than this one?

21       A    Yes.

22       Q    When was that?

1      A    I'd have to refer to the documentation,

2  but I have.  I cannot remember.

3      Q    Was that on more than one occasion?

4      A    Yes.

5      Q    Do you remember how many specific cases

6  that would be?

7      A    Again, I'd have to -- I don't want to

8  get the number incorrect, so I'd have to...

9      Q    Would you be able to say whether it was

10  more or less than five?

11     A    I don't want to -- I just don't know a

12  hundred percent.

13     Q    It was more than one?

14     A    Yes.

15     Q    Is it around five?  Is it less than ten

16  you can say?

17     A    I don't -- again, I don't remember.  I

18  just -- I need to check.

19     Q    Are these -- I'm specifically at this

20  point asking about lawsuits that were filed in

21  court, right?  And you say that there's been more

22  than one of these besides the present case?

1          MR. SMITH:  Objection, misstates the

2     witness's testimony.

3          A    Again, to the best of my knowledge, and

4     I think I'm also waiting on the AT&T call logs,

5     so...

6          MR. CAFFAS:  I have nothing further.

7          MR. SMITH:  I just have a few follow-up

8     questions.

9          THE WITNESS:  Sure.

10         EXAMINATION BY COUNSEL FOR THE PLAINTIFF

11    BY MR. SMITH:

12         Q    So earlier you testified that SunPath

13    made the calls at issue.  I just want to clarify.

14    Can you tell me which party actually placed the

15    calls in this case?

16         A    So it's --

17         MR. CAFFAS:  Objection, speculation,

18    misstating the witness's testimony.

19    BY MR. SMITH:

20         Q    You can answer.

21         A    So it was American Protection on behalf

22    of SunPath.

1          Q    Okay.  Earlier you reviewed an e-mail

2     that was marked as Exhibit 6.  See that?

3          A    Yes.

4          Q    Can you turn to page SMITH22.

5          A    Yes.  Got it.

6          Q    Can you review SMITH22, SMITH23, and

7     SMITH24.

8          A    I reviewed it.

9          Q    All right.  Do you know what these three

10    pages are or how they relate to the e-mail on

11    SMITH25?

12              MR. CAFFAS:  I'm going to object to

13    vague as -- could you clarify which three pages

14    you're referring to?

15              MR. SMITH:  Yeah, the ones we just

16    discussed, 22 through 24, how they relate to

17    SMITH -- the e-mail on SMITH25.

18         A    So these are the options for the plans

19    for the --

20    BY MR. SMITH:

21         Q    Do you know how you would access that?

22         A    I believe there was a link.

1          Q    Can I direct your attention to SMITH26.

2          A    I'm trying to find it.  It's on page 26

3    with the Buy Now?

4          Q    The Buy Now link?  Okay.  After you

5    clicked the Buy Now link, what would happen?

6               MR. CAFFAS:  Sorry.  I didn't catch.

7    I'm not sure if the court reporter did.  Can you

8    repeat that last question and answer?

9               THE WITNESS:  Okay.  So I --

10              MR. SMITH:  Yeah.  Sure.  Hold on.

11   BY MR. SMITH:

12         Q    All right.  Just to clarify your

13   testimony, are you stating that on page SMITH26

14   you clicked the Buy Now, which would take you to

15   the document that starts on SMITH22?

16         A    Yes.  Based on my -- the best of my

17   knowledge, yes.

18         Q    Okay.  Do you see on SMITH22 where it

19   says Your Plan?

20         A    I do at the top of the page on the left.

21         Q    Below that it says Coverage Provided by

22   SunPath?

```
1        A    Yes.

2        Q    So is it a fair statement that this is

3   an e-mail from American Protection that would have

4   solicited you to purchase a SunPath vehicle

5   service protection plan?

6        A    Yes.

7        Q    Okay.  Does this change your testimony

8   as to whose products were being sold via the calls

9   at issue in this case?

10       A    So it's SunPath.

11       Q    Okay.  I just want to clarify.  American

12  Protection was placing calls to sell SunPath's

13  products and services?

14       A    On behalf, yes.

15       Q    Is it fair to say that you rely on your

16  counsel to conduct an investigation in this case?

17       A    Yes.

18       Q    To gather facts?

19       A    Yes.

20       Q    Are you aware that there were call logs

21  obtained in this case from Five9, Incorporated?

22       A    Yes.
```

1          CERTIFICATE OF SHORTHAND REPORTER

2            ELECTRONIC NOTARY PUBLIC

3          I, Kelly Carnegie, Certified Shorthand

4    Reporter, Registered Professional Reporter, the

5    officer before whom the foregoing proceedings were

6    taken, do hereby certify that the foregoing

7    transcript is a true and correct record of the

8    proceedings; that said proceedings were taken by

9    me stenographically and thereafter reduced to

10   typewriting under my direction; that reading and

11   signing was requested; and that I am neither

12   counsel for, related to, nor employed by any of

13   the parties to this case and have no interest,

14   financial or otherwise, in its outcome.

15          IN WITNESS WHEREOF, I have hereunto

16   electronically set my hand and affixed my notarial

17   seal this 5th day of December, 2022.

18
     My commission expires:
19   July 31, 2026

20

21   _____
     NOTARY PUBLIC IN AND FOR THE
22   COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
     Notary Registration Number: 7060756

# EXHIBIT 2

**From:**       Taylor Smith
**Sent:**       Friday, January 6, 2023 12:57 PM
**To:**         Mitchell Roth; Joe Bowser; Taylor Smith
**Cc:**         Patrick Peluso
**Subject:**    Re: Motions in Limine
**Attachments:** Records Custodian Declaration - Ruth Smith v. SunPath 4891-0151-8663
                v.1.pdf

---

**Follow Up Flag:**      Copied to Worldox (Client Files\2834\017\01494675.MSG)

Counsel:

Attached is the declaration provided to us by Five9 this morning.

Thanks,
Taylor







### Declaration of Custodian of Records

I, the undersigned, do hereby declare:

1.      My name is Melinda Bas.

2.      I am a United States citizen and over eighteen (18) years of age. I am acting on behalf of the custodian of records of the business named in the subpoena, or I am otherwise qualified as a result of my position with the business named in the subpoena to make this declaration.

3.      I am in receipt of the subpoena for Civil Action No. 1:22-cv-00081-LMB-WEF served on Five9 Communications by Woodrow & Peluso, LLC on November 10, 2022.  In response to the subpoena, Five9 produced records in its possession relating to Chukran Management Group, LLC d/b/a American Protection Corp.

4.      Specifically, Five9 produced a single .cvs file containing telephone numbers provisioned for use by American Protection Bates-Stamped Five9_AmericanProtection_000001.

5.      Additionally, Five9 produced a .zip file Bates-Stamped Five9_AmericanProtection_000002 containing forty-five (45) separate .cvs files for the time period between May 2018 and December 2021.  The Five9 records are labeled as follows:

- AmericanProtectionCorporation2-20180501-20180531.csv

- AmericanProtectionCorporation2-20180601-20180630.csv

- AmericanProtectionCorporation2-20180701-20180731.csv

- AmericanProtectionCorporation2-20180801-20180831.csv

- AmericanProtectionCorporation2-20180901-20180930.csv

- AmericanProtectionCorporation2-20181001-20181031.csv

- AmericanProtectionCorporation2-20181101-20181130.csv

- AmericanProtectionCorporation2-20181201-20181231.csv

- AmericanProtectionCorporation2-20190101-20190131.csv

- AmericanProtectionCorporation2-20190201-20190228.csv

- AmericanProtectionCorporation2-20190301-20190331.csv

- AmericanProtectionCorporation2-20190401-20190430.csv

- AmericanProtectionCorporation2-20190501-20190531.csv

- AmericanProtectionCorporation2-20190601-20190630.csv
- AmericanProtectionCorporation2-20190701-20190731.csv
- AmericanProtectionCorporation2-20190801-20190831.csv
- AmericanProtectionCorporation2-20190901-20190930.csv
- AmericanProtectionCorporation2-20191001-20191031.csv
- AmericanProtectionCorporation2-20191101-20191130.csv
- AmericanProtectionCorporation2-20191201-20191231.csv
- AmericanProtectionCorporation2-20200101-20200131.csv
- AmericanProtectionCorporation2-20200201-20200229.csv
- AmericanProtectionCorporation2-20200301-20200331.csv
- AmericanProtectionCorporation2-20200401-20200430.csv
- AmericanProtectionCorporation2-20200501-20200531.csv
- AmericanProtectionCorporation2-20200601-20200630.csv
- AmericanProtectionCorporation2-20200701-20200731.csv
- AmericanProtectionCorporation2-20200801-20200831.csv
- AmericanProtectionCorporation2-20200901-20200930.csv
- AmericanProtectionCorporation2-20201001-20201031.csv
- AmericanProtectionCorporation2-20201101-20201130.csv
- AmericanProtectionCorporation2-20201201-20201231.csv
- AmericanProtectionCorporation2-20210101-20210131.csv
- AmericanProtectionCorporation2-20210201-20210228.csv
- AmericanProtectionCorporation2-20210301-20210331.csv
- AmericanProtectionCorporation2-20210401-20210430.csv
- AmericanProtectionCorporation2-20210501-20210531.csv
- AmericanProtectionCorporation2-20210601-20210630.csv

- AmericanProtectionCorporation2-20210701-20210731.csv

- AmericanProtectionCorporation2-20210801-20210831.csv

- AmericanProtectionCorporation2-20210901-20210930.csv

- AmericanProtectionCorporation2-20211001-20211031.csv

- AmericanProtectionCorporation2-20211101-20211130.csv

- AmericanProtectionCorporation2-20211201-20211231_part_1.csv

- AmericanProtectionCorporation2-20211201-20211231_part_2.csv


I hereby certify that the records provided to Woodrow & Peluso, LLC:

a.   Were made at or near the time of the occurrence of the matters set forth in the records by or from information transmitted by a person with knowledge of those matters;

b.   Were kept in the course of a regularly conducted business activity; and

c.   Were made by the regularly conducted activity as a regular practice.

I DECLARE under the penalty for perjury that the foregoing is true and correct.


Executed on January __5__, 2023

    1/5/2023 | 15:54 PST

*Melinda E. Bas*

DocuSigned by:
D3931B7E118A429...

Melinda Bas, VP of Compliance and Privacy

Five9, Inc.
3001 Bishop Drive,
Suite 350
San Ramon, CA 94583


**JA1069**

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| **RUTH SMITH, on behalf of herself and a class of others similarly situated,** | |
| Plaintiff, | |
| | **Civil Action No. 1:22-cv-00081 (LMB/TCB)** |
| v. | |
| **SUNPATH, LTD.,** | |
| Defendant. | |

## SUNPATH, LTD.'S FIRST SET OF DISCOVERY REQUESTS
## TO PLAINTIFF RUTH SMITH

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, Defendant SunPath, Ltd. ("SunPath") hereby propounds the following First Set of Interrogatories, Document Requests, and Requests for Admission (collectively, "Discovery Requests") to Plaintiff Ruth Smith ("Plaintiff" or "Smith") to be answered, in writing and under oath, within thirty (30) days from the date of service hereof.

Throughout these discovery requests:

1.     Unless otherwise stated, or identified in the local rules, all definitions should be responded to according to their ordinary meaning.

2.     Unless otherwise stated, the relevant time period of these Discovery Requests is November 8, 2019 to the present, and shall include all information that relates or refers to this period unless another time or period of time is referred to in a Discovery Request.

3.     Defined terms are set forth below. Whenever a defined term is used in any Discovery Request, which is indicated in **bold** type, the request shall be answered applying the

**JA1071**

term as defined in detail herein. Any undefined term shall be answered as that term is generally understood by you consistent with common usage.

4.     The words "Plaintiff," "you," or "your" shall mean and refer to Plaintiff Ruth Smith, or any of her agents, attorneys, representatives, or other persons purporting to act on her behalf.

5.     The word "SunPath" shall refer to Defendant SunPath, Ltd., and any of their agents, employees, or persons purporting to act on their behalf.

6.     The word "Parties" shall collectively mean and refer to you and SunPath.

7.     "Lawsuit" refers to the above-captioned action.

8.     "Complaint" means the Complaint (ECF No. 1) you filed in this Lawsuit.

9.     "Your Cellular Telephone Number" means the telephone number you allege received the calls that are the basis of your Complaint (703-728-9650), along with any other cellular telephone number used by you during the relevant time period.

10.     "Initial Disclosures" refers to Plaintiff's Rule 26(A)(1) Disclosures.

11.     "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

12.     "Describe" means state, list, relate, narrate, and/or recount.

13.      "Identify" means to state:

a.     Relating to a natural person:  (1) his or her full name, (2) present or last known address, (3) telephone number(s), (4) employer, and (5) job title;

b.      Relating to business, legal or governmental entity, association, or proprietorship:  (1) its full name, (2) present or last known address, and (3) telephone number;

c.      Relating to a document:  (1) the name and address of its author or maker, (2) the names and addresses of each person or entity who or which was an addressee, (3) the date on which it was created or made, (4) the nature of the document, and (5) the substance of the information or data set forth in the document;

d.      Relating to conversations and written or oral communications:  (1) the date on which each conversation or communication occurred, (2) the persons engaged in such conversation or making such communication, (3) the substance of the conversation or communication, (4) the names and addresses of all persons present when the conversation or communication occurred, (5) the place where the conversation or communication took place and, if by telephone or text message, the telephone number from and to which the call or text was placed.

e.      Relating to a telephone number: (1) the full telephone number (with area code and country code, where applicable), (2) the time period in which you were responsible for the charges associated with that number and/or you regularly used that number, (3) the telecommunications carrier that provided you service in connection with that telephone number, and (4) the nature of the telecommunications service provided to you in connection with that service, such as cellular service, landline service, or VoIP service (as that term is defined in 47 C.F.R. § 9.3).

**JA1073**

f.      Relating to an IP address: (1) the IP address, (2) the device associated with that IP address; (3) the time period in which you owned the device(s) associated with that IP address and/or you regularly used that IP address, (4) the internet provider that provided you service in connection with that address, and (5) the nature and location associated with the use of that IP address (i.e. at work, home, personal).

14.     "Document" means any written, recorded or graphic matter however produced or reproduced whether or not in your possession, custody or control, and whether or not claimed to be privileged against discovery on any grounds, including, but not limited to, emails, text messages, internet postings (including without limitation blogs), reports, lists, memoranda, call reports, work logs, time sheets, drawings, designs, sketches, worksheets, correspondence, schedules, sound recordings, photographs, videotapes, film, ledgers, books of account, catalogs, brochures and written statements of witnesses or other persons having knowledge of the pertinent facts.  The term "document" also includes any and all copies of any document that contain any notation or otherwise differ from the original and other copies, and specifically includes any and all drafts of the above and any and all handwritten notes or notations in whatever form together with any attachments to any such documents.  The term "document" expressly includes all computer records, and when such computer records are incorporated within the scope of these discovery requests, all documents shall be produced in both hard copy format and in a computer readable format, together with the computer file name and the identity of the language in which it is encoded.

15.     To identify a document that was, but is no longer, in your possession or subject to your control, or in existence, state whether it (1) is missing or lost, (2) has been destroyed, (3) has been transferred, voluntarily or involuntarily, to others, or (4) has been otherwise disposed of; and in each instance, explain the circumstances surrounding the authorization for such disposition and state the date or approximate date thereof.

16.     "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations at 47 C.F.R. 64.1200.

17.     "VTPPA" means the Virginia Telephone Privacy Protection Act, Va. Code §§ 59.1-510 to -518.01, which forms the basis for the Second and Third Causes of Action of the Complaint.

18.     "Classes", "proposed classes", or "purported classes" means the No Consent Class, Virginia Do Not Call Registry Class, and Virginia Unidentified Caller Class as defined in Paragraph 34 of the Complaint.

19.     "Relating to" or "referring to" means discussing, reflecting, containing, dealing with, analyzing, evaluating, estimating, constituting, describing, evidencing or pertaining to in any way either directly or indirectly, whether supportive, exculpatory, harmful, or negative, and either in whole or in part.

20.     The Discovery Requests are intended to discover all discoverable information sought by them, such that they should be read with the following rules of construction in mind:

> a.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Discovery Requests all responses that might otherwise be construed to be outside of its scope.

b.  The word "all" shall be construed to include every, any and each, as necessary to bring within the scope of these Discovery Requests information, documents, and things that might otherwise be construed as outside their scope.

c.  All references to the singular shall include the plural, and all references to the plural shall include the singular.

d.  A masculine, feminine, or neuter pronoun shall not exclude the other genders.

21.    The Discovery Requests that follow are continuing in nature; that is, you have a duty to supplement your responses to them pursuant to Fed. R. Civ. P. 26(e).  You are requested to provide such additional documents as you or any other person on your behalf may hereafter obtain that which will augment or otherwise modify your answers now given to the Discovery Requests below. Such supplementary information is to be provided to the undersigned immediately upon your receipt of such information.

22.    If any documents, materials, or information responsive to the Discovery Requests below are withheld on the basis of a claim of privilege, set forth a privilege log detailing as to each item of information or document:

a.  the type of any document;

b.  the name of the author of any document;

c.  the name of the sender or the source, if any, of the documents or information;

d.  the date of the document;

e.  the nature of the privilege claim;

f.  attachments to any such document;

g.  the number of pages comprising any document;

h.  a brief description of the nature and the subject matter of the information or document; and

i.  the identification number, control number, or "Bates" number of the document.

6

**JA1076**

## INTERROGATORIES

1.      **Identify** all telephone calls to **Your Cellular Telephone Numbers** for which **you** seek recovery in this **Lawsuit** that **you** allege were made by or on behalf of **SunPath**, and state all factual bases for your contention that each call was made by or on behalf of **SunPath**.

ANSWER:

2.      If **you** contend that **SunPath** is directly liable for any of the telephone calls identified in **your** answer to Interrogatory No. 1, **identify** such telephone calls and state all facts in support of such contention.

ANSWER:

3.      If **you** contend that **SunPath** is vicariously liable for any of the telephone calls identified in **your** answer to Interrogatory No. 1, **identify** such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER:

4.      If **you** contend that **SunPath** or any third-party you allege is **SunPath**'s agent utilized an automatic system for the selection or dialing of telephone numbers regulated by the TCPA and/or the VTPPA to make any calls to **Your Cellular Telephone Number** or to any members of the **proposed classes**, then state the factual and legal basis for that contention and identify the members of the putative classes that allegedly received such calls.

ANSWER:

5.      If **you** contend that **SunPath** or any third-party you allege is **SunPath's** agent called **Your Cellular Telephone Number** or to any members of the **proposed classes**, without implementing internal procedures for maintaining a list of persons who request not to be called by **SunPath** or any third-party you alleged is **SunPath's** agent and/or without implementing

7

procedures meeting requirements from 47 C.F.R. § 64.1200(d), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

    <u>ANSWER:</u>

   6.  If **you** contend **SunPath** or any third-party you allege is **SunPath's** agent made calls to **Your Cellular Telephone Number**, or to any members of the **proposed classes**, that utilized an artificial or prerecorded voice, then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

    <u>ANSWER:</u>

   7.    If **you** contend that **you** registered **Your Cellular Telephone Number** or any members of the **proposed classes** registered their telephone number on the National Do Not Call Registry, and then **SunPath** or any third-party you allege is **SunPath's** agent made telephone calls to **you** or them without proper consent from **you** or the member or an established business relationship with **you** or them (as defined by 47 C.F.R. § 64.1200(f)(5)), then state the factual and legal bases for that contention and identify the members of the putative classes that allegedly received such calls.

    <u>ANSWER:</u>

   8.    If **you** contend **SunPath** or any third-party you allege is **SunPath's** agent called **Your Cellular Telephone Number**, or to any members of the **proposed classes**, willfully or knowingly in violation of the TCPA and/or VTPPA, then identify such members and state the factual and legal bases for that contention.

    <u>ANSWER:</u>

   9.    If **you** contend that the party that made any of the telephone calls identified in

8

**JA1078**

**your** answer to Interrogatory No. 1 failed to identify his or herself by his or her first and last name and by the name of the person on whose behalf the call was being made promptly upon making contact with **you**, state all facts in support of such contention with respect to each such call.

ANSWER:

10.   **Identify** and **describe Your Cellular Telephone Number** (703-728-9650, along with any other cellular telephone number used by **you** during the relevant time period), including, the date on which you were first assigned that telephone number, and from November 8, 2019 to present, state whether the number is associated with a cellular, mobile, or wireless telephone provider service in connection with that telephone number or any other service for which you incurred a charge for incoming calls or text messages; the name of each such provider; the type of device or telephone associated with that telephone number; the name of each person that controlled, owned, operated, or used that number, and when each person controlled, owned operated, or used that number; and whether or not it was used for personal or business purposes, or both.

ANSWER:

11.   Identify all **communications** between **you** and all other persons, other than **your** attorneys, **relating** to **SunPath**, or **your** claims or allegations in this **Lawsuit**, including the date, method, and substance of the **communication** and the identities of all persons with whom **you** had contact.

ANSWER:

12.   If **you** assert that **you** or any member of the **proposed classes** ever informed **SunPath** that **you** or they did not want to be contacted by or on behalf of **SunPath**, **describe** the

date and substance of that event or **communication**, the means of such **communication**, and state whether **SunPath** communicated with **you** or any member of the **proposed classes** after such **communication** and **identify** each such **communication**.

ANSWER:

13.     State whether **you** have ever been named as a defendant or respondent in any criminal, civil, administrative, or regulatory action under any federal, state, or local law, rule or regulation and provide the following information regarding any such action: the forum for the action, the case number assigned to the action, the legal cause(s) of action asserted in the matter, the status of the action, and the outcome of the action.

ANSWER:

14.     **Identify** all vehicle service contracts or related or similar products **you** have purchased, using **your** own name or any alias, between January 26, 2017 and present, including, without limitation, for each such policy, plan or related or similar product, who **you** purchased it from, the administrator of the policy or plan, and the date of purchase and date of cancellation, if applicable.

ANSWER:

15.     **Identify** all persons, other than a person intended to be called as an expert witness at trial, who are likely to have knowledge of any of the facts and/or allegations set forth in the Complaint and/or the denials and/or affirmative defenses set forth in any other pleading in this **Lawsuit**, and for each such person, **describe** in detail the facts and/or allegations of which they are likely to have knowledge, **identify** the documents about which they have knowledge, and indicate whether **you** intend to call them as a witness at trial.

ANSWER:

16.     Disclose all websites **you** have visited since January 1, 2019 relating to vehicle service contracts, automobile insurance, extended warranty plans, or similar or related products and on or through which you provided any of **Your Telephone Numbers**. Include in **your** answer the address of the website and the dates visited.  **Your** answer should also include whether **you** provided consent to be called to any third party about vehicle service contracts or similar or related products when visiting such websites.

ANSWER:

17.     If **your** response to any of the Requests for Admissions below is a denial, state in full the basis for each such denial.

ANSWER:

18.     If **you** contend that **you** suffered any compensable harm(s) as a result of the calls or text messages identified in **your** answer to Interrogatory No. 1, then state all facts in support of such contention and identify the amount of damages **you** are seeking in this action for such harm(s) and from which Defendant.

ANSWER:

19.     **Identify** the names, addresses, and telephone numbers of any person **you** claim may be a member of the **purported classes** alleged in the **Complaint** (excluding yourself), the **class** or **classes** they are a member of, and identify the specific knowledge that each such person may have vis-à-vis their putative claims against **SunPath**.

ANSWER:

20.     **Describe**, in specific detail, how it came about  that **you** were selected to be a class representative on behalf of the **classes** alleged in the **Complaint** , including how **you** came to hire **your** current counsel to represent **you** and the **classes** in this matter, whether **you**

11

**JA1081**

contacted **your** counsel or whether they contacted **you**, whether **you** were referred to **your** counsel by someone else (if so, by whom), and whether **you** considered hiring any other law firms.

ANSWER:

21.    **Identify** any and all settlement agreements **you** have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the **TCPA** or **VTPPA**, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration **you** received under the terms of such agreements.

ANSWER:

22.    If you contend that your claims against **SunPath** are typical as related to those of the **proposed classes**, **identify** and **describe** in detail all factual and legal bases for that contention.

ANSWER:

23.    If you contend that your claims against **SunPath** contain questions of law and fact that are common to the clams of the **proposed classes**, and those questions predominate over any questions that may affect individual members of the **proposed classes**, **identify** and **describe** in detail all factual and legal bases for those contentions.

ANSWER:

**<u>VERIFICATION</u>**

I, _____, declare under penalty of perjury, pursuant to

28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.


Dated September ____, 2022.                                    _____

13

**JA1083**

## DOCUMENT REQUESTS

1.      All **documents** and **communications** that **you** identified, relied upon, reviewed, considered or consulted in answering any of the foregoing Interrogatories or in **your** Initial Disclosures.

2.      All **documents** and **communications relating to** the information contained in response to each of the Interrogatories.

3.      All **documents** and **communications you** have received from, or sent to, **SunPath** or any third party for whose actions **you** allege **SunPath** is liable, vicariously or otherwise.

4.      All non-privileged **documents** and **communications related to SunPath**, any third party for whose actions **you** allege **SunPath** is liable, the calls for which **you** seek recovery in this action, or any of the allegations contained in **your Complaint**.

5.      All non-privileged **documents** or electronically stored information on **your** computers, tablets, smartphones or other electronic devices **related to SunPath**, or any of the allegations contained in **your Complaint**.

6.      All **documents** memorializing, reflecting or commenting upon the content of any **communication** that **you** had with **SunPath** or any third party for whose actions **you** allege **SunPath** is liable, vicariously or otherwise.

7.      All audio recordings, transcripts and notes in **your** possession **relating to communications** to or from **you** and **SunPath** or any third party for whose actions **you** allege **SunPath**  is liable, vicariously or otherwise.

8.      All calendars, diaries, logs, notes, journals, or any other written or recorded summary of events maintained by **you** in any way **relating to** this **Lawsuit**.

14

**JA1084**

9.      All **documents** and **communications relating to** the information contained in response to each of the Interrogatories  and Requests for Admission.

10.      **Documents** or **communications** showing all websites **you** have visited between November 8, 2019 and present relating to vehicle service contracts, auto insurance, extended warranty plans, or similar or related products including providing consent to be called to any third party about such product when visiting such websites.

11.      All **documents** and **communications** evidencing any settlement agreements **you** have entered into or compensation **you** have received from any person or party, relating to this action or the calls or text messages at issue in it.

12.      Any and all written reports and *curriculum vitae* of any expert witness **you** intend to call as a witness at any trial or hearing in this action, a copy of each and every **document**, electronically stored information, physical model, or tangible thing that was generated, prepared or reviewed by or on behalf of an expert in anticipation of trial or that was used in any consultation that forms any basis of the expert' s anticipated testimony, and documents reflecting the compensation to be paid to each expert.

13.      All **documents you** received or that were made available to **you**, electronically or otherwise, from **your** telecommunications service provider(s) for each cellular telephone service **you** used (including that associated with **Your Cellular Telephone Number)** at any time from November 1, 2019 to present (or, to the extent **you** seek recovery for calls outside that period, then include any such time period here), including statements or invoices showing the amount billed, subscriber agreements, terms and/or conditions of service, the duration of each call made and received, the telephone number for each call made or received, and the charges imposed for each call made or received.

14. All pleadings, correspondence, discovery, settlement agreements, payments received, judgments, **documents** evidencing monies paid, and other non-privileged **documents** **relating to** any demand, claim, allegation, litigation, administrative, or regulatory investigation or proceeding, other than this **Lawsuit**, to which **you** have ever been a party at any time in the past five years, in which **you** have sought damages or any other form of relief under the **TCPA**, **VTPPA**, or any other state law **relating** to telemarketing or other allegedly unlawful communications.

15. All **documents you** receive in response to any document request, subpoena or other substantially similar demand for the production of documents or things that **you** have served or serve in the future on any party or non-party in connection with this **Lawsuit**.

16. All **documents** and **communications** evidencing any member of the **purported classes**' receipt of a call from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

17. All **documents** and **communications** evidencing the identity of any person, other than **you**, whom **you** claim is a member of any of the **purported classes** as alleged in the **Complaint**.

18. Recordings of all telephone calls received by **purported class** members from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

19. **You** and **your** attorneys' **communications** with any member of the **purported classes** (excluding yourself), including any documents reflecting notes of such **communications**. This includes any **communications** to any member of the **purported classes**, even if the class member did not respond.

**JA1086**

20.     All documents reflecting notes of communications between any potential member of the purported classes and **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise, including any documents reflecting notes of such communications.

21.     All **documents** reflecting notes of **communications** between **you** and any potential member of the **purported classes**, including any **documents** reflecting notes of such **communications**.

22.     All **documents** and **communications** reflecting all telephone numbers at which any member of the **purported classes** received calls from **SunPath**  or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

23.     All **documents** evidencing any damages and/or harm caused to any potential members of the **purported classes** as a result of their receipt of calls from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

24.     All **documents** and **communications** exchanged between you and any member of the **purported classes** relating to the facts and/or allegations contained in the **Complaint**.

25.     All **documents** and **communications** relating to **your** and any member of the **purported classes'** consent to receive calls or text messages from **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

26.     All **documents** and **communications** relating to **your** and any member of the **purported classes'** established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise.

27.     All **documents** and **communications** relating to **you** registering **Your Cellular Telephone Number** and any of the members of the **proposed classes** registering their telephone number on the National Do Not Call Registry, and then **SunPath** or any third-party for whose actions you allege **SunPath** is liable, vicariously or otherwise, making telephone calls to **you** or them without proper consent or an established business relationship (as defined by 47 C.F.R. § 64.1200(f)(5)).

28.     All **documents** and **communications** that identify any potential members of the **purported classes** (other than yourself).

29.     All **documents** and **communications** that represent or evidence the number of persons that may be members that fall within the **purported classes**.

30.     All **documents** and **communications** that support your contention that **SunPath** is vicariously liable for calls received by **you** or any member of the **purported classes**.

31.     All **documents** and **communications** regarding **your** attorneys' prior putative class action lawsuits and class representations evidencing their ability to adequately represent the **purported classes**.

32.     All **documents** and **communications you** intend to rely upon to support **your** request for class certification.

33.     Documents that support **your** contention that the **proposed classes** are capable of being certified, including but not limited to, documents supporting that the **classes** are numerous enough for certification, have common issues that will predominate over individual issues, have typical issues, and have adequate representation.

## REQUESTS FOR ADMISSION

1.      During the period November 8, 2019 to present, the only cellular telephone number registered in **your** name was 703-728-9650.

2.      During the period November 8, 2019 to present, a cellular telephone number registered in **your** name was 703-728-9650.

3.      During the period January 1, 2019 to present, **you** visited a website and provided **your** phone number to be contacted regarding vehicle service contracts, or related or similar products.

4.      During the period January 1, 2019 to present, **you** have asked another person to visit a website and provide **your** phone number to be contacted regarding vehicle service contracts, or related or similar products.

5.      Prior to May 26, 2020, **you** did not receive any calls to **Your Cellular Telephone Numbers** from or allegedly on behalf of **SunPath**.

6.      After June 9, 2020, **you** did not receive any calls to **Your Cellular Telephone Numbers** from or allegedly on behalf of **SunPath**.

7.      **You** are in possession of no written or audio evidence that **SunPath** or any party allegedly acting on **SunPath**'s behalf contacted **you** via **Your Cellular Telephone Number** before May 26, 2020.

8.      **You** are in possession of no written or audio evidence that **SunPath** or any party allegedly acting on **SunPath**'s behalf contacted **you** via **Your Cellular Telephone Number** after June 9, 2020.

9.      **You** were not assessed any per-call or data rate charges in connection with any telephone calls that **you** allege **you** received from or on behalf of **SunPath**.

19

**JA1089**

10.     None of the calls that **you** received in May or June 2020 that are described in Paragraphs 23-24 of your Complaint were made with a prerecorded or artificial voice message.

11.     **You** provided y**our** consent to receive the telephone calls identified in **your** Complaint.

12.     **You** had an established business relationship, as defined by 47 C.F.R. § 64.1200(f)(5), with **SunPath** or any third party for whose actions you allege **SunPath** is liable, vicariously or otherwise, at the time you received the calls at issue.

13.     The telephone calls **you** allegedly received, as described in Paragraphs 23-24 of **your Complaint**, were not from or on behalf of **SunPath**.

14.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller promptly identified the name of the person on whose behalf the telephone call was being made.

15.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller promptly identified his or herself by his or her first and last name.

16.     During each of the calls described in Paragraphs 23-24 of **your Complaint**, the caller did not state that he or she was calling from or on behalf of SunPath.

17.     At no point on or before June 9, 2020 did **you** ever advise **SunPath** not to call you.

18.     **You** were located in Virginia when you received the calls listed in **your Complaint**.

19.     **You** personally registered **Your Cellular Telephone Number** on the National Do Not Call Registry on November 8, 2019.

20.     Another person, other than yourself, registered **Your Cellular Telephone Number** on the National Do Not Call Registry.

Dated:  August 29, 2022                    Respectfully submitted,

                                           SUNPATH, LTD.

                                           By Counsel

                                           By: /s/ *Joseph P. Bowser*
                                           Joseph P. Bowser (VSB No. 88399)
                                           Roth Jackson Gibbons Condlin, PLC
                                           1519 Summit Avenue, Suite 102
                                           Richmond, VA 23230
                                           T: 804-441-8701
                                           F: 804-441-8438
                                           jbowser@rothjackson.com

                                           Gregory M. Caffas (VSB No. 92142)
                                           Mitchell N. Roth (VSB No. 35863)
                                           Roth Jackson Gibbons Condlin, PLC
                                           8200 Greensboro Drive, Suite 820
                                           McLean, VA 22102
                                           T: 703-485-3533
                                           F: 703-485-3525
                                           gcaffas@rothjackson.com
                                           mroth@rothjackson.com

**JA1091**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2022, a copy of the foregoing document

was served via email to the following:

Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**

/s/ *Joseph P. Bowser*
Joseph P. Bowser

**JA1092**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**
**DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her third supplemental esponses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

**INTERROGATORIES**

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

**JA1094**

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themselves by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's products and services.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at

10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls, Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m., which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff

asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themselves by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls

were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing

system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themselves by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. As of today, November 30, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

DECEMBER 8, 2022 THIRD SUPPLEMENTAL ANSWER: Plaintiff seeks damages and recovery for all calls placed to her cellular telephone number ending in 9650, which are reflected in the call records produced by Five9, Inc. The Five9, Inc. call records were produced

to SunPath on November 30, 2022. Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. Plaintiff again requested the call records from AT&T on December 3, 2022. As of today, December 8, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

## REQUESTS FOR ADMISSION

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020 because she has access to her cellular telephone bills, which may reflect such calls once third parties identify the full scope of the calls. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

7

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery,  changes the answer, a supplement will be sent.

DECEMBER 8, 2022 THIRD SUPPLEMENTAL ANSWER: Denied.


Dated: December 8, 2022                    **RUTH SMITH**, individually and on behalf of all others similarly situated,

By:  _/s/  Patrick H. Peluso_____
              One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by electronic mail on December 8, 2022.

_/s/ Patrick H. Peluso_

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

## PLAINTIFF'S RUTH SMITH'S VERIFICATION

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing supplemental responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___12 / 08 / 2022___.

_____
Ruth Smith

**JA1102**

1

Doc ID: 5ca6d000c4f2eec2ed8ba71250b2ba68bd73981d

# EXHIBIT 5

| | |
|---|---|
| **From:** | Taylor Smith |
| **Sent:** | Friday, December 9, 2022 5:46 PM |
| **To:** | Greg Caffas |
| **Cc:** | Joe Bowser; Patrick Peluso |
| **Subject:** | Smith v. SunPath - Case No. 1:22-cv-00081 - Second Supplemental Initial Disclosures & Document Production |
| **Attachments:** | SMITH000029-30.pdf; SMITH000031-36.pdf; Smith v. SunPath - Plaintiff's Second Supplemental Initial Disclosures.pdf |

Greg,

Attached please find Plaintiff's second supplemental initial disclosures, along with her supplemental document production.

Thanks,
Taylor

--

Taylor T. Smith I  Woodrow & Peluso LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 907-7628 (direct)
tsmith@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>        Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**PLAINTIFF'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES**

Plaintiff Ruth Smith ("Smith" or "Plaintiff") submits the following supplemental Initial Rule 26(a)(1) Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

*I. Prefatory Statement*

Plaintiff's investigation in this action continues, and these supplemental disclosures reflect only the current status of her knowledge. Plaintiff reserves the right to supplement and/or amend these disclosures as additional information becomes known.

Rule 26(a)(1) does not require the production of any information or documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege or applicable doctrine with respect to all such information and documents. The inadvertent disclosure of any information or documents shall not constitute a waiver of any such privilege.

This Prefatory Statement is incorporated in its entirety into each of the following disclosures. It shall be deemed continuing as to each such disclosure, and it is not waived, or in any way limited, by the following disclosures.

1

## *II. Disclosures*

(A)   *The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.*

1.   <u>Ruth Smith</u>: Ms. Smith has knowledge of certain matters alleged in the Complaint, including the circumstances under which Ms. Smith received the telemarketing calls, her lack of providing any prior express written consent to Defendant, and related matters. Ms. Smith may only be contacted through counsel, Woodrow & Peluso, LLC.

2.   <u>Defendant SunPath, Ltd. ("SunPath"), including agents, former agents, employees, former employees, and records custodians of SunPath</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including SunPath's telemarketing practices, the telemarketing calls placed to Plaintiff and the Class, SunPath's failure to obtain prior express written consent, SunPath's hiring of third-party telemarketers, lead generators, or other third parties, and related matters. As such individuals are all former or current employees or agents of the SunPath, SunPath is in a better position to ascertain their phone numbers and other contact information. The names, addresses, and telephone numbers of other agents, employees, and records custodians of SunPath are not known to Plaintiff at this time.

3.   <u>Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), including agents, former agents, employees, former employees, and records custodians of American Protection</u>: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including Defendant's failure to obtain prior express written consent, Defendant's procurement of Plaintiff's lead information, calls

placed on behalf of or for the benefit of Defendant, and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of American Protection are not known to Plaintiff at this time. American Protection's mailing address is 10627 Cocobolo Way, Boynton Beach, Florida 33437.

4.      Five9, Inc. including agents, former agents, employees, former employees, and records custodians of Five9: Such agents, employees, and records custodians may have knowledge of certain matters alleged in the Complaint, including the call records reflecting the calls placed by American Protection on behalf of SunPath and related matters. The names, addresses, and telephone numbers of other agents, employees, and records custodians of Five9 are not known to Plaintiff at this time. Five9's mailing address is 3001 Bishop Drive, Suite 350, San Ramon, CA 94583.

5.      Serge D. Jorgensen: Mr. Jorgensen may have knowledge of certain matters in this action, including his review and analysis of the Five9, Inc. call records produced in this case and related matters. Mr. Jorgensen may only be contacted through counsel, Woodrow & Peluso, LLC.

6.      Third party contractors and service providers of Defendant: Such contractors, including without limitation telemarketers, telephone number lead generators, and telephone service providers, may have knowledge of certain matters alleged in the Complaint, including but not limited to the facts surrounding the calls placed by Defendant, or were placed on Defendant's behalf or for its benefit, to Plaintiff and the other class members, including without limitation the manner by which the calls were placed and Plaintiff's lead information was obtained. Defendant is in a better position to ascertain the phone numbers and other contact information of such contractors.

3

7.      Any expert witnesses on whose opinions Plaintiff will rely on to support her

claims. To date, Plaintiff has not yet retained an expert witness, but will supplement these

disclosures as necessary.

(B)     *A copy of, or a description by category and location of, all documents, electronically*

*stored information, and tangible things that are in the possession, custody, or control of*

*the party and that the disclosing party may use to support its claims or defenses, unless*

*solely for impeachment;*

Plaintiff has access to applicable records related to the calls placed by Defendant or by a

third party acting on Defendant's behalf, for Defendant's benefit, and/or in accordance with a

contract with Defendant.

Plaintiff anticipates that a significant portion of discovery in this case will be obtained

from Defendant, and in particular via Defendant's records, servers, databases, and other

electronic storage platforms. Plaintiff also anticipates that a significant portion of discovery will

be obtained from third parties acting on Defendant's behalf, for Defendant's benefit, and/or in

accordance with a contract with Defendant. Plaintiff is not presently aware of the location of

such databases, and the third parties have not been identified. Investigation continues.

(C)     *A computation of any category of damages claimed by the disclosing party, making*

*available for inspection and copying as under Rule 34 the documents or other evidentiary*

*material, not privileged or protected from disclosure, on which such computation is*

*based, including materials bearing on the nature and extent of injuries suffered; and*

The total amount of damages incurred by Plaintiff and the putative class members is

unknown at this time. Plaintiff states that she is entitled to $500 - $1,500 per call received in

violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

per call for the second call received in violation of the VTPPA, and $5,000 per call for each subsequent call received in violation of the VTPPA. Consequently, based on the information currently available to Plaintiff, she seeks $81,000 in damages for violations of the TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to provide a full and complete computation of all class members' damages at this time. Discovery is ongoing and Plaintiff will supplement her disclosures following the receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made.

(D)     *For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.*

Plaintiff does not have any policy of insurance related to this action.

Dated: December 9, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: _/s/ Taylor T. Smith_
        One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

5

**JA1109**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on December 9, 2022.

*/s/ Taylor T. Smith*

6

# EXHIBIT 6

## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement. CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products. This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

1

**Exhibit**
**0003**

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%).   For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company.

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid.

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein.  In all cases CCM shall be solely responsible for all of its expenses.

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year.  This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below.  Written notice shall be made at least thirty (30) days prior to the end of the current term

## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term.  Written notice shall be sent via registered mail; return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may  be terminated immediately for cause upon written notice from Company to CCM if:

   i)    CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

   ii)   An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

   iii)  Breach by CCM of any provisions contained herein;

   iv)   CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

   v)    CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination.  Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer, service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20.  The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed.  Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

## NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

If to the Company:

SunPath, LTD
50 Braintree Hill Office Park – Suite 310
Braintree, MA 02184

If to the CCM:

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437
Attention : Kobi Chukran

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided. The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

## INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company. Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM.

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature, including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including, but not limited to any action, suit, or other proceeding which may be brought in connection therewith, arising out of or related to: (i) CCM's sale of Product; (ii) the negligent acts, omissions or intentional wrongdoing of CCM; (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services; or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

## MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company. The Company may assign this Agreement without CCM's consent. Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement. The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

4

24) **Property Rights.** Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company. This provision shall survive the expiration or termination of this Agreement.

25) **No Benefit to Third Parties.** The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) **Changes and Waiver.** This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM. The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby. All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) **Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) **Severability.** If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired; provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) **Law and License.** Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) **Counterparts; Facsimile Signatures.** This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement. Facsimile signatures will be accepted by both parties as execution original signatures.

32) **Announcements.** The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) **Jurisdiction.** The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                                CHUKRAN MANAGEMENT GROUP, LLC


X: _____              X: _____

Name: _____              Name: _KoBi chukran_

Date: _____              Date: _6/29/17_

5

**JA1116**

## ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement:

1) VSC Product - Horizon
2) VSC Product – Mileage Plus
3) VSC Product – Secure Advantage

6

ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to:

All states in the continental US, except: TBD

7

EXHIBIT 1 – STANDARDS of CONDUCT

See attached

8



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD, or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD, or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

Very truly yours,

Andrew Garcia
President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

25 BRAINTREE HILL PARK   //   SUITE 100   //   BRAINTREE, MA 02184   //   888 990 7786   //   FAX 855 786 7500

**JA1120**

# EXHIBIT 7

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF VIRGINIA
 3                    ALEXANDRIA DIVISION
 4   RUTH SMITH, individually and
     on behalf of all others     Case No. 1:22-cv-00081-LMB-WEF
 5   similarly situated,
 6        Plaintiff,
 7   vs.
 8   SUNPATH, LTD, a Massachusetts
     corporation,
 9
          Defendant.
10   _____
11     VIDEOCONFERENCED 30(b)(6) DEPOSITION OF SUNPATH, LTD
                    (through ANDREW GARCIA)
12                     December 8, 2022
     _____
13
     VIDEOCONFERENCED APPEARANCES:
14
     ON BEHALF OF THE PLAINTIFF:
15           PATRICK H. PELUSO, ESQ.
             Woodrow & Peluso, LLC
16           3900 E. Mexico Avenue, Suite 300
             Denver, Colorado  80210
17           Phone: 720-213-0675
             Email: ppeluso@woodrowpeluso.com
18
     ON BEHALF OF THE DEFENDANT:
19           GREGORY CAFFAS, ESQ.
             Roth Jackson Gibbons Condlin
20           8200 Greensboro Drive, Suite 820
             McLean, Virginia  22102
21           Phone:  703-485-3535
             Email:  gcaffas@rothjackson.com
22
     Also Present:  Paul Sporn, Esq.
23
24
25
                                              Page 1
```

```
 1              Q.   So we're looking at the licensee details

 2    for Chukran Management Group, which is the entity that's a

 3    party to the contract that we just reviewed as Exhibit 3.

 4              A.   Okay.

 5              Q.   Scrolling down, it's kind of split between

 6    the first and second page, but, you know, it says valid

 7    licenses.  The type of license is automobile warranty.

 8    And then it says active appointments, automobile warranty,

 9    and then there's two companies listed there.  One says

10    Wesco Insurance Company, and then the second one says

11    SunPath Ltd Corp d/b/a SunPath Ltd Corp of Delaware.

12              Do you see that?

13              A.   Yep.

14              Q.   Safe to say that that is your company,

15    SunPath?

16              A.   Yes.

17              Q.   Do you have any knowledge of -- of what a

18    licensee appointment in this context means and why SunPath

19    would be listed?

20              A.   Yes.

21              Q.   Can you explain that to me?

22              A.   Because Florida requires that they be

23    appointed to sell there if they want to sell products in

24    Florida.

25              Q.   Okay.  So is it -- is it accurate to say
```

1    that in order to sell SunPath products in Florida, there

2    has to be a licensee appointment affiliating the entity

3    with SunPath?

4             MR. CAFFAS:  I'm going to object to the

5    extent that it calls for a legal conclusion, object to the

6    extent it's not relevant, and object to the extent it

7    calls for speculation.  But, Andrew, you can answer to the

8    extent you're able to.

9             A.   Yeah.  I know that they have to get

10   appointed and they need to have a license for Florida, but

11   what that means legally, I have no idea.

12            Q.   (By Mr. Peluso)  Right.  Okay.  Is SunPath

13   involved in the process of being listed as an active

14   appointment with the State of Florida, or is that

15   something that the third party just kind of handles?

16            MR. CAFFAS:  Before you answer, Andrew,

17   I'll also raise the objection of relevance before you

18   answer, but you can answer to the extent you're able to.

19            A.   We confirmed that they obtained the license

20   when they request signup to, you know, get access to our

21   products.

22            Q.   (By Mr. Peluso)  Is there any paperwork

23   that SunPath has to file with the State of Florida in

24   order to get this appointment active?

25            MR. CAFFAS:  Objection again, relevance and

```
 1   to the extent it calls for speculation.  You can answer,
 2   Andrew.
 3            A.   Yeah.  Our attorney handles it after we
 4   find out if they have a license.  I don't know the exact
 5   process.
 6            Q.   (By Mr. Peluso)  Okay.  But SunPath is
 7   involved in that appointment process, even if it's just
 8   handled by SunPath's in-house attorney; correct?
 9            MR. CAFFAS:  Objection.  Again, relevance.
10   Objection on the grounds of speculation and on the grounds
11   that it misstates the witness's testimony.  You can answer
12   to the extent you're able to, Andrew.
13            A.   I know we have to get the license from the
14   entity, and I don't know what happens after that.
15            Q.   (By Mr. Peluso)  Would anyone at SunPath
16   know?
17            A.   Our attorney.
18            Q.   Okay.  What is that attorney's name?
19            A.   Paul Sporn.
20            Q.   And then on that "Active Appointment" tab
21   there, you know, next to SunPath, it says there's an issue
22   date of 9/20/2021, and then I guess it expires on
23   9/30/2023.  Do you see that?
24            A.   Yeah.
25            Q.   If we go down to sort of the bottom of that
```

Page 32

1　page, there's, you know, a tab titled "Inactive

2　Appointments."  And the second company under the inactive

3　appointment category is -- is SunPath; correct?

4　　　　　A.　Yep.

5　　　　　Q.　And there, it says that the issue date was

6　7/13/2017, which expired on 7/31/2021.  Do you have any

7　knowledge of why the appointment would have expired at the

8　end of July 2021, only to be reactivated sometime in

9　September 2021?

10　　　　　A.　No.  I see lots of expirations there.

11　　　　　Q.　Right.  Right.  I understand.  I'm just

12　only asking about SunPath.  As you see, it sort of expired

13　and then the one that's listed as active picked back up

14　seven weeks after that.

15　　　　　A.　I see a whole bunch expired.  I have no

16　idea.  It's probably just a Florida standard.  I have no

17　idea.

18　　　　　Q.　Right.  Okay.  Was there ever a gap in the

19　relationship between American Protection and SunPath?

20　Stated another way, did -- did the relationship between

21　SunPath and American Protection continue during the period

22　of 7/31/2021 and 9/20/2021?

23　　　　　　MR. CAFFAS:  Objection.  Vague.  Objection,

24　as well, to the extent it calls for a legal conclusion and

25　speculation.  You can answer, Andrew.

```
 1              A.   I'm not aware.

 2              Q.   (By Mr. Peluso)  Is there anyone at SunPath

 3     that would be aware, do you think?

 4              A.   It would have to be looked into.  They're a

 5     very small account.  I don't know when exactly they used

 6     us and didn't.

 7              Q.   Okay.  So are you aware of any sort of gaps

 8     or terminations in the relationship between SunPath and

 9     American Protection?

10              A.   Any gaps or term -- I'm not aware of any

11     terminations until recently, but I'm not -- I'm not aware

12     of when they would have, you know, utilized our products

13     or not.

14              Q.   Okay.  You said you're not aware of any

15     terminations until recently.  Has there been a recent

16     termination of the relationship?

17              A.   We don't -- we don't work with them

18     anymore.

19              Q.   When did that happen?

20              A.   I think in -- probably around March or

21     April of this year.

22              Q.   Okay.  All right.  I'm going to go back to

23     the document that you labeled Exhibit 1.  Just for your

24     recollection, this is the -- the deposition notice --

25     excuse me -- that has the list of topics.  I would just
```

```
 1   like to go through these topics with you.

 2              Topic 1 says, "All telephone calls you or

 3   any third party acting on your behalf caused to be made to

 4   plaintiff."

 5              Did SunPath place any calls to plaintiff?

 6        A.   No.  We don't -- we don't make any phone

 7   calls unless it's for people who have called us about

 8   claims.

 9        Q.   Right.  That's my understanding, as well.

10   So SunPath does not do outbound telemarketing itself;

11   correct?

12        A.   No.  Nobody makes calls on our behalf,

13   either.

14        Q.   Okay.  I think we could disagree on that,

15   but --

16              MR. CAFFAS:  Objection to form.

17        Q.   (By Mr. Peluso)  Any legal conclusions

18   about "on behalf of" are not really what I'm asking about.

19              So safe to say SunPath doesn't make

20   telemarketing calls?  Any calls that it would make would

21   just be sort of direct calls with its customers if someone

22   calls in with an issue about a claim or something like

23   that?

24        A.   Yes.  And no one makes calls for us,

25   either.  On behalf.
```

Veritext Legal Solutions
303-988-8470

```
 1              Q.   Okay.  2 says, "Your complete relationship
 2   with American Protection, including all contracts,
 3   agreements, leads, and communications sent and received
 4   by" -- it says "by between you and American Protection
 5   regarding any marketing or other services performed by
 6   American Protection or its agents on your behalf."
 7              Let's just kind of break that up.  We've
 8   already reviewed the contract from June of 2017 between
 9   SunPath and American Protection.  Are there any other
10   contracts or agreements between the two parties?
11              A.   No.  Not that I'm aware of.
12              Q.   Okay.  That response not that you're aware
13   of, have you looked into whether there are other contracts
14   or agreements?
15              A.   No.  Because there wouldn't be any.  I
16   mean, that's our only agreement that we have with any
17   independent contractor.
18              Q.   Okay.  So you're comfortable saying that
19   the 2017 agreement, that's the only contract?
20              A.   Yes.
21              Q.   Okay.  Now, can you, in your own words,
22   describe SunPath's relationship with American Protection?
23              A.   That's the document.
24              Q.   Right.  So I understand there's a Call
25   Center Marketing Agreement, and, you know, the document
```

Veritext Legal Solutions
303-988-8470

```
 1   speaks for itself.  But under that agreement, is it fair
 2   to say that American Protection is authorized to market
 3   and sell SunPath products?
 4              MR. CAFFAS:  I'm going to object on the
 5   grounds of speculation, calling for a legal conclusion,
 6   and asked and answered to the extent it relates to the
 7   last question, but you can answer, Andrew.
 8         A.   Yeah.  The only agreement we have with them
 9   is what's outlined in the agreement.
10         Q.   (By Mr. Peluso)  Okay.  What sort of
11   contracts -- excuse me.
12              What sort of products does SunPath offer
13   that American Protection is authorized to market?
14         A.   Service contracts.
15         Q.   Service contracts.
16         A.   Vehicle service contracts.
17         Q.   Vehicle service contracts.  Okay.  Car
18   warranties, in layman's terms; right?
19         A.   Yeah.  You're not supposed to use the word
20   "warranty."
21         Q.   Okay.  What -- what sort of additional
22   detail or explanation can you provide to me about what
23   those service contracts are?  You know, if someone buys
24   one, what are they buying?
25         A.   It outlines the terms under which we pay
```

```
 1            Q.   (By Mr. Peluso)  So, you know, the --
 2    that's the "on behalf of" thing again.  I understand that,
 3    you know, that's sort of a legal conclusion that we don't
 4    need to sort of argue over.  But do you dispute -- do you
 5    dispute that American Protection made phone calls in an
 6    effort to sell your product?
 7            MR. CAFFAS:  I'll object to the form of the
 8    question to the extent that it calls for a legal
 9    conclusion, but you can answer.
10            A.   I honestly don't know what they did,
11    whether they were inbound calls, outbound calls.  They
12    need to adhere by the law.  That's in the Standards of
13    Conduct.  And we have nothing to do with, you know, how
14    they operate.  They're expected to operate legally, within
15    the bounds of the law and the TCPA or any other rules that
16    exist.
17            Q.   (By Mr. Peluso)  Does SunPath take any
18    steps to ensure that they are doing so, or is it simply
19    sending the Standards of Conduct?  Are there any
20    procedures to ensure --
21            A.   If we get --
22            Q.   -- compliance?
23            A.   If we get a complaint, we will look into
24    the complaint if we're able to.  But other than that, no.
25            Q.   When you say "complaint," what do you mean
```

```
 1   by that?
 2            A.    If a customer were to call us and complain
 3   that they think they're getting illegal calls or something
 4   like that, we would try to help them out and figure out,
 5   you know, what's wrong, but that's it.  We have our policy
 6   that they need to operate within the bounds of the law.
 7   That's the Standards of Conduct.
 8            Q.    Okay.  So just to close the loop, other
 9   than the Standards of Conduct, SunPath doesn't have any
10   other practices, policies, or procedures that have been
11   implemented to ensure compliance with the TCPA or the
12   VTPPA, other than the Standards of Conduct and, you know,
13   responding to a consumer calling in with a complaint?
14            MR. CAFFAS:  Objection to the extent that
15   question is vague.  Object to the form of the question.
16   Misstates the witness's testimony so far and calls for
17   improper legal conclusions.  Andrew, if you can answer, do
18   so.
19            A.    That's all, I mean, I've said, that took
20   place.
21            Q.    (By Mr. Peluso)  Okay.  The next topic
22   here, the dialing equipment used to place any telephone
23   call to plaintiff's cellular telephone number, this will
24   probably be a quick one.
25                 Did SunPath place any telephone calls to
```

```
 1   plaintiff's telephone number?
 2            A.   No.
 3            Q.   Does SunPath have any dialing equipment?
 4            A.   No.
 5            Q.   "Any prior express consent that was
 6   obtained for you, American Protection, or anyone acting on
 7   your behalf to place telephone calls to plaintiff or to
 8   any other person, including the complete consent language
 9   used."
10            Let's just start with the plaintiff Ruth
11   Smith.  Are you aware of any prior express consent
12   obtained --
13            MR. CAFFAS:  I will -- sorry.  I'll let you
14   finish.
15            Q.   (By Mr. Caffas)  Sorry.  I lost my train of
16   thought.  Are you aware of any prior express consent
17   obtained by SunPath that would have given permission to
18   place telephone calls to plaintiff?
19            MR. CAFFAS:  Objection to the extent that
20   that term "prior express consent" hasn't been defined.
21   Calls for a legal conclusion and form of the question.
22   Vague.  You can answer if you're able to, Andrew.
23            A.   Okay.  We don't make any calls, so we
24   wouldn't have any prior consent to call.  I would expect
25   that if American Protection had called, which I don't know
```

```
1    if they did or not, that they would have prior consent and
2    be operating within the bounds of the law.
3              Q.   (By Mr. Peluso)  But does SunPath have any
4    knowledge of whether American Protection actually had that
5    prior express consent, or is it just an assumption on your
6    part?
7              MR. CAFFAS:  Objection.  Calls for
8    speculation and an improper legal conclusion.  Andrew, you
9    can answer.
10             A.   I don't know.
11             Q.   (By Mr. Peluso)  You don't know.  So you're
12   just making assumptions is what I'm saying?  You don't
13   have any specific knowledge about whether --
14             A.   Well, I'm not making an assumption.  We
15   wouldn't have any prior consent because we don't make any
16   phone calls and no one makes them on our behalf.  I would
17   assume if they called someone, then they have consent if
18   they needed it.
19             Q.   Right.  Again, so I understood your
20   testimony that SunPath does not place telemarketing calls.
21   The second half, though, where you said you're assuming
22   that American Protection would have obtained whatever they
23   needed to obtain, I'm wondering if SunPath has actual
24   knowledge that they did that, or is it just you're making
25   assumptions?
```

Veritext Legal Solutions
303-988-8470

```
 1                    MR. CAFFAS:  Objection.

 2            A.    They assigned --

 3                    MR. CAFFAS:  Andrew -- Andrew, before you

 4    answer, I want to object.  I'll object to that -- to the

 5    form of the question.  We're bordering on harassment at

 6    this point.  It's been asked and answered, calls for

 7    speculation and a legal conclusion.  Andrew, you can

 8    answer.

 9            A.    They signed our agreement and said they are

10    operating legally, so based on that, I assume they had

11    consent.

12            Q.    (By Mr. Peluso)  You assume.  Okay.  Did

13    SunPath conduct any investigations to see if American

14    Protection had consent?

15            A.    No.  I'm not aware of any investigation.  I

16    don't know why we would need to have an investigation.

17            Q.    Okay.  Okay.  I think we can move on.

18                    The next topic says, "The identities of all

19    persons, and the total number of such persons, who you or

20    American Protection called using the same dialing

21    equipment that was used to call plaintiff where prior

22    express consent to call the person was obtained in the

23    same manner as consent was obtained to call plaintiff."

24                    Now, I understand from prior testimony

25    that, you know, SunPath didn't directly call plaintiff,
```

1    doesn't have any dialing equipment, doesn't have any prior

2    express consent.  So is it correct to say that you don't

3    know the identities of any persons who check all these

4    boxes?

5                   MR. CAFFAS:  I'm going to object to the

6    extent you're misstating the witness's prior testimony and

7    maybe calling for speculation.  Andrew, you can answer.

8         A.   As I said, we would -- yeah.  This question

9    is just like the others.  We don't call people.  We

10   wouldn't know who the people are.  Yeah.

11                  (Reporter dropped internet connection.)

12                  (Recess taken, 12:19 p.m. to 12:27 p.m.)

13        Q.   (By Mr. Peluso)  All right.  So we're back

14   on the record.  We kind of -- just for the sake of the

15   transcript, we lost the court reporter to an internet

16   issue for -- for a few minutes there, but we're back on.

17   So I want to sort of pick up where we left off, which was

18   on this Topic 8.

19                  Perhaps it would be helpful to -- to break

20   this down to make sure that I understand your testimony.

21                  So if we're just focusing on SunPath, my

22   understanding of your prior testimony is that SunPath does

23   not make direct outbound telemarketing calls to anyone,

24   including the plaintiff Ruth Smith; is that right?

25        A.   Not quite.  We don't make any outbound

                                                    Page 51

```
 1    direct or indirect or have anyone make on our behalf phone
 2    calls.
 3              Q.   Understood.  But I'm trying to break this
 4    down.  So I'm not asking about indirect or on behalf of.
 5              A.   You said direct.
 6              Q.   Correct.  That's all I was asking about.
 7    So let's just take it one step at a time, so it's clear.
 8    SunPath's testimony is it doesn't make any direct outbound
 9    telemarketing calls to plaintiff or to anyone else?
10              A.   Correct.
11              Q.   Okay.  Because it doesn't make any direct
12    outbound telemarketing calls, it, of course, didn't use
13    any dialing equipment to make these nonexistent calls;
14    right?  Do you agree with that statement?
15              A.   Yeah.  Yeah.
16              Q.   Okay.  And because it doesn't make direct
17    outbound telemarketing calls, it doesn't try to obtain
18    prior express consent to obtain calls that it doesn't
19    make; right?
20              A.   Right.
21              Q.   Okay.  That's established.  The next sort
22    of prong of this is with this third party American
23    Protection.  Correct me if I'm wrong, but I believe your
24    prior testimony was that SunPath doesn't have knowledge of
25    any outbound telemarketing calls that may have been placed
```

Veritext Legal Solutions
303-988-8470

```
 1   by American Protection; is that accurate?
 2               MR. CAFFAS:  Objection.  It misstates
 3   Mr. Garcia's testimony, but you can answer to the extent
 4   you're able to, Andrew.
 5               A.   Yes.  We don't have any knowledge of any
 6   calls they made.
 7               Q.   (By Mr. Peluso)  Okay.  So then, if I'm
 8   asking you for the identities of persons and the total
 9   number of persons who American Protection called using the
10   same dialing equipment that was used to call the
11   plaintiff, is SunPath's answer we don't know because, as
12   you just said, we don't have knowledge of their
13   telemarketing activities?  I mean, is that fair?
14               A.   We don't have any knowledge of --
15               MR. CAFFAS:  Hold on, Andrew, before you
16   answer.  I'll object to the form of the question in that
17   it is vague and it calls for a legal conclusion and calls
18   for speculation.  But you can answer.
19               A.   We don't have any knowledge of any calls
20   they made or if they even called the plaintiff or what
21   they used to call.
22               Q.   (By Mr. Peluso)  Got it.  So, therefore,
23   you're not aware of any identities or the total number of
24   such persons who ostensibly were called; right?
25               A.   Correct.
```

Veritext Legal Solutions
303-988-8470

```
 1              Q.   Okay.  We're on the same page there.

 2   Understanding that your testimony is that SunPath is not

 3   aware of American Protection's telemarketing activities,

 4   is SunPath aware of the identities of persons who were

 5   sold SunPath products by American Protection?

 6              A.   Yes.  We have -- we know who has a

 7   contract -- if they purchased a contract because we have

 8   to administer it.

 9              Q.   Okay.  Understood.  Fair.  That ended up a

10   lot smoother on the second go-around once we got the court

11   reporter back.

12              So Topic 9 says, "The dates, times, and

13   total number of all calls you or American Protection made

14   to each such person identified in response to Topic 8."

15              Is SunPath aware of any dates, times, or

16   total number of calls American Protection placed to

17   plaintiff or other persons during the relevant time

18   period?

19              MR. CAFFAS:  Objection to the form.  The

20   question is vague.  It calls for speculation.  You can

21   answer, Andrew.

22              A.   It's the same answer as the last question.

23   I wouldn't have any idea who they made calls to or when

24   they were or anything else about them.

25              Q.   (By Mr. Peluso)  Okay.  Topic 10 is going
```

```
 1    to be the same answer, so we can just skip that.

 2              Topic 11, though, asks about any internal

 3    do not call lists or policy regarding any such list that

 4    SunPath or a third party acting on your behalf implemented

 5    or considered implementing.  Let's just stop there.

 6              Does SunPath have an internal do not call

 7    list?

 8         A.   We don't make any calls, so we don't have

 9    an internal do not call list.

10         Q.   Okay.

11         A.   We don't have anyone calling on our behalf.

12         Q.   Okay.  So SunPath does not have an internal

13    do not call list.  Does SunPath have or manage an internal

14    do not call list on behalf of any third parties?

15              MR. CAFFAS:  Objection.

16         A.   No.

17              MR. CAFFAS:  Vague.  Calls for a legal

18    conclusion.

19         Q.   (By Mr. Peluso)  You can answer if you

20    understand the question, Mr. Garcia.

21         A.   We don't -- we don't have an internal do

22    not call list.  We don't manage internal do not call lists

23    for anyone else.

24         Q.   Okay.  Has SunPath ever conducted any

25    training regarding an internal do not call list?
```

```
 1            A.   That seems like the same question.  We

 2    don't -- we don't do training and we don't have an

 3    internal do not call list.

 4            Q.   Has SunPath ever encouraged or required any

 5    third party to conduct training regarding an internal do

 6    not call list?

 7            MR. CAFFAS:  Objection to the form.  Vague.

 8    And I believe it's asked and answered.  But you can answer

 9    it, Andrew.

10            A.   We don't have an internal do not call list

11    and we haven't had anyone train on a do not call list and

12    we don't make any calls --

13            Q.   (By Mr. Peluso)  Let me just ask -- pardon

14    me.  I broke my rule and spoke over you and I'm sorry.

15            Let's just focus on American Protection,

16    this third party that we've discussed during this

17    deposition.  Has SunPath ever conducted any training to

18    American Protection regarding an internal do not call

19    list?

20            A.   No.  We don't have an internal do not call

21    list.

22            Q.   Okay.  Has SunPath ever encouraged American

23    Protection to implement its own internal do not call list?

24            A.   No.

25            Q.   Okay.  For Topic 12 -- I don't want to keep
```

Page 56

```
 1    going over the same ground.  Regarding the customers that
 2    American Protection successfully sold a SunPath product
 3    to, which you testified that you're -- you're aware of
 4    those identities because SunPath had to administer the
 5    contracts, are you aware of any such persons that reside
 6    in the State of Virginia?
 7                 MR. CAFFAS:  Objection.  Calls for
 8    speculation.
 9            A.   I don't know offhand if any of the people
10    who purchased contracts are in the State of Virginia or
11    not.
12            Q.   (By Mr. Peluso)  Would the contract --
13    sorry.  Scratch that.
14                 So would the contracts that were sold by
15    American Protection have the address of the customer on
16    the contract?
17            A.   Yes.
18            Q.   Okay.  Would it be possible for SunPath to
19    review those contracts to see if any of the addresses that
20    appear on the contract are Virginia addresses?
21            A.   Yes.
22            Q.   Do the contracts contain the customers'
23    telephone number?
24            A.   Usually.  They don't always.  It depends if
25    it gets entered onto the contract.
```

```
 1   you -- you asked the question specifically with regard to
 2   American Protection?
 3                    MR. PELUSO:  I did.
 4            A.    Okay.  Well, 18 says people calling on your
 5   behalf.  Nobody calls on our behalf.  And the receipt of
 6   complaints regarding American Protection -- receipt of
 7   complaints.  Complaints from consumers or people who
 8   bought contracts?
 9            Q.   (By Mr. Peluso)  That's what I'm asking
10   about, yes.  Has SunPath --
11            A.    I'm not -- I'm not personally aware of
12   complaints that we've gotten about -- from purchasers of
13   American Protection, no.  But -- there may have been some.
14            Q.    When a consumer contacts SunPath with a
15   complaint about the conduct of a third party, are those
16   complaints logged by SunPath?
17            A.    That would depend on the complaint.  So if
18   somebody calls up and says they don't think their claim
19   was fixed right or something like that, I mean -- I mean,
20   I don't -- I don't know.  If someone were to complain and
21   say, you know, these guys called me, can you have them
22   stop, that would be referred to our attorney and our
23   attorney would look into it.
24                    But I'm not -- I'm personally not aware
25   that we've received complaints regarding American
```

Veritext Legal Solutions
303-988-8470

```
 1   Protection.

 2            Q.   Okay.

 3            A.   It doesn't mean we didn't get any, but I'm

 4   not aware of any.

 5            Q.   And that's -- that's why I'm asking if the

 6   complaints would be logged in any way.  I understand

 7   you're saying you're not aware of any.  I'm just wondering

 8   if there would be records of the complaints that SunPath

 9   would have.

10            A.   If it was someone who was very upset and,

11   you know -- this is the case with anything:  Our customer

12   service people, our claims people would transfer them to

13   Paul and he would log it.

14            Q.   Okay.  Is there anyone other than Paul who

15   would be involved in that process?

16            A.   No.

17            Q.   Okay.  Is Paul the only attorney that works

18   in-house for SunPath?

19            A.   Yes.

20            Q.   Okay.  So Topic 19, are there -- let me ask

21   this another way.  Let's start with just American

22   Protection.  Has SunPath ever provided call scripts,

23   marketing materials, or marketing guidelines to American

24   Protection?

25            A.   No.
```

1          Q.   Has it ever provided call scripts,

2   marketing materials, or marketing guidelines to any other

3   third party?

4                MR. CAFFAS:  Objection.  Relevance.  You

5   can answer.

6          Q.   (By Mr. Peluso)  I think you may have

7   answered no, but I'm not sure if the reporter caught that.

8          A.   We don't provide any of those things.

9   That's not the business we're in.

10          Q.   Okay.  Topic 20, we'll stick again just

11   with American Protection.  Has SunPath ever conducted

12   audits or periodic reviews of American Protection?

13          A.   No.

14          Q.   No.  Has SunPath ever conducted any

15   oversight of American Protection's marketing behavior or

16   practices?

17                MR. CAFFAS:  I'll object to the form of the

18   question.  It's vague.  You may answer, Andrew.

19          A.   No.

20          Q.   (By Mr. Peluso)  All right.  I know you're

21   trying to get out of here in 3 minutes.  I'm actually

22   almost done.

23          A.   Yeah.  I have to get off like soon.  Yeah.

24          Q.   Yeah.  I know.  I know.  We're really

25   almost done.  I'm not going to ask any more questions once

Veritext Legal Solutions
303-988-8470

1    we get through these topics.  Is it okay if we proceed?

2                    THE DEPONENT:  I've got to be off at

3    exactly 1:00.  I can get back on probably at 12:40, but I

4    have to be off at 1.

5                    MR. CAFFAS:  And Pat, I have -- I have

6    redirect, as well.  So would it be helpful --

7                    MR. PELUSO:  That's fine.  Yeah.  We can

8    just break here.  What time do you think you can be back,

9    Andrew?  I just want to make sure I'm clear on that.

10                   THE DEPONENT:  To be safe, 12:45 -- 1:45.

11                   MR. PELUSO:  Right.  I was going --

12                   THE DEPONENT:  1:45 East Coast.  I think

13   you guys are somewhere else.

14                   MR. PELUSO:  Okay.  All right.  So we'll

15   break and then we'll hop back on at 1:45 Eastern.

16                   THE DEPONENT:  Okay.

17                   (Recess taken, 12:58 p.m. to 1:47 p.m.)

18           Q.   (By Mr. Peluso)  Okay.  All right.  We're

19   back on the record.  Are you able to see my -- my screen?

20   Is it still sharing?

21           A.   Yes.

22           Q.   Okay.  So, you know, just to sort of

23   refocus, we're on Exhibit 1, the Rule 30(b)(6) deposition

24   notice.  There's just a few more topics here that I kind

25   of want to address with you and then we'll -- we'll turn

                                              Page 69

```
 1   it over for Greg's -- Greg's redirect.
 2               I think we left off the Topic 20, which
 3   says, "Any oversight, audits, or periodic reviews of
 4   American Protection or any third party that places calls
 5   on your behalf or for your benefit during the relevant
 6   time period."
 7               To some extent, this is ground that we've
 8   covered, but does SunPath conduct any oversight of
 9   telemarketing practices of American Protection?
10         A.    Okay.  Well, nobody places calls on our
11   behalf, I'll say again.  And as far as oversight audits
12   and periodic reviews of American Protection, no.  We just
13   look into problems we think -- if there's a problem that
14   needs to be addressed.
15         Q.    What sort of problems would those be?
16         A.    If we had a customer -- if we had a
17   customer complaint, we would look into the customer
18   complaint.
19         Q.    Got it.  Got it.  But other than that, no
20   periodic reviews or anything like that?
21         A.    No.
22         Q.    Okay.  I think, really, the last topic I
23   want to -- sorry.  My phone is going off here.  My
24   apologies.
25               The last topic I kind of want to discuss
```

```
 1   with you about is Topic 24 here, that says, "Your sources
 2   of revenue, including the portion of your revenue that is
 3   generated from sales made by third parties acting on your
 4   behalf."
 5              So just, you know, to sort of -- to frame
 6   this a little bit, I'm not asking you to disclose
 7   SunPath's total revenue; right?  Give me a number.  I'm
 8   not asking that.  And I -- I understand sort of your
 9   consistent statement through this deposition that third
10   parties don't act on your behalf.  So let's sort of
11   reframe this to -- a way that I think everyone can agree.
12              I'm interested in understanding the portion
13   of SunPath's revenue that is generated from sales made by
14   third parties who sell SunPath's service contracts.
15              Is that 100 percent of SunPath's revenue?
16   Is it 10 percent?  What sort of chunk of its revenue do
17   you think is generated by third-party sales?
18        A.   100 percent of our revenue is from third
19   parties because we don't do any selling.
20              MR. PELUSO:  Okay.  Easy enough.  I don't
21   really have anything else.  I'll turn it over to Greg.
22                        EXAMINATION
23   BY MR. CAFFAS:
24        Q.   Great.  First things first.  I just want to
25   address that last line of questioning that Pat just
```

Page 71

1    addressed with regard to Topic Number 24.

2              Andrew, you said that 100 percent of the

3    revenue is -- is due to sales by third parties because

4    SunPath doesn't sell; right?

5         A.   Yes.

6         Q.   Is SunPath able to discern what portion any

7    percent of that revenue is generated through any specific

8    type of marketing?

9         A.   The specific type of marketing?  No.

10        Q.   Like, for example, you wouldn't be able to

11   tell what proportion is done through direct calls versus

12   online sales or sales generated through a third party's

13   use of mailings, documents?

14        A.   Correct.  We don't know what type of

15   marketing a third party uses.

16        Q.   Okay.  As a proportion of the total revenue

17   that SunPath would generate through third-party sales, do

18   you have any idea what American Protection specifically

19   would be responsible for?

20        A.   It would be very small.  I don't know what

21   percentage, but it would be very small.

22        Q.   So would it be accurate to say that you

23   don't rely in any large part on American Protection's

24   sales of SunPath products?

25        A.   No.  Not at all.

```
 1              Q.   It is not essential to SunPath's business,
 2    American Protection sales?
 3              A.   Not at all.
 4              Q.   Andrew, I want to clarify your testimony
 5    regarding earlier in the deposition, when you discussed
 6    the documents you reviewed in preparation for the
 7    deposition.
 8              In the process of preparing for this
 9    deposition, did you also review relevant pleadings filed
10    in this case including, for example, the complaint, as
11    well as documents produced by American Protection in
12    response to subpoenas in this case?
13              A.   Yes.
14              Q.   And also, when asked if SunPath
15    communicated with any third parties regarding this case, I
16    believe there may have been some confusion regarding who
17    plaintiff's counsel was referring to when it said "third
18    party."
19              Did anyone at SunPath contact American
20    Protection regarding the claims at issue in this case?
21              A.   Paul.
22              Q.   And was that disclosed in the documents
23    that SunPath produced in response to plaintiff's discovery
24    requests in this case?
25              A.   Yes.  I believe so.
```

Veritext Legal Solutions
303-988-8470

```
 1              Q.   And when you say "Paul," I assume you're
 2     referring to Paul Sporn?
 3              A.   Paul Sporn, our attorney.
 4              Q.   And are you aware of whether he was able to
 5     contact American Protection and receive any response about
 6     the claims in this case?
 7              A.   Yes.  He spoke to them.
 8              Q.   And in any of the communications that
 9     SunPath specifically, through Paul, had with American
10     Protection, are you aware of whether American Protection
11     represented that it violated any of the telemarketing laws
12     that are at issue in this case?
13              A.   No.  They said they didn't.
14              Q.   I'm sorry.  When you say they didn't --
15              A.   They didn't violate any laws.
16              Q.   As part of the preparation for today's
17     deposition, did you review the deposition transcript for
18     the deposition that was conducted with American Protection
19     in connection with this case?
20              A.   Yes.
21              Q.   I'm going to share my screen here.  Sorry.
22     My -- okay.  Can you see on my screen what I have here
23     that's --
24              A.   Yes.
25              Q.   -- the cover page of Mr. Chukran's
```

Veritext Legal Solutions
303-988-8470

```
 1   deposition as a representative for American Protection?

 2            A.   Yes.

 3            Q.   And do you recognize this as the transcript

 4   that you reviewed?

 5            A.   Yes.

 6            Q.   And I'll represent that this is just an

 7   excerpt of Mr. Chukran's deposition, and I will scroll to

 8   testimony that he provided on page 222.

 9                 Okay.  You'll see here it starts at line

10   20 -- the question that I'm referring to -- the question

11   posed to Mr. Chukran was:

12                 "Did SunPath provide any kind of training

13   to American Protection?

14                 "Answer:  Any kind of what?"

15                 It was clarified "training" in line 23.

16                 And you'll see on line 24, Mr. Chukran

17   answered, "Just in terms of product training."

18                 Do you see that?

19            A.   Yes.

20            Q.   Do you have any idea what Mr. Chukran would

21   have been referring to when he referenced "product

22   training"?

23            A.   He would be referring to getting education

24   on what our products are.  I really wouldn't call it

25   training.  I would call it education.  So we explain to
```

Veritext Legal Solutions
303-988-8470
**JA1152**

```
 1   people what our products are and how they work.
 2            Q.   And -- but as part of that product
 3   education, would SunPath ever provide American Protection
 4   with any kind of instruction as to how to market or sell
 5   that product at all?
 6            A.   No.
 7            Q.   To your knowledge, would SunPath have any
 8   knowledge of any subcontractor that American Protection
 9   would have hired in order to market or sell any product?
10            A.   No.
11            Q.   Okay.  I'd like to now direct you to the
12   bottom of page 223 of Mr. Chukran's deposition testimony
13   where it -- where it states at page -- at line 24, it
14   says:
15            "On occasion, some companies would offer
16   training that could be done, for example, via Zoom, and
17   that would include some subcontractors attending those
18   trainings."
19            Do you ever know of an -- are you aware of
20   any instance in which SunPath would have provided any Zoom
21   training of any type to any subcontractor of American
22   Protection?
23            A.   No.
24            Q.   I'd like to now direct you to line 6 of
25   page 224 of Mr. Chukran's deposition, where he says,
```

```
 1    "Possibly."  And that is in the context of whether or not

 2    American Protection's subcontractors may have received

 3    training.  And then he continues:

 4                "I'm not sure of an exact -- I don't have a

 5    time.  I don't know exactly, but SunPath does have a sales

 6    representative.  His name's Brian.  It is my understanding

 7    his job is to provide training."

 8                Are you aware of an employee of SunPath

 9    named Brian that Mr. Chukran --

10          A.   Yes.

11          Q.   -- is referring to?

12          A.   Yes.

13          Q.   And who is Brian that Mr. Chukran is

14    referring to?

15          A.   Brian is our account rep, so when, you

16    know, an independent company has a question about our

17    product or something, they can call Brian.  If they have

18    an issue that they think a customer is upset over a claim

19    or something, they can call Brian.

20                He's just an account rep that people

21    contact and he would educate people, he would tell them

22    about our products and that's it.  He doesn't provide any

23    kind of training, other than telling people about how our

24    products work.

25          Q.   Okay.  So would it be accurate to say that
```

```
 1   he never conducted training sessions of any kind for any
 2   third party authorized to sell --
 3            A.   No.  He does not provide training ever.
 4            Q.   And would that be accurate then to also say
 5   that he didn't provide -- "he" being Brian in this case or
 6   anyone else at SunPath -- did not provide any kind of
 7   training or instruction on how to market or sell any
 8   SunPath product in any way to a third party authorized to
 9   market or sell SunPath's product?
10            A.   Yes.  That's accurate.  Brian doesn't do
11   any training.
12            Q.   Do you have any idea why Mr. Chukran would
13   have testified to that?
14            A.   No.  I mean, he may have had other
15   companies provide training, but Brian didn't do it.  I
16   mean, I don't -- I have no idea what someone provided to
17   them, but it wasn't SunPath or Brian.
18            Q.   Okay.  I'd like you now to look at line 15
19   of page 224 of Mr. Chukran's deposition testimony where
20   the question was asked:
21            "And you said already, though, that if it
22   was any kind of training, it would just be as to what
23   SunPath's products are."
24            To which Mr. Chukran responded:
25            "In some cases, they would offer -- and,
```

Page 78

```
 1    again, I -- I don't have specific incidents, but just in
 2    terms of industry, sometimes they would offer some
 3    incentives of the highest sales for the month, for
 4    example.  They would offer some kind of cash incentive."
 5              To your knowledge, Andrew, was there ever
 6    any incentives SunPath offered based on monthly sales or a
 7    cash incentive to any third-party marketer or seller of
 8    SunPath's products?
 9         A.   No.  We have never offered them or anyone
10    else a cash incentive to sell products, no.
11         Q.   Okay.  And specifically, with regard to
12    American Protection, would it also be accurate that there
13    was no kind of any cash or monthly incentive for the
14    volume of SunPath's products?
15         A.   Correct.  We never offered American
16    Protection any type of incentive or anything else.
17         Q.   Andrew, did SunPath ever in any way
18    restrict American Protection's ability to offer other
19    companies' products at the same time American, for
20    example, was authorized to sell SunPath's products?
21         A.   Did we restrict what?
22         Q.   Was -- for example, did the agreement that
23    SunPath has with American Protection or any third party
24    restrict those parties from offering other companies'
25    products?  For example, SunPath's competitors' products?
```

Veritext Legal Solutions
303-988-8470

1          A.   No.  No.  They -- they all offer other

2    products.

3          Q.   So, to your understanding, American, for

4    example, would have been authorized to offer SunPath's

5    competitors' products alongside SunPath's products to any

6    consumer they contacted?

7          A.   Yes.  That's up to them.  We have nothing

8    to do with it.

9          Q.   And to your knowledge, did American

10   Protection offer other companies' products at the same

11   time it was authorized to sell SunPath's products?

12         A.   I believe so, but I don't know for sure

13   because I don't know what they sell.

14         Q.   You mentioned there may have been one other

15   complaint involving American Protection besides the

16   complaint in this lawsuit.

17              Do you recall, in that other case, whether

18   or not SunPath or American Protection were found to be

19   liable for violating any telemarketing laws?

20         A.   We haven't been liable for anything, and to

21   my knowledge, they haven't been, either, but -- that's my

22   understanding.

23         Q.   And to your knowledge, regarding the other

24   complaint or case you referred to involving American

25   Protection, were the telemarketing calls that were the

```
1    subject of that case or complaint prior to or after the

2    calls at issue in the present lawsuit?

3              A.   I believe they were after, but I would have

4    to check.

5              Q.   To the best of your knowledge, do you have

6    any knowledge at all of American Protection being accused

7    of telemarketing violations prior to the calls that are at

8    issue in this case that Ruth Smith has filed against

9    SunPath?

10             A.   No.

11             Q.   Do you recall reviewing and verifying the

12   contents of the written discovery responses that SunPath

13   provided in this case?

14             A.   Yes.

15             Q.   And were those responses accurate to the

16   best of your knowledge based on the information you had

17   available?

18             A.   Yes.

19             Q.   Andrew, if you'll recall, the agreement

20   between SunPath and American Protection that you reviewed

21   earlier today, is it your understanding that pursuant to

22   the terms of that agreement, American Protection agreed to

23   obey all applicable laws that are the subject of any

24   marketing that it undertook?

25             A.   Yes.  Yes, I did.
```

```
 1              Q.   Has SunPath ever directed American

 2    Protection or any other third-party authorized sellers of

 3    SunPath's product to violate the Telephone Consumer

 4    Protection Act?

 5              A.   No.

 6              Q.   Has SunPath ever directed American

 7    Protection or any other third party authorized to sell or

 8    market SunPath's product to violate the Virginia Telephone

 9    Privacy Protection Act?

10              A.   No.

11              Q.   Has SunPath ever directed American

12    Protection to violate any telemarketing laws?

13              A.   No.

14              Q.   Has SunPath ever authorized American

15    Protection to operate outside of the bounds of the

16    agreement between the parties?

17              A.   No.

18              Q.   Is SunPath aware at all that American

19    Protection has at any time violated any telemarketing

20    laws?

21              A.   No.

22              Q.   Has SunPath ever intentionally violated the

23    Virginia Telephone Privacy Protection Act?

24              A.   No.

25              Q.   Has SunPath ever caused another party to
```

Veritext Legal Solutions
303-988-8470
**JA1159**

```
 1    call Ruth Smith or any other person in violation of any

 2    law governing telemarketing?

 3              A.    No.

 4              MR. CAFFAS:  I think that's all I have for

 5    the moment.  If you wouldn't mind, Pat, I'd like to take a

 6    5-minute recess just to review my notes and make sure I

 7    haven't missed anything.  But, otherwise, I think that's

 8    all I have for now.

 9              MR. PELUSO:  Yeah.  Sure.  No problem.

10              MR. CAFFAS:  Let's go off the record.

11    Again, I'll just take 5 minutes.

12              MR. PELUSO:  All right.

13              (Recess taken, 1:11 p.m. to 1:13 p.m.)

14              MR. CAFFAS:  I do not have any other

15    questions.  So we're back on the record.  I'll turn it

16    back over to you, Pat, if you have any additional

17    questions, but I'm finished.

18              MR. PELUSO:  That will be it for me, too.

19              THE COURT REPORTER:  And do you want a copy

20    of the deposition, Greg?

21              MR. CAFFAS:  Yes, I would like a copy of

22    the deposition.  I would say by Monday, if possible.

23              THE COURT REPORTER:  Will you handle

24    signature for me?

25              MR. CAFFAS:  Yes.
```

Veritext Legal Solutions
303-988-8470

```
1              THE COURT REPORTER:  Is there a trial date
2    I need to be aware of?
3              MR. PELUSO:  No trial date.
4              (Exhibit 5 was marked.)
5              * * * * * * * * * *
6         (WHEREUPON, the foregoing deposition was
7    concluded at the hour of 12:14 p.m.  Total time on the
8    record was 2 hours, 15 minutes.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 84

```
1           I, ANDREW GARCIA, the deponent in the above
2    deposition, do hereby acknowledge that I have read the
3    foregoing transcript of my testimony, and state under oath
4    that it, together with any attached Amendment to
5    Deposition pages, constitutes my sworn testimony.
6
      _____ I have made changes to my deposition
7
      _____ I have NOT made any changes to my deposition
8
9
10
11                           _____
                             ANDREW GARCIA
12
13
14
            Subscribed and sworn to before me this _____
15
    day of _____, 20_____.
16
            My commission expires:  _____.
17
18
                             _____
19                           NOTARY PUBLIC
20
21
22
23
24
25

                                                    Page 85
```

```
 1              CERTIFICATE OF DEPOSITION OFFICER
 2    STATE OF COLORADO           )
 3    CITY AND COUNTY OF DENVER    )
 4         I, Bonnie Carpenter Johnshoy, a Registered
 5    Professional Reporter, commissioned to administer oaths,
 6    do hereby certify that previous to the commencement of
 7    the examination, the witness was duly sworn by me to
 8    testify to the truth in relation to matters in
 9    controversy between the said parties; that the said
10    deposition was taken in stenotype by me at the time and
11    place aforesaid and was thereafter reduced to typewritten
12    form by me; and that the foregoing is a true and correct
13    transcript of my stenotype notes thereof.
14         That I am not an attorney nor counsel nor in any
15    way connected with any attorney or counsel for any of the
16    parties to said action nor otherwise interested in the
17    outcome of this action.
18
19
20              Bonnie Carpenter Johnshoy
                Registered Professional Reporter
21              Certified Shorthand Reporter
                Certified Realtime Reporter
22
23
24
25
                                          Page 86
```

# EXHIBIT 8

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     ALEXANDRIA DIVISION
 3
       RUTH SMITH, individually and on
 4     behalf of all others similarly
       situated,
 5
                      Plaintiff,        Case No.
 6                                      1:22-cv-00081-LMB-
       vs.                              WEF
 7
       SUNPATH, LTD., a Massachusetts
 8     corporation,
 9                    Defendant.
       _____/
10
11                      DEPOSITION OF
       RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12     d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                         KOBI CHUKRAN
13
                 (Conducted Via Videoconference)
14
15
         DATE:            November 1, 2022
16
17       TIME:            11:03 a.m. to 2:06 p.m.
18
         PURSUANT TO:     Notice by counsel for Plaintiff
19                        for purposes of discovery, use at
                          trial or such other purposes as
20                        are permitted under the Federal
                          Rules of Civil Procedure
21
22       REPORTED BY:     Aaron T. Perkins, RMR, CRR, CRC
                          Notary Public, State of
23                        Florida at Large
24
                          Pages 1 to 128
25

                                                   Page 1
```

```
 1          Q.   Throughout the time you worked with
 2     SunPath, were you in regular contact with them?
 3          A.   No.
 4          Q.   Did you have an individual that you
 5     could contact if you needed to discuss something?
 6          A.   Yes.
 7          Q.   Was it just one person or were there
 8     multiple people?
 9          A.   Mostly one.
10          Q.   Can you --
11          A.   I apologize.  There were a few different
12     persons.
13          Q.   Okay.  Was there one primary and then a
14     few additional?
15          A.   Yes.
16          Q.   Okay.  Can you tell me who your primary
17     contact was?
18          A.   Mr. Joe Abrahms.
19          Q.   Can you spell that?
20          A.   J-o-e; Abrahms, A-b-r-a-h-m-s.
21          Q.   And who were the other individuals that
22     you would communicate with from SunPath?
23          A.   Mr. Larry Lowe.
24          Q.   Can you spell that?
25          A.   L-a-r-r-y, L-o-w-e.
```

Veritext Legal Solutions
303-988-8470

**JA1166**

```
 1          Q.    Anyone else?

 2          A.    A few persons in the claims department.

 3          Q.    Okay.  Do you remember their names?

 4          A.    No.

 5          Q.    Okay.  Mr. Joe Abrahms, what would you

 6    typically communicate with him about?

 7          A.    Just business matters, product

 8    information, product pricing --

 9          Q.    Okay.  Can you tell me how frequently --

10          A.    -- claim information.

11          Q.    Okay.  Can you tell me how frequently

12    you would say you have talked with him?

13          A.    Maybe once a month or so, maybe even

14    less frequently.

15          Q.    Okay.  And Mr. Lowe, how often would you

16    say you have spoke with him?

17          A.    More regularly.

18          Q.    Daily, weekly?

19          A.    Weekly.

20          Q.    And what would you talk to Mr. Lowe

21    about?

22          A.    Clients' claims.

23          Q.    Okay.  Was SunPath involved in American

24    Protection's sales process?

25                MR. TANDY:  Could you repeat that
```

Page 27

```
 1              question?  I may have misheard it.
 2                   MR. SMITH:  Yeah.
 3         BY MR. SMITH:
 4              Q.   Was SunPath involved in
 5         American Protection's sales process?
 6                   MR. CAFFAS:  I'm going to object to the
 7              form of the question as confusing, vague.
 8                   THE WITNESS:  I'm sorry, can I ask a
 9              question, if I may?  Greg, just so I
10              understand, you represent?
11                   MR. TANDY:  I'm here on behalf of
12              SunPath.
13                   THE WITNESS:  Thank you.
14                   MR. TANDY:  And I guess Paul Sporn is
15              with you, Taylor?
16                   MR. SMITH:  No.
17                   MR. CAFFAS:  Paul Sporn is representing
18              SunPath.
19                   MR. TANDY:  Okay.  So a representative?
20                   MR. CAFFAS:  I'm SunPath's attorney.
21                   MR. SPORN:  Counsel, I'm the general
22              counselor of SunPath.
23                   MR. TANDY:  Not a problem.  I apologize,
24              Mr. Sporn.  I hadn't asked until now, but as
25              long as we were identifying people, it seemed
```

```
 1            like an appropriate time.  My apologies.

 2                MR. SPORN:  And my apologies for not

 3            introducing myself properly, but Greg is

 4            handling the deposition for us.  I'm merely

 5            observing.

 6                MR. TANDY:  All good.  Not a problem.

 7            Thank you.

 8      BY MR. SMITH:

 9            Q.   So I will go back to my question and

10      repeat it.

11                Is SunPath involved in

12      American Protection's sales process?

13                MR. TANDY:  Again, note the objection.

14                MR. CAFFAS:  Object to the form.

15      BY MR. SMITH:

16            Q.   You can still answer the question.

17            A.   I'm not sure I understand the question.

18      It's a very general question.

19            Q.   Okay.  Why don't you tell me how

20      American Protection goes about selling vehicle

21      service contracts.

22            A.   Sure.  We receive a lead of an

23      interested prospect.  We contact that client, and

24      we make sure that they are qualified to receive

25      coverage based on the year, make, and model of the
```

Veritext Legal Solutions
303-988-8470

**JA1169**

```
 1    vehicle, as well as the mileage.  Based on this
 2    information, we can determine what is the best
 3    coverage we can offer.
 4         Q.   And then once you make that
 5    determination, what happens next?
 6         A.   Then we submit the sale to the -- to be
 7    underwritten by SunPath.
 8         Q.   And throughout that sales process, you
 9    know, you get the lead, you contact the client,
10    you see what they're qualified for, you determine
11    what's best for them, and then you reach out to
12    SunPath.
13              Is that final step, reaching out to
14    SunPath, is that where contacting SunPath would
15    come in to play or would you have contacted them
16    at some point prior?
17              MR. TANDY:  Objection.
18              MR. CAFFAS:  Yeah.  Objection to form as
19         well.  It's a compound question.
20              MR. TANDY:  And I must object.  To the
21         extent that you're attempting to define the
22         term sales pathway, I object to that, or
23         process.  I'm sorry, Mr. Smith, but I do
24         think that's really compound.
25              MR. SMITH:  That's fine.
```

Veritext Legal Solutions
303-988-8470

```
 1      BY MR. SMITH:

 2          Q.   You can still answer.

 3          A.   What was the question again?

 4          Q.   I'm just trying to understand when the

 5      first time throughout American Protection's sales

 6      process they would contact SunPath about a

 7      particular sale.  Is it in the end, or is it at

 8      some point along the way, for example, when

 9      they're trying to find out if a customer is

10      qualified for a product?

11                  MR. TANDY:  Object to the form.  I'm

12          going to renew my objection to the compound

13          question.  And as well, I'm not sure that it

14          is accurately characterizing Mr. Chukran's

15          testimony to the extent you're suggesting

16          that they only use SunPath, which I believe

17          he has already said is not the case.  To the

18          extent you are testifying, Mr. Smith, I would

19          object to that.

20                  MR. SMITH:  All right, Greg.

21      BY MR. SMITH:

22          Q.   You can answer the question.

23          A.   So we provide the specifications in

24      terms of what would qualify for specific coverage

25      based on a customer's vehicle information.
```

```
 1          Q.    Okay.  So let's walk through this.

 2                You obtain leads from various sources;

 3     is that correct?

 4          A.    Yes.

 5          Q.    Okay.  And then you're going to reach

 6     out to those leads to potentially sell a vehicle

 7     service contract, right?

 8          A.    Yes.

 9          Q.    Okay.  After you contact the potential

10     client, you're going to find out what they're

11     qualified for; is that fair to say?

12          A.    Well, in some cases, the customer

13     contacts us.

14          Q.    Okay.  Maybe they contact you; you

15     contact them.  Once you're in touch with the

16     potential customer, you determine what they're

17     qualified for?

18          A.    Yes.

19          Q.    Okay.  How do you go about doing that?

20          A.    Based on the customer's vehicle

21     characteristics, the year, make, model, and

22     mileage.

23          Q.    And then what do you do with that

24     information?

25          A.    We enter it into our CRM that allows us
```

```
 1      to determine what coverage the particular customer
 2      qualifies for.
 3          Q.   Okay.  And how does your CRM know which
 4      product is best for the customer?  Let me rephrase
 5      that question.  Sorry.  I will strike that
 6      question.
 7               What do you input into your CRM to
 8      determine what customers will be best qualified
 9      for?
10          A.   The year, make, model, and mileage
11      information of the vehicle.
12          Q.   All right.  From, let's say, SunPath, if
13      you're selling a SunPath product, what information
14      would be in your CRM to determine if they qualify
15      for that product?
16          A.   A product availability.
17          Q.   Okay.  While you're determining whether
18      o not they qualify for a product, do you ever
19      reach out to those service companies?
20               MR. TANDY:  Objection.
21               THE WITNESS:  I don't understand the
22          question.
23      BY MR. SMITH:
24          Q.   Okay.  Is it fair to say, if I say a
25      vehicle service company, I'm referring to SunPath
```

Veritext Legal Solutions
303-988-8470

```
 1        and the other parties who you sell their vehicle

 2        services contracts?  Do you understand that?

 3             A.   Yes.

 4             Q.   Okay.  So when you're trying to

 5        determine if a customer is qualified for a

 6        particular plan, do you ever contact these

 7        companies?

 8             A.   No.

 9             Q.   So American Protection would make that

10        determination, and then they would provide the

11        potential client with the best plan.

12                  MR. TANDY:  I will object to the form

13             and, again, object to the extent that you're

14             characterizing Mr. Chukran's testimony

15             regarding whether or not American Protection

16             is making a determination.

17        BY MR. SMITH:

18             Q.   You can answer.

19             A.   Again, we provide the specifications,

20        plan specifications, by, in this case, SunPath

21        which allows us to determine what is the best plan

22        for the customer's needs.

23             Q.   Okay.  And once you determine what's the

24        best plan that customer is qualified for, then you

25        go back to the customer and provide them with that
```

```
1       plan?
2            A.   I'm sorry, repeat the question please.
3            Q.   Once you determine which plan a customer
4       is best qualified for, then you back to the
5       customer and provide them with the plan that you
6       believe best suits their needs?
7            A.   Yes.
8            Q.   Okay.  And then the customer can either
9       say, no, I don't want that plan, or, yes, I do?
10           A.   Yes.
11           Q.   Okay.  What happens if the customer
12      says, All right, I want to purchase that plan?
13                MR. TANDY:  Objection.  I'm not sure I
14           understood your question, Taylor.
15      BY MR. SMITH:
16           Q.   I'm just trying to understand how they
17      go about closing the sales process.  What happens
18      after a customer says, All right, I will purchase
19      that vehicle service plan?
20           A.   We receive information, and that
21      information is then submitted, in this case,
22      SunPath for fulfillment.
23           Q.   And would SunPath always accept that
24      contract, or would they sometimes decline it?
25                MR. TANDY:  Objection.
```

Veritext Legal Solutions
303-988-8470

```
 1              You can answer.  I'm objecting to the
 2         form of the question.
 3              THE WITNESS:  In some cases it would be
 4         rejected.
 5    BY MR. SMITH:
 6         Q.   Can you tell me an example of why
 7    SunPath would reject a particular contract?
 8              MR. TANDY:  Objection, Taylor, to the
 9         extent you're asking him to surmise why
10         another company rejected the a contract.  Or
11         are you only asking if he's ever been told
12         specific reasons?  Because the first way I'm
13         going to object that that's speculation.  But
14         if it's the second reason, then I would ask
15         you to ask that specific question.
16              Does that make sense?
17              MR. SMITH:  I understand what you're
18         saying.
19    BY MR. SMITH:
20         Q.   Would you ever receive a rationale for
21    why SunPath would have rejected one of
22    American Protection's sales contracts?
23         A.   Yes.
24         Q.   What would those rationales be?
25         A.   It could have been that the title of the
```

1      vehicle was rebuilt or rebranded.

2          Q.   Any other reasons?

3          A.   That's most of the -- that would be the

4      most.

5          Q.   Okay.  Let's say SunPath rejected one of

6      the contracts.  Would American Protection go about

7      trying to fix the issue with SunPath and submit it

8      again?

9          A.   No.  If the vehicle does not qualify for

10     coverage, there's really nothing we can do.

11         Q.   Okay.  And if SunPath rejects the

12     contract, would American Protection ever say, All

13     right, well, then we have these other options with

14     one of the other companies that you work with?

15         A.   No.

16         Q.   Okay.  You said you entered the payment

17     information and submit it to, in this case,

18     SunPath.

19              Where would you enter that payment

20     information?

21         A.   Into our CRM system.

22         Q.   The CRM.

23              And does SunPath have access to that CRM

24     system?

25         A.   I'm not sure.

```
1          Q.   How would SunPath receive that
2    information?
3          A.   They would receive a feed from the CRM
4    system.
5          Q.   A feed.
6               Okay.  So would that -- do you know if
7    that would communicate with one of SunPath's
8    systems?
9          A.   I assume.  I don't know.
10         Q.   Okay.
11         A.   I have never seen the operation.
12         Q.   Is the CRM -- did SunPath recommend that
13   you use this specific CRM?
14         A.   No.
15         Q.   Do you know the name of the CRM?
16         A.   Yes.
17         Q.   What is it?
18         A.   Inline CRM.
19         Q.   And when did you start using that?
20         A.   I believe around 2018.
21         Q.   Did you provide SunPath with access to
22   that CRM?
23         A.   No.
24         Q.   When you say they would receive a fee,
25   can you elaborate on that, what you mean by that?
```

```
 1          A.    I'm not sure of the technical process in
 2    place, so I would -- I don't want to provide
 3    inaccurate information.  I would assume that it's
 4    some kind of feed that goes from the CRM to
 5    SunPath's office.
 6          Q.    Okay.
 7          A.    It depends on what language or how it's
 8    done.  I'm not sure.
 9          Q.    Does SunPath have any systems that they
10    provided American Protection with access to?
11          A.    No.
12          Q.    Does SunPath provide any resources to
13    American Protection?
14          A.    No.
15          Q.    Okay.  Do they provide any oversight
16    over your business?
17          A.    We are appointed by SunPath in Florida
18    in terms of the agent of record.
19          Q.    What does that mean?
20          A.    That means that SunPath appoints us as
21    an agent of record in Florida in terms of
22    licensing or in terms of the ability to sell this
23    product.
24          Q.    Okay.  And when you say "appoints," is
25    this through a government database, or is this
```

```
1        just --
2             A.   Yes, yes.
3             Q.   Okay.  Can you tell me what department
4        that you would be appointed with on behalf of
5        SunPath?
6                  MR. TANDY:  Objection.
7                  You can answer.
8                  THE WITNESS:  The Florida department of
9             licenses.  I don't remember the exact name.
10       BY MR. SMITH:
11            Q.   Okay.
12            A.   It's something that SunPath handles.
13            Q.   Okay.  Do you know if
14       American Protection is SunPath's only agent in
15       Florida?
16            A.   We are not.
17            Q.   You're not.
18                 Okay.  And did American Protection
19       receive a copy of documents reflecting this
20       appointment by SunPath?
21            A.   Yes.
22            Q.   Do you still have that document?
23            A.   Yes.
24            Q.   Does SunPath provide any other oversight
25       over American Protection's business?
```

```
 1            MR. TANDY:  Objection to form and to,
 2        again, the fact that you're testifying for
 3        Mr. Chukran suggesting that he has testified
 4        that SunPath does provide oversight, which I
 5        don't believe that is the testimony before
 6        us.
 7   BY MR. SMITH:
 8        Q.   You can answer.
 9        A.   What was the question again?  I'm sorry.
10        Q.   Yeah.  Does SunPath provide any other
11   oversight over American Protection's business?
12            MR. TANDY:  Objection.
13            You can answer, Kobi.
14            THE WITNESS:  I'm not really sure what
15        you mean in terms of oversight.
16   BY MR. SMITH:
17        Q.   All right.  Let's see.  Does SunPath
18   ever ask for information about your sales?
19        A.   They have -- they have a copy of our
20   sales, yes.
21        Q.   They have a copy of your sales.
22            How would they receive that copy?
23        A.   They receive a copy of our sales, of our
24   SunPath sales, yes.
25        Q.   Do they receive a report by the month,
```

1 or how do they receive that?

2   A. Via the same feed I was referring to

3 earlier.

4   Q. Okay. So they would receive a copy of

5 each sale; is that fair to say?

6   A. Yes.

7   Q. Does SunPath provide any operational

8 standards that American Protection has to abide

9 by?

10     MR. TANDY: Objection.

11     MR. CAFFAS: Can I also interject, not

12   to object as well, but to ask that, Aaron,

13   when you object, could you specify for the

14   record the basis for your objection just

15   so --

16     MR. TANDY: Sure. My basis for the

17   objection is form. I don't think there's

18   been a definition of the term that Taylor was

19   using. So I apologize. I will try to do

20   that, Greg, more often.

21     MR. CAFFAS: No problem. I just want to

22   make sure I'm not chiming in for something

23   that you've chosen to object to.

24     MR. TANDY: Sure.

25     THE WITNESS: The only such oversight

Veritext Legal Solutions
303-988-8470

```
 1            would be highlighted in the Seller Agreement
 2            between American Protection and SunPath.
 3     BY MR. SMITH:
 4         Q.    Okay.  Did SunPath ever provide any
 5     guidance on telemarketing?
 6         A.    Whatever is listed within the Seller
 7     Agreement with SunPath.
 8         Q.    Okay.  Nothing else?
 9         A.    From time to time we would receive an
10     e-mail from Mr. Sporn with specific numbers that
11     have to be added to our internal DNC list.
12         Q.    How frequently would you receive those?
13         A.    I don't know if there was a particular
14     way to quantify that.
15         Q.    Okay.  Any other guidance?
16         A.    No.
17         Q.    Okay.  Did SunPath ever provide any
18     training to American Protection?
19         A.    No.
20         Q.    Does SunPath ever have any seminars,
21     gatherings, or meetings that they would invite
22     American Protection to?
23         A.    No.
24         Q.    Does SunPath provide any training on the
25     Telephone Consumer Protection Act?
```

Veritext Legal Solutions
303-988-8470

```
1        A.    No.
2        Q.    Does SunPath provide any training on the
3   Virginia Telephone Privacy Act?
4        A.    No.
5        Q.    Does SunPath have any policies and
6   procedures that they require you to follow related
7   to telemarketing?
8        A.    If so, it would be the highlighted in
9   the Seller Agreement.
10       Q.    Okay.  Nothing beyond the Seller
11  Agreement?
12       A.    Not to my immediate knowledge.
13       Q.    Okay.  Does SunPath have any policies
14  and procedures that they require
15  American Protection to follow with respect to the
16  Telephone Consumer Protection Act?
17       A.    No, with the exception of asking to
18  remove some numbers from time to time.
19       Q.    Okay.  And does SunPath have any
20  policies and procedures that they require to you
21  follow related to the Virginia Telephone Privacy
22  Act?
23       A.    Not to my knowledge.
24       Q.    Does American Protection sell SunPath's
25  products throughout the U.S., or is it limited in
```

Veritext Legal Solutions
303-988-8470

1      territorial scope?

2          A.    It is limited to the states SunPath

3      operates in.

4          Q.    And do you know those states?

5          A.    Not offhand.

6          Q.    Okay.  Does SunPath put any pressure on

7      American Protection to make a certain number of

8      sales each month?

9          A.    No.

10         Q.    Does SunPath require American Protection

11     to maintain a do-not-call list?

12         A.    No.

13         Q.    Does SunPath have a do-not-call list

14     that American Protection is required to adhere to?

15         A.    No.

16         Q.    Does SunPath permit American Protection

17     to use its name in marketing materials?

18         A.    I believe so, yes.

19         Q.    Does SunPath restrict how

20     American Protection can market?

21         A.    Everything would be highlighted in the

22     Seller Agreement.

23         Q.    But nothing beyond a Seller Agreement?

24         A.    Not to my knowledge.

25         Q.    Okay.  Can you tell me how SunPath would

```
1        compensate American Protection for the sale of one
2        of its vehicle service contracts?
3                MR. TANDY:  I'm going to object to the
4            extent of relevance, but I will leave that --
5            I don't know that it's protected by the
6            contract.
7                MR. CAFFAS:  I will also object to the
8            form in that it's leading, suggesting that
9            SunPath does pay American Protection at all,
10           which I don't believe that's in the
11           testimony, so I will object, again, to
12           leading, as I believe that's your testimony,
13           Mr. Smith.
14       BY MR. SMITH:
15           Q.   You can answer, Kobi.
16           A.   SunPath does not compensate us for the
17       sales.  We are -- we pay SunPath a cost for the
18       policy, and we then collect the payments from the
19       customer.
20           Q.   Okay.  So American Protection, would
21       they set the price of the vehicle service
22       contracts?
23           A.   Yes.
24           Q.   Okay.  And, then, a portion of that is
25       the cost of the contract.  Is that fair to say?
```

```
 1            A.   Yes.

 2            Q.   And that's the portion that

 3       American Protection has to provide to SunPath?

 4            A.   Yes.

 5            Q.   Okay.  And then whatever amount above

 6       that cost portion American Protection keeps

 7       themselves?

 8            A.   Yes.

 9            Q.   Got it.

10                 All right.  Let me put up my next

11       exhibit.  Give me a second.

12                 (Exhibit No. 2 was marked for

13                 identification.)

14       BY MR. TANDY:

15            Q.   All right.  I'm showing you what has

16       been marked as Exhibit 2.

17                 Do you recognize this document?

18            A.   Yes.

19            Q.   Can you tell me what it is?

20            A.   I believe this is the Call Center

21       Marketing Agreement.

22            Q.   And that agreement is between SunPath

23       and American Protection; is that correct?

24            A.   Yes.

25            Q.   It looks like it was entered into on
```

```
 1      June 29th, 2017; is that correct?
 2          A.   Yes.
 3               May I ask for a quick five-minute break?
 4               MR. SMITH:  Of course.  Yeah, let's take
 5          a break.
 6               (A recess was taken.)
 7               MR. SMITH:  Back on the record.
 8      BY MR. SMITH:
 9          Q.   And let me share my screen again.  All
10      right.  Kobi, again, I'm showing you what's been
11      marked as Exhibit 2.
12               You previously testified that this is an
13      agreement between SunPath and American Protection,
14      right?
15          A.   That seems to be.
16          Q.   It looks like it's dated June 29th,
17      2017, right?
18          A.   Yes.
19          Q.   Would that have been the date that your
20      relationship with SunPath began?
21          A.   Yes.
22          Q.   All right.  I will draw your attention
23      to the third "whereas" paragraph, where it says,
24      "Company desires to have CCM market the products
25      to customers for which CCM will be compensated as
```

Page 48

```
 1       set forth below."

 2                Do you see that?

 3          A.   Yes.

 4          Q.   Is it fair to say that SunPath entered

 5       this agreement to have American Protection sell

 6       its vehicle service plans?

 7          A.   Yes.

 8          Q.   All right.  And then underneath the

 9       "general provisions," paragraph 1, it says, "The

10       company grants CCM authority to solicit customers

11       on a nonexclusive basis only in the territory

12       defined in Addendum B hereto."

13                Do you see that?

14          A.   Yes.

15          Q.   And if we scroll down to Addendum B,

16       which is on page 7 of this exhibit, it states,

17       "The geographic territory in which CCM may solicit

18       sales of products offered by the company shall be

19       exclusive and limited to all states in the

20       continental U.S. except TBD."

21                Do you see that?

22          A.   Yes.

23          Q.   So is this provisions just letting

24       American Protection market its products throughout

25       the U.S.?
```

Page 49

```
 1            A.    I'm sorry?
 2            Q.    Does this provision just let
 3       American Protection market SunPath products
 4       throughout the United States?
 5            A.    Not necessarily.  And it says "TBD," to
 6       be determined, from my understanding.
 7            Q.    Okay.  Have you received anything
 8       additional from SunPath that would have amended
 9       this agreement?
10            A.    Not that I specifically have at my
11       disposal at this moment.
12            Q.    Okay.  Is that a "yes," through?
13            A.    I don't know.
14            Q.    You don't know?
15            A.    I don't know.
16            Q.    All right.  I will turn back to page 1
17       of your general provisions paragraph 2.  It says,
18       "CCM shall at all times adhere to company's
19       written standards of conduct prescribed by company
20       from time to time and in its sole discretion."
21            Do you see that?
22            A.    Yes.
23            Q.    And then at the end of that paragraph,
24       it says, A copy of the standards of conduct is
25       attached hereto as Exhibit 1."
```

1          Do you see that?

2     A.   Yes.

3     Q.   Let me scroll through it.  On page 8, it

4     states, "Exhibit 1, standards of conduct," and it

5     says, "See attached."

6          Do you see that?

7     A.   Yes.

8     Q.   Do you know if there were additional

9     documents attached to this document?

10    A.   I have provided all of the information,

11    all of the files that I have on file.

12    Q.   You have provided everything you have on

13    file.  Is that what you said?

14    A.   I believe those two documents, this one

15    and there was a --

16    Q.   Okay.  It seems that there used to be

17    the standards of conduct attached to this

18    document; is that fair to say?

19         MR. TANDY:  Objection.

20         THE WITNESS:  I'm not sure.  Again, this

21      is dating back to 2017.

22    BY MR. SMITH:

23    Q.   Okay.  Do you recall SunPath ever

24    providing any standards of conduct?

25    A.   Again, I don't remember one way or the

```
 1      other.
 2            Q.   You don't remember one way or the other.
 3                 Did you do anything to search for those?
 4            A.   In my responses to the subpoena, I
 5      provided what I have on file.
 6            Q.   Okay.  When you say what you have on
 7      file, what are you referring to "as on file"?
 8                 MR. TANDY:  Objection.
 9                 You can answer.
10                 THE WITNESS:  I believe there were one
11            or two documents, the Call Center Marketing
12            Agreement and the Seller Agreement.
13      BY MR. SMITH:
14            Q.   Okay.  I'm trying to understand what
15      repositories were searched for responsive
16      documents.
17            A.   My file.
18            Q.   Is that a physical filing cabinet?
19            A.   Yes.
20            Q.   Okay.  And is that where
21      American Protection keeps all of its legal
22      documents?
23            A.   Yes.
24            Q.   Does it keep any virtual documents?
25            A.   Yes.
```

Page 52

1    Q.   Where would those be kept?

2    A.   On my computer.

3    Q.   Would it be in, like, Dropbox, or would

4    it be on your hard drive?

5    A.   On the hard drive.

6    Q.   Hard drive.

7         Okay.  And did American Protection

8    search the computer hard drive for any responsive

9    documents?

10   A.   Yes.

11   Q.   Okay.  Let's to back to page 1 of

12   Exhibit 2.  Paragraph 3 under the "general

13   conditions," it says, "The company agrees to

14   provide CCM with product forms, promotional

15   materials, rates, and other materials (the

16   Promotional Materials) needed to properly secure

17   and service customers procured by CCM."

18        Do you see that?

19   A.   Yes.

20   Q.   Okay.  Did SunPath ever provide any

21   professional materials to American Protection?

22        MR. TANDY:  Objection.  Asked and

23        answered.

24        THE WITNESS:  No, I don't recall.

25   BY MR. SMITH:

```
 1        Q.   Did they provide any product forms?

 2        A.   I don't recall.

 3        Q.   Do they provide any rates or other

 4   materials that would be responsive that would

 5   relate to this paragraph?

 6        A.   Yes.

 7        Q.   What do they provide?

 8        A.   The rates of their coverage claims.

 9        Q.   Okay.  Paragraph 4 on page 1 says, "CCM

10   shall install or arrange for the installation of

11   the company's products in accordance with the

12   company's policies and procedures as changed

13   and/or updated from time to time."

14             Do you see that?

15        A.   Yes.

16        Q.   Can you tell me what that paragraph

17   means?

18        A.   I would assume this means the product

19   rates, product information.

20        MR. TANDY:  Taylor, I'm going to

21        instruct -- I don't think you want Kobi to

22        speculate or to guess, I assume, so I just

23        want to correct the instruction that says to

24        the extent that he doesn't know, then I don't

25        think you want, you know, I don't think you
```

Page 54

```
 1              want speculation.  So when I hear the word
 2              "assume" I worry, so I just want to put that
 3              on the record.
 4                   MR. SMITH:  This one is his
 5              understanding, I believe.
 6                   MR. TANDY:  Okay.  If he knows it or has
 7              an understanding.  I thought you said what it
 8              means, and I think he said "I assume."  So,
 9              again, I just want to make sure we're not
10              getting speculation on the record and you're
11              getting a clean record.
12         BY MR. SMITH:
13              Q.   All right.  Let's move to paragraph 5.
14         It says, "CCM agrees to actively market the
15         products."
16                   Do you see that?
17              A.   Yes.  Let me just move this out of the
18         way.  Yes.
19              Q.   Okay.  Does that paragraph require
20         American Protection to actively market SunPath
21         vehicle service plans?
22              A.   Allow me to please read the paragraph.
23         Thank you.
24              Q.   Sure.
25              A.   What was the question again?
```

Veritext Legal Solutions
303-988-8470

```
 1          Q.    Does that paragraph require
 2    American Protection to actively promote SunPath
 3    vehicle service plans?
 4          A.    Yes.
 5          Q.    Okay.  Paragraph 6 says, "CCM shall
 6    perform such other acts as are necessary for the
 7    proper conduct of the business and for the
 8    protection and safeguard of the interests of the
 9    company in accordance with the company's policies
10    and procedures."
11              Do you see that?
12          A.    Yes.
13          Q.    Does that paragraph require
14    American Protection to carry out its business in a
15    way that will protect SunPath's interests?
16          A.    Again, I'm not sure.  I will have to
17    reread the entire document to provide a proper
18    answer for that.
19          Q.    Okay.  You previously testified that you
20    reviewed this document in preparation for this
21    deposition, right?
22          A.    Yes, yes.
23          Q.    I'm just asking about that paragraph.
24    I'm not asking about the entire document.  Can
25    you -- do you have an understanding of that
```

Veritext Legal Solutions
303-988-8470

```
 1      paragraph?
 2              MR. TANDY:  Objection.
 3              MR. CAFFAS:  Yeah.  I'm going to object
 4          to form that I'm not quite sure what you're
 5          asking about the agreement or the specific
 6          paragraph at this point.  I think there are
 7          multiple questions in there.
 8      BY MR. SMITH:
 9          Q.   Okay.  Can you tell me what your
10      understanding of paragraph 6 of this agreement is?
11          A.   Again, I'm not sure I understand the
12      question.  The a very broad question.
13          Q.   I'm just asking what your understanding
14      of paragraph 6 is.
15          A.   "Shall perform such other acts as are
16      necessary for the proper conduct of the business."
17      It's just the quality of the scan is a little hard
18      to view.  "And for the protection and safeguarding
19      of the interests of the company in accordance with
20      the company's policies and procedures."
21              I think it's just as it sounds.
22          Q.   Okay.  Paragraph 7 --
23              MR. CAFFAS:  At this stage, I'm going to
24          object to the extent this is redundant and
25          these questions, to the extent we're going to
```

Page 57

```
1         walk through an entire agreement, largely are
2         asked and answered, because this, I believe,
3         began by asking if Mr. Chukran read and
4         agreed --
5              MR. SMITH:  You're continuing to submit
6         speaking objection.  You can object to the
7         code.  There's nothing wrong with asking
8         questions about a document.  This is my
9         deposition.  I'm going to ask about
10        paragraphs of the agreement that
11        American Protection.  Keep it to --
12             MR. CAFFAS:  This leads to us being
13        prejudiced to who knows how much time we'll
14        have left at the end of today if we're going
15        to read through this line by line.  I think
16        that would be my primary concern.
17             So I apologize if I'm submitting
18        speaking objections, but this is more just a
19        general note about how long we're going to be
20        here if he's going to read through a contract
21        that he's already stated that he's signed and
22        agreed to.
23             MR. SMITH:  I believe it's limited to
24        seven hours, so we'll be out by seven years.
25             MR. CAFFAS:  You may be.  Again, I think
```

Page 58

```
 1          you may be prejudicing the other parties
 2          sitting at this deposition.
 3               MR. SMITH:  SunPath is free to serve a
 4          notice of deposition and subpoena and do
 5          their own deposition as well.
 6     BY MR. SMITH:
 7          Q.   All right.  Kobi, paragraph 7, "CCM
 8     shall provide continued maintenance and servicing
 9     to customers in accordance with the company's
10     policies and procedures."
11               Do you see that?
12          A.   Yes.
13          Q.   What is this agreement referring to when
14     it's discussing maintenance?
15          A.   I'm not sure.
16          Q.   You don't know.
17               Did American Protection provide any
18     maintenance of existing clients for SunPath?
19               MR. TANDY:  Objection.
20     BY MR. SMITH:
21          Q.   Did American Protection provide any
22     maintenance of any existing clients on behalf of
23     SunPath?
24               MR. CAFFAS:  I will object to vagueness.
25          He's already stated he doesn't know what
```

Page 59

```
 1          "maintenance" refers to.  He's not clear what
 2          "maintenance" refers to in this context.
 3               THE WITNESS:  I'm not clear as to what
 4          "maintenance" refers to.
 5     BY MR. SMITH:
 6          Q.   Okay.  Once American Protection sells
 7     one of SunPath's vehicle protection plans, is
 8     there a continued relationship with that client
 9     that American Protection has?
10          A.   Yes.
11          Q.   How long would that relationship be?
12          A.   For the lifetime of the agreement.
13          Q.   Okay.  And what would
14     American Protection's responsibilities be through
15     the lifetime of that agreement?
16          A.   The customer might ask us for the
17     numbers to the claims department or might call us
18     to find out if something in particular is covered
19     within the plan.
20          Q.   Okay.  And we previously discussed, when
21     a contract was sold, the division of moneys from
22     American Protection to SunPath, right?
23          A.   Yes.
24          Q.   Now, these contracts, they're on a
25     monthly basis, right?  These customers pay a
```

Page 60

1       certain amount each month?

2           A.   Yes.

3           Q.   Okay.  Who do they pay that amount to?

4           A.   To us.

5           Q.   And then does a share of that each month

6       go to SunPath or does -- or how does that work?

7           A.   No.

8                MR. CAFFAS:  Objection.  Asked and

9           answered.

10      BY MR. SMITH:

11          Q.   Go ahead.

12          A.   No.  SunPath bills us for a policy.

13          Q.   Okay.  So after a policy is sold,

14      American Protection has to pay the cost of the

15      policy to SunPath; is that fair to say?

16          A.   Yes.

17          Q.   How soon do they have to pay that cost?

18          A.   We've at various times have had to pay

19      for the cost.

20          Q.   Can you give me an estimate on the

21      amount of time that you have?

22          A.   Somewhere between some months and --

23      between 30 days and more.

24          Q.   Okay.  And then is it fair to say that

25      it's American Protection's responsibility to

```
1        collect each monthly payment from those clients?
2            A.   Yes.
3            Q.   Okay.  What happens if they cancel their
4        contract or stop paying?
5            A.   Then the plan --
6                 MR. CAFFAS:  Object to the form.
7                 THE WITNESS:  Then the contract is
8        cancelled.
9        BY MR. SMITH:
10           Q.   Does SunPath provide a refund of the
11       cost to American Protection then?
12           A.   Yes.
13           Q.   Okay.  I will scroll to page 2,
14       paragraph 10.  Give me one second.  All right.  So
15       it says, "All amounts constituting product seller
16       cost and/or net price which are received by CCM
17       shall be held in trust by CCM for the company's
18       sole benefit."
19                Do you see that?
20           A.   Yes.
21           Q.   Is product seller costs in this context,
22       is that the cost that you were referring to that
23       gets paid to SunPath?
24           A.   Yes.
25           Q.   And is net price in this context, is
```

Page 62

```
1        that the amount that American Protection gets to
2        keep for each sale?
3             A.   Yes.
4             Q.   Okay.  And so is it fair to say that
5        this paragraph requires American Protection to
6        hold SunPath's portion of the financials in trust
7        on behalf of SunPath?
8             A.   I'm sorry, can you repeat the question?
9             Q.   Yeah.
10            Is it fair to say that this paragraph
11       requires American Protection to hold SunPath's
12       portion of the financials for each sale in trust
13       on behalf of SunPath?
14            MR. CAFFAS:  I will object to the form.
15            I believe that's -- I think it's vague.  I
16            didn't understand the question, and to the
17            extent it's leading.
18       BY MR. SMITH:
19            Q.   You can answer.
20            A.   Yeah.  Again, I'm having a hard time
21       also understanding not only the question but also
22       the relevance to this topic at hand.
23            Q.   I'm trying to understand.  If I
24       understand this correctly, American Protection is
25       required to hold the product seller cost in trust
```

Veritext Legal Solutions
303-988-8470
**JA1203**

```
1        on behalf of SunPath after they make the sale.
2                MR. CAFFAS:  Objection.  Form and
3            relevance.  We're not here for your
4            understanding.
5                THE WITNESS:  It is my understanding
6            that American Protection would submit the
7            cost of the product to SunPath.
8        BY MR. SMITH:
9            Q.   Okay.  Does this paragraph create a
10       fiduciary duty that American Protection owes to
11       SunPath?
12               MR. CAFFAS:  Objection.  Calls for
13           speculation.
14               MR. TANDY:  And I'm going to object that
15           the witness is not a lawyer.  And to the
16           extent that answering the question would
17           require him to explain some type of legal
18           relationship that will impinge on the
19           attorney-client privilege and any advice he
20           may have received from myself or others,
21           other attorneys, I'm instructing him not to
22           answer that question.
23               MR. SMITH:  You're instructing him not
24           to answer based on the --
25               MR. TANDY:  I'm instructing him not to
```

Page 64

1          answer the question as to whether or not
2          somebody has informed him with enough
3          information or legal advice to determine
4          whether or not some sort of fiduciary
5          relationship has occurred.  He's not a
6          lawyer.
7              And, Mr. Smith, I have let you go a long
8          time, but he's not a lawyer, and he's not
9          going to answer legal questions that are
10         determined down the road.
11             MR. SMITH:  You can certainly object to
12         a legal conclusion, but that's not a basis to
13         instruct a witness not to answer a question.
14             MR. TANDY:  No, no.  Wait.  I'm
15         instructing him that to the extent that he
16         was provided with legal advice from an
17         attorney that would need to be disclosed in
18         answering your question, I'm instructing him
19         not to answer that question for that purpose.
20             So if you want to ask him -- Mr. Smith,
21         if you want to ask him a "yes" or "no"
22         question, Did somebody tell you that
23         American Protection is a fiduciary for
24         SunPath? you can ask that "yes" or "no"
25         question.  But what you can't ask is how he

1    the time you're placing calls.  So at the time
2    American Protection places a call, does it know
3    which company's vehicle service plans it will be
4    pitching on the call?
5         A.    No.
6         Q.    Okay.  Is that information determined
7    later based upon the potential client's vehicle's
8    make, model, and year?
9         A.    Yes.
10        Q.    Okay.  And can you tell me what portion
11   of your business is generated through
12   telemarketing?
13             MR. CAFFAS:  I will object as to vague.
14        I don't believe telemarketing has been
15        established definition-wise.
16             THE WITNESS:  I'm not sure what you mean
17        by "telemarketing," as well.
18   BY MR. SMITH:
19        Q.    When you place calls to potential
20   clients to sell products, that would be
21   telemarketing.  So I need to understand how much
22   of your business comes from telemarketing
23   activities.
24        A.    So if I send out the postcard to a
25   customer and they call us to request information,

Page 74

```
 1      does that count as telemarketing?
 2          Q.   No.  I'm specifically discussing
 3      outbound calls.  Sorry.
 4          A.   Okay.
 5              MR. CAFFAS:  Before Mr. Chukran answers,
 6          I will object to vague to make sure.  Maybe
 7          it will help if you re-ask the question based
 8          on --
 9              MR. SMITH:  Yeah, that's fine.
10      BY MR. SMITH:
11          Q.   Can you tell me the difference between
12      the portion of your business that is generated via
13      mailings and via telemarketing outbound calls?
14              MR. CAFFAS:  Objection.
15              THE WITNESS:  As to what period of time?
16      BY MR. SMITH:
17          Q.   The relevant time period, which would be
18      January 26th, 2018, through the present.
19              MR. TANDY:  I'm going to object that
20          that's overbroad, unless you can make a
21          generalization over an almost six-year
22          period.
23              MR. SMITH:  It's four years.
24              MR. TANDY:  Four and a half, five.
25          Okay.  A four-and-a-half-year period.
```

Page 75

```
 1              THE WITNESS:  I don't recall exactly
 2        back then.
 3   BY MR. SMITH:
 4        Q.   All right.  When did American Protection
 5   start utilizing telemarketing to sell products?
 6              MR. TANDY:  Objection.  Just so I'm
 7        clear, Taylor, when you say the word
 8        "telemarketing," for purposes of this
 9        deposition, you're talking about outbound
10        calls that are not generated from the -- from
11        a prior contact?
12              MR. SMITH:  No.  I'm talking about any
13        outbound call.
14              MR. TANDY:  Okay.  But --
15              MR. SMITH:  Maybe we should talk about
16        mailing.
17              THE WITNESS:  Maybe that will help.
18   BY MR. SMITH:
19        Q.   Based on your responses before, it's my
20   understanding that American Protection mails out
21   postcards and letters to potential clients; is
22   that true?
23        A.   Yes.
24        Q.   Okay.  And then is the hope of that that
25   those potential clients will call
```

```
 1      American Protection to inquire about products or
 2      services?
 3           A.   Yes.
 4           Q.   Okay.  And does -- sorry.  Strike that.
 5                After those consumers call in, does
 6      SunPath -- sorry.  Strike that.
 7                After those consumers call in, does
 8      American Protection sometimes place additional
 9      calls to that individual to sell vehicle service
10      plans?
11           A.   Yes.
12           Q.   Okay.  Does American Protection ever
13      just place calls to consumers that they haven't
14      previously sent a mailer to?
15           A.   I'm sorry, repeat the question.
16           Q.   Yeah.
17                Does American Protection ever place
18      telemarketing calls to consumers that it hasn't
19      previously sent a mailer to?
20           A.   We only contact prospects that have
21      requested information about those services.  I
22      don't know if -- if you define that as
23      telemarketing or not, but that's the only -- we
24      have no interest in just contacting folks that
25      have no interest in our products.
```

```
 1          Q.   Sure.
 2               When you say "requested information,"
 3     what are you referring to?  Is it just via the
 4     mail and postcard, or is it via other means?
 5          A.   Via other means.
 6          Q.   What other means?
 7          A.   Websites.
 8          Q.   So in that case, would
 9     American Protection place outbound telemarketing
10     calls to consumers that this information they
11     obtained from those websites?
12          A.   Yes.
13          Q.   Okay.  Does American Protection ever
14     receive complaints regarding its telemarketing?
15               MR. TANDY:  Objection, again, to the
16          word "telemarketing."  I'm just trying to get
17          a sense, so just letting you know what my
18          form objection is.  I'm objecting to that
19          word.
20     BY MR. SMITH:
21          Q.   Okay.  You can answer, Kobi.
22          A.   Yes.
23          Q.   How frequently would you say
24     American Protection receives complaints?
25               MR. TANDY:  Object.
```

```
 1                THE WITNESS:  Very rarely.
 2       BY MR. SMITH:
 3            Q.   Can you give me an estimate?
 4            A.   Maybe a few times a year.
 5            Q.   Okay.  Who places telephone calls on
 6       behalf of American Protection?
 7                MR. CAFFAS:  Objection.  I'm going to
 8            note that this calls for an improper lay
 9            opinion and speculation.
10                THE WITNESS:  I don't understand the
11            question.
12       BY MR. SMITH:
13            Q.   Okay.  You previously testified that
14       American Protection does not have employees,
15       correct?
16            A.   Correct.
17            Q.   How does American Protection place
18       telephone calls to potential clients?
19            A.   You mean the system that we use or --
20            Q.   I mean, who specifically?
21            A.   Who?  We work with some subcontractors
22       that are -- that are speaking to the consumers.
23            Q.   Okay.  And how many subcontractors does
24       American Protection utilize?
25            A.   From time to time, one or two.
```

```
 1        Q.   And how many during the relevant time
 2   period would you say American Protection utilized?
 3             MR. TANDY:  Objection.
 4             You can answer, if you know.
 5             THE WITNESS:  I don't know exactly that
 6        information.  Again, we are a small shop.
 7        Maybe one or two.
 8   BY MR. SMITH:
 9        Q.   Do you know the names of those one or
10   two?
11        A.   Not at this time.
12        Q.   Not at this time.
13             Do you know the names of any of those
14   third parties?
15        A.   Yes.
16        Q.   Can you tell me what the name is?
17        A.   In this particular case, the name is on
18   the e-mail that we sent out.
19        Q.   Okay.  We will get to that.
20             All right.  Can you tell me if
21   American Protection has any policies related to
22   the telephone calls that it places for the
23   purposes of selling vehicle service contracts?
24             MR. TANDY:  Objection.  My objection is
25        to the inference that they place calls.  That
```

```
 1            misleads Mr. Chukran's testimony about calls.
 2            That's it.
 3                 THE WITNESS:  Yes, we do.
 4       BY MR. SMITH:
 5            Q.   Are they written?
 6            A.   Yes.
 7            Q.   Where are they maintained?
 8            A.   On my hard drive.
 9            Q.   Can you tell me how many policies you
10       have?
11            A.   You were provided with the policies we
12       have.
13            Q.   Everything you've produced, that's all
14       your policies related to telephone calls; is that
15       fair?
16            A.   Yes.
17            Q.   Okay.  You don't have any other policies
18       and procedures to ensure compliance with the TCPA?
19                 MR. TANDY:  Objection, to the extent
20            that you are making a supposition about
21            compliance with the TCPA and only those
22            policies and not something else, you can
23            answer the question.
24                 THE WITNESS:  As it relates to this
25            particular case that we are gathered here
```

```
 1              today to discuss, this was a consumer that
 2              received a mailer from us and called us to
 3              receive information.  So there was no
 4              telemarketing in this case and there was no
 5              TCPA involved here.  The consumer requested
 6              the information, so that not would not
 7              fall --
 8      BY MR. SMITH:
 9          Q.   That's not what I'm asking.  I'm trying
10      to understand, other than the documents that you
11      have already produced, if you have any additional
12      policies that are in place to ensure compliance
13      with the TCPA.
14          A.   You were provided with everything we
15      have.
16          Q.   Okay.  So you also don't have any
17      additional policies and procedures in place to
18      ensure compliance with the Virginia Telephone
19      Privacy Act other than what was produced?
20          A.   Correct.
21          Q.   Okay.  And do you have any other --
22      sorry.  Strike that.
23               Do you have any other policies and
24      procedures in place to ensure compliance with the
25      federal National Do Not Call Registry rulings
```

Veritext Legal Solutions
303-988-8470
**JA1214**

1     other than what was previously produced?

2        A.   No.

3        Q.   Okay.  Does American Protection ever

4     obtain a listing of numbers registered on the DNC

5     Registry?

6        A.   Yes.

7        Q.   How often does it obtain that list?

8        A.   That is provided to us by any lead

9     providers in this case.  So, in other words, if

10    we -- any kind of leads that we acquire are

11    cleansed and cleaned and suppressed against the

12    National Do Not Call List.

13       Q.   Okay.  After American Protection

14    receives those leads, does it take any steps to

15    ensure that it's not calling numbers that are in

16    those leads that are registered on the National Do

17    Not Call Registry?

18       A.   We run those against our internal DNC

19    lists.

20       Q.   Just your internal DNC list?

21       A.   Yes.

22       Q.   Not the National DNC List?

23       A.   Not -- no.  It's already done by the

24    lead providers.

25       Q.   Okay.  Does American Protection maintain

1      records of prior express consent from the
2      individuals that it places calls to?
3           A.   No.
4           Q.   How does American Express [sic] ensure
5      that the individuals that it's placing calls to
6      provided prior express consent?
7                MR. CAFFAS:  I will object to this as
8           vague.  I believe you just asked about
9           American Express.  I assume you're not
10          talking about the credit card company.
11               MR. SMITH:  Did I say American Express?
12               MR. CAFFAS:  Yes.
13               MR. SMITH:  Strike that.
14     BY MR. SMITH:
15          Q.   How does American Protection ensure that
16     individuals that it's placing calls to have
17     provided prior express consent?
18          A.   We review the method of which they
19     request information.
20          Q.   So can you say that again?
21          A.   We review the method of which they have
22     requested information.
23          Q.   What do you mean by that?
24          A.   I mean I review to make sure that the
25     proper opting language is present, that our name

Veritext Legal Solutions
303-988-8470

```
 1        is clearly stated, that the consumer understands
 2        they will receive a call from us, and that it
 3        authorizes us, to receive a call from us, from me
 4        within the means we would be using.
 5             Q.   Okay.  And do you review that for each
 6        potential client?
 7             A.   I don't understand the question when you
 8        say "potential client."
 9             Q.   You said you reviewed to ensure that the
10        disclosures are proper, right?
11             A.   Yes, I do, yes.
12             Q.   Okay.  Do you review that with each
13        potential lead that you receive?
14             A.   Yes.
15             Q.   Okay.  Do you ever have individuals that
16        request to no longer receive calls from
17        American Protection?
18             A.   Yes.
19             Q.   How frequently would you say that
20        happens?
21             A.   Multiple times per week.
22             Q.   What does American Protection do when
23        someone requests not to receive calls?
24             A.   They are marked as a do-not-call record
25        and then moved from any further contact.
```

Veritext Legal Solutions
303-988-8470

```
 1          You haven't asked how the plaintiff
 2     received -- how they got to the plaintiff.
 3     If you want to ask that and then go from
 4     there, maybe.  But this seems to be just an
 5     open-ended "tell me about your business," and
 6     at some point I'm going to put a stop to
 7     that, because that's not what this is.
 8          MR. SMITH:  It is the --
 9          MR. TANDY:  At least that's not what I
10     understood this to be.
11          MR. CAFFAS:  I will add to Mr. Tandy's
12     objection to state that based on the notice
13     of deposition and the subject of your
14     subpoena, this doesn't seem to be relevant to
15     what you're seeking.  I believe the testimony
16     is that American Protection didn't call the
17     plaintiff.  So as it pertains to this
18     lawsuit, it seems like we're going far afield
19     here.
20          MR. SMITH:  No.  He told us he mailed --
21     they mailed a mailer to our client, so I'm
22     trying to understand what the source of the
23     information, where they obtained contact
24     information to mail those mailers are, so
25     that we can figure out which one of those
```

Page 98

```
 1              sources the plaintiff came from.
 2                   MR. CAFFAS:  Right.  I understand that.
 3              But I believe the --
 4                   MR. SMITH:  And also I want to
 5              understand if he can identify which leads
 6              came from where, because that's also very
 7              important to this case.
 8                   MR. CAFFAS:  Right.  I understand.  But
 9              I believe the testimony that's on record is
10              that to Mr. Chukran's knowledge, your client,
11              the plaintiff, made a call to
12              American Protection.
13                   So to the extent that you're asking
14              about leads for outgoing telemarketing calls,
15              which I believe is what is on the record as
16              well, we're going far afield.  But I
17              understand you are entitled to ask, but I'm
18              just echoing Mr. Tandy's sentiments,
19              especially with regard to time considering
20              we're running close to lunch and Mr. Chukran
21              has other time conflicts.
22         BY MR. SMITH:
23              Q.   All right.  Are you able to tell which
24         individual's postcard or letter -- sorry.  For the
25         individuals that you sent postcards or letters to,
```

Page 99

```
 1      are you able to figure out the source of that
 2      contact information, where it came from?
 3          A.   In some cases I could, and in some cases
 4      I can't.
 5          Q.   Okay.  What about in the plaintiff's
 6      situation?
 7          A.   What about it?
 8          Q.   You previously said that
 9      American Protection sent a mailing to her; is that
10      correct?
11          A.   Yes.
12          Q.   Do you know where it got her contact
13      information prior to sending that mailing?
14          A.   I do not, no.
15          Q.   Did you search for that information?
16          A.   Yes.
17          Q.   What repositories were searched?
18          A.   Our CRM.
19          Q.   CRM.
20               Does SunPath ever provide leads to
21      American Protection?
22          A.   No.
23          Q.   All right.  I will pull up my next
24      exhibit.
25               (Exhibit No. 7 was marked for
```

```
 1              identification.)
 2    BY MR. SMITH:
 3         Q.   All right.  Kobi, 'm showing what has
 4    been marked as Exhibit 7.
 5              Do you recognize this document?
 6         A.   Yes.
 7         Q.   Can you tell me what it is?
 8         A.   This is my reply to your subpoena.
 9         Q.   Okay.  Under No. 2 it says, "Leads are
10    generated via a number of methods including
11    affiliate websites such as...," and then it lists
12    websites.
13              Do you see that?
14         A.   Yes.
15         Q.   Is that a complete list of websites that
16    SunPath obtains leads from?
17         A.   About SunPath?  I'm sorry?  This is
18    not --
19         Q.   I'm sorry, that American Protection
20    obtains leads from.
21         A.   There might be others one.  Again, I'm
22    not sure for this particular time frame you're
23    referring to, but this is one of the lists.
24         Q.   Okay.
25         A.   Yes.  There are other lists.
```

Veritext Legal Solutions
303-988-8470

```
 1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION
 3                         CASE NO.:  1:22-cv-00081-LMB-WEF
 4      RUTH SMITH, individually and on behalf of all
        others similarly situated,
 5
 6            Plaintiff,
 7      vs.
 8      SUNPATH, LTD., a Massachusetts corporation,
 9            Defendant.
10      _____/
11                          -VOLUME 2-
                          (PAGES 128-252)
12      CONTINUED
        VIDEOCONFERENCE
13      DEPOSITION OF:      KOBI CHUKRAN, CORPORATE REPRESENTATIVE
                            CHUKRAN MANAGEMENT GROUP, LLC, d/b/a
14                          AMERICAN PROTECTION CORP.
15      TAKEN BY:           COUNSEL FOR THE PLAINTIFF
16      DATE:               WEDNESDAY, NOVEMBER 9, 2022
17      TIME:               9:38 A.M. - 12:38 P.M.
18      LOCATION:           DAYTONA BEACH, FLORIDA  33437
19      VIA:                VERITEXT VIRTUAL ZOOM
20      STENOGRAPHICALLY
        REPORTED BY:        COURTNEY N. LANGHOFF, RMR, CRR, FPR-C
21                          ORANGE LEGAL/VERITEXT LEGAL SOLUTIONS
                            201 EAST KENNEDY BOULEVARD, SUITE 712
22                          TAMPA, FLORIDA  33602
23
24
25
                                                  Page 128
```

1      the comment.  I'm just putting that on the record

2      to --

3              MR. SMITH:  Okay.

4      BY MR. SMITH:

5      Q.   Kobi, can you tell me, between November 1st and

6      today -- so your last deposition and today -- did you do

7      anything to prepare for this deposition?

8      A.   We provided the information you -- you

9      requested.

10     Q.   Okay.  So you provided some additional

11     documents, right?

12     A.   Yes.

13     Q.   Okay.  Did you do anything else for this

14     deposition, specifically?

15     A.   No.

16             MR. TANDY:  The answer to that question, that's

17             other than having communications with me, Kobi,

18             because those would be privileged.  So I assume

19             that's the reason you answered no.

20             Because just for the record, Taylor, Kobi,

21             Mr. Chukran and I did have conversations, both to

22             respond to your request, and for certain topics.

23             Those would be privileged.

24             MR. SMITH:  Yeah, I agree.  Okay.

25     BY MR. SMITH:

1      Q.   So other than talking to your attorney and

2  producing the documents, nothing else you did to prepare

3  for this deposition?

4      A.   No.

5      Q.   Okay.  All right.  I want to talk about

6  American Protection's calling practices and the calls

7  made to Plaintiff.

8          So, first, during your prior deposition, I was

9  reviewing the transcript, and you testified that

10  American Protection uses subcontractors to place

11  telemarketing calls; is that correct?

12         MR. TANDY:  Objection to the word

13     telemarketing.

14         You can answer.

15         THE WITNESS:  American Protection uses

16     subcontractors to -- to communicate with potential

17     clients and clients.

18  BY MR. SMITH:

19      Q.   Okay.  And you previously told me that you

20  worked with one or two subcontractors at any particular

21  time; is that accurate?

22      A.   Yes.

23      Q.   Okay.  Is it a fair character --

24  characterization to say that the subcontractors place

25  calls on behalf of American Protection to solicit sales

1     of vehicle service contracts?

2          A.    No, we don't --

3                MR. CAFFAS:  Objection.  Speculation.

4                I'm sorry.

5                THE WITNESS:  I'm sorry.

6                MR. CAFFAS:  I --

7                MR. TANDY:  Greg was --

8                I'll do this, Greg, just so it's clear.

9                Greg is lodging an objection to Taylor's

10        question with regard to the form of the question.

11        You're still required to answer it.  You were about

12        to answer it, and thank you for waiting for Greg to

13        finish his objection before you started so the court

14        reporter can't -- can't take us all down at once.

15               So can you answer Taylor's question?

16               THE WITNESS:  Yes.

17               MR. TANDY:  Okay.  Please do.

18               THE WITNESS:  We return requests for contacts

19        from potential customers.  We don't just solicit

20        and -- and -- and call.  We have folks that are

21        calling and requesting information, and in some

22        cases, we reach out to people with requested

23        information.

24    BY MR. SMITH:

25          Q.    Okay.  I understand you're reaching out to

                                              Page 139

1    people that you say requested information.  I'm just

2    trying to make sure I understand that they're not doing

3    other activities, and I understand what they're doing.

4           Does that make sense?  So I just want to know,

5    is that what the subcontractors are doing, is placing

6    calls to individuals for the purpose of selling vehicle

7    service plans?

8        A.   Or receiving calls.

9        Q.   Or receiving calls?

10       A.   (Witness nodded head up and down.)

11       Q.   Did I hear that right?

12       A.   Yes.

13       Q.   Okay.  You also testified that

14    American Protection's Do Not Call list did not need to

15    be provided to subcontractors because the Do Not Call

16    list interfaces with the telephony system that's used by

17    the subcontractors.

18           Do you recall that?

19       A.   Yes.

20       Q.   Okay.  I kind of want to delve into this.

21           Can you explain what you mean by the telephony

22    system?

23       A.   You made a comment I do not understand.  I'm

24    sorry, Mr. Tandy -- Mr. Smith.

25           What did you say before that?

Page 140

1   A.   What do you mean by "resources"?

2   Q.   Well, let's -- let's start with systems.  Okay?

3        Did she have access to the Inline CRM system?

4   A.   Yes.

5   Q.   Did she have access to Five9?

6   A.   If that's what -- if that's what was used at

7   the time, then yes.

8   Q.   Okay.  Does American Protection provide any

9   access to any other systems to its subcontractors?

10  A.   E-mail.

11  Q.   E-mail.  What e-mail service does

12  American Protection use?

13  A.   It's a company in Germany called "netcup."

14  Q.   Okay.  And for the systems that you just

15  testified you provided access to for Ms. Jaeger, is that

16  the same for all subcontractors?

17  A.   Yes.

18  Q.   Does American Protection provide its

19  subcontractors with a copy of its Do Not Call policy?

20  A.   Yes.

21  Q.   Okay.  Does it provide them with a copy of

22  their sales rules?

23  A.   Yes.

24  Q.   Does it provide them with a copy of the sales

25  script that we reviewed as Exhibit 4?

```
 1        A.    Yes.

 2              (Previously marked Deposition Exhibit 4 was

 3        identified for the record.)

 4   BY MR. SMITH:

 5        Q.    Does American Protection provide any training

 6   to its subcontractors?

 7        A.    Yes.

 8        Q.    Can you tell me what training it would provide?

 9        A.    Sure.  Of how to utilize the Inline system.

10        Q.    And there's --

11        A.    And other basic -- other basic information,

12   such as the type of coverages that we offer, just basic

13   stuff.

14        Q.    Okay.  Does it ever provide any training

15   specific to placing telephone calls?

16              MR. CAFFAS:  Objection.  Vague.

17              THE WITNESS:  Yes.

18   BY MR. SMITH:

19        Q.    Can you tell me what training that would be?

20        A.    Sure.  We reviewed the DNC policy.  We want

21   to -- we want to make sure they understand how to put a

22   number on the DNC list, et cetera.

23        Q.    Okay.  Does it ever brought -- sorry.

24              Does American Protection ever provide any

25   training with respect to compliance with the
```

1    Telephone Consumer Protection Act?

2        A.    Within the scope of the DNC policy we provide.

3        Q.    Anything beyond that?

4        A.    No.

5        Q.    Okay.  So I just want to make sure I understand

6    this.

7              Does American Protection provide its

8    subcontractors with access to the leads it receives to

9    contact?

10       A.    No.

11       Q.    No.  Does it provide them with access to the

12   Five9 system that permits them to contact the leads that

13   it receives?

14       A.    Yes.  It's a limited -- limited access.

15       Q.    Okay.  I'm pulling up my next exhibit.

16             MR. SMITH:  Can we take a five-minute break,

17        actually?

18             MR. TANDY:  Certainly.

19             MR. CAFFAS:  That's fine.

20             MR. TANDY:  Kobi, go ahead and turn your camera

21        and microphone off, and we'll-- when we get back,

22        we'll ask you --

23             (Recess taken from 10:39 a.m. to 10:48 a.m.)

24             MR. SMITH:  Courtney, can we go back on the

25        record?

1          THE COURT REPORTER:  Yes, sir.  Thank you.

2     BY MR. SMITH:

3          Q.   Kobi, I'm going to play a recording that's been

4     produced in this litigation.

5          MR. SMITH:  It's going to be marked as

6          Exhibit 13 to this deposition.

7          (Deposition Exhibit 13 was marked.)

8          MR. SMITH:  For the record, this is a recording

9          produced by Plaintiff.  It's been produced in

10         litigation and marked as "SMITH000027."  I'm going

11         to play it in full.

12         (At this time the recorded voicemail was played

13         for the witness.)

14         MS. JAEGER:  Hi, Ruth.  This is Samantha

15         calling with America Protection.  I'm just calling

16         you to get the VIN number on your BMW to get your

17         coverage going for you.  I will be back in the

18         office in about an hour.  I'm going to lunch.

19         My number is 1-800-427-1806, extension 5005.

20         Talk to you soon.  Bye-bye.

21         (Recording concluded.)

22    BY MR. SMITH:

23         Q.   Do you recognize that voice at all?

24         A.   She's identified herself as Samantha.

25         Q.   Yeah.  So would this be Samantha Jaeger?

Page 180

1      A.    I believe so.

2      Q.    Okay.  And she starts this with saying, "This

3  is Samantha calling with American Protection."

4            Did you hear that?

5      A.    Yes.

6      Q.    Is that how subcontractors would typically

7  start a call?

8      A.    Typically, they will identify who they -- who

9  they are and who they're calling from.

10     Q.    But that's not -- I'm just trying to understand

11 if this call would be out of the ordinary.

12           Is that typically how a subcontractor would

13 identify themselves on behalf of American Protection?

14           MR. CAFFAS:  Objection.  Asked and answered.

15     Vague.

16           MR. TANDY:  Objection.

17           MR. CAFFAS:  And I think it's calling for

18     speculation and a legal conclusion, as to who

19     they're calling on behalf of.

20 BY MR. SMITH:

21     Q.    You can answer.

22     A.    They would usually -- they would usually have a

23 script, identify who they are and the company they're

24 calling from.

25     Q.    Okay.  So would you say that's typical or

```
1     that's out of the ordinary for how they would identify

2     themselves?

3             MR. CAFFAS:  Objection.  He's answered that

4         twice now.

5             THE WITNESS:  Again, I think that's how they

6         would -- they should.

7     BY MR. SMITH:

8         Q.   Got it.  She provides a telephone --

9             THE COURT REPORTER:  I'm sorry.

10            MR. SMITH:  Sorry.  Go ahead.

11            THE COURT REPORTER:  Could you state the

12        objection again?  You kind of cut out.

13            MR. CAFFAS:  I think I -- which -- which time?

14        The last time?

15            THE COURT REPORTER:  Correct.

16            MR. CAFFAS:  I just said objecting to asked and

17        answered twice now.

18            THE COURT REPORTER:  Thank you.  Sorry.

19            MR. CAFFAS:  Not a problem.

20            MR. SMITH:  Okay.

21    BY MR. SMITH:

22        Q.   Kobi, she provides a telephone number which is

23    800-427-1806.

24        A.   Yes.

25        Q.   Is that American Protection's telephone number?
```

Page 182

1      A.   Yes, it is.

2      Q.   Okay.  Do you know if the Five9 system keeps

3   recordings of calls?

4      A.   Yes, it does.

5      Q.   And could recordings of calls be downloaded?

6      A.   Yes.

7           MR. SMITH:  Give me a second.  I'm going to

8           move to my next exhibit.

9   BY MR. SMITH:

10     Q.   Okay.  I'm going to play another recording for

11  you.

12          MR. SMITH:  I'm going to mark it as Exhibit 14

13          to this deposition.

14          (Deposition Exhibit 14 was marked.)

15          MR. SMITH:  This is another recording produced

16          by Plaintiff, and it's been produced in the

17          litigation and marked as "SMITH000028," so I'm going

18          to play it in full.

19          (At this time the recorded voicemail was played

20          for the witness.)

21          MS. COLETTA:  Hi, good afternoon.  This message

22          is for Ruth.  This is Dawn with American Automotive

23          Protection Corp.  I was calling to follow up with

24          you from your policy with us.  I work here with

25          Samantha Jaeger.  She asked me to give you a call,

1     but please give us a call back at 800-427-1806.  I'm

2     at extension 1191.

3         And, again, this is regarding your policy with

4     us, but it's important that you give us a call back

5     so we can confirm your information for the file.

6     Thank you so much, and have a nice evening.

7         Bye-bye.

8         (Recording concluded.)

9  BY MR. SMITH:

10     Q.   Do you recognize that voice?

11     A.   Yes.

12     Q.   Can you tell me who that is?

13     A.   Her name is Dawn.

14     Q.   Do you know her last name?

15     A.   Coletta, C-o-l-e-t-t-a.

16     Q.   So what is Dawn's role?

17     A.   Dawn's role is in the back office, so --

18     Q.   Can you explain what that means?

19     A.   Yeah.  Assistance with if we need to obtain a

20  VIN number or a credit card.

21     Q.   Okay.  Is she an employee of

22  American Protection, or is she a subcontractor?

23     A.   She's a subcontractor.

24     Q.   Okay.  Is she still working with you?

25     A.   Yes.

1     Q.   Do you know how long she's worked with you?

2     A.   A few years.

3     Q.   Is there a difference between her role and

4  Samantha Jaeger's role?

5     A.   Yes.

6     Q.   Can you tell me that difference?

7     A.   Samantha was in sales, while Dawn is more of

8  a -- again, of a back office or admin type of a role.

9     Q.   When we previously talked about subcontractors,

10  you told me you had about one to two at any particular

11  time.

12        Were you referring to sales subcontractors?

13     A.   Yes.

14     Q.   Okay.  Do you have any other subcontractors

15  that do back-end work besides Dawn?

16     A.   Yes.

17     Q.   Can you tell me their names?

18     A.   Matt Conway.

19     Q.   Can you spell that as well?

20     A.   M-a-t-t C-o-n-w-a-y.

21     Q.   Anyone else?

22     A.   No.

23     Q.   Give me a minute.  I'm pulling up another

24  exhibit.

25        (Deposition Exhibit 15 was marked.)

Page 185

```
 1    BY MR. SMITH:
 2        Q.   All right, Kobi.  I'm showing you what's been
 3    marked as Exhibit 15.
 4             Do you recognize this document?
 5        A.   Yes.
 6        Q.   Can you tell me what it is?
 7        A.   This is the e-mail that was sent out to
 8    Ruth Smith.
 9        Q.   Okay.  That was sent on May 28th, 2020, at
10    3:30 p.m. Eastern; is that correct?
11        A.   Yes.
12        Q.   This was sent by Samantha Jaeger?
13        A.   Yes.
14        Q.   Do you see, in the e-mail, it says,
15    "Customer Number," and it says, "617RC12986"?
16        A.   Yes.
17        Q.   Do you know what that number is?
18        A.   I believe that's assigned by Inline CRM.
19        Q.   Okay.  Would there be --
20             So would each lead within the system have a
21    different customer number?
22        A.   I believe so.
23        Q.   Okay.  Is this e-mail following up regarding a
24    SunPath vehicle service contract plan?
25        A.   I think so.
```

1      Q.   The second sentence of this e-mail says, "I

2   enjoyed speaking with you today about your vehicle and I

3   wanted to provide you with the information below for

4   your review."

5        Do you see that?

6      A.   Yes.

7      Q.   Is it fair to say this e-mail would have

8   followed a phone call?

9      A.   Yes.

10     Q.   Okay.  Is it common for American Protection to

11  send follow-up e-mails to potential clients?

12     A.   Yes.

13     Q.   You produced this document, correct?

14     A.   I believe the plaintiff did.

15     Q.   I think you produced the one we're going to

16  review next, not this one.

17        But in any regard, do you know which system

18  this e-mail would have been sorted?

19     A.   Inline.

20     Q.   Inline.  Okay.

21        Do you know how far back American Protection

22  maintains records of e-mails?

23     A.   No, I do not.

24     Q.   Would it be for the entire relevant time

25  period?

Page 187

```
 1              MR. TANDY:  Objection.
 2              MR. CAFFAS:  Can you say --
 3              THE WITNESS:  I'm not -- I'm not sure.
 4              MR. TANDY:  What?
 5              MR. CAFFAS:  Before Kobi answers, can you state
 6         the basis of your objection?
 7              MR. TANDY:  Sure.  My basis for the -- for the
 8         objection is he asked the question for the entire
 9         period, could he tell, and the answer was no, so
10         the -- this question, right, it's a -- it's
11         basically asked and answered.  It seems to be the
12         same question in a -- in a different format.
13    BY MR. SMITH:
14         Q.   You can answer the question.
15         A.   Can you please repeat it?  I want to make sure
16    I am --
17         Q.   Yeah.  Do you know if Inline CRM system
18    maintains records of e-mails throughout the entire
19    relevant time period?
20         A.   I am not sure what is the policy of maintaining
21    e-mails.  Honestly --
22         Q.   That's --
23         A.   -- it's so long ago, but I'm not sure.  I'm not
24    sure.  I cannot give you a --
25         Q.   Okay.  That's fine.  Give me another minute.
```

```
 1    actively selling auto warranties for?
 2         A.    This is the two names of SunPath and Wesco.
 3    I'm not sure why and who's Wesco.  It could be just the
 4    underwriting company that SunPath is working with.
 5         Q.    Okay.  And then inactive appointments, there is
 6    a list of companies.
 7              Do you see that?
 8         A.    Yes.
 9         Q.    Are these companies that American Protection
10    used to sell auto warranties for?
11         A.    Again, not all of them, but I believe some of
12    them pertain to the -- to the reinsurance company or the
13    underwriting company.
14         Q.    Okay.  All right.  I think I'm -- if we take a
15    ten-minute break, I think I'm done asking questions, but
16    I'm sure Greg has some follow-up questions.
17              Is it fine if we take a ten-minute break and
18    then reconvene?
19              MR. CAFFAS:  Yes, that's fine.  So after ten
20         minutes --
21              THE WITNESS:  I'm so sorry to interrupt.  The
22         line just -- there's a storm going on outside, and
23         the light just flashed here I apologize, by the way,
24         Greg, to interrupt you.
25              I don't want to lose electricity again.  I
```

```
1          don't know.  There's a hurricane looming here.  If
2          you want to just continue, I'm available now.  I
3          just don't want to have to lose power and then have
4          to reconvene.  I just wanted to put it out there.
5               MR. SMITH:  Okay.
6               MR. CAFFAS:  That's fine.
7               THE WITNESS:  The lights have flickered a few
8          times, so.
9               MR. SMITH:  Can we go off the record for a
10         second?
11              MR. TANDY:  Sure.
12              (Discussion held off the record.)
13              MR. SMITH:  Are we ready?
14              THE COURT REPORTER:  All set.
15              MR. CAFFAS:  Yeah.  So, Taylor, before we
16         begin, are you going to be continuing, and then I'll
17         be allowed to cross?
18              MR. SMITH:  Yes.  I have about three questions,
19         and then I'll turn it over.
20              MR. CAFFAS:  Okay.
21              MR. SMITH:  Okay.
22     BY MR. SMITH:
23         Q.  Kobi, in response to the subpoena, did you
24     search the Five9 system for records of calls to
25     plaintiffs --
```

Page 194

```
 1        A.    Yes.

 2        Q.    -- to Plaintiff?

 3        A.    Yes.

 4        Q.    And when you stated that the Five9 system keeps

 5   records for 30 to 60 days, was that an estimate or do

 6   you know, for a fact, that's true?

 7        A.    I know, for a fact, that's true.

 8        Q.    Okay.  And did you search the Five9 system for

 9   records of any other calls that would be responsive to

10   the subpoena?

11        A.    Yes.

12        Q.    Okay.  And there were no records?

13        A.    None.

14              MR. SMITH:  Okay.  All right.  Greg, you can

15        take over.

16                       CROSS-EXAMINATION

17   BY MR. CAFFAS:

18        Q.    Hi, Mr. Chukran.  Thanks again for taking some

19   time to continue this deposition.

20              As we mentioned last time, my name's

21   Gregory Caffas.  I am here as counsel for SunPath in

22   this case, so I'm just going to be asking you a few

23   questions in addition to what Mr. Smith has -- has given

24   to you today.

25              American Protection's business practices are
```

1      only to call people who have opted in, correct?

2          A.   Yes.

3          Q.   And when you -- when you say "only to call

4      people who opted in" do you -- what do you mean by

5      "opted in"?

6          A.   It's --

7               MR. SMITH:  Objection.  Asked and answered.

8               MR. TANDY:  You -- you can answer, Kobi.

9               THE WITNESS:  It means they requested -- they

10         requested to be contacted from us, specifically.

11     BY MR. CAFFAS:

12         Q.   Okay.  And that could be from --

13              Can you tell me what kind of methods they would

14     have been providing their request to be contacted by

15     American Protection, specifically?

16         A.   As I --

17              MR. SMITH:  Objection.  Asked and answered.

18              THE WITNESS:  As I -- as I replied in my

19         response, I provided this information either via

20         online, via a website, or via calling in.

21     BY MR. CAFFAS:

22         Q.   Has American Protection, including through any

23     subcontractors, ever knowingly or willfully called

24     anyone who had specifically requested not to be called

25     by American Protection?

1          MR. SMITH:  Objection.

2          THE WITNESS:  No.

3          MR. SMITH:  Calls for speculation.

4     BY MR. CAFFAS:

5          Q.   Can you repeat your answer, Mr. Chukran?

6          A.   No.  Yes, I can repeat my question-- it

7     was -- and my answer, it was no.

8          Q.   Thank you.  I had -- I had heard you.  I'm just

9     continuing down my list.  Thank you.

10         There was a recording played to you a few

11    minutes ago on which someone named Dawn had left a

12    voicemail, presumably for Plaintiff.

13         Do you remember that recording?

14         A.   Yes.

15         Q.   And you had said that Dawn worked on the -- the

16    backend of American Protection.

17         Is that how you described her position?

18         A.   Yes.

19         Q.   And does that mean that Dawn would have only

20    been making calls to someone who was already a customer

21    or who had already expressed interest in purchasing a

22    product from American Protection?

23         MR. SMITH:  Objection.  Calls for speculation.

24         THE WITNESS:  Yes.

25    BY MR. CAFFAS:

Page 197

1     Q.   Would Dawn be making any kind of sales calls at

2   all?

3          MR. SMITH:  Objection.

4          THE WITNESS:  No.

5          MR. SMITH:  Calls for speculation.

6   BY MR. CAFFAS:

7     Q.   Would Dawn have been making any phone calls

8   using the same dialing system that someone calling to

9   make a solicitation call would have used?

10    A.   Yes.

11    Q.   Let me ask that in a different way.

12         So what -- what type of dialing system would

13  Dawn have been using to contact potentially Ms. Smith?

14    A.   The same -- the same one that Samantha Jaeger

15  was using.

16    Q.   Okay.  So she, Dawn, in this case, would have

17  had -- would she not have manually dialed the person who

18  had already expressed interest to call them back?

19         MR. SMITH:  Objection.  Calls for speculation.

20    Lacks foundation.

21         THE WITNESS:  Yes.

22  BY MR. CAFFAS:

23    Q.   "Yes," she would have been manually dialing?

24    A.   Yes.

25    Q.   Okay.  I'm just trying to rectify your answer

1    here.

2         So it would seem that Ms. -- or Dawn would have

3    known that someone had already expressed interest, so

4    she would have used a telephone where she manually took

5    that customer's information and called them, in

6    particular, herself?

7         MR. SMITH:  Objection.  Calls for speculation.

8       Misstates the witness's testimony.

9         THE WITNESS:  Yes.

10   BY MR. CAFFAS:

11   Q.   Okay.  So do you --

12        Are you able to say, for a fact, whether that

13   was on a physical telephone, or would this be stored in

14   a computer system?

15   A.   No.  It was -- that was the same phone system

16   that would be virtual or via web browser.

17        In this case, the plaintiff gave us a credit

18   card number and agreed to the terms of the sale, so as

19   far as Dawn, she had written consent from a customer of

20   ours.

21   Q.   Uh-huh.  So my confusion, Mr. Chukran, is I

22   believe your testimony earlier was, when someone is

23   contacted as a potential -- to make a potential sale,

24   they are in a list, and they are being -- the

25   subcontractor of American Protection that is going to be

```
 1    making the sale, is waiting for them to be connected
 2    with someone who picks up on a call, correct?
 3         A.   Yes.
 4         Q.   Whereas Dawn, who is calling once the consumer
 5    has already expressed interest in a product, appears to
 6    have known about this and is specifically calling them
 7    back, in particular; is that correct?
 8         A.   Yes.  She -- she manually dialed it, yes.
 9         Q.   Okay.  So that system demands that it be
10    manually dialed on occasion, too?
11         A.   Yes.
12         Q.   I also want to clarify something you had said
13    about whatever dialing system the subcontractors for
14    American Protection are using.
15              You had said that it is just dialing from a
16    list of leads, correct?
17         A.   Yes.
18         Q.   And, again, this would only be a list of leads
19    that were uploaded to the system of people that had
20    already requested to be called specifically by
21    American Protection?
22              MR. SMITH:  Object to form.
23              THE WITNESS:  Yes.  Yes, or somebody that
24         called in on our toll-free number for information.
25    BY MR. CAFFAS:
```

 1    American Protection, then maybe that they left some

 2    restrictions in place for them.  That's the only

 3    scenario I'm familiar with.

 4         Q.   Did that ever happen?

 5         A.   No.

 6         Q.   Did SunPath have any say over the number of

 7    employees or independent contractors that

 8    American Protection had on its staff?

 9         A.   No.

10         Q.   To your knowledge, would SunPath even know the

11    names of any of American Protection's employees or

12    independent contractors, besides yourself?

13         A.   No.

14         Q.   Does SunPath have any kind of control over

15    whether American Protection uses subcontractors to

16    generate lead information?

17         A.   No.

18         Q.   Does SunPath control where or how

19    American Protection would purchase any kind of supplies

20    for its services, like computers or anything like that?

21         A.   No.

22         Q.   Did SunPath direct how American Protection was

23    going to perform any work at all?

24         A.   Re -- can you please repeat the question?

25         Q.   Did SunPass -- Path control how

                                        Page 221

1    American Protection performed any of its work at all?

2        A.    As I stated previously, SunPath would provide

3    us with numbers to be added to the Do Not Call list.

4        Q.    And when SunPath did that, would you add them

5    to your internal Do Not Call list?

6        A.    Yes.

7        Q.    Other than providing American Protection with

8    numbers to be added to its own internal Do Not Call

9    list, did SunPath have any say over who

10   American Protection called at any time?

11       A.    No.

12       Q.    Did SunPath have any control over what type of

13   product was offered by American Protection or any of its

14   subcontractors to any customer?

15       A.    Just within their own product offering.

16       Q.    But if there was a --

17             It didn't restrict from selling the product of

18   a competitor even?

19       A.    I don't believe so, no.

20       Q.    Did SunPath provide any kind of training to

21   American Protection?

22       A.    Any kind of what?

23       Q.    Training.

24       A.    Just in terms of product training.

25       Q.    What do you mean by that?

1     A.   The various type of -- types of plans that are

2  available, what's covered, what's not.

3     Q.   So the only type of training, if you could even

4  call it that, was making sure that American Protection

5  understood what SunPath's products were?

6         MR. SMITH:  Objection.  Misstates the witness's

7     testimony.

8         THE WITNESS:  Yes.

9  BY MR. CAFFAS:

10     Q.   And SunPath never trains any of

11  American Protection's subcontractors, right?

12         MR. SMITH:  Object to form.

13         THE WITNESS:  I'm not sure.  I'm not sure of

14     that.

15  BY MR. CAFFAS:

16     Q.   All right.  You had -- you had said earlier

17  that SunPath wasn't even aware of who

18  American Protection's subcontractors were, right?

19        So that it didn't train these people that they

20  didn't know who they were obviously, right?

21         MR. SMITH:  Objection.  Argumentative.  Asked

22     and answered.  Mischaracterizes the witness's

23     testimony.

24         THE WITNESS:  On occasion, some companies would

25     offer training that could be done, for example, via

1      Zoom, and that would include some subcontractors

2      attending those, those trainings.

3  BY MR. CAFFAS:

4      Q.   And did that include SunPath?

5           MR. SMITH:  Objection.  Asked and answered.

6           THE WITNESS:  Possibly.  I'm not sure of an

7      exact -- I don't have a time.  I don't know exactly,

8      but SunPath does have a sales representative.  His

9      name's Brian.  It is my understanding his job is to

10     provide training.

11          I don't recall exactly if that was -- if that

12     happened or not, but yeah, potentially.  Potentially

13     SunPath does provide training, yes.

14  BY MR. CAFFAS:

15     Q.   And you had said already, though, that if it

16  was any kind of training, it would just be as to what

17  SunPath's products are?

18          MR. SMITH:  Objection.  Asked and answered.

19          THE WITNESS:  In some cases, they would

20     offer -- and, again, I -- I don't have specific

21     incidents, but just in terms of industry, sometimes

22     they would offer some incentives of the highest

23     sales for the month, for example.  They would offer

24     some kind of a cash incentive.

25  BY MR. CAFFAS:

Page 224

1     Q.   But you are saying that this is just an

2   industry-wide thing; this isn't specifically SunPath,

3   right?

4          MR. SMITH:  Objection.  Mischaracterizes the

5       witness's testimony.

6          THE WITNESS:  Yes.

7          MR. CAFFAS:  I'm trying to get to -- sorry.

8       I'm just going to back up.

9   BY MR. CAFFAS:

10    Q.   And you're saying this is an industry-wide

11  testimony -- or an industry-wide practice, not

12  specifically SunPath, right?

13         MR. SMITH:  Same objection.

14         THE WITNESS:  I'm aware that a few different

15      companies provide the same type of incentives.

16  BY MR. CAFFAS:

17    Q.   Now, you don't know of any specific time when

18  any subcontractor would have taken any kind of classes

19  like that from SunPath?

20    A.   I don't recall.

21    Q.   Did SunPath ever pay for any of

22  American Protection's office space, for example?

23    A.   Can you please repeat the question?

24    Q.   Did SunPath pay for any office space used by

25  American Protection?

Page 225

1    A.    No.

2    Q.    Did SunPath ever reimburse you for any of --

3 any expenses associated with office space, travel

4 expenses, or office supplies?

5    A.    No.  I believe they may have provided some

6 stationeries, pens, and mouse pads and -- and -- and

7 table -- table -- or desk mats with their product name

8 on it and stuff.

9    Q.    So this would be like mouse pads and

10 advertising-type products?

11    A.    Yes.

12    Q.    But there was no reimbursement for

13 American Protection or any of its subcontractors like

14 providing office supplies, right?

15    A.    No, I don't believe so.

16    Q.    Who paid American Protection's subcontractors?

17    A.    We did.

18    Q.    Is it correct to say that American Protection's

19 subcontractors were not ever compensated directly by

20 SunPath?

21    A.    Yes.

22    Q.    All right.  Mr. Chukran, I'm sharing my screen

23 with you again.

24         Can you see what's listed -- or what's

25 displayed on my screen as a "Seller Agreement"?

```
 1        A.   Yes.

 2        Q.   And --

 3             MR. SMITH:  Greg, that's Exhibit 3.

 4             MR. CAFFAS:  All right.

 5             (Previously marked Deposition Exhibit 3 was

 6        identified for the record.)

 7   BY MR. CAFFAS:

 8        Q.   All right.  And, as Mr. Smith has mentioned,

 9   this has already been shown to you as Exhibit 3.

10             This is the agreement that American Protection

11   and Chukran Management had entered in to with SunPath,

12   correct?

13        A.   Yes.

14             MR. SMITH:  Objection.  Misstates the evidence.

15   BY MR. CAFFAS:

16        Q.   Sorry.  I'm scrolling down to the bottom, where

17   it --

18        A.   (Witness perused document.)

19        Q.   I apologize.  I appear to be missing a page.

20   Give me one second.  I'm going to stop sharing my screen

21   while I --

22             (Pause in the proceedings.)

23             MR. SMITH:  Greg, while you figure this out,

24        could we take a brief, two-minute break?

25             MR. CAFFAS:  Yes, sure.  Let's -- let's break
```

Page 227

1      for a couple minutes, and when I get back, I will

2      direct you to the correct place.

3            (Recess taken from 12:02 p.m. to 12:08 p.m.)

4            MR. CAFFAS:  Okay.  Are we back on the record?

5            THE COURT REPORTER:  Yes, sir.  Thank you.

6            MR. CAFFAS:  All right.  I am going to share my

7      screen one more time, and I have this on the screen

8      as the "Call Center Marketing Agreement," which I

9      believe is Exhibit 2, not Exhibit 4.

10           (Previously marked Deposition Exhibit 2 was

11      identified for the record.)

12           MR. CAFFAS:  Yeah.  I just wanted to correct

13      that mistake from last time.

14  BY MR. CAFFAS:

15      Q.   Do you see that on the screen, Mr. Chukran?

16      A.   Yes.

17      Q.   And you recognize that as what's already been

18  discussed as Exhibit 2?

19      A.   Yes.

20      Q.   Okay.  And so this is the Call Center Marketing

21  Agreement between Chukran Management or

22  American Protection and SunPath?

23      A.   Yes.

24      Q.   And do you see, on Page 2 -- or -- sorry.

25  Excuse me -- Paragraph 2, under the "General Provisions,"

Page 228

1    A.   As a subcontractor, if they are varying from

2    that, it's -- potentially, it's possible, yes.

3    Q.   In what circumstances would that have happened?

4    A.   So if they decide to -- if they decide to share

5    information about the Powerball drawing or some small

6    talk, yes, it's possible.

7    Q.   Okay.  But, otherwise, the information really

8    is what they're selling and their introduction, was only

9    authorized to -- they're only authorized to use what's

10   in the script?

11        MR. SMITH:  Objection.  Asked and answered.

12   BY MR. CAFFAS:

13   Q.   You can answer.

14   A.   Yeah.  Again, as a subcontractor, we can

15   provide them a guideline of -- of -- of a script.  At

16   the end of the day, they are their own subcontractor.

17   Q.   And did you ever advise any of your

18   subcontractors or employees that were using this script

19   to hide their identity when speaking to potential

20   customers?

21        MR. SMITH:  Objection.

22        THE WITNESS:  Absolutely not.

23        MR. SMITH:  Asked and answered.

24   BY MR. CAFFAS:

25   Q.   Can you repeat your answer again?

1     A.   No.

2     Q.   Is it correct that, in this exhibit, as

3  written, SunPath's name isn't mentioned in the sales

4  script or on the -- the cover of the -- the script at

5  all?

6     A.   Correct.

7     Q.   Okay.  Has American Protection or any

8  subcontractors that it hired ever intentionally violated

9  the Telephone Consumer Protection Act, to your

10  knowledge?

11     A.   No.

12     Q.   Have you ever advised any of

13  American Protection's employees or subcontractors to

14  violate the Telephone Consumer Protection Act?

15     A.   No.

16     Q.   Has SunPath ever advised American Protection to

17  violate the Telephone Consumer Protection Act?

18     A.   No.

19     Q.   Has American Protection, including any of its

20  subcontractors, ever intentionally violated the Virginia

21  Telephone Privacy Protection Act?

22         MR. SMITH:  Objection.

23         THE WITNESS:  No.

24         MR. SMITH:  Lacks foundation.

25  BY MR. CAFFAS:

1     Q.  Has SunPath ever directed American Protection

2  or any of its subcontractors to violate the Virginia

3  Telephone Privacy Protection Act?

4     A.  No.

5     Q.  Has American Protection ever knowingly called

6  the plaintiff, Ruth Smith, in violation of the Telephone

7  Consumer Protection Act?

8          MR. SMITH:  Objection.  Calls for speculation.

9          THE WITNESS:  No.

10  BY MR. CAFFAS:

11     Q.  I'll rephrase in case I said that incorrectly.

12          Had -- has American Protection ever

13  intentionally or knowingly called Ruth Smith in

14  violation of the Telephone Consumer Protection Act?

15          MR. SMITH:  Objection.  Calls for speculation.

16          THE WITNESS:  No.

17  BY MR. CAFFAS:

18     Q.  Has American Protection, including any of its

19  subcontractors, ever intentionally or knowingly called

20  Ruth Smith in violation of the Virginia Telephone

21  Privacy and Protection Act?

22          MR. SMITH:  Objection.  Calls for speculation.

23          THE WITNESS:  No.

24  BY MR. CAFFAS:

25     Q.  Has SunPath ever directed American Protection

1    or any of its subcontractors to intentionally or

2    knowingly violate the Virginia Telephone Privacy

3    Protection Act?

4        A.   No.

5        Q.   Has American Protection, including through any

6    of its subcontractors/employees, ever knowingly violated

7    any telemarketing laws?

8        A.   Can you please repeat the question?

9        Q.   Has American Protection, including through any

10   of its employees or subcontract -- subcontractors, ever

11   knowingly violated any telemarketing laws?

12       A.   No.

13       Q.   And has SunPath ever directed or controlled

14   American Protection, including through any of its

15   employees or subcontractors, to violate any kind of

16   telemarketing law?

17       A.   I'm sorry.  Can you repeat the question?

18       Q.   Has SunPath ever --

19       A.   I apologize.  I apologize.  Go ahead.

20       Q.   Has SunPath ever directed or controlled

21   American Protection, including through any kind of

22   employee or subcontract -- subcontractor, to violate any

23   kind of telemarketing law?

24       A.   I'm sorry.  Can you please repeat the question

25   again?  For the last time.

1       Q.   Has SunPath ever directed or controlled

2   American Protection, including through any kind of

3   subcontractor/employee, to violate any kind of

4   telemarketing law?

5       A.   No.

6            MR. CAFFAS:  Thank you.  That's all --

7            THE WITNESS:  I apologize, Greg.  By the way,

8        that was not intentional.  My apology.

9            MR. CAFFAS:  Not a problem.

10           That's all I have for you right now.

11           I reserve my right to -- to recross based on

12       anything Taylor might -- might ask you or anything I

13       might have missed, but I'll cede to Taylor again

14       right now.

15           MR. SMITH:  Okay.

16                    REDIRECT EXAMINATION

17  BY MR. SMITH:

18       Q.   Kobi, I'll try to be quick so you can get out

19   of here.  I want to discuss Exhibit 4, which is the

20   sales script, and I'm happy to bring it up, if you want.

21   Just let me know.  The questions are pretty

22   straightforward, though.

23           You've just testified that, when a

24   subcontractor would utilize the sales agreement, they

25   would say hi, insert the name of the prospective client,

```
1   and then say this is, first and last name of the
2   subcontractor, and then continue on.
3            Do you recall that?
4   A.   Yes.
5   Q.   What is your basis for saying that a
6   subcontractor would utilize their first and last name?
7            MR. TANDY:  Objection.
8            You may answer.
9            THE WITNESS:  I believe this came up in the
10           initial deposition time, and my answer back then and
11           today will be that there is -- there has not been
12           any specific instructions as to whether they should
13           use both first name and last name.
14               The instruction was just to identify themselves
15           with their true name, but there's not been any
16           instruction just to -- whether they should use both
17           names or first name or last name, first, et cetera.
18   BY MR. SMITH:
19   Q.   Got it.  And that's kind of why I'm asking.
20            Because if you recall the two recordings, so
21   Recording 13 -- and I'm happy to replay it.
22   A.   Okay.
23   Q.   Just let me know.
24   A.   Okay.
25   Q.   She says "Hi, this is Samantha."  She doesn't
```

Page 238

```
 1    utilize her last name, correct?
 2        A.    Correct.
 3        Q.    And Exhibit 14, it begins with, "Hi, this is
 4    Dawn."
 5              She didn't utilize her last name, right?
 6        A.    Right.
 7        Q.    Okay.  So you can't necessarily say that, on
 8    every occasion, your subcontractor identified themselves
 9    by first and last name, correct?
10              MR. TANDY:  Objection.
11              You can answer.
12              THE WITNESS:  Again, there's no -- there's no
13          specific -- there's no specific instructions to
14          whether they should just use their first name or
15          both first and last names.
16    BY MR. SMITH:
17        Q.    Got it.  I just wanted to clarify that.
18              All right.  And then Greg also brought up some
19    questions regarding your statement that Plaintiff called
20    in after receiving a mailer.
21              Do you recall those or that discussion, at
22    least?
23        A.    I'm sorry.  Can you please repeat the question?
24        Q.    Yeah.  You just discussed with opposing counsel
25    how you believe Plaintiff called American Protection
```

1     after receiving a mailer.

2          A.   Yes.

3          Q.   Do you remember that?

4          A.   Yes.

5          Q.   Okay.  And I think the exact words you used

6     were, "it looks to be that she called in," right?

7          A.   Yes.

8          Q.   And you're basing that on the -- the Inline CRM

9     screenshots?

10         A.   Yes.

11         Q.   I just want to be clear.

12              American Protection doesn't have any call

13    records reflecting an inbound call from Plaintiff; is

14    that correct?

15         A.   Correct.

16         Q.   Got it.  We discussed the Five9 system today.

17              Do you know if you have an account number

18    associated with the Five9 system?

19         A.   I don't, or I'm not sure if I do.

20         Q.   Then is that something that could be produced,

21    if you do have one?

22         A.   I can look.

23         Q.   Okay.  Do you have any documents that would

24    identify the Five9 system?

25         A.   There would have been an agreement between us.

                                            Page 240

Kobi Chukran (Chukran Management Group) , Volume 2 - November 9, 2022

```
 1                  CERTIFICATE OF REPORTER

 2                   (VIA VIDEOCONFERENCE)

 3    STATE OF WISCONSIN:

 4    COUNTY OF WINNEBAGO:

 5

 6         I, COURTNEY N. LANGHOFF, RMR, CRR, FPR-C,

 7    Notary Public, State of Florida, certify that I was

 8    authorized to and did stenographically and remotely

 9    report the Zoom videoconference deposition of

10    KOBI CHUKRAN (CHUKRAN MANAGEMENT GROUP, LLC); that a

11    review of the transcript was requested; and that the

12    foregoing transcript, pages 134 through 248, is a true

13    and accurate record of my stenographic notes.

14         I further certify that I am not a relative,

15    employee, or attorney, or counsel of any of the parties,

16    nor am I a relative or employee of any of the parties'

17    attorneys or counsel connected with the action, nor am I

18    financially interested in the action.

19

20         DATED this 16th day of November, 2022.

21

22

23

           COURTNEY N. LANGHOFF, RMR, CRR, FPR-C

24

25

                                            Page  250
```

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO**
**DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS**

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for her supplemental responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set of Discovery Requests, states as follows: all responses and objections contained herein are based only upon such information presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. The responses below are given without prejudice to Plaintiff's right to later produce additional documents or information.

**INTERROGATORIES**

1.      Identify all telephone calls to Your Cellular Telephone Numbers for which you seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

**JA1265**

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. Plaintiff also states as follows:

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themself by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's vehicle service contracts.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at 10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls,

Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m., which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's vehicle service contracts.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's

vehicle service contracts.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themself by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's vehicle service contracts.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

4

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

5

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themself by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's vehicle service contracts.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's vehicle service contracts.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

2.      If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, the calls

6

at issue were place for the purpose of soliciting Plaintiff to purchase SunPath's vehicle service contracts. (*See* SMITH000022-26.) As such, SunPath is a "seller" within the meaning of Va. Code Ann. § 59.1-514.1 (West). Accordingly, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

3.      If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services, specifically its vehicle service contracts. Indeed, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") testified that it placed calls for the purpose of soliciting sales of SunPath's vehicle service contracts. Further, American Protection asserts that SunPath provided training to assist in selling its products and services. Further, Plaintiff directs SunPath's attention

7

to its contractual agreements with American Protection, which governs the relationship with

SunPath and reveals substantial control that SunPath asserts of American Protection's operations

and telemarketing. Additionally, Plaintiff also directed SunPath's attention to documents

produced, which reflect SunPath's appointment of American Protection as its agent in the State

of Florida for the purposes of selling automobile warranties. Plaintiff also asserts that SunPath is

liable for American Protection's actions by ratifying its acts and omissions, including accepting

the benefits of the telemarketing calls at issue.  Additionally, in the context of the VTPPA

claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West) as set

forth in response to Interrogatory No. 2 above. Otherwise, investigation continues, and Plaintiff

will supplement this response following the receipt of relevant documents and data.

18.     If you contend that you suffered any compensable harm(s) as a result of the calls

or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of

such contention and identify the amount of damages you are seeking in this action for such

harm(s) and from which Defendant.

ANSWER: Objection, this interrogatory is premature as discovery has just commenced.

This interrogatory also seeks information more readily in the possession, custody, or control of

Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without

waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in

violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

per call for the second call received in violation of the VTPPA, and $5000 per call for each

subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and

complete computation of damages at this time. Discovery is ongoing and Plaintiff will

supplement this response following receipt of relevant data from Defendant and any other

8

relevant sources regarding the number of calls made. Plaintiff further states that the legal harms

she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of

Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier,

interruption and loss of use and enjoyment of her telephone (including the related data, software,

and hardware components), and wear and tear on her cellphones.

SUPPLEMENTAL ANSWER: Objection, this interrogatory is premature as discovery

has just commenced. This interrogatory also seeks information more readily in the possession,

custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal

conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500

per call received in violation of the TCPA, $500 per call for the first call received in violation of

the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5,000

per call for each subsequent call received in violation of the VTPPA. Consequently, based on the

information currently available to Plaintiff, she seeks $81,000 in damages for violations of the

TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to

provide a full and complete computation of all class members' damages at this time. Discovery is

ongoing and Plaintiff will supplement this response following receipt of relevant data from

Defendant and any other relevant sources regarding the number of calls made. Plaintiff further

states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that

result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it

paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including

the related data, software, and hardware components), and wear and tear on her cellphones.

## **REQUESTS FOR ADMISSION**

7.      You are in possession of no written or audio evidence that SunPath or any party

allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020 because she has access to her cellular telephone bills, which may reflect such calls reflecting the full scope of all calls at issue in this case. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is

10

not presently aware of any written evidence that are in her possession reflecting communications

by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June

9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of

written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath

directed to her cellular telephone after June 9, 2020 because she has access to her cellular

telephone bills, which may reflect such calls once third parties identify the full scope of the calls.

Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in

discovery, which may reveal responsive documents and information.

    16.    During each of the calls described in Paragraphs 23-24 of your Complaint, the

caller did not state that he or she was calling from or on behalf of SunPath.

    RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either

admit or deny this request.

    SUPPLEMENTAL RESPONSE: Deny. For every call that was answered or that left a

voicemail message, the caller did not identify themself by first and last name. A complete

breakdown of the calls at issue can be found in Plaintiff's supplemental response to Interrogatory

No. 1.


Dated: November 11, 2022            **RUTH SMITH**, individually and on behalf of all
others similarly situated,

                         By: _/s/ Taylor T. Smith_
                               One of Plaintiff's Attorneys

                         Francis J. Driscoll, Jr.
                         (frank@driscolllawoffice.com)
                         4669 South Blvd., Suite 107
                         Virginia Beach, VA 23452
                         Telephone: 757-321-0054
                         Facsimile: 757-321-4020

                         Patrick H. Peluso
                         ppeluso@woodrowpeluso.com

11

**JA1275**

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 11, 2022.

_/s/ Taylor T. Smith_

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-WEF |
| Plaintiff, | |
| v. | |
| **SUNPATH, LTD.**, a Massachusetts corporation, | |
| Defendant. | |

**PLAINTIFF'S RUTH SMITH'S VERIFICATION**

I, Ruth Smith, of full age, verify as follows:

I have read the foregoing supplemental responses to the Interrogatories and Requests for Admission (excluding objections, legal conclusions, or matters that are of public record) and verify that they are true, accurate and complete based upon my personal knowledge of the information contained in them, except as set forth below.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on   11 / 11 / 2022   .

_____
Ruth Smith

**JA1277**

Doc ID: d13333d7adf36dcaae1099a3e4ba595da0a17668

# EXHIBIT 10















# EXHIBIT 11

# American Automotive Protection

☎ - (800) 427-1806

## Your Plan

Coverage Provided By

## SunPath

Coverage Duration

## 48$^{mo}$ / 75,000$^{mi}$

The Vehicle Service Contract you are purchasing will cover your vehicle until the vehicle odometer reads 76,000$^{mi}$ or June 27, 2024, whichever occurs first.

Coverage Type

## Diamond Coverage

○ View Coverage Terms (../openfile.aspx?documentid=139)

## Deductible

○ $0.00
○ $50.00
◉ $100.00

## Payment

◉ Monthly Installments
○ Full Payment

Due Today

## $99.00

30 Monthly Payments of

## $116.33

## Your Vehicle

## 2016 BMW 228

**JA1284**

Exact Odometer: 9,500

Enter VIN Number

Validate

Vehicle VIN needs validated for accurate pricing.

# Policy Holder Information

**First Name**

Ruth

**Last Name**

Smith

**Phone**

(703) 728-9650

**Email**

rdssmith@gmail.com

**Address**

12000 Market St

**Apt/Suite**

apt 356

**City**

Reston

**State**

VA

**Zip**

20190

# Your Account

**JA1285**

Upon review and approval of your purchase you will be notified via email how to access your account online. If you already have an account, this new policy will be linked to your existing account by matching your email address on file.

11/5/2020    Gmail - Delivered FW: Email from American Protection Corp. Coverage Summary - here's your info

Case 1:22-cv-00081-LMB-WEF Document 81-11 Filed 01/18/23 Page 5 of 6 PageID# 1271

On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

---

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

**Samantha** Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

### Vehicle Summary

**Vehicle**
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

**Coverage Plan**
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

**Plan Cost**

| | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance
- Complimentary Car Rental & Towing
- Complimentary Trip Interruption / Tire Protection
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St

**JA1287**

Case 1:22-cv-00081-LMB-WEF Document 81-11 Filed 01/18/23 Page 6 of 6 PageID# 1272

Reston, VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

# EXHIBIT 12

6/11/20
I sent an email to Samantha at American Protection Corp not to contact me as I am not interested in purchasing any vehicle protection/warrenty for my car.
Do not call me anymore.

5/28/20
Company: American Protection
Agent: Samantha
Phone: 1-800-427-1806 (Ext 1190)
Website: Americanprotectioncorp.com
Location: FL
Type of call: I answered the call there was a 3 second delay and Samantha came on the line.
16 Minute call at 12:51PMET
Received a voicemail from Samantha (following up on my VIN number) at 1:55PMET and an email quote from Samantha at 4:09PMET.
(In order to for Samantha to provide me the information I let her know that I would purchase the highest plan and gave her a Visa gift card as payment)

Date: 5/26/20
Type of call: Auto dial.  I answered the call there was a three second delay then Marina came on the line asked me questions about my vehicle and then she said she was going to transfer me but we got disconnected.
Agent: Marina
Company name: Vehicle Protection Center
Number: 410-844-6327
1 minute call at 3:51PMET

6/5/20
Received additional voicemail and call from American Automotive protection corp operator Dawn (worked with Samantha. Received at 12:37PMET

6/5/20
Received additional voicemail and call from American Automotive protection corp operator Dawn (worked with Samantha. Received at 12:37PMET

6/11/20
I sent an email to Samantha at American Protection Corp not to contact me as I am not interested in purchasing any vehicle protection/warrenty for my car.
Do not call me anymore.

Case 1:22-cv-00981-LMB-WEF   Document 81-12   Filed 01/18/23   Page 7 of 7 PageID# 1279

**+1 (281) 709-0786**
Houston, TX
May 28, 2020 at 1:55 PM

0:00                                    −0:21

▶                              🔊    📞    🗑

**Transcription Beta**
"Hi Ruth this is Samantha calling with American protection I was just calling you to get the Vin number on your BMW to get your car is going for you um I'll be back in the office in about an hour I'm going to lunch my number is 1-800-427-1806 extension 5005 talk to you soon bye-bye..."

Was this transcription useful or not useful?

Favorites    Recents    Contacts    Keypad    Voicemail

On Jun 10, 2020, at 11:15 AM, Ruth Smith <rdssmith@gmail.com> wrote:

# EXHIBIT 13



# American Protection Corp. Sales Script

Hi _____this is _____, thank you for calling American Protection Corp. How may I direct your call?

## DISCOVERY

- What is the <Year>, <Make>, <Model> of your vehicle?

- About how many miles do you currently have?

- Are you the original owner?

- How many miles do you drive a year/month?

- Has your car had any problems or broken down?

- Do you keep up with regular maintenance and oil changes.

Great! You qualify for the _____ protection plan! Your <Model> will be covered for the next ____ years and additional _____ miles. This plan covers your <REFER TO PLAN COVERAGE DETAILS>: engine, transmission, front and rear drive axe assembly, your air conditioning system, your electrical components, alternator, starter, power door locks, power window motors, cooling system, fuel delivery system right down to all the seals and gaskets on your <Model>.

You can bring your <Mode> to any licensed repair facility of your choice. As long as they are ASE certified and licensed.

**JA1297**

**<u>Also included with your plan:</u>**

• Towing

• 24 hr. road side assistance- covers towing, jump start, Gas, lock out.

• Rental car reimbursement up to 5 days per claim

Do you any other questions about the coverage before we talk about the price?

You can get this policy started today for $_____. If you pay that in full today we do offer an additional discount, But if you do not have the means to do so for we do offer no-fee payment plans that will allow you to put a small down payment and make monthly payments over the next year or two.

I can give you two options. The down payment is $_____ and I can give you either 18 monthly installments at $_____ per month OR 24 monthly installments at $_____ per month.

You will also receive a 30-day review period and 100% money back guaranteed. I will be your account manager for the life time of the policy and you can reach me any time with any questions or assistance you may need.

**<u>VERIFICATION SCRIPT</u>**

• Congratulations on your purchase | Must Get Verbal authorization to run payment

• Will receive policy card, booklet, and contract. GIVE DIRECT PHONE # & Ext.

American Protection Corp. | 10267 Cocobolo way. Boynton Beach, FL 33437 | www.AmericanProtectionCorp.com

**JA1298**



# <u>American Protection Corp. Sales Script</u>

Hi _____ this is _____, thank you for calling American Protection Corp.
How may I direct your call?

### <u>DISCOVERY</u>

- What is the \<Year\>, \<Make\>, \<Model\> of your vehicle?

- About how many miles do you currently have?

- Are you the original owner?

- How many miles do you drive a year/month?

- Has your car had any problems or broken down?

- Do you keep up with regular maintenance and oil changes.

Great! You qualify for the _____ protection plan! Your \<Model\>  will be covered for the next _____ years and additional _____ miles. This plan covers your \<REFER TO PLAN COVERAGE DETAILS\>: engine, transmission, front and rear drive axe assembly, your air conditioning system, your electrical components, alternator, starter, power door locks, power window motors, cooling system, fuel delivery system right down to all the seals and gaskets on your \<Model\>.

You can bring your \<Mode\> to any licensed repair facility of your choice. As long as they are ASE certified and licensed.

**Also included with your plan:**

• Towing

• 24 hr. road side assistance- covers towing, jump start, Gas, lock out.

• Rental car reimbursement up to 5 days per claim

Do you any other questions about the coverage before we talk about the price?

You can get this policy started today for $_____. If you pay that in full today we do offer an additional discount, But if you do not have the means to do so for we do offer no-fee payment plans that will allow you to put a small down payment and make monthly payments over the next year or two.

I can give you two options. The down payment is $_____ and I can give you either 18 monthly installments at $_____ per month OR 24 monthly installments at $_____ per month.

You will also receive a 30-day review period and 100% money back guaranteed. I will be your account manager for the life time of the policy and you can reach me any time with any questions or assistance you may need.

**VERIFICATION SCRIPT**

• Congratulations on your purchase | Must Get Verbal authorization to run payment

• Will receive policy card, booklet, and contract. GIVE DIRECT PHONE # & Ext.

# EXHIBIT 14

**From:** Ruth Smith <rdssmith@gmail.com>
**Date:** June 11, 2020 at 7:49:00 AM CDT
**To:** sjaeger@americanprotectioncorp.com
**Subject: Re: American Protection Corp. Quote Summary**


Samantha,

I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty for my car.

Do not call me anymore.

Ruth


On May 28, 2020, at 6:03 PM, American Automotive Protection <sjaeger@americanprotectioncorp.com> wrote:



American Protection Corp. | Toll Free: (800) 427-1806 | www.AmericanProtectionCorp.com

## Extended Service Protection

Dear Ruth,

Thank you for taking the time to discuss your vehicle protection needs. Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at (800) 427-1806

We are a nationwide provider aligned with A+ carriers, rated by AM Best and the Better Business Bureau. AM Best is the leader in Insurance ratings and is a great indicator for solid financial strength. When looking for any insurance product, financial stability should be of utmost importance; after all, you will need us to be there down the road to pay your claims.

American Protection carries an **A+ rating with BBB** since 2007. You can buy from us with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates. That's peace of mind.

Sincerely,

Samantha Jeager
American Automotive Protection
(800) 427-1806   Ext. 1190
sjaeger@americanprotectioncorp.com
http://www.AmericanProtectionCorp.com

## Vehicle Summary

### Vehicle
Make: 2016 BMW
Model: 228
Odometer: 9,500
Vin:

### Coverage Plan
Plan: Diamond
Expiration Date: 6/27/2024
Expiration Miles: 76,000
Deductible: $100.00

### Plan Cost
| | |
|---|---|
| Subtotal: | $3,589.00 |
| Tax: | $0.00 |
| Total: | $3,589.00 |
| Down Payment: | $99.00 |
| Payments: | 30 |
| Monthly Payment: | $116.33 |

## Important Benefits

- Pays directly to the repair facility of YOUR Choice
- Accepted anywhere in the U.S. or Canada
- 30-Day Review
- Transferrable coverage
- Low deductible options
- Complimentary 24X7 Roadside-Assistance

JA1302

- Complimentary Car Rental & Towing
- ~~Guaranteed Major Component (The Protection~~
- 100% Money-Back Guarantee
- Lowest-prices Guarantee

## Email Sent To

Response Code: 617RC12986
Ruth Smith
12000 Market St
Reston,VA 20190
(703) 728-9650

BUY NOW

American Automotive Protection and the Logo are registered trademarks of American Automotive Protection.

# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH, on behalf of herself and a class of others similarly situated,** | |
| Plaintiff, | |
| | **Civil Action No. 1:22-cv-00081 (LMB/TCB)** |
| v. | |
| **SUNPATH, LTD.,** | |
| Defendant. | |

**SUNPATH, LTD.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST
DISCOVERY REQUESTS**

Defendant SunPath, Ltd. ("SunPath") submits the following objections and responses to Plaintiff's First Set of Interrogatories and Document Requests as follows:

**INTERROGATORIES**

1.      Identify and Describe the manner by which any prior express written consent to place telephone calls to Plaintiff Smith's cellphone was obtained by You (or a third-party acting on Your behalf or for Your behalf or Your benefit), including identification of the complete Consent Language that was used to obtain such consent and the location of any proof of such consent.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control

**JA1305**

(or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

SunPath also objects this request to the extent it seeks information already known to Plaintiff or in Plaintiff's possession.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath has not placed any calls to Plaintiff's cell phone and does not make any telemarketing calls at all, including any calls made using an automatic telephone dialing system or prerecorded voice, that would require Plaintiff or any other parties' prior express written consent to be called.


2.     Identify each and every step You have taken to comply with the TCPA, including all procedures and policies You have adopted and the training of third parties in telemarketing or other outbound calling activities in such procedures.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis,

2

other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath reiterates that it does not make telemarketing calls or direct or control the operations of any independent third-party company that does.  To the extent this interrogatory seeks information relating to the independent third-parties authorized to market and sell SunPath's products, pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that such entities at all times agree to operate "in accordance with laws and regulations of the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, the United States Postal Service and all other applicable federal, state, and local regulations and laws" when marketing or selling SunPath products.


3.      Identify all third-parties from whom You (or a third-party acting on Your behalf or for Your behalf or for Your benefit) obtained Plaintiff's lead information during the relevant time period, and Describe Your complete business relationship with each third-party, including all contracts and agreements.

**OBJECTION:** Defendant objects to this interrogatory on the grounds that it contains multiple questions in discrete subparts that apply towards Plaintiff's permitted number of Interrogatories as stated in the Court's scheduling order dated August 5, 2022. For the remainder of its objection, SunPath incorporates its objection to Interrogatory 1 as if fully set forth here.

3

**ANSWER:** See objection. Subject to and without waiving these objections, to the extent this request is directed at SunPath, none.

4.      Identify each and every step You have taken to comply with the VTPPA, including all procedures and policies You have adopted and the training of third parties in telemarketing or other outbound calling activities in such procedures.

**ANSWER:** SunPath incorporates its objection and answer to Interrogatory 2 as if fully set forth here.

5.      Identify all Persons who are residents of Virginia or whose telephone numbers have a Virginia area code that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with the dates, times, duration, purpose, and total number of such calls and Persons.

**OBJECTION**:  Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.   SunPath further responds that it does not make

4

**JA1308**

telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise. Additionally, SunPath objects on the grounds that the statement "for the same purpose that Plaintiff was called" is overly vague and requires the legal conclusion that SunPath has knowledge relating to or a role in making any of the calls Plaintiff refers to, a legal conclusion SunPath denies.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath has never called Plaintiff.  Therefore, none.


6.   Identify all communications between You on the one hand and any third-party on the other hand regarding the instant lawsuit.

**OBJECTION**: Defendant objects to the extent this request seeks work product or privileged information.  Defendant further objects that this request based only on what Plaintiff may consider to be "regarding the instant lawsuit." as it is vague, overly broad, and not narrowly tailored to a specific subject matter that might assist with producing relevant or admissible information.

**ANSWER:** See objection. Subject to and without waiving its objection, after receiving notice from counsel for Plaintiff that American Protection had sent Plaintiff an email providing a quote for what appeared to be a vehicle service contract administered by SunPath, SunPath's general counsel sent an email to the owner of American Protection asking whether American Protection had any phone records relating to the calls listed in Plaintiff's Complaint.  This communication was already produced by American Protection in response to the subpoena issued by Plaintiff.   SunPath is also producing all email communications with American

Protection relevant to this litigation, which may include those already produced by American Protection in response to Plaintiff's subpoena, such that SunPath refers Plaintiff to these emails pursuant to pursuant to Fed. R. Civ. P. 33.   Additionally, on between one and three occasions, most recently on September 16, 2022, SunPath's general counsel made calls to American Protection to further inquire regarding this request for records relating to the calls listed in Plaintiff's Complaint, to which American Protection provided no substantive response beyond what was provided in the previously referenced email communications.

7.      Identify and Describe Your complete factual basis for Your assertion, if any, that SunPath cannot be held liable for calls placed to Plaintiff.

**OBJECTION:** SunPath objects to this request as being overly vague in that it does not specify or define which "calls placed to Plaintiff" are specifically referred to with this request.

**ANSWER:** See objection.   To the extent this request refers to the calls listed in paragraph 25 of Plaintiff's Complaint, SunPath refers Plaintiff to the testimony in the declaration of its president, Andrew Garcia, provided in support of its Motion to Dismiss.

8.      Identify all Leads received from American Protection, including the total number of Leads.

**OBJECTION:**   SunPath objects to this request as vague and confusing as the term "Leads" is undefined.   SunPath further objects by incorporating its objection to Interrogatory 1 as if fully set forth here.

**ANSWER:** See objection.   Subject to and without waiving its objections, to the extent "leads" refers to information relating to consumers for the purposes of making telemarketing

calls to those consumers, SunPath reiterates that it does not make any telemarketing calls, and specifically has never made any telemarketing calls to Plaintiff.  Therefore, none.

9.       Identify and Describe any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath also objects to any legal conclusion that these parties make calls "on behalf of" SunPath because such parties market and sell SunPath products non-exclusively, meaning that those parties sell SunPath-administered products simultaneously alongside SunPath's competitors and decide independently what product to offer.  SunPath additionally reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of

7

**JA1311**

Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding unrelated collateral matters has no bearing here and discovery into such collateral matters is not proportional to the needs of this case.  *See*, *e.g.*, *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at *4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at *4 (E.D. Va. Apr. 11, 2018).

Defendant also objects to this request as overly broad and unduly burdensome, as this request seeks information not proportional to the needs of the case, including information equally available to Plaintiff in public filings, serves no purpose other than to harass and cause undue burden.

**ANSWER:** See objection.  Subject to and without waiving this objection, SunPath is continuing to investigate this request regarding American Protection, and will supplement this response as warranted.

10.    Identify and Describe any and all knowledge that You possess regarding American Protection's telemarketing activity.

**<u>OBJECTION:</u>** Defendant incorporates its objection to Interrogatory 2 as if fully set forth here.

**ANSWER:** See objection. Subject to and without waiving its objection, SunPath incorporates its answers to Interrogatories 6 and 12 as if fully set forth here.

11.    Identify and Describe all call scripts, marketing materials, or marketing guidelines that You provided to any third party that places calls on Your behalf or for Your benefit during

the relevant time period, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**ANSWER:** See objections.  Subject to and without waiving these objections, SunPath reiterates that it does not make telemarketing calls or direct or control the operations of any independent third-party company authorized to market or sell SunPath's products on a non-exclusive basis, including what consumers these companies contact or whether a consumer is offered a SunPath product or the product of one of SunPath's competitor.  The marketing operations of these companies, including how they obtain leads, what scripts they use, and what equipment they use, are entirely determined by those companies.  Regarding "marketing guidelines," pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable laws and regulations if and when conducting any telemarketing operations.

12.     Identify and Describe Your complete relationship with American Protection.

**ANSWER:** Pursuant to Fed. R. Civ. P. 33, SunPath refers Plaintiff to the agreement between SunPath and American Protection, which American Protection produced in response to the subpoena served on it by Plaintiff. SunPath also reiterates that it objects to any characterization of any party authorized to market or sell products it administers, including American Protection, as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities at all times to operate "in accordance with laws and regulations of the Federal Trade Commission, the Federal Communications Commission, the Federal Reserve Board, the United States Postal Service and all other applicable federal, state, and local regulations and laws" when selling SunPath products.  Any such third party, including American Protection, was permitted to sell the products of SunPath's competitors alongside SunPaths, and representatives of those third parties independently selected what policy to promote and sell.  SunPath also reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party, including American Protection, to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.  SunPath further responds that its agreement with American Protection was suspended in July of 2022, for commercial reasons not related to any of the claims in this lawsuit.

## DOCUMENT REQUESTS

1.     All Documents sufficient to Identify any prior express consent You claim or contend was obtained to place the telephone calls at issue to Plaintiff together with all

10

Documents sufficient to Identify the manner by which any such prior express consent was obtained.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

SunPath also objects this request to the extent it seeks information already known to Plaintiff or in Plaintiff's possession.

**RESPONSE:** See objections.


2.      All Documents sufficient to Identify the full and complete Consent Language that You claim applied Plaintiff.

**OBJECTION:** Defendant incorporates its objection to Document Request 1 as if fully set forth here.

**RESPONSE:** See objections.

3.      All Documents sufficient to Identify Your complete contract or other arrangement with any third party from whom You (or a third-party acting on Your behalf or for Your benefit) obtained Plaintiff's phone number or consent to place the telephone calls at issue.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath reiterates that it does not make telemarketing calls, did not make any telephone calls to Plaintiff, and does not direct or control the marketing operations of any independent third-party that may have called Plaintiff.  Accordingly, SunPath does not have any responsive documents in its possession, custody, or control.

4.   All Documents sufficient to Identify all telephone calls that were placed to Plaintiff.

**OBJECTION:** SunPath objects to this request as being overly vague in that it does not specify or define which "calls placed to Plaintiff" are specifically referred to with this request.

12

**JA1316**

SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath reiterates that it does not make telemarketing calls, did not make any telephone calls to Plaintiff, and does not direct or control the marketing operations of any independent third-party that may have called Plaintiff.  Accordingly, SunPath does not have any responsive documents in its possession, custody, or control.

5.     Copies of any subpoenas You caused to be issued or served in the case together with proofs of service, if any.

**RESPONSE:** No responsive documents exist.  SunPath will supplement this response if necessary.

6.     Copies of any documents obtained from any third party, by subpoenas or otherwise, relating to this action and the claims at issue, if any.

**OBJECTION:** Defendant objects to the extent this request seeks work product or privileged information.

**RESPONSE:** See objection.  To the extent this seeks non-privileged information, Plaintiff is already in possession of any documents received in response to its subpoena served on American Protection.  SunPath does not presently have any other responsive documents in its possession, custody, or control.

7.  Copies of all Documents identified in SunPath's Rule 26(a)(1) Initial Disclosures.

**RESPONSE:** No responsive documents exist.

8.  The sworn or unsworn statements of any witnesses.

**OBJECTION:** Defendant objects on the grounds that this request seeks documents already in Plaintiff's possession.  Defendant further objects to the extent this request seeks work product or privileged information.

**RESPONSE:** See objection.   To the extent this seeks non-privileged information, SunPath does not presently have any responsive documents in its possession, custody, or control.

9.     All Documents sufficient to Identify any policies, practices, procedures, or any other steps You have caused to be taken to attempt compliance with the TCPA.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath or by an "agent" of SunPath, a legal conclusion SunPath denies.  SunPath further objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**RESPONSE:** See objection. Subject to and without waiving its objections, SunPath reiterates that it does not engage in any telemarketing activities, does not make any outbound marketing calls, and specifically did not make any such calls to Plaintiff.  To the extent this refers to compliance requirements of any independent third-party authorized to market or sell Sunapth products, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable state and federal laws and regulations if and when conducting any telemarketing operations.

10.     All Documents sufficient to Identify any policies, practices, procedures, or any other steps You have caused to be taken to attempt compliance with the VTPPA.

**RESPONSE:** Defendant incorporates its objection and response to Document Request 9 as if fully set forth here.

11.     All Documents supporting Your assertion, if any, that Plaintiff is inadequate to serve as Class Representative.

**OBJECTION:** Defendant objects to the extent this request seeks documents already in Plaintiff's possession, custody, or control, or equally accessible to Plaintiff.

**RESPONSE:** See objection.  Subject to and without waiving its objection, SunPath does not currently have any responsive documents in its possession, custody, or control.

12.     All Documents supporting Your assertion, if any, that Plaintiff's attorneys are inadequate to serve as Class Counsel.

**OBJECTION:** Defendant objects to the extent this request seeks documents already in Plaintiff's possession, custody, or control, or equally accessible to Plaintiff.

**RESPONSE:** See objection.  Subject to and without waiving its objection, SunPath does not currently have any responsive documents in its possession, custody, or control.

13.     All Documents sufficient to Identify all Persons who You (or a third-party acting on Your behalf or for Your benefit) caused to be placed a telephone call during the relevant time period on their cellphones, for the same purpose that Plaintiff received a telephone call, using the same Dialing Equipment that was used to call Plaintiff, where You obtained the cellphone number and consent to call in the same manner as You obtained Plaintiff's telephone number and consent.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

16

**JA1320**

Additionally, SunPath objects on the grounds that the statement "for the same purpose that Plaintiff was called" is overly vague and requires the legal conclusion that SunPath has knowledge relating to or a role in making any of the calls Plaintiff refers to, a legal conclusion SunPath denies

**RESPONSE:**  See objection.  Subject to and without waiving its objection, no responsive documents exist.


14.     For all Persons Identified in Documents produced in Your response to Request to Produce No. 13 above, all Documents sufficient to Identify the number of times You (or a third-party acting on Your behalf or for Your benefit) caused each such Person to receive a telephone call, including the dates and times of all such telephone calls.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** See objection.  Subject to and without waiving its objection, no responsive documents exist.


15.     All Documents sufficient to Identify all Persons that reside in the State of Virginia whose numbers were registered on the National Do Not Call Registry for at least thirty (30) days who were called at least once by You (or by a third-party on Your behalf or for Your benefit) together with Documents identifying the dates, times, duration, purpose, and total number of such calls.

**OBJECTION:** SunPath objects to the extent that this request suggests, incorrectly, that all calls to persons registered on the National Do Not Call Registry, are unlawful.  Defendant

17

**JA1321**

further objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.  SunPath further objects that this request seeks information not relevant to the claims at issue, which involves allegedly unlawful *telemarketing* calls, and this request seeking information regarding calls *generally*, has no bearing on Plaintiff's individual or class claims, and serves no purpose other than to harass and cause undue burden.

**RESPONSE:** See objection.  To the extent this request seeks records relating to telemarketing calls to residents of the Commonwealth of Virginia, SunPath does not make any telemarketing calls or direct or control any party that does, and therefore no responsive documents exist.

16.     All Documents sufficient to Identify all Persons with Virginia area codes whose numbers were registered on the National Do Not Call Registry for at least thirty (30) days who

were called at least once by You (or by a third-party on Your behalf or for Your benefit) together with Documents identifying the dates, times, duration, purpose, and total number of such calls.

**OBJECTION:** SunPath incorporates its objection to Document Request 15 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 15 as if fully set forth here.

17.     All Documents sufficient to Identify all Persons who are residents of Virginia that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with Documents identifying the dates, times, duration, purpose, and total number of such calls and Persons.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 13 as if fully set forth here.

18.     All Documents sufficient to Identify all Persons whose telephone numbers begin with a Virginia area code that were called by You (or by a third-party on Your behalf or for Your benefit) at least once for the same purpose that Plaintiff was called in which the caller did not identify themselves by first and last name during the call, together with Documents identifying the dates, times, duration, purpose, and total number of such calls and Persons.

**OBJECTION:** SunPath incorporates its objection to Document Request 13 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 13 as if fully set forth here.

19.     All Documents sufficient to Identify Your complete contract or other arrangement or agreement with any third party that placed the calls at issue to Plaintiff, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further responds that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding

**JA1324**

independent third-parties with no connection to Plaintiff's claims has no bearing here and discovery into such collateral matters is not proportional to the needs of this case. *See, e.g.,* *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at *4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at *4 (E.D. Va. Apr. 11, 2018).

**RESPONSE:** See objection. Subject to and without waiving its objections specifically relating to seeking documents regarding any party that has not made any calls to Plaintiff that form the basis of Plaintiff's claims, SunPath incorporates its response to Interrogatory 12 as if fully set forth here.

20. All Documents sufficient to Identify any oversight, control, guidance, or training related to telemarketing that You exercise or provide to third parties that act on Your behalf or for Your benefit.

**<u>OBJECTION:</u>** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies. SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products. SunPath further responds that it does not make

21

telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

**RESPONSE:** See objections. Subject to and without waiving its objections, SunPath reiterates that it does not engage in any telemarketing activities, does not make any outbound marketing calls, and specifically did not make any such calls to Plaintiff.  To the extent this refers to compliance requirements of any independent third-party authorized to market or sell Sunapth products over whom SunPath does not direct or control their marketing activities, SunPath refers Plaintiff to the previously produced form agreement and attached standards of conduct (ECF No. 19-1), which provides that any independent third-party authorized to market or sell SunPath products agrees to comply with all applicable state and federal laws and regulations if and when conducting any telemarketing operations.


21.    All Documents sufficient to Identify all call scripts or marketing materials that You provided to American Protection during the relevant time period.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 20 as if fully set forth here.


22.    All Documents sufficient to Identify all call scripts or marketing materials that You provided to any third party that places calls on Your behalf or for Your benefit during the relevant time period.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 20 as if fully set forth here.

23.    All Documents sufficient to Identify all knowledge You possess regarding American Protection's telemarketing activity.

**OBJECTION:** SunPath incorporates its objection to Document request 20 as if fully set forth here.

**RESPONSE:** Subject to and without waiving its objections, SunPath incorporates its responses to Interrogatories 6 and 12 as if fully set forth here, and responds that it does not currently have any other responsive documents in its possession, custody, or control.

24.    All Documents sufficient to Identify any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant incorporates its objection to Interrogatory 9 as if fully set forth here.

**RESPONSE:** See objection.

25. All Documents sufficient to Identify all Leads received from American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by

23

**JA1327**

SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis, other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath further reiterates that it does not make any telemarketing calls, including any such calls to Plaintiff that would have required Plaintiff's prior express written consent to be called, and objects to the extent this request suggests otherwise.

**RESPONSE:** See objections.  Subject to and without waiving its objections, no responsive documents exist.

26.     All Documents sufficient to identify any written or oral communications between You and any third party identified in Documents responsive to Request for Production No. 19 above regarding: (i) the Plaintiff or this lawsuit, (ii) calls to persons on the National DNC List, (iii) the existence, maintenance and use of any telemarketing policies or procedures, (iv) training related to any such policies or procedures, or (v) any such vendor's performance with respect to any agreement.

**OBJECTION:** SunPath incorporates its objection to Document Request 19 as if fully set forth here.

**RESPONSE:** See objections.  Subject to and without waiving its objections, SunPath will produce any responsive document in its possession, custody, or control, which are referenced in its response Interrogatory 6.

24

**JA1328**

27.     All Documents supporting Your contention, if any, that You did not retain or request American Protection to make Telephone Solicitation Calls on Your behalf or for Your benefit.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 19 as if fully set forth here.

28.     All Documents supporting Your contention, if any, that You had no knowledge and provided no consent to American Protection placing Telephone Solicitation Calls offering or advertising Your property, goods, or services.

**OBJECTION:** SunPath incorporates its objection to Document Request 20 as if fully set forth here.

**RESPONSE:** SunPath incorporates its response to Document Request 19 as if fully set forth here.

Dated:  October 7, 2022                    Respectfully submitted,


                                           SUNPATH, LTD.

                                           By Counsel

                                           By: /s/ Gregory M. Caffas
                                           Gregory M. Caffas (VSB No. 92142)
                                           Mitchell N. Roth (VSB No. 35863)
                                           Roth Jackson Gibbons Condlin, PLC
                                           8200 Greensboro Drive, Suite 820
                                           McLean, VA 22102
                                           T: 703-485-3533
                                           F: 703-485-3525
                                           gcaffas@rothjackson.com
                                           mroth@rothjackson.com


                                           Joseph P. Bowser (VSB No. 88399)
                                           Roth Jackson Gibbons Condlin, PLC
                                           1519 Summit Avenue, Suite 102
                                           Richmond, VA 23230
                                           T: 804-441-8701
                                           F: 804-441-8438
                                           jbowser@rothjackson.com

**JA1330**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October 2022, a copy of the foregoing document was served via email to the following:

Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**

/s/ *Gregory M. Caffas*
Gregory M. Caffas

27

**JA1331**

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RUTH SMITH, on behalf of herself and a class of others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>SUNPATH, LTD.,<br><br>                  Defendant. | Civil Action No. 1:22-cv-00081 (LMB/TCB) |

## SUNPATH, LTD.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST DISCOVERY REQUESTS

Defendant SunPath, Ltd. ("SunPath") supplements its responses and objections to Plaintiff's First Set of Interrogatories and Document Requests as follows:

### INTERROGATORIES

9.      Identify and Describe any and all complaints that You have received from any Person relating to the telemarketing activity of any third party that places calls on Your behalf or for Your benefit, including American Protection.

**OBJECTION:** Defendant objects to this request to the extent it seeks a legal conclusion that any calls received by Plaintiff in association with marketing products administered by SunPath were made "on behalf of" SunPath, by an "agent" of SunPath, or "for the benefit of" SunPath, a legal conclusion SunPath denies.  SunPath objects to any characterization of any party authorized to market or sell products it administers as agents, as SunPath does not control (or have the right to control), direct, or manage the telemarketing practices of any independent third-party company that it authorizes to market and sell its products on a non-exclusive basis,

**JA1333**

other than contractually requiring these entities to comply with all applicable state and federal laws when selling SunPath products.  SunPath also objects to any legal conclusion that these parties make calls "on behalf of" SunPath because such parties market and sell SunPath products non-exclusively, meaning that those parties sell SunPath-administered products simultaneously alongside SunPath's competitors and decide independently what product to offer.  SunPath additionally reiterates that it does not make telemarketing calls, did not make any calls to Plaintiff, and did not direct or control any third-party to make calls to the Plaintiff, and objects to the extent that this request suggests otherwise.

Defendant further objects to this request insofar as it does not seek information relevant or reasonably calculated to lead to the discovery of admissible evidence about the merits of Plaintiff's individual or class claims, which relate only to Defendant and the party allegedly responsible for making calls listed in Plaintiff's Complaint, such that this request regarding unrelated collateral matters has no bearing here and discovery into such collateral matters is not proportional to the needs of this case.  *See, e.g.*, *FERC v. Powhatan Energy Fund, LLC*, Civil No. 3:15-cv-00452 (MHL), 2022 U.S. Dist. LEXIS 132672, at *4 (E.D. Va. Feb. 1, 2022); *Rainey v. Anderson*, Action No. 2:17cv444, 2018 U.S. Dist. LEXIS 231289, at *4 (E.D. Va. Apr. 11, 2018).

Defendant also objects to this request as overly broad and unduly burdensome, as this request seeks information not proportional to the needs of the case, including information equally available to Plaintiff in public filings, serves no purpose other than to harass and cause undue burden.

**JA1334**

**ANSWER:** See objection.  Subject to and without waiving this objection, SunPath is continuing to investigate this request regarding American Protection, and will supplement this response as warranted.

**SUPPLEMENTAL ANSWER:**   Subject to and without waiving the foregoing objections, and only to the extent this request seeks information relating to American Protection, with the exception of the present lawsuit, SunPath is aware of only a single complaint made against American Protection relating to telemarketing activity, which was a lawsuit filed by Theron Noble, a resident of Pennsylvania, in the Court of Common Pleas of Clearfield County, Pennsylvania, in relation to alleged telemarketing calls Mr. Noble claimed he received in March of 2021.  SunPath understands that this complaint was resolved without any finding of liability as to either American Protection or SunPath for any of the subject claims, including any claims relating to telemarketing.   Moreover, SunPath reiterates that the alleged calls that were the subject of Mr. Noble's complaint occurred well after the calls Ruth Smith alleges she received from American Protection that are the subject of the present lawsuit.  SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Ruth Smith's claims in this lawsuit, and more generally is not aware of any instance in which American Protection was found to have violated any law involving telemarketing.  SunPath has at no point authorized American Protection to violate any laws involving telemarketing, or ratified any conduct by American Protection that may have violated any laws involving telemarketing.

3

**JA1335**

## **VERIFICATION**

I, Andrew Garcia, President of SunPath, Ltd., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing interrogatory answers are true and correct to the best of my knowledge.

Dated: 12/9/22

Andrew Garcia

{01488658;v1}

**JA1336**

Dated:  December 9, 2022            Respectfully submitted,

SUNPATH, LTD.

By Counsel

By: /s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
Roth Jackson Gibbons Condlin, PLC
8200 Greensboro Drive, Suite 820
McLean, VA 22102
T: 703-485-3533
F: 703-485-3525
gcaffas@rothjackson.com
mroth@rothjackson.com


Joseph P. Bowser (VSB No. 88399)
Roth Jackson Gibbons Condlin, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

4

**JA1337**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of December 2022, a copy of the foregoing document was served via email to the following:

Francis J. Driscoll, Jr.
**Law Office of Frank J. Driscoll Jr. PLLC**
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
T: 757-321-0054
F:757-321-4020
frank@driscolllawoffice.com

Patrick H. Peluso
Taylor T. Smith
**Woodrow & Peluso, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
T: 720-213-0675
F: 303 927-0809
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

**Counsel for Plaintiff Ruth Smith**

/s/ *Gregory M. Caffas*
Gregory M. Caffas