# 23-1140

# United States Court of Appeals
### for the
# Fourth Circuit

RUTH SMITH,
on behalf of herself and all others similarly situated,

*Plaintiff/Appellant*,

— v. —

SUNPATH, LTD.,

*Defendant/Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# BRIEF OF APPELLEE

JOSEPH P. BOWSER
C. TAYLOR SMITH
ROTH JACKSON GIBBONS CONDLIN, PLC
1519 Summit Avenue, Suite 102
Richmond, Virginia 23230
(804) 441-8440

MITCHELL N. ROTH
ROTH JACKSON GIBBONS CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia 22102
(703) 485-3536

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 23-1140      Caption: Ruth Smith v. SunPath, Ltd.

Pursuant to FRAP 26.1 and Local Rule 26.1,

SunPath, Ltd.
(name of party/amicus)


who is      Defendant - Appellee      , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    RepairShare, Inc., a Delaware corporation


3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Joseph P. Bowser                    Date:      02/21/2023

Counsel for: SunPath, Ltd.

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................v

INTRODUCTION ....................................................................................1

STATEMENT OF ISSUES .......................................................................7

STATEMENT OF CASE ..........................................................................7

    I.     Factual Background..................................................................7

               Smith first called American Protection .......................................7

               American Protection was an independent third-party seller that retained subcontractors to make calls offering its products ....................................................................................8

               Smith did not receive unexpected calls......................................9

    II.    Procedural Background .....................................................11

               Smith filed suit alleging her receipt of 54 VTPPA-violating calls ..........................................................................11

               Smith failed to diligently conduct discovery .............................12

               Smith failed to correct her deficient initial damages disclosure and related discovery responses despite being ordered to do so........................................................................15

               Smith threw out her entire case theory and instead relied solely on the unauthenticated and unexplained Five9 records ..................................................................................16

Smith, in sole reliance upon the unauthenticated and unexplained Five9 records, improperly attempted to claim post-discovery entitlement to $601,500 in VTPPA damages for 122 calls ............................................. 18

The parties filed cross motions for summary judgment and the district court correctly granted SunPath's and denied Smith's ....................................................................................... 19

SUMMARY OF THE ARGUMENT ................................................... 20

STANDARD OF REVIEW ................................................................ 21

I.      Abuse of Discretion ......................................................... 21

II.     De Novo ............................................................................ 21

III.    Fundamental Error ........................................................... 22

ARGUMENT ...................................................................................... 23

I.      The District Court's Granting of SunPath's Evidentiary Motions was not an Abuse of Discretion ........................... 23

        a.      The District Court Correctly Excluded the Unauthenticated and Unexplained Five9 Records ................... 23

                i.      The Court cannot consider Smith's (lack of) diligence in reviewing the exclusion of the Five9 records .......................................................... 26

                ii.     The Court's review can end because the district court did not abuse its discretion in excluding the Five9 records .................................. 27

        b.      The District Court did not Abuse its Discretion in Excluding Smith's Damages Evidence ...................... 30

i.      Smith untimely and improperly doubled her claimed damages solely in reliance on the inadmissible Five9 records ..............................................31

ii.     Smith violated the district court's order by failing to properly disclose her claimed damages .........................34

c.      The District Court did not Abuse its Discretion by Striking Smith's Contradictory Declaration ............................................35

II.   The District Court's Denial of Smith's Requested Discovery Extension and Discovery Schedule were not Abuses of Discretion ........................................................................................39

a.      The District Court Correctly Exercised its Discretion to Regulate the Discovery Process.................................................39

b.      The District Court's Discovery Period was not an Abuse of Discretion...............................................................................41

c.      Correctly, The District Court Never Decided Class Certification .............................................................................43

III.  The District Court Correctly Entered Summary Judgment in SunPath's Favor.............................................................................46

a.      SunPath was not the VTPPA-Defined Seller for Any of the Calls.....................................................................................46

i.      The subcontractors were calling on behalf of and for the benefit of American Protection..................................47

ii.     The subcontractors were offering American Protection's products ......................................................49

iii.    The VTPPA's legislative history is irrelevant................51

iv.     On other grounds, SunPath was not the Seller for any call Smith claims is actionable ................................52

iii

       b.      SunPath Rebutted the VTPPA's Liability Presumption ............53

           i.     The Court cannot reverse based on Smith's argument that it does not matter whether SunPath knew about or consented to the making of unlawful calls ....................................................................55

CONCLUSION ........................................................................................56

STATEMENT REGARDING ORAL ARGUMENT ...............................57

CERTIFICATE OF COMPLIANCE ......................................................58

CERTIFICATE OF SERVICE ................................................................59

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ABS Ent., Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) .................................................................43

*Ardrey v. United Parcel Service*,
  798 F.2d 679 (4th Cir. 1986) ................................................................42

*B & J Enters. v. Giordano*,
  329 F. App'x 411 (4th Cir. 2009) .........................................................24

*Banks v. Bd. of Educ.*,
  No. 20-1302, 2022 U.S. App. LEXIS 4297 (4th Cir. Feb. 16, 2022).......... 27, 35

*Benjamin v. Sparks*,
  986 F.3d 332 (4th Cir. 2021) ................................................................34

*CBRE Realty Fin. Trs, LLC v. McCormick*,
  414 F. App'x 547 (4th Cir. 2011) .................................................... 39, 40

*Covenant Media of N.C., L.L.C. v. City of Monroe*,
  285 F. App'x 30 (4th Cir. 2008) ...........................................................30

*Davis v. Nationwide Mut. Fire Ins. Co.*,
  811 F. Supp. 2d 1240 (E.D. Va. 2011) .................................................23

*Davis v. Walmart Stores East, L.P.*,
  687 F. App'x 307 (4th Cir. 2017) .........................................................45

*Eriline Co. S.A. v. Johnson*,
  440 F.3d 648 (4th Cir. 2006) ................................................................27

*Garey v. Farrin*,
  35 F.4th 917 (4th Cir. 2022) ................................................................22

*Gomez v. Haystax Tech., Inc.*,
  761 F. App'x 220 (4th Cir. 2019) .........................................................32

v

*Helm v. Western M.R. Co.*,
   838 F.2d 729 (4th Cir. 1988) .................................................................22

*In re Davol, Inc.*, Case,
   No. 2:18-md-2846, 2020 U.S. Dist. LEXIS 99875
   (S.D. Ohio June 8, 2020) .......................................................................37

*Jones v. Ford Motor Co.*,
   204 F. App'x 280 (4th Cir. 2006) .........................................................21

*Kinser v. United Methodist Agency for the Retarded-Western North Carolina*,
   613 F. App'x 209 (4th Cir. 2015) ..................................................... 36, 37

*Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   703 F.2d 1152 (10th Cir. 1981) ............................................................26

*Mantian Zhu v. Dish Network, LLC*,
   808 F. Supp. 2d 815 (E.D. Va. 2011) ...................................................56

*Mofor v. Kuehne & Nagel, Inc.*,
   56 F. App'x 137 (4th Cir. 2003) ...........................................................42

*Moore v. Sirounian*,
   1:19-cv-1018 (LMB/MSN), 2020 U.S. Dist. LEXIS 188502
   (E.D. Va. July 20, 2020) ............................................................. 11-12, 42

*Newhart v. Quicken Loans, Inc.*,
   CASE NO. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721
   (S.D. Fla. Oct. 12, 2016) .......................................................................29

*Reilly v. TXU Bus. Servs. Co.*,
   485 F. App'x 731 (5th Cir. 2012) .........................................................26

*Reynoso v. Constr. Protective Servs.*,
   No. 06-56381, 2008 U.S. App. LEXIS 19681 (9th Cir. Sept. 16, 2008)...... 34, 35

*Rohrbough v. Wyeth Labs., Inc*,
   916 F.2d 970 (4th Cir. 1990) ................................................................36

*Sigmon Coal Co. v. Apfel*,
   226 F.3d 291 (4th Cir. 2000) ................................................................51

*Sylvia Dev. Corp. v. Calvert County*,
  48 F.3d 810 (4th Cir. 1995) ...............................................................52

*Tarashuk v. Givens*,
  53 F.4th 154 (4th Cir. 2022) .............................................................23

*Toibb v. Radloff*,
  501 U.S. 157 (1991).........................................................................22

*United States Dep't of State v. Washington Post Co.*,
  456 U.S. 595 (1982).........................................................................51

*United States v. Achiekwelu*,
  112 F.3d 747 (4th Cir. 1997) ...................................................... 24, 35

*United States v. Ancient Coin Collectors Guild*,
  899 F.3d 295 (4th Cir. 2018) .............................................................42

*United States v. Copeland*,
  707 F.3d 522 (4th Cir. 2013) .............................................................21

*United States v. Dorsey*,
  45 F.3d 809 (4th Cir. 1995) ...............................................................26

*United States v. Fuller*,
  436 F. App'x 167 (4th Cir. 2011) .......................................................26

*United States v. Gilliam*,
  737 F. App'x 660 (4th Cir. 2018) .......................................................21

*United States v. Lavabit, LLC*,
  749 F.3d 276 (4th Cir. 2014) .................................................. 22, 23, 55

*United States v. Nunez*,
  753 F. App'x 450 (9th Cir. 2019) ................................................. 32, 45

*United States v. Rydland*,
  461 F. App'x 208 (4th Cir. 2012) ................................................. 38-39

*United States v. Turner*,
  389 F.3d 111 (4th Cir. 2004) .................................................... 22, 51

vii

*Wilson v. Gaston County*,
 685 F. App'x 193 (4th Cir. 2017) ........................................................36

*Worsham v. Disc. Power, Inc.*,
 Civil Action, No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580
 (D. Md. Aug. 4, 2022)................................................................ 47-48

**Statutes & Other Authorities:**

Fed. R. App. P. 28(a)(9)(A) ...............................................................27

Fed. R. Civ. P. 26(a)(1)(A)(i) ...........................................................13

Fed. R. Civ. P. 26(a)(1)(A)(iii) .............................................. 15, 32, 34

Fed. R. Civ. P. 37(c)(1) .....................................................................32

Fed. R. Civ. P. 56 ..............................................................................23

Fed. R. Civ. P. 56(c).........................................................................22

Fed. R. Civ. P. 56(c)(4)............................................................... 35, 38

Fed. R. Evid. 402 ..............................................................................26

Fed. R. Evid. 901(a)..........................................................................24

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, DA 23-62 (2023), https://docs.fcc.gov/public/attachments/DA-23-62A1.pdf................................28

Local Civil Rule 16(B)................................................................ 32, 44

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA of 1991)*, 68 FR 44144-01 (2003) ...................................... 28-29

Va. Code § 59.1-510 ....................................................... *passim*

Va. Code § 59.1-514(B)....................................................................55

Va. Code § 59.1-514(D).............................................................. 28, 55

Va. Code § 59.1-514.1 ............................................................55

Va. Code § 59.1-514.1(A).........................................................1

Va. Code § 59.1-514.1(B)................................................. 54, 55

York Faulkner, *EDVA Rocket Docket – A Wild Ride Through Genteel Virginia*, YorkMoodyFaulkner (Aug. 2, 2021), https://www.ymf-law.com/post/edva-rocket-docket-litigation-a-wild-ride-through-genteel-virginia.................... 12, 42

# INTRODUCTION

This case arises from Appellant Ruth Smith's ("Smith") claim that she received calls offering Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") products. She alleges those calls violated the Virginia Telephone Privacy Protection Act, Va. Code § 59.1-510, *et seq.* ("VTPPA"). The VTPPA only holds telephone solicitors, those making the calls, and the seller, the one for whose benefit the calls are made, liable for VTPPA violations. *See* Va. Code § 59.1-514.1(A).

Appellee SunPath, Ltd. ("SunPath") is an administrator of vehicle service contracts ("VSCs"). It does not make calls, has no role in or knowledge of who American Protection may call or what it may say on any given call, and does not sell anything to consumers (SunPath's administration services are provided wholesale to retailers like American Protection). American Protection decides what it says, what it offers, and what it charges and collects for its products. Thus, the district court correctly ruled that its calls are for its own benefit. The calls are not for the benefit of downstream parties like SunPath or the mechanics and tow-truck providers that may provide service under a given American Protection product. Therefore, the district court correctly granted summary judgment for SunPath, holding that it was not liable under the VTPPA.

This is not a case where Smith unexpectedly started receiving calls. On May 22, 2020, American Protection, a seller of VSCs, mailed an advertisement to Smith. On May 26, 2020, *Smith called American Protection*. In response, one of American Protection's subcontractors began returning Smith's call to follow-up on her inquiry. Smith then duped the subcontractor into believing she bought an American Protection VSC (Smith's prepaid credit card later declined the purchase, precipitating callbacks from American Protection to sort that out). Over a year later, Smith sued *SunPath* for calls relating to that transaction.

Smith did not file suit against American Protection, the seller, or its subcontractors, the telephone solicitors. Instead, she filed suit *only* against SunPath. SunPath is one of several companies, including SunPath's competitors, that administers American Protection's VSCs. But for this lawsuit, SunPath and Smith are strangers: SunPath never called, spoke with, or exchanged a penny with Smith. On May 28, 2020, an American Protection VSC was offered to Smith. That VSC may have been administered by SunPath. The offer occurred only after Smith's vehicle information was obtained on one of her calls with American Protection's telephone solicitor. The district court correctly granted summary judgment for SunPath because SunPath was neither a VTPPA-defined telephone solicitor nor seller.

But there is no need for the Court to review that decision. Smith failed to diligently pursue discovery and made an eleventh-hour change in her factual and damages claims. This resulted in the trial court's proper exclusion of what became Smith's key evidence on both the phone calls at issue and her damages. This is a case about phone calls. Smith could not prove she received *any* VTPPA-violating calls without evidence of phone calls. The district court's summary judgment decisions must be affirmed because it did not abuse its discretion by excluding that evidence.

From the filing of the case through the end of discovery, Smith disclosed and swore that she was seeking $261,500 in VTPPA damages for 54 calls she allegedly received between May 26, 2020 and June 9, 2020. Walking into this case, Smith *knew* she needed to obtain American Protection's phone records to prove that she actually received those calls. (She apparently did not keep her own phone records; SunPath never had any records of the calls.) The district court set a discovery period of August 5, 2022 to December 9, 2022. Smith failed to diligently pursue obtaining such call records, as demonstrated below, making it impossible to prove her case:

- August 24, 2022, three weeks into discovery: Smith subpoenas American Protection. The subpoena failed to request documents sufficient to identify the telephone service provider that delivered American Protection's outbound calls, the entity that likely would have the call records Smith needed.

- November 1, 2022: Smith deposes American Protection (but, for whatever reason, never asked the corporate witness—its owner—who its phone company was).

- November 9, 2022, a month left in discovery: During the second day of the American Protection deposition, Smith asks, *for the first time*, about its telephone company, which it testified was Five9, Inc. ("Five9").

- November 11, 2022, 28 days left in discovery: Smith serves supplemental initial disclosures and interrogatory answers swearing she is seeking $261,500 in VTPPA damages for 54 calls she received between May 26, 2020 and June 9, 2020.

- November 30, 2022, *seven* business days left in discovery:

    o  Smith serves supplemental interrogatory answers stating she is awaiting records from AT&T, her telephone service provider, which will evidence the calls she received and support her claimed damages.

    o  Smith obtains voluminous spreadsheets from Five9 that are unauthenticated and unexplained.

- December 2, 2022, *seven* calendar days remaining in discovery: Smith claims, *for the first time*, that the Five9 records evidence the calls she received. But she admits she has never seen those records, instead relying on her lawyers' belief that they reflect calls *she* received.

- December 8, 2022, *the day before discovery ends*: Smith provides a supplemental interrogatory answer cryptically stating she is seeking damages for every call to her reflected in the Five9 records, but provides no explanation of what the records mean, or how many calls to her they supposedly reflect.

- December 9, 2022, *the last day of discovery*:

  o Smith serves supplemental initial disclosures listing Five9, *for the first time*, as a potential witness for Smith, and representing that Smith still seeks only $261,500 in VTPPA damages.

  o Discovery closes without Smith deposing Five9, authenticating Five9's records, or obtaining *any* call records.

- December 2, 2022 to January 6, 2023: Smith, at the eleventh hour, abandons her entire case theory and throws her lot in with the Five9 records. But her failure to depose Five9 meant she lacked *any* evidence that the Five9 records actually reflected calls she received, and she had no knowledge or recollection of receiving any calls relating to American Protection after June 9, 2020, rendering all the Five9 data entries after that date a total mystery.

- January 6, 2023: Smith moves for partial summary judgment, claiming *for the first time* that she received *172* calls between *May 26, 2020 and August 18, 2020*, *122* of which allegedly violated the VTPPA, and requesting *$601,500* in damages. These claims were supported by Smith's new declaration, which relied

5

solely on the Five9 records and contradicted Smith's prior sworn statements. Smith offered the Five9 records as "call records," but provided no proper authenticating evidence.

SunPath filed a motion to exclude Five9 due to Smith's untimely disclosure. SunPath also requested that the Five9 records be excluded because, without testimony from Five9, they could not be authenticated or relied upon as "call records." Because Smith's declaration and damages claim relied *solely* on the Five9 records, SunPath also moved for their exclusion. The district court granted these requests. The district court did not abuse its discretion in precluding Smith from resting her case on unauthenticated, inadmissible third-party evidence, about which she lacked personal knowledge.

Similarly, the district court's discovery schedule and denial of Smith's requested discovery extension were not abuses of discretion. With half the discovery period remaining, the district court, unconvinced that an extension was yet necessary, denied the request *without prejudice*. The district court informed Smith that, if needed, she could request an extension again when the end of discovery neared. Smith *never* requested another extension. Thus, Smith waived her right to argue that the district court's discovery schedule and denial of her premature extension request were abuses of discretion.

This Court should affirm—there was no reversible error below.

6

## STATEMENT OF ISSUES

1.     Whether the district court abused its discretion by excluding the unauthenticated, unexplained Five9 records, and then excluding Smith's damages evidence and declaration which relied solely on the inadmissible Five9 records.

2.     Whether the district court abused its discretion by simply adhering to its standard discovery window in a non-complex case.

3.     Whether the district court erred in granting SunPath's summary judgment motion by finding that SunPath, who did not make any calls and had no calls made on its behalf, was not a VTPPA-defined seller, and that SunPath rebutted the VTPPA's liability presumption where, additionally, it neither knew of nor consented to the making of unlawful calls.

## STATEMENT OF CASE

### I.     Factual Background

**Smith first called American Protection.**

The first call between Smith and American Protection occurred on May 26, 2022, when Smith voluntarily called American Protection after it previously mailed her an advertisement. JA599-600; JA819; JA1208-1209, JA1246; JA1280.

**American Protection was an independent third-party seller that retained subcontractors to make calls offering its products.**

Smith alleges that American Protection subcontractors made the calls at issue. JA506-508; JA550. SunPath does not make any outbound sales calls and did not make any of the calls Smith allegedly received. JA474.

SunPath administers VSCs and pays for covered claims that customers make under their SunPath-administered VSCs. JA473. These VSCs are sold by independent third-party sellers, like American Protection, who are provided VSC-administration services from administrators like SunPath at wholesale rates. JA471-472; JA474; JA477; JA489.

American Protection was authorized to market and sell SunPath-administered VSCs under a "Call Center Marketing Agreement" ("Agreement"). JA516-523. The Agreement provided that American Protection was an "independent contractor[.]" JA516. American Protection was required to comply with "all applicable laws, rules, and regulations" relating to its marketing and sale of those VSCs. JA520.

American Protection also marketed and sold VSCs administered by other companies, including SunPath's competitors. JA475; JA564; JA583-584; JA596; JA626-627.

SunPath did not compensate American Protection for sales of SunPath-administered VSCs—American Protection covered all of its own expenses, and was paid solely by the consumers to whom it sold such VSCs. JA477; JA591-595.

American Protection had complete control over its marketing operations, whether it offered consumers a SunPath-administered VSC or one administered by another company, and the VSC sales price. JA475; JA477; JA564; JA586-591; JA603; JA622-627.

American Protection retained subcontractors to make calls on its behalf. JA598. SunPath had no control over which subcontractors American Protection retained to make calls and had no relationship with them. JA611-612; JA623.

American Protection did not decide which VSC a subcontractor would offer a consumer until they spoke with the consumer to learn about his or her vehicle's characteristics: year, make, model, and mileage. JA952.

**Smith did not receive unexpected calls.**

Only after Smith called American Protection on May 26, 2020, did she begin receiving callbacks from American Protection subcontractors. Those callbacks allegedly totaled 54 callbacks Smith received between May 26, 2020 and June 9, 2020. JA15-16. (American Protection could only confirm three calls with Smith. JA635; JA1230-1231; JA1233-1234. SunPath could not confirm any of the alleged

calls because it never possessed any relevant call records. JA566-567.) SunPath's name was never mentioned on any callback Smith allegedly received.[1]

On May 28, 2020, Smith answered one of the callbacks. JA703. During that callback, Smith inquired into American Protection's VSCs and provided a credit card number to complete a purchase. *Id*.; JA1245. Smith then received an American Protection email which contained no reference to SunPath. JA650-651. Smith did not see SunPath's name until she clicked a separate link in the email that re-directed Smith to American Protection's website. JA551-553. That webpage listed VSC information. JA647-649. One line on the webpage stated: "Coverage Provided by SunPath." JA647.

Smith's purchase was never finalized because the credit card transaction was not approved. JA1413. This precipitated additional callbacks from American Protection's subcontractors to obtain a valid credit card number. JA1233-1234; JA1245.

On June 11, 2020, Smith sent an email to American Protection rejecting the offered VSC and asking not to be called. JA652.

---

[1] As Smith testified at deposition, her complete recollection of whether any company's name was mentioned during the calls at issue was contained in the notes Smith created at the time of the calls. Those notes do not contain a single mention of SunPath, nor does "SunPath" appear in American Protection's scripts. JA526-527; JA637-642; JA643-646.

Smith concedes that her May 28, 2020 inquiry created an established business relationship ('EBR") between her and American Protection, which her June 11, 2020 email terminated. JA703.[2] Therefore, Smith concedes that 48 of the 54 alleged calls were made pursuant to an EBR, and not actionable under the VTPPA. JA703-704.

SunPath never authorized violations of any applicable telemarketing laws. JA613-616; JA628-630. SunPath is unaware of any complaints involving the telemarketing activities of American Protection or its subcontractors that occurred before the calls at issue. JA627-628. SunPath is also unaware of any instances where complaints were made or violations alleged against American Protection regarding any telemarketing laws before the calls at issue. JA656.

## II.     Procedural Background

**Smith filed suit alleging her receipt of 54 VTPPA-violating calls.**

On January 26, 2022, Smith filed suit in the Eastern District of Virginia ("EDVA"). JA11-25. The EDVA is well known as the "[R]ocket [D]ocket." *Moore v. Sirounian*, 1:19-cv-1018 (LMB/MSN), 2020 U.S. Dist. LEXIS 188502, at *14

---

[2] The EBR was actually created on May 26, 2020, when Smith called American Protection.

(E.D. Va. July 20, 2020).[3] Smith was not required to file suit there; *she chose to*.[4]

Smith's Complaint alleges she received 54 VTPPA-violating calls between May 26, 2020 and June 9, 2020. JA11-25.

On August 5, 2022, the district court entered an order setting the discovery period from August 5, 2022 to December 9, 2022. JA26. The parties then submitted a Joint Discovery Plan in which they agreed that November 14, 2022 was Smith's deadline to move for class certification. JA39-41. The district court's subsequent Rule 16(B) Scheduling Order approved the parties' Joint Discovery Plan to the extent it was not modified by the Scheduling Order. JA44. The district court never modified the parties' agreed-upon deadline for Smith's class certification motion.

**Smith failed to diligently conduct discovery.**

Despite SunPath being a total stranger to the calls at issue here, Smith now faults SunPath for her own dilatory discovery conduct. *See, e.g.,* Br. at 6 (complaining about unidentified—and nonexistent—"discovery delays caused by the Appellee"). Smith did not subpoena American Protection until August 24, 2022,

---

[3] *See also* York Faulkner, *EDVA Rocket Docket – A Wild Ride Through Genteel Virginia*, YorkMoodyFaulkner (Aug, 1. 2021), https://www.ymf-law.com/post/edva-rocket-docket-litigation-a-wild-ride-through-genteel-virginia (The EDVA "is most widely known . . . as the 'Rocket Docket,' a moniker for the rapid speed at which the court adjudicates and disposes of cases[.]"); Opening Brief ("Br.") at 48 (acknowledging that Smith brought suit in a court that expects and rewards diligence from lawyers who file suit there).

[4] SunPath's incorporation in Delaware and headquarters in Massachusetts made those districts available to Smith.

three weeks into discovery. JA54. Smith claims it took her those three weeks to identify American Protection's legal name, which her counsel could have done at any time in the year-plus they waited to file this case. Br. at 11-12. There was no reason Smith had to wait until discovery began to figure that out. The May 28, 2020 American Protection email Smith received meant she knew of American Protection's relevance a full year and half before she filed suit. If Smith engaged in *any* due diligence, she should have known American Protection's legal name when she filed suit, or at least when discovery began six months later. JA26. To be sure, Smith never asked SunPath for American Protection's legal name.[5]

Puzzlingly, Smith's subpoena to American Protection failed to request documents sufficient to identify American Protection's phone company.

Smith allegedly had issues with American Protection's subpoena response and its representative not being available for deposition until November 1, 2022. JA55.

---

[5] Smith improperly faults SunPath for not identifying American Protection in its initial disclosures and for not immediately disclosing their relationship. Br. at 12 n.2. SunPath had no need or intention to use American Protection or its information to support SunPath's defenses—SunPath's own evidence and testimony suffices to show it had nothing to do with the calls at issue. Therefore, it had no duty to disclose American Protection as its defense witness. *See* Federal Rule of Civil Procedure 26(a)(1)(A)(i) (requiring defendants to identify "each individual likely to have discoverable information" they "may use to support" their defenses). Further, SunPath timely served its initial disclosures on September 1, 2022 and had no duty to disclose its relationship with American Protection until September 23, 2022 (30 days after Smith's discovery requests were served). JA44; JA54. SunPath's disclosures and discovery responses would not have enabled Smith to subpoena American Protection any earlier than she did.

Smith could have attempted to resolve these issues, while still working within the discovery schedule, by filing applicable discovery motions. Instead, Smith scheduled American Protection's deposition for November 1, 2022, a month before discovery ended. Br. at 12. Then, on October 7, 2022, she requested a discovery extension. JA49.

With about half the discovery period remaining, the district court denied Smith's motion without prejudice. JA80. It was "not convinced that we can't continue to push forward on the deadlines that we have." JA237. The district court instructed Smith to set American Protection's deposition "as soon as possible[.]" JA238. It also explained that Smith could use the district court's expedited hearing process to compel American Protection to appear earlier and could request an extension again closer to the end of discovery. JA237; JA240. Smith *never* requested another extension and *never* moved to compel American Protection to appear earlier. Instead, Smith proceeded with deposing American Protection on November 1, 2022, despite the district court's instructions and offer to facilitate hastier compliance. JA348; JA237 ("If . . . you have a recalcitrant witness who doesn't want to sit for a deposition, . . . it will be resolved within seven days.").

On the first day of the deposition, Smith, inexplicably, never asked American Protection who its phone company was. When the deposition resumed on November 9, 2022, Smith asked, *for the first time*, about American Protection's telephone

system. It testified it used a Five9 system (a popular call-center suite of software for contact-relations management ("CRM") and telephony features, JA478). JA445. On November 30, 2022, with only *seven* business days remaining in the discovery period, Smith obtained and then produced records from Five9. JA1636-1637.

Perplexingly, Smith *never* retained her own phone records. She also *never* obtained them from AT&T, her phone company, despite representing that she would. JA665. Smith made that representation on *the same day* she produced the Five9 records to SunPath.

**Smith failed to correct her deficient initial damages disclosure and related discovery responses despite being ordered to do so.**

Smith's complaint alleged her receipt of 54 VTPPA-violating calls. JA15-16. Surprisingly, her initial disclosures and discovery responses failed to list a single call she sought recovery for, or any claimed damages. JA137; JA99-JA133. Thus, SunPath moved to compel, JA81, and the district court granted it. JA282-284.

With less than a month of discovery left, Smith served supplemental initial disclosures and interrogatory answers that identified the same 54 calls listed in Smith's complaint that she allegedly received between May 26, 2020 and June 9, 2020, for which she now claimed $261,500 in VTPPA damages. JA1552-1571. These were still deficient because they lacked information relating to how Smith computed her damages total. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); JA1555; JA1567.

15

In granting SunPath's motion in relevant part, the district court ordered Smith to lay out, with specificity, each call she was seeking damages for and the amount of damages she was seeking for each call. JA282-284. Smith *never* complied despite understanding what the district court ordered. JA1589 (Smith's supplemental interrogatory answer stated she would be able "to split out the damages sought for each individual call she received" when she received her AT&T records). All of her subsequent supplemental initial disclosures and discovery responses lacked that information. JA1573-1605.

**Smith threw out her entire case theory and instead relied solely on the unauthenticated and unexplained Five9 records.**

On November 30, 2022, Smith served supplemental interrogatory answers stating she would be relying on records produced by AT&T, and produced the Five9 records to SunPath without explanation or authentication. JA1589; JA1636-1637. Thus, when SunPath received the Five9 records, it was unaware of their relevance and understood that Smith intended to rely on the AT&T records.

On December 2, 2022, with only a week of discovery remaining, Smith indicated, *for the first time*, some intent she had to rely on the Five9 records despite having never seen them. JA1353-1354 ("Q You contend that June 9 was the last call that you received that you're seeking damages for in this case? A Again, whatever I provided initially was correct, but I know that there's the call logs that were received. So that is correct, what's in the logs. . . . Q And when you say the call logs, are you

16

referring to call logs that you believe your counsel has received but you have not yet reviewed? A Yes . . . Q . . . you haven't reviewed these call logs you're referring to right? A Correct.").

On December 8, 2022, *the day before the close of discovery*, Smith served her third supplemental discovery responses. In them, Smith, *for the first time*, claimed she was seeking damages for all "calls" to her reflected in the Five9 records. JA1602. Yet Smith failed to identify what "calls" to her, or the number of such calls, were reflected in the Five9 records. The Five9 records are non-self-explanatory data logs from a complicated software platform that does far more than simply make and receive phone calls like a traditional phone company. JA478.

On December 9, 2022, *the last day of discovery*, Smith served her final supplemental initial disclosure; she claimed her VTPPA damages remained $261,500. JA1576-1577. Therefore, SunPath had no reason to believe that Smith was seeking more than $261,500 in damages for any calls other than the 54 calls she allegedly received between May 26, 2020 and June 9, 2020.

Those supplemental initial disclosures also contained Smith's *first* disclosure of Five9 as a potential witness for Smith. JA1575. The district court's scheduling order expressly stated that a person could not testify if they had not been disclosed in time to be deposed by the opposing party. JA26. Smith's failure to disclose Five9 until the last day of discovery prevented SunPath from being able to depose Five9.

17

Thus, Five9 could not testify at trial. SunPath filed a motion in limine requesting that. JA1410.

SunPath's motion also requested that the Five9 records be excluded. The Five9 records were neither authenticated as call records nor self-explanatory. If Five9 could not testify and explain the Five9 records, they had to be excluded because they could not be authenticated as call records, their relevance could not be established, and they would only serve to confuse and mislead the jury. The district court agreed and correctly granted SunPath's motion.

**Smith, in sole reliance upon the unauthenticated and unexplained Five9 records, improperly attempted to claim post-discovery entitlement to $601,500 in VTPPA damages for 122 calls.**

On January 6, 2023, *a month after discovery closed*, Smith moved for partial summary judgment. JA689. In that motion, Smith, *for the first time*, requested **$601,500** in VTPPA damages for **122** allegedly VTPPA-violating calls. JA707. In support, Smith submitted a declaration that made claims which relied solely on the Five9 records. Specifically, it claimed that Smith received 172 calls between May 26, 2020 and August 18, 2020. JA776-777. She then conceded that 50 of those calls, received between May 28, 2020 and June 11, 2020, were not actionable due to an EBR. JA703-704. Of those 50 calls, 48 were part of the 54 calls she put at issue throughout discovery.

18

Smith's declaration was improper for two reasons. First, there was no evidence that the Five9 records reflected calls. Since Five9 was never deposed, there was no testimony explaining the Five9 records or what their data logs represented. A later Five9 declaration only identified them as "records . . . relating to [American Protection]." JA967-969. It certainly did not authenticate them as "call records." Therefore, Smith had no admissible evidence establishing that the Five9 records were *only* call records reflecting calls to Smith.

Second, Smith's declaration directly contradicted her prior sworn statements where she consistently sought recovery for only 54 calls allegedly received between May 26, 2020 and June 9, 2020. Thus, SunPath moved to strike that declaration which the district court correctly granted. JA1339; JA1836 (the district court agreeing there were "significant inconsistencies" between Smith's declaration and prior sworn statements).

Relatedly, SunPath moved to exclude Smith's damages evidence, which the district court correctly granted, as Smith's claimed damages total was *solely* supported by the inadmissible Five9 records and Smith failed to timely and properly disclose her claimed damages. JA1530-1541.

**The parties filed cross motions for summary judgment and the district court correctly granted SunPath's and denied Smith's.**

After the close of discovery, SunPath also moved for summary judgment. The district court granted SunPath's motion and denied Smith's on three independent

grounds. First, SunPath could not be found liable under the VTPPA because it was not a VTPPA-defined "seller." JA1829-1830; JA1832-1833. Second, SunPath rebutted the VTPPA's liability presumption because the telephone solicitors were retained to make calls on American Protection's behalf, not SunPath's, JA1832, and SunPath did not know of, or consent to, the making of unlawful calls. JA1835-1836. Third, Smith could not prove she received any VTPPA-violating calls without the inadmissible Five9 records. JA1836.

## SUMMARY OF THE ARGUMENT

1.      The district court did not abuse its discretion when it granted SunPath's pretrial evidentiary motions. The court correctly excluded the unauthenticated and unexplained Five9 records because, with Five9 unable to testify, they were irrelevant and would confuse and mislead the jury. It followed that Smith's declaration and damages evidence, which relied solely on the inadmissible Five9 records, also had to be excluded.

2.      The district court, which has wide discretion in managing pretrial discovery, did not abuse its discretion by simply exercising its discretion to regulate the discovery process. Any fault lays with Smith for failing to seek relief through other avenues the district court offered.

3.      The district court did not err in granting SunPath's motion for summary judgment. First, the district court correctly found that SunPath was not a VTPPA-

20

defined seller. Second, the district court correctly found that SunPath rebutted the VTPPA's liability presumption.

## STANDARD OF REVIEW

### I.    Abuse of Discretion

The district court's granting of SunPath's evidentiary motions is accorded "substantial deference and may not [be] reverse[d]" absent a finding of "abuse of discretion." *Jones v. Ford Motor Co.*, 204 F. App'x 280, 282 (4th Cir. 2006) (internal citations omitted). This is because "[i]n ruling on the admissibility or exclusion of evidence, the district court has broad latitude." *Id*. (internal citations omitted).

The district court's discovery schedule and denial of Smith's requested discovery extension are reviewed for an "abuse of discretion." *United States v. Copeland*, 707 F.3d 522, 531 (4th Cir. 2013) (internal citations omitted). A district court's discovery schedule and/or denial of a requested discovery extension are only abuses of discretion if they are "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id*. (internal citations omitted).

### II.    De Novo

This Court reviews de novo "the district court's grant of summary judgment" and "questions of statutory interpretation[.]" *United States v. Gilliam*, 737 F. App'x 660, 664 (4th Cir. 2018) (internal citations omitted). "An appellate court reviewing

the grant or denial of [] summary judgment" applies the same standard used by the district court: whether "there is no genuine issue as to any material fact." *Helm v. Western M.R. Co.*, 838 F.2d 729, 734 (4th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)).

In reviewing statutory interpretation, the Court first relies on "the statutory language[,]" as a statute's legislative history only becomes relevant if the statute contains an ambiguity. *Toibb v. Radloff*, 501 U.S. 157, 162 (1991) (internal citations omitted). When "the statute speaks clearly to the issue at hand, the inquiry ends," without considering the legislative history. *United States v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004) (internal citations omitted).

## III.    Fundamental Error

Smith has raised multiple arguments for the first time on appeal. This Court, "[a]bsent exceptional circumstances[,]" does "not consider issues raised for the first time on appeal." *United States v. Lavabit, LLC*, 749 F.3d 276, 285 (4th Cir. 2014) (internal citations omitted).

When this Court does consider such arguments, it may reverse only if the "argument establishes 'fundamental error' or a denial of fundamental justice." *Id*. (internal citation omitted). This is a rigorous standard "and the burden is on the party who has failed to preserve an argument to show that the standard is met." *Garey v. Farrin*, 35 F.4th 917, 928 (4th Cir. 2022) (internal citations omitted).

This Court cannot reverse the district court's decisions based on any of Smith's new arguments because Smith failed to address the fundamental error standard, or even argue that a fundamental error was committed. *See Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022) (citing *Lavabit*, 479 F.3d at 292) (holding that appellant, by failing to address the "'fundamental error' standard" or attempting "to show that they can meet it here[,] . . . have not satisfied their burden of identifying a 'fundamental error' warranting reversal on a ground not raised before the district court.").

## ARGUMENT

### I. The District Court's Granting of SunPath's Evidentiary Motions was not an Abuse of Discretion.

#### a. The District Court Correctly Excluded the Unauthenticated and Unexplained Five9 Records.

The district court's exclusion of the Five9 records was not an abuse of discretion because they were unauthenticated and unexplained. JA1836. Smith incorrectly claims the district court erred by "applying the evidentiary burden of a trial" to the Five9 records. Br. at 16. The district court correctly applied the Rule 56 burden because evidence not "admissible at trial" cannot "be considered on summary judgment." *Davis v. Nationwide Mut. Fire Ins. Co.*, 811 F. Supp. 2d 1240, 1249 (E.D. Va. 2011) (internal quotations omitted).

Smith sought to offer the Five9 records as "call records" that evidenced 172 calls she received. JA697; JA777-786. Smith made two crucial errors that required the exclusion of the Five9 records. First, she failed to obtain any evidence authenticating them as call records. Therefore, it was not an abuse of discretion for the district court to exclude them. *See B & J Enters. v. Giordano*, 329 F. App'x 411, 415 (4th Cir. 2009) (holding that "the district court did not abuse its discretion in excluding" unauthenticated evidence "from the summary judgment record" because a party is "not entitled to have [unauthenticated evidence] considered[.]"); *see also United States v. Achiekwelu*, 112 F.3d 747, 754 (4th Cir. 1997) (holding it was proper for the district court to "exclude[] evidence that had not been authenticated[.]").

Smith was the one offering the Five9 records as "call records." Thus, it was her burden to provide sufficient evidence that they were, in fact, call records. *See* Federal Rule of Evidence 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, *the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is*." (emphasis added)). Instead, Smith did not depose Five9, and merely obtained a post-discovery declaration that only referred to the voluminous spreadsheets as "records." JA1527-1529. Therefore, Smith had no evidence sufficient to show that the Five9 records were call records. Five9's exclusion meant Smith would be unable to provide such

evidence at trial. Thus, the district court correctly excluded the Five9 records that were not, and could not be, authenticated as "call records."[6]

Smith's second error was contending that the Five9 records could be understood to reflect calls made without explanatory testimony from Five9. JA1625-1628. Merely looking at the Five9 records proved Smith's contention false. For example, the Five9 records contained at least *ten* different fields that appeared to reflect some sort of temporal quantity. Many of those were "0:00:00," *i.e.*, *no time*. JA834-841. Since a phone call would have *some* time duration, this clearly suggested that the Five9 records reflected something other than, or at least more than, phone calls. The district court agreed, as "in looking at these records, [it] could not tell [] what each of these columns means and the implication of a lot of the data that's in here." JA1829.

The district court correctly excluded the Five9 records because they were not self-explanatory, their relevance could not be shown, and they would confuse and mislead the jury. JA1836; JA1828-1829 (the district court "was *shocked* that" Smith "would argue in court that the Five9 records are comprehensible without" Five9's explanatory testimony (emphasis added)). The district court did not abuse its

---

[6] Smith argues that the Five9 declaration could be considered "even if it was" untimely. Br. at 39. But the Five9 records were never authenticated as "call records." Therefore, they were inadmissible, regardless of whether the district court considered the declaration.

discretion in excluding the Five9 records. *See United States v. Fuller*, 436 F. App'x 167, 168 (4th Cir. 2011) (citing Fed. R. Evid. 402) (holding that the excluded testimony was not relevant and "[t]hus, the district court did not abuse its discretion"); *see also United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995) (holding it is not an abuse of discretion for the district court to exclude evidence it is concerned "would confuse and mislead the jury[.]").[7]

i. **The Court cannot consider Smith's (lack of) diligence in reviewing the exclusion of the Five9 records.**

Smith incorrectly argues that the district court abused its discretion in excluding the Five9 records because Smith quickly pursued Five9 data. Br. at 12. Then Smith blames her own delay in obtaining them on SunPath by accusing it of engaging in "discovery misconduct" and "gamesmanship" *Id*. at 36-37. Her projection is false and irrelevant. It was Five9 as a witness, not the Five9 records, that was excluded due to Smith's failure to diligently pursue Five9 data. JA1413-1423 (SunPath arguing that Five9 must be excluded as a witness due to Smith's

---

[7] *Reilly v. TXU Bus. Servs. Co.*, 485 F. App'x 731, 734 (5th Cir. 2012) (finding that "[t]he district court was correct in excluding evidence" for fear of "jury confusion[.]" (internal citations omitted)); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1166 (10th Cir. 1981) (holding that "the trial court [did not] abuse[] its discretion in excluding" evidence it was concerned "could mislead and misdirect the jury[.]" (internal citations omitted)).

untimely disclosure). Smith has not appealed the district court's exclusion of Five9.[8] Therefore, as it pertains to reviewing the exclusion of the Five9 records, this Court can only consider the reasons for their exclusion. Those reasons are that the Five9 records had "not been properly, not only authenticated, but explained." JA1836.

### ii. The Court's review can end because the district court did not abuse its discretion in excluding the Five9 records.

The exclusion of the Five9 records is one of the independent reasons the district court granted SunPath summary judgment. JA1836. This is because Smith cannot prove she received any VTPPA-violating calls without admissible call records. *Id*. (the district court noting "there are some significant evidentiary problems that would also plague this case" because "the Five9 records cannot come in[.]"). Below, SunPath explains why each of the 172 "calls" Smith claims to have received was not a VTPPA-violating call. As a result, the Court's review can end there.

---

[8] SunPath's First Motion in Limine requested the exclusion of Five9 and the Five9 records, both of which the district court granted. JA1410; JA1819. Smith's brief addresses only the exclusion of the Five9 records. Br. at 35. Therefore, Smith has waived her right to appeal the exclusion of Five9 as a witness. *See Banks v. Bd. of Educ.*, No. 20-1302, 2022 U.S. App. LEXIS 4297, at *1 (4th Cir. Feb. 16, 2022) ("It is well settled that 'contentions not raised in the argument section of the opening brief are abandoned.'" (internal citations omitted)); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (a single sentence in an opening brief is "insufficient to raise on appeal any merits-based challenge to the district court's ruling" (citing Fed. R. App. P. 28(a)(9)(A))).

- **Six "Calls" Between May 26-28, 2020**[9]

SunPath is entitled to summary judgment for the first six "calls" at issue because they were made pursuant to an EBR between Smith and American Protection. Thus, they did not violate the VTPPA. Va. Code § 59.1-514(D).

Smith and American Protection formed an EBR on May 26, 2020, when Smith called American Protection to inquire abouts its VSCs after receiving a mailed advertisement from American Protection. JA599-600; JA633; JA697. American Protection could legally call her back because Smith voluntarily provided her telephone number to it through her May 26, 2020 call. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, DA 23-62, 2 ¶ 3 (2023), https://docs.fcc.gov/public/attachments/DA-23-62A1.pdf (noting that "a consumer simply providing their telephone number constitutes [his or her] 'prior express consent' to be contacted at that number regarding information closely related to the purpose for which they provided the number, absent instructions to the contrary." (internal citation omitted)); *Rules and Regulations Implementing the Telephone*

---

[9] Because American Protection only authenticated three calls (one sales calls by its solicitor, and two follow-up, non-solicitation calls regarding additional information needed to complete the purchase Smith led the solicitor to believe she made, JA635; JA1230-1231; JA1233-1234), and Smith never provided any admissible proof of her calls with American Protection, SunPath assumes, solely for purposes of this exercise, the accuracy of Smith's "call" counts.

*Consumer Protection Act (TCPA of 1991)*, 68 FR 44144-01, 44159 (2003) (when a person calls a company, there is a reasonable "expectation" that the company would return the call.); *Newhart v. Quicken Loans, Inc.*, CASE NO. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721, at *10 (S.D. Fla. Oct. 12, 2016) (A company's callbacks are "invited calls[,] not [] calls 'initiated' for the purpose of" offering property, goods, or services.). Therefore, those six calls were not VTPPA-violating calls. Thus, SunPath was correctly granted summary judgment on them.

- **50 "Calls" Between May 28 to June 11, 2020**

Smith conceded SunPath was entitled to summary judgment for these 50 "calls" made pursuant to an EBR. JA703-704.

- **116 "Calls" Between June 11, 2020 and August 18, 2020**

The Five9 records are the *only* evidence Smith relies on for her claim that she received 116 VTPPA-violating calls after the EBR was terminated on June 11, 2020. JA698; JA766-786. Without the Five9 records, Smith cannot prove she received any calls after making that do-not-call request, much less that she received any VTPPA-violating calls. The exclusion of the Five9 records entitled SunPath to summary judgment for those 116 "calls."

The exclusion of the Five9 records means Smith has no evidence that she received *any* VTPPA-violating calls. Therefore, SunPath was correctly granted summary judgment. The Court's review can end here.

b.     **The District Court did not Abuse its Discretion in Excluding Smith's Damages Evidence.**

Smith incorrectly argues that the district court abused its discretion because it did not explain its basis for excluding Smith's damages evidence. First, the district court did explain its basis. JA1835 (the district court explaining that "the damages [Smith is] requesting are inaccurate[.]"). Second, even if the district court did not explain such basis, this Court "can affirm on any basis fairly supported by the record." *See Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 33 (4th Cir. 2008) (internal citations omitted).

Beyond the inaccuracy of Smith's claimed damages,[10] this Court can affirm on two record-supported bases. First, Smith improperly and untimely attempted to double her claimed damages in sole reliance on the inadmissible Five9 records. Second, the exclusion of Smith's damages evidence was an appropriate sanction for Smith's repeated failure to properly disclose her claimed damages.

---

[10] On July 1, 2020, an amendment that increased the VTPPA's damages became effective. Smith allegedly received 52 calls prior to July 1, 2020 for which she sought damages. Smith improperly requested more damages than she was legally entitled to by applying that increased damages amount to all calls for which she now sought damages, regardless of the date they occurred. Thus, Smith improperly claimed around $234,000 more in damages than the law ever allowed.

### i.     Smith untimely and improperly doubled her claimed damages solely in reliance on the inadmissible Five9 records.

Smith never made clear the number of calls at issue or her claimed damages. It therefore shocked both SunPath and the district court when, on January 6, 2023, Smith claimed $601,500 in VTPPA damages for 122 VTPPA-violating calls. JA707. This more than doubled the number of calls at issue and the amount of VTPPA damages Smith now sought compared to her claims throughout discovery. JA1559-1564 (November 11, 2022: Smith listed 54 calls for which she sought recovery, 48 of which Smith later conceded were not actionable); JA1602 (December 8, 2022: Smith stated that she sought recovery for all "calls" placed to her that were reflected in the Five9 records, but failed to identify any calls other than the 54 she previously listed); JA1576-1577 (December 9, 2022: Smith's final supplemental initial disclosures stated "she seeks $261,500" in VTPPA damages).

The only evidence supporting Smith's new claimed damages total were the Five9 records. JA777 (Smith's declaration claiming she received 172 "calls," based solely on Five9's records). Since Smith chose to rely solely on the Five9 records to support her new claimed damages, the district court correctly excluded that consequently unfounded damages claim because of the exclusion of the Five9 records. Because the district court did not abuse its discretion in excluding the Five9 records, it did not abuse its discretion in excluding Smith's unsupported damages claim.

The district court also properly excluded Smith's new claimed damages total because it was not timely disclosed during discovery as required by Fed. R. Civ. P. 26(a)(1)(A)(iii). *See* Fed. R. Civ. P. 37(c)(1) (When "a party fails to provide information . . . required by Rule 26(a)" it cannot use such information "at [] trial, unless the failure was substantially justified or is harmless.").

Further, Smith never sought leave to untimely disclose her new claimed damages total. This not only violated the district court's local rules, but also precluded Smith from arguing that her untimely disclosure was substantially justified or harmless. *See* Local Civil Rule 16(B) ("The parties and their counsel are bound by the dates specified in any [scheduling] orders and no extensions or continuances thereof shall be granted in the absence of a showing of good cause."); *see United States v. Nunez*, 753 F. App'x 450, 451 (9th Cir. 2019) (holding that a demonstration of good cause for filing an untimely motion "cannot form the basis for relief on appeal" when the party failed "to move for leave to file [the] untimely motion" at the trial level (internal citations omitted)).

Even if the Court considered the issue of whether Smith's untimely damages disclosure was substantially justified or harmless, Smith has not met that burden. *See Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 229 (4th Cir. 2019) ("The non-disclosing party bears the burden of establishing that the nondisclosure was substantially justified or was harmless." (internal quotations and citation omitted)).

As addressed above, Smith's untimely disclosure was a surprise to SunPath because her discovery responses and initial disclosures (including those served on the last day of discovery) all claimed $261,500 in VTPPA damages for 54 allegedly VTPPA-violating calls. JA1559-1567; JA1576-1577. Even Smith's December 8, 2022 interrogatory answer that referenced the Five9 records failed to disclose that any calls other than the 54 she had previously listed were at issue, or that she was claiming that the Five9 records reflected any other calls to her. JA1602. SunPath had no reason to believe Smith was relying on the Five9 records she produced on November 30, 2022. JA1637. Indeed, Smith had provided no explanation as to what they represented and, that same day, she claimed in sworn interrogatory answers that she would be relying on her own, still-unproduced, AT&T records to prove her damages and the calls at issue. JA1585; JA1589.

Two days later, at Smith's deposition, SunPath had no reason to question her about the Five9 records. When SunPath asked Smith about the Five9 records, Smith admitted she had never seen them, and thus had no personal knowledge about them or any idea how many calls to Smith, if any, they evidenced. JA945-946. Smith's representation that she had some intent to rely on the Five9 records was rendered meritless by her admission that she had never seen them. Thus, Smith's deposition provided no opportunity to cure the surprise of Smith's later untimely damages claim.

In this case about money for phone calls, Smith cannot escape the fact that her claimed damages about those calls needed to be timely disclosed. *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) ("[T]he more important the evidence, the more important it is for the proponent to disclose [it] in a timely manner because it is more likely to prejudice the opposing party."). Smith's failure to do so was not substantially justified. It prejudiced SunPath. Therefore, the district court did not abuse its discretion by excluding Smith's damages evidence. *See Reynoso v. Constr. Protective Servs.*, No. 06-56381, 2008 U.S. App. LEXIS 19681, at *1 (9th Cir. Sept. 16, 2008) (finding the district court did not abuse its discretion in excluding "evidence regarding damages as a" sanction "for failure to disclose damage calculations under Rule 26(a).").

> ii. **Smith violated the district court's order by failing to properly disclose her claimed damages.**

The district court found Smith's initial damages disclosure and related discovery responses to be insufficient. Therefore, it ordered Smith to comply with Fed. R. Civ. P. 26(a)(1)(A)(iii) by laying out, with specificity, each call she was seeking damages for and the amount she sought for each call. JA282-284. Smith clearly understood what was ordered. Her understanding is evidenced by her supplemental interrogatory answer claiming her receipt of the AT&T records would put her "in a better position to split out the damages sought for each individual call[.]" JA1589. Smith violated that order because her subsequent supplemental

initial disclosures and discovery responses all failed to provide that information. JA1573-1605.

Smith has not appealed that order because her opening brief does not address it. *See Banks*, 2022 U.S. App. LEXIS 4297, at *1. Therefore, Smith cannot argue on appeal that her damages evidence should have been permitted because her damages disclosure was proper.

The district court did not abuse its discretion in excluding Smith's damages evidence. It was an appropriate sanction for Smith's failure to comply with the district court's order. *See Reynoso*, 2008 U.S. App. LEXIS 19681, at *1; *see, e.g., Achiekwelu,* 112 F.3d at 753.

c.    **The District Court did not Abuse its Discretion by Striking Smith's Contradictory Declaration.**

Smith filed a declaration in support of her summary judgment briefs. That declaration relied solely on the inadmissible Five9 records. JA776-786. Since the district court excluded the Five9 records, her declaration was correctly stricken for relying solely on inadmissible evidence. JA1342-1344; *see also* Fed. R. Civ. P. 56(c)(4) (A "declaration used to support or oppose a motion must . . . set out facts that would be *admissible* in evidence[.]" (emphasis added)).  Since the district court did not abuse its discretion in excluding the Five9 records, it cannot have abused its discretion in striking Smith's declaration.

Smith's declaration was correctly stricken because of "significant inconsistencies between" it and Smith's prior sworn statements. JA1836. The district court's decision to strike Smith's contradictory declaration was not an abuse of discretion. *See Kinser v. United Methodist Agency for the Retarded-Western North Carolina*, 613 F. App'x 209, 210 (4th Cir. 2015) ("[a]t the summary judgment stage[,]" a party's declaration that "is inconsistent with" that party's prior sworn statements may be disregarded "pursuant to the sham-affidavit rule." (internal citations omitted)).[11]

Smith incorrectly claims that "the record does not include[] any [] inconsistencies, let alone significant ones" between her declaration and her prior sworn statements. Br. at 41. The record clearly demonstrates real contradictions between the two. For example, Smith's supplemental interrogatory answers dated November 11, 2022, swore that she only sought recovery for 54 calls she allegedly received between May 26, 2020 and June 9, 2020. JA1559-1564. At deposition, when asked if June 9, 2020 was the last date that she received a call at issue, Smith

---

[11] Smith incorrectly claims that striking a declaration is "strictly limited" to instances of "flat contradictions" between the declaration and the party's prior sworn statements. Br. at 41. The rule focuses on inconsistencies between the two, not "flat contradictions[,]" because courts cannot ask juries to "resolve [a plaintiff's] claims by deciding between her own inconsistent statements." *Wilson v. Gaston County*, 685 F. App'x 193, 199 (4th Cir. 2017); *see also Rohrbough v. Wyeth Labs., Inc*, 916 F.2d 970, 976 (4th Cir. 1990) (finding "the district court was justified in disregarding" an affidavit containing statements inconsistent with, but not directly contradicting, prior testimony).

testified that what she had "provided initially" in her discovery responses "was correct[.]" JA945. In complete contradiction, Smith's new declaration stated that "[b]etween May 26, 2020 and August 18, 2020 [she] received 172 calls" from American Protection, 116 of which she received "between June 11, 2020 and August 18, 2020[.]" JA844. These bona fide inconsistencies warranted the exclusion of Smith's contradictory declaration. *See Kinser*, 613 F. App'x at 210-11.

In misplaced reliance on *In re Davol, Inc.*, Case No. 2:18-md-2846, 2020 U.S. Dist. LEXIS 99875 (S.D. Ohio June 8, 2020), Smith incorrectly argues that her declaration should not have been stricken by claiming it "offers information outside the scope of her deposition testimony[.]" Br. at 42. In *Davol*, the district court elected not to strike plaintiff's expert's post-deposition declaration because it "fill[ed] in the gaps in" the expert's testimony "based on additional [documents]" produced after the deposition, which the expert "did not have access" to before his deposition and plaintiff's counsel had not reviewed and analyzed "at the time of the deposition[.]" *Id*. at *431-32. Conversely, here the Five9 records were available. Smith had an opportunity to review them before her deposition but did not, although her counsel did. JA945-946. At Smith's deposition, SunPath quickly established that Smith had never seen the Five9 records. *Id*. There was nothing else for SunPath to ask her regarding the Five9 records she had never seen. The district court was correct in striking her declaration as inadmissible wishful thinking.

Finally, Smith's declaration also had to be sticken because she lacked personal knowledge of the Five9 records and the "calls" she believed they reflected. Smith testified at deposition that she had not reviewed the Five9 records and was simply adopting her counsel's belief that calls to her were reflected in those records. *Id.* Thus, her declaration was properly stricken because it could not be used to support or oppose summary judgment. *See* Fed. R. Civ. P. 56(c)(4) (A "declaration used to support or oppose a motion must be made on *personal knowledge* . . . and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added)).

Smith's claim that she had knowledge of "calls" reflected in the Five9 records and that they refreshed her recollection is without merit. Before Smith reviewed the Five9 records, she only claimed to have received 54 calls, with the last one on June 9, 2020. JA1559-1564. Smith was already claiming that whatever the Five9 records contained was correct (based on advice of counsel, who presumably weren't at her side when the calls occurred, if they ever did) before she even saw them, JA945-946, and that they could be used to "refresh her recollection." JA1623. The simple truth is that Smith was relying on the inadmissible Five9 records to claim she received 172 calls. But avarice is no substitute for admissibility.

Smith never claimed that her recollection was exhausted, and despite her claim, the Five9 records did not refresh her recollection. *See United States v.*

*Rydland*, 461 F. App'x 208, 210 (4th Cir. 2012) (ruling that the key to refreshing recollection is that "the witness'[s] recollection be exhausted," and after the witness reviews the refreshing writing, "[s]he testifies . . . on the basis of h[er] own recollection, not the writing." (internal citations omitted)). Thus, the district court did not abuse its discretion by striking Smith's sham declaration. *Id*. ("a party may not attempt to introduce [] inadmissible evidence under the guise of refreshing recollection[.]" (internal citations omitted)).

## II.    The District Court's Denial of Smith's Requested Discovery Extension and Discovery Schedule were not Abuses of Discretion.

### a.    The District Court Correctly Exercised its Discretion to Regulate the Discovery Process.

Smith requested a discovery extension with two months remaining in the four-month discovery period. JA49; JA26. Smith falsely represents that her request was "based on discovery misconduct by SunPath." Br. at 51. There was no such misconduct on the part of SunPath. Tellingly, Smith's brief is devoid of any actual examples. The district court denied Smith's motion *without prejudice* because it was not convinced an extension was needed yet. JA237-241. Instead, it provided Smith the opportunity to request an extension again, if necessary, closer to the end of discovery. *Id*. Through that order, the district court "simply exercised its discretion to regulate the discovery process," which is not an abuse of discretion. *CBRE Realty Fin. Trs, LLC v. McCormick*, 414 F. App'x 547, 550-51 (4th Cir. 2011) (holding that

the district court did not abuse its discretion by denying a requested discovery extension made before discovery ended, but allowing the request again at the end of discovery, if needed, because the district "court simply exercised its discretion to regulate the discovery process[.]"). The fault lays with Smith's failure to renew her extension request.

The fault further lies with Smith because she failed to follow the district court's instructions. It does not lay with the district court. The bases for Smith's requested discovery extension were issues surrounding Smith's subpoena to American Protection and its representative's request to defer his deposition until November. JA53-56. In denying Smith's request, the district court instructed Smith to get American Protection's deposition set for "as soon as possible[.]" JA238. If it was being "obstructionist," Smith could "file a motion" and the district court's expedited hearing process would have the issue "resolved within seven days." JA237-238. Instead of setting the deposition for an earlier date or filing a motion to compel, Smith just kept American Protection's deposition set for November 1, 2022, the same date it was scheduled for before Smith's extension request.

It was not an abuse of discretion for the district court to deny Smith's requested extension and provide her with "alternative avenues of relief." *McCormick*, 414 F. App'x at 551. The district court was "simply exercis[ing] its discretion to regulate the discovery process[.]" *Id*. Smith incorrectly describes a

40

comment from the district court at a later hearing as "the Court fault[ing her] for not seeking court intervention in the first place." Br. at 38. The accurate description is that the district court correctly faulted Smith for not using those alternative avenues (never mind not asking for the documents in August that would identify American Protection's telephone carrier, or subpoenaing her own phone company). As the district court warned, slow and careless is a dangerous combination in the Rocket Docket. JA238-239 (explaining that EDVA judges "are very set on enforcing an efficient discovery process and holding to these deadlines" and when an extension is requested, the first thing "the judges are going to ask are, Number 1, what have you been doing up until this point? I can tell you, there's oftentimes one position that's taken by the Court if attorneys have been diligently working towards pushing the case forward; and there's a different position . . . taken where they haven't done much and they're coming up on the deadline and they need an extension").

### b.   The District Court's Discovery Period was not an Abuse of Discretion.

Smith incorrectly argues that "the district court abused its discretion by issuing an arbitrary [four-month] discovery schedule" that "was untethered to the facts of this case or the parties' relative access to information." Br. at 48, 50. That schedule was not arbitrary. First, despite this case being filed as a class action, it was not complex. Before filing the case, Smith already "knew that the calls were placed by[,]" and her transactions were with, "American Protection[.]" Br. at 36-37; JA380.

41

Under Smith's liability theory, she only needed discovery as to SunPath's relation to the calls at issue and American Protection's call records.

Second, Smith chose to file in the EDVA. The EDVA is well known "for the rapid speed at which [it] adjudicates and disposes of cases on its docket." *See* Faulkner, *supra* note 3. The EDVA "attracts plaintiffs" as its "speed gives special advantage to plaintiffs who" engage in "advance preparation before launching their cases[.]" *Id*.; *Moore*, 2020 U.S. Dist. LEXIS 188502, at *14. Smith cannot be heard to complain about the pace of the Rocket Docket that she herself chose.

The EDVA's fast-moving docket is permissible because it is a fundamental principle "that a district court has wide latitude in controlling discovery and [] its rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986) (internal citations omitted). That latitude extends "to the manner in which [the district court] orders the course and scope of discovery." *Id*. (internal citations omitted). "[I]t is 'unusual to find an abuse of discretion in discovery matters[,]'" and Smith's arguments fail to show that the district court's discovery schedule was so untethered to the facts and needs of the case that it constituted an abuse of discretion. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018) (citing *Ardrey*, 769 F.2d at 682); *see also Mofor v. Kuehne & Nagel, Inc.*, 56 F. App'x 137, 137 (4th Cir. 2003) ("Reversal of a judgment because of an improper order denying or curtailing

discovery is unusual." (internal citations omitted)). Smith's buyer's remorse for her own choice of forum is not grounds for reversal.  She had over four months to get one set of call logs, which was more than ample.[12]

### c.    Correctly, The District Court Never Decided Class Certification.

Smith improperly blames the district court's discovery schedule for her failure to develop an adequate class-certification record. Br. at 48-49. Then she incorrectly claims the district court decided certification without an adequate record. *Id*. First, *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018) does not support Smith's position. Br. at 49. In *CBS*, at issue was the district court's local rule requiring parties to move for class certification within 90 days of filing a complaint. *ABS Ent.*, 908 F.3d at 427. That rule was found to be an abuse of discretion because it had precluded plaintiff from conducting pre-certification discovery. *Id*. Therefore, the district court would have been prevented from conducting the required "'rigorous analysis' of the prerequisites for certification." *Id*.  Conversely, Smith could, and did, conduct pre-certification discovery. Smith herself, not the district court, limited

---

[12] Smith's argument regarding "the relevant documents and data" being "in Florida [] and California[,]" is irrelevant because Smith never filed any motions to compel. Br. at 50.

her time to conduct pre-certification discovery by agreeing to a certification deadline of November 14, 2022.[13]

Second, Smith believes the Five9 records were necessary for the class certification record to be adequately developed. Br. at 51. Yet she was able to obtain them within the discovery period. It was her failure to diligently secure those records that prevented her from obtaining them before the *parties' agreed-upon*, and court-ordered, November 14, 2022 motion for class certification deadline. JA39-41; JA44.

Smith subpoenaed Five9 on November 9, 2022. JA460. If Smith believed she needed the responsive documents to move for class certification, she should have requested an extension of the applicable deadline, which was five days away. She *never* did. Smith then obtained the Five9 records on November 30, 2022. Since the motion for class certification deadline had past, Smith should have requested leave of court to file an untimely motion for class certification, as Local Civil Rule 16(B) required. Smith could have argued in such motion that the district court's discovery schedule somehow prevented her from timely moving for class certification. She *never* did. Instead, Smith just improperly filed her untimely motion. She then stood ready, willing, and able to argue it.

---

[13] Smith's argument that "the lack of clarity in the schedule . . . was fatal to [her] ability to prosecute the case as a class action[,]" is without merit. Br. at 51. The parties agreed to November 14, 2022 as the class certification deadline, JA39-JA41, which then clearly became a court-ordered deadline. JA44. The district court cannot be blamed for Smith's refusal to adhere to a deadline she agreed to.

Smith's class certification motion was correctly stricken as untimely because of Smith's failure to request such an extension or leave of court. JA466. As a result, the district court never "decided certification." Thus, it cannot have abused its discretion by deciding certification "prior to the development of an adequate record[,]" as Smith now incorrectly argues. Br. at 49.

Those failures also mean that Smith waived her right to argue on appeal that the district court's discovery schedule was an abuse of discretion that prevented her from developing an adequate class certification record. *See Davis v. Walmart Stores East, L.P.*, 687 F. App'x 307, 310 (4th Cir. 2017) ("[Q]uestions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances." (internal citations omitted)); *see also Nunez*, 753 F. App'x at 451 (holding that a demonstration of good cause for filing an untimely motion "cannot form the basis for relief on appeal" when the party failed "to move for leave to file [the] untimely motion" at the trial level (internal citations omitted)). Smith has failed to preserve, and thereby waived, any complaint she has surrounding her untimely class-certification motion (never mind her curious request for a "reasonable discovery schedule," Br. at 52, while simultaneously failing to explain to this Court what discovery she thinks she may have needed, but never asked for, below).

### III. The District Court Correctly Entered Summary Judgment in SunPath's Favor.

#### a. SunPath was not the VTPPA-Defined Seller for Any of the Calls.

While Smith's lack of any admissible evidence about the calls and damages are fatal to her case, this Court should affirm the district court's grant of summary judgment in SunPath's favor because the undisputed facts establish that SunPath was not the VTPPA-defined "seller" for any call at issue.

As the district court correctly determined, there were "three tiers" of entities here. Starting furthest from a call being made, the first tier is SunPath and its competitors who administer VSCs, along with the myriad mechanics, tow-truck operators, and other participants in the VSC industry. JA473. The second tier is American Protection who sold its VSCs that were administered by SunPath and SunPath's competitors. *Id.*; JA516-523; JA583-584; JA626-627. The third tier are the subcontractors American Protection retains to make telemarketing calls on its behalf and for its benefit offering its VSCs. JA598.

American Protection's subcontractors are the ones actually making calls on behalf of and for the benefit of American Protection. Thus, they are the VTPPA-defined "telephone solicitors" for the calls at issue. Va. Code § 59.1-510 (defining "telephone solicitor" as "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller.").

For SunPath to be the VTPPA-defined seller for the calls at issue, American Protection's subcontractors would have to have been making telephone solicitation calls on behalf or for the benefit of SunPath and offering SunPath's products. *See* Va. Code § 59.1-510. The undisputed record shows that the subcontractors were: (1) making telephone solicitation calls on behalf of and for the benefit of American Protection, not SunPath; and (2) offering American Protection's products, not SunPath's. Thus, SunPath could not be found to be a VTPPA-defined seller for the calls at issue.

### i.     The subcontractors were calling on behalf of and for the benefit of American Protection.

It is clear that American Protection's subcontractors were making calls on behalf of and for the benefit of American Protection, not SunPath. They were hired, trained, and paid exclusively by American Protection. JA611-612. They had no interaction or relationship with SunPath whatsoever. JA623. When they spoke with a consumer, they would have no idea which American Protection VSC they would offer before they spoke with the consumer about his or her vehicle's characteristics, such that the only seller *ex ante* was always and only American Protection. JA596. Thus, the calls were not made on behalf of an administrator like SunPath (or any of SunPath's competitors, or the various service providers that provide the vehicle services under a given American Protection VSC). *See Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D.

Md. Aug. 4, 2022) (dismissing analogous TCPA claims on a motion for summary judgment because "at best, Hound Energy and AGR were . . . independently soliciting customers for Discount Power, not [] 'act[ing] on'" its behalf (internal citations omitted)). American Protection's subcontractors do not make calls "on behalf of" or "for the benefit of" SunPath and its competitors, any more than employees of a company like Dick's Sporting Goods sell Dick's products, like Nike and Adidas sneakers, "on behalf of" or for "the benefit of" Nike or Adidas. The district court correctly rejected Smith's infinite-chain-of-commerce interpretation.

Neither the language nor purpose of the VTPPA supported Smith's construction. American Protection is the only company that the subcontractors can be found to have been making calls on behalf of and for the benefit of because American Protection was the only company guaranteed to have its products offered on, and/or be the beneficiary of, each and every call made by its subcontractors.

The American Protection subcontractors identified themselves on their calls, voicemails, and emails as calling for American Protection, not SunPath. *See, e.g.,* JA642 ("Hi Ruth this is Samantha calling with American protection [sic]"). Here, SunPath's name was never mentioned on any call between Smith and the American Protection subcontractors. JA526-527; JA637-642. The email Smith received on May 28, 2020 clearly identified American Protection. JA650-651. It did not mention SunPath. *Id.* When we buy bananas from a grocery store, we know the grocery store

48

is the seller, even if we also know they probably didn't grow the bananas. The district court correctly applied a common-sense, textually supported construction of the statute holding that a "seller" is the one you interact with, give money to, and get the goods from, not unidentified participants in the underlying stream of commerce.

### ii. The subcontractors were offering American Protection's products.

Smith incorrectly argues that "the record is wholly devoid of any evidence showing that American Protection was offering its *own* services on the calls" and that "the district court did not even attempt to identify" the "American Protection product" being offered. Br. at 25. The record clearly shows that the district court was correct about American Protection's subcontractors offering American Protection's products, not SunPath's. American Protection, in selling its VSCs that would be administered by several different companies, JA584; JA596, is again similar to companies like Dick's. The sneaker a consumer buys from Dick's is a Dick's product regardless of which company manufactured it. Similarly, the VSC a consumer buys from American Protection is an American Protection product, regardless of which company administers it.

To be sure, the email Smith received on May 28, 2020, after she led the solicitor to believe she had purchased a VSC, identified American Protection and not SunPath or any other company that administers American Protection's VSCs. JA650-651. It stated that "American Protection carries an A+ rating with BBB since

2007. **You can *buy from us*** with complete confidence knowing you are getting the most comprehensive coverage at the lowest possible rates." *Id*. (emphasis added). Those rates are set by American Protection and not by SunPath. JA477.  If the product being sold was actually a SunPath product, that would have been communicated to someone like Smith before, during, or after her purchase (believed purchase). It *never* was. The fact that SunPath may have provided administration services for the American Protection VSC Smith pretended to buy does not make it SunPath's product. It was an American Protection product, the *only* company that made *any* representation to Smith that she had purchased its product. The district court correctly recognized this, noting that "[t]he product that's really being solicited [by the subcontractors] is an agreement with American [Protection]." JA1833.

The district court, in applying a plain reading of the clear language of the VTPPA to the foregoing facts, correctly granted SunPath's motion for summary judgment by finding that "[t]he seller in this case is American Protection[,]" not SunPath. JA1829-1830. As the district court correctly explained, "the []person upon whose behalf[] [the subcontractors] are making these phone calls[] is American [Protection][.]" JA1832. The subcontractors are "selling an American [Protection] product[.]" JA1831. Therefore, the district court did not err in finding that SunPath was not the VTPPA-defined seller for the calls at issue.

### iii.     The VTPPA's legislative history is irrelevant.

Smith incorrectly argues that the district court's plain "reading of the" VTPPA "turns the plain language of the VTPPA on its head." Br. at 20. Specifically, Smith finds fault with the district court's holding "that the VTPPA allow[s] for only a single 'seller[.]'" Br. at 23. In support, Smith cites comments made by two legislators. Br. at 22-23. First, whether the VTPPA allows for one or multiple sellers is irrelevant because the foregoing establishes that SunPath is not a VTPPA-defined "seller." Second, that legislative history cannot be considered because the VTPPA is unambiguous. *Turner*, 389 F.3d at 119. Even if it could be considered, primary weight must be given to the language of the VTPPA which the district court looked at "with great care" and read "literally[.]" JA1836; JA1829.  Legislative intent "is more apparent from the words of the statute itself than from a patchwork record of statements inserted by individual legislators[.]" *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000) (internal citations and quotations omitted); *id*. at 306 ("a brief comment from the floor by a single legislator . . . is not conclusive evidence of what the entire legislative body believes." (citing *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982))). This "gives rise to the strong presumption that Congress expresses its intent through the language it chooses." *Id*. at 305 (internal quotation omitted).

51

### iv.    On other grounds, SunPath was not the Seller for any call Smith claims is actionable.

- **Calls between May 26-28, 2020**

The VTPPA's definition of "seller" requires that the entity's product be offered or advertised *on* the telephone solicitation call. Va. Code § 59.1-510. SunPath cannot be the seller for the six calls that occurred between May 26-28, 2020, for two reasons. First, those calls were unanswered. Therefore, a SunPath-administered VSC was not offered *on* them. Second, when those calls were made, the subcontractors had not yet spoken with Smith or obtained her vehicle information. JA703; JA919-920; JA952. Therefore, it had not even been determined what VSC would be offered to Smith when those calls were made. JA596. Accordingly, even if a SunPath-administered VSC could be considered SunPath's product, it could not be found that such VSC was offered *on* any of those six calls.

- **Calls after Smith's June 11, 2020 do-not-call request**

Smith is entitled to *reasonable* inferences drawn in her favor as the party opposing summary judgment. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995) (the party opposing summary judgment is only entitled to "permissible inferences . . . within the range of reasonable probability" (internal quotations omitted)). SunPath cannot be the VTPPA-defined seller for calls occurring after Smith's June 11, 2020 do-not-call request because it is not a

52

reasonable inference that those calls were made to offer a SunPath-administered VSC.

SunPath claims that American Protection's subcontractors only offered her one VSC before her June 11, 2020 email. Br. at 9. If that was a SunPath-administered VSC, Smith's June 11, 2020 email served as a clear rejection of it. It would be an unreasonable inference to draw from those facts that American Protection's subcontractors continued to call Smith to offer her the same VSC she had just rejected. Such inference is rendered further unreasonable because the subcontractors had VSCs administered by other companies that they could offer. The only reasonable inference is that such calls were not made to offer a SunPath-administered VSC. Thus, SunPath cannot be found to be the VTPPA seller for those calls.

### b. SunPath Rebutted the VTPPA's Liability Presumption.

When an entity is determined to be the VTPPA-defined "seller," the VTPPA provides a rebuttable presumption of liability. The entity can rebut that presumption when it shows:

> . . . by clear and convincing evidence [(1)] that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and [(2)] that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent.

53

Va. Code § 59.1-514.1(B). As to the first part, SunPath has demonstrated it did not retain or request American Protection or its subcontractors to make calls on its behalf or for its benefit. *See supra* III(a)(i). Further, SunPath could never be found to have retained American Protection or its subcontractors to make VTPPA-defined "telephone solicitation calls." The Agreement between SunPath and American Protection required American Protection to comply with applicable laws. JA520. As discussed below, a VTPPA-defined "telephone solicitation call" is unlawful by definition. *See infra* III(b)(i). Therefore, the Agreement precludes any finding that SunPath retained American Protection to make VTPPA-defined "telephone solicitation calls."

For the second part, Smith incorrectly argues that SunPath knew about and consented to the calls at issue. First, Smith previously conceded that (1) the second part could be met by SunPath demonstrating that it did not consent to the making of unlawful calls and that (2) SunPath did not consent to the VTPPA violating calls at issue. JA828-829; JA520 (the Agreement required American Protection to comply with "all applicable laws[.]"). Second, SunPath had no knowledge of the unlawful calls at issue. JA628.

The foregoing is clear and convincing evidence that the allegedly unlawful calls were made without SunPath's knowledge or consent. Thus, the district court was correct in finding that SunPath had rebutted the VTPPA's liability presumption.

### i. The Court cannot reverse based on Smith's argument that it does not matter whether SunPath knew about or consented to the making of unlawful calls.

Smith argues for the first time on appeal that SunPath's "knowledge that the calls [at issue] were unlawful . . . is actually irrelevant" to it rebutting the VTPPA's liability presumption. Br. at 17. The Court cannot reverse on this argument because Smith never raised it below and abandoned it here by failing to argue the district court committed a fundamental error. *See Lavabit*, 479 F.3d at 292. Even if the Court considered this argument, it is incorrect.

A violation of Va. Code. § 59.1-514(B) occurs when a "telephone solicitor []initiate[s] . . . a *telephone solicitation call* to a telephone number on the National" DNC Registry. *Id*. (emphasis added). The VTPPA defines "telephone solicitation call" and lists the type of calls that do not constitute a "telephone solicitation call." *See* Va. Code § 59.1-510; § 59.1-514(D). When taken together, they render a VTPPA-defined "telephone solicitation call" unlawful *by definition*. Moreover, the VTPPA's provision regarding joint liability only applies to "prohibited acts." Va. Code § 59.1-514.1 (titled "Joint Liability of seller and telephone solicitor for *prohibited acts*; rebuttable presumption" (emphasis added)).

The second part of the rebuttable liability presumption states that "the *telephone solicitation calls* offering or advertising the seller's [product] were made . . . without the seller's knowledge or consent." Va. Code § 59.1-514.1(B) (emphasis

55

added). Since the presumption is found within a section addressing VTPPA-prohibited acts, and a VTPPA-defined "telephone solicitation call" is unlawful by definition, it follows that the second part of rebutting the liability presumption only requires the seller to show it did not know of or consent to the making of *unlawful* calls. To be sure, the VTPPA is not a strict-liability statute. *See Mantian Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011) ("There is no evidence in the legislative history of the [VTPPA] that Virginia's legislature intended to impose strict liability on a company for the conduct of anyone making a phone call and claiming to represent the company."). As previously established, SunPath had no knowledge of and did not consent to the making of any unlawful calls. JA628; JA520. Based on the foregoing, the district court correctly held that SunPath had rebutted the VTPPA's liability presumption.

## CONCLUSION

SunPath respectfully requests that this Court affirm the district court's grant of SunPath's evidentiary motions, adherence to its reasonable discovery schedule, grant of SunPath's motion for summary judgment, and denial of Smith's motion for partial summary judgment.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary here because "the facts and legal arguments are adequately presented in the briefs and record, and the decision process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C).

Dated July 12, 2023                    Respectfully submitted,

ROTH JACKSON

By: /s/ Joseph P. Bowser
Joseph P. Bowser
C. Taylor Smith
1519 Summit Avenue, Suite 102
Richmond, Virginia 23230
(804) 441-8440

Mitchell N. Roth
8200 Greensboro Drive, Suite 820
McLean, Virginia 22102
(703) 485-3536

*Attorneys for Defendant-Appellee*
*SunPath, Ltd.*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as it contains 12,960 words, excluding the portions exempted by Rule 32(f).

This response complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because they have been prepared in 14-point, Times New Roman font.


Dated July 12, 2023                    ROTH JACKSON

                                       By: /s/ Joseph P. Bowser
                                            Attorneys for Defendant-Appellee
                                            SunPath, Ltd.

## CERTIFICATE OF SERVICE

I certify that on July 12, 2023, I electronically filed the foregoing Response with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will send a notification of that filing to all counsel of record.


Dated July 12, 2023                    ROTH JACKSON

                                       By: /s/ Joseph P. Bowser
                                           Attorneys for Defendant-Appellee
                                           SunPath, Ltd.