No. 23-1140

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

RUTH SMITH,
on behalf of herself and all others similarly situated,

*Plaintiff-Appellant*,

v.

SUNPATH, LTD.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division

---

**REPLY BRIEF FOR
PLAINTIFF-APPELLANT RUTH SMITH**

---

Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
Taylor T. Smith
(tsmith@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue, Ste. 300
Denver, Colorado 80210
Telephone: (720) 907-7628

*Attorneys for Appellant Ruth Smith*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

I.    The District Court Abused Its Discretion By Granting All Evidentiary
      Motions And Excluding The Majority Of The Evidence In This Case. .........3

      A.    Because the Five9 Records were (or could have been) authenticated, it
            was an abuse of discretion to exclude the records. ..............................3

            1.    SunPath misconstrues the evidentiary burden at summary
                  judgment—the Five9 records should have been considered. .....3

            2.    Even if the Five9 records were excluded, Smith could still testify
                  regarding the calls that she received—the Court's review should
                  not end. ................................................................................6

      B.    Smith timely disclosed her damages calculation and all evidence to
            support her damages, the district court's exclusion of all evidence of
            damages was therefore an abuse of discretion. ....................................8

      C.    Given that Smith possesses personal knowledge regarding the calls she
            received, it was an abuse of discretion to strike her declaration.........10

II.   The District Court Abused Its Discretion By Failing To Set A Reasonable
      Discovery Schedule And Denying A Request To Extend The Schedule Based
      On An Irrational Basis. ...............................................................................13

      A.    The court abused its discretion by denying Smith's continuance request
            on an irrational basis. ........................................................................13

      B.    The district court abused its discretion by failing to set a reasonable
            discovery schedule. ...........................................................................15

III.  The District Court Erred By Granting Summary Judgment In Favor Of
      SunPath Under The VTPPA. ......................................................................17

      A.    SunPath was a seller as defined by the VTPPA. ...............................18

            1.    SunPath contracted with American Protection to place calls to

solicit its products—it was thus the "seller" as defined. ..........18

2.      American Protection only solicited Smith to purchase a SunPath VSC, therefore the presumption of liability applies. ...............19

3.      SunPath's alternative grounds for affirming summary judgment fall flat. ....................................................................................22

B.      Despite SunPath's contentions otherwise, the factual record did not contain "clear and convincing" evidence to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath. .........23

CONCLUSION ....................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Bailey v. Christian Broad. Network*, 483 F. App'x 808 (4th Cir. 2012)..................10

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017) ...................................9

*Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407 (S.D. Ohio Sept. 30, 2019) ....................................................................................7

*Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2022 WL 1597840 (W.D. Va. May 19, 2022) ....................................................14

*Fenje v. Feld*, 301 F. Supp. 2d 781 (N.D. Ill. 2003) .................................................6

*Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021) ..............9

*Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220 (4th Cir. 2019) ............................5

*Gunter v. S. Health Partners, Inc.*, No. 1:16CV262, 2021 WL 4255370 (M.D.N.C. Sept. 17, 2021) ....................................................................................11

*Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 354751 (E.D. Va. Jan. 27, 2016) .......................................................11

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-CV-187, 2018 WL 4169282 (E.D. Va. Jan. 12, 2018) .....................................................................11

*Isaiah v. WMHS Braddock Hosp. Corp.*, 343 F. App'x 931 (4th Cir. 2009).............5

*Jones v. W. Tidwater Reg'l Jail*, No. 2:15CV316, 2016 WL 3647591 (E.D. Va. June 30, 2016).....................................................................................3

*Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641 (9th Cir. 2014)...............5

*Meuse v. Henry*, 296 Va. 164, 183, 819 S.E.2d 220 (2018)....................................24

*Mozingo v. Oil States Energy Servs., L.L.C.*, 341 F. Supp. 3d 534 (W.D. Pa. 2018) .........................................................................................11

*Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933 (E.D. Cal. May 19, 2017)..................................................................................4

*Ridgell v. Astrue*, No. CIV.A. DKC 10-3280, 2012 WL 707008 (D. Md. Mar. 2, 2012) ................................................................................3

*United States v. Dish Network, LLC*, No. 09-3073, 2015 WL 2265800 (C.D. Ill. May 13, 2015) ........................................................................5

*United States v. Gutierrez*, 963 F.3d 320 (4th Cir. 2020) ........................................4

*United States v. Miller*, 734 F.3d 530 (6th Cir. 2013)...........................................21

*United States v. Rydland*, 461 F. App'x 208 (4th Cir. 2012)..................................11

*United States v. Towns*, 718 F.3d 404 (5th Cir. 2013) .............................................4

*Wooton v. CL, LLC*, 504 F. App'x 220 (4th Cir. 2013) ..........................................14

*Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815 (E.D. Va. 2011)..........................24

## STATUTES

VA. CODE ANN. § 59.1-510  ...................................................................7, 18, 22, 24

VA. CODE ANN. § 59.1-514.1....................................................................20, 24, 25

## REGULATIONS

F.C.C., *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01 (2003) ................................................8

## RULES

Fed. R. Civ. P. 45 ...................................................................................................14

## INTRODUCTION

Appellee SunPath, Ltd.'s ("Appellee" or "SunPath") response brief begins by claiming that the district court correctly excluded the majority of the evidence in this case. That is, SunPath, applying an outdated evidentiary standard, claims that the Five9 records were properly excluded because they were unauthenticated and unexplained. However, SunPath misses the mark—at the summary judgment stage, documents can be considered if they are authenticated or could be at trial. The Five9 records were authenticated and could have been explained further via direct testimony at trial.

SunPath then attempts to downplay the court's failure to explain the basis of its decision to exclude all evidence of damages. SunPath, instead, asks the court to affirm the exclusion because Smith did not go call-by-call and explain each call's application to the damage's calculation. Neither the rules (nor any court case) require such specificity.

Next, SunPath asks this Court to affirm the Order precluding Smith from offering testimony regarding the calls that *she received*. To hear SunPath tell it, the declaration that Smith filed in support of her motion for partial summary judgment relies exclusively on the Five9 records and was inconsistent with her prior testimony. Neither assertion is true. Smith clearly has personal knowledge of the calls that she received and there were no inconsistencies with her prior testimony.

SunPath then argues that the district court did not abuse its discretion by failing to set (or extend) a reasonable discovery schedule. SunPath is, again, incorrect. The court refused to extend the discovery schedule based on its belief that holding the parties to its firm deadlines was permissible because it provided an expedited motion procedure to resolve discovery disputes. But the evidence in this case was located outside of the court's jurisdiction to compel quick responses. As such, the procedure was of no use here. Notwithstanding this fact, the district court still set a discovery schedule that was demonstrably unreasonable and untethered to the facts of the case.

SunPath concludes its brief by arguing that the district court's order granting summary judgment in its favor should be upheld. In reality, the factual record does not support judgment as a matter of law in favor of SunPath on the basis that it cannot be held jointly and severally liable under the VTPPA for calls made by American Protection. Rather, the facts support a finding that SunPath is a "seller" as defined in the statute and its products or services were being offered to Smith on the calls. Likewise, there is no "clear and convincing" evidence to rebut the VTPPA's presumption that the calls were initiated on behalf or for the benefit of SunPath because the Call Center Marketing Agreement plainly retained American Protection's services to do so.

As explained further below, Appellant requests that this Court reverse the

judgment below.

## ARGUMENT

**I.    The District Court Abused Its Discretion By Granting All Evidentiary Motions And Excluding The Majority Of The Evidence In This Case.**

**A.    Because the Five9 Records were (or could have been) authenticated, it was an abuse of discretion to exclude the records.**

For its opening argument, SunPath applies an outdated evidentiary standard to assert that the district court properly excluded the Five9 records "because they were unauthenticated and unexplained." (SunPath Br. p. 23.) SunPath then seeks an early end to this Court's review "because Smith cannot prove she received any VTPPA-violating calls without admissible call records." (*Id.* p. 27-29.) SunPath is incorrect on both fronts. When the proper evidentiary standard is applied, SunPath's arguments fall flat.

**1.    SunPath misconstrues the evidentiary burden at summary judgment—the Five9 records should have been considered.**

Relevant here, Rule 56 was amended in 2010 to change "the procedure for submitting materials on summary judgment." *Ridgell v. Astrue*, No. CIV.A. DKC 10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012). Under the current rule, "facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form." *Jones v. W. Tidwater Reg'l Jail*, No. 2:15CV316, 2016 WL 3647591, at *3 (E.D. Va. June 30, 2016), *aff'd sub nom. Jones v. Butler*, 671 F. App'x

60 (4th Cir. 2016) (citation omitted) (emphasis in original). Hence, instead of "a clear, bright-line rule ('all documents must be authenticated')," Rule 56(c)(2) now prescribes a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method [of] doing so at trial." *Id.*

To be clear, the Five9 records **were** authenticated. Smith provided a custodian declaration executed by Five9[1], JA1632-1634—therefore, the records were offered in an admissible form. *See United States v. Towns*, 718 F.3d 404, 409 (5th Cir. 2013) ("proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6)"). SunPath's semantical argument relating to whether the records were authenticated as "records" or "call records" (SunPath Br. p. 24) misses the point. The underlying data was still authenticated. Ultimately, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury. ... [And] [t]he burden to authenticate under Rule 901 is not high—only a prima facie showing is required." *United States v. Gutierrez*, 963 F.3d 320, 336 (4th Cir. 2020) (citation omitted). Indeed, call records are not

---

[1] While the declaration was provided on January 5, 2023, JA1634, SunPath faced no prejudice were it to be considered solely to authenticate the records. *See Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933, at *6 (E.D. Cal. May 19, 2017) (finding no harm and refusing to strike a custodian declaration produced after the close of discovery "where defendants gave plaintiffs the data underlying both declarations during discovery.").

4

complicated and do not require specialized knowledge to understand.

But even if the declaration was excluded, Five9 could still appear and authenticate the call records at trial.[2] Indeed, Five9 was disclosed as a potential witness. JA1575. Even if SunPath takes issue with the timing of the disclosure, both parties became aware of Five9's identity at the same time and Smith promptly disclosed her intent to rely on its data. Therefore, there was no duty to supplement her disclosures and any failure to do so was harmless. *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 230 (4th Cir. 2019) (citing Fed. R. Civ. P. 26(e)(1)(A)); *Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014); *United States v. Dish Network, LLC*, No. 09-3073, 2015 WL 2265800, at *7 (C.D. Ill. May 13, 2015) (refusing to exclude call records from evidence and holding that "the existence of the underlying factual data was disclosed in discovery" therefore "no supplemental disclosure was required."). The exclusion of the records absent an opportunity to lay foundation was an abuse of discretion.

SunPath's second argument, that the Five9 records could not be "understood

---

[2] SunPath asserts that Smith "waived her right to appeal the exclusion of Five9 as a witness" by not raising the issue in her opening brief. (SunPath Br. p. 26-27.) SunPath's argument relies on its own motion and ignores the court's basis for granting the motion, which focused exclusively on the Five9 records, not Five9 as a witness. *See* JA1825-1828; JA1838 (holding that "the Five9 records cannot come in because they have not been properly, not only authenticated, but explained."). The court made no findings regarding Five9 being excluded as a witness. *See* JA1823-1837. Smith was only required to appeal the *court's* bases for its decisions. *See Isaiah v. WMHS Braddock Hosp. Corp.*, 343 F. App'x 931, 933 (4th Cir. 2009).

to reflect calls made without explanatory testimony from Five9", fares no better. (SunPath Br. p. 25.) The records are not open to a multitude of explanations. Rather, they are clearly records from Five9—a call center provider—evincing calls to and from Smith's phone number. SunPath posits that the inclusion of "0:00:00" in time fields renders the sheets confusing "[s]ince a phone call would have *some* time duration" and thus, SunPath concludes "the Five9 records reflected something other" than "phone calls." (*Id.* p. 25.) But this clearly indicates that the call was placed but not answered. SunPath's feigned confusion as to what the records may reflect is exposed by its reliance on the records in its response brief (*id.* p. 28), at summary judgment (JA636), and at trial (JA401-402), and its objections should have been rejected. *See Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003), *aff'd*, 398 F.3d 620 (7th Cir. 2005) ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic.").

Because the records could have been authenticated further at trial, the failure to consider the records was an abuse of discretion.

> **2.    Even if the Five9 records were excluded, Smith could still testify regarding the calls that she received—the Court's review should not end.**

SunPath then asserts that this Court's review can end because the "exclusion of the Five9 records is one of the independent reasons the district court granted

SunPath summary judgment." (SunPath Br. p. 27.) SunPath is incorrect. Even if the Five9 records were excluded, there are still considerable factual disputes that remain.

With respect to the first six calls, SunPath asserts that it was entitled to summary judgment "because they were made pursuant to an EBR between Smith and American Protection", which was formed on "May 26, 2020, when she called American Protection to inquire about its VSCs."[3] (SunPath Br. p. 28.) This is false. While Smith admits that she placed a call to American Protection's phone number, she also contends (and the records confirm) that the call was "abandoned" and never answered. JA777. There is no legal support for a contention that an EBR can be formed based on an unanswered call.

As defined in the VTPPA, an EBR can be formed through an inquiry "regarding any property, good, or service" offered by a company. VA. CODE ANN. § 59.1-510. Guidance on the federal TCPA is instructive on the establishment of an EBR: Indeed, whether a consumer's inquiry is sufficient to establish an EBR turns on the nature of the inquiry, which "must … be such to create an expectation on the part of the consumer that a particular company will call them." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019)

---

[3] SunPath ironically relies on the Five9 records and Smith's Declaration—both of which it argues should be excluded—to make this claim. (SunPath Br. p. 28 (citing JA697 (discussing the inbound call that is reflected in the Five9 records)). Absent said evidence, there is no evidence that Smith placed a call to American Protection. SunPath can't have it both ways.

(citing 68 Fed. Reg. 44,144) (applying the TCPA's EBR definition). "'[A]n inquiry regarding a business's hours or location,' for example, would not establish an EBR." *Id.*; F.C.C., *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, 44159 (2003).

SunPath has not produced any evidence to demonstrate the nature of Smith's inquiry on May 26, 2020. For good reason, Smith ended her call before reaching a representative, and thus there was no inquiry or even a communication to support the establishment of an EBR. As discussed in her opening brief, Smith produced substantial evidence to demonstrate that the EBR was formed on May 28th. (Opening Br. p. 9.) Hence, even if the Five9 records were excluded, there is still a dispute of fact as to what transpired in the first six calls.

As to the calls after the termination of the EBR, SunPath falsely claims that Smith exclusively relies on the Five9 records. Not true. As explained in Section I.C, *infra*, Smith should have been permitted to testify regarding the calls that she received.

**B.    Smith timely disclosed her damages calculation and all evidence to support her damages, the district court's exclusion of all evidence of damages was therefore an abuse of discretion.**

Next, SunPath asserts that the district court properly excluded all evidence of Smith's damages because: (1) "Smith improperly and untimely attempted to double her claimed damages in sole reliance on the inadmissible Five9 records" (SunPath

8

Br. p. 30-33); and (2) Smith was ordered to lay out, "with specificity, each call she was seeking damages for" (*id.* p. 34). While the court made neither finding, both assertions are incorrect.

Contrary to SunPath's claims, Smith disclosed her damages calculation in her initial disclosures. JA1705. After receiving the Five9 records, Smith provided the documents to SunPath (within hours) and supplemented her discovery responses eight days later to clarify that she sought damages for all of the calls in the records JA1602-1603. Given that Rule 26 requires a party to disclose its calculation and the documents on which they intend to rely, Smith plainly satisfied her disclosure obligations. *See Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 117 (4th Cir. 2021) ("Rule 26 requires that a party disclose "a computation of each category of [its] damages" and "make available ... the documents or other evidentiary material ... on which each computation is based[.]"). Tellingly, SunPath again provides not a single case to support its contention that Smith must go call-by-call and explain each calls applicability to the calculation.

Even assuming *arguendo* that the disclosure was deficient, the exclusion of evidence is inappropriate when the delay is "substantially justified or is harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). As SunPath concedes, the district court conducted no analysis regarding whether the lack of disclosure was harmless. (SunPath Br. p. 32-33.) This alone is an abuse of discretion.

*Bailey v. Christian Broad. Network*, 483 F. App'x 808, 811 (4th Cir. 2012). Nor could it have reached this conclusion. Tellingly, neither the court nor SunPath can point to any *evidence* that was withheld.

SunPath is also incorrect that the damages disclosure violated a prior order. (SunPath Br. p. 34-35.) SunPath misstates the court's statements at the November 18th hearing by citing to portions of the transcript relating to the court's questioning regarding the difference between damages sought for the VTPPA's DNC claim (Count II) and the Unidentified Caller claim (Count III). *See* JA283-284. This differentiation made sense if Smith were proceeding under Count III, but she did not. Smith only sought damages for violations of Count II, JA692-709, and the court was clear that if the calls were sought for the same violations and based on the same evidence, a simple calculation was sufficient. JA281-282. Nevertheless, even if the disclosure was deficient, the proper remedy would be to limit the damages, not preclude all evidence of damages.

### C.    Given that Smith possesses personal knowledge regarding the calls she received, it was an abuse of discretion to strike her declaration.

As to the last evidentiary issue, SunPath claims that the district court did not abuse its discretion in striking Smith's declaration because, supposedly: (1) the declaration relies on the Five9 records and not Smith's personal knowledge of the calls she received (SunPath Br. p. 38); and (2) there were inconsistencies between the declaration and her prior testimony (*id.* p. 36). Both assertions are false.

10

The declaration does not rely "solely on the inadmissible Five9 records." *(Id.* p. 35.) Rather, the declaration relies on Smith's personal knowledge of the calls that *she received*. Indeed, personal knowledge can be gained by examining documents or data and forming an understanding "through his [or her] own senses", including documents produced in discovery. *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 354751, at *3 (E.D. Va. Jan. 27, 2016) ("NBD's protests that Burtner lacks 'true' personal knowledge because he was unfamiliar with NBD's database prior to this litigation has no foundation in either the Federal Rules of Evidence or the interpreting jurisprudence.").

Applied here, as the declaration states, Smith's testimony is based on her "personal knowledge" of the calls that she received after *reviewing* the Five9 records.[4] JA843. This is acceptable and common in litigation. *See Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-CV-187, 2018 WL 4169282, at *6 (E.D. Va. Jan. 12, 2018) ("the need to rely on a document to verify a date or fact therein, as Van

---

[4] Even if the Five9 records were excluded, Smith could still rely on her review of those records to formulate her recollection of the calls. Indeed, witnesses can use a wide variety of documents to "revive[]" their "latent memory". *See United States v. Rydland*, 461 F. App'x 208, 210 (4th Cir. 2012); *see also Mozingo v. Oil States Energy Servs., L.L.C.*, 341 F. Supp. 3d 534, 546 (W.D. Pa. 2018) ("A witness may refresh his or her recollection using a document which is otherwise inadmissible."). This includes business records. *See Gunter v. S. Health Partners, Inc.*, No. 1:16CV262, 2021 WL 4255370, at *9 (M.D.N.C. Sept. 17, 2021). There is nothing improper or unusual about Smith reviewing records to recall the dates, times, and durations of the calls that she received years ago.

Epps requested in his personal deposition . . . does not mean that Van Epps lacks personal knowledge of a fact or a date."). As in *Hopeman Bros., Inc.*, the fact that she needed to review the Five9 records to clarify the total number of calls and the date/times she received the calls "does not mean that [she] lacks personal knowledge" regarding the calls.

Smith's declaration was also consistent with her prior testimony. In its response, SunPath attempts to fabricate two inconsistencies. First, SunPath claims that "Smith's supplemental interrogatory answers dated November 11, 2022, swore that she only sought recovery for 54 calls". (SunPath Br. p. 36) This is irrelevant. The Five9 records, reflecting all of the calls at issue, were obtained on November 30, 2022. JA1636. Smith supplemented her discovery responses on December 8, 2022. JA1602-1603. Smith's declaration was consistent with her most recent discovery responses.

Second, SunPath claims that when asked at her deposition "if June 9, 2020 was the last date that she received a call at issue, Smith testified that what she had 'provided initially' in her discovery responses 'was correct'". (SunPath Br. p. 36-37.) This is seriously misleading. Smith's full response was:

> Q    You contend that June 9 was the last call that you received that you're seeking damages for in this case?

> A    Again, whatever I provided initially was correct, <u>but I know that there's the call logs that were received. So that is correct, what's in logs.</u>

Q     Can you clarify what you mean by that?

A     So when I submitted all the documentation that I had, that was to the best of my knowledge at the time, but I understand that the call logs have different information, and they are -- they are correct.

JA945 (emphasis added). SunPath was squarely on notice that Smith intended to rely on and seek damages for all of the calls listed in the Five9 records, and its attempt to claim that a contradiction exists—based on its own failure to question Smith about the logs—should be rejected.

In the end, Smith received every single call and thus possesses sufficient "personal knowledge" to testify regarding her receipt of the calls.

## II.    The District Court Abused Its Discretion By Failing To Set A Reasonable Discovery Schedule And Denying A Request To Extend The Schedule Based On An Irrational Basis.

SunPath next asserts that the court did not abuse its discretion by denying a request to extend the discovery schedule (SunPath Br. p. 39-41) or setting the discovery schedule (*id.* p. 41-43). SunPath's arguments largely miss the forest for the trees. The truncated schedule and the denial of a continuance precipitated the discovery issues outlined in Section I, *supra*.

### A.     The court abused its discretion by denying Smith's continuance request on an irrational basis.

SunPath first asserts that the district court did not abuse its discretion in denying an extension of the discovery schedule because the motion was denied

without prejudice and Smith never refiled the motion. (SunPath Br. p. 40.) SunPath ignores that the inquiry regarding whether a denial of a request to extend a discovery schedule constitutes an "abuse of discretion" focuses on the ***court's*** basis for the denial. *Wooton v. CL, LLC*, 504 F. App'x 220, 223 (4th Cir. 2013).

In denying the motion, the district court explained that because of its expedited motion procedures, it didn't "know of any reason why we can't stick to the deadlines currently imposed." JA238-239 (explaining that "in exchange for keeping cases moving keeping cases moving efficiently, the Court makes itself available on a seven-day turnaround" to resolve discovery disputes). Because of this, the court instructed Smith to "find a date" for American Protection's deposition "as soon as possible" or:

> [i]f they're being obstructionist, file a motion and serve them, and we will get it resolved. Because . . . you know, it's not fair to kind of hold you to these deadlines but not give you a mechanism to gather the discovery that you need . . .

(*Id.*) But the parties were instructed to "assume, going forward, that that December 9th deadline **is a hard date**." JA239 (emphasis added).

The court's basis was irrational. The streamlined motion procedure is of no use here given that it lacks any jurisdiction to compel American Protection—a Florida business—to attend a deposition. *See* Fed. R. Civ. P. 45(d); *see also Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2022 WL 1597840, at *3, n.4 (W.D. Va. May 19, 2022) ("Rule 45 'give[s] 'the court for the

district where compliance [with a subpoena] is required,' and not the litigation court from which a subpoena must issue, primary authority over disputes about subpoenas directed at nonparties located within the compliance court's territorial jurisdiction.''"). Consequently, even if Smith filed a motion, any order would not be binding on American Protection. Absent that mechanism, even the court agreed that it would not be "fair" to "hold [Smith] to these deadlines."

In the end, Smith—the party that worked to compile nearly every document in the record—sought an extension based on discovery misconduct by SunPath[5] and American Protection. The court denied that request and later held its denial against Smith. This is an abuse of discretion.

**B.    The district court abused its discretion by failing to set a reasonable discovery schedule.**

Next, SunPath asserts that the court's schedule was not arbitrary because, in its opinion, the case "was not complex" and "Smith chose to file in the EDVA". (SunPath Br. p. 41-42.) The issue is not, as SunPath attempts to reframe it, that the district court abused its discretion after the consideration of the complexity of the

---

[5] In its brief, SunPath asserts that it didn't violate its disclosure obligations by withholding American Protection's identity because "SunPath had no need or intention to use American Protection or its information to support SunPath's defenses." (SunPath Br. p. 13.) Yet, SunPath's motion for summary judgment relied extensively on documents and testimony produced by American Protection. (*See* JA516-524; JA582-617; JA633-635; JA643-646.) SunPath plainly had an obligation to disclose American Protection's identity under Fed. R. Civ. P. 26(a)(1).

case. The issue was that the court conducted no evaluation of the claims or burdens *prior to issuing* its discovery deadline. Indeed, the court set the December 9th deadline prior to the parties proposed discovery plan. JA26; JA37-43. The court then denied the parties' proposals and opted for its previously imposed deadline absent any explanation. There was simply no consideration of the submissions.

SunPath is also incorrect when it asserts that the case was not complex and that "four months to get one set of call logs" was "more than ample". (SunPath Br. p. 43.) Even if the claims were not complex, the discovery was complex. Almost none of the relevant documents were in the possession of the parties at the commencement of the case. The records were within the possession of unidentified third-parties—American Protection and Five9. Nevertheless, SunPath ignores the fact that Smith **did** procure the records within the limited schedule, but the evidence was still excluded because it was not procured fast enough.

SunPath's alternative argument, that Smith's choice of EDVA should have been held against her, misses the point. The calls at issue were directed to Smith, a resident of Virginia, and the claims involved the interpretation of a Virginia statute. EDVA was the most appropriate venue for the claims. Regardless, Smith doesn't take issue with the "rocket docket" reputation. Rather, she asserts that the reputation cannot supplant a consideration of the burdens of the case.

As a final point here, SunPath erroneously asserts that the court correctly

never decided Smith's "untimely" motion for class certification because it was filed after the "parties agreed to November 14, 2022" deadline. (SunPath Br. p. 44.) But that is not how court deadlines are set. Noticeably absent from SunPath's brief is any citation to an *order* setting the deadline. SunPath also ignores that the motion to extend the schedule included a request to <u>set</u> (not modify) a briefing schedule on class certification. JA57-64. In denying the motion, the court cited the December 9th deadline and explained, "by that point in time, you should be able to have enough discovery to the point where you're in a position where you can make an informed decision about whether it is appropriated to seek class certification." JA240. The court also alluded to Smith seeking certification at the November 18th hearing. JA292. None of this makes sense if the November 14th deadline was set. Put simply, the scheduling orders were not clear, and the court's denial of Smith's motion for class certification represents harm that she suffered because of the lack of clarity.

Ultimately, the district court set an unreasonable discovery schedule untethered to the facts of the case.

## III.    The District Court Erred By Granting Summary Judgment In Favor Of SunPath Under The VTPPA.

SunPath closes by claiming that summary judgment should be upheld in its favor because it cannot be considered a "seller" under the VTPPA (SunPath Br. p. 47-50); and, even if it were, it has provided "clear and convincing evidence" to rebut the presumption (*id.* p. 53-56). The factual record does not support either of

SunPath's assertions, and SunPath was not entitled to summary judgment.

**A.     SunPath was a "seller" as defined by the VTPPA.**

**1.     SunPath contracted with American Protection to place calls to solicit its products—it was thus the "seller" as defined.**

In its brief, SunPath asserts that it cannot be considered a "seller" because "American Protection's subcontractors were placing calls on behalf of American Protection, and not SunPath." (SunPath Br. p. 47.) But American Protection's employment of subcontractors, as opposed to employees, does not transform it into a "seller" under the Act. As previously explained, the VTPPA defines a "telephone solicitor" as "any person who makes or initiates, *or causes another person to make or initiate*, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." VA. CODE ANN. § 59.1-510 (emphasis added).

Hence, the statute provides for the use of additional third-parties (such as subcontractors) to place the calls. Such is the case here, under the Call Center Marketing Agreement, American Protection made or initiated, or caused other persons (its subcontractors), to make or initiate calls for SunPath's benefit, soliciting SunPath's VSCs. SunPath designated American Protection as its representative in Florida to sell its VSCs, JA755-756, and testified that it derives 100 percent of its revenue from the sale of its VSCs made by its third-party marketers. JA728. The agreement also requires that American Protection collect payments from customers and hold SunPath's portion "in trust" for SunPath's benefit. JA712. These facts

completely refute the contention that the calls were not made on behalf of or for the benefit of SunPath.

SunPath attempts to liken this relationship to that of Dick's Sporting Goods or a grocery store with items on its shelves, simply because American Protection can market products for other companies. (SunPath Br. p. 48-49.) The analogy is of little use here due to the differences in industries and consumer choice. A customer can walk into Dick's or a grocery store and select and finalize the purchase of the goods they desire. The same is not true here. Rather, when American Protection identifies a consumer that it desires to sell a VSC, it must submit their information directly to SunPath. JA866-867. It is SunPath that retains the ability to either accept or reject every customer and every VSC is a direct contract between SunPath and the consumer. *Id.*

Put simply, the factual record supports a finding that the calls at issue were made "on behalf of or for the benefit of" SunPath, thereby rendering SunPath a "seller" as defined in the VTPPA. But even if that were not the case, as explained next, all of the calls were placed to solicit SunPath's VSCs—hence, the presumption of liability also should have attached.

> **2.** **American Protection only solicited Smith to purchase a SunPath VSC, therefore the presumption of liability applies.**

Next, SunPath contends that the presumption that calls were made on its behalf or for its benefit does not apply because, according to SunPath, "the district

court was correct about American Protection's subcontractors offering American Protection's products, not SunPath's."[6] (SunPath Br. p. 49.) To attempt to support this statement, SunPath relies heavily on the contention that Smith did not see the name "SunPath" on the documents she received and that American Protection set the rates for the VSCs. (*Id.* at 49-50.) Both assertions are incorrect. But even if they were true, this consideration does not impact the statute's application.

Rather, the statute applies a presumption of joint and several liability to calls "offering or advertising a seller's property, goods, or services." VA. CODE ANN. § 59.1-514.1(B). The statute makes no mention of whether the seller must be identified by name on the call—only that the call must offer or advertise the seller's goods. *Id.* Thus, if SunPath's VSCs were offered or advertised on the call, it is presumed that the calls were made on behalf of or for the benefit of SunPath, and SunPath is therefore presumed to be the "seller".

Here, the record does not support SunPath's claim that the calls did not solicit Smith to purchase its VSCs. Smith testified that SunPath's name was identified on the calls, JA801, the follow-up email contained a link identifying the VSC as SunPath's, JA790-794, and the base rates were set by SunPath, JA741-742.

---

[6] The district court did not find that an American Protection VSC was being solicited. Rather, the court held that "a product of American [Protection] is being sold in the sense that it's getting its fee for the brokerage" for selling SunPath's products. JA1832.

American Protection's CRM system also revealed that the only quote it created for Smith was the VSC identified as SunPath's in the email. *Compare* JA803, *with* JA790-794. The record confirms that only SunPath's products were solicited on the calls.

As a final point here, SunPath's request to ignore the VTPPA's legislative history is slightly off-base. Smith agrees that the language of the statute clearly intended to place liability on the shoulder of companies, such as SunPath, who hire third-party telemarketers to sell their products, and thus a review of the legislative history may be unnecessary. However, if the Court were to entertain SunPath's novel interpretation, in which a telemarketer can be considered a "seller" and its employees or subcontractors could be considered the "telephone solicitors", then the statute would be open to multiple interpretations—hence, a review of the legislative history would be warranted. *United States v. Miller*, 734 F.3d 530, 541 (6th Cir. 2013) ("When a plain reading leads to ambiguous or unreasonable results, [we] may look to legislative history to interpret a statute."). As explained in the Opening Brief, the legislative history forecloses SunPath's interpretation of the Act.

In sum, the factual record supports both the presumption and a direct finding that the calls at issue were made "on behalf of or for the benefit of" SunPath, thereby rendering SunPath a "seller" as defined in the VTPPA. As such, SunPath was not entitled to summary judgment with respect to any counts.

### 3. SunPath's alternative grounds for affirming summary judgment fall flat.

SunPath's next presents a couple of alternative "grounds" to affirm the court's conclusion that it was not a "seller". (SunPath Br. p. 52-53.) Neither has merit. First, SunPath posits that because the VTPPA's definition of "seller" requires that the entity's products be offered or advertised *on* the telephone solicitation call", it cannot be considered a "seller" for the first six calls between May 26-28, 2020. (*Id.* at 52.) Two problems here. First, the statute defines a "seller" as the entity on whose behalf a telephone solicitation call is "made or initiated", not answered. *See* VA. CODE ANN. § 59.1-510. As explained above, the calls were initiated based on the agreement between SunPath and American Protection. And second, SunPath fails to point to any evidence that the calls were unanswered. Smith testified that she spoke with American Protection who identified SunPath's products on the calls. At minimum, there is a dispute of fact as to what transpired on the initial six calls.

Second, SunPath claims that Smith is not entitled to a reasonable inference that any of the calls that she received after the June 11, 2020 do-not-call request would have been to solicit her to purchase a SunPath VSC. (SunPath Br. p. 53.) According to SunPath, it is unreasonable to assume that "American Protection's subcontractors continued to call Smith to offer her the same VSC she had just rejected." (*Id.*). Instead, SunPath asserts that American Protection must have offered her "VSCs administered by other companies". (*Id.*) Fatal to this argument is

American Protection's testimony in which it explained that after identifying the best VSC plan for a given consumer, it would exclusively solicit the purchase of that plan, and would not later attempt to solicit the purchase of a VSC from a competitor if the first was rejected. JA868. Additionally, American Protection's CRM system revealed that it only created one quote for Smith, which was a SunPath VSC. *Compare* JA803, *with* JA790-794.

Put simply, SunPath's alternative grounds for affirming the judgment do not offer it any help.

### B.   Despite SunPath's contentions otherwise, the factual record did not contain "clear and convincing" evidence to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath.

SunPath finally argues that it has provided clear and convincing evidence to rebut the presumption of liability under the VTPPA. (SunPath Br. p. 53-56.) To push this claim, SunPath asserts that "telephone solicitation calls" are "unlawful by definition" and therefore, so the theory goes, it "could never be found to have retained or requested" American Protection to make the calls nor could it have had knowledge of or consented to the calls because its contract required that American Protection to "comply with applicable laws" and any unlawful call would fall outside the scope of the contracted telemarketing activity. (*Id.* p. 54.) SunPath's arguments are fatally flawed for three reasons.

SunPath's first error was contending that "telephone solicitation calls" are

unlawful by definition. To attempt to support this claim, SunPath relies on the fact that the Act's presumption of liability "is found within a section addressing VTPPA prohibited acts".[7] (SunPath Br. p. 56.) But is unsurprising that liability would relate to prohibited acts, given that lawful acts would not trigger damages. Regardless, the VTPPA requires SunPath to prove that it did not "retain or request" American Protection to make *any* "telephone solicitation calls", *see* VA. CODE ANN. § 59.1-514.1(B)—which as defined by the statute are not unlawful, *see id.* § 59.1-510. The evidence plainly demonstrates that it did. SunPath retained American Protection via a "Call Center Marketing Agreement" to solicit the sale of its VSCs and designated it as its licensed seller in Florida to sell its products. JA711-719; JA755-757.

SunPath's next errs by asserting that its contract with American Protection requires compliance with the law. It is unsurprising that SunPath's contract would require compliance with the law because any contract authorizing a telemarketer to violate any telemarketing law would be void *ab initio*. *See Meuse v. Henry*, 296 Va. 164, 183, 819 S.E.2d 220, 230 (2018). Taken to its logical end, SunPath's position would prevent any seller from being held liable for the unlawful actions of its third-party telemarketers—eviscerating the VTPPA's presumption and attachment of

---

[7] SunPath relies on *Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815 (E.D. Va. 2011), to assert that the VTPPA does not impose strict liability. (SunPath Br. p. 56.) But *Zhu* was decided in 2011—eight years before the VTPPA was amended to add the relevant presumption of joint liability. If anything, the amendment was intended to clarify that the Act intended to impose liability on companies like SunPath.

liability completely—so long as the seller told its downline agents not to break the law. Such a standard would immunize all sellers from liability under the Virginia law, which is designed specifically to attach liability to those sellers.

SunPath's third error is overlooking the fact that the VTPPA's presumption must be rebutted by "clear and convincing" evidence as to *both*: (1) that the seller did not "retain or request" the telemarketer make solicitation calls on its behalf or for its benefit; **AND** (2) that the calls were made without the seller's knowledge or consent. VA. CODE ANN. § 59.1-514.1(B). SunPath produced no evidence, let alone clear and convincing evidence, that it lacked knowledge of or consented to American Protection placing telephone solicitation calls on its behalf.[8] Nor could it. SunPath approved and accepted hundreds of contracts that were sold by American Protection. JA727. Even if the contract's "good faith" compliance provision were to be considered evidence that the calls were made without consent, the evidence still demonstrates that SunPath retained American Protection for the purpose of making calls to sell its VSCs. JA711.

The evidence in this case does not, by a "clear and convincing" standard, suggest that SunPath did not retain American Protection for the purpose of making

---

[8] SunPath is incorrect that Smith waived this argument. (SunPath Br. p. 55.) Smith sought summary judgment by asserting that SunPath had knowledge of American Protection placing *any* calls to solicit the sale of its VSC. JA706-707.

telemarketing calls to solicit its products. Accordingly, SunPath was not entitled to

summary judgment.

## CONCLUSION

For the foregoing reasons, the lower court's judgment should be reversed.


Dated: August 2, 2023                    Respectfully submitted,

                                         By: _/s/ Taylor T. Smith_____
                                         *Attorney for Appellant Ruth Smith*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 6,491 words, excluding the parts of the document exempted by Fed. R. App. R. 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: August 2, 2023                    By: */s/ Taylor T. Smith*

                                        Taylor T. Smith
                                        Woodrow & Peluso, LLC

                                        *Attorney for Appellant Ruth Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case are all registered CM/ECF users.


Dated: August 2, 2023                    By: _/s/ Taylor T. Smith_____

                                         Taylor T. Smith
                                         Woodrow & Peluso, LLC

                                         *Attorney for Appellant Ruth Smith*